Roy A. Katriel, Esq. (SBN 265463)
*rak@katriellaw.com*
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, CA  92014
Telephone: (619) 363-3333

Ralph B. Kalfayan, Esq. (SBN 133464)
ralph@rbk-law.com
Veneeta Jaswal, Esq. (SBN 320108)
veneeta@rbk-law.com
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
Facsimile: (619) 232-4019

*Counsel for Plaintiff Christina Diaz and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHRISTINA DIAZ, On Behalf of Herself And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>Defendant. | **CASE NO.:   2:20-CV-4066**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Christina Diaz ("Plaintiff"), on behalf of herself and all others similarly situated, invokes the Court's jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and complains against Defendant University of Southern California ("USC") as follows:

## NATURE OF THE ACTION

1.   This is an action for breach of contract, unjust enrichment, money had and received, and Unfair Competition Law ("UCL") violations brought by Plaintiff on behalf of herself and all other similar situated students enrolled at USC.  USC has shut down all its campus facilities, discontinued all live in-classroom instruction of any courses at any of USC's campuses and schools, and instead moved all instruction to remote online media.  While these actions are attributable to the COVID 19 pandemic and the shelter-in-place order in effect in the State of California, USC has continued holding Plaintiff and all students liable for the full pre-shutdown tuition and fee obligations.   This, despite the fact that USC is unable to provide, and is not providing, the services or facilities that the students bargained for and are being billed for as part of their tuition and fees—fees and tuition costs that easily amount to thousands of dollars per student.

2.   While USC may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students.  Yet, while USC has used the current COVID 19 shutdown circumstances to excuse USC's duty to fully perform the obligations of its bargain with its students, USC continues to demand that all students fully perform their contractual bargain to pay in full all tuition and fees without any reduction for USC's lack of full performance.  This is contrary to ordinary tenets of contract law.  And this indefensible breach is saddling wholly innocent students with mounting debt as a result of having to pay tuition and fees for services they are not receiving and facilities that are not being provided.  In so acting, USC is unjustly enriching itself at the expense of Plaintiff and the members of the class she seeks to represent.

3.   California law recognizes the unremarkable proposition that the relationship between a matriculated student and USC is contractual: "By the act of matriculation, together with payment of required fees, a contract between the student and the institution is created." *Kashmiri v. Regents of University of California*, 156 Cal. App.4th 809, 824 (2007).  In addition to any express enrollment contract that may exist between the students and USC, the law recognizes an implied-in-fact contract brought about by the conduct of the parties during the students' enrollment.  *Id.*

4.   USC has breached its contractual duties by ceasing all in-classroom instruction at all campuses and shutting down campus facilities while continuing to asses and collect full tuition and fee payment from Plaintiff and the class members as if full performance had been rendered to them.  Undoubtedly, however, the performance now being provided by USC and USC's campus facilities are of a different nature and of lesser value than what was bargained for at the time of Plaintiff's and the class members' enrollment.

5.   Plaintiff therefore brings this action on behalf of herself and all other similarly situated students of USC to seek redress for USC's breach of contract, unjust enrichment, acts amounting to the action of money had and received, and violations of the UCL.

## PARTIES AND JURISDICTION

6.   Plaintiff Christina Diaz is a resident of California and attends USC.  She is scheduled to graduate in 2021 with an undergraduate degree in architecture.  For the 2019-2020 academic year, USC charged tuition in the amount of approximately $57,256.   This already significant amount itself represents an increase from the prior calendar year's tuition amount of $55,320.  And, neither amount included the myriad of fees charged by USC—including fees allocated to use of campus facilities—which for the 2019-2020 academic year totaled an additional

approximate $1,863.   Moreover, Plaintiff paid additional fees to attend USC's School of Architecture Study Abroad program, which was to take place in Italy. When USC effectively cancelled that program midstream by initially having its students and staff flee to Spain and then, instead of providing instruction, had the students remain indoors, Plaintiff was relegated to taking "online classes."  These, however, amounted to nothing more than "meeting" with one of her professors for 10 minutes twice per week, leaving Plaintiff to teach herself the material.  At the same time, USC kept and has failed to refund any portion of the tuition, fees, or the Architecture Study Abroad program, despite not providing any of these services, instruction, or facilities.  USC continues to demand that Plaintiff and all class members are liable and will remain liable for full tuition and fees.

7.   Defendant University of Southern California is a private educational institution in Los Angeles, California, initially established in 1880.  It is organized as a corporation under the laws of the State of California.

8.   The Court has personal jurisdiction over Defendant USC because it is headquartered in the State of California and conducts business in the State in the form of operating a university at its Los Angeles campuses.

9.   Venue is proper in this judicial district because USC is headquartered in this judicial district, its campuses are located in the City of Los Angeles within this judicial district, and the acts complained of occurred within this judicial district. Venue in this court therefore is proper under 28 U.S.C. §1391.

