COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:  (858) 550-6000
Facsimile:   (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA  90401
Telephone:  (310) 883-6400
Facsimile:   (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA  02116-3736
Telephone:  (617) 937-2300
Facsimile:   (617) 937-2400

Attorneys for Defendants
THE UNIVERSITY OF SOUTHERN CALIFORNIA and
THE BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:      October 30, 2020<br>Time:      9:30 a.m.<br>Place:      Courtroom 8C<br>Judge:    Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 4

    A.   State and Local COVID-19 Orders. ............................................. 4

    B.   USC Response to COVID-19. ....................................................... 4

    C.   Procedural Background and Plaintiffs' Claims. ............................ 7

III.  LEGAL STANDARD ............................................................................. 8

IV.   ARGUMENT ........................................................................................... 8

    A.   Plaintiffs' Claims Are Barred by the Educational Malpractice
        Doctrine. ......................................................................................... 8

    B.   Plaintiffs Fail to State a Claim for Breach of Contract. ............ 12

        1.   Plaintiffs fail to identify any specific contractual provision
              that USC breached. ................................................................ 13

        2.   USC expressly reserved the right to make changes to its
              educational practices and to refund tuition at its discretion. .... 16

    C.   Plaintiffs Fail to State a Claim Under Any of the Quasi-Contractual
        Theories Set Forth in the Consolidated Complaint. ........................... 18

        1.   Plaintiffs' quasi-contractual claims fail because they are
              duplicative of Plaintiffs' breach of contract claim. ................. 19

        2.   Plaintiffs' quasi-contractual claims fail because they have
              not and cannot plead unjust enrichment. .................................. 19

    D.   Plaintiffs Fail to State a Claim for Conversion. ................................. 21

    E.   Plaintiffs Fail to State a Claim for Violation of the UCL. .................. 23

V.    CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hylands, Inc.*,
No. CV 12-01150 DMG, 2012 WL 1656750 (C.D. Cal. May 2, 2012) ............ 19

*Alsides v. Brown Inst., Ltd.*,
592 N.W.2d 468 (Minn. Ct. App. 1999) ............................................................. 10

*Armstrong v. Data Processing Inst., Inc.*,
509 So. 2d 1298 (Fla. Dist. Ct. App. 1987) ....................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 8, 23

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..................................................................... 18, 20

*Banga v. Kanios*,
No. 16-cv-04270-RS, 2020 WL 1492694 (N.D. Cal. Mar. 27, 2020) .............. 13

*Barclay v. Visa USA Inc.*,
No. 09-CV-2932-H (JMA), 2010 WL 11508749 (S.D. Cal. Mar. 8, 2010) ....... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 8

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ........................................................................... 18

*Beukas v. Bd. of Trs. of Farleigh Dickinson Univ.*,
605 A.2d 708 (N.J. Super. Ct. 1992) ................................................................. 17

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992) ......................................................................................... 17

*Chan Tang v. Bank of Am., N.A.*,
No. SACV 11-2048 DOC (DTBx), 2012 WL 960373
(C.D. Cal. Mar. 19, 2012) .................................................................................. 21

# TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Cheves v. Trs. of Columbia Univ.*,
931 N.Y.S.2d 877 (2011)...................................................................................14

*Comet Theatre Enterprises, Inc. v. Cartwright*,
195 F.2d 80 (9th Cir. 1952) .............................................................................20

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ...........................................................................23

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................................................................23, 24

*Doe v. Cal. Inst. of Tech.*,
No. 2:19-cv-01005-AB, 2019 WL 8645652 (C.D. Cal. Aug. 13, 2019)............15

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) .........................................................................12

*Eisele v. Ayers*,
381 N.E.2d 21 (Ill. Ct. App. 1978) ...................................................................17

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ..........................................................................19

*Fowler v. Univ. of Phoenix, Inc.*,
No. 18cv1544-WQH-KSC, 2019 WL 1746576 (S.D. Cal. Apr. 18, 2019) .......16

*Friedman v. U.S. Bank Nat'l Ass'n*,
No. CV16-2265-CAS(FFMx), 2016 WL 3226005 (C.D. Cal. June 6, 2016)....18

*Gallagher v. Capella Educ. Co.*,
No. 3:19-CV-01342-JR, 2019 WL 8333532 (D. Or. Dec. 23, 2019)................21

*Gratz v. Bollinger*,
539 U.S. 244 (2003)..........................................................................................15

*Hendricks v. Clemson Univ.*,
578 S.E.2d 711 (S.C. 2003) ................................................................................9

*Hodges v. Apple Inc.*,
No. 13-cv-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)..........24

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-iii-

MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:20-CV-4066-DMG-PVC

**TABLE OF AUTHORITIES**

(cont'd)

**Page(s)**

*Hutchings v. Vanderbilt Univ.*,
    55 F. App'x 308 (6th Cir. 2003) ............................................................. 9

*Jackson v. Loews Hotels, Inc.*,
    No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ........ 15

*Jallali v. Nova Se. Univ., Inc.*,
    992 So. 2d 338 (Fla. 4th Dist. Ct. App. 2008) ................................................. 17

*Kandel v. Brother Int'l Corp.*,
    Nos. CV 08-1040 DSF (RCx), CV 09-6126 DSF (RCx), 2009 WL 9100406
    (C.D. Cal. Feb. 13, 2009) ................................................................. 22

*Kashmiri v. Regents of Univ. of California*,
    156 Cal. App. 4th 809 (2007) ....................................................... 13, 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ....................................................... 24

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ....................................................... 19

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................... 24, 25

*Krebs v. Charlotte Sch. of Law, LLC*,
    No. 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) ... 9, 12

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) .......................................................... 19

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................ 8

*McClean v. Duke Univ.*,
    376 F. Supp. 3d 585 (M.D.N.C. 2019) ........................................... 11

*Paladino v. Adelphi Univ.*,
    454 N.Y.S.2d 868 (1982) ......................................................... 10, 12

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Paynter v. New York Univ.*,
  319 N.Y.S.2d 893 (1971)..................................................................................12

*Peter W. v. San Francisco Unified Sch. Dist.*,
  60 Cal. App. 3d 814 (1976) ...............................................................................9

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ........................................................................20

*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985)..........................................................................................10

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .....................................................................................23

*Robinson v. Unilever United States, Inc.*,
  No. CV-17-3010 DMG, 2018 WL 6136139 (C.D. Cal. June 25, 2018) ............25

*Roe v. Saint Louis Univ.*,
  No. 4:08CV1474 HEA, 2012 WL 6757558 (E.D. Mo. Dec. 31, 2012).............11

*Ross v. Creighton Univ.*,
  957 F.2d 410 (7th Cir. 1992) ...................................................................9, 10, 14

