COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Defendants
THE UNIVERSITY OF SOUTHERN CALIFORNIA and
THE BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: October 30, 2020<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br>Judge: Dolly M. Gee |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................. 1

II. ARGUMENT.................................................................................................... 2

    A.  Plaintiffs' Claims Are Barred by the Educational Malpractice
        Doctrine. ................................................................................................. 2

        1.  The educational malpractice doctrine applies to private
            universities. ................................................................................. 4

        2.  Plaintiffs cannot avoid the educational malpractice doctrine
            by reframing the requested relief in their opposition. ................... 6

    B.  Plaintiffs Fail to State a Claim for Breach of Contract. ............................ 9

        1.  USC's Catalogue clearly states that tuition and fees are
            based on enrolled units, not manner of instruction........................ 9

        2.  Plaintiffs fail to identify any specific contractual provision
            that USC breached. ...................................................................... 12

        3.  USC expressly reserved the right to make changes to its
            educational practices and to refund tuition at its discretion. ........ 14

        4.  Plaintiffs' post-Spring 2020 claims for tuition and fees
            refunds and meal plan refunds must be dismissed. ..................... 16

    C.  Plaintiffs Fail to State a Claim Under Any of the Quasi-Contractual
        Theories Set Forth in the Consolidated Complaint................................. 18

        1.  Plaintiffs' quasi-contractual claims are duplicative of their
            breach of contract claim.............................................................. 18

        2.  Plaintiffs have not and cannot plead unjust enrichment. ............. 19

    D.  Plaintiffs Fail to State a Claim for Conversion. .................................... 22

    E.  Plaintiffs Fail to State a Claim for Violation of the UCL. ...................... 23

III. CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaburda v. Thomas Jefferson Sch. of Law*,
   No. 37-2011-00091898-CU-FR-CTL, 2012 WL 6039151
   (Cal. Super. Ct. Nov. 29, 2012) .......................................................................5, 6

*Allen v. Hylands, Inc.*,
   No. CV 12-01150 DMG MANX, 2012 WL 1656750
   (C.D. Cal. May 2, 2012) ....................................................................................18

*Allen v. Mich. State Univ.*,
   No. 20-000057-MK (Mich. Ct. Cl. Oct. 1, 2020)...................................2, 11, 13

*Bagdasaryan v. Bayview Loan Servicing, LLC*,
   No. CV1406691SJOVBKX, 2015 WL 13665037
   (C.D. Cal. Oct. 19, 2015).................................................................................18

*Career Coll. Ass'n v. Riley*,
   74 F.3d 1265 (D.C. Cir.1996)...........................................................................23

*Chong v. Ne. Univ.*,
   No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020)...........2, 11, 19

*Credit Suisse First Bos. Corp. v. Grunwald*,
   400 F.3d 1119 (9th Cir. 2005) .............................................................................6

*Cross v. Univ. of Toledo*,
   No. 2020-00274JD, 2020 WL 4726814 (Ohio Ct. Cl. July 8, 2020) ..................8

*Dalke v. Cent. Mich. Univ.*,
   No. 20-000068-MK (Mich. Ct. Cl. Sept. 25, 2020) ......................................2, 12

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...........................................................................24

*Diaz v. Intuit, Inc.*,
   No. 5:15-CV-01778-EJD, 2017 WL 4386451
   (N.D. Cal. Sept. 29, 2017) ................................................................................24

## TABLE OF AUTHORITIES
(CONTINUED)

**Page(s)**

*Doe v. Cal. Inst. of Tech.*,
  No. 2:19-cv-01005, 2019 WL 8645652 (C.D. Cal. Aug. 13, 2019)..................13

*Eisele v. Ayers*,
  381 N.E.2d 21 (Ill. Ct. App. 1978)............................................................16

*Hendrickson v. Haven Place, Inc.*,
  No. 100816, 2014 WL 4261947 (Ohio Ct. App. Aug. 28, 2014).........................8

*Horrigan v. E. Mich. Univ.*,
  No. 20-000075-MK (Mich. Ct. Cl. Sept. 24, 2020) ................................2, 11, 19

*Hutchison v. At & T Internet Servs., Inc.*,
  No. CV07-3674 SVW (JCX), 2008 WL 11334484
  (C.D. Cal. July 9, 2008).........................................................................24

*Intel. Mgmt. Sols., Inc. v. Crown Glendale Assocs., LLC*,
  No. SACV122119JVSRNBX, 2013 WL 12130317
  (C.D. Cal. Feb. 20, 2013) ......................................................................19

*Jackson v. Loews Hotels, Inc.*,
  No. ED CV 18-827-DMG, 2019 WL 6721637
  (C.D. Cal. July 24, 2019).......................................................................16

*Jallali v. Nova Se. Univ., Inc.*,
  992 So. 2d 338 (Fla. 4th Dist. Ct. App. 2008)...............................................15

*Johnson v. Schmitz*,
  119 F. Supp. 2d 90 (D. Conn. 2000) .........................................................14

*Kashmiri v. Regents of Univ. of Cal.*,
  156 Cal. App. 4th 809 (2007)..........................................................*passim*

*Keen Consulting Grp. v. Rugged Events Holdings, LLC*,
  No. 5:19-CV-00654-R-KK, 2019 WL 6646701
  (C.D. Cal. July 11, 2019).......................................................................19

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
  No. SACV08-00663JVS, 2008 WL 4332528
  (C.D. Cal. Sept. 22, 2008) .....................................................................23

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-iii-

REPLY ISO MOTION TO DISMISS
CASE NO. 2:20-cv-4066-DMG-PVC

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ........................................................................18

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1156 (N.D. Cal. 2011)............................................................24

*Kraif v. Guez*,
  No. CV 10-3731-VBF(FMOX), 2010 WL 11598067
  (C.D. Cal. Aug. 11, 2010)................................................................................23

*Krebs v. Charlotte Sch. of Law, LLC*,
  No. 3:17-CV-00190-GCM, 2017 WL 3880667
  (W.D.N.C. Sept. 5, 2017) ...................................................................................7

*Longest v. Green Tree Servicing LLC*,
  74 F. Supp. 3d 1289 (C.D. Cal. 2015)..............................................................24

*Love & War, LLC v. Wild Bunch A.G.*,
  No. CV183773DMGPLAX, 2020 WL 3213831
  (C.D. Cal. Mar. 19, 2020)................................................................................19

*Makaeff v. Trump Univ., LLC*,
  2010 WL 3988684 (S.D. Cal. Oct. 12, 2010)................................................5, 7

*McClean v. Duke Univ.*,
  376 F. Supp. 3d 585 (M.D.N.C. 2019) ...............................................................6

*McDermott v. The Ohio State Univ.*,
  No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020)...............8

*Milanov v. Univ. of Michigan*,
  2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020) ...............................8

*Paladino v. Adelphi Univ.*,
  454 N.Y.S.2d 868 (1982)................................................................................4, 7

*Paulsen v. Golden Gate Univ.*,
  25 Cal. 3d 803 (1979) ........................................................................................4

*Paynter v. New York Univ.*,
  319 N.Y.S.2d 893 (1971)..................................................................................14

# TABLE OF AUTHORITIES
(CONTINUED)

**Page(s)**

*Peter W. v. San Francisco Unified Sch. Dist.*,
  60 Cal. App. 3d 814 (1976) .......................................................................... 3, 5, 7

*Pinzon v. Pepperdine Univ.*,
  No. 2:20-cv-04928-DMG-KS, ECF No. 39 (C.D. Cal. Sept. 25, 2020) ........... 11

*Real Estate Training Int'l, LLC v. Nick Vertucci Cos., Inc.*,
  No. SACV 14-0546-AG, 2014 WL 12576646
  (C.D. Cal. Aug. 4, 2014) ................................................................................. 23

*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985) ......................................................................................... 7

