COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:  (858) 550-6000
Facsimile:   (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA  90401
Telephone:  (310) 883-6400
Facsimile:   (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA  02116-3736
Telephone:  (617) 937-2300
Facsimile:   (617) 937-2400

Attorneys for Defendants
THE UNIVERSITY OF SOUTHERN CALIFORNIA and
THE BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**SUPPLEMENTAL DECLARATION OF ALEXANDRA R. MAYHUGH IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  October 30, 2020<br>Time:  9:30 a.m.<br>Place:  Courtroom 8C<br>Judge:  Dolly M. Gee |

I, Alexandra R. Mayhugh, declare:

1.      I am an attorney licensed to practice law before the Courts of the State of California. I am an associate with the law firm Cooley LLP, counsel of record for Defendants the University of Southern California ("USC") and the Board of Trustees of the University of Southern California (collectively with USC, "Defendants"). I submit this supplemental declaration in support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint. The facts set forth below are based on my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.      Attached as **Exhibit P** is a true and correct copy of excerpts from the 2018-19 USC Student Handbook, which is publicly available at: https://policy.usc.edu/files/2018/07/SCampus-2018-19.pdf.

3.      Attached as **Exhibit Q** is a true and correct copy of the unpublished order: *Zwiker v. Lake Superior State Univ.*, Op. and Order, No. 20-000070-MK (Mich. Ct. Cl. Aug. 31, 2020).

4.      Attached as **Exhibit R** is a true and correct copy of the unpublished order: *Horrigan, et al. v. E. Mich. Univ.*, Op. and Order, No. 20-000075-MK (Mich. Ct. Cl. Sept. 24, 2020).

5.      Attached as **Exhibit S** is a true and correct copy of the unpublished order: *Allen v. Mich. State Univ.*, Op. and Order Re: Defs.' July 15, 2020 Mot. for Summ. Disposition, No. 20-000057-MK (Mich. Ct. Cl. Oct. 1, 2020).

6.      Attached as **Exhibit T** is a true and correct copy of the unpublished order: *Stenger v. Ferris State Univ.*, Op. and Order Re: Defs.' July 16, 2020 Mot. for Summ. Disposition, No. 20-000084-MK (Mich. Ct. Cl. Oct. 1, 2020).

7.      Attached as **Exhibit U** is a true and correct copy of the unpublished order: *Dalke v. Cent. Mich. Univ.*, Op. and Order Re: Defs.' June 30, 2020 Mot. for Summ. Disposition, No. 20-000068-MK (Mich. Ct. Cl. Sept. 25, 2020).

1       I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3       Executed this 16th day of October 2020 in Santa Monica, California.

4

5

6                          _____

7                               Alexandra R. Mayhugh

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# Exhibit P



# SCAMPUS

# The USC Student Handbook

# 2018-19

Exhibit P, pg 4

SCampus: The USC Student Handbook
2018-19

# TABLE OF CONTENTS

**PART A. GENERAL POLICY STATEMENTS** .................................................................... 6

SECTION 1 UNIVERSITY GOVERNANCE .................................................................... 6

SECTION 2 POWER OF THE BOARD .......................................................................... 6

SECTION 3 STATEMENT OF STUDENT RIGHTS & RESPONSIBILITIES ........................ 7
Subsection I Relationship to the Institution .......................................................... 7
Subsection II Student/Faculty Relations ............................................................... 8
Subsection III Student Affairs .............................................................................. 10

SECTION 4 EQUAL OPPORTUNITY, AFFIRMATIVE ACTION, AND NON-DISCRIMINATION ........... 12
Subsection I Policy ............................................................................................... 12
Subsection II Equal Access for Students with Disabilities .................................... 13

SECTION 5 PRINCIPLES OF COMMUNITY ................................................................ 15

SECTION 6 CODE OF ETHICS ................................................................................... 15

SECTION 7 DEPARTMENT OF EDUCATION COMPLIANCE ........................................ 15

**PART B. UNIVERSITY STUDENT CONDUCT CODE** ..................................................... 17

SECTION 10 GENERAL DISCIPLINARY PRINCIPLES .................................................. 17
Subsection 10.05 Disciplinary Authority .............................................................. 17
Subsection 10.10 Basic Principles ........................................................................ 17
Subsection 10.20 Summary of Student Conduct Code Review Process .................. 20
Subsection 10.30 Student Procedural Protections ................................................ 21

SECTION 11 BEHAVIOR VIOLATING UNIVERSITY STANDARDS AND APPROPRIATE SANCTIONS ........... 22

SECTION 12 STUDENT CONDUCT REVIEW ............................................................. 33
Subsection 12.01 Complaints ............................................................................... 33
Subsection 12.02 Complaint through Other Channels .......................................... 33
Subsection 12.03 Contents of a Complaint .......................................................... 33
Subsection 12.04 Timing of Complaints ............................................................... 34
Subsection 12.05 Intake and Initial Fact-Finding ................................................. 34
Subsection 12.06 Overview of Student Conduct Reviews ...................................... 34
Subsection 12.10 Administrative Reviews ............................................................. 34
Subsection 12.13 Residential Education Review ................................................... 35
Subsection 12.14 Other Review Systems .............................................................. 35
Subsection 12.40 Adjudicatory Procedures .......................................................... 35
Subsection 12.60 Disciplinary Records ................................................................. 37

SECTION 13 ACADEMIC INTEGRITY REVIEW .......................................................... 37
Subsection 13.10  Graduate Students ................................................................... 37
Subsection 13.20 Undergraduate Students ........................................................... 39

SECTION 14 ADMISSIONS VIOLATION REVIEW ....................................................... 41

SECTION 15 APPEALS PROCESS ............................................................................... 41

SECTION 16 STUDENT CONDUCT RECORDS ........................................................... 43

APPENDIX A ACADEMIC DISHONESTY SANCTION GUIDELINES .............................. 44

Exhibit P, pg 5

Appendix B Report of Academic Integrity Violation.................................................44

**PART C. ACADEMIC POLICIES**.................................................................**45**

Section 1 Class Notes Policy ........................................................................45

Section 2 Disputed Academic Evaluation Procedures ....................................45
*Subsection I Schools Organized by Departments*.................................................*45*
*Subsection II Schools Not Organized by Departments*.........................................*46*
*Subsection III Schools with Certain Professional Degrees*....................................*46*
*Subsection IV Graduate Students Who Have Been Dismissed from an Academic Program* ...............*47*

Section 3 General Academic Petitions ..........................................................47
*Subsection I Registration-related Exceptions*...................................................*47*
*Subsection II Degree Requirement-related Exceptions* ........................................*49*
*Subsection III Exceptions to the Dornsife College of Letters, Arts and Sciences Limits on Units in the*
*Major or Limits on the College Basic Requirement* ............................................*50*
*Subsection IV Grading Issues* ....................................................................*50*

Section 4 Timeline for Degree Progress.........................................................51

Section 5 Health Leave of Absence ..............................................................52

Section 6 Student Education Records.............................................................52

Section 7 Falsification of Financial Aid Information .........................................54

**PART D. FREE EXPRESSION AND DISSENT**...............................................**56**

Section 1 Policy........................................................................................56

Section 2 Reasonable Time, Place, and Manner..............................................56

Section 3 Guidelines for Campus Demonstrations ...........................................58

Section 4 Advertising, Promotion, and Literature Distribution ...........................59
*Subsection I Advertising*...........................................................................*59*
*Subsection II General Regulations*...............................................................*59*
*Subsection III Publicity*.............................................................................*60*

Section 5 Literature and Publication Distribution............................................62
*Subsection I General Regulations* ...............................................................*62*
*Subsection II Violations*............................................................................*62*
*Subsection III Responsibility for Content* ......................................................*63*
*Subsection IV Helpful Hints* ......................................................................*63*

Section 6 Solicitations by Off-Campus Persons...............................................64
*Subsection I General Regulation*.................................................................*64*
*Subsection II Considerations in Issuing Permits* ..............................................*64*
*Subsection III Displaying Permits*................................................................*65*
*Subsection IV Prohibited Solicitation*...........................................................*65*
*Subsection V Sanctions*............................................................................*65*

Section 7 Student Organization Logos Policy .................................................66

iii

**PART E. SEXUAL, INTERPERSONAL, AND PROTECTED CLASS MISCONDUCT** .................68

**PART F. OTHER UNIVERSITY POLICIES** ......................................................................69

SECTION 1 COMPUTING .................................................................................................69

SECTION 2 UNIVERSITY EMAIL NOTIFICATIONS TO STUDENTS .......................................69

SECTION 3 STUDENT WEBSITE DISCLAIMER ..................................................................69

SECTION 4 ALCOHOL AND OTHER DRUGS ......................................................................70
    *Subsection I Alcohol Policy*......................................................................................*70*
    *Subsection II Alcohol and Event Planning* ...............................................................*71*
    *Subsection III Drug Policy* ......................................................................................*71*
    *Subsection IV Violation of Alcohol and Drug Policy* ................................................*71*
    *Subsection V Assistance*...........................................................................................*72*

SECTION 5 SMOKE-FREE CAMPUS .................................................................................72

SECTION 6 STUDENT HEALTH INSURANCE REQUIREMENT ..............................................73

SECTION 7 STUDENT RELEASES .....................................................................................73

SECTION 8 TROJAN SPIRIT CODE GUIDELINES ...............................................................73

SECTION 9 BICYCLES .....................................................................................................74

SECTION 10 MOTORSCOOTERS/MOTORCYCLES ............................................................77

SECTION 11 COASTING DEVICES ...................................................................................78

SECTION 12 MISSING STUDENT NOTIFICATION ............................................................79

SECTION 13 MANDATORY ONLINE TRAINING COURSES ................................................79

SECTION 14 ONLINE STUDENTS ....................................................................................80

**PART G. STUDENT ORGANIZATIONS** .........................................................................81

SECTION 1 RECOGNITION OF STUDENT ORGANIZATIONS ..............................................81
    *Subsection I Privileges* .............................................................................................*81*
    *Subsection II Responsibilities*...................................................................................*82*
    *Subsection III Recognition Process*..........................................................................*82*
    *Subsection IV Unrecognized Organizations* .............................................................*83*

SECTION 2 GROUP RESPONSIBILITY FOR STUDENT ORGANIZATIONS ............................84

SECTION 3 STUDENT-LED INTERNATIONAL TRAVEL .....................................................85
    *Subsection I Overseas Roster* ..................................................................................*86*
    *Subsection II Coordinators and Advisers* ................................................................*86*
    *Subsection III Required Forms* ................................................................................*88*
    *Subsection IV Travel Insurance*...............................................................................*89*
    *Subsection V Restrictions on Destinations* ..............................................................*89*
    *Subsection VI Overseas Emergency Response Plans* ................................................*89*
    *Subsection VII Student Behavior* .............................................................................*89*
    *Subsection VIII Contractual Agreements* .................................................................*89*

Exhibit P, pg 7

SCampus: The USC Student Handbook
2018-19

SECTION 4 FACILITIES ............................................................................................. 90
  Subsection I General Policies ............................................................................. 90
  Subsection II Reserving Venues ......................................................................... 90
  Subsection III Programming Venues .................................................................. 91
  Subsection IV Sound Amplification Policy ........................................................ 92
  Subsection V Reservation Procedures ................................................................ 93
  Subsection VI Classrooms .................................................................................. 93
  Subsection VII Filming ...................................................................................... 93
  Subsection VIII Cancellation of Scheduled Events ........................................... 93
  Subsection IX Violations .................................................................................... 94

SECTION 5 CAMPING ............................................................................................. 94

SECTION 6 SOCIAL EVENTS .................................................................................. 95

SECTION 7 SALES & FUNDRAISING ....................................................................... 96
  Subsection I Prohibited Activities ...................................................................... 96
  Subsection II Process .......................................................................................... 96
  Subsection III Non-Profit Collections ................................................................ 97
  Subsection IV Raffles or Lotteries ..................................................................... 97
  Subsection V Free Drawings .............................................................................. 97
  Subsection VI Silent Auction ............................................................................. 98
  Subsection VII Student Organization Co-Sponsorship ...................................... 98
  Subsection VIII Misrepresentation (Fronting) .................................................. 98
  Subsection IX Vendors ....................................................................................... 99
  Subsection X USC Emblem Products ................................................................. 99
  Subsection XI Conflict of Interest ...................................................................... 99
  Subsection XII Campus Tour Policies .............................................................. 100

SECTION 8 HAZING ............................................................................................. 100
  Subsection I Compliance with Applicable Rules .............................................. 100
  Subsection II Policy Statement ......................................................................... 100
  Subsection III Prohibition of Hazing ............................................................... 100
  Subsection IV Reporting Hazing ...................................................................... 101
  Subsection V Loss of Recognition and Probation for Student Organizations ... 102

PART H. SAFETY ................................................................................................. 103

SECTION 1 DEPARTMENT OF PUBLIC SAFETY ................................................... 103

SECTION 2 MANDATORY FEDERAL REPORTING & CAMPUS CRIME STATISTICS .... 103
  Subsection I Clery Act ...................................................................................... 103
  Subsection II Campus Security Authorities ...................................................... 103
  Subsection III Housing and Residential Education ........................................... 104
  Subsection IV More Information ....................................................................... 104

SECTION 3 PREPAREDNESS ................................................................................. 104

v

institution, and nothing in the Statement of Student Rights and Responsibilities or any other policy pertaining to any subject promulgated by this board shall be construed as in any way abridging the basic powers, rights and responsibilities of this board.

