UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 1 of 16 |

Present: The Honorable  **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [56]**

On August 14, 2020, Plaintiffs Injune David Choi, Christina Diaz, J. Julia Greenberg, Justin Kerendian, Ivana Saddigh, Keshav Srinivasan, Gabriel Tabariai, and Latisha Watson filed a Consolidated Complaint ("CC") against Defendants the University of Southern California ("USC") and the Board of Trustees of the University of Southern California ("the Board") alleging the following claims against Defendants, under Class Action Fairness Act of 2005 ("CAFA") jurisdiction: (1) breach of contract; (2) restitution based on quasi-contract; (3) unjust enrichment; (4) conversion; (5) money had and received; and (6) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* [Doc. # 55.]

On September 11, 2020, Defendants filed a Motion to Dismiss ("MTD") the Consolidated Complaint. [Doc. # 56.] The motion is fully briefed. [Doc. ## 59, 60.]

For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' MTD.

**I.
FACTUAL AND PROCEDURAL BACKGROUND[1]**

Defendant USC is a private research university offering undergraduate and graduate programs located in Los Angeles County, California and governed by its Board, also a Defendant

---

[1] The Court accepts all material facts alleged in the CC as true solely for the purpose of deciding the MTD. In addition, the Court relies upon the following exhibits attached to Defendants' MTD and Reply, which are incorporated by reference in the CC: MTD, Ex. N (excerpts of the 2019-2020 USC Catalogue) [Doc. # 56-2]; MTD, Ex. O (excerpts of the 2020-2021 Catalog) [Doc. # 56-2]; Reply, Ex. P (excerpts of the 2019-2020 USC Student Handbook) [Doc. # 60-2]. The Court **DENIES as moot** the remainder of Defendants' request for judicial notice because it need not and does not rely on the proffered documents. [Doc. # 57.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 2 of 16 |

in this suit. CC at ¶¶ 42-43, 47-48. In response to the COVID-19 pandemic, USC announced on March 6, 2020, that it would "test" online lectures from March 11 to 13, 2020. *Id.* at ¶ 70. On March 10, 2020, USC announced that it would extend the online lecture test period and encouraged students not to return to campus, and on March 16, 2020, USC announced that the remainder of the Spring 2020 semester would be conducted wholly online and that most buildings would not be accessible until further notice. *Id.* at ¶¶ 71-74. Students were requested to leave campus, and any students who had already left university housing could not return to campus to retrieve their belongings until sometime in the future. *Id.* at ¶ 75.

On April 10, 2020, USC announced that it would provide a prorated reimbursement of room and meal plan payments to students who vacated university housing. *Id.* at ¶ 80. Later that month, it announced that USC had "no plans to provide prorated tuition refunds for the Spring 2020 semester or our upcoming Summer sessions" and that the Summer 2020 session would be conducted exclusively online. *Id.* at ¶ 81.

In July 2020, USC announced that "a majority of undergraduate classes will be available solely online" and that only 10-20% of classes—"primarily face-to-face labs, studios, performance, and other courses involving hands-on work, and independent research studies that require facilities and equipment only available on campus"—would be conducted on-campus. *Id.* at ¶ 82. As of the date the CC was filed, USC had not identified a date certain when it will resume more in-person, on-campus undergraduate and graduate classes and experiences. *Id.* at ¶ 83. USC maintains a general policy of not permitting students to defer enrollment in future semesters except "in specific cases relating to medical issues, religious obligations, required military/national service and, in the case of international students who will attend classes online from another country, the inability to construct a reasonable online course schedule that is compatible with their home time zone." *Id.* at ¶ 91.

