1

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel: (213) 330-7150
Email: christopherp@hbsslaw.com

[additional counsel on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

2

3

4

5

6

7

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-CV-04066-DMG

13

14 **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

15

16   **(1) BREACH OF CONTRACT;**

17   **(2) RESTITUTION BASED ON QUASI CONTRACT; and**

18

19   **(3) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq.**

20

21

22

23   JURY TRIAL DEMANDED

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.      NATURE OF THE ACTION ........................................................................ 1

II.     PARTIES .................................................................................................... 5

        A.      Plaintiffs ......................................................................................... 5

                1.      Injune David Choi ................................................................ 5

                2.      Christina Diaz ...................................................................... 5

                3.      Chile Mark Aguiniga Gomez ............................................... 6

                4.      J. Julia Greenberg ................................................................ 6

                5.      Justin Kerendian ................................................................... 7

                6.      Latisha Watson ..................................................................... 7

        B.      Defendants ...................................................................................... 8

                1.      The University of Southern California .................................. 8

                2.      The Board of Trustees of The University of Southern
                        California .............................................................................. 8

III.    JURISDICTION AND VENUE ................................................................... 8

IV.     FACTUAL ALLEGATIONS ...................................................................... 9

        A.      USC History and Background .......................................................... 9

        B.      Defendants contracted to provide in-person education, housing,
                dining, and access to facilities and resources. ................................ 12

        C.      Defendants' transition exclusively to remote learning and shut down
                USC's campuses, facilities, and activities. ..................................... 15

        D.      Defendants refuse to refund tuition or fees after the March 2020
                remote conversion and campus closure. .......................................... 22

i

V.     CLASS ACTION ALLEGATIONS ........................................................... 26

VI.    CLAIMS FOR RELIEF ........................................................................... 28

       COUNT I Breach of Contract ........................................................ 28

       COUNT II Restitution Based on Quasi-Contract ....................................... 30

       COUNT III Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 –
              Unfair Prong ............................................................................... 31

VII.   PRAYER FOR RELIEF ............................................................................ 32

VIII.  DEMAND FOR JURY TRIAL ................................................................. 32

ii

Plaintiffs Injune David Choi, Christina Diaz, Chile Mark Aguiniga Gomez, J. Julia Greenberg, Justin Kerendian, and Latisha Watson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants the University of Southern California ("USC" or the "University") and The Board of Trustees of The University of Southern California ("USC Board of Trustees") (collectively, "Defendants"). Plaintiffs make the following allegations upon personal knowledge as to their own acts and upon information and belief and their attorneys' investigation as to all other matters.

## I.   <u>NATURE OF THE ACTION</u>

1.     Plaintiffs are current and former USC students who bring this class action to recover tuition and fees wrongfully withheld by the University after it abruptly terminated in-person instruction, closed student housing and dining facilities, and shut down sports and all other campus activities in March 2020 in response to COVID-19.

2.     USC markets itself as "one of the world's leading private research universities" and "a global center for arts, technology and international business," according to its website. The University offers various undergraduate and graduate degree programs, as well as postdoctoral training programs, in arts, law, medicine, business and other disciplines through the College of Letters, Arts and Sciences and twenty-one "exceptional academic schools and units."

3.     USC specifically touts its in-person learning and student campus life experience. For example, December 2019 promotional materials on USC's website emphasized USC's "***next-level student living and learning complex***" where "[l]iving spaces are organized into eight residential colleges, ***each guided by faculty-in-residence who curate an array of extracurricular programs***." For these and other similarly promised benefits, USC charges Plaintiffs and other class members

as much as $60,000 each in tuition for two semesters. On-campus housing, dining, and other fees can add another approximately $20,000 to the bill, for total costs of up to $80,000.

4.      Students who enroll at USC are effectively locked into paying for years for one of the most expensive education experiences available. Once enrolled, the value of a USC degree can be realized only by completing the full course of study and academic requirements. Transfer to another school may be impossible, result in less prestigious/valuable educational credentials, or cause stigma that can delay or diminish career prospects.

5.      In 2019, USC enrolled more than 20,000 undergraduate and approximately 28,000 graduate students for a total enrollment of approximately 48,500 students. While USC also offers some fully online graduate programs, the University has never offered any fully online undergraduate degrees. Moreover, these online offerings are separately marketed and must be affirmatively selected, distinct from the in-person, on-campus education experience chosen by the vast majority of USC students.

6.      On or around March 11, 2020, the University announced it would cease all in-person classes in response to COVID-19. Instead, the University would attempt to provide instruction electronically via online classes. Shortly thereafter, USC closed its campuses, shuttered facilities, and terminated sports and other school activities altogether. Although USC initially stated these drastic measures were temporary and would be short-lived, a date certain to resume in-person instruction and on-campus activities was repeatedly postponed and is now indefinite. Indeed, most recently, on August 5, 2020, the University announced that "fall semester class will begin with fully remote instruction."

7.      Since March 13, 2020, the University has not provided in-person

2

classes. USC has offered less valuable "remote" classes through video conference or recorded presentations instead of the bargained-for in-person instruction, services, facilities, technology, access or opportunities for which Plaintiffs and the Class paid. Moreover, Defendants have failed to compensate Plaintiffs and the Class for the diminished value of their education experience and other damages suffered as a result of Defendants' actions.

8.      Despite breaching its contracts to provide Plaintiffs and other Class members the education experience promised, USC has refused to substantively refund tuition or fees. In April 2020, USC Provost Charles Zukoski announced that the University would not offer any pro rata tuition refunds for the Spring semester or Summer sessions. As of the date of this complaint, Defendants have continued to refuse to issue refunds to students and families—many of whom are struggling financially due to COVID-19 and related economic strife. USC's hard line refusal is in the minority. Dozens of colleges and universities have issued partial refunds for the 2020 Spring term and/or reduced tuition and fees for the coming academic year.[1] In fact, unlike other higher education providers, Defendants *raised* tuition for the 2020–2021 academic year by 3.5%.[2]

9.      Defendants' actions have damaged Plaintiffs and Class members, who have lost the benefit of their bargain and suffered out-of-pocket losses and other harms. Defendants have been paid for access to buildings that are locked down, technology the University is not providing, housing, activities, and resources that are

---

[1] *See, e.g.*, https://www.foxbusiness.com/money/coronavirus-rowan-university-drop-tuition-10 (last visited July 30, 2020); https://www.insidehighered.com/news/2020/07/24/some-colleges-discount-tuition-prices-online-fall (last visited Aug. 5, 2020).

[2] https://www.nbclosangeles.com/news/local/usc-to-raise-tuition-3-5-as-planned-before-covid-19-pandemic/2362776/ (last visited July 30, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

not available, and sports programs that are now dormant. Defendants' misconduct has also jeopardized Class members' ability to access desperately needed student relief funds authorized under the Coronavirus Aid, Relief and Economic Security ("CARES") Act. USC has received ***$19 million*** in CARES Act funds, half of which is federally mandated to go to students who need emergency financial assistance. But students who are unable to meet academic progress requirements due to USC's shift to remote instruction, housing disruption and other adverse consequences of Defendants' actions, as well as international and undocumented students, will be denied access to these funds.