10.   This Court has subject-matter jurisdiction over all counts of this Class Action Complaint under the Class Action Fairness Act because Plaintiff seeks to represent a class whose members are of worldwide citizenship, and Defendant USC is a California citizen for purposes of the federal diversity statute.  The amount in controversy exceeds $5 million exclusive of costs, interest and attorneys' fees.  This Court therefore has subject-matter jurisdiction under 28 U.S.C. § 1332(d) over all counts alleged in this Class Action Complaint.

# **FACTUAL ALLEGATIONS**

11.   Plaintiff Christina Diaz is a junior at USC's School of Architecture.  She has been enrolled at USC since the 2016 academic year and is scheduled to graduate with a Bachelor of Architecture degree in 2021.   For the current 2019-2020 academic year, USC charged tuition in the amount of $57,256 plus an additional $1,863 in fees.  Given the number of years and credits required to complete the Bachelor of Architecture degree (or any undergraduate degree at USC, for that matter) an undergraduate student is expected to incur approximately $200,000 or more in tuition and fees during their undergraduate enrollment at USC.

## **USC Touted And Emphasized The Importance Of Its School Of Architecture Campus Facilities And In-Person Instruction**

12.   The marketing and recruitment materials for USC's School of Architecture tout, highlight, and have gone to extensive lengths to sell prospective and current students on the benefits provided by USC's campus facilities and on-campus instruction.  Even while USC has shut down its campus, shifted all its instruction to distance learning via Zoom videoconference, USC's School of Architecture's website paradoxically continues to extol the importance and benefits of its campus facilities and in-person instruction, neither of which USC is offering.

13.   By way of example, USC's School of Architecture's website has a whole webpage devoted exclusively to expressly presenting the many benefits and indispensable nature of its campus facilities and in-person instruction to its students:

> **As a student in one of USC Architecture's dynamic programs, you'll have access to cutting-edge technology and creative studio spaces, meet fellow inquisitive classmates from around the world, and learn from renowned faculty and visiting lecturers. The School of Architecture will serve as your academic base within the larger USC campus and community.**

> **Located in the Harris Hall and Watt Hall complex of buildings and courtyards on the University Park Campus, the USC School of Architecture comprises over 50,000-square feet of design studios, classrooms, galleries, workshops, and laboratories specifically designed to offer an immersive and stimulating learning environment.**
>
> **Each semester, all architecture students are assigned their own design workstations with storage. The University provides continuous wireless support, and students have 24-hour, seven-days-a-week access to their studios and workstations.**

https://arch.usc.edu/student-culture (last visited May 2, 2020) (Attached hereto as Ex. 1 to Class Action Complaint).

14.   Indeed, these program benefits were made available to Plaintiff Diaz when she enrolled and continued to enroll at USC's School of Architecture.  All that changed, however, when earlier this year, USC shut off access to campus facilities and ceased all classroom instruction, relegating students to so-called "distance learning" through video conferences only.  Further, USC recently announced that its campus shutdown and distance learning would continue for both summer sessions scheduled in 2020 and is providing no assurance as to the status of classes or campus availability even for the Fall 2020 semester.

**USC Now Recants And Contends Online Distance Learning Provides The "Same" Learning Experience And Value As Its On-Campus Classroom Instruction, Such That USC Refuses To Provide *Any* Reimbursement Of Tuition Or Fees.**

15.   At the same time, USC has steadfastly refused to offer any tuition accommodation for its inability and failure to offer the campus facilities and campus instruction it previously had been offering its students and had promised. In its latest announcement to students on USC's website, dated April 28, 2020, USC doubled down on its refusal, defiantly proclaiming that:

*Diaz v. University of Southern California,*
Case No._____

Class Action Complaint

**We have no plans to provide pro-rated tuition refunds for the current Spring 2020 semester or our upcoming Summer sessions.** While this is not the semester any of us envisioned, we are continuing to provide a high-quality education, ensure academic progress towards degree, and offer a robust learning environment. Whether our instructors present their classes in person or online, they bring the same expertise, depth of knowledge, and commitment to their teaching, and students continue to earn credits toward a USC degree. Additionally, we have added, and are building, new programs inside and outside the virtual classroom to make the online experience even stronger.

https://coronavirus.usc.edu/2020/04/28/4-28-academic-updates-for-current-and-future-trojans/ (last visited May 2, 2020) (attached hereto as Exhibit 2 to Class Action Complaint) (boldface in original).

16.     USC's latest announcement's that the educational experience it is offering without any of its campus facilities and without any in-person instruction is the same as its previously offered educational experience flies in the face of what it represented with respect to the importance of its School of Architecture campus facilities and in-person instruction.  Moreover, USC previously made and continues to make representations as to the benefits offered by USC's campus facilities and instruction for all of its schools and programs, despite now claiming that its education is of the "same" value, nature and quality in the absence of any campus facilities or instruction.