*Ross v. U.S. Bank Nat'l Ass'n*,
  542 F. Supp. 2d 1014 (N.D. Cal. 2008).............................................................22

*Rouse v. Duke Univ.*,
  869 F. Supp. 2d 674 (M.D.N.C. 2012) ..............................................................14

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014)...........................................................................18

*Searle v. Regents of Univ. of Cal.*,
  23 Cal. App. 3d 448 (1972) ..............................................................................17

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ..........................................................................23

# TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ....................................................24, 25

*Soueidan v. St. Louis Univ.*,
  926 F.3d 1029 (8th Cir. 2019) .................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................8

*Thomas v. Meharry Med. Coll.*,
  1 F. Supp. 3d 816 (M.D. Tenn. 2014) ...............................................10

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................24

*United Studio of Self Def., Inc. v. Rinehart*,
  No. SA CV 18-1048-DOC, 2019 WL 6973520 (C.D. Cal. Sept. 9, 2019) ........22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................24

*Voris v. Lampert*,
  7 Cal. 5th 1141 (2019) .....................................................................21, 22

*Vurimindi v. Fuqua Sch. of Bus.*,
  435 F. App'x 129 (3d Cir. 2011) ..........................................................9

*Ward v. Mitchell*,
  No. C 12-03932 WHA, 2012 WL 5301475 (N.D. Cal. Oct. 25, 2012) ............22

*Wright v. Capella Univ., Inc.*,
  378 F. Supp. 3d 760 (D. Minn. 2019) ...............................................9, 21

*Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*,
  No. CV 10-1460 SVW, 2010 WL 11595726 (C.D. Cal. May 5, 2010)............23

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.*..............................................3, 7, 23, 24, 25

# TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
  9(b) ................................................................................................................24
  12(b)(6) ............................................................................................................8

1  **I.     INTRODUCTION**

2          Founded in 1880, the University of Southern California ("USC") is one of the

3  world's leading private research universities.  An anchor institution in Los Angeles

4  and a global center for arts, technology, and international business, USC provides a

5  world-class education to its students by offering a diverse curriculum and providing

6  extensive opportunities for interdisciplinary study and collaboration with leading

7  researchers.

8          When the COVID-19 pandemic struck in early March 2020, USC acted swiftly

9  to protect its more than 40,000 students, as well as its faculty and staff.  From

10 March 4, 2020 to March 18, 2020, a litany of federal, state, and local guidance issued,

11 recommending—and eventually mandating—social distancing practices in response

12 to an evolving and increasingly devastating global pandemic.  By March 19, 2020,

13 California and Los Angeles had respectively enacted unprecedented orders

14 mandating that residents stay at home and requiring all non-essential businesses to

15 cease operations immediately.  Educational institutions were exempted from these

16 orders only "for the purposes of facilitating distance learning," meaning that K-12

17 schools, colleges, and universities across the state (and across the country) were

18 forced to close their campuses with little to no notice.

19         USC's administration, faculty, and staff expended significant efforts and

20 resources to quickly pivot to a remote education environment to avoid disrupting the

21 education of tens of thousands of students.  In doing so, USC drew upon the

22 knowledge, experience, and professional judgment of its administrators and

23 innovative scholars, researchers, teachers, and mentors.  USC also announced various

24 supportive measures for its students, including issuing pro-rated refunds for room

25 and meal plan payments and disbursing millions of dollars in federal Coronavirus

26 Aid, Relief and Economic Security (CARES) Act funds for student emergency use.

27 Any assertion that "USC is profiting from COVID-19"—through curricular decisions

28 made to protect the health and safety of students, faculty, and staff, while also

ensuring that students maintained uninterrupted degree progress—is simply wrong. The COVID-19 pandemic has had a markedly negative impact on USC's finances. University revenues have dropped and costs have increased because USC has taken extensive steps to deliver on its mission statement during the public health crisis, requiring both significant effort and substantial additional expenses.

In a misguided attempt to extract money from USC while it is experiencing tremendous adverse financial and other negative effects due to COVID-19, this consolidated action is one of over 200 similar lawsuits filed by plaintiffs' attorneys across the country attacking universities' educational responses to the global pandemic. [1]   Attempting to substitute their judgment for that of university administrators, and wielding the cudgel of a putative nationwide class action, plaintiffs' attorneys seek to dictate the manner and value of education that universities delivered and are continuing to deliver during a worldwide health crisis.

Plaintiffs' claims are each premised on the same allegation: USC's transition to remote education as mandated by state and local government authorities in the face of a global pandemic has impacted the quality of education Plaintiffs received since March 10, 2020.   Plaintiffs seek three categories of unspecified partial refunds: (i) tuition – for the "decreased value of the education they received" as a result of the transition from in-person to remote education, (ii) fees – for unused services, and (iii) meal plans – for unused portions of the plans.   Plaintiffs seek refunds not only for part of the Spring 2020 semester, but also for all future semesters in which USC decides—for the health and safety of its students—to deliver education remotely. The consolidated complaint is notable for what Plaintiffs ***do not*** allege: (1) that units for which they paid were unavailable; (2) that their progress toward a degree was hindered; or (3) that they were unable to timely earn a degree.   Indeed, certain Plaintiffs allege that they graduated with a USC degree at the end of the Spring 2020

---

[1] Plaintiffs' counsel here have collectively filed over 25 other similar lawsuits.

1   semester.

2          Plaintiffs' claims fail as a matter of settled law.  Although Plaintiffs attach

3   different labels to the six claims asserted, each claim boils down to a complaint about

4   the quality of education provided during the pandemic, namely that it is inferior

5   because it is occurring remotely.  It is well-established that such "educational

6   malpractice" claims are not cognizable under California law.  Courts in California

7   and across the country recognize that a myriad of factors affect education quality,

8   and courts cannot and do not evaluate quality, value, or adequacy of education,

9   especially when faced with urgent and unprecedented circumstances like those here.

10  For this reason alone, the consolidated complaint should be dismissed.

11         Additionally, each of Plaintiffs' claims fail for other independent reasons.

12  *First*, Plaintiffs fail to state a claim for breach of contract because they have not

13  adequately pled the existence of a contract with a clear and unequivocal term of

14  in-person education.  None of the general promotional statements cited in the

15  consolidated complaint mandates in-person education as the exclusive manner of

16  learning.  Further, under the express terms of the USC Catalogue, tuition is assessed

17  in terms of units toward a degree; it is not assessed based on a particular manner of

18  instruction, in-person instruction, or unfettered access to campus.  And USC

19  expressly reserved the right to change its policies and the way it administers its

20  courses without a refund of tuition.  *Second*, Plaintiffs' quasi-contractual claims fail

21  because they cover the same subject matter as the parties' express agreement and

22  because Plaintiffs fail to demonstrate how USC's retention of tuition and fees would

23  be unjust.  *Third*, their conversion claim fails because Plaintiffs have not specifically

24  identified the funds allegedly converted by USC.  Even if they had done so, the

25  allegations are duplicative of the breach of contract claim, and as such, the claim is

26  barred by the economic loss rule.  *Fourth*, Plaintiffs cannot state a claim for violation

27  of California Business and Professions Code §§ 17200 *et seq*. ("UCL") because they

28  have not—and cannot—plead any unlawful, unfair, or fraudulent conduct by USC.