*Roe v. Saint Louis Univ.*,
  No. 4:08CV1474 HEA, 2012 WL 6757558 (E.D. Mo. Dec. 31, 2012) .............. 6

*Ross v. Creighton Univ.*,
  957 F.2d 410 (7th Cir. 1992) ...................................................................... 4, 7, 8

*Ross v. U.S. Bank Nat'l Ass'n*,
  542 F. Supp. 2d 1014 (N.D. Cal. 2008) ........................................................... 22

*Rothberg v. Xerox Corp.*,
  No. CV 12-617 (BAH), 2013 WL 12084543 (D.D.C. Jan. 4, 2013) ................ 16

*Rutherford v. FIA Card Servs., N.A.*,
  No. CV 13-02934 DDP, 2014 WL 4402231 (C.D. Cal. Sept. 5, 2014) ............ 19

*Salerno v. Florida S. Coll.*,
  No. 8:20-cv-1494-30SPF, 2020 WL 5583522
  (M.D. Fla. Sept. 16, 2020) .......................................................................... 8, 22

*Sezeen & Co. v. JPMorgan Chase Bank, N. A.*,
  No. SACV1901971DOCJDE, 2020 WL 5289855
  (C.D. Cal. June 25, 2020) ............................................................................... 23

*Shorter v. Los Angeles Unified Sch. Dist.*,
  No. CV 13-3198 ABC AJW, 2013 WL 6331204
  (C.D. Cal. Dec. 4, 2013) ................................................................................. 17

**TABLE OF AUTHORITIES**
(CONTINUED)

**Page(s)**

*Stenger v. Ferris State Univ.*,
  No. 20-000084-MK (Mich. Ct. Cl. Oct. 1, 2020)...........................................2, 12

*Thomas v. Meharry Med. Coll.*,
  1 F. Supp. 3d 816 (M.D. Tenn. 2014) ...............................................................7

*Trishan Air, Inc. v. Dassault Falcon Jet Corp.*,
  No. CV 08-7294-VBF(JTLX), 2010 WL 11515263
  (C.D. Cal. Aug. 26, 2010)....................................................................................5

*United Studio of Self Def., Inc. v. Rinehart*,
  No. SA CV 18-1048-DOC, 2019 WL 6973520
  (C.D. Cal. Sept. 9, 2019) ...................................................................................22

*Waitt v. Kent State Univ.*,
  No. 2020-00392JD (Ohio Ct. Cl. Sept, 28, 2020) ..............................................8

*Wells v. One2One Learning Found.*,
  39 Cal. 4th 1164 (2006).................................................................................3, 4

*Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*,
  No. CV101460SVWFFMX, 2010 WL 11595726
  (C.D. Cal. May 5, 2010) ....................................................................................23

*Zhao v. CIEE, Inc.*,
  No. 2:20-CV-00240-LEW, 2020 WL 5171438
  (D. Me. Aug. 31, 2020) ......................................................................................11

*Zumbrun v. Univ. of S. Cal.*,
  25 Cal. App. 3d 1 (1972) ...........................................................................5, 6, 14

*Zwiker v. Lake Superior State Univ.*,
  No. 20-000070-MK (Mich. Ct. Cl. Aug. 31, 2020) .................................2, 12, 19

**Other Authorities**

Fed R. Civ. P. 9(b) ...............................................................................................25

## I.  INTRODUCTION

When the COVID-19 pandemic swept over the United States in March 2020, USC acted swiftly to protect its students, faculty, and staff from the virus and to follow state and local health orders allowing only for remote education. USC expended significant effort and resources to quickly transition to a remote environment to avoid disrupting the education of tens of thousands of students. In addition to ensuring uninterrupted degree progress, USC implemented numerous supportive measures for its students and the broader community. USC's successful transition to remote instruction is perhaps best exemplified by the numerous students who graduated at the end of the Spring 2020 semester, including two of the Plaintiffs.

Against this unprecedented backdrop, Plaintiffs seek tuition and fees refunds because they purportedly received a lower quality or less valuable education for the second half of the Spring 2020 semester. But USC established in its motion to dismiss that Plaintiffs' claims are barred by the educational malpractice doctrine and fail for other independent reasons. Plaintiffs' opposition does not overcome USC's showing.

Recognizing that claims premised on educational quality or value run headfirst into the well-established bar against educational malpractice claims, Plaintiffs change course in their opposition, recasting their consolidated complaint as seeking relief for USC purportedly promising in-person on-campus instruction, but failing to provide it. Although Plaintiffs summarily conclude that USC made this promise, the consolidated complaint fails to quote any such clear and explicit promise, instead pointing to generalized statements from USC's website, Student Handbook, and Catalogue. Plaintiffs' opposition doubles down on those same generalized statements. But repeatedly stating that USC promised in-person on-campus instruction does not make it so. Plaintiffs simply cannot avoid the fact that each of their claims necessarily involves an inquiry into the difference in quality or value of pre-pandemic in-person instruction and mid-pandemic remote instruction—an inquiry directly implicating the educational malpractice doctrine. As such, Plaintiffs' claims must be dismissed.

Plaintiffs' contract and equitable claims fail for the independent reason that Plaintiffs fail to identify any specific promise to provide exclusively in-person on-campus instruction. Nor can they because USC's Catalogue—"the document of authority for all students"—states that tuition and fees are based on enrolled units and become due at the time of registration. Contrary to Plaintiffs' mischaracterization of the playing field, numerous federal and state courts have dismissed contract and equitable claims against universities under similar circumstances. *See Chong v. Ne. Univ.*, No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020); *Allen v. Mich. State Univ.*, No. 20-000057-MK (Mich. Ct. Cl. Oct. 1, 2020); *Stenger v. Ferris State Univ.*, No. 20-000084-MK (Mich. Ct. Cl. Oct. 1, 2020); *Dalke v. Cent. Mich. Univ.*, No. 20-000068-MK (Mich. Ct. Cl. Sept. 25, 2020); *Horrigan v. E. Mich. Univ.*, No. 20-000075-MK (Mich. Ct. Cl. Sept. 24, 2020); *Zwiker v. Lake Superior State Univ.*, No. 20-000070-MK (Mich. Ct. Cl. Aug. 31, 2020).[1] Plaintiffs also fail to plead facts sufficient to show the required elements of damages or restitution, as well as facts to maintain their remaining claims. Repackaging their breach of contract claim and labeling it "conversion" or "unfair competition" is insufficient.

USC and the Board of Trustees respectfully request that the Court dismiss Plaintiffs' claims in their entirety and with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs' Claims Are Barred by the Educational Malpractice Doctrine.

USC established in its motion that each of Plaintiffs' claims is premised on allegations that USC's transition to remote instruction in response to the pandemic and in accordance with government mandates halfway through the Spring 2020 semester resulted in purportedly less valuable and lower quality education. Although

---

[1] The unpublished state court decisions are attached as Exhibits Q-U to the Supplemental Declaration of Alexandra R. Mayhugh filed concurrently herewith. Citations herein correspond to original page numbering in the decisions.