Adopted by the Board of Trustees

3.   Statement of Student Rights and Responsibilities

<u>Preamble</u>
Students, faculty and administrative officials at the University of Southern California, as members of the academic community, fulfill a purpose and a responsibility. The purpose is the humane and critical examination of major issues of social, political, economic, ethical and aesthetic importance which have in the past confronted, and which will in the coming years constantly confront, the society as a whole.

The responsibility is to understand the spectrum of viewpoints on an issue, and, equally, to be actively involved in the solution of the problems these issues delineate.

The university must, therefore, provide an optimal learning environment, and all members of the university community have a responsibility to provide and maintain an atmosphere of free inquiry and expression. The relationship of the individual to this community involves these principles:

> 1. The fundamental human rights of others;
> 2. The rights of others based upon the nature of the educational process;
> 3. The rights of the institution.

Each member of the campus has the right to organize and maintain their own personal life and behavior, so long as it does not violate the law or agreements voluntarily entered into and does not interfere with the rights of others or the educational process.

Each member has the right to identify themselves as a member of the campus but has a concurrent obligation not to speak or act on behalf of the institution without authorization. Every member of the academic community shall enjoy the rights of free speech, peaceful assembly and the right of petition.

I.   Relationship to the Institution

a.   Non-Discrimination
See Section A.4. Equal Opportunity

b.   Student Participation in the University Government
As members of the academic community, students are free, individually and collectively, to express their views on issues of university policy and on matters of interest to the student body. The student body shall have clearly defined means to participate in the formation and application of university policy affecting academic and student affairs. The actions of the student government within the areas of its jurisdiction shall be reviewed only through orderly, prescribed procedures. Students shall maintain professional standards of discretion concerning information gained about other students and members of the academic community in the course of active participation in university affairs.

7

SCampus: The USC Student Handbook
2018-19

c.  Student Right To Be Informed
All students shall have the right of free access to statements of policy which affect the student body. The university shall have the corresponding responsibility to publish or in other ways make known, those policies which vitally affect students.

d.  Financial Matters
The student has a right to a full statement of tuition and fees for which he or she is liable and to be informed, as extensively as possible, how such monies are spent. Fees which students, through the student government, impose on themselves, shall be allocated by students within governmental and university policies and regulations.

e.  Political Activity
Students have the same rights as any individual to engage in political activity either individually or in groups. However, the university will not permit its name or emblems to be used by any person in connection with a campaign, or its campus, facilities or equipment to be used for campaign activities. Nothing in this policy statement is intended to prohibit candidates or others from making public addresses on campus pursuant to campus policies and procedures or the traditional activities of recognized campus organizations.

f.  Utilization of Campus Facilities
The university has the responsibility to provide students the use of campus facilities according to campus regulations. The university reserves the right to prohibit individuals and groups who are not members of the campus from using its name, finances, or physical and operating facilities for commercial activities. (See Section G.4 Facilities.)

g.  Authorized Search of University Premises
In university-controlled housing and offices, the university reserves the right to have its authorized agents or employees enter the premises to make necessary inspection for services, maintenance and repairs. Authorized agents or employees may enter the premises any time for the security of resident(s) or for other emergency reasons.

II.  Student/Faculty Relations

Because the university is essentially an academic community in which students and faculty are co-participants, both must conduct themselves in a manner conducive to the welfare of such a community and to the free interchange of information and ideas without which that community cannot exist. The nourishment of that sense of community bestows certain rights and responsibilities upon the members of that community.

(The latest editions of the *USC Catalogue,* catalogue.usc.edu, *Schedule of Classes* classes.usc.edu, and the *Faculty Handbook,* policy.usc.edu/faculty, contain many current academic policies and procedures.)

a.  Rights

8

SCampus: The USC Student Handbook
2018-19

i. *Protection of Freedom of Expression* Students shall be free to take reasoned exception to the data or view offered in any course of study and to reserve judgment about matters of opinion.

ii. *The Importance of Teaching* Teaching plays a primary role in the advancement of learning. Therefore, students have a legitimate concern about the nature and quality of instruction, and their evaluation of teaching shall be a criterion considered in faculty promotion and tenure. Students should know that faculty are required to meet with their classes as part of their academic responsibility (see Faculty Handbook, policy.usc.edu/faculty/ ). Freedom to teach and to learn implies that faculty members have the right to determine the specific content of their courses, within the established course definitions, and the responsibility not to depart significantly from their areas of competence or to divert significant time to material extraneous to the subject matter of their courses.

iii. *Protection Against Improper Evaluation* Students shall have protection through orderly procedures against prejudiced or capricious academic evaluation. The method of grading by professors shall be made known to students. Students can expect that faculty will be willing to explain and discuss any grade, and students have the right to appeal any grade. (See Section C.2. Disputed Academic Evaluation Procedures, and the Faculty Handbook online at policy.usc.edu/faculty/ )

iv. *Protection Against Improper Disclosure* Information about students' views, beliefs, political associations, performance and character, which professors and administrators acquire in the course of their work as instructors, advisers and counselors shall be held in confidence.

v. *Assurance of Accessibility* Because the interchange of ideas between student and professor is of the utmost importance, and because such interchanges are often most productive informally, the university shall provide for student access to members of the faculty in appropriate settings outside the classroom.

b. Responsibilities

i. *Freedom of Expression* As students are free to take reasoned exception to the data or views offered in any course of study, so students are expected to respect the intellectual views of faculty and the reasoned process of academic debate.

ii. *The Importance of Teaching* As faculty are required to meet with their classes, students are expected to attend classes and to observe courtesy toward their instructors and their fellow students.

iii. *Standard of Performance* Students share responsibility for maintaining standards of academic performance and classroom conduct conducive to the learning process. It is the responsibility of the student to uphold the academic integrity of the university. Cheating on examinations, plagiarism, improper acknowledgment of sources in essays, and the use

9

SCampus: The USC Student Handbook
2018-19

**F.   Other University Policies**

1.   Computing

Because the use of computers and computing facilities is central to the learning experience at
USC, it is important for all students to understand the policies governing the use of computing
resources and appropriate behaviors in an electronic community. To that end, the university has
developed a set of computing policies for members of the university community, regarding
electronic communications, the use of computing resources at USC, compliance with the Digital
Millennium Copyright Act (DMCA) and other related topics.

All of these policies are available online at policy.usc.edu or cio.usc.edu/copyright/policy.
Students are expected to read and abide by all policies located at this site and check this page for
updates, as these policies are subject to change. All electronic information under this website
supersedes all printed computing policies.

2.   University Email Notifications to Students

Email is the primary mechanism for sending official communications to students at the University
of Southern California. Students, therefore, must check email regularly in order to stay abreast of
important messages and notifications. Failure to read official university communications sent to
students' official email addresses does not absolve students from knowing and complying with the
content of official communications.

Faculty may use students' official email addresses as the official out-of-class means of
communicating with students registered in their classes. Students must comply with course
requirements communicated to them by email.

**Implementation**

All students are assigned an official university email address that will be maintained in the
university's email directory for at least one year after the student's last enrollment at the
university.

All official university communications for students will be sent to the student's official university
email address.

Students may forward their email from their official university email address to another email
address of their choice. The university, however, is not responsible for email forwarded to another
email address.

3.   Student Website Disclaimer

The University of Southern California protects its students' rights of free speech and academic
freedom on student websites. Because student websites are hosted on official university servers,
however, the university automatically places a disclaimer on each student site.

The disclaimer reads as follows: USC does not control the content herein and takes no
responsibility for any inaccurate, offensive, indecent or objectionable content, which is the sole
responsibility of the individual student author.

Exhibit P, pg 12

SCampus: The USC Student Handbook
2018-19

**G. Recognized Student Organizations**

1. Recognition of Student Organizations

   Recognized student organizations provide opportunities for students and other members of the university community to explore their academic, professional, political, social, recreational, artistic, cultural, spiritual or community service interests. In addition, student organizations provide a laboratory for the development of interpersonal, organizational and leadership skills in the members and officers. Such organizations exist to promote the educational mission of the university.

   The existence of student organizations at the university is sanctioned by the Board of Trustees. The responsibility for recognition of student organizations falls within the Division of Student Affairs. Recognized student organizations are offered privileges, provided the organizations accept certain responsibilities. All student organizations must complete recognition paperwork through OrgSync on an annual basis. In addition, national, regional and local social greek-letter organizations are recognized through the Office for Fraternity and Sorority Leadership Development (Tutor Campus Center 330, (213) 821-1639) which may require additional processes and paperwork. All other student organizations are recognized through the Campus Activities (Steven and Kathryn Sample Hall 410, (213) 740-5693).

   The Board of Trustees has ultimate authority over student organizations and can, from time to time, direct the Division of Student Affairs on matters regarding student organizations.

   I. Privileges

   All recognized student organizations may:

   a. Post notices on campus, within the posting policy.

   b. Receive and post messages on the student organization electronic mailing list.

   c. Post on the Trojan Information Kiosk.

   d. Use a campus mailing address and/or mailbox.

   e. Reserve campus facilities for events, programs and meetings.

   f. Apply for university funding, including student program fee monies.

   g. Conduct fundraising efforts within the stated Sales and Fundraising Policies of the university (see Section G.7. Sales and Fundraising).

   h. Receive a discount on selected facility and equipment rentals.

   i. Access organizational email and Web accounts (the university will place the following disclaimer at the bottom of each organization's website: USC does not control the content herein and takes no responsibility for any inaccurate, indecent or objectionable content, which is the sole responsibility of the student author). Students may not remove or otherwise take steps to defeat this disclaimer. Any attempt to do so will be cause for disciplinary action.

Exhibit P, pg 13

SCampus: The USC Student Handbook
2018-19

    j. Access banking services at the USC Credit Union and/or through Campus
    Activities.

    k. Use the name, logo or other trademarks of the university, while making clear to
    a reasonable person not from the campus that the organization is a student
    organization at the university and not the university itself. Use of the name, logo
    or other trademarks must be consistent with the USC Graphic Identity Program,
    and Section G.7. Sales and Fundraising.

## II. Responsibilities

In return, the university expects all student organizations to:

    a. Abide by all university policies, regulations and procedures as defined in this
    Student Handbook and elsewhere, all state laws, and any applicable governing
    regulations associated with a national affiliation;

    b. Limit its participation to students, faculty, staff, alumni and alumnae of the
    university;

    c. Limit its voting members and officers to currently enrolled USC students;

    d. Refrain from discriminating in membership decisions, elections and all other
    matters on the basis of race, color, national origin, ancestry, religion, sex*,
    gender, gender identity, gender expression, sexual orientation, age, physical
    disability, medical condition, mental disability, marital status, pregnancy,
    veteran status, genetic information. A statement to this effect should appear in
    the constitution of all recognized organizations.

    e. Refrain from using university funds for any activity, event, or program that
    endangers the health, safety, or welfare of others.

    *Except those exempted from Title IX compliance.

USC Campus Activities reserves the right to revoke, limit, and/or suspend the privileges
of a Recognized Student Organization should the organization fail to adhere to any of the
responsibilities listed above.

## III. Recognition Process

Recognition status runs for one academic year (August 1-July 31) regardless of when an
application is approved. All student organizations must complete recognition paper
through the online recognition portal, OrgSync, on an annual basis.

Organizations that do not complete the recognition renewal process by the specified time
will lose all privileges.

The name and email of the first person listed on the application will be made available to
members of the USC community. This student will also receive official communications
from Campus Activities and is expected to share any pertinent information with their
organization. Only the organization's email and website will be listed on the student
organization website.

82

No student or student organization may enter into direct contractual agreement in USC's name with outside vendors (travel agencies, tour operators, etc.). Check with the appropriate administrative unit (Vice President for Student Affairs or specific dean's offices) for clarification of required procedures.

For more information and resources for student organizations, visit the Campus Activities website at usc.edu/ca.

4.   Facilities

I. General Policies

Recognized student organizations are offered priority use of all Student Affairs venues. However, other reservations that are made prior to student reservations will not be cancelled to accommodate these higher priority programs. Recognized student organizations may also request to use classroom space, but academic scheduling has priority in these venues. Anyone using USC venues must be in compliance with university regulations regarding time, place and manner. Activities, programs or events must not interfere with other university functions. If any unscheduled activity interferes with an official university function or any other scheduled activity, it may be discontinued at the direction of the Division of Student Affairs.

Scheduling reservations shall be made on a first-come, first-served basis according to organization type, and the university cannot and does not guarantee that facilities suitable for all group needs will be provided. Requests should be made early enough to allow adequate time for processing the request, planning the event, payment of fees and advertising. No advertisement can take place before written confirmation is received.

No requests may be finalized or confirmed until arrangements have been made and approved by all USC departments having vested interest in the event, including but not limited to the Division of Student Affairs, USC Bookstores, USC Hospitality, USC Transportation, the Department of Public Safety and Fire Safety.

The University of Southern California reserves the right to cancel any event if fees are not paid by the required due date, if the group does not comply with USC policies and procedures, or if USC officials cannot ensure the safety of students, faculty, staff and/or visitors.

II. Reserving Venues

Reservation request forms for Bovard Auditorium, Ground Zero Performance Café, Ronald Tutor Campus Center, outdoor venues and advertising spaces are available online at trojanevents.usc.edu.