Plaintiffs are current and former USC undergraduate and graduate students who did not attend in-person classes or participate in other in-person USC events after the university ceased offering in-person instruction in March 2020. They paid varying amounts of tuition and fees for the Spring 2020 semester, and Plaintiffs who did not graduate in Spring 2020 also paid tuition and fees for the Fall 2020 semester. None have received any refund or reimbursement for tuition or fees paid for the Spring 2020 term. *See id.* at ¶¶ 14-40. Examples of fees paid include: Norman H. Topping Student Aid Fund ($8); Student Health Fee ($366); Student Programming Fee ($64); and New Student Fee ($450). *Id.* at ¶ 36. Plaintiff Christina Diaz also paid additional fees to attend USC's School of Architecture Study Abroad program, which was to take place in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 3 of 16 |

Italy and instead became short sessions of online classes. *Id.* at ¶¶ 17-18. Plaintiff Watson alleges that she did not receive the full value or refund of her bargained-for dining. *Id.* at ¶ 85.

On May 4, 2020, Diaz filed a Class Action Complaint against USC asserting claims relating to USC's changes to its Spring and Summer 2020 student programs due to the COVID-19 pandemic. [Doc. #1.] Within three days, Plaintiffs Latisha Watson and J. Julia Greenberg filed separate Class Action Complaints asserting similar claims against USC and its Board, and Plaintiff Justin Kerendian filed a Class Action Complaint asserting similar claims in Los Angeles County Superior Court that was later removed to this Court. *See Watson*, CV 20-4107 [Doc. # 1]; *Greenberg*, CV 20-4172 [Doc. # 1]; *Kerendian*, CV 20-5190 [Doc. # 1]. The Court consolidated the cases on July 17, 2020 and appointed the Katriel Law Firm, Berger Montague PC, and Hagens Berman Sobol Shapiro LLP as co-interim class counsel. [Doc. # 54.] The Court subsequently ordered that *Choi*, CV 20-05573-DMG (PVCx) and *Joplin*, CV 20-4066-DMG (PVCx) also be consolidated with this action. [Doc. ## 58, 63.]

Plaintiffs filed the operative Consolidated Complaint on August 14, 2020. [Doc. # 55.] Plaintiffs allege that certain representations in USC's website, Student Handbook, and 2019-20 USC Catalogue, discussed in more detail below, constitute specific offers of in-person instruction and experiences. *Id.* at ¶¶ 54-67. They allege that USC's shift to online-only classes and experiences does not give Plaintiffs the education that they expected. *Id.* at ¶¶ 84-86. Plaintiffs allege that it is unfair for Defendants to refuse to reimburse prorated tuition and fees when it is not operating or providing access to facilities and activities, particularly in light of the $19 million relief funding through the federal CARES Act that USC received. *Id.* at ¶¶ 9, 99. They seek recovery of "a prorated refund of the tuition and fees for the lost education experience when classes moved from in-person to online and student access to on campus resources and facilities was denied or severely limited." *Id.* at ¶ 100.

Plaintiffs assert claims for breach of contract, restitution based on quasi-contract, unjust enrichment, conversion, money had and received, and violation of the California UCL individually and on behalf of similarly situated individuals. They define the Class as:

> All students who paid or were obligated to pay tuition, fees, or other costs to the University of Southern California for the Spring 2020 academic term or any subsequent term.

*Id.* at ¶ 101. Excluded from the Class are students who enrolled in USC graduate programs that, prior to March 10, 2020, were offered exclusively online. *Id.* at ¶¶ 5, 102.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 4 of 16 |

On September 11, 2020, Defendants moved to dismiss the Consolidated Complaint in its entirety. [Doc. # 56.]

### III.
### LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

### IV.
### DISCUSSION

Defendants argue that (1) Plaintiffs' claims are barred by California's educational malpractice doctrine, and (2) they fail to state each of their claims.