10.     At bottom, USC is profiting from COVID-19 while further burdening students and their families, many of whom have borne the brunt of the pandemic, themselves been laid off, or who are ill or suffering from financial setbacks.

11.     As a result of Defendants' wrongful acts and unfair business practices alleged herein, Plaintiffs and the proposed Class have not received any refund or reimbursement for the unused services for which they paid; and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from USC when their classes transitioned from in-person instruction at the University's campus facilities to an entirely remote, online learning format. The result is an enormous windfall to Defendants. Both contract and equity demand that Defendants disgorge their ill-gotten gains.

12.     Plaintiffs bring this class action for money damages, injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendants' illegal, inequitable, and unfair retention of the funds paid by Plaintiffs and the other Class members.

13.     Specifically, this lawsuit seeks disgorgement, restitution, and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiffs

4

1  and the other Class members paid, which benefits have not and will not be provided
2  by Defendants, including the difference in value between the live, in-person classes
3  and full campus experience that Plaintiffs were promised compared to the less
4  valuable education and experience USC has been providing since mid-March 2020.

5  **II.**   **PARTIES**

6      **A.**   **Plaintiffs**

7          **1.**   **Injune David Choi**

8          14.    Plaintiff Injune David Choi ("Plaintiff Choi") is a California resident
9  and was a USC undergraduate student since Spring 2014.  He majored in Business
10 Administration and graduated in Spring 2020.

11         15.    For the Spring 2020 term, Plaintiff Choi paid $11,568 in tuition, and an
12 additional $487.22 in mandatory student fees.

13         16.    Plaintiff Choi has not attended any in-person classes since March 2020
14 when the University ceased offering in-person instruction and has not received any
15 refund or reimbursement of the tuition, fees, or dining charges that he paid for the
16 Spring 2020 term at USC.

17         **2.**   **Christina Diaz**

18         17.    Plaintiff Christina Diaz ("Plaintiff Diaz") is a California resident and
19 USC undergraduate student since 2017. She graduated in 2021 with a degree in
20 Architecture.

21         18.    For the Spring 2020 term, Plaintiff Diaz paid approximately $57,256 in
22 tuition. Plaintiff Diaz paid additional fees to attend USC's School of Architecture
23 Study Abroad program, which was to take place in Italy. When USC effectively
24 cancelled that program midstream by initially having its students and staff flee to
25 Spain and then, instead of providing instruction, had the students remain indoors,
26 Plaintiff Diaz was relegated to taking "online classes." These, however, amounted

27

28

5

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

to nothing more than "meeting" with one of her professors for 10 minutes twice per week, leaving Plaintiff Diaz to teach herself.

19.   Plaintiff Diaz has not attended any in-person classes since March 2020 when the University ceased offering in-person instruction and has not received any refund or reimbursement of the tuition, fees, or study abroad costs she paid for the Spring 2020 term at USC.

### 3.   Chile Mark Aguiniga Gomez

20.   Plaintiff Chile Mark Aguiniga Gomez ("Plaintiff Gomez") is a California resident and USC undergraduate student since 2019. He majored in Law, History, and Culture and graduated in May 2021.

21.   For the Spring 2020 term, Plaintiff Gomez paid approximately $35,000 in tuition and fees.

22.   Plaintiff Gomez did not attend any in-person classes since March 2020 when the University ceased offering in-person instruction and has not received any refund or reimbursement of the tuition or fees he paid for the Spring 2020 term at USC.

### 4.   J. Julia Greenberg

23.   Plaintiff J. Julia Greenberg ("Plaintiff Greenberg") is a California citizen and an undergraduate student at USC. Plaintiff Greenberg is a Global Studies major, with minors in Entrepreneurship and Business. She graduated from USC in December 2021.

24.   For the Spring 2020 term, Plaintiff Greenberg paid $29,185.17 in tuition and fees.

25.   Plaintiff Greenberg has not attended any in-person classes since March 2020 when the University ceased offering in-person instruction and has not received any refund or reimbursement of the tuition and only a partial reimbursement of fees

6

Case 2:20-cv-04066-DMG-PVC    Document 126    Filed 05/05/22    Page 10 of 39    Page ID
#:2917
Case 2:20-cv-04066-DMG-PVC    Document 113-1    Filed 01/14/22    Page 10 of 39    Page ID
#:2770

she paid for the Spring 2020 term at USC.

### 5.    Justin Kerendian

26.    Plaintiff Justin Kerendian ("Plaintiff Kerendian") is a California resident and was a USC undergraduate student since 2018. He majored in Business Administration and graduated after the Fall 2020 semester.

27.    For the Spring 2020 term, Plaintiff Kerendian paid $28,628 in tuition. In addition, Plaintiff Kerendian paid fees totaling $438, as follows: Norman H. Topping Student Aid Fund ($8); Student Health Fee ($366); and Student Programming Fee ($64).

28.    Plaintiff Kerendian has not attended any in-person classes since March 2020 when the University ceased offering in-person instruction and has not received any refund or reimbursement of the tuition or fees he paid for the Spring 2020 term at USC.

### 6.    Latisha Watson

29.    Plaintiff Latisha Watson ("Plaintiff Watson") is a California resident and was a USC graduate student since 2019. She received her master's degree in Social Work ("MSW") from USC in 2021.

30.    For the Spring 2020 term, Plaintiff Watson paid $21,886.38 in tuition, fees, and costs. Plaintiff Watson also paid a mandatory Student Programming Fee of $43 per semester.

31.    Plaintiff Watson has not attended any in-person classes since March 2020 when the University ceased offering in-person instruction and has not received any refund or reimbursement of the tuition or fees that she paid for the Spring 2020 term at USC.

32.    None of the Plaintiffs elected to enroll in USC's online course or online degree program offerings before enrolling in the Spring 2020 semester. The natural

7

understanding of their contractual bargain with USC, therefore, was that they agreed to receive—and USC agreed to provide—in-person onsite instruction at USC's campus facilities. USC failed to provide these services for which all Plaintiffs and all Class members contracted with USC.

**B.**   **Defendants**

**1.**   **The University of Southern California**

33.   The University of Southern California is a private corporation and higher education institution with its principal place of business in Los Angeles County, California.

**2.**   **The Board of Trustees of The University of Southern California**

34.   Defendant The Board of Trustees of The University of Southern California ("USC Board of Trustees"), which has approximately 55 voting members, governs the University. The USC Board of Trustees is a self-perpetuating body, electing one-fifth of its members each year for a five-year term of office.

**III.**   **JURISDICTION AND VENUE**

35.   This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than California.

36.   This Court has personal jurisdiction over Defendants because Defendants maintain their principal place of business in this judicial District.

37.   Venue is appropriate in this District because Defendants are located within the Western District of California and events and transactions causing the claims herein, including Defendants' decision-making regarding their refund policy

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 12 of 39   Page ID
#:2919
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 12 of 39   Page ID
#:2772

challenged in this lawsuit, occurred within this judicial District.