**<u>Before The Campus Shutdown, USC Represented The Value And Benefit Of Its Campus Facilities and Classroom Instruction For All Of The University's Schools</u>.**

17.     By way of example, whereas USC now contends that no value is lost by USC students not having campus facilities or on-campus instruction, prior to the campus shutdown USC went to great lengths to tout and highlight the direct and important benefits offered to its students at USC's Roksi School of Art and Design by that school's facilities and on-campus instruction:

The hub of USC Roski School of Art and Design resides on the main USC campus in two buildings, Watt and Harris Halls, that are dedicated to art and design. Within these buildings, Roski students have access to the Galen Ceramics Studio; three design studios, including the Galen 3D print lab; two large drawing & painting studios; a printmaking lab; as well as the Handtmann Photography Lab and the Galen Intermedia Lab. The large Sculpture Studio, with both indoor and outdoor spaces, includes a shared woodshop. At the center of it all is the Helen Lindhurst Fine Arts Gallery—open to the public Monday through Friday—where undergraduate students can apply annually to present exhibitions of their artwork.

https://roski.usc.edu/facilities (last visited May 2, 2020) (attached hereto as Exhibit 3 to Class Action Complaint).

18.     Of course, none of these facilities or benefit of the USC Roksi School of Art and Design are available to students.  Yet, USC continues to charge and demand the same tuition and fees as it did when these facilities and instruction therein were offered.

19.     Similarly, USC's website for its Iovine and Young Academy for the Arts, Technology and the Business of Innovation continues to regale its student and prospective applicants with the advantages of the nature of its interactive, in-person, small classroom instruction that affords opportunities for direct networking among students:

FEATURES

What makes the Academy an unparalleled environment for creativity?
THE COHORT EXPERIENCE
With the students' individual experiences, backgrounds and skill sets, the cohort provides a unique opportunity to network and build communities both inside and outside the program.
INTERACTIVE LEARNING
The Academy's educational model addresses a fundamental shift in how coming generations of students think, learn and choose to interact with the world.

SMALL CLASS SIZE

Admission to the Academy is highly selective. Each fall, the program aims to enroll 25 new students, enabling Academy majors to work closely with faculty and advisors.

MENTORSHIP

Students gain insights and perspective from industry mentors, including leading artists, designers, technologists, public policy makers, philanthropists, global entrepreneurs and many others.

And, the website goes on to represent that:

With CurriculumPlus, the Academy nurtures a culture of constant learning that does not stop at the classroom door. Lectures, presentations, discussions, tutorials and trips throughout the year allow the program to rapidly respond to student needs and cutting-edge developments in technology and industry. Diverse formats teach in the most idiomatic way for the material: hands-on learning for skills and tools, workshops to critique and develop student projects and discussions to encourage critical thought and ideas. The Innovators Forum series brings guests to share their real-world successes and to model the thinking the Academy seeks to instill, while field trips and study tours allow students to interact with new environments and contextualize their work regionally, nationally, and around the world.

https://iovine-young.usc.edu/program/index.html (last visited May 2, 2020) (attached hereto as Exhibit 4 to Class Action Complaint)

20.    None of these benefits and instruction modalities are being offered by USC, nor have they been offered since the campus shutdown and the move to Zoom distance learning.  Yet, USC continues to demand and charge its students the same tuition and fees as it did when these promised instruction services and facilities were being made available to students.

21.    Similarly, USC's Marshall School of Business highlighted a key benefit of its in-person, in-campus experience:

USC Marshall prepares students for jobs and internships with career advising and networking opportunities. Courses also allow students to rehearse professional skills under real business settings.

https://www.marshall.usc.edu/programs/undergraduate-programs/degree-difference (last visited May 2, 2020) (attached hereto as Exhibit 5 to Class Action Complaint).

22.     None of these "real business setting" or "networking opportunities" specifically touted by USC's Marshall School of Business, however, are made available in any meaningful sense when students cannot even meet face-to-face or on campus and, instead, are relegated to a vide distance learning environment.  Yet, USC continues to charge students the same tuition and fees as if these opportunities and instruction were being made available.

23.     The same misrepresentations were made (and are being made today when campus facilities are all shut down and unavailable to students) by USC as part of its website marketing of the USC School of Cinematic Arts.  Therein, USC devotes a whole webpage to the School of Cinematic Arts' "Labs and Classrooms," explaining that:

> The labs and classrooms of the USC School of Cinematic Arts give faculty and students access to the same state-of-the-art technologies being used and developed across the entertainment industry. Students can access the latest Oculus Development Kit, use a Render Farm to bring their VFX shots to life, study live models in figure-drawing rooms, or reserve special meeting rooms that meet their computing and collaboration needs. Across the Cinematic Arts Complex, SCA's labs and classrooms facilitate compelling artistic and scholarly work.

https://cinema.usc.edu/facilities/labs_classrooms.cfm (last visited May 2, 2020) (attached hereto as Exhibit 6 to Class Action Complaint).

24.     But none of these labs or classrooms are now available to students. None of the Cinematic Arts Complex, SCA's labs or classrooms that USC emphasized "facilitate compelling artistic and scholarly work" can be attended or booked by students.  Yet, USC continues to charge the same tuition and fees as if these facilities and instruction were available.