Given these fatal flaws, which cannot be cured, USC and the Board of Trustees of the University of Southern California ("Board of Trustees") respectfully request that the Court dismiss the consolidated complaint in its entirety with prejudice.

## II.   FACTUAL BACKGROUND

### A.   State and Local COVID-19 Orders.

On March 4, 2020, in light of widespread confirmed cases of COVID-19 across the globe, the Governor of California declared a State of Emergency.  (Ex. A [Executive Order N-33-20].)[2]  The same day the Mayor of Los Angeles issued a Declaration of Local Emergency in light of the "imminent threat to the public health from the introduction of COVID-19 in the City of Los Angeles."  (Ex. B [Decl. of Local Emergency].)  On March 19, 2020, Governor Newsom issued a statewide stay at home order, mandating that "all individuals living in the State of California . . . stay home or at their place of residence" with limited exceptions for "critical infrastructure sectors . . . considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof."  (Ex. A [Executive Order N-33-20].)  The same day Mayor Garcetti issued a "Safer at Home" order that required all Los Angeles residents to stay at home and all businesses to cease operations.   [Ex. C [Stay-at-Home Order].)   The order exempted educational institutions, but only "for purposes of facilitating distance learning."  (*Id.*)[3]

### B.   USC Response to COVID-19.

Against this backdrop and in response to the widespread, global pandemic, USC communicated frequently and transparently with its students.  (Consolidated

---

[2] All exhibits cited are attached to the Declaration of Alexandra R. Mayhugh filed concurrently herewith.

[3] USC respectfully requests that the Court take judicial notice of Exhibits A-C, which are state and local government orders, for the reasons set forth in its concurrently filed Request for Judicial Notice.

Class Action Complaint ("CC") ¶¶ 70-78, 80-83.)   On March 6, USC announced certain precautionary measures, including a three-day test of the university's technical capabilities from March 11 through March 13 that moved all lectures and seminars to a remote setting.  (Ex. D [Mar. 6 Test]; *see* CC ¶ 70.)  On March 10, following the discovery of the first case of community transmission in Los Angeles, USC announced that it would continue remote classes after the March 14-21 Spring Recess for the week of March 22-29.  (Ex. E [Mar. 10 Update]; *see* CC ¶ 71.)  On March 11, the World Health Organization officially classified COVID-19 as a worldwide pandemic, prompting USC to extend remote education to April 14.  (Ex. F [Mar. 11 Notice]; *see* CC ¶ 72.)  USC explained its "decisions [we]re intended to ensure the health and safety of our USC and broader community."  (Ex. F [Mar. 11 Notice].)  On March 16, USC announced its decision "to finish the academic semester online or remotely" in response to increasingly strict guidance from state and federal agencies, including the recommendation to "halt[] all gatherings larger than 50 [people] for the next eight weeks."  (Ex. G [Mar. 16 Notice]; *see* CC ¶ 74.)

On March 20, 2020, USC issued an update and summary of actions taken in response to "new local, state and federal directives."  (Ex. H [Mar. 20 Update]; *see* CC ¶ 75.)  Among other things, the update explained that "[t]he order issued by Los Angeles County and the City of Los Angeles requires people to remain at home and stay away from others as much as possible."  (Ex. H [Mar. 20 Update].)  As a result, public access to campus was limited to those "performing essential functions for the University and supporting on-campus residents and online and remote learning."  (*Id*.)  Over the next month, USC continued to place the utmost importance on health and safety measures and take action to assist students with their education and overall well-being, including providing on-campus housing and meals to the more than 1,600 students unable to return home.  (Ex. I [Apr. 10 Update]; *see* CC ¶ 80.)

On April 28, 2020, USC issued a communication entitled "Academic Updates for Current and Future Trojans," covering several topics, including the Summer 2020

semester and planning for Fall 2020.  (Ex. J [Apr. 28 Update]; *see* CC ¶ 81.)  USC explained that it would provide pro-rated housing and meal plan fee refunds to students, but that it did not have plans to provide pro-rated tuition refunds for the Spring 2020 semester because the university was "continuing to provide a high-quality education, ensure academic progress towards degree [completion], and offer a robust learning environment."[4]  (Ex. J [Apr. 28 Update].)  USC separately explained that it was in receipt of federal funds from the CARES Act and was distributing those funds to students "experiencing financial hardships as a result of COVID-19."  (*Id.*)

Over the next few months, USC continued to send frequent updates to its students.  On June 2, 2020, President Folt sent a message concerning the 2020-2021 academic year, in which she expressed cautious optimism about the possibility of resuming in-person classes, while also explaining that "things could change" and all "plans remain contingent on several factors, including the continued spread of COVID-19, and the health orders from state and local authorities."  (Ex. K [June 2 Message]; *see* CC ¶ 82.)  On July 1, USC provided a further update, explaining that "Los Angeles is experiencing an alarming spike in coronavirus cases" and "recommending all undergraduates take their courses online."  (Ex. L [July 1 Message]; *see* CC ¶ 82.)  The update also announced a new scholarship opportunity "for up to two free online classes . . . designed to help ensure academic progress."  (Ex. L [July 1 Message].)  On August 5, USC confirmed that instruction for the Fall 2020 semester would be conducted remotely, with only limited exceptions.  (Ex. M

---

[4] Plaintiffs contend that USC "is in the minority" in not issuing partial tuition refunds for Spring 2020 and in not reducing tuition for the 2020-2021 academic year.  (CC ¶ 8 & n.1.)  This allegation is false as demonstrated by the articles on which Plaintiffs rely.  One article states that "relatively few" institutions refunded tuition for Spring 2020, and out of over 5,000 academic institutions in the United States, the articles combined identify fewer than 10 that reduced tuition for the 2020-2021 academic year.  (*Id.*)

[Aug. 5 Update]; *see* CC ¶ 83.)[5]