Plaintiffs now attempt to retreat from their quality and value allegations, the consolidated complaint is replete with such allegations, which include *inter alia*:

- "USC has offered **less valuable** 'remote' classes through video conference or recorded presentations . . . ." (CC ¶ 7 (emphasis added));

- "Defendants have failed to compensate Plaintiffs . . . for the ***diminished value*** of their education experience . . . ." (*Id.* ¶ 7 (emphasis added));

- "Plaintiffs . . . did not receive any refund or reimbursement for the ***decreased value of the education they received*** from USC . . . ." (*Id.* ¶ 11 (emphasis added));

- "[T]his lawsuit seeks disgorgement, restitution, and monetary damages . . . including the ***difference in value*** between the live, in-person classes and full campus experience that Plaintiffs were promised compared to the less valuable education and experience that USC has been providing since mid-March 2020." (*Id.* ¶ 13 (emphasis added));

- "Defendants are currently unlawfully retaining and refusing to fully or partially refund Plaintiffs' tuition, fees, housing and meal plans, despite the ***dramatically lower quality and less valuable education and services*** now being provided." (*Id.* ¶ 68 (emphasis added));

- "The newly online offerings are of ***lower quality and value*** than the on-campus programs for which Plaintiffs . . . paid." (*Id.* ¶ 92 (emphasis added));

- "Defendants have retained the full benefit of the tuition and fee payments . . . yet have ***failed to provide the quality of education and services and facilities*** for which tuition and fees were paid . . . ." (*Id.* ¶ 132 (emphasis added)); and

- "[Plaintiffs] demanded the prorated refund of their tuition and fees for the ***diminished value*** when the University switched to remote instruction . . . ." (*Id.* ¶ 140 (emphasis added)).

Claims regarding the quality and value of education, like those Plaintiffs assert here, are barred by the educational malpractice doctrine—a principal adhered to by California courts for nearly five decades. *See Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824-25 (1976); *see also Wells v. One2One Learning*

*Found.*, 39 Cal. 4th 1164, 1213 (2006) (an allegation that "seeks to raise issues of the *quality* of education . . . falls within the rule that courts will not entertain claims of 'educational malfeasance'"); Mot. 8-12. In a misguided attempt to avoid the doctrine, Plaintiffs (i) argue that it is limited to public institutions; and (ii) attempt to recast their claims as seeking "relief for services that USC agreed to deliver—in-person on-campus instruction—but failed to provide." (Opp. 3-8.) Both arguments fail.

### 1.   The educational malpractice doctrine applies to private universities.

Contrary to Plaintiffs' contention, California courts have ***not*** limited the educational malpractice doctrine to public institutions, and certainly have not done so "time and again." (Opp. 3.) In *Wells v. One2One Learning Foundation*, the California Supreme Court held that the doctrine properly barred an allegation that certain charter schools "fail[ed] to provide the education . . . promise[d]." 39 Cal. 4th at 1213 (internal quotation marks omitted). Notably, the Court did so only after determining that the charter schools—which were operated by private, nonprofit corporations—did "not qualify as public entities," and were therefore not equivalent to public schools. *Id*. at 1203-04. Likewise, in *Paulsen v. Golden Gate University*, the Supreme Court acknowledged the "widely accepted rule of judicial nonintervention into the academic affairs of schools," notwithstanding the fact that the defendant was a private school. 25 Cal. 3d 803, 808-09 (1979). These decisions are consistent with those from courts across the country barring educational malpractice claims brought against public and private educational institutions alike (*see* Mot. 8-12), including the Seventh Circuit's seminal opinion in *Ross v. Creighton University*, 957 F.2d 410, 414-15 (7th Cir. 1992), which dismissed an educational malpractice claim against a private university. California courts and those across the country cite *Ross* with approval. *See, e.g.*, *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 824–25 (2007); *see also Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 872 (1982) ("[T]he reluctance on the part of the judicial branch to interfere with

the educational policies adopted for public schools should be equally applicable to private institutions.").

The two district court decisions on which Plaintiffs rely do not support their contention that the doctrine is inapplicable to private universities—in fact one of them undercuts Plaintiffs' position—and are readily distinguishable. *Makaeff v. Trump University, LLC* recognized that "California cases have applied the educational malpractice bar to claims by students against public schools, ***private universities***, and charter schools." No. 10-CV-940-IEG (WVG), 2010 WL 3988684, at \*2 (S.D. Cal. Oct. 12, 2010) (emphasis added). The district court merely declined to extend the "doctrine to private, unaccredited, and for-profit companies selling educational seminars." *Id*. Not even Plaintiffs argue that USC falls into that category. Plaintiffs' reliance on *Trishan Air, Inc. v. Dassault Falcon Jet Corp.* is also misplaced. That case involved the potential liability of a for-profit flight school in connection with a plane crash. No. CV 08-7294-VBF(JTLX), 2010 WL 11515263, at \*2 (C.D. Cal. Aug. 26, 2010). The court refused to dismiss the claims, finding no authority that "California law bars . . . claims against [defendant flight school], an entity that does not provide general education in a manner usually done by a public entity." *Id*. at \*8 & n.4. As a nonprofit that is "the oldest private research university in California and one of the nation's most prestigious higher education institutions" (CC ¶ 47), USC is far from the allegedly fraudulent, for-profit, unaccredited enterprise at issue in *Makaeff* and the flight school in *Trishan Air*.

Plaintiffs cite only two other cases in support of their contention, neither of which even mentions the educational malpractice doctrine, much less limits the doctrine to public institutions. *See Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1 (1972); *Alaburda v. Thomas Jefferson Sch. of Law*, No. 37-2011-00091898-CU-FR-CTL, 2012 WL 6039151 (Cal. Super. Ct. Nov. 29, 2012); Opp. 4-6. And even if they did, the cases are inapposite and unpersuasive. *Zumbrun* predates *Peter W.*—widely recognized for establishing the doctrine in California—and, as discussed below,

*Zumbrun* is factually distinguishable because the student's breach of contract claim was based on a professor's **cancellation** of classes and refusal to conduct a final examination, and not, as Plaintiffs allege here, a lower quality education. 25 Cal. App. 3d at 7, 10-11; *see infra* Section II.B.2. As an unpublished California superior court decision, *Alaburda* "cannot be cited to or relied on by other courts," and is not persuasive authority. *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005). Regardless, it involved misrepresentation of employment data, not educational practices. *Alaburda*, 2012 WL 6039151, at *1.

Plaintiffs' novel contention that the educational malpractice doctrine does not apply to private educational institutions like USC should be rejected.

### 2.   Plaintiffs cannot avoid the educational malpractice doctrine by reframing the requested relief in their opposition.

Plaintiffs attempt to turn away from their allegations that remote instruction is lower quality and less valuable by recasting their claims as ones for a broken promise to provide in-person on-campus instruction. (Opp. 6.) Plaintiffs' attempt fails because they cannot point to any broken promise: USC never agreed to provide exclusively in-person on-campus instruction. (*See infra* Section II.B.)[2]

Moreover, try as they might, Plaintiffs cannot avoid that the crux of their claims is the assertion that remote instruction is less valuable and of a lower quality than in-person on-campus instruction. (CC ¶¶ 7, 11, 13, 68, 88 92, 94, 132, 140.) Indeed, Plaintiffs explicitly attack the method of educational "instruction."

---

[2] Plaintiffs also contend that USC failed to deliver "campus facilities[] and residential and dining services." (Opp. 7.) The educational malpractice doctrine extends to fees assessed for non-curricular services, including access to facilities. *See Roe v. Saint Louis Univ.*, No. 4:08CV1474 HEA, 2012 WL 6757558, at *10 (E.D. Mo. Dec. 31, 2012) (extending to physical training program), *aff'd*, 746 F.3d 874 (8th Cir. 2014); *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 609 (M.D.N.C. 2019) (extending to counseling services); Mot. 10-11. Moreover, Plaintiffs do not dispute or even address that no Plaintiff seeks housing refunds. (Mot. 14-15 & n.10.) And USC already issued refunds for unused meal plans. (Ex. J [Apr. 28 Update]; *see infra* Section II.B.4.)

1   (*Id*. ¶ 87 ("Regarding classroom instruction, Plaintiffs . . . suffer significant harm

2   associated with the shift from in-person instruction to the online substitute, including

3   . . . hastily modified curriculum, lost lab experiences, improvised classes, and

4   reformulated grading.").

5          But California courts are clear that "classroom methodology affords no readily

6   acceptable standards of care, or cause, or injury." *Peter W.*, 60 Cal. App. 3d at 824.