All reservation requests for table spaces must be made by submitting reservation request forms at least four weeks prior to the event. Event requests for Bovard Auditorium, Ground Zero Performance Café, Ronald Tutor Campus Center, and the outdoor parks and plazas must be submitted to Trojan Event Services no later than 4 weeks prior to the event. Telephone requests are not accepted. The venue requested becomes officially confirmed only when written approval is issued.

# Exhibit Q

# STATE OF MICHIGAN

# COURT OF CLAIMS

KATELYN ZWIKER,

               Plaintiff,

v

LAKE SUPERIOR STATE UNIVERSITY, and
THE BOARD OF TRUSTEES OF LAKE
SUPERIOR STATE UNIVERSITY,

               Defendants.

_____/

**<u>OPINION AND ORDER</u>**

Case No.  20-000070-MK

Hon. Michael J. Kelly

Pending before the Court is defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (C)(10).  Because the contractual agreements and other documentary evidence demonstrate defendants are entitled to judgment, the motion is GRANTED.[1]

## I.      BACKGROUND

According to the allegations contained in the complaint, plaintiff is a student at defendant Lake Superior State University.  During the Spring 2020 semester, plaintiff was enrolled at

---

[1] The Court notes that plaintiff often cites in support of her position the Court's opinion and order in *Milanov v Univ of Mich*, opinion and order of the Court of Claims, issued July 27, 2020 (Docket No. 20-000056-MK), which raised similar issues as those presented in this case.  In that case, the defendants denied that the alleged contracts existed; in fact, they argued that this state's jurisprudence refuses to recognize the existence of a contract between students and a university. Here, however, unlike in *Milanov*, defendants produced the contractual agreements referenced in the complaint.  The plain language of the contracts produced in this case compel a different result than was reached in *Milanov*.

Exhibit Q, pg 17

defendant University and she lived in University-owned housing.  Plaintiff alleges that her tuition, room and board, and "fees" for the Spring 2020 semester were prepaid, using a combination of scholarships, loans, and out-of-pocket funds.  Plaintiff has filed this action as a putative class action.

The allegations in the complaint arise out of defendant University's decision to switch to online, distance learning during the middle of the Spring 2020 semester due to the onset of the global COVID-19 pandemic.  Plaintiff alleges that her online courses are not the equivalent of live, in-person instruction.  She also alleges that she moved out of on-campus housing in mid-March 2020 as a result of the pandemic and as a result of various executive orders entered by the Governor.  However, despite moving out, she alleges that she has not received a refund of amounts paid for room and board.  In addition, plaintiff alleges that she paid certain fees for the Spring 2020 semester, but she has not received the benefits associated with the payment of those fees.  Nor has she been given a refund of the prepaid fees.

This putative class action purports to bring claims on behalf of three classes: (1) the "tuition class"; (2) the "room and board class"; and (3) the "fees class."  Plaintiff asserts that the "tuition class" consists of all students who were charged for—or those who paid tuition on behalf of students—for the Spring 2020 semester and who were denied live, in-person instruction.  The "room and board" class consists of those who paid the costs of room and board and who moved out of on-campus housing before the completion of the Spring 2020 semester due to the pandemic. Finally, the "fee class" are those students who were charged enrollment fees for the Spring 2020 semester.

Exhibit Q, pg 18

Count I of the complaint alleges breach of contract. According to plaintiff, defendant University entered into contract with plaintiff and with those in the tuition class pursuant to which defendant University agreed to provide live, in-person instruction in exchange for payment of tuition. Plaintiff has not attached the purported contract to her complaint, but she alleges that the agreement is in defendant University's possession. Plaintiff asserts that defendant University breached this agreement by moving classes online for the second half of the Spring 2020 semester and by refusing to reduce or refund tuition paid by plaintiff. Plaintiff alleges that she was damaged because she was deprived of the value of live, in-person instruction.

Count II alleges a breach of contract against defendants arising out of room and board amounts that were prepaid, but not refunded after (many) students moved out of university-owned housing in mid-March 2020. The complaint alleges that plaintiff and other class members entered into contracts with defendant University for the provision of room and board, and that these contracts are in defendant University's possession. Plaintiff request that the Court order defendants to issue refunds for the unused days of room and board.

Count III alleges breach of contract on behalf of plaintiff and the fee class. Plaintiff alleges that she entered into a contract with defendant University pursuant to which plaintiff agreed to pay fees in exchange for university-provided services. Plaintiff alleges that she has not received the expected benefit and that defendant has kept the fees.

Counts IV-VI, which appear to be pled in the alternative, allege unjust enrichment with respect to tuition, room and board, and fees, respectively. The complaint alleges that defendant University has received benefits at the expense of plaintiff to which defendant University is not entitled. Plaintiff alleges that equity demands defendants refund a portion of the monies paid for

that which she did not receive, i.e., live, in-person instruction, a prorated amount for unused room and board monies, and services.

## II.   DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

This matter is before the Court on defendants' July 9, 2020 motion for summary disposition. Defendants argue that live, in-person classes and online, distance learning are of equal value. Defendants cite the University's "One-Rate" tuition structure, which establishes the same tuition rate for online and in-person instruction, in support of their assertion that the different types of instruction have the same value. Defendants admit that plaintiff entered into two contracts with defendant University: one for tuition (Tuition Contract) and one for housing (Housing Contract). The Tuition Contract, asserts defendant, is a "Financial Responsibility Agreement" that all students must accept before they are permitted to register for classes. The Housing Contract is defendant University's "Residence Hall / Dining Service Contract," which incorporates the university's On-Campus Resident Handbook.

Defendants first argue that defendant Board of Trustees had a constitutional right to craft its COVID-19 response and that plaintiff cannot challenge or second-guess that response. In addition, defendant Board of Trustees argues that the First Amendment to the United States Constitution protects the academic freedom of public universities and precludes the types of challenges plaintiff brings in the instant case. In essence, defendant argues that how it provides education, housing, and services to students is a matter of academic freedom that cannot be reviewed by any court.

Turing to plaintiff's breach-of-contract claims, defendants argue that they did not breach the pertinent contracts. Beginning with the Tuition Contract, defendants argue that there is nothing

-4-

within the agreement promising live, in-person instruction to plaintiff or to any of the putative class members.  To this end, defendants argue that the Tuition Contract does not address how course content is to be delivered, and that defendants have the authority to transition to online learning.  Defendants also argue that the Tuition Contract covered the payment of fees, and that it was plaintiff's registration as a student, not her receipt of services, that obligated her to pay the pertinent fees.  And defendants argue that plaintiff had the opportunity to access and benefit from programming funded by the fees during the Spring 2020 semester.

In the alternative, defendants argue that plaintiff cannot prevail on her breach-of-contract claim related to the Tuition Contract because she has not suffered any damages.  Defendants note that the "One-Rate" tuition structure assigns an equal monetary value to both in-person and online methods of instruction.  Thus, under the agreement, the methods of instruction are the same, argues defendants.  And where plaintiff received the number of credit hours for which she paid, she has not been damaged.  With respect to fees, defendants argue that plaintiff still had access to online services that were supported by her fees for the remainder of the Spring 2020 semester.

Defendants also argue that plaintiffs' breach of contract claim with regard to room and board fails as a matter of law.  First, defendants argue that there was no breach of this agreement because plaintiff was permitted to stay on campus for the entire Spring 2020 semester, but she voluntarily chose to leave.  Defendants argue that plaintiff was warned that moving out of on-campus housing did not terminate the Housing Contract.  In addition, the Housing Contract expressly stated that no refunds would be given for unused meals.  Second, defendant argues that a force majeure clause and other clauses excused defendant University from its obligations under the housing contract.

-5-

Lastly, defendants argue that plaintiff's unjust enrichment claims fail as a matter of law. They argue that the existence of the Tuition Contract and the Housing Contract preclude the Court from implying a contract as a matter of law.  In addition, they argue that they did not receive an unwarranted benefit from any of the monies paid by plaintiff.

III.    ANALYSIS

A.  SUMMARY DISPOSITION STANDARDS

Defendants have moved this Court for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10).  A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and summary disposition is appropriate "if the opposing party has failed to state a claim on which relief can be granted." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010) (citations, quotation marks, and alteration omitted).  "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id*. at 304-305.  Here, plaintiff's complaint pleaded that the pertinent contracts were in defendants' possession, as permitted by MCR 2.113(C)(1)(b).  This reference permits the Court to consider the contracts as "part of the pleadings for all purposes," MCR 2.113(C)(2), including summary disposition review under MCR 2.116(C)(8), see *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

As it concerns subrule (C)(10), summary disposition is warranted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  MCR 2.116(C)(10).  The moving party under subrule (C)(10) must identify specific issues and "must support its motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds

-6-

asserted." *Barnard Mfg Co Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369;
775 NW2d 618 (2009), citing MCR 2.116(G)(3).  "If the moving party properly supports its
motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed
fact exists."  *Id.* at 370 (citation and quotation marks omitted).

### B.  PLAINTIFF'S CONTRACT CLAIMS MUST BE DISMISSED

While defendants raise immunity arguments and contend that this Court should refrain
from interfering with university affairs, the Court focuses instead on defendants' dispositive
arguments regarding the contractual documents that they have produced and attached to their
briefing.[2]  "A party asserting a breach of contract must establish by a preponderance of the
evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in
damages to the party claiming breach."  *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178;
848 NW2d 95 (2014).  "When interpreting a contract, the examining court must ascertain the intent
of the parties by evaluating the language of the contract in accordance with its plain and ordinary
meaning."  *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410
(2012).  A court must enforce unambiguous contractual language as it has been written.  *Id.*

### 1.  TUITION

Turning first to plaintiff's claims arising out of the Tuition Contract, plaintiff alleges at ¶¶
56-58 of her complaint that defendant breached the agreement by failing to provide live, in-person
instruction as required by the agreement.  Defendant argues that the Tuition Contract did not

---

[2] As alluded to and as will be discussed in more detail *infra*, the instant case is different from the
*Milanov* case in a critical, and dispositive respect: defendants in the instant case produced the
pertinent contracts.  And the plain language of the agreements presented in this case demonstrate
that defendants are entitled to summary disposition.  Therefore, the instant case, and the result
reached herein, is distinguishable from *Milanov*.

-7-

include any guarantees about whether instruction would be provided by way of live, in-person instruction or by distance learning. Defendant also points out that page 1 of the Tuition Contract states that students such as plaintiff agree, upon registration:

> I understand that when I register for any class at Lake Superior State University, or receive any services from Lake Superior State University, I accept full responsibility *to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services*. [Emphasis added.]

In addition, the agreement provides that a student's failure to attend class does not absolve the student of any financial responsibility under the agreement.

In light of the unambiguous language of the Tuition Contract, the Court agrees with defendants' contention that the promise alleged by plaintiff does not appear in the agreement. Thus, there can be no breach as has been alleged by plaintiff. Indeed, the Tuition Contract contains no guarantee of live, in-person instruction. In fact, plaintiff has not made an attempt to point to any language contained within the agreement that makes the purported promise of live, in-person instruction alleged in her complaint. A claim for breach of contract cannot be sustained where the language purportedly breached does not appear in the parties' agreement. A court may not read into an unambiguous agreement a term not agreed to by the parties. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018). Furthermore, page 1 of the Tuition Contract declares that students accept full responsibility for all tuition—and fees, discussed below—as a result of registration and/or a receipt of services. Here, plaintiff registered for classes and received services, i.e., instruction. This, according to the unambiguous language of the Tuition Contract, rendered her liable for the payment of tuition, thereby providing another reason to defeat her claim for a refund in the instant case.

-8-

In arguing for a different outcome, plaintiff has not disputed the existence of the Tuition Contract, nor has she disputed that the document controls the parties' relationship. Instead, she argues that "discovery will be necessary to flesh out the full parameters of the contractual terms, including whether there was an explicit representation that classes would be in person, or whether that is simply a fair implication from LSSU's statements. However, plaintiff has offered little more than conjecture, and conjecture will not beget discovery. See *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011).

Plaintiffs' documentary evidence does not change the result, either. Plaintiff has attached to her response what appear to be screenshots from defendant LSSU's course catalog.[3] The screenshots show that certain courses allow students to select "Traditional Campus Instructional Method." It is not clear, however, whether plaintiff was registered for these courses during the Spring 2020 semester. Moreover, plaintiff has not presented an argument that the screenshots from the course catalog can or should be incorporated into the Tuition Contract. Contracting parties may incorporate a secondary document into a primary document by including a reference in the primary document regarding the secondary document. *Peabody v DiMeglio* 306 Mich App 397, 406-407; 856 NW2d 245 (2014). Here, however, plaintiff has not presented an argument concerning why the Court should conclude that the Tuition Contract references, let alone expresses an intent to incorporate, the catalog. As defendants point out, while the Tuition Contract references a refund policy contained within the University catalog, it does not incorporate the entire catalog.

---

[3] Given that this document was not attached to or referenced in the pleadings, plaintiff has essentially invited the Court to decide this motion for summary disposition under MCR 2.116(C)(10). As noted above, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). For the avoidance of doubt, and to conform to the parties' arguments and documentary evidence, the Court decides the motion under subrule (C)(10).

-9-

And again, plaintiff has not presented documentary evidence that the courses for which she signed

registered in the Spring 2020 semester included such a guarantee, even assuming the guarantee

could be incorporated into the Tuition Contract.