**A.     Educational Malpractice**

Defendants argue that California's rule of judicial nonintervention into the academic affairs of schools bars each of Plaintiffs' claims because "classroom methodology affords no readily acceptable standards of care, or cause, or injury." *Peter W. v. San Francisco Un. Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976); *see also Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803, 808 (1979) (collecting cases). The educational malpractice doctrine applies to claims against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 5 of 16 |

non-profit private universities as well as to public schools. *Paulsen*, 25 Cal. 3d at 807. Generally, courts may only overturn a university's academic decision if it is "arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1551 (1995) (citing *Paulsen*, 25 Cal. 3d at 808-09). This educational malpractice doctrine grants flexibility to universities to make decisions with respect to "a student's qualifications for a degree." *Id.* It does not apply, however, to bar claims based on a school's specific promises. *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826 (2007) ("Courts have . . . not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction.").

Courts addressing similar claims for COVID-19-related tuition refunds have concluded that California's educational malpractice doctrine does not bar claims that the university breached a specific promise of in-person classes and experiences. *See McCarthy v. Loyola Marymount Univ.*, No. CV 20-04668-SB (JEMx), 2021 WL 268242, at *2–3 (C.D. Cal. Jan. 8, 2021); *Saroya v. Univ. of the Pac.*, No. CV 20-03196-EJD, 2020 WL 7013598, at *4-5 (N.D. Cal. Nov. 27, 2020). In addition, as the court in *McCarthy* noted, "[n]ot all decisions made by a university are pedagogical in nature," and the educational malpractice doctrine has primarily applied to bar judicial interference in school's decisions regarding individual academic performance or qualifications. 2021 WL 268242 at *3. Because the decision to move to online learning during a deadly pandemic is not that type of decision, the educational malpractice doctrine does not apply. *Id.*

Plaintiffs' claims focus on Defendants' decision not to issue refunds for promised in-person classes and experience, rather than generalized complaints about the quality of education. *Cf. Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *7 (C.D. Cal. Dec. 11, 2020) (finding the educational malpractice doctrine barred students' claims that their university's transition to remote instruction "was not 'worth the amount charged'" and therefore required judgments about the quality and value of the education). Their claims therefore do not involve the type of individual academic decision barred by the doctrine in *Paulsen*, *Banks*, and *Kashmiri* or implicate an unworkable duty of care as seen in *Peter W.* To the extent Plaintiffs discuss the difference in quality and value between in-person and online education, that discussion is limited to alleging damages from Defendants' alleged breach of contract or quasi-contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|

| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 6 of 16 |
|---|---|---|---|

**B.      Count I:  Breach of Contract**

It is well-established that the basic legal relationship between a student and a university is contractual in nature.  *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972).  To state a claim for breach of contract, Plaintiffs must allege "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (emphasis and internal quotation marks omitted).  A contract may be express or implied.  *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citing Cal Civ. Code § 1619).  A contract implied in fact "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."  *Id.* (quoting *Silva v. Providence Hospital of Oakland*, 14 Cal. 2d 762, 773 (1939)); *see also Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (Cal. 2008).

Defendants argue that Plaintiffs fail to state a claim for breach of contract or implied contract in two ways:  (1) they fail to identify any specific contractual provision that USC breached, and (2) USC expressly reserved the right to make changes to its educational practices and to refund tuition at its discretion.

**1.      Specific promise**

In interpreting the contract, the Court must "give effect to the mutual intention of the parties as it existed" at the time the contract was executed.  Cal. Civ. Code § 1636.  The Court looks at the language of the alleged contract and conduct indicating mutual assent.  *See Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004) ("Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.") (citation omitted).  The existence of mutual assent is determined by an objective standard.  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