## IV.   FACTUAL ALLEGATIONS

### A.   USC History and Background

38.   Founded in 1880, USC is the oldest private research university in California and one of the nation's most prestigious higher education institutions.

39.   USC's approximately 48,500 students—roughly 28,000 graduate students and 20,500 undergraduates—can choose from 150 majors and minors and more than 400 graduate and professional programs through the University's liberal arts college and more than twenty schools and programs.

40.   In the 2020 edition of U.S. News & World Report's Best Colleges, USC was ranked the twenty-second "Best National University." It tied for the fifty-sixth spot in the same rankings for best undergraduate teaching.

41.   Due in part to its academic accolades, USC has become one of the country's richest universities, with a current endowment of approximately $6 billion.[3] Recently, the "Campaign for USC," a multi-year fundraising campaign, reaped ***$7.16 billion*** from more than 400,000 donors between 2011 and 2018. The campaign was the second largest fundraising effort in the history of U.S. higher education.[4] Moreover, in 2019 alone, USC netted approximately $1.57 billion in student tuition and fees.[5]

42.   In addition to being one of the richest universities, USC is also one of

---

[3] https://thebestschools.org/features/richest-universities-endowments-generosity-research/ (last visited July 30, 2020).

[4] https://news.usc.edu/trojan-family/campaign-for-usc-end/ (last visited July 30, 2020).

[5] https://comptroller.usc.edu/files/2019/12/2019-USC-Financial-Report.pdf (last visited Aug. 5, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 13 of 39   Page ID
#:2920
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 13 of 39   Page ID
#:2773

1   the nation's most expensive private secondary educations.[6]

2       43.    For the Spring 2020 term, USC assessed both undergraduate and

3   graduate students $28,628 for tuition. In addition, USC charged a number of

4   mandatory fees, including a Student Health Service Fee ($366) and a Student

5   Programming Fee ($64 for undergraduate students and $43 for graduate students).

6   During the Spring 2020 term, many USC students paid additional fees, such as

7   Laboratory Fees ($5–$500) and Commuter Permits ($499.50).

8       44.    All told, an undergraduate student will pay approximately $200,000 or

9   more in tuition and fees during their undergraduate enrollment at USC. On average,

10  USC students graduate with approximately $22,000 in debt each.[7]

11      45.    Defendants justify these high costs by touting USC's immersive

12  campus experience, including in-person instruction from renowned faculty, a wide

13  array of personal services, opportunities and extracurricular activities, state-of-the-

14  art facilities, and much more.

15      46.    For example, the University website proclaims: "Living on campus puts

16  you close to your classes, USC libraries, and the student organizations and events

17  that make campus life rewarding."[8] In addition, USC describes itself as a "top-tier

18  private research institution, with all the resources of a large, urban university and the

19  nurturing environment of a small liberal arts college."[9]

20      47.    Additionally, in USC's "dynamic community," students are urged to

21  embark on a "journey of intellectual challenges, personal and professional

22

23  _____
    [6] https://www.cbsnews.com/pictures/the-50-most-expensive-us-colleges/29/ (last
24  visited Aug. 3, 2020).

25  [7] https://about.usc.edu/cost-and-value/ (last visited Aug. 3, 2020).

    [8] https://admission.usc.edu/live/residential-life/ (last visited Aug. 4, 2020).
26
    [9] https://admission.usc.edu/learn/about-usc/ (last visited Aug. 5, 2020).
27
                                          10
28                                        Amended Consolidated Class Action Complaint
                                          Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC    Document 126    Filed 05/05/22    Page 14 of 39    Page ID
#:2921
Case 2:20-cv-04066-DMG-PVC    Document 113-1    Filed 01/14/22    Page 14 of 39    Page ID
#:2774

achievement and lifelong friendships with alumni who excel in every field."[10] In this community, students can, for example, "[e]njoy access to facilities and technologies that rival those of professional settings," 23 libraries, and an 8:1 student to faculty ratio.[11] They also can participate in more than 1,000 student organizations responsible for campus programs such as concerts, lectures, and leadership programs to "develop valuable skills and build community on campus."[12]

48.    USC also consistently promotes the hands-on, immersive instruction and world-class facilities available only through on-campus enrollment. For example, USC's Roski School of Art and Design markets its facilities as follows:

> The hub of USC Roski School of Art and Design resides on the main USC campus in two buildings, Watt and Harris Halls, that are dedicated to art and design. Within these buildings, Roski students have access to the Galen Ceramics Studio; three design studios, including the Galen 3D print lab; two large drawing & painting studios; a printmaking lab; as well as the Handtmann Photography Lab and the Galen Intermedia Lab. The large Sculpture Studio, with both indoor and outdoor spaces, includes a shared woodshop. At the center of it all is the Helen Lindhurst Fine Arts Gallery—open to the public Monday through Friday—where undergraduate students can apply annually to present exhibitions of their artwork.[13]

49.    Similarly, USC's Iovine and Young Academy for the Arts, Technology, and the Business of Innovation represents that students will participate in "[l]ectures, presentations, discussions, tutorials and trips throughout the year" and participate in "hands-on learning for skills and tools, workshops to critique and develop student

---

[10] https://admission.usc.edu/apply/ (last visited Aug. 5, 2020).

[11] https://admission.usc.edu/learn/about-usc/ (last visited Aug. 5, 2020).

[12] https://campusactivities.usc.edu/organizations/ (last visited Aug. 5, 2020).

[13] https://roski.usc.edu/facilities (last visited Aug. 5, 2020).

11

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 15 of 39   Page ID
#:2922
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 15 of 39   Page ID
#:2775

1   projects and discussions to encourage critical thought and ideas."[14] Additionally,

2   USC's Marshall School of Business highlights several benefits of its on-campus

3   programs, including "career advising and networking opportunities" and the

4   opportunity "to rehearse professional skills under real business settings."[15]

5       50.   Indeed, across its many programs, USC repeatedly emphasizes the

6   importance, value, and unique benefits of its in-person instruction and high-quality

7   campus facilities and resources.

8       **B.   Defendants contracted to provide in-person education,
            housing, dining, and access to facilities and resources.**
9

10      51.   Defendants' enrollment materials obligated USC to provide Plaintiffs

11  and other Class members the same superior in-person education, on-campus

12  housing, sports, resources, and facilities that the University highlighted in its

13  promotional marketing materials.

14      52.   For example, regarding facilities, the USC Student Handbook

15  ("Handbook") states: "The university has the responsibility to provide students the

16  use of campus facilities according to campus regulations."[16] Additionally, the

17  Handbook explains that "the use of computers and computing facilities is central to

18  the learning experience at USC."[17]

19      53.   The Handbook also establishes Defendants' responsibility to provide

20

21  _____

    [14] https://iovine-young.usc.edu/program/index.html (last visited Aug. 5, 2020).

22  [15] https://www.marshall.usc.edu/programs/undergraduate-programs/degree-
    difference (last visited Aug. 5, 2020).