25.     USC persisted with the same theme—emphasizing the importance, uniqueness and benefits of its in-campus instruction and campus facilities—when it marketed its Annenberg School for Communication and Journalism.  In that school's website, USC represented to students or prospective applicants that:

> USC Annenberg's Media Center is the heartbeat of Wallis Annenberg Hall. This unique newsroom, classroom and incubator provides experiential learning so students can work as journalists on day one, ensuring they enter the industry with the multimedia skills necessary to tell stories on every platform.

> With its cutting-edge production facilities and state-of-the-art equipment, students working in the media center cover breaking news on the web and on the air, create high-impact journalism on multiple platforms, produce and publish podcasts such as Match Volume, and integrate audience analytics. Whether they come to the media center as volunteers or as part of their coursework, students leave having fulfilled leadership opportunities that prepare them to succeed in the workforce.

> Faculty advisors with decades of industry experience as newsroom leaders, copy editors, programmers, network TV producers and communications experts guide the student editors and producers, lending a fresh eye to projects and finding teachable moments. With this foundational training and hands-on guidance, students gain the experience and confidence to experiment with new and emerging platforms as they arise. The media center is a space for conversation, disruption and experimentation, where students tell stories in Spanish and Mandarin, cover the community around campus and Los Angeles at large. They also bring innovation to the way the USC community gets news, with a sports newsletter, a weekly Instagram show and even an audio briefing on Alexa.

https://annenberg.usc.edu/current-students/media-center (last visited May 2, 2020) (attached hereto as Exhibit 7 to Class Action Complaint).

26.     Despite these representations, which USC's website continues to make and publicize to date, the fact is that USC has shut off student access to the Annenberg Media Center and its in-person instruction therein.  Yet, USC continues

to charge students the same tuition and fees as if these facilities and instruction were available.

27.     In the same vein is USC's description of its Glorya Kaufman School of Dance.  In that school's website, USC claimed that:

> USC Kaufman is at the forefront of developing a hybrid art form comprised of intersecting dance techniques expressed in new media, scholarship, studio practice and choreography for the 21st century. USC Kaufman's BFA program provides foundational insight, intellectual and artistic development, a robust performance repertory, exposure to world-renowned practicing artists, interdisciplinary projects, as well as conditioning for dancers and strategic career venture skills. Through opportunities for interdisciplinary study, students are able to explore collaborations and innovations with established partners.

https://kaufman.usc.edu/degrees/bfa/ (last visited May 2, 2020) (attached hereto as Exhibit 8 to Class Action Complaint).

28.     None of these "studio practices" or "robust performance repertory" are being offered by USC's Kaufman School of Dance.  Its fine arts and dance program instead has all been moved to online video format with no access to studios, in-person performances, or face-to-face instruction.  Yet, USC continues to charge and demand the same tuition and fees as if these facilities and instruction were being offered.

29.     Similar representations were made to  students or prospective applicants to USC's School of Dramatic Arts.  That school was supposed to provide students with learning and career preparation opportunities in the fine arts or visual arts in disciplines such as acting, stage management, or design, among others.

30.     Yet, USC is not offering any stage or acting productions.  As its notice now makes clear:

> **Given the mandates from the university and the ambiguity of the current COVID-19 situation, the school leadership has made the heartbreaking decision to cancel the remainder of our production**

**season (this includes The Secret Garden, Fuente Ovejuna, Safe Harbor, Net of Worth (New Works Festival Year 2), Three Sisters and The Winter's Tale).**

https://dramaticarts.usc.edu/on-stage/ (last visited May 2, 2020).

31.     Despite these cancellations, the unavailability of actual hands-on or in-person instruction, and the lack of any stages or auditoria for classroom or student use, USC continues to charge and demand the same tuition and fees as if these facilities and instruction were available.

32.     USC also boldly continues to sell the hands-on and in-person nature of the instruction offered at is Viterbi School of Engineering and the importance of its laboratory facilities:

> Many classes during your curriculum here at USC will involve some level of hands on activity.   Some classes, like Mechoptronics and Chemical Engineering Lab, will be almost exclusively lab based.   In contrast, other classes might have only one or two labs associated with it.   These projects and labs complement the theory that is discussed in the classroom, and give you the real world experience of what engineers do.

http://viterbiadmission.usc.edu/handson/ (last visited May 2, 2020) (attached hereto as Exhibit 9 to Class Action Complaint).

33.     None of these lab facilities and none of this hands on activity to complement the theory that is discussed in the classroom (there are no classrooms) is being offered by USC.   The campus lab facilities are closed, and classroom instruction is not offered.   Instead of offering a "real world experience" of what engineers do, USC's Viterbi School of Engineering now offers exclusively videos of instruction to its students.   Yet, USC continues to charge and demand the same tuition and fees as if these facilities and instruction actually were being offered.