## C.    Procedural Background and Plaintiffs' Claims.

In May 2020, Plaintiffs initiated this litigation by filing five separate putative class action complaints alleging various claims seeking a refund of tuition and fees paid for the Spring 2020 semester with certain of the complaints also seeking a refund for future semesters for which USC does not provide in-person, on-campus instruction and services.   Following motion practice by Plaintiffs, this Court consolidated the putative class actions on July 17, 2020, and appointed a "tripartite co-interim class counsel structure."  (ECF No. 54 at 10-11.)  On August 14, 2020, Plaintiffs filed a consolidated class action complaint alleging claims for (i) breach of contract, (ii) restitution based on quasi-contract, (iii) unjust enrichment, (iv) conversion, (v) money had and received, and (vi) violation of the UCL.  (*See generally* CC.)[6]  Plaintiffs purport to assert these claims individually and on behalf of a class of "students who paid or were obligated to pay tuition, fees, or other costs to [USC] for the Spring 2020 academic term or any subsequent term."  (*Id.* ¶ 101.) As such, in addition to seeking a partial refund for the Spring 2020 semester, Plaintiffs seek prospective refunds over some undetermined number of future semesters, despite knowing full well before paying tuition for the Fall 2020 semester that in-person instruction for that semester was unlikely if not impossible.

USC and the Board of Trustees now move to dismiss Plaintiffs' consolidated complaint in its entirety.

---

[5] Exhibits D-M are incorporated by reference into the consolidated complaint for the reasons set forth in the concurrently filed Request for Judicial Notice.  (*See* CC ¶¶ 70-72, 74-75, 77, 80-83 & n.22-24, 26-29, 31-37.)

[6] Plaintiffs name the Board of Trustees as a defendant (CC ¶ 43)—in addition to USC—yet the consolidated complaint is devoid of any allegations explaining the Board of Trustees' involvement in the alleged conduct or basis for liability.  As such, the arguments herein apply equally to claims against USC and the Board of Trustees.

### III. LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court accepts factual allegations as true, this tenet "is inapplicable to legal conclusions." *Id.* When stripped of "conclusory statement[s]," the complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 561 (internal quotation marks and alteration omitted).

To determine whether a complaint states a claim, a court can consider exhibits to and documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### IV. ARGUMENT

#### A. Plaintiffs' Claims Are Barred by the Educational Malpractice Doctrine.

In the face of an unprecedented global pandemic, USC made the necessary decision to transition to remote education for part of the Spring 2020 semester and continuing to the present. The crux of Plaintiffs' claims is that remote education is "lower quality" and "less valuable" than in-person education. (*See, e.g.*, CC ¶ 7 ("USC has offered less valuable 'remote' classes through video conference or recorded presentations"); *id.* ¶ 13 ("less valuable education and experience USC has been providing since mid-March 2020"); *id.* ¶ 68 ("lower quality and less valuable education and services"); *id.* ¶ 92 ("newly online offerings are of lower quality and value than the on-campus programs")).

Plaintiffs' claims are—in substance—educational malpractice claims because each is premised on Plaintiffs allegedly having "received an inadequate education."

*Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003) ("California represents the position of the majority of states in refusing to recognize the tort of 'educational malpractice' in claims brought by students alleging they received an inadequate education.") (citing *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814 (1976)).

It is well settled that claims regarding the quality, value, or adequacy of education are not cognizable under California law or that of most other states. *See Peter W.*, 60 Cal. App. 3d at 824-25; *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034-36 (8th Cir. 2019) (affirming dismissal of educational malpractice claims); *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) (refusing to find "general complaint about the quality of the education . . . received" to be "actionable"); *Hutchings v. Vanderbilt Univ.*, 55 F. App'x 308, 310 (6th Cir. 2003) ("Courts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services."); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (noting "the overwhelming majority of states that have considered [an educational malpractice] claim have rejected it"); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 771 (D. Minn. 2019) (explaining doctrine "bars courts from inquiring into the nuances of education processes and theories") (internal quotation marks and alteration omitted); *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL 3880667, at *6 (W.D.N.C. Sept. 5, 2017) ("Any inquiry into the quality or value of the services provided in return for [p]laintiffs' tuition and fees constitutes an impermissible foray into educational malpractice.").

The educational malpractice doctrine is borne out of the idea that "classroom methodology affords no readily acceptable standards of care, or cause, or injury." *Peter W.*, 60 Cal. App. 3d at 824.  Courts cannot—and do not—evaluate or second-guess the wide discretion and flexibility afforded to schools to instruct students and administer educational programs.  This is due to at least four policy concerns: (1) "the

lack of a satisfactory standard of care by which to evaluate an educator" as "[t]heories of education are not uniform, and different but acceptable scientific methods of academic training make it unfeasible to formulate a standard by which to judge the conduct of those delivering the services"; (2) "inherent uncertainties . . . about the cause and nature of damages"; (3) "the potential . . . for a flood of litigation against schools"; and (4) the threat of "embroil[ing] the courts into overseeing the day-to-date operations of schools," which is "particularly troubling in the university setting where it necessarily implicates considerations of academic freedom and autonomy." *Ross*, 957 F.2d at 414-15 (internal quotation marks and alternation omitted); *see also Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014) (Courts "are ill-suited 'to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of . . . educational institutions.'") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985)); *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (1982) ("Professional educators—not judges—are charged with the responsibility for determining the method of learning that should be pursued for their students.").

The doctrine applies to all challenges to the quality or value of education, regardless of whether the claims are labeled as contract, quasi-contract, consumer fraud, or some other equitable theory of recovery. *See Ross*, 957 F.2d at 416 (noting that courts should reject attempts to "repackage" educational malpractice claims as breach of contract); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999) (affirming dismissal of claims "challeng[ing] the general quality of the instructors and the education . . . received . . . even though such claims are styled as breach of contract, fraud, and misrepresentation"); *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. Dist. Ct. App. 1987) (affirming dismissal because "[r]egardless of the nomenclature, the gravamen of count III is a cause of action for educational malpractice which is not cognizable").

The doctrine also extends to fees assessed for non-curricular university

services.   Ascertaining which university services are "educational" is itself an exercise in academic decision-making because it requires the court to "inquire into the nuances of educational processes and theories."   *Roe v. Saint Louis Univ.*, No. 4:08CV1474 HEA, 2012 WL 6757558, at *10 (E.D. Mo. Dec. 31, 2012), *aff'd*, 746 F.3d 874 (8th Cir. 2014).   As a result, where campus services are "integrally related to the educational process and to student wellbeing," claims concerning their quality or value are equally barred by the educational malpractice doctrine.   *See McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 609 (M.D.N.C. 2019) (finding claim that university failed to provide plaintiff with counseling services it had advertised to be barred); *see also Roe*, 2012 WL 6757558, at *10 ("it would require the Court to inquire into the nuances of what should be determined 'state of the art' physical training program").