7   The damages or restitution element of each claim would require monetization of

8   allegedly lower quality remote instruction as compared to in-person instruction—the

9   precise inquiry the educational malpractice doctrine was designed to avoid. *See id*. at

10  824-25; *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL

11  3880667, at *6 (W.D.N.C. Sept. 5, 2017) ("Any inquiry into the quality or value of

12  the services provided in return for [p]laintiffs' tuition and fees constitutes an

13  impermissible foray into educational malpractice."); Mot. 8-12. That Plaintiffs

14  attempt to "repackage" their claims as contract, quasi-contract, and consumer fraud

15  is irrelevant. *Ross*, 957 F.2d at 416. Under any of the asserted liability theories,

16  Plaintiffs impermissibly ask this Court "'to evaluate the substance of the . . . academic

17  decisions . . . made daily by faculty members'" to effectuate the transition to remote

18  education. *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014)

19  (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985)); *see* Mot. 10.

20         It is simply not the case that USC promised "a year-long real estate education

21  and mentorship" yet only provided "a 3-day long infomercial." *See Makaeff*, 2010

22  WL 3988684, at *3. Nor have Plaintiffs alleged either that USC accepted their tuition

23  "and thereafter provide[d] **no** educational services," or that USC "failed to meet its

24  obligation" to provide "a designated number of hours of instruction." *Paladino*, 454

25  N.Y.S.2d at 873 (emphasis added). "In these cases, the essence of the plaintiff's

26  complaint would not be that the institution failed to perform adequately a promised

27  education service, but rather that it failed to perform that service at all." *Ross*, 957

28  F.2d at 417; *see* Opp. 6-7. Here, as set forth in Section II.B below, Plaintiffs do not

point to any clear and explicit contractual promise to provide in person on-campus instruction. *See Kashmiri*, 156 Cal. App. 4th at 828 (holding promise must be "clear and explicit"). And Plaintiffs concede, as they must, that USC provided instruction in-person until March 2020 and then remotely thereafter. As such, Plaintiffs cannot allege that USC "failed to perform that service at all." *Ross*, 957 F.2d at 417.

To avoid dismissal under the educational malpractice doctrine, Plaintiffs rely on a Florida federal district court decision and a handful of out-of-state trial court decisions, none of which is persuasive. (Opp. 7-8.) *Salerno v. Florida Southern College*, No. 8:20-cv-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) is inapposite as the district court differentiated the breach of contract claim alleged in that case from any complaint "about the quality of . . . education." As discussed above, the same is not true here because Plaintiffs repeatedly emphasize the decrease in educational quality associated with remote instruction in the consolidated complaint. As to the state court cases, three out of the five opinions come from Ohio state courts, which have "not adopted the [federal] modification of notice pleading standards." *Hendrickson v. Haven Place, Inc.*, No. 100816, 2014 WL 4261947, at *2 (Ohio Ct. App. Aug. 28, 2014). Thus, in *Cross v. University of Toledo*, No. 2020-00274JD, 2020 WL 4726814, at *3 (Ohio Ct. Cl. July 8, 2020), the court declined to "recast[] [the] pleadings," instead accepting at face value that the allegations did not sound in "educational malpractice" or "tuition refund." This conclusion does not apply here, where Plaintiffs' allegations of lower educational quality and request for tuition refunds clearly implicate educational malpractice. *Waitt v. Kent State University*, No. 2020-00392JD (Ohio Ct. Cl. Sept, 28, 2020), likewise declined to "recast" plaintiff's pleading under applicable state court rules. *McDermott v. The Ohio State University*, No. 2020-00286JD, 2020 WL 5239892, at *2 (Ohio Ct. Cl. Aug. 24, 2020), involved the complete closure of a university dental clinic, whereas here, USC continued providing education throughout the Spring 2020 semester. *Milanov v. University of Michigan*, 2020 Mich. Ct. Cl. LEXIS 1, *7-9

(Mich. Ct. Cl. Jul. 27, 2020), viewed the educational malpractice doctrine narrowly—and inconsistently with California law—concluding the doctrine bars only due process claims. Importantly, Plaintiffs overlook that an equal number of courts have ***rejected*** claims seeking tuition and fees refunds following the pandemic. (*See infra* Sections II.B.1, II.C.1.)

    **B.  Plaintiffs Fail to State a Claim for Breach of Contract.**

      **1.  USC's Catalogue clearly states that tuition and fees are based on enrolled units, not manner of instruction**.

   Plaintiffs' contract claim is based on a false premise—that USC "agreed to deliver" "in-person on-campus instruction" in exchange for tuition and fees. (Opp. 6.) Not so. As set forth in USC's Catalogue—"the document of authority for all students"—tuition and fees are based on the number of enrolled units per semester:

> The number of units for which tuition is charged is indicated by the number in parentheses after the title of each course listed under Courses of Instruction.
>
> ## Tuition (semester), (Estimated)
>
> **Undergraduate Students**
>
>  (12–18 units)        $28,628.00
>
>  unit basis         1,928.00
>
> **Graduate Students**
>
>  (15–18 units)        28,628.00
>
>  unit basis         1,928.00

Students are obligated to pay tuition and fees by registering for classes:

> ## Obligation for Payment
>
> Request for registration constitutes a legal financial obligation to which students will be held liable if they do not follow the proper procedure to change or cancel their registration through the Office of Academic Records and Registrar. They must receive written confirmation (the Registration Confirmation form) to verify that their requested change has been made.
>
> By registering, students agree to be held responsible for all tuition and fees, including, but not limited to, payments denied by student loan lenders, agencies of the United States government, and agencies of foreign governments.

1 (Ex. N [2019-20 USC Catalogue] at 47-48, 52.)[3]

2     The Tuition and Fees section of USC's Catalogue contains no promise of "in-
3 person on-campus education." (Ex. N at 47-61.) And because USC continued to
4 provide classes and uninterrupted degree progress pre- and mid-pandemic, there was
5 no promise that USC breached.[4]

6     Plaintiffs ask this Court to ignore the parties' express agreement because,
7 according to Plaintiffs, USC is not "simply selling a common commodity." (Opp.
8 16.) But it does not change the fact that Plaintiffs cannot point to any clear and
9 explicit contractual commitment to provide the nebulous "in-person experiences"
10 asserted in the consolidated complaint (*e.g.*, "fraternities and sororities, marching
11 band, recreational sports." (CC ¶ 67.)[5] Moreover, Plaintiffs cite no legal authority
12 for ignoring the express statements in USC's Catalogue.

13     Plaintiffs' new damages theory—relief for the purportedly broken promise to
14 deliver in-person on-campus instruction instead of relief for diminution of
15 educational quality and value—undercuts the consolidated complaint as to the
16 required element of damages. To avoid the educational malpractice doctrine,
17 Plaintiffs disclaim in their opposition that their damages are based on the alleged
18 difference in quality or value between in-person and remote instruction. But in doing
19 so, Plaintiffs fail to point to any factual allegations that account for or identify the
20 harm incurred as a result of the purported broken promise of in-person on-campus
21 instruction, nor can they.

22

23 [3] Unless otherwise indicated, all exhibits cited are attached to the Declaration of Alexandra R. Mayhugh (ECF No. 56-2).

24 [4] Plaintiffs' contention is further undermined by the fact that Plaintiff Diaz studied
25 abroad in Italy during the Spring 2020 semester. (CC ¶ 18.) She could not possibly
26 have had a contract with USC for "in-person on-campus education" as she was not even receiving instruction from USC, must less on-campus at USC.

27 [5] Indeed, Plaintiffs' contention that they are entitled to "in-person experiences"
28 would impose limitless liability on USC under countless scenarios, including, for example, if USC suspended a fraternity or closed racquetball courts for renovations.