In fact, instead of arguing that the terms were incorporated, plaintiff argues that the parties

had an implied contract for live, in-person instruction based on her subjective expectations.

However, "[a]n implied contract cannot be enforced where the parties have made an express

contract covering the same subject matter." *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83,

93; 468 NW2d 845 (1991). In addition, a party's expectations cannot supersede the language of

an unambiguous contract, and courts are prohibited from rewriting agreements to align with a

party's alleged expectation. See, e.g., *Kendzierski v Macomb Co*, 503 Mich 296, 312; 931 NW2d

604 (2019); *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003).

## 2.   FEES

Defendants are entitled to summary disposition on Count III of plaintiff's complaint as

well, which alleges a breach of contract related to the payment of certain fees. While plaintiff's

pleading and briefing do not identify the fees at issue, defendants' documentary evidence reveals

that plaintiff was charged certain fees upon registration for the Spring 2020 Semester: a "Program

Fee"; a "Special Course Fee"; a "Student Activity-Media Fee"; an "Environment Fee"; and an

"Athletic Fee." As an initial matter, the complaint and briefing are deficient because they fail to

identify the precise promises at issue with respect to fees. And as defendants point out, the

"Tuition Contract" specifies that fees are assessed and owed "as a result of [ ] registration[.]" Thus,

according to the unambiguous terms of the parties' agreement, it was the act of registering for

classes that required plaintiff to pay the fees at issue, not the receipt of certain services. The

unambiguous language of the parties' agreement belies the notion that a refund is owed under the

Exhibit Q, pg 26

agreement if services are not utilized, for one reason or another.  And on this point, plaintiff has not responded to defendants' argument regarding the language employed in the Tuition Contract. Instead, she takes issue with defendants' alternative conclusion that she was not damaged.  Given the conclusion that no breach occurred, however, there is no need to consider whether plaintiff was damaged when defendants still provided certain services to her and other students despite the pandemic and the limited on-campus activities.

### 3.   ROOM AND BOARD

Count II of the complaint alleges a breach of contract with regard to the Housing Contract. The complaint alleges that defendants breached the Housing Contract by not providing housing and meals for the entire semester.  Defendants are entitled to summary disposition on this claim as well.  The documentary evidence reveals that students were permitted to remain in university-owned housing and that meal service would continue if students chose to remain.  While emails reveal that students were encouraged to leave or to not return to campus after the Easter holiday, there is no evidence that defendants ever prevented students from returning or otherwise failed to make housing and meals available.  In addition, defendants' documentary evidence reveals that students were allowed to keep their belongings in on-campus housing throughout the duration of the Housing Contract.  As a result, summary disposition is warranted on this claim under MCR 2.116(C)(10).[4]

---

[4] Because the Court concludes that defendants provided that which they were required under the Housing Contract, there is no need to consider the import of the force majeure clause cited by defendants.

Moreover, the unambiguous language of the Housing Contract belies any claim that plaintiff was entitled to the "refund" she seeks.  Notably, ¶ 8 of the agreement expressly states that moving to "a private home or other housing" "shall not" terminate the residency and financial conditions of the Housing Contract.  The agreement also provides at ¶ 2 that "No refund is made for unused meals."  Furthermore, the agreement states that, upon signing the Housing Contract, a student became responsible "for all the terms and financial obligations" expressed therein until the end of the semester.  This language is plain and unambiguous, and it expressly provides what is to happen in the event a student does not utilize the meals and housing that have been provided by the University.  This language defeats plaintiff's assertion that a refund is owed in the event a student moves out of on-campus housing and no longer uses her meal plan.

## C.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAIL TO STATE A CLAIM

Counts III-VI of plaintiff's complaint must be dismissed as well.  These claims all state, in the alternative to plaintiff's breach-of-contract claims, that recovery is permitted under an unjust enrichment theory.  However, "an unjust enrichment claim is available only if there is no express contract covering the same subject matter." *Local Emergency Fin Assistance Loan Bd f Blackwell*, 299 Mich App 727, 734; 832 NW2d 401 (2013) (citation and quotation marks omitted).  The existence of the Tuition Contract and Housing Contract—which existence plaintiff does not dispute—foreclose her ability to proceed on an unjust enrichment theory.  These claims will be dismissed pursuant to MCR 2.116(C)(8).

## IV.    CONCLUSION

IT IS HEREBY ORDERED that defendants' motion for summary disposition is GRANTED pursuant to MCR 2.116(C)(8) and (C)(10).

Exhibit Q, pg 28

This is a final order that resolves the last pending claim and closes the case.


August 31, 2020

Michael J. Kelly
Judge, Court of Claims

# Exhibit R

# STATE OF MICHIGAN

# COURT OF CLAIMS

KEVIN HORRIGAN, and all others similarly
situated,

    Plaintiff,

v

EASTERN MICHIGAN UNIVERSITY, and
BOARD OF REGENTS OF EASTERN
MICHIGAN UNIVERSITY,

    Defendants.

_____/

**OPINION AND ORDER**

Case No.  20-000075-MK

Hon. Michael J. Kelly

   Pending before the Court is defendants' motion for summary disposition filed pursuant to

MCR 2.116(C)(8).  For the reasons that follow, the motion is GRANTED.[1]

## I.   BACKGROUND

   Plaintiff is a student at defendant Eastern Michigan University (EMU) who was enrolled

during the Winter 2020 semester.  On or about March 11, 2020, EMU announced that, because of

the COVID-19 pandemic, all classes would transition to online, distance learning for the remainder

---

[1] As the parties are likely aware, the Court has issued two other opinions and orders in cases filed
against other state universities that raise substantially similar issues as the ones presented in this
case.  Because defendants in this case produced pertinent contractual agreements, this Court finds
that the instant case is more comparable to its decision in *Zwiker v Lake Superior State Univ*,
opinion and order of the Court of Claims, issued August 31, 2020 (Docket No. 20-000070-MK)
(granting summary disposition to the defendants), than it is to *Milanov v Univ of Mich*, opinion
and order of the Court of Claims, issued July 27, 2020) (denying summary disposition to
defendants).

-1-

of the Winter 2020 semester.  Also, according to the complaint, defendants instructed students who
lived in university-owned housing to move out and to return to their permanent residences if they
could do so.  Plaintiff alleges that, despite the cancellation of live, in-person instruction, what he
describes as the "constructive eviction" of students from on-campus housing, and the cancellation
of campus activities, defendants have not offered refunds for tuition, room and board, or fees.  And
while plaintiff acknowledges that a credit was offered to students who moved out of on-campus
housing, he contends that the credit was inadequate compared to the financial losses sustained by
students and their families.  Plaintiff asserts that it was "responsible" for defendants to make the
decisions that they made in cancelling classes, but it is inequitable for them to retain full amounts
paid for tuition, fees, and room and board under the circumstances.

Plaintiff filed a six-count complaint with claims related to the payment of tuition, room and
board, and fees.  Count I alleges breach of contract and concerns the payment of tuition.  According
to the complaint, plaintiff entered into an express agreement with EMU—he alleges that the
contract is in defendants' possession—whereby plaintiff agreed to pay tuition, and EMU agreed
to provide live, in-person instruction.  Plaintiff alleges that he fulfilled his end of the bargain by
paying tuition, but EMU failed to uphold its promise to provide live, in-person instruction.
Plaintiff alleges he was damaged by the decision to switch to in-person instruction because he was
deprived of the value of services the tuition was intended to cover.

Count II alleges breach of contract with respect to room and board.  According to plaintiff,
he entered into a contract with defendants—again, he alleges the agreements are in defendants'
possession—pursuant to which he prepaid amounts for room and board, and in exchange, EMU
agreed to provide housing and meals.  Plaintiff alleges that he fulfilled his end of this bargain, but

-2-

defendants failed to provide what they had promised.  Plaintiff seeks a refund for unused days of housing and for unused meals.

Count III alleges breach of contract with respect to the payment of certain fees.  According to plaintiff, he paid various fees, in exchange for which defendants—again, pursuant to contracts that are in defendants' possession—agreed to provide certain services.  Plaintiff alleges that defendants did not provide the agreed-upon services.  He alleges he is entitled to a prorated refund of unused fee amounts collected by defendants.

Counts IV-VI of the complaint are asserted in the alternative to the breach of contract claims.  These counts allege unjust enrichment with respect to amounts paid to defendants for tuition, room and board, and fees.  According to the allegations contained in the complaint, defendants received a benefit at the expense of plaintiff to which they are not entitled.  Plaintiff contends that defendants should have to refund money paid for services that were never provided.

## II.    DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

Defendants have moved this Court to dismiss plaintiff's complaint because they argue that plaintiff failed to state a claim on which relief can be granted.  Although they asset several arguments in support of their position, this opinion will focus on the issues the Court considers to be dispositive.  In that regard, defendants argue that plaintiff failed to plead a breach of contract claim and that his complaint must be dismissed as a matter of law because the plain language of various contracts plaintiff entered into with defendants defeats plaintiff's claims.  They argue that plaintiff's "Tuition Agreement" with EMU only provided that plaintiff agreed to pay tuition in exchange for "educational services," and that there is no express obligation to provide live, in-person instruction in a classroom setting.  According to defendants, the Tuition Agreement

contained a promise that EMU would provide "educational services," but it did not contain any promises about the method of instruction.  Furthermore, they argue that the agreement made plaintiff responsible for the payment of all tuition and fees upon registration for classes or receipt of services at EMU.  And defendants argue that because plaintiff registered for classes and received services, he is liable for all amounts due under the plain language of the Tuition Agreement.  Finally, they note that EMU does not charge a different rate for online classes than it does for live, in-person instruction.

With respect to room and board, defendants cite a "Housing and Dining Services Contract." According to defendants, this agreement expressly contemplates that students might leave before the end of the term and it denies any refunds.  Furthermore, they argue that this agreement contemplates that the agreement might change due to conditions that affect student health and safety.  And they argue that the only time the rate for room and board may be prorated is when a contract release has been completed and approved; however, there are no allegations that that process was employed in plaintiff's case.  As an alternative, defendants argue that plaintiff's claim fails because there are no damages.  Notably, they argue that EMU provided plaintiff a housing and meal plan credit after he moved out.

With respect to the breach of contract claim related to the payment of fees, defendants argue that the claim must fail because plaintiff did not state what the relevant fees were, much less how EMU breached a duty or how plaintiff suffered harm as a result.  In addition, they argue that the Tuition Agreement covers fees, such that any claim plaintiff could make fails on the plain language of the agreement.

With respect to unjust enrichment, defendants argue that plaintiff's claims must fail for two reasons. Firstly, the existence of express agreements governing the same subject matter precludes recovery in unjust enrichment. Secondly, they argue that plaintiff failed to plead that the funds were used for anything other than their stated purpose, which defendants contend is fatal to an unjust enrichment claim.

III.    ANALYSIS

Defendants' motion is brought pursuant to MCR 2.116(C)(8). The Court may grant this motion:

> if the opposing party has failed to state a claim on which relief can be granted. A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party. Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Nyman v Thompson Reuters Holdings, Inc*, 329 Mich App 539, 543; 942 NW2d 696 (2019) (internal citations and quotation marks omitted).]

A. BREACH OF CONTRACT CLAIMS

With respect to the scope of this Court's review under subrule (C)(8), it must be noted that plaintiff's pleadings referenced various contractual agreements and stated, as permitted by MCR 2.113(C)(1)(b), that the agreements were in the possession of the adverse parties. When a written agreement is referenced in a party's pleading in this fashion, it is considered "part of the pleading for all purposes." MCR 2.113(C)(2). In the instant case, the complaint's reference to the pertinent agreements makes it is appropriate for the Court to consider the agreements when deciding a motion under subrule (C)(8). See *Varela v Spanski*, 329 Mich App 58, 69-70; 941 NW2d 60 (2019).

Exhibit R, pg 35

As it concerns the documents that have been incorporated into the pleadings, plaintiff must, in order to state a claim for breach of contract, plead that: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). A court must enforce unambiguous contractual language as it has been written. *Id*.

Having considered the contracts defendants attached to their briefing, the Court agrees with defendants that the plain language of the parties' agreements defeats plaintiff's contract claims. Turning to the Tuition Agreement, the agreement contains a "Financial Responsibility" statement that includes a "Promise to Pay." This promise states that when a student "register[s] for any class at [EMU] or receive[s] any service from" EMU, that student accepts "full responsibility to pay *all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services.*" (Emphasis added). Furthermore, the agreement contains a paragraph disclaiming "all prior understandings, representations, negotiations and correspondence between the student and [EMU.]" The same paragraph states that the agreement "constitutes the entire agreement between the parties with respect to the matters described and shall not be modified or affected by any course of dealing or course of performance." And as defendants point out, there is no language in the Tuition Agreement pertaining to the method or mode of instruction, nor is there any language promising that the payment of tuition guarantees a student to live, in-person instruction in a classroom.