Promises made on a university's website or course catalogs may become the basis of an express or implied contract.  In *Zumbrun*, a case also involving a contractual relationship between a student and USC, the court found that USC's catalogues and bulletins had promised to offer the course "Sociology 200," including lectures and a final examination, in consideration of the tuition and fees paid by the student plaintiff.  25 Cal. App. 3d at 10.  When the professor of Sociology 200 refused to teach the last month of the course or to conduct a final examination and merely gave the plaintiff a "B" grade, the court found that "it is obvious that plaintiff did not receive all that she bargained for when she enrolled in" the class.  *Id.* at 10–11.  In that case,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 7 of 16 |

however, the court concluded that because plaintiff received an adequate grade and would not be prohibited from taking advanced courses for which Sociology 200 was a prerequisite, such "a minimal departure from a projected course of study does not entitle the student (or his parent who paid for it) to recover the tuition paid or any part of it." *Id.* at 11. More recently, the California Court of Appeal clarified in *Kashmiri* that "[i]f the catalogue or the website of the university does not expressly state that it intends to be bound by these statements, such statements become part of the enrollment agreement only if they are 'implied-in-fact' contract provisions." 156 Cal. App. 4th at 828–29. Thus, whether a section of a catalogue or bulletin is part of an implied contract between a student and a university "center[s] around what is reasonable" and is "generally a question of fact." *Id.* at 829 (citations and internal quotation marks omitted).

"The reasonableness of the student's expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." *Id.* at 832. Here, Plaintiffs point to the following statements as evidence of specific promises from USC's website[2]:

- "Living on campus puts you close to your classes, USC libraries, and the student organizations and events that make campus life rewarding." *Id.* at ¶ 55.
- "Enjoy access to facilities and technologies that rival those of professional settings," 23 libraries, and an 8:1 student to faculty ratio. *Id.* at ¶ 56.
- Students can participate in more than 1,000 student organizations responsible for campus programs such as concerts, lectures, and leadership programs to "develop valuable skills and build community on campus." *Id.*
- "Living on campus means you are immediately part of a close-knit community with other students, and have a number of resources at your disposal. You'll have the opportunity to attend events led by your RAs, Faculty in Residence, and the entire ResEd team. Form connections with students in your residential college and feel more connected to the entire campus community." *Id.* at ¶ 66.

Plaintiffs also point to the hands-on instruction and facilities advertised on the websites for particular schools and courses. For example, the USC Roski School of Art and Design's website describes its numerous studios and opportunities for undergraduates to present exhibitions of their artwork at the Helen Lindhurst Fine Arts Gallery. *Id.* at ¶ 57. USC's Iovine and Young Academy for the Arts, Technology and the Business of Innovation represents that

---

[2] The Court notes that as of the date of this Order, not all of the websites linked in the Consolidated Complaint contain the statements Plaintiffs quoted. For the purposes of this motion, the Court accepts as true Plaintiffs' allegation that as of August 5, 2020, the websites contained the quoted information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 8 of 16 |

students will participate in "[l]ectures, presentations, discussions, tutorials and trips throughout the year" and participate in "hands-on learning for skills and tools, workshops to critique and develop student projects and discussions to encourage critical thought and ideas." Additionally, USC's Marshall School of Business highlights several benefits of its on-campus programs, including "career advising and networking opportunities" and the opportunity "to rehearse professional skills under real business settings." *Id.* at ¶ 58.

The 2019-2020 USC Catalogue describes on-campus courses, including courses that include hands-on laboratory instruction. *Id.* at ¶ 64. The 2018-2019 USC Student Handbook, which sets forth the rights and responsibilities of students, states that USC "has the responsibility to provide students the use of campus facilities according to campus regulations" and establishes students' right to participate in student organizations, which may "[r]eserve campus facilities for events, programs and meetings." *Id.* at ¶¶ 61-63; *see also* Reply, Ex. P at 11 [Doc. # 60-2].[3] In addition, USC offers some online-only graduate degree programs, which are marketed separately from the other degree programs and must be affirmatively opted into by enrolling students. *Id.* at ¶ 89.