23  [16] https://policy.usc.edu/scampus-part-a/ (last visited Aug. 14, 2020). All
24  references herein to the "Handbook" are to the 2018–2019 USC Handbook,
    available at https://policy.usc.edu/files/2018/07/SCampus-2018-19.pdf (last
25  visited Aug. 5, 2020). If USC had a different handbook in place for the 2019–
    2020 year, Plaintiffs have been unable to find it.
26
    [17] https://policy.usc.edu/scampus-part-f/ (last visited Aug. 4, 2020).
27  _____

                                          12

28

Plaintiffs and Class members with opportunities to interact with faculty outside of the classroom: "Because the interchange of ideas between student and professor is of the utmost importance, and because such interchanges are often most productive informally, the university shall provide for student access to members of the faculty in appropriate settings outside the classroom."[18]

54.    Moreover, the Handbook establishes students' right to participate in student organizations, which may "[r]eserve campus facilities for events, programs and meetings":

> Recognized student organizations provide opportunities for students and other members of the university community to explore their academic, professional, political, social, recreational, artistic, cultural, spiritual or community service interests. In addition, student organizations provide a laboratory for the development of interpersonal, organizational and leadership skills in the members and officers. Such organizations exist to promote the educational mission of the university.[19]

55.    In addition, the 2019–20 USC Catalogue ("Catalogue") further confirms Defendants' obligation to provide on-campus courses.[20] In particular, the Catalogue's "Schedule of Classes" establishes that courses that would be held in specific USC campus buildings and facilities. By way of example, the Catalogue's "Schedule of Classes" for the Spring 2020 term, excerpted below, shows lectures by USC Viterbi School of Engineering Professor Jesse Yen, an "ultrasonic imaging expert" and Coulter Foundation award winner, to be held at Ronald Tutor Hall ("RTH") and hands-on laboratory instruction at the Denney Research Center ("DRB").

---

[18] https://policy.usc.edu/scampus-part-a/ (last visited Aug. 4, 2020).

[19] https://policy.usc.edu/scampus-part-g/ (last visited Aug. 4, 2020).

[20] https://classes.usc.edu/term-20201/ (last visited Aug. 5, 2020).

13

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 17 of 39   Page ID
#:2924
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 17 of 39   Page ID
#:2777

| Section | Session | Type | Time | Days | Registered | Instructor | Location | Syllabus | Info |
|---------|---------|------|------|------|------------|------------|----------|----------|------|
| 29206D | 001 | Lecture | 9:30-10:50am | Tue, Thu | 29 of 40 | Jesse Yen | RTH 105 | | |
| 29207R | 001 | Lab | 3:00-4:50pm | Wednesday | 19 of 22 | | DRB 146 | | |
| 29208R | 001 | Lab | 2:00-3:50pm | Tuesday | 10 of 20 | | DRB 351 | | |




Ronald Tutor Hall                                    Denney Research Center

56.     In registering and paying USC tuition and fees, Plaintiffs and Class members bargained for and understood that instruction would be provided in-person by leading academics and on-campus, including in specific buildings with state of the art resources.

57.     USC's promotional materials similarly expound on the rich campus life promised to students, including housing and dining. For example, the University extolls the many benefits of living on campus in one of its 16 residential colleges and communities:

> *Living on campus means you are immediately part of a close-knit community with other students, and have a number of resources at your disposal*. You'll have the opportunity to attend events led by your RAs, Faculty in Residence, and the entire ResEd team. *Form connections with students in your residential college and feel more connected to the entire campus community*.[21]

58.     Similarly, USC offers an array of student dining options through its

---

[21] https://resed.usc.edu/ (last visited Aug. 13, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 18 of 39   Page ID
#:2925
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 18 of 39   Page ID
#:2778

"meal plan" program, with more than 30 different dining halls, cafeterias, cafes, restaurants, and coffee shops across the University's downtown Los Angeles campus alone. Enrollment at USC also entitles students to a broad spectrum of valuable campus activities, including more than 1,000 student organizations, fraternities and sororities, marching band, recreational sports, and NCAA Division 1 athletics.

59.    However, as set forth further below, since March 2020, Plaintiffs and Class members have been denied the benefit of their bargain. Plaintiffs and other Class members have lost the benefits of the education, services, food, housing, and other experiences that the University promised. Despite failing to fulfill their obligations, Defendants are currently unlawfully retaining and refusing to fully or partially refund Plaintiffs' tuition and fees, despite the less valuable education and services now being provided.

**C.    Defendants' transition exclusively to remote learning and shut down USC's campuses, facilities, and activities.**

60.    On January 30, 2020, the World Health Organization ("WHO") declared COVID-19 a "public health emergency of international concern." By March 11, 2020, WHO had upgraded COVID-19 to a "pandemic"—meaning, a worldwide epidemic of a new disease.

61.    On March 6, 2020, Charles F. Zukoski, Provost and Senior Vice President for Academic Affairs, sent a memorandum to the USC Community announcing the University's plan to "test" online lectures starting March 11, 2020 through March 13, 2020. This message emphasized that the test was simply that—a test—and that the campus would otherwise remain "fully functional." According to Provost Zukoski's email, "[s]tudent residential colleges, dining halls, offices, libraries, health centers, and recreation and athletics facilities are open. Campus

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

1    events are scheduled to take place as planned."[22]

2        62.    On March 10, 2020, Provost Zukoski sent a memorandum to the USC

3    Community announcing that after Spring Recess (March 14–21, 2020), online

4    classes would continue from March 22 through March 29, 2020. Students were

5    encouraged not to return to campus and to "take all necessary items essential to

6    continuing their education, such as laptops, textbooks, and study materials." All

7    University-sponsored events, on and off campus, scheduled between March 11 and

8    March 29, 2020, were cancelled or postponed.[23]

9        63.    On March 11, 2020, Provost Zukoski sent another memorandum,

10   extending the period of remote instruction from March 30 to April 14, 2020.

11   Students who were leaving campus for Spring Recess would not be allowed to return

12   until at least April 13, 2020.[24]

13       64.    On March 13, 2020, President Carol L. Folt sent a message to the

14   "Trojan Community," acknowledging that "Spring semester is usually filled with

15   events, programs, thesis presentations, recitals, competitions, and celebrations" and

16   that instead, students were facing "an extended period of remote teaching,

17   cancellations and delays of events, and uncertainty."[25]

18       65.    On March 16, 2020, President Folt and Provost Zukoski sent a message

19   informing students that the remainder of the Spring 2020 academic semester would

20

21   ───────────────

22   [22] https://coronavirus.usc.edu/2020/03/06/test-of-online-class-system/ (last visited
     Aug. 5, 2020).

23   [23] https://coronavirus.usc.edu/2020/03/10/update-to-university-policies-and-plans/
     (last visited Aug. 5, 2020).

24   [24] https://coronavirus.usc.edu/2020/03/11/notice-of-extended-period-of-remote-
25   instruction/ (last visited Aug. 5, 2020).

26   [25] https://coronavirus.usc.edu/2020/03/13/message-from-the-usc-president/ (last
     visited Aug. 5, 2020).