34.     The foregoing are mere illustrative examples of the discrepancy between, on the one hand, what USC promised as to the nature, quality, and

benefits of its campus facilities and mode of instruction across the board and, on the other hand, what USC actually is making available to students—distance learning through classes by video with no access to campus facilities.

35.     This is a discrepancy that is being visited on students across USC, regardless of school major or discipline.  The fact is that, regardless of school, major, or discipline, USC is not offering *any* in-classroom instruction or *any* campus facilities, and students across the board are all being charged the same tuition and fees as if such instruction and facilities were offered.

36.     Neither Plaintiff nor any of the class members are receiving the full benefits of her bargain.  Yet all are being held to perform their full contractual obligations.

**USC Students Publicly Decry The Difference In Quality And Value Of The Current "Remote Distance Learning" Instruction Provided By USC.**

37.     That the putative class member students are not receiving the benefit of the bargain for which they contracted when they agreed to enroll at USC for this academic year is independently evidenced by an online petition started by a USC student.   That petition entitled, "*Partial Tuition Reimbursement at University of Southern California*" is available online at https://www.change.org/p/usc-president-carol-l-folt-partial-tuition-reimbursement-at-university-of-southern-california (last visited May 2, 2020).  The petition demands a partial tuition and fee refund for USC students for the Spring 2020 semester, as it maintains students are being charged fees and tuition for facilities and instruction they are not receiving.

38.     Within days of its posting, the online petition received over 7,000 signatures in support, a majority coming from USC students.  Students who signed or joined the petition were also given the opportunity to post an explanation why they did so.  These postings, a sample of which are quoted below, are revealing:

a. "It's unfair for us to spend normal tuition to take online course. It's a huge amount of money, we need some recover! [sic]" (posted by Yue Liu);

b. "it is just what is fair. online classes are nowhere near the quality of education we are paying for." (posted by Ben Cho);

c. "I am a student at university of Southern California and I feel that the crisis has rendered us incapable of using university services and classes have become remote, creating a barrier with learning." (posted by Christopher Raines)

d. "I'm a Roski major where a majority of our classes have to be done in the studio. It is unfair that we are paying full tuition without access to these facilities." (posted by Ga Eun Kim);

e. "I understand the situation, but our careers matter too! My course requires a very hands on approach and if that's taken away from me, the point of the entire course is diminished." (posted by Mayank Bagrecha);

f. "USC education is already overpriced. Now we're expected to pay full price for a university of Phoenix education. That's not fair!" (posted by Hunter Isaacson);

g. "I should not have to pay for all the facilities when I am essentially banned from campus." (posted by AJ Jordan);

h. "The quality of my courses has drastically decreased since starting online classes. Students should get what they pay for." (posted by Sophie Wennemann);

i. "I'm a School of Cinematic Arts alumni and online courses will not provide the same value as in the classroom setting. Practically, it's impossible to provide the same value because of the software and equipment students have access to on campus. It's possible to learn how to edit on YouTube for free... students pay the USC tuition to GO to USC." (posted by Patrick Ivison);

j. "For majors such as film and television production, we are unable to effectively complete the requirements of our courses as well as unable to receive the education we signed up for. Especially now, where financial insecurity increasing due to Coronavirus and many

on campus and outside jobs have stopped, the many we paid for tuition if we can receive some back, can be better used in our personal lives since the courses we paid for are no longer giving us the experience they promised. An education at USC is seen as a very good and successful one, but in my last semester, now that all productions have been stopped and we can no longer finish production on our thesis films and other coursework- it almost feels like there's no point to taking these classes that have now become more about theory as opposed to the practice of it. Other schools also struggle with this (Kauffman, Roski, Theatre, etc.)" (posted by Brenda Garcia);

k. "Online education simply cannot match in-person learning. I do not feel that I am getting my money's worth, and I am sure USC, a well-funded institution, can spare a refund." (posted by Zakieh Alahmad);

l. "We are unable to receive the same educational experience without physical labs and lectures. We should not be paying the same amount of tuition for online classes!" (posted by Erin Chung);

m. "While we are still getting information, we are not getting the 'USC experience.' All the networking events are canceled, and meeting new people in your classes, making friends are not possible online." (posted by Tim Curtet);

n. "Can't teach Architecture studio online!" (posted by Aspen Thurman);

o. "USC charges $1928 per unit. As a music major, many of my courses are not available online, and those that are accessible are far less valuable than in-person. I understand that the virus and shutdown are out of USC's hands and completely unprecedented, but I shouldn't have to pay thousands of dollars in tuition when I'm not able to access anything tuition pays for nearly as much as I can in person." (posted by Emily Harrington);

p. "As a SCA student, my tuition goes towards equipment, insurance, facilities that I am no longer allowed to use. In addition, all these school events are getting cancelled, so that's more of my tuition going to nothing. Really, just reimbursement me for the graduation gown that I won't get to wear." (posted by Marco Chiong);

q. "Online course decreases the quality of learning. I paid a lot tuition to learn and so deserve better teaching quality." (posted by Ruiyu Li);