There is no question that the educational malpractice doctrine applies here to bar Plaintiffs' six claims to the extent they seek partial refunds for tuition and fees.[7] The gravamen of each of Plaintiffs' claims is a challenge to USC's educational practices during a pandemic.   The Plaintiffs that were enrolled in the Spring 2020 semester all concede they attended in-person classes and had access to USC facilities until March 2020 (CC ¶¶ 16, 20, 24, 28, 31, 37, 40), but contend that USC's transition to remote education during the Spring 2020 semester and continuing to the present has resulted in a lower quality or less valuable educational experience.   This is not a case where Plaintiffs allege unavailability of units for which they paid, that their progress toward a degree was hindered, or that they were unable to timely earn a degree.   Nor is it a case—as set forth in the next section—where Plaintiffs allege facts showing that USC made a clear and unequivocal contractual promise to provide education in a particular manner, namely through in-person instruction and activities.

Regardless of the label attached to the claims asserted, in seeking a partial

---

[7] USC does not assert the doctrine as to Plaintiffs' meal plan refund allegations, which are false and contrary to the consolidated complaint and materials incorporated by reference therein.   Regardless, such allegations fail for the reasons set forth below.

refund for an unspecified amount in tuition and fees as a result of the transition to remote education for health and safety reasons, Plaintiffs ask this Court to: (i) inquire into the nuances of a USC education provided in-person versus remotely, (ii) assess the quality and value of such educational experiences, and (iii) assign a dollar amount based on the purported difference.  This is precisely the type of "impermissible foray into education malpractice" that courts have abstained from for decades.  *Krebs*, 2017 WL 3880667, at *6; *Paladino*, 454 N.Y.S.2d at 872 ("The courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods.") (internal quotation marks omitted).[8]

In sum, to the extent they seek a refund of tuition and fees, each of Plaintiffs' six claims should be dismissed as an improper educational malpractice claim.

**B.      Plaintiffs Fail to State a Claim for Breach of Contract.**

To state a claim for breach of contract, Plaintiffs must allege "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (emphasis and internal quotation marks omitted).

---

[8] For example, in *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 893 (1971), the doctrine was applied where a student's father sought a tuition refund after New York University cancelled all classes for the remainder of the school year in the wake of protests against the Vietnam War and a shooting at Kent State.  The appellate court reversed the trial court's judgment in favor of the father, finding that the "court erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes."  *Id*. at 894. The court explained: "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom."  *Id*. While *Paynter* dealt with a university's decision to cancel classes altogether—and here, USC merely transitioned to remote education—the case illustrates the guiding legal principal that applies with equal force here: courts do not second guess educational decisions made in the face of unforeseen and dangerous world events.

1.     **Plaintiffs fail to identify any specific contractual provision that USC breached**.

Plaintiffs allege that "language on USC's website and in USC's handbooks, catalogues, and other materials" form the terms of an "implied-in-fact contract." (CC ¶ 112.)   "Although courts have characterized the relationship between the student and educational institution as contractual, they have recognized that contract law should not be strictly applied" in these circumstances.  *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 824 (2007).[9]  This rule of flexibility is critical because "[u]niversities are entitled to some leeway in modifying their programs from time to time to exercise their educational responsibility properly." *Id*. Accordingly, courts are generally "reluctant to apply contract law to general promises or expectations" in university catalogues, student handbooks and the like. *Id*. at 826; *see also Banga v. Kanios*, No. 16-cv-04270-RS, 2020 WL 1492694, at *7 (N.D. Cal. Mar. 27, 2020) (university's "academic . . . decisions should not, under California law, be governed by contract theory").  In other words, "plaintiff[s] must do more than simply allege that the education was not good enough"; they "must point to an

---

[9] In *Kashmiri*, the appellate court affirmed the trial court's judgment in favor of a class of students asserting contract claims against the Regents of the University of California based on, among other things, the Regents' decision to "raise[] professional educational fees for continuing students" after making clear and explicit statements "on its website and in its catalogues that such fees would not be raised for the duration of the students' enrollment in the professional program." 156 Cal. App. 4th at 815. *Kashmiri*'s reliance on a "clear and explicit" contractual promise is in stark contrast to Plaintiffs' contract claim here, which is based on Plaintiffs' general expectations about "in-person learning and student campus life experience" and general descriptions or statements found in USC's promotional materials. (CC ¶ 3.) Indeed, in *Kashmiri*, the students' contract claims survived only because they did "***not*** involve a general statement or expectation" regarding the fees at issue; rather, "[t]he promise not to raise the [fee] for continuing students was clear and explicit." 156 Cal. App. 4th at 826, 828 (emphasis added).  Nor would the claims have "require[d] an inquiry into the nuances of educational processes and theories." *Id*. at 826 (internal quotation marks omitted).

identifiable contractual promise that the defendant failed to honor." *Ross*, 957 F.2d at 416-17; *see also Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 683 (M.D.N.C. 2012) (rejecting vague assurances of educational quality and experience as "too general to be enforceable as a matter of contract").

Plaintiffs point to four categories of alleged statements in an effort to establish a clear and explicit contractual promise of in-person education: (1) statements on USC's website and from the USC Handbook that generally describe campus buildings or facilities, as well as the larger USC community (CC ¶¶ 56-58, 61, 67); (2) general descriptions on USC's website regarding on-campus housing or potential benefits of living on campus (*id.* ¶¶ 55, 66); (3) general statements from the USC Handbook regarding interaction with faculty and participation in student organizations (*id.* ¶¶ 62-63); and (4) an editorialized excerpt from the USC Catalogue's Schedule of Classes that identifies the location of one class and two labs prior to COVID-19 (*id.* ¶ 64). These categories of allegations are insufficient to establish an unequivocal contractual promise to provide in-person education and unfettered access to USC's campuses. Plaintiffs allege no more than a general expectation of "in-person education" and "student campus life experience" that USC "highlighted in its promotional marketing materials." (*Id.* ¶¶ 3, 60.)

As to the first category, general descriptions about the existence and range of on-campus facilities or the broader USC community are insufficient to state a breach of contract claim. *See Kashmiri*, 156 Cal. App. 4th at 826 (in cases alleging breach of contract claim against an educational institution, "[c]ourts . . . have been reluctant to apply contract law to general promises or expectations"); *Cheves v. Trs. of Columbia Univ.*, 931 N.Y.S.2d 877, 877 (2011) (affirming dismissal where university brochure listing certain benefits and services generally available did not guarantee "unfettered irrevocable access for alumni to the campus or its facilities").