In a different COVID-19 tuition and fees refund case before this Court, Plaintiffs' counsel asserts that "damages [could] be valued based on metrics such as the tuition differential between in-person and online college programs." *Pinzon v. Pepperdine Univ.*, No. 2:20-cv-04928-DMG-KS, ECF No. 39 [Opp. to Mot. to Dismiss] at 19 (C.D. Cal. Sept. 25, 2020). But even that argument is unavailable here. Plaintiffs concede that USC charges the ***same tuition*** for its numerous online degree offerings. (*See* CC ¶ 89.) Tuition at USC—for both pre-pandemic in-person and online degree programs—is based on units per semester, not the method of instruction or the extent to which any particular student chooses to participate in campus life. As such, Plaintiffs cannot establish an actionable promise breached (*see infra* Section II.B.2) or damages for their contract claim.

Additionally, multiple courts have ***rejected*** similar claims for tuition and fees refunds arising from the transition to remote instruction during the pandemic where, as here, the governing university document tied payment to ***registration*** and "not to the receipt of any particular method of course instruction." *Chong*, 2020 WL 5847626, at *3-5 (dismissing contract claim seeking tuition and fee refunds);[6] *see Allen*, *supra*, at 6 (finding no promise that "with the payment of tuition, MSU would exclusively provide in-person instruction," and rejecting argument that "example pages from the 2020 Spring Term Class Schedule Listing" and other university "brochures" created such obligation); *Horrigan*, *supra*, at 6-8 (dismissing contract-based claims where "plaintiff's obligation to pay tuition was not predicated on the receipt of any particular method of instruction," and "plaintiff's claim for live, in-person instruction [was] not within the four corners of the parties' document");

---

[6] Defendants are aware of one other federal court decision dismissing claims seeking reimbursement after a private study abroad program transitioned to online instruction due to COVID-19. *See Zhao v. CIEE, Inc.*, No. 2:20-CV-00240-LEW, 2020 WL 5171438, at *2-4 (D. Me. Aug. 31, 2020) (rejecting plaintiff's "refund-no-matter-what interpretation" of the parties' contract and finding defendant's efforts to make "alternative arrangements" in light of the pandemic were reasonable).

*Zwiker*, *supra*, at 8 (dismissing contract claim because there was "no guarantee of live, in-person instruction" and students accepted responsibility for tuition and fees "as a result of registration"); *Stenger*, *supra*, at 10 (same); *Dalke*, *supr*a, at 7 (same).

### 2. Plaintiffs fail to identify any specific contractual provision that USC breached.

Plaintiffs try to overcome USC's Catalogue's explicit language by relying on out-of-context statements from the Handbook (Opp. 10)—none of which amounts to a contractual promise for in-person instruction or unfettered access to facilities:

- The Handbook states that USC "has the responsibility to provide students the use of campus facilities *according to campus regulations.*" (CC ¶ 61) (emphasis added). This does not support a contractual right to facility access during a pandemic. Nor does the Handbook guarantee unfettered access to "computers and computing facilities." (*Id.*) Read in context, the focus is not on access, but on "policies governing the use of computing resources and appropriate behaviors in the electronic community" and copyright law compliance. (Mayhugh Supp. Decl., Ex. P at 12.)

- The Handbook states that USC "shall provide for student access to members of the faculty *in appropriate settings* outside the classroom." (CC ¶ 64) (emphasis added). This does not say anything about what those "appropriate settings" may be, much less create a contractual obligation to provide in-person interactions during a pandemic.

- The Handbook notes that "student organizations *may* . . . [r]eserve campus facilities." (CC ¶ 64) (emphasis added). This cherry-picked statement not only fails to evidence a contractual guarantee to campus facilities, but it ignores other applicable statements in the Handbook, including the requirement to abive by "*all state laws*" and that USC retains the right "to cancel any event . . . if USC officials *cannot ensure the safety of students, faculty, staff, and/or visitors*." (Mayhugh Supp. Decl., Ex. P at 14-15.)

The only other source cited by Plaintiffs in support of an alleged promise of in-person education is an editorialized excerpt of the Schedule of Classes in USC's Catalogue, which Plaintiffs characterize as "establish[ing] that students . . . would attend classes held in specific locations and facilities on the USC campus." (Opp. 10.) That USC's Catalogue included directional or logistical information regarding

expected class locations is hardly the type of actionable promise required to support their claim. *See Kashmiri*, 156 Cal. App. 4th at 826 (noting that courts are "reluctant to apply contract law to general promises or expectations" in published university materials); *Allen*, *supra*, at 6 ("that the brochures and catalogs were written with the expectation that instruction would be in-person does not create a contractual promise that no matter the circumstance, all instruction would be in-person . . . the brochures merely explain the types of classes available and the possibility of 'hands-on' experience or instruction"). Indeed, under Plaintiffs' position, a student could bring a breach of contract claim any time a class was moved due to maintenance or construction. Plaintiffs' flawed theory also ignores that USC's Catalogue expressly "reserves the right [for USC] to change its . . . course offerings and ***any other contents of this catalogue at any time***." (Ex. N at 45-46.)[7]

In sum, Plaintiffs have done nothing more than cite statements ***about*** USC's on-campus learning environment. Those generalized statements and student expectations do not create a contractual promise under California law. *See Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005, 2019 WL 8645652, at *5 (C.D. Cal. Aug. 13, 2019) (dismissing contract claim against university where alleged contractual terms in policy documents were not "sufficiently definite");[8] Mot. 14-16.

---

[7] Plaintiffs appear to have deliberately shifted away from an implied contract theory to an "express contract" theory. (*Compare* CC ¶ 112, *with* Opp. 8.) Regardless of the framing, Plaintiffs' contract claim must be dismissed because Plaintiffs fail to allege a "clear and explicit" promise to provide in-person on-campus instruction and unfettered access to campus facilities. *See Kashmiri*, 156 Cal. App. 4th at 828; *supra* Section II.B.1. Additionally, Plaintiffs' suggestion that USC has conceded an implied contract exists for "on-campus education" (Opp. 12) is unsubstantiated and false.

[8] Plaintiffs argue *Doe* is distinguishable because it did not involve access to on-campus instruction or claims for tuition reimbursement. (Opp. 13 n.3.) While the factual basis for the claims differ, the legal principle in *Doe* still squarely applies: Plaintiffs cannot establish a "sufficiently definite" contractual obligation for in-person instruction based on a hodge-podge of statements from USC's materials that generally describe USC's campus and opportunities to use facilities or interact with faculty. *Doe*, 2019 WL 8645652, at *5. Multiple COVID-19-related cases for refunds based on such documents have been rejected. (*See supra* Section II.B.1.)

The cases on which Plaintiffs rely do not convert the generalized statements at issue here into an actionable contractual promise to provide in-person on-campus instruction. (*See* Opp. 9-10.) In *Zumbrun*, 25 Cal. App. 3d at 7, 10-11, the court allowed a breach of contract claim to proceed where plaintiff alleged her professor "refused to teach the class" partway through the semester and "refused to conduct a final examination"—contrary to the university's express promise of "a full and complete course with a final examination." Here, Plaintiffs concede that their classes continued uninterrupted and allege only that the classes occurred remotely. Also, *Zumbrun* notably qualified its holding, expressly stating that it did "***not*** intend [its] opinion to foreclose the right of university administrators or faculty members to take appropriate action, including the suspension or cancellation of classes," when faced with situations "present[ing] ***actual danger to lives*** or property." *Id.* at 11 n.4 (citing *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (1971).) USC's decision to leverage technological advancements and transition to remote instruction during the global pandemic fits squarely within the safety exception recognized in *Zumbrun*.[9]

### 3. USC expressly reserved the right to make changes to its educational practices and to refund tuition at its discretion.