-6-

The Court agrees with defendants that the plain language of the Tuition Agreement defeats plaintiff's breach of contract claim related to live, in-person instruction. The pertinent agreement makes no promise of live, in-person instruction. And as defendants point out, the agreement dictates that when a student registers for classes or receives services from EMU, the student is obligated to pay *all tuition* assessed as a result of registration. Here, plaintiff registered for classes and received services, as alleged in the complaint. There is no room in this unambiguous agreement to find that plaintiff's obligation to pay tuition was predicated on receiving a certain method of instruction, or that live, in-person instruction was ever promised to plaintiff. The Court must enforce the parties' agreement as it has been written and it may not add additional terms to the agreement. See *McCoig*, 295 Mich App at 694. Applying that principle here, the Court must conclude that plaintiff's obligation to pay tuition was not predicated on the receipt of any particular method of instruction, and that plaintiff's claim for live, in-person instruction is not within the four corners of the parties' document. As a result, Count I must be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff argues that, at this stage of the litigation, "there is no proof that the language identified" by defendants in the Tuition Agreement applies to plaintiff's claims. However, the plain language of the agreement makes students liable for the full amount of tuition upon registration and/or the receipt of services, and it makes no promises regarding how those services are to be provided. Nor does the plain language promise a particular method of instruction. In fact, the agreement disclaims all other promises made and states that the agreement is integrated. While plaintiff suggests that discovery is necessary to determine if other promises were made, plaintiff has done nothing more than speculate that perhaps additional contractual terms might

-7-

exist, and asserting this type of position does not entitle him to discovery.  See *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011).

Plaintiff's assertion of an implied contract fares no better.  "An implied contract cannot be enforced where the parties have made an express contract covering the same subject matter." *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991).  In addition, a party's expectations cannot supersede the language of an unambiguous contract, and courts are prohibited from rewriting agreements to align with a party's alleged expectation.  See, e.g., *Kendzierski v Macomb Co*, 503 Mich 296, 312; 931 NW2d 604 (2019); *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003).

With respect to plaintiff's contract claim based on room and board, defendants have attached to their briefing a "Housing and Dining Service Contract."  Paragraph 5 states that the agreement will not terminate if a student moves off campus.  Furthermore, paragraph 6 states that if a student "chooses to move out of the residence hall/apartment without an approved release," the student "continues to be financially responsible for all room and board charges for the remainder" of the term.  Paragraph 21 states that EMU "reserves the right to reassign or remove a student from university housing for reasons of health, safety, welfare," and that the removal may be done on a temporary or permanent basis.  Regarding refunds, paragraph 22 of the contract states that room and board "may be pro-rated" if a resident "is approved for a contract release pursuant to the terms of this contract."  Paragraph 34 of the agreement reserves to EMU the right to offer room and board services at the time(s) of its choosing, and that the time set for performance of the agreement can be changed based on events that "may affect the health or safety of students or affect the educational function of the institution."  Finally, paragraph 38 states that "Refunds are not given for missed or unused meals."

-8-

Based on this language in the Housing and Dining Services contract, plaintiff cannot state a claim for relief with respect to room and board.  Turning first to meals, the agreement expressly states at paragraph 38 that no refund will be given for missed or unused meals.  This plain and unambiguous language defeats any refund claim related to meals.  Plaintiff argues that this language only applies to situations where a student unilaterally decides against eating at the dining hall.  However, the language is plain and unambiguous and given without qualification: "Refunds are not given for missed or unused meals."  There is no exception contained in this language, and it disclaims any ability of a student to obtain a refund for missed or unused meals, regardless of the reason.  The Court cannot add into the parties' agreement the language suggested by plaintiff. See *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018) (explaining that a reviewing court "may not read into the contract terms not agreed upon by the parties") (citation and quotation marks omitted).

As for housing, paragraph 6 of the agreement unambiguously states that, if a student moves out of a residence hall without an approved release, the student remains liable for all room and board charges for the remainder of the term.  Paragraph 22 of the agreement only authorizes a pro-rated refund if a student is approved for a contract release pursuant to the terms of the agreement. Plaintiff's complaint did not plead such an approved release, and there is no indication that such a release was given when plaintiff moved out of on-campus housing in this case.  Thus, plaintiff has not pled or alleged facts that would give rise to the only set of conditions under which a refund might issue.  And as defendants note, the agreement gives EMU the right to remove students for health and safety reasons and to alter the time for performance on the contract.  In short, there is no support in the agreement for plaintiff's claim of a refund and in fact, the agreement states that a refund is not warranted in the circumstances alleged in plaintiff's complaint.

-9-

Plaintiff's final contract claim is related to fees he paid with respect to the Winter 2020 semester.  Plaintiff's complaint generally states that he paid certain, undefined "fees" for the Winter 2020 semester, and that he did not receive the services intended to be covered by those fees.  As defendants note, it is difficult to ascertain the precise fees at issue from plaintiff's complaint.  Plaintiff's responsive briefing's efforts to augment his allegations by referencing information found on EMU's website is beyond the scope of this Court's review under MCR 2.116(C)(8).  See *Nyman*, 329 Mich App at 543.  Nevertheless, any contract claim predicated on the payment of "fees" fails to state a claim as well.  As noted above, the Tuition Agreement pertained to both fees and tuition.  Plaintiff was obligated by the agreement to pay *all fees* "as a result of registration and/or receipt of services."  Here, plaintiff's complaint admits that he registered for classes for the Spring 2020 semester, thereby making all fees "due" at that time, according to the contract.  Nor has plaintiff even pled which service(s) were not received.  The complaint therefore fails to state a claim on which relief can be granted with respect to the payment of fees.  Plaintiff's bare assertion, without offering any specifics or details, that discovery can uncover more details on the fees and services does not preclude summary disposition.  See *Augustine*, 292 Mich App at 419-420.

## B. UNJUST ENRICHMENT CLAIMS

Finally, having concluded that the contract claims must be dismissed because the express contracts at issue foreclose the type of relief requested by plaintiff, the Court must dismiss the unjust enrichment claims as well.  Indeed, "an unjust enrichment claim is available only if there is no express contract covering the same subject matter." *Local Emergency Fin Assistance Loan Bd f Blackwell*, 299 Mich App 727, 734; 832 NW2d 401 (2013) (citation and quotation marks omitted).  Here, there are express agreements that exist and, contrary to plaintiff's assertions, those

-10-

agreements cover the same subject matter as his unjust enrichment claims.  The unjust enrichment claims must be dismissed pursuant to MCR 2.116(C)(8).

### IV.    CONCLUSION[2]

IT IS HEREBY ORDERED that defendants' motion for summary disposition is GRANTED pursuant to MCR 2.116(C)(8).

This order resolves the last pending claim and closes the case.

Dated: September 24, 2020                            _____

Michael J. Kelly, Judge
Court of Claims

---

[2] Because summary disposition is warranted in favor of defendants based on the plain language of the parties' agreements, the Court declines to address defendants' remaining arguments.

# Exhibit S

# STATE OF MICHIGAN

# COURT OF CLAIMS

JAMES ALLEN,

        Plaintiff,

**OPINION AND ORDER REGARDING DEFENDANTS' JULY 15, 2020 MOTION FOR SUMMARY DISPOSITION**

v

Case No.  20-000057-MK

MICHIGAN STATE UNIVERSITY and BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY,

Hon. Christopher M. Murray

        Defendants.

_____/

Pending before the Court is defendants Michigan State University and Board of Trustees of Michigan State University's (collectively "MSU") motion for summary disposition filed under MCR 2.116(C)(8), which will be considered where noted under both that subrule as well as MCR 2.116(C)(10).  For the reasons that follow, the motion will be GRANTED in part and DENIED in part.  Because the parties' briefing was sufficient to resolve the issues, this matter is being decided without oral argument.  See LCR 2.119(A)(6).

## I.  FACTUAL BACKGROUND

During the winter/spring 2020 semester, plaintiff James Allen was in his sophomore year at MSU, studying premedicine.  He lived in on-campus housing.  He brings this putative class action on behalf of other university students in response to the actions taken by MSU related to

-1-

the COVID-19 pandemic.  Plaintiff[1] alleges that in mid-March 2020, MSU transitioned from in-person instruction to online learning, and encouraged students who could return to their permanent residence to do so, although campus housing and dining remained open.  Students who moved out of campus housing received a $1,120 credit (which plaintiff accepted).  Plaintiff alleges that he was deprived of benefits for which he had already paid, specifically, in-person instruction, campus housing and meals, and student activities, and he seeks a pro-rata refund for the amounts paid for the second half of the winter/spring 2020 semester.  Plaintiff acknowledges that MSU's decisions to pivot to online learning and clear out student housing were "responsible," but he nonetheless asserts that it was unlawful and unfair for MSU to retain the full amounts paid by the students for services they did not receive.

## II.  PROCEDURAL HISTORY

Plaintiff filed a six-count complaint on behalf of the putative class, identifying the three potential classes as (1) the "tuition class," (2) the "room and board class," and (3) the "fee class." Plaintiff alleges three counts of breach of contract in Counts I, II, and III.  Plaintiff alleges in Count I that he entered into a contract with MSU, under which he would pay tuition in exchange for live, in-person instruction in a brick and mortar classroom.  Although plaintiff paid the full tuition, he alleges that MSU committed a breach by providing online instruction for the second half of the semester, the value of which is less than in-person instruction.  In Count II, plaintiff alleges that MSU breached the contract wherein he agreed to pay for room and board in exchange for on-campus housing and a meal plan, by not providing room and board for the second half of the semester.  In Count III, plaintiff alleges that he paid a fee to MSU for student services, which MSU

---

[1] The Court uses the singular plaintiff because no class has been certified.

Exhibit S, pg 44

did not provide for the second half of the semester.  Plaintiff seeks relief in the form of a refund in tuition, room and board, and fees.

In the alternative to the breach-of-contract claims, plaintiff alleges unjust enrichment in relation to tuition, room and board, and fees, in Counts IV, V, and VI, respectively.  Plaintiff alleges that MSU has been unjustly enriched by retaining the money paid by plaintiff for in-person instruction, room and board, and fees without providing those services in return.

In response to the complaint, MSU filed a motion for summary disposition under MCR 2.116(C)(8).  First, MSU argues that plaintiff's breach-of-contract claims related to tuition and fees should be dismissed because there is no contractual relationship between the students and the university regarding the modality by which instruction is provided.  Plaintiff could not plead the existence of any contract requiring in-person instruction only, and MSU relies on the doctrine of academic freedom[2] to support the decisions made in response to COVID-19.  Plaintiff also could not plead the existence of any contract related to fees.  Nonetheless, MSU maintains that it was excused from strict performance of any alleged contract on the basis of impracticability or impossibility.

Next, MSU argues that plaintiff failed to state a claim for breach of contract related to room and board because he failed to identify compensable damages, his room and board was paid by his

---

[2] MSU refers to the "*Horowitz/Ewing* doctrine," citing *Bd of Curators of Univ of Missouri v Horowitz*, 435 US 78; 98 S Ct 948; 55 L Ed 2d 124 (1978), and *Regents of Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985), for the proposition that courts will not interfere with university academic policies and decision-making.

Exhibit S, pg 45

family so plaintiff is not a real party in interest, plaintiff's acceptance of the $1,120 credit acted as an accord and satisfaction to bar his claim, and he cannot plead any breach of the housing contract.

Lastly, MSU argues that plaintiff failed to plead a claim for unjust enrichment where MSU received no windfall, all funds were used for university purposes, the express housing contract precludes plaintiff's unjust enrichment claim related to room and board, and plaintiff lacked standing because he did not personally pay for his room and board.

Plaintiff filed a response to MSU's motion for summary disposition, attaching to it one email to students regarding the on-campus housing check-out process and credit, and MSU filed a reply brief. Thereafter, this Court entered an order regarding the production of documents, ordering plaintiff to submit any and all documents that form the basis of his assertion that a written contract existed between the parties regarding the students receiving in-person instruction only. The documents produced were reviewed and considered by this Court.

## III.  STANDARD OF REVIEW

MSU filed its motion for summary disposition under MCR 2.116(C)(8), which "tests the legal sufficiency of the complaint on the basis of the *pleadings alone*." *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001) (emphasis added). "The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted." *Id*. at 129-130. "The motion should be granted if no factual development could possibly justify recovery." *Id*. at 130. However, as noted in the order regarding the production of documents, the exhibits attached to plaintiff's response to the motion for summary disposition, as well as the production submitted in response to the court order, convert review of this motion as it relates to the breach-of-contract claims to the standard under MCR 2.116(C)(10). See *Innovation Ventures, LLC v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016) (review is proper under MCR

-4-

2.116(C)(10) when a court considers information outside the pleadings).  Review of MSU's motion

for summary disposition regarding plaintiff's unjust enrichment claims remains proper under MCR

2.116(C)(8).

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of

the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material

fact exists to warrant a trial."  *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865

NW2d 915 (2014).  When evaluating a motion under this subrule, the court considers affidavits,

pleadings, depositions, admissions, and other evidence that is submitted by the parties "in the light

most favorable to the party opposing the motion."  *Innovation Ventures*, 499 Mich at 507

(quotation marks and citation omitted).  "Where the proffered evidence fails to establish a genuine

issue regarding any material fact, the moving party is entitled to judgment as a matter of law."  *Id*.

(quotation marks and citation omitted).

## IV.  ANALYSIS

### A.  BREACH OF CONTRACT RELATED TO TUITION

Plaintiff alleges in Count I of the complaint that he and other members of the proposed

tuition class entered into contracts with MSU under which students would pay tuition, and in

exchange, MSU would exclusively provide live, in-person instruction in a classroom.  If a claim

is based on a written instrument, the instrument must be attached to the pleading unless the

instrument is a matter of public record, in the possession of the adverse party, inaccessible to the

pleader, or attaching the instrument would be unnecessary or impractical, and the pleading states

one of these reasons.  MCR 2.113(C)(1)(a)-(d).  Plaintiff alleged in the complaint that such a

contract regarding in-person instruction was breached, but did not specify a reason under MCR

2.113(C)(1) why no contract was attached.  Plaintiff did not further identify this alleged contract

-5-

by name, date, or other identifying information.  Plaintiff produced a couple of documents in response to MSU's motion for summary, and continued to argue that other documents existed to support his claim.  As a result, this Court entered the order requiring plaintiff to produce any and all documentation in his possession to support his tuition-based breach-of-contract claim.