Read in the manner most favorable to Plaintiffs, these allegations support Plaintiffs' allegation that "the reasonable expectation of the parties at the time of contract" was that they would be receiving an in-person, on-campus education. *Kashmiri*, 156 Cal. App. 4th at 832. Other courts have recognized that similar specific allegations "that tuition and fees paid to [the university] cover not just the academic instruction but encompass, face-to-face interaction with professors, mentors, and peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; extra-curricular activities, groups, and intramural sports; hands on learning and experimentation; and networking and mentorship opportunities among other things." *Saroya*, 2020 WL 7013598, at *5; *see also Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (finding "promises made by [the university] regarding the benefits of its in-person, on-campus program, including opportunities to work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support" constituted sufficiently specific promises for a breach of contract claim to survive a Rule 12(b)(6) motion); *Salerno*, 2020 WL 5583522 at *5 (same).

---

[3] It is unclear why the parties rely on the 2018-2019 version of the Student Handbook, and why students enrolled in the Spring 2020 semester would have seen the 2018-2019 Student Handbook. But because it is plausible that the Student Handbook is not updated each school year and that Spring 2020 students could have been referred to an older version of the Student Handbook, the Court will consider statements from the Student Handbook as part of the alleged contract between the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 9 of 16 |

Plaintiffs' allegations are distinguishable from those at issue in another tuition refund case, *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020), which found no promise for in-person education where the plaintiff pointed merely to a policy stating that "[r]egular class attendance is expected of all students" and that classes were assigned to specific classrooms." *Id.* at *8. Here, Plaintiffs allege specific statements from USC's website, Student Handbook, and Catalogue that could lead to a reasonable expectation that Plaintiffs were paying for an in-person education. Moreover, as another court addressing a tuition refund case against a California university noted, these cases involve an abrupt change in policy in the middle of an on-campus, in-person Spring 2020 semester "for which [they] reasonably assumed [they] had bargained," establishing "at minimum" an implied contract for an in-person semester existed. *McCarthy*, 2021 WL 268242, at *4.

Accordingly, Plaintiffs have adequately pled that USC specifically promised an education with the benefits of campus facilities and in-person programs via its website and 2019-2020 Catalogue and 2019-2019 Student Handbook, and Plaintiffs paid tuition based on a reasonable expectation that the USC would deliver on that promise. Plaintiffs have therefore stated the existence of a valid implied contract for USC to provide in-person and on-campus classes to students in the Spring 2020 semester.

Defendants correctly note, however, that the 2020-2021 Catalog specifically states that all classes will be held online. MTD, Ex. O (2020-2021 Catalog) at 76 [Doc. # 56-2] ("The Fall 2020 semester will begin with fully remote instruction, with limited exceptions for clinical education. Faculty will contact students to provide information to login to classes."). Plaintiffs do not respond to Defendants' argument that they could not reasonably have believed they contracted for an in-person education for the Fall 2020 semester. *See* Mot. at 24 n.11; Reply at 24. By failing to oppose Defendants' argument, Plaintiffs have conceded that Defendants did not promise an in-person education for the Fall 2020 semester and beyond. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

To the extent Plaintiffs' breach of contract claim relies on contracts for in-person learning in the Fall 2020 or subsequent semesters, Defendants' MTD is **GRANTED** with respect to that portion of the claim, without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 10 of 16 |

### 2. Reservation of rights

Defendants also argue that because its 2019-2020 Catalog contains the following reservation of rights, its move to online-only learning cannot be a breach of contract:

> The USC Catalogue is the document of authority for all students. The program requirements listed in the USC Catalogue supersede any information that may be contained in any bulletin of any school or department. *The university reserves the right to change its policies, rules, regulations, requirements for graduation, course offerings and any other contents of this catalogue at any time.*

Ex. N (USC Catalogue) at 45-46 (emphasis added) [Doc. # 56-2]. In addition, the Catalogue provides that "[t]uition is refundable entirely at the discretion of the university," and "[b]y registering, students agree to be held responsible for all tuition and fees," so Defendants argue that USC's refusal to issue a refund does not constitute breach. *Id.* at 47-48, 52, 54.