27   ───────────────

28                          Amended Consolidated Class Action Complaint
                            Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC    Document 126    Filed 05/05/22    Page 20 of 39    Page ID
#:2927
Case 2:20-cv-04066-DMG-PVC    Document 113-1    Filed 01/14/22    Page 20 of 39    Page ID
#:2780

1   be online. The message noted they were considering prorating refunds for room and

2   board but would not have "a specific plan or answers for a couple of weeks." The

3   message also announced that "[m]ost buildings, including the libraries, the bookstore

4   and recreational facilities w[ould] not be publicly accessible until further notice."[26]

5       66.    On March 20, 2020, President Folt and Provost Zukoski sent a message

6   that students who left university housing during Spring Recess could not return to

7   campus to retrieve their belongings until sometime in the future.[27] The message also

8   explained that, although "USC always has been proud of being open and accessible

9   to all," campus facilities would remain largely closed to students, with "[b]uildings

10  on the University Park and Health Sciences campuses [] remain[ing] locked, with

11  access only to authorized faculty and staff with physical keys or key cards."

12      67.    On that same day, USC housing also sent a message requesting all

13  students with the ability to leave to do so, and students with circumstances requiring

14  them to remain in USC Housing to submit a request for review.[28]

15      68.    On March 20, 2020, Provost Zukoski announced that USC would offer

16  undergraduate students the option to receive a "Pass/No Pass" grade rather than letter

17  grades.[29]

18      69.    On March 30, 2020, to "alleviate distress" during the "disruptive time,"

19  President Folt and Provost Zukoski announced that the University would first allow

20

21  [26] https://coronavirus.usc.edu/2020/03/16/covid-19-new-actions-2/ (last visited

22  Aug. 5, 2020).

23  [27] https://coronavirus.usc.edu/2020/03/20/latest-updates-and-actions/ (last visited

    Aug. 5, 2020).

24  [28] https://coronavirus.usc.edu/2020/03/20/housing-access-during-covid-19/ (last

25  visited Aug. 5, 2020).

26  [29] https://coronavirus.usc.edu/2020/03/20/options-course-grades-withdrawals/

    (last visited Aug. 5, 2020).

27  _____
                                        17

28                                  Amended Consolidated Class Action Complaint
                                    Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 21 of 39   Page ID
#:2928
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 21 of 39   Page ID
#:2781

undergraduate students to review their letter grades for the Spring 2020, then make a determination as to if they would rather receive a "Pass" or "No Pass" grade.[30]

70.     USC law students, like Plaintiff Saddigh, were not given the option to choose between a letter grade or a "Pass"/"No Pass" grade. Instead, it was announced that all law school courses would be graded "Pass"/"No Pass." This decision was made without consulting students. This decision further harmed USC law students, who lost the opportunity to receive a grade that reflected their scholarship or improved their grade-point average and class rank. Law school grades and class rank significantly influence job prospects, judicial clerkships, and other post-graduate opportunities.

71.     On April 10, 2020, David Wright, Senior Vice President of Administration, and Winston B. Crips, Vice President for Student Affairs, announced that USC would provide a prorated reimbursement of room and meal plan payments to students who vacated university housing.[31]

72.     On April 28, 2020, Provost Zukoski sent a letter to students noting that USC had "no plans to provide prorated tuition refunds for the Spring 2020 semester or our upcoming Summer sessions."[32] He also announced that both Summer 2020 sessions would be conducted exclusively online.[33]

73.     On June 2, 2020, President Folt emailed the USC community, explaining that USC was "planning for an in-person fall semester for students

---

[30] https://coronavirus.usc.edu/2020/03/30/important-modification-to-undergraduate-grading-policy/ (last visited Aug. 5, 2020).

[31] https://coronavirus.usc.edu/2020/04/10/4-10-usc-housing-update/ (last visited Aug. 5, 2020).

[32] https://coronavirus.usc.edu/2020/04/28/4-28-academic-updates-for-current-and-future-trojans/ (last visited Aug. 5, 2020).

[33] *Id*.

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 22 of 39   Page ID
#:2929
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 22 of 39   Page ID
#:2782

beginning on August 17, 2020."[34] However, less than one month later, on July 1, 2020, Provost Zukoski and Senior Vice President Wright wrote with an update, announcing that "undergraduate students primarily or exclusively will be taking their courses online in the fall term, and on-campus housing and activities will be limited."[35] The message explained that "*a majority of undergraduate classes will be available solely online*" and that only 10–20% of classes—"primarily face-to-face labs, studios, performance, and other courses involving hands-on work, and independent research studies that require facilities and equipment only available on campus"—would be conducted on-campus.[36]

74.     As a result of Defendants' actions, Plaintiffs and Class members have not been provided in-person instruction or a "fully functional" campus at USC since March 10, 2020. As of the filing of the lawsuit, USC had not identified a date certain when it will resume the in-person, on-campus undergraduate and graduate education that Plaintiffs were promised. On August 5, 2020, Defendants stated only that "fall semester classes will begin with fully remote instruction, with limited exceptions for clinical education."[37] The University issued a "follow up" message on August 7, 2020, confirming: "All instruction will begin online for Fall 2020, with only a small number of exceptions in certain clinical education situations."[38]

_____

[34] https://coronavirus.usc.edu/2020/06/02/6-2-message-from-president-folt-about-the-2020-2021-academic-year/ (last visited Aug. 5, 2020).

[35] https://coronavirus.usc.edu/2020/07/01/7-1-letter-on-student-housing-and-course-schedules/ (last visited Aug. 14, 2020).

[36] *Id.*

[37] https://we-are.usc.edu/2020/08/05/8-5-fall-semester-update-from-provost-zukoski-and-david-wright/ (last visited Aug. 14, 2020).

[38] https://we-are.usc.edu/2020/08/07/8-7-follow-up-to-uscs-8-5-2020-message-about-fall-semester/ (last visited Aug. 14, 2020).

19

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC    Document 126    Filed 05/05/22    Page 23 of 39    Page ID
#:2930
Case 2:20-cv-04066-DMG-PVC    Document 113-1    Filed 01/14/22    Page 23 of 39    Page ID
#:2783

75.    By converting to exclusively remote instruction, closing campuses, and suspending athletics, housing, services, and programs, Defendants denied Plaintiffs their bargained- and paid-for instruction, opportunities, facilities, and services. For example, Plaintiffs lost use of campus libraries, computer facilities, studios, laboratories, and other resources, as well as the ability to participate in student organizations, sports and activities, or attend campus events.

76.    Regarding classroom instruction, Plaintiffs paid USC to receive instruction from and communicate directly with professors both in and outside the classroom. Yet, following the campus closure and transition to online courses, these benefits disappeared. Instead, students have been relegated to disjointed classes over Zoom and, in some instances, pre-recorded videos devoid of real-time dialogue, thereby losing out on classroom interaction among teachers and students. Plaintiffs and Class members also suffer significant harm associated with the shift from in-person instruction to the online substitute, including delayed or non-existent instructor and peer interaction, hastily modified curriculum, lost lab experiences, improvised classes and reformulated grading. Indeed, one law student recounted a law professor announcement that students would perform non-graded field work in lieu of a final exam, adding insult to injury by not only denying paying students their promised education but also forcing them to serve as unpaid research assistants.