r. "We are not getting the quality education USC advertises through an online medium" (posted by Ernesto Vargas);

s. "The quality of online class is truly too much different from the one of the in-person class and I don't think it is reasonable to charge same money." (posted by Yankun Gao);

t. "One of my usual 3hr classes shortened to a 1hr class online.... calculations wise: it's $166 per hour" (posted by Yi Hu);

u. "UNFAIR to pay such an amount of money for Online Studying" (posted by Qingying Ji);

v. "USC is not Khan academy!!!" (posted by Yaoyu Tang);

w. "I'm a student at USC and it's already hard enough as it is with the amount of debt I'll be graduating with from last year alone. I don't find it fair to have spent so much money for this semester for only some of the benefits of attending the school." (posted by Sydney Smith);

x. "My daughter is in Thornton working towards a BMA, Her POP class has been cancelled & I think a refund is reasonable." (posted by Rebecca Levine);

y. "I'm not payin 80 grand for university of damn phoenix." (posted by Demetri Bouzos);

z. "This is not the education I payed for." (posted by Noah Collingwood).

39.    The foregoing is just an illustrative sample of students' postings. Countless postings expressing similar sentiments by USC students are online expressing the view that neither the online instruction nor the lack of campus facilities equate with the bargained for service and instruction that students signed up for when they enrolled at USC.  USC changed the bargain but has refused to make any refund to the aggrieved students.

**Professors and Deans Publicly Agree That "Remote Distance Learning" Is Not Equivalents To, And Less Valuable Than, Traditional On-Campus University Education.**

40.     These sentiments are hardly surprising.  College educators agree with the obvious proposition that online education devoid of campus interaction and facilities plainly is not equivalent in nature or value to the traditional in-classroom on-campus education that USC students matriculated in and paid for.  This much was confirmed in a recent April 26, 2020 Op-Ed in the New York Times in which Brown University President, Christina Paxson, pushed for a return to campus instruction in the fall, "invoking all that makes in-person education so valuable: the fierce intellectual debates that just aren't the same on Zoom, the research opportunities in university laboratories and libraries, and the personal interactions among students with different perspectives and life experiences."

41.     Other education experts are even more blunt.  Professor Jonathan Zimmerman who specializes in the history of education at the University of Pennsylvania, was quoted in a recent Philadelphia Inquirer op-ed: "Most online instruction isn't as effective as the traditional kind, which is why elite schools have consistently resisted it."

42.      Indeed, upon information and belief in over the 100-year history of USC, the university has never offered any fully online undergraduate degree.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of herself and all other similarly situated students enrolled at USC who pay or are obligated to pay any tuition or fees and any students enrolled at USC in any future summer session or semester in which USC does not provide access to its campus facilities or on-campus instruction yet continues to charge full tuition and fees without any proration.

44.     Class certification is proper because the question raised by this

complaint is one of a common or general interest affecting numerous persons, such that it is impracticable to bring them all before the court.

45.   The class is sufficiently numerous, as USC boasts an enrollment of approximately 44,000 students.  The overwhelming majority of these students pay or are obligated to pay at least some portion of tuition or fees that are at issue in this litigation.

46.   Plaintiff and her counsel are adequate representatives of the interests of the putative class.  Plaintiff is a student at USC who is being charged tuition or fees as part of her enrollment.  She contends that USC has breached its agreement with students by continuing to charge and demand full tuition and fees despite USC not providing any in-person classroom instruction at any of its campuses and not making campus facilities available for students.

47.   Plaintiff has retained counsel experienced in class action litigation to litigate and represent the interests of the class.

48.   Plaintiff's claims are typical of the claims being raised on behalf of the absent class members.  Like all absent class members, Plaintiff seeks redress for USC's failure to provide any in-person campus instruction or campus facilities while continuing to charge full tuition and fees.  The claims Plaintiff asserts are the same and co-extensive as the claims raised on behalf of the absent class members.

49. Plaintiff's complaint raises questions of fact or law common to the class that predominate over questions affecting only individual class members.    Among these predominating common questions are:

      a.  Whether the relationship between USC and students matriculated at USC is contractual in nature;

      b.  Whether USC and its member schools ceased providing in-person classroom instruction across the board;

      c.  Whether USC and its member schools deprived class members of the use and enjoyment of campus facilities;

d.  Whether the value of online instruction is not equivalent to the value of the in-person classroom instruction that class members bargain for and are for which they were and are continuing to be charged;

e.  Whether the value of campus facilities for which class members are still being charged has been lessened as a result of USC shutting down of the campuses' facilities;

f.  Whether the action of USC in continuing to charge and demand full tuition and fees has harmed the class members;

g.  Whether a method of computing classwide damages or restitution exist;

h.  Whether class members are entitled to declaratory or injunctive relief against USC;

i.  Whether USC has unjustly enriched itself at the expense of the class members.