Next, Plaintiffs' allegations regarding living on campus are a red herring. Such allegations relate to on-campus ***housing***, not in-person ***classes***, and no Plaintiff

alleges living on campus.  (*Compare* CC ¶¶ 55, 68, *with id*. ¶¶ 14-41.)  Moreover, Plaintiffs do not seek housing refunds, and acknowledge that USC announced that it would provide pro-rated housing and meal plan fee refunds to students.  (*Id*. ¶¶ 11, 80; *see also* Ex. J [Apr. 28 Update].)  Promotional statements concerning housing services not used or relied upon by Plaintiffs are insufficient.[10]

Also, Plaintiffs' reliance on alleged statements from the USC Handbook that students could "participate in student organizations" and that USC would "provide for student access to members of the faculty in appropriate settings outside the classroom" (CC ¶¶ 62-63) is misplaced.  Such statements do not mandate that participation in student organizations or access to faculty members be **in-person** or **on-campus**.  Further, there can be no reasonable expectation that the "appropriate setting" to meet with faculty or participate in student organizations during a global pandemic is in-person or on USC's campuses.

Last, the editorialized excerpt from the USC Catalogue's Schedule of Classes is insufficient to show a clear and explicit contractual promise to provide an in-person education; it merely identifies the location of one class and two labs prior to COVID-19.  Moreover, as set forth below, USC reserves the right to change course offerings and the content of the Catalogue at any time.  (*See infra* Section IV.B.2.)

Courts consistently dismiss complaints where, as here, the pleading fails to allege **specific** and **definite** contractual promises or guarantees that were allegedly breached by the educational institution.  *See, e.g.*, *Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005-AB (KSx), 2019 WL 8645652, at *5 (C.D. Cal. Aug. 13, 2019) (dismissing contract claims where statements in university policy documents were "not

---

[10] *See Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *5 (C.D. Cal. July 24, 2019) (granting motion to dismiss class allegations, noting "[i]n a class action, named plaintiffs representing a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'") (quoting *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003)).

sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached") (internal quotation marks omitted); *Fowler v. Univ. of Phoenix, Inc.*, No. 18cv1544-WQH-KSC, 2019 WL 1746576, at *14 (S.D. Cal. Apr. 18, 2019) (dismissing claims where plaintiff failed to allege specific "contract rights regarding reenrollment, fees, or program requirement changes, were breached" and finding "promises to provide a convenient, efficient, high-quality education" amounted to "general promises or expectations" that did not "reasonably constitute specific promises to provide an educational service") (internal quotation marks omitted).[11]  As such, Plaintiffs' breach of contract claim should be dismissed.

### 2.    USC expressly reserved the right to make changes to its educational practices and to refund tuition at its discretion.

Assuming *arguendo* that Plaintiffs had identified a specific contractual requirement to provide in-person education, their contract claim would nevertheless fail.  The USC Catalogue states:

> The *USC Catalogue* is the document of authority for all students.  The program requirements listed in the *USC Catalogue* supersede any information that may be contained in any bulletin of any school or department.  ***The university reserves the right to change its policies, rules, regulations, requirements for graduation, course offerings and any other contents of this catalogue at any time.***

(Ex. N [USC Catalogue] at 45-46 (emphasis added).)

Furthermore, in the "Tuition and Fees" section, the USC Catalogue provides

---

[11] Additionally, certain Plaintiffs seek to recover Fall 2020 semester tuition and fees. These claims fail for the same reasons, and because USC specifically advised students of the possibility of remote education, and then confirmed that instruction for the Fall 2020 semester would be conducted remotely.  (Exs. K [June 2 Message], L [July 1 Message], and M [Aug. 5 Update]; *see* CC ¶¶ 82-83.).  As to meal plans for Spring 2020, USC already agreed—before any suit was threatened or filed—to provide pro-rated meal plan fee refunds to students.  (Ex. J [Apr. 28 Update].)

that tuition is determined based on units per semester, and states: "By registering, students agree to be held responsible for all tuition and fees," and "Tuition is refundable entirely at the discretion of the university." (*Id.* at 47-48, 52, 54.)

Because USC reserved the express right to change, among other things, its policies and course offerings, implementing a change to the manner of delivery of courses by pivoting to remote education pursuant to state and local health and safety orders during a pandemic cannot constitute a breach as a matter of law. *See Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342-43 (Fla. 4th Dist. Ct. App. 2008) (holding that where a handbook permitted the university to "revise or modify" its policies "at any time," the university could not be held liable for doing so, as long as the changes were not arbitrary or capricious); *Beukas v. Bd. of Trs. of Farleigh Dickinson Univ.*, 605 A.2d 708, 708-09 (N.J. Super. Ct. 1992) (finding reservation of right in university bulletins to eliminate any college within university subject only to giving adequate notification to its students precluded recovery under express contract theory); *Searle v. Regents of Univ. of Cal.*, 23 Cal. App. 3d 448, 452 (1972) (concluding that defendant had discretion to change policy regarding non-faculty members conducting courses for credit). Further, the language in the USC Catalogue concerning tuition refunds forecloses Plaintiffs' attempt to obtain a refund of tuition that was refundable solely at USC's discretion. *See, e.g.*, *Eisele v. Ayers*, 381 N.E.2d 21, 25-26 (Ill. Ct. App. 1978) (affirming dismissal where university catalogue stated "tuition [was] . . . subject to change without notice" and plaintiff students had not alleged university raised tuition in bad faith).[12]

Also, pursuant to the terms of the USC Catalogue, tuition is assessed in terms of units toward a degree; it is not assessed based on a particular manner of instruction,

---

[12] It is axiomatic that a party cannot breach a contract through conduct specifically authorized by that same contract. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 358-66 (1992) (rejecting challenge to lessor availing itself of express contract terms that lessee argued could not be equitably enforced).

in-person instruction, or unfettered access to campus. The consolidated complaint contains no allegations that USC's transition to remote education has impeded any of the Plaintiffs' progress toward a degree or otherwise deprived them of the units for which they paid. In fact, certain Plaintiffs allege that they graduated upon completing the Spring 2020 semester. (*See* CC ¶ 14 (Plaintiff Choi earned Business Administration degree); *id*. ¶ 29 (Plaintiff Saddigh earned L.L.M. degree).)

Plaintiffs cannot maintain a breach of contract claim because the USC Catalogue—undisputedly part of any contractual relationship between USC and its students and "the document of authority for all students"—explicitly states that USC reserves the right to modify its educational offerings, that tuition is determined based on number of enrolled units, not the number of in-person classes held each semester, and that USC will refund tuition at its sole discretion.

## C.   Plaintiffs Fail to State a Claim Under Any of the Quasi-Contractual Theories Set Forth in the Consolidated Complaint.