Plaintiffs' contract claims fail for the additional reason that USC's Catalogue expressly grants the university the right to alter methods of course instruction and discretion over tuition refunds. (Mot. 16-17.) Plaintiffs' opposition on this issue is two-fold: (i) the reservation of rights in USC's Catalogue is inapplicable because USC cannot "point to a single policy, rule, regulation, graduation requirement, course offering, or provision of its catalogue that it *did* change"; and (ii) the tuition refund

---

[9] Plaintiffs' two other cases are easily distinguishable because they involved "specific, identifiable promises" and thus did not require evaluation of "subjective aspects of the quality" of educational practices. *See Johnson v. Schmitz*, 119 F. Supp. 2d 90, 96-97 (D. Conn. 2000) (claim concerning express contractual duties regarding faculty misconduct); *Kashmiri*, 156 Cal. App. 4th at 828 (claim regarding "clear and explicit" promise not to raise specific student fee); *see also* Mot. 13 n.9.

1   provision is "unreasonable and untenable" because it would "essentially mean that
2   USC can refuse to pay *damages* when it breaches contracts." (Opp. 14-15.) Plaintiffs'
3   contentions should be rejected.

4        First, Plaintiffs contend that the "generic reservation of rights" in USC's
5   Catalogue, as they mischaracterize it, does not operate here because the transition
6   from in-person on-campus instruction to remote instruction was "not explicitly
7   covered by its reservation of rights." (Opp. 14.) In other words, Plaintiffs contend
8   USC's campus closure and transition to remote learning is not covered by the rights
9   reservation because it does not qualify as "a change to *a specific* policy, rule,
10  graduation requirement, etc." (*Id*. (emphasis added).) Plaintiffs' contention lacks
11  merit. The USC Catalogue's broad statement clearly covers campus closure and the
12  transition to remote instruction in an effort to protect the health and safety of students,
13  faculty, and staff and as mandated by state and local government orders. The
14  reservation of rights covers all university "policies, rules, regulations . . . course
15  offerings and any other contents" of USC's Catalogue, which includes the Schedule
16  of Classes. (Ex. N at 45-46.) Closing its campuses and moving to remote instruction
17  constitute a self-evident change to USC policies and course offerings. Indeed,
18  Plaintiffs themselves rely heavily on the fact that the Schedule of Classes section of
19  USC's Catalogue contains classroom locations that were changed to online in light
20  of the pandemic. (*See supra* Section II.B.1 (discussing allegations at CC ¶ 64).)

21       Second, Plaintiffs contend that USC retaining the discretion to refund tuition
22  would allow USC to "collect tuition payments from students, cancel the entire
23  semester the very next day, and then decline to refund any portion of tuition."
24  (Opp. 15.) Plaintiffs' parade of horribles argument should be rejected. The cases on
25  which USC relied in its motion establish that discretion to modify university policies
26  or refund tuition are bound by the implied covenant of good faith and fair dealing.
27  *See Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 343 (Fla. 4th Dist. Ct. App. 2008)
28  (upholding reservation of right to modify university policies regarding graduation

requirements "unless the university has acted arbitrarily and capriciously, in violation of constitution or statute, or for fraudulent purposes"); *Eisele v. Ayers*, 381 N.E.2d 21, 25-26 (Ill. Ct. App. 1978) (upholding university's discretion to raise tuition where "[n]othing in the complaint indicate[d] that defendants ha[d] exercised this right maliciously or in bad faith").[10] Tuition refunds being in USC's discretion forecloses Plaintiffs' breach of contract claim because Plaintiffs cannot allege that the transition to remote instruction pursuant to health and safety orders was in bad faith.

### 4.    Plaintiffs' post-Spring 2020 claims for tuition and fees refunds and meal plan refunds must be dismissed.

Any claims relating to tuition and fees refunds should be limited to the Spring 2020 semester only, and Plaintiffs' meal plan refund claims are refuted by allegations in the consolidated complaint and judicially noticed materials.

**Summer 2020 sessions**. None of the Plaintiffs alleges registering or paying tuition or fees for Summer 2020. As such, any refund claims related to the Summer 2020 sessions must be dismissed. *See Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *5 (C.D. Cal. July 24, 2019) (granting motion to dismiss class allegations where named plaintiffs tried to rely on injuries "suffered by other, unidentified members of the class"). Further, the consolidated complaint and judicially noticed materials show that students knew instruction for Summer 2020 would be remote. (Ex. J [Apr. 28 Update] (announcing both summer sessions "and all related in-person activities[] will be conducted online"); CC ¶ 81.)

**Fall 2020 semester (and beyond)**. Certain of the Plaintiffs allege registering for the Fall 2020 semester. But Plaintiffs cannot recover for Fall 2020 (or any

---

[10] The single case on which Plaintiffs rely for these arguments, *Rothberg v. Xerox Corp.*, No. CV 12-617 (BAH), 2013 WL 12084543 (D.D.C. Jan. 4, 2013), is inapposite and distinguishable. (Opp. 15.) *Rothberg* dealt with law governing disclaimers in employee manuals, ultimately concluding the disclaimer at issue was directly "at odds" with the company's other communications. 2013 WL 12084543, at *4. Here, there are no allegations USC ever represented to students that it did ***not*** have the discretion to modify course instruction or to refund tuition and fee payments.

subsequent semester or session) because the consolidated complaint and judicially noticed materials demonstrate that USC specifically informed students that instruction for the Fall 2020 semester would be remote. (Exs. K [June 2 Message], L [July 1 Message], and M [Aug. 5 Update]; CC ¶¶ 82-83; Mot. 16 n.11.) In addition to multiple communications informing students that Fall classes would be held remotely, USC's Catalogue specifically stated that courses would be held online. (*Compare* CC ¶ 64 (alleging that Schedule of Classes in 2019-2020 USC Catalogue "confirm[ed]" USC's obligation to hold in-person classes due to on-campus classroom locations), *with* Ex. O at 75 (2020-2021 USC Catalogue indicating "online" as location for classes).) Against these facts—all of which are alleged in the consolidated complaint or are properly the subject of USC's unopposed request for judicial notice—Plaintiffs cannot contend that they contracted for in-person on-campus instruction or experience prior to registering for classes and paying tuition and fees for the Fall 2020 semester. (Mot. 20 n.13.) Indeed, Plaintiffs fail to address this issue at all in their opposition, conceding that their claims for refunds for post-Spring 2020 must be dismissed. *See Shorter v. Los Angeles Unified Sch. Dist.*, No. CV 13-3198 ABC AJW, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (noting failure to oppose can be "construed as a waiver or abandonment").

**Meal plans fees**. Plaintiffs do not dispute in their opposition that USC already agreed—before any suit was threatened or filed—to provide pro-rated meal plan refunds. (Ex. J [Apr. 28 Update]; Mot. 16 n.11.) As such, any claims seeking meal plan refunds must be dismissed as moot.[11]

---

[11] Watson is the only named Plaintiff to allege paying for a meal plan, and such allegations are directly contradicted by communications incorporated by reference in the consolidated complaint, which confirm that meal plan fees were refunded. (*Compare* CC ¶¶ 85-86, *with id*. ¶¶ 80-81 & Ex. J [Apr. 28 Update].) As part of the parties' pre-filing meet-and-confer, USC repeatedly raised that Watson had already been refunded, a fact known to her, and provided Plaintiffs' counsel with proof of the refund. Nevertheless, Plaintiffs continue to knowingly assert false allegations.

**C.     Plaintiffs Fail to State a Claim Under Any of the Quasi-Contractual Theories Set Forth in the Consolidated Complaint.**

**1.     Plaintiffs' quasi-contractual claims are duplicative of their breach of contract claim.**

Plaintiffs do not dispute that their quasi-contract, unjust enrichment, and money had and received claims are treated the same under California law or that such claims are duplicative of their contract claim. (Mot. 18.) Instead, Plaintiffs argue that they are entitled to plead "in the alternative." (Opp. 17.) This argument lacks merit.