To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach."  *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).  The documents produced by plaintiff in response to the order do not establish a genuine issue of material fact on whether there was a contract.  "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015).

In response to the order of production, plaintiff produced example pages from the 2020 Spring Term Class Schedule Listing from the Office of the Registrar, the MSU Union Student Guide, a "Be a Spartan" brochure, and brochures from several of the different academic colleges within the university (the college of nursing, the college of communication arts and sciences, the kinesiology department, the chemistry department, etc.).  None of these documents include the required elements of a contract.  *Id*.  None contain a promise that, with the payment of tuition, MSU would exclusively provide in-person instruction.  That the brochures and catalogs were written with the expectation that instruction would be in-person does not create a contractual promise that no matter the circumstance, all instruction would be in-person.  Rather, the brochures merely explain the types of classes available and the possibility of "hands-on" experience or instruction in the different university facilities.  For similar reasons, the Court of Appeals has

-6-

rejected the contention that student handbooks, codes, or other informational materials or brochures create a contract, express or otherwise, between a university and student. *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 157-158; 413 NW2d 692 (1987).[3] Therefore, there is no genuine issue of material fact that there is no contract between plaintiff and MSU promising live, in-person instruction only in exchange for tuition payments. Because plaintiff cannot establish that a contract exists, the breach-of-contract claim regarding tuition fails, and MSU is entitled to summary disposition as a matter of law. MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.[4]

## B. BREACH OF CONTRACT RELATED TO ROOM AND BOARD

Plaintiff alleges in Count II of the complaint that he entered into a contract with MSU in which plaintiff agreed to pay for room and board, and in exchange, MSU would provide campus housing and dining services. Plaintiff did not attach any copies of the housing contract to the complaint, nor specify a reason under MCR 2.113(C)(1) why no copy was attached. MSU attached the housing contract as an exhibit to its motion for summary disposition. Thus, for Count II, the first element of plaintiff's breach-of-contract claim is met because students who lived in on-

---

[3] The Court of Appeals has come to the same conclusion in unpublished decisions as well. See *Lee v Univ of Mich-Dearborn*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2009 (Docket No. 284541), p 3 (student code of conduct did not create an implied contract); *Amaya v Mott Community College*, unpublished per curiam opinion of the Court of Appeals, issued March 7, 1997 (Docket No. 186755), pp 2-3 (university course catalog and published informational materials did not establish a contract between the plaintiff student and the university).

[4] This conclusion is dispositive of this issue, and renders unnecessary any discussion of MSU's arguments regarding academic freedom, compensable damages relating to the quality of online versus in-person instruction, and the excusal of strict performance due to impossibility or impracticability.

-7-

campus housing entered into a housing contract with MSU that included dining services, and incorporated a housing handbook into the contract. *Bank of America*, 499 Mich at 100.

However, plaintiff cannot establish a genuine issue of material fact regarding the second element of this claim—a breach of the housing contract. *Id.* The housing contract provides that it is binding on the student or guardian (if the student is under 18 years old) "for the entire academic year." The housing handbook provides that MSU "may terminate or temporarily suspend the Contract or any part of it, without notice, in case of an emergency that would make continued operation of resident housing impossible." This provision of the handbook allowed MSU to encourage students who were able to move out of the residence halls in March 2020 because of the COVID-19 pandemic. However, the residence halls and dining rooms remained open to those students who could not move out. Thus, plaintiff cannot establish a breach of the housing contract because MSU continued to offer room and board. *Id.*

Additionally, if a student chose to move out and return to his permanent residence, the university offered a $1,120 credit. Plaintiff chose to move out of his residence hall, and he accepted the credit. MSU relies on the "Contract Buyout" provision of the housing contract for the calculation of this credit, which provides:

> If more than 14 days have passed since you signed your housing contract or if you have moved into your residence hall or apartment, you may obtain relief from the obligations of your housing contract upon payment of 60 percent of the remaining room and board fees for the remaining portion of the contract term. You should notify the Housing Assignment Office in writing of your intent to exercise the buyout, but you will continue to be responsible for the full amount of the room and board charges until you have properly checked out of your residence hall or apartment community. The buyout option is not available the last two weeks of the spring semester.

MSU reasons that a semester of room and board was approximately $5,236, and with the students moving out in mid-March with half of the semester remaining, the $1,120 credit was equal to or

-8-

more than what a student would receive at that point in time under the buyout provision. Moreover, the "Contract Release" provision of the housing handbook provides that "[r]esidents who are still enrolled and leave the hall during the school year without a release from the Contract continue to be required to pay full room and board charges as a cancellation fee." Thus, under the housing contract, a student was required to pay full room and board for the entire academic year unless a release was obtained, but MSU decided to refund the credit given the circumstances. Regardless, there is no genuine issue of material fact that plaintiff cannot show that MSU breached the housing contract, and plaintiff's breach-of-contract claim related to room and board fails as a matter of law. MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.[5]

## C. BREACH OF CONTRACT RELATED TO FEES

Plaintiff alleges in Count III of the complaint that students entered into contracts with MSU under which the students "would pay various fees, and in exchange, [MSU] would provide services to students." As with the other contract claims, plaintiff did not attach to the complaint the alleged contract evidencing such an agreement, nor specify a reason why the complaint was not attached. MCR 2.113(C)(1). Plaintiff fails to identify in the complaint how much in fees each student paid, or what specific services they expected to receive in return. Nor does he specify what services he allegedly did not receive for the second half of the semester. None of the documents submitted by plaintiff in response to MSU's motion for summary disposition or the discovery order specifically relate to the payment of fees in exchange for student services. There are no documents containing promises relative to services to be provided in exchange for a fee, what the fees would go toward, or any other material provisions found in a contract. *AFT Mich*, 497 Mich at 235. As such, there

---

[5] This conclusion makes discussion of MSU's other arguments in favor of summary disposition regarding compensable damages, party in interest, and accord and satisfaction unnecessary.

Exhibit S, pg 51

is no genuine issue of material fact that no contract exists regarding student services, and plaintiff's claim fails as a matter of law.  MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.

## D.  ALTERNATIVE UNJUST ENRICHMENT CLAIMS

As an alternative to his breach-of-contract claims, plaintiff alleges in Counts IV, V, and VI that MSU was unjustly enriched by retaining the amounts paid by students for tuition, room and board, and fees, when students did not receive these services for the second half of the winter/spring 2020 semester.  To establish a claim for unjust enrichment, the plaintiff must establish "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit."  *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013).  "In such instances, the law operates to imply a contract in order to prevent unjust enrichment."  *Id*.  "However, a contract will be implied only if there is no express contract covering the same subject matter."  *Id*.

As stated above, there is an express written contract regarding plaintiff's breach-of-contract claim related to room and board—the housing contract.  Therefore, plaintiff's unjust enrichment claim related to room and board in Count V is precluded by the existence of the housing contract. *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 734; 832 NW2d 401 (2013), quoting *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003) ("an unjust-enrichment claim is available 'only if there is no express contract covering the same subject matter.' ").  Therefore, MSU is entitled to summary disposition of the unjust enrichment claim in Count V only as a matter of law.  MCR 2.116(C)(10).

However, where no express contract exists regarding tuition and fees, and summary disposition under MCR 2.116(C)(8) is based on the pleadings alone, *Beaudrie*, 465 Mich at 129, plaintiff has sufficiently pleaded a claim for unjust enrichment related to tuition and fees in Counts

-10-

IV and VI.  In Count IV, plaintiff alleged that (1) MSU received tuition payment from plaintiff and other members of the tuition class, and (2) plaintiff experienced an inequity when MSU kept the tuition payment, but provided online rather than in-person instruction for the remainder of the semester.  *Bellevue Ventures*, 302 Mich App at 64.  In Count VI, plaintiff alleged that (1) MSU received payment for student services from plaintiff and other members of the fee class, and (2) plaintiff experienced an inequity when MSU kept the fee payment, but did not provide student services for the remainder of the semester.  *Id*.  Plaintiff alleges that this unjustly enriched MSU. MSU's arguments based on its constitutional authority to control expenditures and plaintiff's lack of standing because his family paid for room and board are unavailing.  On the basis of plaintiff's pleadings alone, *Beaudrie*, 465 Mich at 129, summary disposition of plaintiff's unjust enrichment claims related to tuition and fees is improper.  MCR 2.116(C)(8).

## V.  CONCLUSION

IT IS HEREBY ORDERED that MSU's motion for summary disposition is GRANTED in part as to all three of plaintiff's breach-of-contract claims, Counts I, II, and III, and plaintiff's unjust enrichment claim related to room and board in Count V, under MCR 2.116(C)(10), and DENIED in part as to plaintiff's unjust enrichment claims related to tuition and fees in Counts IV and VI under MCR 2.116(C)(8).  This is not a final order and it does not resolve the last pending claim or close the case.

Date: <u>October 1, 2020</u>

Christopher M. Murray
Judge, Court of Claims

-11-

# Exhibit T

# STATE OF MICHIGAN

# COURT OF CLAIMS

ANNISSA STENGER,

               Plaintiff,

**OPINION AND ORDER REGARDING DEFENDANTS' JULY 16, 2020 MOTION FOR SUMMARY DISPOSITION**

v

Case No.  20-000084-MK

FERRIS STATE UNIVERSITY and BOARD OF TRUSTEES OF FERRIS STATE UNIVERSITY,

Hon. Christopher M. Murray

               Defendants.

_____/

Pending before the Court is defendants Ferris State University and Board of Trustees of Ferris State University's (collectively "FSU") motion for summary disposition filed under MCR 2.116(C)(8), which will be considered where noted under both that subrule as well as MCR 2.116(C)(10).  For the reasons that follow, the motion will be GRANTED in part and DENIED in part.  Because the parties' briefing was sufficient to resolve the issues, this matter is being decided without oral argument.  See LCR 2.119(A)(6).

## I.  FACTUAL BACKGROUND

Plaintiff Annissa Stenger was a student at FSU during the winter/spring 2020 semester studying criminal justice.  She brings this putative class action lawsuit on behalf of other university students in response to the actions taken by FSU related to the COVID-19 pandemic.  Plaintiff[1]

---

[1] The Court uses the singular plaintiff because no class has been certified.

Exhibit T, pg 55

alleges that in mid-March 2020, FSU transitioned from in-person instruction to online learning, and discontinued student services.  She alleges that she was deprived of benefits for which she had already paid, specifically, in-person instruction and student services, and seeks a pro-rata refund for the amounts paid for the second half of the winter/spring 2020 semester.  Although plaintiff acknowledges that the decisions to pivot to online learning and cancel on-campus activities were "responsible," she believes it was unlawful and unfair for FSU to retain the full amounts paid by the students for services they did not receive.

## II.  PROCEDURAL HISTORY

Plaintiff filed a four-count complaint on behalf of the putative class, identifying the two potential classes as (1) the "tuition class," and (2) the "fee class."  Plaintiff alleges two counts of breach of contract in Counts I and II.  In Count I, plaintiff alleges that she entered into a contract with FSU, under which she would pay tuition in exchange for live, in-person instruction in a brick and mortar classroom.  Although plaintiff paid the full tuition, she alleges that FSU committed a breach by providing online instruction for the second half of the semester, the value of which is less than in-person instruction.  In Count II, plaintiff alleges that she paid a fee to FSU for student services, which FSU did not provide for the second half of the semester.  Plaintiff seeks a refund in tuition and fees.

In the alternative to the breach-of-contract claims, plaintiff alleges unjust enrichment in relation to tuition and fees in Counts III and IV, respectively.  Plaintiff alleges that FSU has been unjustly enriched by retaining the money paid by plaintiff for in-person instruction and fees without providing those services in return.

Exhibit T, pg 56

In response to the complaint, FSU filed a motion for summary disposition under MCR
2.116(C)(8).  FSU asserts initially that granting the relief requested in the complaint would require
the Court to impermissibly interfere with defendant Board of Trustees' exclusive authority over
university affairs and expenditures under the Michigan Constitution.   Additionally, FSU asserts
that plaintiff failed to state a claim for breach of contract relating to tuition and fees for several
reasons, which will be discussed below.  Regardless, FSU asserts that it would have been excused
from strict performance of any contract by reason of impracticability or impossibility because of
the pandemic, and plaintiff cannot amend her complaint regarding the breach-of-contract claims.
Lastly, FSU argues that plaintiff failed to state a claim for unjust enrichment because FSU received
no windfall.

Plaintiff filed a response to FSU's motion for summary disposition, attaching to it several
documents[2] related to the breach-of-contract claims, and FSU filed a reply brief.  Thereafter, this
Court entered an order regarding the production of documents, ordering plaintiff to submit any and
all documents that form the basis of her assertion that a written contract existed between the parties
regarding the students receiving in-person instruction only.   The documents produced were
reviewed and considered by this Court.