These arguments fail because the Catalog, including the reservation of rights and the discretionary refund policy, relates only to academic classes. *See id.* at 46 (describing the Catalog as containing "program requirements") and 55 (describing refunds in relation to when a student cancels or drops a class). As discussed above, USC's promises to students encompass extracurricular activities, professional development, and experiential learning, in addition to academic classes. Moreover, the refund policy addresses only the student's withdrawal, not USC's modification or cancellation of instruction. *See McCarthy*, 2021 WL 268242, at *4. Because Plaintiffs' allegations extend beyond the coursework covered by the reservation of rights and the discretionary refund policy, and the breach alleged is based on Defendants' refusal to refund tuition for its decision to move to online-only instruction, these provisions do not preclude Plaintiffs' breach of contract claim. *See id.* at *4-5; *Bergeron*, 2020 WL 7486682, at *7; *Saroya*, 2020 WL 7013598, at *6.

* * *

Plaintiffs have pled (1) the existence of an implied-in-fact contract for an in-person and on-campus education, (2) Plaintiffs' payment of tuition in consideration for that education; (3) Defendants' breach via refusal to refund any portion of tuition; and (4) damages in the amount of the value of that in-person and on-campus education. Accordingly, the Court **DENIES** Defendants' MTD with respect to Plaintiffs' breach of contract claim based on Defendants' refusal to issue partial tuition refunds for the Spring 2020 semester.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 11 of 16 |

Plaintiffs do not respond to Defendants' argument that they already agreed to provide prorated meal plan fee refunds, and the Consolidated Complaint acknowledges that Defendants in fact provided prorated housing and meal plan fee refunds. *See* MTD at 24 n.11; Reply at 24; CC at ¶ 80. Plaintiffs' failure to oppose this argument concedes that Defendants did not breach any contract with respect to meal plans, and the Court therefore **GRANTS** Defendants' MTD Plaintiffs' breach of contract claim based on meal plan refunds, without leave to amend.

**C.     Counts II and III: Restitution Based on Quasi-Contract and Unjust Enrichment**

Plaintiffs seek restitution based on both a quasi-contract claim and an unjust enrichment claim. Defendants concede that while unjust enrichment is not an independent cause of action under California law, it is treated as a quasi-contract claim for restitution.[4] MTD at 26; *see Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."); *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action. It is just a restitution claim.") (citation and internal quotation marks omitted). Because unjust enrichment is not a standalone claim and Plaintiffs already assert a claim for restitution based on quasi-contract, the Court **DISMISSES** the duplicative unjust enrichment claim, without leave to amend.

Quasi-contract claims require the plaintiff to show "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). Unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762 (internal quotations omitted). Typically, a quasi-contract action seeks the return of the benefit unjustly retained by the defendant. *Id.* (citing 55 Cal. Jur. 3d Restitution § 2). "Determining whether it is unjust for a person to retain a benefit may

---

[4] Defendants also argue that Plaintiffs cannot plead a restitution or unjust enrichment claim where a binding, enforceable contract exists defining the rights of the parties. MTD at 27; Reply at 25. Restitution claims may be pled in the alternative to contract claims. *See* Fed. R. Civ. P. 8(d); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("we allow pleadings in the alternative—even if the alternatives are mutually exclusive."). Because whether an implied-in-fact contract exists is a question of fact, the Court cannot determine at this stage that the "parties have an enforceable agreement regarding a particular subject matter" that precludes a quasi-contract claim. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388, (2012), *as modified on denial of reh'g* (Feb. 24, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 12 of 16 |

involve policy considerations." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992).