77.    USC's online classes are not equivalent to the promised in-person, on-campus experience. The tuition and fees USC charges are predicated on personal instruction from and interaction with professors, mentors, guest lecturers, and peers; access to high quality technology, libraries, and laboratories; spectator sports and athletic programs; student government and health services; and extracurricular groups and learning, among other things.

78.    Although USC previously offered certain graduate programs fully

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 24 of 39   Page ID
#:2931
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 24 of 39   Page ID
#:2784

online that are equivalently priced to corresponding in-person coursework, these programs were designed for remote delivery from inception. Moreover, these programs are separately marketed, and students must affirmatively select and "opt-in" to the online offering instead of in-person classes. Thus, students who, before the Spring 2020 semester, elected not to enroll in USC's limited online course and degree offerings, understood and agreed that they would obtain in-person, onsite instruction from USC at its campus facilities.

79.    Indeed, Defendants all but admitted that they were not prepared to deliver all USC courses online. In a March 22, 2020 memorandum to USC faculty, Provost Zukoski claimed that USC "ha[s] a strong and well-earned reputation for delivering high quality online education."[39] But, he acknowledged, "[w]hat is new is to deliver *all* our courses, labs, studios, and more at the undergraduate and graduate levels in this format."[40]

80.    Defendants also unreasonably denied students' requests to defer enrollment for the Spring 2021 semester or the 2021–2022 academic year. USC's "COVID-19 Resource Center" states that graduate students "should check with the department or school to which they were admitted."[41] Undergraduate students "could be granted deferrals in specific cases relating to medical issues, religious obligations, required military/national service and, in the case of international students who will attend classes online from another country, the inability to construct a reasonable online course schedule that is compatible with their home

---

[39] https://coronavirus.usc.edu/2020/03/22/online-teaching-and-asynchronous-education-2/(last visited Aug. 5, 2020).

[40] *Id.*

[41] https://coronavirus.usc.edu/students/academics-frequently-asked-questions/ (last visited Aug. 14, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 25 of 39   Page ID
#:2932
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 25 of 39   Page ID
#:2785

time zone. However, deferral requests for other reasons will generally not be granted." *Id*. USC's policy unreasonably forces students to continue to pay full tuition and fees, rather than elect to await return to in-person instruction and access to housing, dining, sports, activities, and other benefits and entitlements. The policy is particularly onerous on students with learning disabilities or who require accommodations for whom remote learning may not be meaningful or viable. One USC student with Attention Deficit Hyperactivity Disorder was denied deferral, despite detailed documentation supporting the request. The University asserts without explanation that the student's "needs can be managed through the University's on-line offerings."

81.     As a result of the last-minute shift to remote instruction for all students, Plaintiffs and Class members were provided with second-rate, bubble-gum, and duct-tape "classes" and no meaningful alternative or refund. USC's post-March 2020 online offerings are no substitute for the University's promised in-person instruction. The newly online offerings are of lower value than the on-campus programs for which Plaintiffs and Class members contracted and paid.

**D.     Defendants refuse to refund tuition or fees after the March 2020 remote conversion and campus closure.**

82.     USC closed its campuses and converted to exclusively remote instruction in March 2020. A USC student initiated a petition titled "*Partial Tuition Reimbursement at University of Southern California*" demanding Defendants at least partially refund tuition for the Spring 2020 term.[42] More than 7,000 students signed the petition complaining that "the…education [students] will be receiving will not

---

[42] https://www.change.org/p/usc-president-carol-l-folt-partial-tuition-reimbursement-at-university-of-southern-california (last visited Aug. 5, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 26 of 39   Page ID
#:2933
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 26 of 39   Page ID
#:2786

be commensurate with costly tuition payments made in January of [2020]."[43]

83.     Students also posted comments explaining why they joined the petition, highlighting the stark difference in value between USC's post-March 2020 programs and the robust promises previously made. Sample comments are excerpted below (emphasis added throughout):

a. "I am a student at university of Southern California and I feel that the crisis has rendered us incapable of using university services and *classes have become remote, creating a barrier with learning*." (posted by Christopher Raines);

b. "I'm a Roski major where a majority of our classes have to be done in the studio. *It is unfair that we are paying full tuition without access to these facilities*." (posted by Ga Eun Kim);

c. "I understand the situation, but our careers matter too! *My course requires a very hands on approach and if that's taken away from me, the point of the entire course is diminished*." (posted by Mayank Bagrecha);

d. "*I should not have to pay for all the facilities when I am essentially banned from campus*." (posted by AJ Jordan);

e. "I'm a School of Cinematic Arts alumni and *online courses will not provide the same value as in the classroom setting*. Practically, it's impossible to provide the same value because of the software and equipment students have access to on campus . . . *students pay the USC tuition to GO to USC*." (posted by Patrick Ivison);

f. "We are unable to receive the same educational experience without physical labs and lectures. *We should not be paying the same amount of tuition for online classes!*" (posted by Erin Chung);

g. "*While we are still getting information, we are not getting the 'USC experience.'* All the networking events are cancelled, and meeting new people in your classes, making friends are not possible online." (posted

---

[43] *Id.*

23

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 27 of 39   Page ID
#:2934
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 27 of 39   Page ID
#:2787

by Tim Curtet);

h.  "As a SCA student, my tuition goes towards equipment, insurance, facilities that I am no longer allowed to use. In addition, all these school events are getting cancelled, so that's more of my tuition going to nothing." (posted by Marco Chiong);

i.  "I'm a student at USC and it's already hard enough as it is with the amount of debt I'll be graduating with from last year alone. I don't find it fair to have spent so much money for this semester for only some of the benefits of attending the school." (posted by Sydney Smith);

j.  "***This is not the education I paid for***." (posted by Noah Collingwood).

84.    Scores of other comments by USC students express similar sentiments that the online instruction and lack of campus facilities and services are not what was promised and paid for.

85.    Similarly, an April 15, 2020 USC student newspaper article called for partial refunds given that "*[m]uch of what tuition money goes toward is no longer accessible, like the University's 23 libraries, laboratories or lighting stages, since the transition to remote learning*."[44] In addition to losing out on campus facilities, the article explains that students are also denied the opportunity for face-to-face instruction, research, and campus events:

> While students and educators alike are making do with what they have, Zoom office hours will never be the same as interacting face-to-face with a professor, and there's simply no virtual substitute for conducting undergraduate research in a lab on campus. Free events such as Visions and Voices and Speaker Series are postponed or canceled, and for the few events that have been moved online, glitchy audio and technical difficulties will never equate to sitting in Bovard Auditorium and

---

[44] https://dailytrojan.com/2020/04/15/usc-must-gives-students-a-partial-tuition-refund/ (last visited Aug. 5, 2020).