50.   Classwide litigation provides a superior means of adjudicating this dispute over individual litigation.  The cost of litigating an individual student's claim for partial refund of tuition or fees make such individual litigation unfeasible given the costs of bringing such an action relative to the amount of damages that could be recovered in an individual action.  Further, individual litigation risks the prospect of inconsistent rulings that would unsettle the legal obligations or expectations of USC and class members.

51.   The class is ascertainable, as USC maintains rosters of all its attending students and their financial obligations and payments.

52.    In the event that the Court were to find the proposed Class definition inadequate in  any way, Plaintiff respectfully prays for certification of any other alternative, narrower class definition or for the certification of subclasses, as appropriate.

## FIRST CAUSE OF ACTION

(Breach of Contract)

53.   Plaintiff realleges and incorporates by reference all previous allegations, as though set forth in full herein.

54.   By the act of matriculation, together with payment of required fees, a contract between Plaintiff and the absent class members on the one hand and, on the other hand, USC was created.  Thus, in addition to any enrollment contract that may exist between USC and the Plaintiff and class members, an implied-in-fact contract independently exists between the parties as a matter of California law.

55.   By ceasing all in-person classroom instruction, relegating Plaintiff and the class members to online instruction only and shutting off campus facilities to Plaintiff and the class members, USC has failed to provide the services that Plaintiff bargained for in entering her contractual relationship with USC.

56.   Although USC may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students.  Yet, while USC has used the current COVID 19 shutdown circumstances to excuse its obligation to fully perform the obligations of its bargain with its students, USC continues to demand that all students fully perform their contractual bargain to pay in full all tuition and fees without any reduction for USC's lack of full performance. This is contrary to ordinary tenets of contract law.

57.   The nature of the instruction provided by USC at the time Plaintiff and the class members enrolled (*i.e.,* in-person classroom instruction) as well as the campus facilities offered by USC across its schools and campuses were and are material terms of the bargain and contractual relationship between students and USC.

58.   USC's failure to provide any in-person classroom instruction and its shutdown of campus facilities amount to a material breach of the contract.

59.   As a result of USC's material breach—regardless of whether USC's

performance may be excused—Plaintiff and the class members are not to be held liable to continue to perform their contractual obligations.  That is, regardless of whether USC's failure to offer in-person classroom instruction or to provide campus facilities is to be excused as a result of the COVID 19 pandemic, USC cannot continue to demand full payment of tuition and fees from Plaintiff and class members for services and facilities that USC indisputably is failing to provide.

60.     USC's breach and continued demand for full payment from Plaintiff and the absent class members are the proximate causes of Plaintiff's and the class members' injury.

61.     Plaintiff and the class members have all been harmed as a direct, foreseeable, and proximate result of USC's actions because Plaintiff and the class members are being charged full tuition and fees for services that USC is not providing.

62.     Plaintiff and class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for USC's breach.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

63.     USC continues to insist that full tuition and fees are due from Plaintiff and the students despite USC's failure to fully perform their contractual obligations.  Unless restrained by way of injunctive relief, USC's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin USC's continued conduct.

64.     USC continues to falsely represent on its website that it offers campus facilities with significant benefit and value to students and continues to falsely represent the value of its in-person on-campus classes.  Unless restrained by way of injunctive relief, USC's conduct is reasonably likely to lead to irreparable harm.

Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin USC's continued conduct.

65.     As the online petition referenced in paragraph 38 *supra* makes clear, USC evidently disputes its obligation to refund any tuition or fees to Plaintiff or any class member.  Given this dispute and the contractual relationship between the parties, Plaintiff and the class members are entitled to and do hereby pray for declaratory relief to have the Court declare the parties' respective obligations.

## COUNT II
### (Unjust Enrichment)

66.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-52 as though set forth in full herein.

67.   Plaintiff and the class members conveyed money to USC in the form of tuition and fees for on-campus instruction and facilities that USC did not provide and is not providing.  USC has continued to retain these monies, despite not providing the on-campus instruction or facilities

68.   Through this conduct, USC has been unjustly enriched at the expense of Plaintiff and the class members.

69.   As between the two parties (USC and the class members), it would be inequitable to permit USC to fully retain all the benefits conferred upon it by Plaintiff and the class members in the form of tuition and fees paid.

70.     Plaintiff and the class members are entitled to and do hereby pray for an order of partial restitution as redress for USC's unjust enrichment.  Plaintiff prays for the establishment of a Court-ordered and supervised common fund from which the claims of affected class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

71.     USC continues to falsely represent on its website that it offers campus

facilities with significant benefit and value to students and continues to falsely represent the value of its in-person on-campus classes (false because such on-campus instruction is not being offered).  USC also continues to defy and deny any requests for partial tuition or fee reimbursement, claiming falsely that it is offering the same services as had been bargained for by Plaintiff and the class members. Thus, USC is continuing to demand full tuition and fees even when it already has announced it will not be providing any on-campus instruction for the summer sessions and is uncertain whether it will do so for the Fall 2020 semester. Unless restrained by way of injunctive relief, USC's conduct is reasonably likely to lead to irreparable harm.  Plaintiff and the class members are entitled to and do hereby pray for injunctive relief to enjoin USC's continued conduct.