Plaintiffs try to recast their contract claim as quasi-contract, unjust enrichment, and/or money had and received claims. (*See* CC ¶¶ 120, 127, 146.) California courts treat such claims—all of which seek equitable relief in the form of restitution based on alleged unjust enrichment—the same. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.") (internal quotation marks omitted); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (explaining that money had and received is simply "a form of restitution that applies when [] unjust enrichment occurred"), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (noting for unjust enrichment that courts may "construe the cause of action as a quasi-contract claim seeking restitution"); *Friedman v. U.S. Bank Nat'l Ass'n*, No. CV16-2265-CAS(FFMx), 2016 WL 3226005, at *8 (C.D. Cal. June 6, 2016) ("[M]oney had

and received is . . . not a specific claim but is instead a form of pleading used to aver the existence of monetary indebtedness.") (internal quotation marks omitted).  As such, all three claims can be addressed together, and each should be dismissed.

### 1.   Plaintiffs' quasi-contractual claims fail because they are duplicative of Plaintiffs' breach of contract claim.

The existence of a contract between parties defeats quasi-contractual claims based on the same subject matter.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *Allen v. Hylands, Inc.*, No. CV 12-01150 DMG (MANx), 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012) (dismissing claims for money had and received and unjust enrichment because "a plaintiff may not maintain quasi-contract claims . . . 'if the parties have an enforceable agreement regarding a particular subject matter'") (quoting *Klein*, 202 Cal. App. 4th at 1388).

Here, Plaintiffs assert a contractual relationship between the parties that covers the same subject matter—provision of in-person curricular and other educational services—as Plaintiffs' claims for quasi-contract, unjust enrichment, and money had and received.  (*Compare* CC ¶¶ 41, 54-68, 109-119, *with id.* ¶¶ 120-134, 146-151.) Because Plaintiffs' quasi-contractual claims are based on the same set of allegations and subject matter as their breach of contract claim, they must be dismissed.

### 2.   Plaintiffs' quasi-contractual claims fail because they have not and cannot plead unjust enrichment.

As set forth above, unjust enrichment is a requirement for each of Plaintiffs' quasi-contractual claims and requires a "show[ing] that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).  "[T]he theory underlying [such] a claim [is] that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or

request." *Astiana*, 783 F.3d at 762 (internal quotation marks omitted).

The benefit allegedly conferred by Plaintiffs to USC was payment of tuition and fees for the Spring 2020 semester, as well as payment for meal plans. (*See* CC ¶¶ 15, 18, 22, 26, 30, 36, 39, 85.)  Plaintiffs did not make such payments as a result of "mistake, fraud, coercion, or request" as required.  Instead, Plaintiffs acknowledge, as they must, that they paid USC tuition and fees in exchange for units toward a degree and related items or services, and they received the number of units they expected in return for those payments, as classes were held in-person through March 10, 2020, and then remotely through the conclusion of the semester.  (*Id.* ¶¶ 74, 83.)

As discussed *supra*, the USC Catalogue provides that tuition is based on number of enrolled units.  (*See supra* Section IV.B.2.)  And none of the Plaintiffs alleges earning fewer units for the Spring 2020 semester or otherwise being impeded in their progress toward a degree.  Indeed, two Plaintiffs concede that they ***graduated*** during an unprecedented pandemic (CC ¶¶ 14, 29)—a testament to USC's successful transition to remote learning and commitment to the education and success of its students.[13]  Although Plaintiffs claim to take issue with the quality of education

---

[13] Four of the Plaintiffs allege paying tuition and fees for the Fall 2020 semester. (*See* CC ¶¶ 19, 23, 27, 33.)  Plaintiffs do not and cannot allege that they had a reasonable expectation of in-person classes or an on-campus educational experience prior to paying tuition for the Fall 2020 semester. (*See supra* note 11.)  In addition to multiple communications informing students that Fall classes could or would be held remotely, the USC Catalogue specifically stated that courses would be held online. (*Compare* CC ¶ 64 (alleging that Schedule of Classes in 2019-2020 USC Catalogue "confirm[ed]" USC's obligation to hold in-person classes because on-campus locations were identified for classes), *with* Ex. O at 75 (2020-2021 USC Catalogue indicating "online" as location for classes).)  To the extent Plaintiffs seek restitution for tuition and fees paid for the Fall 2020 semester and beyond, such allegations must be dismissed.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("'There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.'") (quoting *Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952)).

received, "nothing . . . suggests that it would be unjust to allow [USC] to retain . . . tuition" or that Plaintiffs have "an absolute right" to a specified form of education and undefined set of experiences. *Gallagher v. Capella Educ. Co.*, No. 3:19-cv-01342-JR, 2019 WL 8333532, at *7 (D. Or. Dec. 23, 2019) (dismissing unjust enrichment claim), *report and recommendation adopted sub nom. Gallagher v. Capella Univ. Inc.*, No. 3:19-CV-01342-JR, 2020 WL 1550729 (D. Or. Apr. 1, 2020); *see also Wright*, 378 F. Supp. 3d at 775 (dismissing unjust enrichment claim seeking tuition reimbursement because "[p]laintiffs received educational services in exchange for each semester for which [p]laintiffs paid tuition" and "[t]here is no plausible allegation that [the university] guaranteed a degree, or a degree in a certain period of time, in exchange for tuition").  Regarding meal plans, USC committed to provide pro-rated meal plan fee refunds to students.  (Ex. J [Apr. 28 Update].)

As such, Plaintiffs' quasi-contractual claims—all of which require allegations showing unjust enrichment—must be dismissed.  *See Chan Tang v. Bank of Am., N.A.*, No. SACV 11-2048 DOC (DTBx), 2012 WL 960373, at *12 (C.D. Cal. Mar. 19, 2012) (dismissing unjust enrichment claim where complaint failed to show "how payments to [defendant] . . . were unjust"); *Barclay v. Visa USA Inc.*, No. 09-CV-2932-H (JMA), 2010 WL 11508749, at *3 (S.D. Cal. Mar. 8, 2010) (dismissing claim where retention of fees was "not unlawful or unfair").

### D.    Plaintiffs Fail to State a Claim for Conversion.

Under California law, conversion "comprises three elements: (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019) (internal quotation marks omitted).  The tort is designed to remedy situations where a defendant "has wrongfully exercised dominion over a specifically identifiable pot of money that already belongs to the [plaintiff]." *Id.* at 1152-53.  Courts have therefore denied claims for conversion where plaintiffs are unable to plead "any allegations as to a

specific sum they believe was misused." *United Studio of Self Def., Inc. v. Rinehart*, No. SA CV 18-1048-DOC (DFMx), 2019 WL 6973520, at *5 (C.D. Cal. Sept. 9, 2019) (rejecting conversion claim based on allegation that stated the total sums deposited into the account but "not the specific funds actually misused"); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008) ("A specific and identified amount of money can form the basis of a conversion claim, but when the money is not identified and not specific, the action is to be considered as one upon contract or for debt and not for conversion.") (internal quotation marks omitted).