Plaintiffs are only entitled to plead in the alternative where they specifically allege "the absence of an enforceable agreement." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). Here, the consolidated complaint contains no allegations—pled in the alternative or otherwise—that an enforceable agreement may not exist. In fact, as discussed above, the consolidated complaint and materials incorporated by reference therein demonstrate that an enforceable agreement ***does*** exist; it just does not provide for in-person on-campus instruction and unfettered access to campus as Plaintiffs would like. (*See supra* Section II.B; *see also Kashmiri*, 156 Cal. App. 4th at 823-24 ("[T]he basic legal relationship between a student and a private university is contractual in nature"); Opp. 9 (same).) Under these circumstances, Plaintiffs are ***not*** entitled to maintain their duplicative quasi-contract claims. *See Klein*, 202 Cal. App. 4th at 1389-90 (plaintiffs "precluded from asserting a quasi-contract claim under the theory of unjust enrichment" where, as here, "plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement"); *Allen v. Hylands, Inc.*, No. CV 12-01150 DMG MANX, 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012) (same); *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV1406691SJOVBKX, 2015 WL 13665037, at *17 (C.D. Cal. Oct. 19, 2015) (dismissing unjust enrichment claims with prejudice where "Plaintiffs had enforceable contracts on the same subject matter"), *aff'd*, 789

F. App'x 608 (9th Cir. 2020); *see also Rutherford v. FIA Card Servs., N.A.*, No. CV 13-02934 DDP MANX, 2014 WL 4402231, at *4 (C.D. Cal. Sept. 5, 2014) ("Rule 8 does not . . . allow a plaintiff to circumvent state law by stating a claim for both express and quasi contract.").[12]

Indeed, in similar cases brought against universities across the country in the wake of COVID-19, courts have dismissed unjust enrichment claims based on the existence of enforceable agreements like USC's Catalogue and the Tuition and Fees section therein. *See Chong*, 2020 WL 5847626, at *4 (dismissing unjust enrichment claims based on fact that plaintiffs also asserted a claim for breach of contract); *Zwiker, supra*, at 12 (rejecting unjust enrichment claims because the existence of tuition and housing contracts "foreclose[d] [plaintiff's] ability to proceed on an unjust enrichment theory"); *Horrigan*, *supra*, at 10-11 (same).[13]

## 2.    **Plaintiffs have not and cannot plead unjust enrichment**.

Plaintiffs do not contend that their education was interrupted or that they received less than the expected number of units for the semester. Nor could they. It is undisputed that USC held classes in-person through March 10, 2020, and then remotely through the conclusion of the semester. (Mot. 20.) Nor do Plaintiffs dispute that "ordinarily" unjust enrichment requires that "a benefit [be] conferred through

---

[12] Plaintiffs' cases are not to the contrary. *See Keen Consulting Grp. v. Rugged Events Holdings, LLC*, No. 5:19-CV-00654-R-KK, 2019 WL 6646701, at *3 (C.D. Cal. July 11, 2019) (permitting alternative unjust enrichment claims where complaint alleged it "would apply only in the event that the alleged express contract was found unenforceable"); *Intel. Mgmt. Sols., Inc. v. Crown Glendale Assocs., LLC*, No. SACV122119JVSRNBX, 2013 WL 12130317, at *2 (C.D. Cal. Feb. 20, 2013) (noting unjust enrichment claims should be dismissed where facts regarding contract unenforceability are not alleged); *Love & War, LLC v. Wild Bunch A.G.*, No. CV183773DMGPLAX, 2020 WL 3213831, at *9 (C.D. Cal. Mar. 19, 2020) (allowing alternative claims to proceed due to factual issue as to enforceability).

[13] Plaintiffs also rely on a handful of COVID-19 tuition and fees refund cases allowing unjust enrichment claims to proceed. (Opp. 21.) None of those cases is binding on this Court and none addresses in any detail the issue here—that Plaintiffs cannot plead an alternative quasi-contract claim that directly conflicts with documents undisputedly forming the parties' contractual relationship.

mistake, fraud, coercion, or request." (Opp. 19 n.7.) Finally, Plaintiffs do not contend—nor could they—that any of those circumstances are at issue here.

Plaintiffs' only argument that USC's retention of tuition and fees is unjust under the circumstance is based on the purported promise of "on-campus, in-person education." (Opp. 20.) As discussed above, however, Plaintiffs identify no such promise—in the consolidated complaint or otherwise. Moreover, their contention is contradicted by the unambiguous language in USC's Catalogue, which ties payment of tuition and fees to units and registration, not to any particular method of instruction. (*See supra* Section II.B.) Plaintiffs cannot survive USC's motion to dismiss by repeatedly referencing materials that do not actually contain a clear and explicit promise to provide in-person on-campus instruction, and then attempting to will such a promise into existence. (*Cf.* Opp. 20-21 (alleging without support that Plaintiffs "paid for on-campus instruction and resources in exchange for their tuition and fees").)

Plaintiffs attempt to avoid dismissal by asserting that they "could have enrolled in less expensive online schools" if USC tuition and fees cover "only . . . academic units." (Opp. 20.) This argument misses a key point: tuition and fees pay for enrolled units that lead to **USC degrees**. Plaintiffs have not alleged—and cannot allege—that USC classes and a USC degree are the same as classes taken and a degree earned "in less expensive online schools," particularly given USC's award-winning faculty and recognition as "one of the nation's most prestigious higher education institutions." (CC ¶ 47.) Indeed, USC charges the same tuition and fees for its online USC degree programs, which Plaintiffs concede. The unescapable fact is that Plaintiffs received the benefit of their bargain: academic units towards a USC degree, with two of them earning USC degrees at the end of the Spring 2020 semester. Plaintiffs' contention that they would have enrolled in "less expensive online schools" if USC tuition and fees cover "only . . . academic units" is undermined by their own conduct. Certain of the Plaintiffs registered for the Fall 2020 semester despite knowing full well that the

semester would be and is being conducted remotely, rather than enrolling in "less expensive online schools" as they contend in their opposition.

Plaintiffs also argue that tuition and fees must pay for more than units toward a degree because USC references "related items or services" in its motion. (Opp. 20.) Plaintiffs' contention overlooks that they continued to receive "related items or services"—in addition to academic units—throughout the Spring 2020 semester. Indeed, the record demonstrates that USC continued to provide, among other things: (i) "housing, food and support" to students unable to return home; (ii) "[l]ibrary resources and services"; (iii) access to campus buildings where required "for work or research"; (iv) USC Student Health services both in-person and via telehealth; (v) undergraduate scholarships, work study, and financial aid; (vi) graduate support and stipends; (vii) room and meal plan pro-rated refunds; (viii) package and storage services for students unable to return to campus; and (ix) "new programs inside and outside the virtual classroom to make the online experience even stronger." (Ex. G [Mar. 16 Notice]; Ex. H [Mar. 20 Update]; Ex. I [Apr. 10 Update]; Ex. J [Apr. 28 Update].) Plaintiffs' assertion that they received nothing more than units toward a degree is false and directly contradicted by the materials relied on and incorporated by reference in the consolidated complaint.

Nor do Plaintiffs allege facts showing that USC's retention of fees is unjust. The only fees specifically identified in the consolidated complaint and paid by one or more Plaintiffs—the Student Aid Fund, Student Health Fee, Student Programming Fee, and New Student Fee (CC ¶¶ 27, 36, 52)—do not guarantee any services that Plaintiffs allege not receiving or that necessarily relate to on-campus access (*e.g.*, programming can be in-person or online, and whether a student is new or returning does not relate to campus access). In fact, the consolidated complaint is wholly devoid of any allegations concerning the fees paid, what they were for, how they relate to access to campus, the basis for the fees, what services Plaintiffs expected in return for those fees, and what services USC provided. As such, Plaintiffs'

1  contentions based on fees are insufficient to maintain a claim for unjust enrichment.

2  Plaintiffs received units toward degrees and in some cases actual degrees, not

3  to mention countless services, in exchange for their tuition and fees. Under these

4  circumstances, USC's retention of tuition and fees is not unjust.

5  **D.    Plaintiffs Fail to State a Claim for Conversion.**

6  In their opposition, Plaintiffs do not dispute that they seek refunds of an

7  unidentified fraction of the total tuition and fees paid for the Spring 2020 semester

8  (and beyond) to account for a purported "diminished value of their education." (*See*

9  CC ¶ 11 (seeking "refund or reimbursement for the decreased value of the

10  education"); *id.* ¶ 100 (seeking prorated refund of tuition and fees).) In other words,

11  Plaintiffs do not allege a sum certain capable of identification. *See United Studio of*

12  *Self Def., Inc. v. Rinehart*, No. SA CV 18-1048-DOC (DFMx), 2019 WL 6973520,

13  at *5 (C.D. Cal. Sept. 9, 2019) (finding insufficient allegation that stated the total

14  sums deposited into account but "not the specific funds actually misused"); *Ross v.*

15  *U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008) ("A specific and

16  identified amount of money can form the basis of a conversion claim, but when the

17  money is not identified and not specific, the action is to be considered as one upon

18  contract or for debt and not for conversion.") (citation omitted). Indeed, *Salerno*, a

19  case on which Plaintiffs rely (Opp. 12-13, 21), dismissed an analogous conversion

20  claim, holding "in-person learning" or "an obligation to pay money, like [a] claim for

21  tuition reimbursement" are insufficiently tangible to qualify as "property" and thus

22  not convertible. 2020 WL 5583522, at *5.

23  Moreover, in order to identify a sum certain, Plaintiffs would need to measure

24  the diminution in value caused by the transition to remote instruction—an inquiry

25  that runs headfirst into the educational malpractice doctrine. (*See* Section II.A.)

26  Likely realizing this, Plaintiffs' opposition fails to suggest ***any*** mechanism through

27  which the prorated sum at issue is capable of being specifically identified. This alone

28  distinguishes Plaintiffs' cases, all but one of which allowed conversion claims

involving specific ***identifiable*** sums, not a nebulous portion of an amount paid, as Plaintiffs seek to do here. *See Sezeen & Co. v. JPMorgan Chase Bank, N. A.*, No. SACV1901971DOCJDE, 2020 WL 5289855, at *5 (C.D. Cal. June 25, 2020) ("[T]he sum is not a general claim for money since it is readily identifiable as the $210,945.00 that Counterclaimant paid or agreed to pay for the Car."); *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, No. SACV08-00663JVS RNBX, 2008 WL 4332528, at *1 (C.D. Cal. Sept. 22, 2008) (finding allegations that defendant "converted the sum of $29,135" when it refused to return money paid for a damaged vehicle sufficient); *Kraif v. Guez*, No. CV 10-3731-VBF(FMOX), 2010 WL 11598067, at *2 (C.D. Cal. Aug. 11, 2010) (claim was sufficiently definite because it "put Defendants on notice of an identifiable, definite sum of money whose return Plaintiff is seeking"). The only other case cited by Plaintiffs—*Career College Association v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir.1996)—addressed the educational institution's obligations under the Higher Education Act, not a conversion claim.

Plaintiffs' conversion claim is independently barred by the economic loss rule. (Mot. 22-23.) Plaintiffs contend that their conversion claim "exists independently of the alleged breach of contract" because "USC had an independent duty not to misappropriate monies paid by Plaintiffs." (Opp. 23.) Yet Plaintiffs provide no legal authority or other explanation for imposition of this supposed "independent duty." As such, Plaintiffs' argument should be rejected.[14]

**E.     Plaintiffs Fail to State a Claim for Violation of the UCL.**

**Unlawful prong.** Plaintiffs do not dispute that they point to no statute,

---

[14] The two cases cited by Plaintiffs (Opp. 23) are inapposite. *See Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*, No. CV101460SVWFFMX, 2010 WL 11595726, at *6-7 (C.D. Cal. May 5, 2010) (addressing conversion claim in light of independent tort for misappropriation of trade secrets); *Real Estate Training Int'l, LLC v. Nick Vertucci Cos., Inc.*, No. SACV 14-0546-AG (DFMx), 2014 WL 12576646, at *4 (C.D. Cal. Aug. 4, 2014) (finding, under Texas law, that "client lists, photographs, and testimonials" could be converted property).

regulation, or other law that USC supposedly violated by transitioning to remote instruction in compliance with state and local government health orders. (*See* Mot. 23.) Indeed, they do not address the unlawful prong at all.

**Unfair prong**. To establish "unfair" conduct, Plaintiffs merely repeat the same allegations advanced for their quasi-contract claims. (*See* Opp. 23.) Such allegations rest on Plaintiffs' unsubstantiated allegation that USC promised in-person on-campus instruction which, as discussed above, it did not. (*See supra* Section II.B.) Nor do Plaintiffs plausibly allege that the steps taken by USC to respond to a global pandemic "were against public policy, immoral, unethical, oppressive, or unscrupulous." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012). As demonstrated by the communications relied upon and incorporated by reference in the consolidated complaint, USC transitioned to remote learning to protect the health and safety of its students, faculty, and staff and to comply with public health orders. (*See, e.g.*, Ex. A [Executive Order N-33-20]; Ex. F [Mar. 11 Notice]; Ex. H [Mar. 20 Update]; Ex. J [Apr. 28 Update].) Plaintiffs' suggestion that USC's conduct was nonetheless "immoral" or "unethical" strains credulity.[15]

**Fraudulent prong**. Plaintiffs' opposition completely misses the mark. For a statement to be a misrepresentation it must be false when made. *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1161-62 (N.D. Cal. 2011). Yet Plaintiffs point to no statements that were false when made, nor any deceptive conduct that USC engaged in. (*See* Opp. 24-25.) To the contrary, USC communicated with its

---

[15] None of the cases on which Plaintiffs rely involves similar circumstances. *See Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1303-04 (C.D. Cal. 2015) (alleging unfair conduct based on defendants' "unreasonable and unnecessarily excessive" charges for "commission and/or kickbacks"); *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4386451, at *5 (N.D. Cal. Sept. 29, 2017) (alleging defendant "encourag[ed] and enabl[ed] widespread tax fraud"); *Hutchison v. At & T Internet Servs., Inc.*, No. CV07-3674 SVW (JCX), 2008 WL 11334484, at *6 (C.D. Cal. July 9, 2008) (alleging defendants unfairly overcharged customers for services not provided).

1   students and the broader community consistently and transparently throughout its

2   transition to remote instruction. (*See* Mot. 4-6 (detailing communications cited in

3   consolidated complaint).) Plaintiffs have not alleged that any of these

4   communications were false, deceptive, or otherwise fraudulent.

5       Plaintiffs' remaining arguments appear to boil down to the suggestion that

6   USC engaged in fraud when it moved classes online to protect the health and safety

7   of its students, faculty, and staff, despite knowing that Plaintiffs "desired in-person

8   experiences." (Opp. 25.) At most, however, this evidences disappointment with the

9   transition to remote learning and the import of state and local government health

10  orders, not fraud or deception. Without more, Plaintiffs simply cannot allege that

11  USC acted fraudulently or deceptively and certainly cannot satisfy Federal Rule of

12  Civil Procedure 9(b)'s heightened pleading standard. (Mot. 24-25.)

**III.   CONCLUSION**

14      For the foregoing reasons, Plaintiffs' consolidated complaint should be

15  dismissed in its entirety with prejudice.

Dated: October 16, 2020          COOLEY LLP

                                  /s/ *Leo P. Norton*
                                  Leo P. Norton (216282)

                                  Attorneys for Defendants
                                  THE UNIVERSITY OF SOUTHERN
                                  CALIFORNIA and THE BOARD OF
                                  TRUSTEES OF THE UNIVERSITY OF
                                  SOUTHERN CALIFORNIA