### III.  STANDARD OF REVIEW

FSU filed its motion for summary disposition under MCR 2.116(C)(8), which "tests the
legal sufficiency of the complaint on the basis of the *pleadings alone*."  *Beaudrie v Henderson*,
465 Mich 124, 129; 631 NW2d 308 (2001) (emphasis added).  "The purpose of such a motion is

---

[2] Specifically, plaintiff attached copies of course listings from the FSU course catalog and the FSU
website regarding refundable fees.

to determine whether the plaintiff has stated a claim upon which relief can be granted." *Id*. at 129-130.  "The motion should be granted if no factual development could possibly justify recovery." *Id*. at 130.  However, as noted in the order regarding the production of documents, the exhibits attached to plaintiff's response to the motion for summary disposition, as well as the production submitted in response to the court order, convert review of this motion as it relates to the breach-of-contract claims to the standard under MCR 2.116(C)(10).  See *Innovation Ventures, LLC v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016) (review is proper under MCR 2.116(C)(10) when a court considers information outside the pleadings).  Review of FSU's motion for summary disposition regarding plaintiff's unjust enrichment claims remains proper under MCR 2.116(C)(8).

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial."  *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014).  When evaluating a motion under this subrule, the court considers affidavits, pleadings, depositions, admissions, and other evidence that is submitted by the parties "in the light most favorable to the party opposing the motion."  *Innovation Ventures*, 499 Mich at 507 (quotation marks and citation omitted).  "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law."  *Id*. (quotation marks and citation omitted).

## IV.  ANALYSIS

### A.  FSU'S CONSTITUTIONAL ARGUMENT

FSU contends that the Court cannot grant the relief requested in the complaint because it impermissibly requires the Court to interfere with the Board of Trustees' exclusive authority over

university affairs and expenditures.  FSU relies upon Const 1963, art 8, § 6, which provides that the university shall be governed by a "board of control which shall be a body corporate[,]" and "[t]he board shall have general supervision of the institution and the control and direction of all expenditures from the institution's funds."  FSU also cites to MCL 390.554, which allows a quorum of the board to "fix tuition and other fees and charges" in compliance with the Open Meetings Act, MCL 15.261 *et seq*., as well as *Sprik v Regents of Univ of Mich*, 43 Mich App 178; 204 NW2d 62 (1972), aff'd 390 Mich 84 (1973), wherein the defendant regents charged the plaintiff students an increase in rent, and the Court of Appeals determined that the defendant regents had "the entire control and management of University affairs, including the management of property and expenditure of funds," *id*. at 186, and therefore, the rent increase used to pay local schools was within the defendant regents' constitutional authority, *id*. at 188.

This authority does not prevent this Court from considering the claims contained in the complaint.  Plaintiff does not challenge any expenditure made by FSU, nor does she seek to challenge the decision made to transition to online classes.  Rather, plaintiff claims that FSU breached two alleged contracts or was unjustly enriched by retaining the students' payments for benefits that the students did not receive.  Thus, FSU'S constitutional argument does not preclude the Court from granting relief on these claims.

## B.  BREACH OF CONTRACT RELATED TO TUITION

In Count I of the complaint, plaintiff alleges that she and other members of the proposed tuition class entered into contracts with FSU providing that students would pay tuition, and in exchange, FSU would exclusively provide live, in-person instruction in a classroom.  Under MCR 2.113(C)(1)(b), if a claim is based on a written instrument, the instrument must be attached to the pleading unless the instrument is "in the possession of the adverse party and the pleading so states."

-5-

Plaintiff alleged in the complaint that such a contract regarding in-person instruction was in FSU's possession, but did not identify what document was being referred to (no name, date, etc.).   In response, FSU stated that no such document(s) existed.   And, although plaintiff did produce a couple of documents in response to the motion for summary disposition, she continued to argue that more documents existed supporting her claims.   As a result, this Court entered the order requiring plaintiff to produce any and all documentation in her possession to support the tuition-based breach-of-contract claim.

To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).   The documents produced by plaintiff in response to the order do not establish a genuine issue of material fact on whether there was a contract.   "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015).

In response to the order of production, plaintiff produced course listings from the FSU course catalog and marketing,  and informational brochures from several of the different academic colleges within the university (automotive engineering technology, music, theater, and art, applied speech communication, etc.).   None of these documents include the required elements of a contract. *Id*.   None contain a promise that, with the payment of tuition, FSU would exclusively provide in-person instruction.   That the brochures and catalogs were written with the expectation that instruction would be in-person does not create a contractual promise that no matter the circumstance, all instruction would be in-person.   Rather, they merely explain the types of classes

-6-

available and the possibility of "hands-on" experience or instruction in the different university facilities.  For similar reasons, the Court of Appeals has rejected the contention that student handbooks, codes, or other informational materials or brochures create a contract, express or otherwise, between a university and student.  See *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 157-158; 413 NW2d 692 (1987).[3]  Therefore, there is no genuine issue of material fact that there is no contract between plaintiff and FSU promising live, in-person instruction only in exchange for tuition payments.  Because plaintiff cannot establish that a contract exists, the breach-of-contract claim regarding tuition fails, and FSU is entitled to summary disposition as a matter of law.  MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.[4]

## C.  BREACH OF CONTRACT RELATED TO FEES

In Count II of the complaint, plaintiff alleges that the students entered into contracts with FSU in which students agreed to pay "fees" in exchange for "services" provided by FSU.  As with the other contract claim, plaintiff did not attach to the complaint the alleged contract evidencing such an agreement, instead alleging that it was in FSU's possession.  MCR 2.113(C)(1)(b).

---

[3] The Court of Appeals has come to the same conclusion in unpublished decisions as well.  See *Lee v Univ of Mich-Dearborn*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2009 (Docket No. 284541), p 3 (student code of conduct did not create an implied contract); *Amaya v Mott Community College*, unpublished per curiam opinion of the Court of Appeals, issued March 7, 1997 (Docket No. 186755), pp 2-3 (university course catalog and published informational materials did not establish a contract between the plaintiff student and the university).

[4] This Court notes that plaintiff cannot establish the other two elements of a breach-of-contract claim—breach and damages—in relation to tuition.  *Bank of America*, 499 Mich at 100.  Although FSU made the decision to pivot from live, in-person instruction to online distanced learning, FSU still provided instruction, and plaintiff completed all of her courses for the semester and received full credit.  All of the credit she earned is being applied toward her graduation requirements.  Thus, assuming arguendo that such a contract did exist, plaintiff cannot establish that there was any breach or damages.  *Id*.  This conclusion makes discussion of FSU's defense of excusal of strict performance by impracticability or impossibility unnecessary.

-7-

Plaintiff fails to identify in her complaint how much in fees each student paid, or what specific services they expected to receive in return. Nor does she specify what services she allegedly did not receive for the second half of the semester.

Rather, plaintiff attached to her response to the motion for summary disposition a copy of the FSU website regarding refundable fees. The website printout states that certain FSU fees are refundable each semester during the first five days of the semester only, including the student activity fee ($20), student government fee ($1), health services fee ($53), and racquet facility fee ($16). The student activity fee pays for campus entertainment, including concerts and other events, and the student government fee pays for programs or community service events put on by the student government. The health services fee and racquet facility fee pay for student visits to those facilities. The website printout, however, does not meet the requirements for a contract, *AFT Mich*, 497 Mich at 235, and that document contains no promises relative to services to be provided in exchange for the fee, or any other material provisions of a contract. Rather, the website provides that a student may request a refund of those fees in exchange for the loss of the benefits related to that fee. As such, there is no genuine issue of material fact that no contract exists regarding student services, and plaintiff's claim fails as a matter of law. MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.

## D.  ALTERNATIVE UNJUST ENRICHMENT CLAIMS

As an alternative to her breach-of-contract claims, plaintiff alleges in Counts III and IV that FSU was unjustly enriched by retaining the amounts paid by students for tuition and fees when students did not receive these services for the second half of the winter/spring 2020 semester. To establish a claim for unjust enrichment, the plaintiff must establish "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention

-8-

of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64;
836 NW2d 898 (2013). "In such instances, the law operates to imply a contract in order to prevent
unjust enrichment." *Id*. "However, a contract will be implied only if there is no express contract
covering the same subject matter." *Id*.

Where no express contract exists regarding tuition and fees, and summary disposition under
MCR 2.116(C)(8) is based on the pleadings alone, *Beaudrie*, 465 Mich at 129, plaintiff has
sufficiently pleaded a claim for unjust enrichment related to tuition and fees in Counts III and IV.
In regards to tuition, plaintiff alleged that (1) FSU received tuition payment from plaintiff and
other members of the tuition class, and (2) plaintiff experienced an inequity when FSU kept the
tuition payment, but provided online rather than in-person instruction for the remainder of the
semester. *Bellevue Ventures*, 302 Mich App at 64. In regards to fees, plaintiff alleged that (1)
FSU received payment for student services from plaintiff and other members of the fee class, and
(2) plaintiff experienced an inequity when FSU kept the fee payment, but did not provide student
services for the remainder of the semester. *Id*. This, plaintiff alleges, unjustly enriched FSU.

Although FSU asserts in its brief in support of its motion for summary disposition that it
received no windfall during the winter/spring 2020 semester as a result of the COVID-19
pandemic, and that it actually went into "dire" financial status, the documentary evidence produced
by FSU does not speak to that issue to support summary disposition under MCR 2.116(C)(10).
Therefore, on the basis of plaintiff's pleadings alone, *Beaudrie*, 465 Mich at 129, summary
disposition of plaintiff's unjust enrichment claims related to tuition and fees is improper. MCR
2.116(C)(8).

V.  CONCLUSION

IT IS HEREBY ORDERED that FSU's motion for summary disposition is GRANTED in
part as to both of plaintiff's breach-of-contract claims in Counts I and II under MCR 2.116(C)(10),
and DENIED in part as to both of plaintiff's unjust enrichment claims in Counts III and IV under
MCR 2.116(C)(8).  This is not a final order and it does not resolve the last pending claim or close
the case.

Date: <u>October 1, 2020</u>

Christopher M. Murray
Judge, Court of Claims

-10-

# Exhibit U

# STATE OF MICHIGAN

# COURT OF CLAIMS

JAEL DALKE,

          Plaintiff,

**OPINION AND ORDER REGARDING DEFENDANTS' JUNE 30, 2020 MOTION FOR SUMMARY DISPOSITION**

v

Case No.  20-000068-MK

CENTRAL MICHIGAN UNIVERSITY and BOARD OF TRUSTEES OF CENTRAL MICHIGAN UNIVERSITY,

Hon. Christopher M. Murray

          Defendants.

_____/

      Pending before the Court is defendants Central Michigan University and Board of Trustees of Central Michigan University's (collectively "CMU") motion for summary disposition filed under MCR 2.116(C)(8), which will be considered where noted under both that subrule as well as MCR 2.116(C)(10).  For the reasons that follow, the motion will be GRANTED in part and DENIED in part.  Because the parties' briefing was sufficient to resolve the issues, this matter is being decided without oral argument.  See LCR 2.119(A)(6).

## I.  FACTUAL BACKGROUND

      During the winter/spring semester of 2020, plaintiff Jael Dalke was a student at CMU studying hospitality, and living in on-campus housing.  She brings this putative class action on behalf of other university students in response to the actions taken by CMU related to the

-1-

19 pandemic.  Plaintiff[1] alleges that in mid-March 2020, CMU transitioned from in-person instruction to online learning, and encouraged students who could return to their permanent residence to do so, although campus housing and dining remained open.  Students who moved out of campus housing received a $1200 credit (which plaintiff accepted).  Plaintiff alleges that she was deprived of benefits for which she had already paid, specifically, in-person instruction, campus housing and meals, and student activities, and she seeks a pro-rata refund for the amounts paid for the second half of the winter/spring 2020 semester.  Although plaintiff acknowledges that the decisions to pivot to online learning and clear out student housing were "responsible," she believes it was unlawful and unfair for CMU to retain the full amounts paid by the students for services not received.

## II.  PROCEDURAL HISTORY

Plaintiff filed a six-count complaint on behalf of the putative class, identifying the three potential classes as (1) the "tuition class," (2) the "room and board class," and (3) the "fee class." Plaintiff alleges three counts of breach of contract in Counts I, II, and III.  In Count I, plaintiff alleges that she entered into a contract with CMU, under which she would pay tuition in exchange for live, in-person instruction in a brick and mortar classroom.  Although plaintiff paid the full tuition, she alleges that CMU committed a breach by providing online instruction for the second half of the semester, the value of which is less than in-person instruction.  In Count II, plaintiff alleges that CMU breached the contract wherein she agreed to pay for room and board in exchange for on-campus housing and meal plans, by not providing room and board for the second half of the semester.  In Count III, plaintiff alleges that she paid a fee to CMU for student services, which

---

[1] The Court uses the singular plaintiff because no class has been certified.

Exhibit U, pg 67

CMU did not provide for the second half of the semester.  Plaintiff seeks a refund in tuition, room and board, and fees.

In the alternative to the breach-of-contract claims, plaintiff alleges unjust enrichment in relation to tuition, room and board, and fees, in Counts IV, V, and VI, respectively.  Plaintiff alleges that CMU has been unjustly enriched by retaining the money paid by plaintiff for in-person instruction, room and board, and fees without providing those services in return.

In response to the complaint, CMU filed a motion for summary disposition under MCR 2.116(C)(8).  Initially, CMU asserts that granting the relief requested in the complaint would require the Court to impermissibly interfere with defendant Board of Trustees' exclusive authority over university affairs and expenditures under the Michigan Constitution.  Additionally, CMU asserts that plaintiff failed to state a claim for breach of contract as it relates to tuition, room and board, and fees for several reasons, which will be discussed below.  Regardless, CMU asserts that plaintiff's acceptance of the $1200 credit acted as an accord and satisfaction to bar her room and board breach claim, and CMU would have been excused from strict performance of any contract by reason of impracticability or impossibility because of the pandemic.  CMU also argues that plaintiff cannot amend her complaint regarding the breach-of-contract claims, and plaintiff failed to state a claim for unjust enrichment because CMU received no windfall.

Plaintiff filed a response to CMU's motion for summary disposition, attaching to it several documents[2] related to the breach-of-contract claims, and defendants filed a reply brief.  Thereafter, this Court entered an order regarding the production of documents, ordering plaintiff to submit any

---

[2] Specifically, plaintiff attached copies of emails from CMU and some course descriptions.

and all documents that form the basis of her assertion that a written contract existed between the parties regarding the students receiving in-person instruction only.  The documents produced were reviewed and considered by this Court.

### III.  STANDARD OF REVIEW

CMU filed its motion for summary disposition under MCR 2.116(C)(8), which "tests the legal sufficiency of the complaint on the basis of the *pleadings alone*."  *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001) (emphasis added).  "The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted."  *Id*. at 129-130.  "The motion should be granted if no factual development could possibly justify recovery."  *Id*. at 130.  However, as noted in the order regarding the production of documents, the exhibits attached to plaintiff's response to the motion for summary disposition, as well as the production submitted in response to the court order, convert review of this motion as it relates to the breach-of-contract claims to the standard under MCR 2.116(C)(10).  See *Innovation Ventures, LLC v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016) (review is proper under MCR 2.116(C)(10) when a court considers information outside the pleadings).  Review of CMU's motion for summary disposition regarding plaintiff's unjust enrichment claims remains proper under MCR 2.116(C)(8).

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial."  *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014).  When evaluating a motion under this subrule, the court considers affidavits, pleadings, depositions, admissions, and other evidence that is submitted by the parties "in the light most favorable to the party opposing the motion."  *Innovation Ventures*, 499 Mich at 507

-4-

(quotation marks and citation omitted).  "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law."  *Id.* (quotation marks and citation omitted).

## IV.  ANALYSIS

### A.  CMU'S CONSTITUTIONAL ARGUMENT

As noted earlier, CMU contends that the Court cannot grant the relief requested in the complaint because it impermissibly requires the Court to interfere with the Board of Trustees' exclusive authority over university affairs and expenditures.  CMU relies upon Const 1963, art 8, § 6, which provides that the university shall be governed by a "board of control which shall be a body corporate[,]" and "[t]he board shall have general supervision of the institution and the control and direction of all expenditures from the institution's funds."  CMU also cites to MCL 390.554, which allows a quorum of the board to "fix tuition and other fees and charges" in compliance with the Open Meetings Act, MCL 15.261 *et seq.*, as well as *Sprik v Regents of Univ of Mich*, 43 Mich App 178; 204 NW2d 62 (1972), aff'd 390 Mich 84 (1973), wherein the defendant regents charged the plaintiff students an increase in rent, and the Court of Appeals determined that the defendant regents had "the entire control and management of University affairs, including the management of property and expenditure of funds," *id*. at 186, and therefore, the rent increase used to pay local schools was within the defendant regents' constitutional authority, *id*. at 188.

This authority does not prevent this Court from considering the claims contained in the complaint.  Plaintiff does not challenge any expenditure made by CMU, nor does she seek to challenge the decision made to transition to online classes.  Rather, plaintiff claims that CMU breached several alleged contracts or was unjustly enriched by retaining the students' payments

Exhibit U, pg 70

for benefits that the students did not receive.  Thus, CMU's constitutional argument does not preclude the Court from granting relief on these claims.

## B.  BREACH OF CONTRACT RELATED TO TUITION

In Count I of the complaint, plaintiff alleges that she and other members of the proposed tuition class entered into contracts with CMU providing that students would pay tuition, and in exchange, CMU would exclusively provide live, in-person instruction in a classroom.  Under MCR 2.113(C)(1)(b), if a claim is based on a written instrument, the instrument must be attached to the pleading unless the instrument is "in the possession of the adverse party and the pleading so states." Plaintiff alleged in the complaint that such a contract regarding in-person instruction was in CMU's possession, but did not identify what document was being referred to (no name, date, etc.). In response, CMU stated that no such document(s) existed.  And, although plaintiff did produce a couple of documents in response to the motion, she continued to argue that more documents existed supporting her claims.  As a result, this Court entered the order requiring plaintiff to produce any and all documentation in her possession to support the tuition-based breach-of-contract claim.

To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach."  *Bank of America, N.A. v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).  The documents produced by plaintiff in response to the order do not establish a genuine issue of material fact on whether there was a contract.  "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015).

-6-

In response to the order of production, plaintiff produced screenshots and excerpts from the university registration portal and course catalog, as well as marketing and informational brochures from several of the different academic colleges within the university (the college of science and engineering, meteorology, health professions, etc.).  None of these documents include the required elements of a contract.  *Id*.  None contain a promise that, with the payment of tuition, CMU would exclusively provide in-person instruction.  That the brochures and catalogs were written with the expectation that instruction would be in-person does not create a contractual promise that no matter the circumstance, all instruction would be in-person.  Rather, they merely explain the types of classes available and the possibility of "hands-on" experience or instruction in the different university facilities.  For similar reasons, the Court of Appeals has rejected the contention that student handbooks, codes, or other informational materials or brochures create a contract, express or otherwise, between a university and student.  See *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 157-158; 413 NW2d 692 (1987).[3]  Therefore, there is no genuine issue of material fact that there is no contract between plaintiff and CMU promising live, in-person instruction only in exchange for tuition payments.  Because plaintiff cannot establish that a contract exists, the breach-of-contract claim regarding tuition fails, and CMU is entitled to

---

[3] The Court of Appeals has come to the same conclusion in unpublished decisions as well.  See *Lee v Univ of Mich-Dearborn*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2009 (Docket No. 284541), p 3 (student code of conduct did not create an implied contract); *Amaya v Mott Community College*, unpublished per curiam opinion of the Court of Appeals, issued March 7, 1997 (Docket No. 186755), pp 2-3 (university course catalog and published informational materials did not establish a contract between the plaintiff student and the university).

summary disposition as a matter of law.  MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.[4]

## C.  BREACH OF CONTRACT RELATED TO ROOM AND BOARD

In Count II of the complaint, plaintiff alleges that she entered into a housing contract with CMU in which plaintiff agreed to pay for room and board, and in exchange, CMU would provide campus housing and dining services.  Again, plaintiff did not attach any copies of the housing contract to the complaint, instead alleging that they were in CMU's possession, MCR 2.113(C)(1)(b).  However, CMU attached a copy of the housing contract as an exhibit to its motion for summary disposition.  Thus, the first element in plaintiff's breach-of-contract claim is met because students who lived in on-campus housing entered into a housing contract with CMU. *Bank of America*, 499 Mich at 100.

However, plaintiff is unable to establish a genuine issue of material fact on the next element—a breach of the housing contract.  *Id*.  The housing contract provides as follows:

> This contract and times set for performance of this contract are subject to change because of strikes, lockout or other labor disputes or disorders or *circumstances beyond the university's control that may affect the health or safety of students* or affect the educational function of the institution.  The university reserves the right to close residence halls/apartments and food services contracted for at different rates and times, provided that when services are offered on different dates, these dates will be in conformity with the purpose for which resident entered

---

[4] This Court notes that plaintiff cannot establish the other two elements of a breach-of-contract claim—breach and damages—in relation to tuition. *Bank of America*, 499 Mich at 100.  Although CMU made the decision to pivot from live, in-person instruction to online distanced learning, CMU still provided instruction, and plaintiff completed all of her courses for the semester and received full credit.  All of the credit she earned is being applied toward her graduation requirements.  Thus, assuming arguendo that such a contract did exist, plaintiff cannot establish that there was any breach or damages.  *Id*.

-8-

into the contract; for example, during the academic year, spring session, summer school, conferences and so on.

\* \* \*

At the discretion of the university, refunds may be made for board only for any period over seven days temporary absence from the residence hall or apartment, excluding official university vacation periods, due to illness as verified by a physician's statement. You may apply for a refund by filing a written request.

CMU encouraged students who were able to do so to move out of the residence halls in the middle of March 2020 because of the COVID-19 pandemic. The housing contract allowed CMU to do so based on "circumstances beyond the university's control that may affect the health or safety of students." However, the residence halls and dining rooms remained open to those students who could not move out. Thus, plaintiff cannot establish a breach of the housing contract because CMU continued to offer room and board. *Id*. Additionally, if a student chose to move out and return to her permanent residence, the university offered a $1200 credit. Plaintiff chose to move out of her residence hall, and she accepted the credit. Whether to provide a refund, and the amount of any refund, was contractually given to CMU's discretion. It exercised that discretion (reasonably so, according to plaintiff's complaint), and provided a refund that plaintiff accepted. As such, there is no genuine issue of material fact that plaintiff cannot show that CMU breached the housing contract, and plaintiff's breach-of-contract claim related to room and board fails as a matter of law. MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.[5]

## D.  BREACH OF CONTRACT RELATED TO FEES

In Count III of the complaint, plaintiff alleges that the students entered into contracts with CMU in which students agreed to pay "fees" in exchange for "services" provided by CMU. As

---

[5] This conclusion makes discussion of CMU's defenses of accord and satisfaction and the excusal of strict performance by impracticability or impossibility unnecessary.

with the other contract claims, plaintiff did not attach to the complaint the alleged contract evidencing such an agreement, instead alleging that it was in CMU's possession.   MCR 2.113(C)(1)(b).  Plaintiff fails to identify in her complaint how much in fees each student paid, or what specific services they expected to receive in return.  Nor does she specify what services she allegedly did not receive for the second half of the semester.  CMU attached plaintiff's account statement dated January 20, 2020, as an exhibit to their motion for summary disposition, indicating a charge for a $225 service fee.  This account statement does not meet the requirements for a contract, *AFT Mich*, 497 Mich 197 at 235, as that document contains no promises relative to services to be provided in exchange for the fee, what the fees would go toward, or any other material provisions found in a contract.  As such, there is no genuine issue of material fact that no contract exists regarding student services, and plaintiff's claim fails as a matter of law.  MCR 2.116(C)(10); *Innovation Ventures*, 499 Mich at 507.

### E.  ALTERNATIVE UNJUST ENRICHMENT CLAIMS

As an alternative to her breach-of-contract claims, plaintiff alleges in Counts IV, V, and VI that defendants were unjustly enriched by retaining the amounts paid by students for tuition, room and board, and fees, when students did not receive these services for the second half of the winter/spring 2020 semester.  To establish a claim for unjust enrichment, the plaintiff must establish "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit."  *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013).  "In such instances, the law operates to imply a contract in order to prevent unjust enrichment."  *Id*.  "However, a contract will be implied only if there is no express contract covering the same subject matter."  *Id*.

-10-

As stated above, there is an express written contract regarding plaintiff's breach-of-contract claim related to room and board—the housing contract.  Therefore, plaintiff's unjust enrichment claim related to room and board in Count V is precluded by the existence of the housing contract, see *id*., and CMU is entitled to summary disposition as a matter of law of the unjust enrichment claim in Count V only.  MCR 2.116(C)(10).

However, where no express contract exists regarding tuition and fees, and summary disposition under MCR 2.116(C)(8) is based on the pleadings alone, plaintiff has sufficiently pleaded a claim for unjust enrichment related to tuition and fees in Counts IV and VI.  In regards to tuition, plaintiff alleged that (1) CMU received tuition payment from plaintiff and other members of the tuition class, and (2) plaintiff experienced an inequity when CMU kept the tuition payment, but provided online rather than in-person instruction for the remainder of the semester. *Bellevue Ventures*, 302 Mich App at 64.  In regards to fees, plaintiff alleged that (1) CMU received payment for student services from plaintiff and other members of the fee class, and (2) plaintiff experienced an inequity when CMU kept the fee payment, but did not provide student services for the remainder of the semester.  *Id*.  This, plaintiff alleges, unjustly enriched CMU.

Although CMU asserts in its brief in support of its motion for summary disposition that it received no windfall during the winter/spring 2020 semester as a result of the COVID-19 pandemic, and that it actually went into "dire" financial status, the documentary evidence produced by CMU does not speak to that issue to support summary disposition under MCR 2.116(C)(10).  Therefore, on the basis of plaintiff's pleadings alone, *Beaudrie*, 465 Mich at 129, summary disposition of plaintiff's unjust enrichment claims related to tuition and fees is improper.  MCR 2.116(C)(8).

-11-

## V. CONCLUSION

IT IS HEREBY ORDERED that CMU's motion for summary disposition is GRANTED in part as to all three of plaintiff's breach-of-contract claims, Counts I, II, and III, and plaintiff's unjust enrichment claim related to room and board in Count V, under MCR 2.116(C)(10), and DENIED in part as to plaintiff's unjust enrichment claims related to tuition and fees in Counts IV and VI under MCR 2.116(C)(8). This is not a final order and it does not resolve the last pending claim or close the case.

Date: <u>September 25, 2020</u>

Christopher M. Murray
Judge, Court of Claims

Exhibit U, pg 77