Plaintiffs allege that it is unjust for USC to retain their and other putative Class Members' tuition intended to pay for on-campus classes, facilities, and services when the university did not provide those experiences. FAC at ¶¶ 124-25. According to Plaintiffs, USC is profiting from COVID-19 by receiving tuition and federal student relief funds while refusing to issue any partial refunds to tuition-paying students and their families. *Id.* at ¶¶ 8-10. Plaintiffs allege that USC is supported by an $6 billion endowment and $1.57 billion in student tuition and fees in 2019 alone, making it one of the nation's most expensive private secondary educations. *Id.* at ¶ 50. They also note that on average, USC students graduate with approximately $22,000 in debt each. *Id.* at ¶ 53. USC also received $19 million in CARES Act funds, which are purportedly meant for student aid. *Id.* at ¶¶ 9, 99.

Taking as true Plaintiffs' factual assertions for the purposes of this motion, the Court joins the numerous other courts that have found restitution or unjust enrichment claims adequately pled based on similar allegations. *See McCarthy*, 2021 WL 268242, at *6; *Nguyen v. Stephens Inst.*, No. CV 20-04195-JSW, 2021 WL 1186341, at *5 (N.D. Cal. Mar. 30, 2021); *Little v. Grand Canyon Univ.*, No. CV 20-00795-PHX (SMBx), 2021 WL 308940, at *5 (D. Ariz. Jan. 29, 2021); *In re Bos. Univ. COVID-19 Refund Litig.*, No. CV 20-10827-RGS, 2021 WL 66443, at *3 (D. Mass. Jan. 7, 2021); *Ford v. Rensselaer Polytechnic Inst.*, No. CV 20-470, 2020 WL 7389155, at *9 (N.D.N.Y. Dec. 16, 2020). Plaintiffs have adequately pled that Defendants unjustly enriched themselves at Plaintiffs' expense by refusing to issue any refunds for the Spring 2020 semester tuition and fees. They have not pled, however, that it is unjust for Defendants to retain the full tuition for the Fall 2020 and subsequent semesters, when the 2020-2021 Catalog explicitly states that nearly all classes would be held online.

The motion to dismiss the claim for quasi-contract restitution/unjust enrichment is **DENIED** to the extent it seeks restitution for a portion of Spring 2020 tuition, but **GRANTED**, without leave to amend, to the extent it seeks restitution for Fall 2020 or subsequent semesters' tuition.

D.     **Counts IV and V:  Conversion and Money Had and Received**

California courts see conversion as "the wrongful exercise of dominion over the personal property of another." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). An essential element of a conversion claim is "a specific sum capable of identification." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 452 (1997). A specific and identified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 13 of 16 |

amount of money can form the basis of a conversion claim, but when the money is not identified and not specific, "the action is to be considered as one upon contract or for debt and not for conversion." *Baxter v. King*, 81 Cal. App. 192, 194 (1927).

Plaintiffs fail to identify a specific sum that may form the basis of a claim for conversion. Their Opposition points to their allegations of all of the tuition and fees they paid USC. CC ¶¶ 15, 18, 22–23, 26–27, 30, 33, 36, 39. But those allegations do not specify the value of the prorated *converted* sum. Because they do not identify the specific amount of money converted, the Court **DISMISSES** the conversion claim, with leave to amend. *See Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 216 (2014) ("A plaintiff must specifically identify the amount of money *converted*, not that a specific, identifiable amount of money has been entrusted to the defendant.") (emphasis added).

A claim for money had and received also requires a "statement of indebtedness in a certain sum." *Farmers Ins. Exchange*, 53 Cal. App. 4th at 460. Moreover, a common count for money had and received, if stated as an alternative way of seeking the same recovery demanded in a specific claim, only survives if the underlying claim also survives. *Id.* Here, Plaintiffs base their claim for money had and received on the same facts as their conversion claim. *See* CC at ¶¶ 146-51. Like in the conversion claim, Plaintiffs seeks a prorated tuition refund for the Spring 2020 semester through their claim for money had and received, without specifying the sum.

Because Plaintiffs failed to state a claim for conversion and do not allege the sum of the debt, the Court also **DISMISSES** the common count for money had and received, with leave to amend.

E. Count VI: UCL

The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs argues that Defendants violate each of the UCL's three prongs. FAC at ¶¶ 148-51; *see Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

1. Unlawful

A cause of action brought under the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 14 of 16 |

pleading must allege the way in which the alleged practices violated the "borrowed" law by "stat[ing] with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 618–19 (1993). Plaintiffs do not point to any statute, regulation, or other law that Defendants violated, and "a common law violation such as breach of contract is insufficient." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). They therefore fail to state a UCL claim under the unlawful prong.

        **2.**        **Fraudulent**

A business practice is "fraudulent" if "members of the public are likely to be deceived." *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983). If a plaintiff has alleged a "unified course of fraudulent conduct," then Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to that plaintiff's UCL claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Here, Plaintiffs allege that Defendants fraudulently "represent[ed] that they offer in-person instruction and other benefits to Plaintiffs and Class members when, in fact, they did not do so." CC at ¶ 154.

Plaintiffs have not alleged that any of USC's statements on its website, Catalogue, or Student Handbook were fraudulent at the time they were made. California courts are unwilling to impose liability under the fraudulent prong of the UCL where a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made such statements. *See Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970 (1997) (finding the "unwitting" and "unintentional" distribution of contaminated dog food did not constitute a deceptive practice under the UCL's fraudulent prong); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011) (dismissing plaintiff's UCL claim under the fraudulent prong because the defendant had no knowledge, or reason to know, of an alleged product defect). Given the unprecedented circumstances caused by the COVID-19 pandemic, USC, along with every other institution of higher learning around the country that transitioned to online learning, could not possibly have known at the beginning of the Spring 2020 semester that it would order students to remain off-campus for much of the semester. The statements thus cannot be considered deceptive or misleading at the time they were made. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011). For failure to allege actionable fraud, Plaintiffs' UCL claim under the fraudulent prong must be dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 15 of 16 |

### 3. Unfair

The UCL also creates a claim for a business practice that is "unfair" even if not specifically prohibited by another law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). An "unfair" business practice "is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (citation and quotation marks omitted). To state a claim under the unfair prong, a plaintiff must allege facts showing that the consumer injury is substantial, not outweighed by any countervailing consumer benefits, and could not have been reasonably avoided. *In re Sony Grant Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).

For the reasons that Plaintiffs adequately allege a quasi-contract claim for restitution, they stated a claim that Defendants' refusal to refund prorated tuition for the lack of in-person classes and services is unfair under the UCL. Taking their factual allegations as true, the Court cannot decide, as a matter of law, that Defendants' actions are not substantially injurious to consumers.

Because a UCL claim under the unfair prong may proceed, Defendants' motion to dismiss the UCL claim is **DENIED**.

### V.
### CONCLUSION

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' MTD as follows:

1. Plaintiffs' breach of contract claim and restitution claim based on USC's refusal to issue prorated tuition refunds for the Fall 2020 and subsequent semesters, as well as based on meal plan fees, are **DISMISSED**, without leave to amend.
2. Plaintiffs' claim for unjust enrichment is **DISMISSED**, without leave to amend.
3. Plaintiffs' claims for conversion and money had and received are **DISMISSED**, with leave to amend.
4. Plaintiffs' claims under the UCL, except for the claim for quasi-contract restitution under the unfair prong of the UCL, are **DISMISSED**, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4066-DMG (PVCx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Page | 16 of 16 |

5. The MTD is **DENIED** as to Plaintiffs' claims for breach of contract and quasi-contract restitution based on USC's refusal to issue prorated tuition refunds for the Spring 2020 semester, and under the unfair prong of the UCL.

Plaintiffs may file a First Amended Consolidated Complaint ("FACC"), or inform the Court and Defendants that they do not intend to amend the CC, within **21 days** after the date of this Order. Defendants shall file their response within 21 days after Plaintiffs file and serve their FACC, or they are notified of Plaintiffs' intent to proceed on the CC.

**IT IS SO ORDERED**.