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 28 of 39   Page ID
#:2935
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 28 of 39   Page ID
#:2788

listening to a presentation live.[45]

86.     Indeed, USC students are not alone: Students, faculty, and even administrators across the country have voiced concerns over abrupt, ill-planned transitions to online learning coupled with institutions' refusal to refund tuition and fees that were premised on an in-person education. For example, a July 2020 survey of 13,606 college students in the United States found that 93% percent believe that if classes are provided online, tuition should be lowered.[46] Students are so disappointed in online instruction that more than one-third are considering withdrawing from school entirely.[47]

87.     Professors and administrators have also expressed dismay with schools charging students full tuition and fees for substantially inferior online substitutes. For instance, University of Pennsylvania Professor Jonathan Zimmerman, who specializes in the history of education, opined that "*[m]ost online instruction isn't as effective as the traditional kind*."[48] Alison Byerly, President of Lafayette College, which is offering a 10% discount to students who study from home in the 2020–2021 academic year, similarly stated: "*If you don't have access to the library, to campus facilities, if you're not going to be on campus with students, you shouldn't have to pay full price*."[49]

88.     Further compounding Plaintiffs' and Class members' frustration is the

---

[45] *Id.*

[46] https://www.cnbc.com/2020/07/27/93percent-of-college-students-say-tuition-should-be-cut-for-online-classes.html (last visited Aug. 5, 2020).

[47] *Id.*

[48] https://www.inquirer.com/opinion/commentary/coronavirus-remote-distance-learning-online-degrees-20200408.html (last visited Aug. 5, 2020).

[49] https://abcnews.go.com/US/petitions-lawsuits-students-demand-lower-tuition-online-instruction/story?id=72105974 (last visited Aug. 5, 2020).

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 29 of 39   Page ID
#:2936
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 29 of 39   Page ID
#:2789

fact that USC has received more than $19 million in CARES Act funds, half of which is federally mandated to go toward students who are in need of emergency financial assistance.[50] Yet, despite this influx of federal funds, Defendants refuse to refund any tuition or fees for the Spring, Summer, or Fall 2020 terms.

89.     Through this lawsuit, Plaintiffs seek—for themselves and all other Class members—a prorated refund of the tuition and fees for the lost education experience when classes moved from in-person to online and student access to on-campus resources and facilities was denied or severely limited.

## V.   CLASS ACTION ALLEGATIONS

90.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiffs bring this action on behalf of themselves and the following Class:

> All students who paid or were obligated to pay tuition, fees, or other costs to the University of Southern California for the Spring 2020 academic term.

91.     Excluded from the Class are students who enrolled in USC education programs that, prior to March 10, 2020, were offered exclusively online.

92.     Plaintiffs reserve the right to amend the class definition as discovery and other case developments warrant.

93.     A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendants. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties

---

[50] http://www.uscannenbergmedia.com/2020/04/14/usc-to-distribute-at-least-96-million-federal-emergency-grants-to-students-financially-impacted-by-covid-19/ (last visited Aug. 5, 2020).

26

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 30 of 39   Page ID
#:2937
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 30 of 39   Page ID
#:2790

involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

94.  **Numerosity**. In accordance with Fed. R. Civ. P. 23(a)(1), the members of the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiffs, the Class is presumed to number more than 40,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

95.  **Commonality and Predominance**. In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

     a.  whether Defendants accepted money from the Class;

     b.  whether Defendants retained money from the Class for services they did not render, or only partially rendered;

     c.  whether Defendants entered into a contract with the Class;

     d.  whether Defendants breached their contract with the Class;

     e.  whether Defendants benefited from the money they accepted from the Class;

     f.  whether the educational and other services Defendants provided to the Class were commensurate with their value;

     g.  whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

     h.  whether Class members are entitled to declaratory, equitable, injunctive, and/or other relief; and

     i.  the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

27

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 31 of 39   Page ID
#:2938
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 31 of 39   Page ID
#:2791

96.     **Typicality**. Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members each paid for certain costs associated with the Spring 2020 term but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendants, and the claims all arise from the same USC practices and course of conduct. There are no defenses available that are unique to Plaintiffs.

97.     **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to prosecute this action vigorously on behalf of their fellow Class members. Plaintiffs have no interests that are antagonistic to those of the Class and they will fairly and adequately protect the proposed Class' rights along with counsel.

## VI.     <u>CLAIMS FOR RELIEF</u>

### COUNT I
### <u>Breach of Contract</u>

98.     Plaintiffs reallege and incorporate by reference all previous allegations, as though set forth in full herein.

99.     Plaintiffs bring this claim individually and on behalf of the other members of the Class for prorated tuition and fees paid for the Spring 2020 term.

100.    By the act of accepting enrollment and matriculating, together with the payment of required tuition and fees, an implied-in-fact contract between Plaintiffs and Class members, on the one hand, and Defendants, on the other hand, was created.

101.    The language on USC's website and in USC's handbooks, catalogues, and other materials made available to students promising in-person instruction,

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC    Document 126    Filed 05/05/22    Page 32 of 39    Page ID
#:2939
Case 2:20-cv-04066-DMG-PVC    Document 113-1    Filed 01/14/22    Page 32 of 39    Page ID
#:2792

campus facilities, services, and resources became terms of the implied-in-fact contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendants would provide Plaintiffs and Class members with an on-campus education. The nature of the instruction provided by USC at the time Plaintiffs and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by USC across its schools and campuses were and are material terms of the bargain and contractual relationship between students and Defendants.

102.    By ceasing in-person instruction, relegating Plaintiffs and Class members exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiffs and the Class, Defendants failed to provide the services for which Plaintiffs and Class members bargained in entering their contractual relationship with Defendants.

103.    Defendants' failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

104.    By contrast, Plaintiffs and Class members fulfilled their end of the bargain when they paid or agreed to pay USC tuition, fees, and other costs.

105.    The tuition, fees, and other costs that Plaintiffs and the proposed Class paid were intended to cover in-person educational and extracurricular services. Defendants, however, have failed and continue to fail to provide the education and services due under the contracts, yet have improperly retained the funds Plaintiffs and the proposed Class paid or agreed to pay.

106.    Plaintiffs and members of the Class have suffered damages as a direct and proximate result of Defendants' breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

107.   Plaintiffs and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for USC's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendants failed to deliver fully during the Spring 2020 term.

108.   Defendants' performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendants would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II
## Restitution Based on Quasi-Contract

109.   Plaintiffs reallege and incorporate by reference all previous allegations, as though set forth in full herein.

110.   Plaintiffs bring this claim individually and on behalf of the other members of the Class for prorated tuition and fees paid for the Spring 2020 term in the alternative.

111.   Plaintiffs and other members of the Class conferred a benefit or enrichment on Defendants by paying tuition and fees to Defendants which were beneficial to Defendants, at the expense of Plaintiffs and members of the Class.

112.   Plaintiffs and members of the Class paid tuition and fees and did not receive the full benefit of their bargain from Defendants, thus resulting in their impoverishment.

113.   Defendants have retained the benefit paid by Plaintiffs and the Class despite their failure to provide the services for which the benefit was paid.

114.   There is no justification or cause for Defendants' failure to return the portion of the tuition and fees that Defendants have unjustifiably kept for themselves

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 34 of 39   Page ID
#:2941
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 34 of 39   Page ID
#:2794

even though they failed to complete the services for which Plaintiffs provided the funds to Defendants.

115.   Accordingly, Defendants have been unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 term that Plaintiffs and the Class paid for tuition and fees.

## COUNT III
## Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 – Unfair Prong

116.   Plaintiffs reallege and incorporate by reference all previous allegations, as though set forth in full herein.

117.   Plaintiffs bring this claim individually and on behalf of the other members of the Class.

118.   Defendants' conduct in representing that they offer in-person instruction and other benefits to Plaintiffs and Class members when, in fact, they did not do so but continued to charge and demand full tuition and fees as if such instruction and benefits were being provided, amounts to unfair business practices within the meaning of California's UCL.

119.   Had Defendants disclosed that they would not offer in-person instruction or on-campus facilities and activities before charging Plaintiffs and other Class members full tuition and fees, Plaintiffs and the Class either would not have enrolled at USC or would not have agreed to pay that same amount of tuition and fees for services and facilities they would not receive.

120.   Plaintiffs and the Class conveyed money to Defendants in the form of tuition and fees while Defendants were engaged in the unfair business practices.

121.   Plaintiffs and Class members have been and continue to be injured by Defendants' unfair business practices because they are not receiving the instruction nor facilities for which they conveyed money to Defendants for the Spring 2020

1 | term.

2 |      122.   Plaintiffs and the Class are entitled to restitution and to the recovery of

3 | attorney's fees and costs.

4 | **VII.  <u>PRAYER FOR RELIEF</u>**

5 |      123.   Plaintiffs, individually and on behalf of the members of the Class,

6 | respectfully request that the Court enter judgment in their favor and against

7 | Defendants as follows:

8 |      a.    For an order certifying the Class as requested herein, designating

9 |             Plaintiffs as Class representative, and appointing the undersigned

10 |             counsel as Class Counsel;

11 |      b.    For judgment in favor of Plaintiffs and the Class members and

12 |             against Defendants on all counts and claims for relief;

13 |      c.    For damages and/or restitution awarded to the Class against

14 |             Defendants in an amount to be determined at trial;

15 |      d.    For an order declaring that Defendants are financially responsible

16 |             for notifying the Class members of the pendency of this suit;

17 |      e.    For an order awarding injunctive relief and restitution as permitted

18 |             by law or equity;

19 |      f.    For an order awarding Plaintiffs' reasonable attorney's fees, costs,

20 |             and expenses;

21 |      g.    For an order awarding pre- and post-judgment interest on any

22 |             amounts awarded; and

23 |      h.    For an order awarding such other and further relief as the Court

24 |             deems just and proper.

25 | **VIII.  <u>DEMAND FOR JURY TRIAL</u>**

26 |

27 |

28 |

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

1        Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of

2 Civil Procedure on all causes of action so triable.

3

4 Dated: January 14, 2022          Respectfully submitted,

5            */s/ Daniel J. Kurowski*

6            **HAGENS BERMAN SOBOL SHAPIRO LLP**
Christopher R. Pitoun (SBN 290235)

7            301 North Lake Avenue, Suite 203
Pasadena, CA 91101

8            Tel: (213) 330-7150

9            *christopherp@hbsslaw.com*

10            **HAGENS BERMAN SOBOL SHAPIRO LLP**

11            Steve W. Berman (*Pro Hac Vice*)
1301 Second Avenue, Suite 2000

12            Seattle, WA 98101

13            Tel: (206) 623-7292
*steve@hbsslaw.com*

14

15            **HAGENS BERMAN SOBOL SHAPIRO LLP**

16            Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)

17            455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611

18            Tel: (708) 628-4949

19            *dank@hbsslaw.com*

20            *whitneys@hbsslaw.com*

21            **BERGER MONTAGUE PC**

22            Glen L. Abramson
Ellen T. Noteware

23            1818 Market Street, Suite 3600

24            Philadelphia, PA 19103
Tel: (215) 875-3000

25            *gabramson@bm.net*

26            *enoteware@bm.net*

27            33

28            Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

1

**BERGER MONTAGUE PC**
E. Michelle Drake
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (215) 875-3000
*emdrake@bm.net*

2

3

4

5

6

**THE KATRIEL LAW FIRM, P.C.**
Roy A. Katriel, Esq. (SBN 265463)
2262 Carmel Valley Road, Suite 201
Del Mar, CA 92014
Tel: (619) 363-3333
*rak@katriellaw.com*

7

8

9

10

*Interim Co-Lead Counsel for Plaintiffs and
the Proposed Class*

11

12

-and-

13

14

**THE KALFAYAN LAW FIRM, APC**
Ralph B. Kalfayan (SBN 133464)
Veneeta Jaswal (SBN 320108)
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Tel: (619) 232-0331
*ralph@rbk-law.com*
*veneeta@rbk-law.com*

15

16

17

18

19

20

**LYNCH CARPENTER LLP**
(Eddie) Jae K. Kim (SBN 236805)
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel: (619) 762-1910
*ekim@lcllp.com*

21

22

23

24

25

**LYNCH CARPENTER LLP**
Gary F. Lynch
(*Pro Hac Vice* forthcoming)
Edward W. Ciolko

26

27

34

28

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC

1  (*Pro Hac Vice* forthcoming)
   1133 Penn Avenue, 5th Floor
2  Pittsburgh, PA 15222
3  Tel: (412) 322-9243
   *gynch@lcllp.com*
4  *eciolko@lcllp.com*
5
   **LAW OFFICES OF JENNIFER DUFFY**
6  Jennifer Duffy (SBN 171984)
7  28649 S. Western Avenue, Suite 6571
   Los Angeles, CA 90734
8  Tel: (310) 714-9779
9  *jennifer@usclassactions.com*
10
   **PARRIS LAW FIRM**
11 R. Rex Parris (SBN 96567)
12 Alexander R. Wheeler (SBN 239541)
   Kitty K. Szeto (SBN 258136)
13 John M. Bickford (SBN 280929)
   Ryan A. Crist (SBN 316653)
14 43364 10th Street West
15 Lancaster, CA 93534
   Tel: (661) 949-2595
16 *rrparris@parrislawyers.com*
17 *kszeto@parrislawyers.com*
   *awheeler@parrislawyers.com*
18 *jbickford@parrislawyers.com*
19 *rcrist@parrislawyers.com*
20
   **SHEGERIAN & ASSOCIATES, INC.**
21 Carney R. Shegerian (SBN 150461)
22 Anthony Nguyen (SBN 259154)
   Cheryl A. Kenner (SBN 305758)
23 145 South Spring Street, Suite 400
   Los Angeles, California 90012
24 Tel: (310) 860-0770
25 Fax: (310) 860-0771
   *CShegerian@Shegerianlaw.com*
26
27                          35
                            Amended Consolidated Class Action Complaint
28                          Case No. 2:20-cv-04066-DMG-PVC

Case 2:20-cv-04066-DMG-PVC   Document 126   Filed 05/05/22   Page 39 of 39   Page ID
#:2946
Case 2:20-cv-04066-DMG-PVC   Document 113-1   Filed 01/14/22   Page 39 of 39   Page ID
#:2799

*ANguyen@Shegerianlaw.com*
*CKenner@Shegerianlaw.com*

*Attorneys for Plaintiffs and*
*the Proposed Class*

36

Amended Consolidated Class Action Complaint
Case No. 2:20-cv-04066-DMG-PVC