## **COUNT III**

### **(Money Had And Received)**

72.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-52 as though set forth in full herein.

73.     USC received money from Plaintiff and the class members in the form of tuition and fee payments.

74.     This money received by USC from Plaintiff and the class members was supposed to be used by USC for the benefit of the Plaintiff and class members; namely, it was supposed to be used for USC's provision of on-campus university instruction and campus facilities to Plaintiff and the class members.

75.     USC received and pocketed the money provided by Plaintiff and the class members in the form of tuition and fee payments but has not provided any campus facilities or on-campus instruction.  USC, therefore, is indebted to Plaintiff and the class members for this failure to provide on-campus tuition and campus facilities.

76.     Plaintiff and the class members hereby pray for the full panoply of

remedies available as redress for a claim of money had and received, including: a constructive trust over such monies had and received for which the benefit was not provided; restitution or disgorgement, as appropriate; and declaratory and injunctive relief.

## **COUNT IV**

### **(Violations Of UCL, Cal. Bus. Prof. Code, § 17200 et seq.)**

77.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-52 as though set forth in full herein.

78.    USC's conduct in representing that it offers campus facilities and on-campus instruction to Plaintiff and class members when, in fact, it did not do so but continued to charge and demand full tuition and fees as if such services and facilities were being provided, amounts to an unlawful, unfair, or deceptive business practices within the meaning of California's UCL.

79.    Had USC disclosed that it would not be offering an campus facilities or in-classroom instruction before it charged Plaintiff and class member's full tuition and fees and decided to retain it, Plaintiff and the class members either would not have enrolled at USC or would not have agreed to pay that same amount of tuition and fees for services and facilities they would not receive.

80.    Plaintiff and the class members conveyed money to USC in the form of tuition and fees while USC was engaged in the unlawful, unfair, or deceptive business practice.

81.    Plaintiff and the class members have been and continue to be injured by USC's unlawful, unfair, or deceptive business practices because they are not receiving the instruction or facilities for which they conveyed money to USC.

82.    Plaintiff and the class members are entitled to and do pray for an order of partial restitution as redress for USC's violations of the UCL.

83.    Plaintiff and the class members pray for the establishment of a Court-

1  ordered and supervised common fund from which the claims of affected class

2  members may be paid and the attorneys' fees and costs of suit expended by class

3  counsel, as approved by the Court, may be awarded and reimbursed.

4         84.    USC continues to falsely represent on its website that it offers campus

5  facilities with significant benefit and value to students and continues to falsely

6  represent the value of its in-person on-campus classes.  USC also continues to defy

7  and deny any requests for partial tuition reimbursement, claiming falsely that it is

8  offering the same services as had been bargained for by Plaintiff and the class

9  members.   Thus, USC is continuing to demand full tuition and fees even when it

10  already has announced it will not be providing any on-campus instruction for the

11  summer sessions and is uncertain whether it will do so for the Fall 2020 semester.

12  Unless restrained by way of injunctive relief, USC's conduct is reasonably likely to

13  lead to irreparable harm.  Plaintiff and the class members are entitled to and do

14  hereby pray for injunctive relief to enjoin USC's continued conduct.

15

16              **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

17         WHEREFORE, Plaintiff respectfully prays for judgment against Defendant

18  USC as follows:

19     1.    For an order certifying this action as a class action as defined herein,

20  appointing Plaintiff and her counsel as class representatives, and directing notice be

21  disseminated to the absent class members;

22     2.    For judgment in favor of Plaintiff and the class members and against

23  Defendant USC on all counts and claims for relief;

24     3.    For damages and/or restitution awarded to the class against Defendant USC

25  in an amount to be determined at trial;

26     4.    For the establishment of a Court-ordered and supervised common fund to

27  be funded by Defendant USC and from which: claims of all eligible class members

28  will be paid; attorneys' fees awarded to Class counsel will be paid; costs of suit

approved by the Court and incurred by Class counsel will be reimbursed; and, any award of interest will be disbursed;

    5.    For interest as permitted by law;

    6.    For an award of attorneys' fees;

    7.    For costs of suit;

    8.    For declaratory relief to have the Court declare the obligations of the parties;

    9.    For injunctive relief to enjoin Defendant's ongoing conduct; and,

    10.   For such other and future relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all counts and claims so triable.

Dated: May 4, 2020

Respectfully submitted,

THE KATRIEL LAW FIRM, P.C.

/s/ Roy A. Katriel
Roy A. Katriel, Esq.

Roy A. Katriel, Esq. (SBN 265463)
rak@katriellaw.com
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, CA  92014
Telephone: (619) 363-3333

Ralph B. Kalfayan, Esq. (SBN 133464)
ralph@rbk-law.com
Veneeta Jaswal, Esq. (SBN 320108)
veneeta@rbk-law.com
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
Facsimile: (619) 232-4019

*Counsel for Plaintiff Christina Diaz and the Putative Class*