Here, Plaintiffs fail to identify the funds allegedly converted by USC. Instead, they allege only that USC "deprived Plaintiffs and the other members of the Class of their tuition and fees or of the right to the services for which their fees were intended to be used" and demand the return of an unspecified amount of "prorated . . . tuition and fees for the diminished value when the University switched to remote instruction and closed campuses and facilities." (CC ¶¶ 139-140.)[14] This is insufficient. *See Voris*, 7 Cal. 5th at 1152-53; *United Studio of Self Def.*, 2019 WL 6973520, at *5; *Ward v. Mitchell*, No. C 12-03932 WHA, 2012 WL 5301475, at *4 (N.D. Cal. Oct. 25, 2012) (dismissing conversion claim "because the complaint does not allege an identified or specific sum").[15]

Plaintiffs' claim for conversion independently fails because it is barred by the economic loss rule. As explained by the California Supreme Court, "[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to

---

[14] Plaintiffs do not address meal plans in their conversion claim allegations.

[15] Plaintiffs' failure to identify a "sum certain" owed to them is an independent reason to also dismiss their claim for money had and received. *Kandel v. Brother Int'l Corp.*, Nos. CV 08-1040 DSF (RCx), CV 08-6126 DSF (RCx), 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009) ("Plaintiffs have not properly pleaded a claim for money had and received because they do not allege that [d]efendants possess a sum certain owed to [p]laintiffs . . . . There is no claim that [d]efendants owe [p]laintiffs money other than as damages from the other claims in this case.").

1   disappointed expectations, unless he can demonstrate harm above and beyond a

2   broken contractual promise.  Quite simply, the economic loss rule prevents the law

3   of contract and the law of tort from dissolving one into the other." *Robinson*

4   *Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotation

5   marks, citations, and alterations omitted).  Plaintiffs' allegations in support of their

6   conversion claim merely repeat the allegations underlying their breach of contract

7   claim.  And "conversion claims that are based solely on breaches of contractual

8   duties" are barred.  *Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*, No. CV 10-1460

9   SVW (FFMx), 2010 WL 11595726, at *7 (C.D. Cal. May 5, 2010).

10        **E.     Plaintiffs Fail to State a Claim for Violation of the UCL.**

11        The UCL proscribes "three varieties of unfair competition: practices which are

12   unlawful, unfair or fraudulent." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App.

13   4th 824, 837 (2006).  While the complaint purports to allege violation of all three

14   prongs, it contains no ***facts*** that USC has conducted unlawful, unfair, or fraudulent

15   business practices.  (*See* CC ¶¶ 153-159.)  Instead, Plaintiffs repeat the same

16   allegations advanced for each of their other claims—that the allegedly lower quality

17   of education following USC's transition to remote learning warrants a prorated

18   refund of tuition and fees—and then labels the conduct "unlawful, unfair, or

19   deceptive." (CC ¶¶ 154-157.)  Such conclusory allegations are insufficient to

20   maintain a UCL claim. *See Iqbal*, 556 U.S. at 678; *Daugherty*, 144 Cal. App. 4th at

21   837 n.7.

22        **Unlawful prong.**  Plaintiffs do not point to any statute, regulation, or other

23   law that USC violated.  And "a common law violation such as breach of contract is

24   insufficient." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044

25   (9th Cir. 2010).

26        **Unfair prong**.  Courts are "divided" over which of two tests is the proper one

27   as to "unfair" conduct against consumers. *See Davis v. HSBC Bank Nevada, N.A.*,

28   691 F.3d 1152, 1170 (9th Cir. 2012).  Plaintiffs' claim fails under either test.  They

have not alleged that USC's transition to remote education "threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition." *Id*.  Nor does anything in the consolidated complaint "support[] the conclusion" that steps taken by USC to respond to a global pandemic "were against public policy, immoral, unethical, oppressive, or unscrupulous." *Id*.  Quite the opposite: USC had valid reasons and justifications in moving to remote education, including *inter alia* protecting the health and safety of students, faculty, and staff, and complying with California Executive Order N-33-20.  (Ex. A [Executive Order N-33-20]; Ex. F [Mar. 11 Notice]; Ex. H [Mar. 20 Update]; Ex. J [Apr. 28 Update].)   In their prior complaints, certain Plaintiffs conceded as much.  (*See, e.g.,* ECF No. 1, ¶¶ 1, 56 (attributing closures and transition to remote education to "the shelter-in-place order in effect in the State of California" and stating "USC may not bear culpability for the campus closures or the inability to provide any classroom instruction").)   And Plaintiffs' alleged breach of contract claim is insufficient to support a claim under the UCL's unfair prong.  *See Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *6-7 (N.D. Cal. Aug. 12, 2013) (dismissing claim for "unfair" conduct under the UCL despite breach of contract allegations).

**Fraudulent prong**.  Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to UCL claims sounding in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1087-88 (S.D. Cal. 2010).  Plaintiffs must therefore allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  They have not done so.

Plaintiffs must also "'show that members of the public are likely to be deceived' by the business practice . . . at issue." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).  Liability will not, however, be imposed "where a

defendant lacked knowledge of the facts that rendered its representations misleading *at the time it made the representations*."  *Id*. at 1161 (emphasis added); *see also In re Sony Grand WEGA*, 758 F. Supp. 2d at 1090 (finding plaintiffs did not put forth particularized allegations showing Sony knew about alleged defect prior to distributing products to plaintiffs).

Plaintiffs do not allege that USC knew that a worldwide pandemic would require a transition to remote education prior to the start of the Spring 2020 semester. Nor could they.  In other words, even if USC had "promised" in-person learning and an unspecified set of on-campus services to students prior to the start of the Spring 2020 semester (which it did not), USC did not and could not know—at that time— that it would transition to a remote education environment for the health and safety of its students.  Nor do Plaintiffs allege with any "specificity the circumstances under which [they] w[ere] exposed to the statements at issue." *Robinson v. Unilever United States, Inc.*, No. CV-17-3010 DMG (AJWx), 2018 WL 6136139, at *6 (C.D. Cal. June 25, 2018).  Simply put: Plaintiffs were not deceived.  These fatal flaws require dismissal of Plaintiffs' UCL claim.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs fail to state a claim against USC and the Board of Trustees.  As such, the consolidated complaint should be dismissed in its entirety with prejudice because the defects cannot be remedied by amendment.

Dated: September 11, 2020                COOLEY LLP

/s/ *Leo P. Norton*
Leo P. Norton (216282)

Attorneys for Defendants
THE UNIVERSITY OF SOUTHERN CALIFORNIA and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA