COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
10265 Science Center Drive
San Diego, CA  92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA  90401
Telephone: (310) 883-6400
Facsimile:  (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA  02116-3736
Telephone: (617) 937-2300
Facsimile:  (617) 937-2400

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE
BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**[REDACTED]**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 19, 2023<br>Time: 9:30 a.m.<br>Courtroom: 8C<br><br>Action filed: May 7, 2020<br>Consolidated: July 17, 2020<br>Trial Date: January 9, 2024 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................... 1

II.  BACKGROUND .......................................................................................... 2

    A.   State and Local COVID-19 Orders Precluding In-Person
        Education.............................................................................................. 2

    B.   Continuity of Education in Spring 2020 and Support of Students. .......... 3

    C.   Fall 2020 Semester Conducted Remotely at Higher Tuition. ................... 4

    D.   Plaintiffs' Purported Common Evidence. ................................................. 4

    E.   Plaintiffs' Expert Report Regarding Monetary Recovery. ....................... 5

    F.   Claims and Defenses Asserted. .............................................................. 6

III. LEGAL STANDARD .................................................................................. 6

IV.  THE COURT SHOULD DENY PLAINTIFFS' RULE 23 MOTION .............. 7

    A.   Individualized Issues Defeat Commonality and Predominance. .............. 8

        1.   Plaintiffs' breach of implied contract claim is neither
            susceptible to common proof nor viable......................................... 9

        2.   Quasi-contract restitution requires individual determinations. .... 10

        3.   UCL unfair prong claim requires individualized proof. .............. 13

    B.   Plaintiffs' Monetary Recovery Model Is Not Tied to Their Case. ......... 14

        1.   Plaintiffs' expert did not model restitution.................................. 15

        2.   Plaintiffs' expert did not account for COVID-19........................ 19

        3.   Plaintiffs' expert fails to model other critical facts. .................... 20

    C.   Plaintiffs' Claims Are Atypical of Putative Class Members'
        Claims.................................................................................................. 23

V.   CONCLUSION .......................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-i-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)............................................................................8

*Arredondo v. Univ. of La Verne*,
341 F.R.D. 47 (C.D. Cal. 2022)........................................................13

*Balzer v. Wal-Mart Stores, Inc.*,
2015 WL 13828418 (C.D. Cal. Feb. 25, 2015)...........................14, 15

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014), *abrogated on other grounds by
Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) ........................7, 11, 13

*Burton v. Nationstar Mortg., LLC*,
2014 WL 5035163 (E.D. Cal. Oct. 8, 2014)......................................9

*Campion v. Old Republic Home Protection Co., Inc.*,
272 F.R.D. 517 (S.D. Cal. 2011) .......................................................14

*Collinge v. IntelliQuick Delivery, Inc.*,
2015 WL 1292444 (D. Ariz. Mar. 23, 2015).....................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).............................................................7, 14, 15, 16

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000)........................................................................15

*Doe I v. Wal–Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) .............................................................10

*Duarte v. J.P. Morgan Chase Bank*,
2014 WL 12561052 (C.D. Cal. Apr. 7, 2014).....................................8

*Duke v. Ohio Univ.*,
204 N.E.3d 752 (Ohio Ct. App. 2022) ..............................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dunn v. Costco Wholesale Corp.*,
2021 WL 4205620 (C.D. Cal. July 30, 2021) ...................................16

*Eddlemon v. Bradley Univ.*,
2022 WL 3227865 (C.D. Ill. July 22, 2022) ...................................13

*Erica P. John Fund, Inc., v. Halliburton Co.*,
563 U.S. 804 (2011)....................................................................8

*Evans v. Brigham Young Univ.*,
2022 WL 596862 (D. Utah Feb. 28, 2022)........................................7

*Forrand v. FedEx Corp.*,
2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ...................................14

*Garcia De León v. N.Y. Univ.*,
2022 WL 2237452 (S.D.N.Y. June 22, 2022) .....................7, 9, 13, 24

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..................................................................18

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) .........................................16, 19

*Herskowitz v. Apple, Inc.*,
301 F.R.D. 460 (N.D. Cal. 2014) ................................................14

*Lanovaz v. Twinings N. Am., Inc.*,
2014 WL 1652338 (N.D. Cal. Apr. 24, 2014)....................................16

*Lara v. First Nat'l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022)........................................................8

*Leyva v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) .......................................................14

*Little v. Grand Canyon Univ.*,
2022 WL 266726 (D. Ariz. Jan. 28, 2022)........................................13

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*MH Pillars Ltd. v. Realini*,
  277 F. Supp. 3d 1077 (N.D. Cal. 2017)..............................................................10

*Michel v. Yale Univ.*,
  2023 WL 1350220 (D. Conn. Jan. 30, 2023) ......................................................18

*Morales v. Kraft Foods Grp., Inc.*,
  2017 WL 2598556 (C.D. Cal. June 9, 2017)........................................................19

*Ninivaggi, et al. v Univ. of Del.*,
  No. 20-cv-1478-SB, Dkt. No. 138 (D. Del. Mar. 31, 2023) ..............................13

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015)...............................................................19

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ........................................................16

*Oddo v. Arcoaire Air Conditioning & Heating*,
  2019 WL 1460627 (C.D. Cal. Mar. 22, 2019) ....................................................11

*Ono v. Head Racquet Sports USA, Inc.*,
  2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ......................................................11

*Ontiveros v. Safelite Fulfillment, Inc.*,
  2017 WL 6043078 (C.D. Cal. Oct. 16, 2017) (Gee, J.).........................................8

*Ozeran v. Jacobs*,
  798 F. App'x 120 (9th Cir. 2020)..................................................................15, 23

*Patel v. Univ. of Vt. & State Agric. Coll.*,
  2021 WL 3109908 (D. Vt. July 22, 2021)...........................................................23

*In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*,
  2023 WL 2576766 (C.D. Cal. Mar. 7, 2023) ...................................................9, 10

*Pro Water Sols., Inc. v. Angie's List, Inc.*,
  2022 WL 9992458 (C.D. Cal. Oct. 17, 2022) ...............................................7, 9, 14

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ............................................................... 15

*Saavedra v. Eli Lilly & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ...................................... 16, 18, 19

*Sirko v. Int'l Bus. Machs. Corp.*,
  2014 WL 4452699 (C.D. Cal. Sept. 3, 2014) (Gee, J.) ........................ 7

*Smith v. Allianz Serv. Co.*,
  2022 WL 4596591 (C.D. Cal. June 10, 2022) ...................................... 9

*In re: Suffolk Univ. COVID Refund Litig.*,
  2022 WL 6819485 (D. Mass. Oct. 11, 2022) ........................................ 7

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015) .............................................................. 15, 22

*Torres v. Wells Fargo Bank, N.A.*,
  2019 WL 7169793 (C.D. Cal. June 25, 2019) (Gee, J.) ...................... 7, 24

*In re Univ. of S. Cal. Tuition & Fees Covid-19 Refund Litig.*,
  2021 WL 3560783 (C.D. Cal. Aug. 6, 2021) (Gee, J.) ................... 12, 13, 14, 25

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ........................................................... 10

*Waitt v. Kent State Univ.*,
  2022 WL 17986762 (Ohio Ct. App. Dec. 29, 2022) ........................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................ 7, 8

*Weisberg v. Takeda Pharms. U.S.A., Inc.*,
  2018 WL 4043171 (C.D. Cal. Aug. 21, 2018) ..................................... 9

*Zakaria v. Gerber Prods. Co.*,
  755 F. App'x 623 (9th Cir. 2018) ........................................................ 15, 16, 18, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**
**CASE NO. 2:20-CV-4066-DMG-PVC**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Zhao v. CIEE Inc.*,
 3 F.4th 1 (1st Cir. 2021) ....................................................................24

*Zinser v. Accufix Rsch. Inst., Inc.*,
 253 F.3d 1180, *as amended*, 273 F.3d 1266 (9th Cir. 2001)................................6

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**
**CASE NO. 2:20-CV-4066-DMG-PVC**

## I.    INTRODUCTION

The Court should deny Plaintiffs' motion because class certification in this case is wildly inappropriate for multiple, independent reasons.

First, Plaintiffs cannot establish commonality or predominance.  Even among the six named Plaintiffs, and certainly among the over 45,600 putative class members, each student's claim presents highly individualized issues as to liability and harm.  As but one glaring (and, frankly, egregious) example: one of the named Plaintiffs ***was a student abroad in Italy, Spain, and Japan*** for the Spring 2020 semester.

Second, Plaintiffs cannot establish predominance because their sole "evidence" for recovery is an expert witness's unreliable and irrelevant conjoint survey of anonymous internet users.  Because state and local orders made it impossible for the University of Southern California ("USC") to have students on campus during the pandemic, Plaintiffs can only recover restitution.  Restitution is available only if USC was ***willing*** to lower its tuition for remote education.  Not only does Plaintiffs' expert admit he ignored that requirement, but the undisputed evidence is that USC was ***not willing*** to do so.  USC has never charged a lower tuition for its online degree programs.  More tellingly, the very next semester was entirely remote, USC increased tuition, and enrollment remained constant.  This Court should follow numerous authorities that deny certification for restitution claims under California law where conjoint studies fail to establish actual market pricing—and should avoid following cases from outside California that involve different laws of recovery.

Plaintiffs' expert's conjoint does not model the facts or claims here for another reason: respondents were told to ***ignore the effects of the pandemic***.  That is a fatal flaw.  USC students undeniably valued safer-at-home remote education versus riskier in-person education during a deadly pandemic for which no vaccine existed at the time.

The expert's conjoint also ***fails*** to: model the value of half a semester in-person and half a semester remote; describe "online" instruction so that it aligned with the remote education in Spring 2020; recognize respondents were entirely different from

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

USC students; consider the critical roles of USC's financial aid and of students' parents that would dramatically affect students' university attendance decisions; identify the specific USC "fees" that are at issue; or consider that students often did not pay all or part of their tuition and fees.  Courts regularly decline to certify classes where conjoints fail to present adequate evidence of restitution under the specific facts of the case.  This Court should do so here.

Third, Plaintiffs are not typical of the class.  One Plaintiff was a student abroad in Italy, another is COVID-19 suspicious and challenges pandemic restrictions entirely.  Plaintiffs' disputes with USC are *really* about the quality of remote education, so their individual claims are atypically subject to the educational malpractice doctrine.

Plaintiffs have failed to carry their burden of satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  Their motion should be denied.

## II.    BACKGROUND

### A.    State and Local COVID-19 Orders Precluding In-Person Education.

On March 19, 2020, Governor Newsom issued a statewide stay at home order, mandating "all individuals living in the State of California . . . stay home or at their place of residence" with limited exceptions.  (Declaration of Leo Norton ("Norton Decl."), Ex. 1 [Executive Order N-33-20].)    The same day, Mayor Garcetti issued a "Safer at Home" order requiring the same of all Los Angeles residents, exempting educational institutions, but only "for purposes of facilitating distance learning." (Norton Decl., Ex. 2 [Stay-at-Home Order].)

On March 20, 2020, USC updated students and summarized actions taken in response to "new local, state and federal directives," including limiting public access to campus to those "performing essential functions for the University and supporting on-campus residents and online and remote learning."   (Norton Decl., Ex. 3 [Mar. 20 Update]; Dkt. No. 126 ("FAC"), ¶ 66.) On April 28, 2020, USC announced that it would provide pro-rated housing and meal plan fee refunds to students, but it would not change Spring 2020 semester tuition because USC was "continuing to provide a high-quality

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

education, ensur[ing] academic progress towards degree [completion], and offer[ing] a robust learning environment."  (Norton Decl., Ex. 4 [Apr. 28 Update]; FAC, ¶ 72.)

**B.    Continuity of Education in Spring 2020 and Support of Students.**

USC delivered on its mission to maintain continuity of education and ensure degree progress.  The transition to remote education did not impact progress towards degree completion for Plaintiffs or putative class members.  (Opening Expert Report of John L. Hansen ("Hansen") (attached as Ex. 5 to Norton Decl.), ¶¶ 44-48.)  Plaintiff Choi graduated in Spring 2020, while the others earned the units for which they were registered and have since graduated.  (*Id.*, ¶¶ 9-14.)[1]

To ensure degree progress, ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (Hansen, ¶ 88.)[2] ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (*Id.*) █████████████ ████████████████████████████████████ (*Id.*)

For those students that graduated after the Spring 2020 semester, job placement

---

[1] Deposition Transcript of Injune David Choi ("Choi Depo."), 30:18-20 (attached as Ex. 7 to Norton Decl.); Deposition Transcript of Christina Diaz ("Diaz Depo."), 23:8-24:2 (attached as Ex. 8 to Norton Decl.); Deposition Transcript of Chile Mark Aguiniga Gomez ("Gomez Depo."), 22:17-23:10 (attached as Ex. 9 to Norton Decl.); Deposition Transcript of Jenna Julia Greenberg ("Greenberg Depo."), 22:1-10 (attached as Ex. 10 to Norton Decl.); Deposition Transcript of Justin Kerendian ("Kerendian Depo."), 20:4-18 (attached as Ex. 11 to Norton Decl.); Deposition Transcript of Latisha Watson ("Watson Depo."), 21:7-19 (attached as Ex. 12 to Norton Decl.).
[2] Deposition of Transcript of Andrew Stott ("Stott Depo."), 207:1-210:14 (attached as Ex. 13 to Norton Decl.).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

and starting salaries post-graduation were not impacted by the transition to remote education during the Spring 2020 semester. Specifically, there is no evidence that putative class members experienced reductions to starting salaries or were disadvantaged during the job-seeking process as a result of remote education during the Spring 2020 semester. (Hansen, ¶¶ 49-50, citing https://careers.usc.edu/outcomes/.)

### C. Fall 2020 Semester Conducted Remotely at Higher Tuition.

USC raised undergraduate and graduate tuition for the Fall 2020 semester, which was conducted remotely, by approximately 3.5%. (Hansen, ¶¶ 52-54.)[3] Despite the tuition increase and knowledge of remote modality, enrollment rates remained steady and each of the Plaintiffs who had not yet graduated elected to reenroll. (*Id.*)

### D. Plaintiffs' Purported Common Evidence.

Plaintiffs claim to have common "evidence" of USC's purported promise of in-person education regardless of the circumstances. (Dkt. No. 136, pp. 4-8.) Plaintiffs do not, however, cite any ***clear and explicit contractual promise*** by USC to that effect. Plaintiffs instead rely on a patchwork of incomplete and out-of-context statements from a number of different materials from which they argue ***one can infer a promise*** for in-person education. This patchwork of materials includes "USC's Student Handbook, Course Catalog, official brochures, and websites," "USC Catalogue," "Catalogue's Schedule of Classes," "other widely distributed promotional materials," and "admissions communications." (*Id.*) Plaintiffs offer no evidence as to which of these materials they specifically saw or relied on, much less whether or how the Court can determine which of these materials any particular class member saw or relied on.

Plaintiffs also argue they have evidence that USC breached this purported promise and that the breach impacted them and the class. (*Id.*, pp. 9-12.) The "breach," of course, was USC's compliance with state and local law, which rendered impossible performance of any purported implied contract term for in-person education. Plaintiffs'

---

[3] FAC, ¶ 43 ($28,628 for Spring 2020); Deposition Transcript of Gregory Condell ("Condell Depo."), Ex. 56 ($29,630 for Fall 2020) (attached as Ex. 14 to Norton Decl.).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

evidence of the impact of the transition are a handful of cherry-picked statements by limited numbers of students or university personnel about their perceptions of the *quality of remote education* compared to in-person education.  (*Id.*)

### E.    Plaintiffs' Expert Report Regarding Monetary Recovery.

The only evidence that Plaintiffs offer regarding monetary recovery is the expert report of Hal J. Singer, Ph.D.  (Dkt. No. 136-4, "Singer".)  In October 2022, Singer performed two choice-based conjoint surveys. (Singer, ¶ 28.)  The surveys purported to model purchasing decisions for USC's undergraduate and graduate education for the Spring 2020 semester.  (*Id.*, ¶ 31.)  His goal was to determine the "fair market value of what Class Members *would have* paid in Tuition and Fees" had they known, at the time of their purchase decisions, that half the semester would have been in person and half remote.  (*Id.*, ¶ 9 (emphasis original).)

Singer conducted his survey with online internet users ("respondents"), who were anonymous to him and without any basis to know if any were actual USC students. (Deposition Transcript of Dr. H. Singer ("Singer Depo."), 110:18-23 (attached as Ex. 15 to Norton Decl.).)  Despite over 25% of USC's student body being international students (https://about.usc.edu/facts/), he did not survey any users outside the U.S. (Singer Depo., 111:15-22.)  Singer also specifically targeted the survey to respondents who already showed a preference for in-person education.  (Singer, ¶ 31.)

Respondents were presented with combined prices for tuition and fees for four varying options ("attributes"): on-campus versus "online" instruction; campus facilities access; and two "decoys"—career counseling and tutoring.  (*Id.*, ¶¶ 36-37.)  His survey varied prices for these options by as much as 50% below to 50% over actual tuition and fees.  (*Id.*, ¶ 39.)  Respondents were told to *assume* they would receive the same financial aid that they received, or expected to receive, in their experience.  (*Id.*, ¶ 38.)

Singer aggregated responses to calculate an average "valuation" of the shift from in-person to remote education.  (*Id.*, ¶ 55.)  He assumed "*the shift in market price, or the change in fair market value, is exactly equal to the required discount*."  (*Id.*, ¶ 66.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

In rebuttal, USC submitted testimony from two expert witnesses. (*See* Rebuttal Report of Ronald T. Wilcox, Ph.D., Jan. 18, 2023 ("Wilcox") (attached as Ex. 16 to Norton Decl.); Expert Rebuttal Report of John L. Hansen, Jan. 18, 2023 ("Hansen Reb.") (attached as Ex. 17 to Norton Decl.).) Wilcox and Hansen identified numerous methodological flaws in Singer's report and its absurd results—such as that ***over half of the value of tuition*** comes from the two "decoy" attributes (Wilcox, ¶ 57).

### F.   Claims and Defenses Asserted.

In their First Amended Consolidated Class Action Complaint, Plaintiffs assert one legal claim and two equitable claims arising from USC's transition to remote learning for the second half of the Spring 2020 semester: (1) breach of implied contract; (2) restitution based on quasi-contract; and (3) violation of the unfair prong of California's Unfair Competition Law ("UCL"). (Dkt. No. 126.)

Defendants USC and the Board of Trustees of the University of Southern California (collectively "Defendants") asserted the impossibility defense because state and local laws precluded in-person education. (Dkt. No. 128, Defenses 2-3, 7-8, 13.)

Plaintiffs now move for class certification of a class defined as: "All students who paid or were obligated to pay tuition, fees, or other costs to The University of Southern California for the Spring 2020 academic term." (Dkt. No. 135.)

## III.   LEGAL STANDARD

Under Rule 23 of the Federal Rules of Procedure ("Rule 23"), the party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186, *as amended*, 273 F.3d 1266 (9th Cir. 2001).

Plaintiffs move under Rule 23(b)(3), which requires that both "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23 is "more than a pleading standard, and it requires the party seeking class

CooLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

1  certification to 'affirmatively demonstrate [] compliance with the Rule.'" *Torres v.*

2  *Wells Fargo Bank, N.A.*, 2019 WL 7169793, at *4 (C.D. Cal. June 25, 2019) (Gee, J.)

3  (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The party seeking

4  class certification must prove the facts necessary to carry their burden by a

5  preponderance of the evidence.  *Pro Water Sols., Inc. v. Angie's List, Inc.*, 2022 WL

6  9992458, at *5 (C.D. Cal. Oct. 17, 2022).

7       "The class action is 'an exception to the usual rule that litigation is conducted by

8  and on behalf of the individual named parties only.'"  *Wal-Mart*, 564 U.S. at 348

9  (citation omitted).  As such, the court "must conduct a 'rigorous analysis'" into whether

10  the prerequisites of Rule 23 have been met, "which may require probing behind the

11  pleadings and looking at information that goes to the merits of the underlying claim."

12  *Sirko v. Int'l Bus. Machs. Corp.*, 2014 WL 4452699, at *7 (C.D. Cal. Sept. 3, 2014)

13  (Gee, J.) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013)).

14       The court must analyze each of the claims asserted separately "with consideration

15  given to the elements of the claim at stake."  *Berger v. Home Depot USA, Inc.*,

16  741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp.*

17  *v. Baker*, 582 U.S. 23 (2017) ("[W]e must analyze each of the plaintiff's claims

18  separately. . . .  Each potential class must be analyzed on its own merits, with

19  consideration given to the elements of the claim at stake.").

20  **IV.   THE COURT SHOULD DENY PLAINTIFFS' RULE 23 MOTION**

21       Plaintiffs fail to meet their burden of establishing the requirements for class

22  certification by a preponderance of the evidence.[4]

23

24  _____

[4]  Plaintiffs' motion conspicuously omits that federal courts have **denied** class
25  certification in COVID-19 university cases on various grounds.  *See, e.g.*, *In re: Suffolk
    Univ. COVID Refund Litig.*, 2022 WL 6819485, at *3 (D. Mass. Oct. 11, 2022)
26  (denying certification for lack of superiority reasoning "[p]laintiffs' likelihood of
    proving damages is vanishingly small" because of educational malpractice bar against
27  evidence of "program quality"); *Garcia De León v. N.Y. Univ.*, 2022 WL 2237452
    (S.D.N.Y. June 22, 2022) (denying certification for lack of commonality, typicality,
28  adequacy, and predominance); *Evans v. Brigham Young Univ.*, 2022 WL 596862 (D.
    Utah Feb. 28, 2022) (finding lack of ascertainability).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

### A.    Individualized Issues Defeat Commonality and Predominance.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (citation omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal quotations and citation omitted; emphasis in original).  In other words, "it is insufficient to find that all putative class members have suffered a violation of the same provision of law." *Ontiveros v. Safelite Fulfillment, Inc.*, 2017 WL 6043078, at *7 (C.D. Cal. Oct. 16, 2017) (Gee, J.) (stating class members' claims "must depend upon a common contention" where "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke") (internal quotations and citation omitted).

Predominance focuses on "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (internal quotations and citation omitted).  The test requires that "the common issues be qualitatively substantial in relation to the issues peculiar to individual class members." *Duarte v. J.P. Morgan Chase Bank*, 2014 WL 12561052, at *3 (C.D. Cal. Apr. 7, 2014).  It begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  The merits may be considered where "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

Plaintiffs cannot establish commonality under Rule 23(a)(2) or predominance under Rule 23(b)(3).  As this Court has recognized, Plaintiffs' implied contract claim depends on uncommon facts negated by USC's impossibility defense, and so it merges into their quasi-contract claim.  Plaintiffs' restitution based on quasi-contract claim and UCL unfair prong claim require individual determinations that preclude commonality

1  and predominance.

2          **1.**     **Plaintiffs' breach of implied contract claim is neither susceptible to common proof nor viable**.

3

4        Plaintiffs cannot show every class member had the *same* contract formation

5  experience on which to imply a contract term for in-person education.  Plaintiffs rely

6  on a patchwork of USC's online and written materials as to the implied term, but then

7  make the befuddling argument that such patchwork constitutes a "form contract."

8  (Dkt. No. 136, pp. 4-8, 18.)  By definition, an implied contract is not a form contract,

9  particularly one based on a number of different materials, and so none of Plaintiffs'

10  authorities are relevant.  It is impossible to know which materials—if any—each class

11  member saw.  Those that did not see any have no implied-in-fact contract.

12        Courts deny certification of contract claims on commonality and predominance

13  grounds where class members saw different versions of materials.  *See, e.g.*, *Weisberg*

14  *v. Takeda Pharms. U.S.A., Inc.*, 2018 WL 4043171, at *10 (C.D. Cal. Aug. 21, 2018)

15  (denying certification where multiple versions of promotional materials contained

16  contract terms); *Garcia De León*, 2022 WL 2237452, at *18 (***denying certification in***

17  ***COVID-19 fees case*** where contract was based on different representations).[5]

18        Additionally, USC will prevail on its impossibility defense.  This Court recently

19  held that another university's performance was impossible under California's stay at

20  home order.  *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 2023 WL

21  2576766, at *6 (C.D. Cal. Mar. 7, 2023) (granting summary judgment on Pepperdine's

22  impossibility defense to breach of implied contract claim) ("*Pepperdine*").  There is no

23  commonality where, as here, there is no viable claim.  *Pro Water Sols.*, 2022 WL

24  9992458, at *12 ("commonality fails" where claim is invalid, "because there is no

25  further litigation to resolve"); *Smith v. Allianz Serv. Co.*, 2022 WL 4596591, at *8-10

26  (C.D. Cal. June 10, 2022) (finding no commonality because claims were not viable).

27

28  [5] *See also Burton v. Nationstar Mortg., LLC*, 2014 WL 5035163, at *10 (E.D. Cal. Oct. 8, 2014) (finding no commonality where templates had multiple differing versions).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

As such, all that remains after impossibility is the ability for Plaintiffs to seek restitution based on a quasi-contract theory.  *See Pepperdine*, 2023 WL 2576766, at *6.  And that theory merges with Plaintiffs' already asserted quasi-contract and UCL claims.

### 2.    Quasi-contract restitution requires individual determinations.

Plaintiffs fail to provide any (and certainly not a preponderance of) evidence for classwide restitution based on quasi-contract.  Plaintiffs state that they "will use common evidence to present the circumstances which show that USC received a benefit (the Class members' tuition and fee payments) and that it would be unjust for USC to keep that benefit." (Dkt. No. 136, pp. 19-20.)  But Plaintiffs do not cite to any evidence or authority in support of this statement.  Moreover, they overlook that whether USC's receipt of tuition and fees was unjust necessarily rests on individualized determinations based on all the circumstances between each student and USC in this case.

"The elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense."  *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citations omitted).  "Unjust enrichment is an equitable claim that sounds in implied or quasi-contract."  *Id*.  "The fact that one person benefits another is not, by itself, sufficient to require restitution.  The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it."  *Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) (internal quotations and citations omitted; emphasis in original).

Because a quasi-contract claim inherently involves analyzing the entirety of the circumstances between individuals, courts recognize that such a claim is generally not suitable for class treatment.  *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."); *Collinge v. IntelliQuick Delivery, Inc.*, 2015 WL 1292444, at *13-14 (D. Ariz. Mar. 23, 2015) ("unjust enrichment claims . . . are inherently unsuitable for class certification").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

The Ninth Circuit has held that whether "receipt of funds" was "unjust or inequitable, thereby justifying restitution, . . . necessarily rests on individualized determinations." *Berger*, 741 F.3d at 1070 (affirming certification denial on predominance grounds). Following *Berger*, as they must, courts within the Ninth Circuit routinely deny certification of such claim. *See, e.g.*, *Oddo v. Arcoaire Air Conditioning & Heating*, 2019 WL 1460627, at *12 (C.D. Cal. Mar. 22, 2019) ("declin[ing] to certify plaintiffs' unjust enrichment class because individualized issues predominate with respect to whether [defendant's] retention of any benefit was 'unjust'"); *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *15 (C.D. Cal. Mar. 8, 2016) (concluding unjust enrichment "necessarily rests on individualized determinations" about exposure to advertisements, materiality, and degree of reliance).

Here, Plaintiffs' quasi-contract claim inherently requires an assessment of the equities under the entirety of the circumstances between each individual student and USC. These individual considerations are myriad, and include, among other things, (i) which, if any, of the patchwork of materials each student reviewed, (ii) each student's understanding of and expectations regarding such materials, including countervailing statements in the USC Catalogue, (iii) materiality of in-person versus remote modality, (iv) whether a student was participating in semester abroad or otherwise off-premises, (v) each student's risk tolerance for COVID-19 and impact on valuation of safe-at-home remote education compared to at-risk in-person education, (vi) benefits and support USC provided to each student during the transition, (vii) source of funds used to pay tuition and fees and ownership interest in such funds, and (viii) fact of harm. Variations among the six named Plaintiffs and other evidence show their proof lacks commonality and predominance.

**(i) & (ii).** No plaintiffs described the same set of USC materials as the source of any purported guarantee of in-person education; they varyingly based their claims on: the course catalog and class schedule (Kerendian); handbook, catalog, syllabi, websites, and enrollment materials (Watson); experiences from prior terms, course catalog,

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

brochures (Gomez); class syllabi (Diaz); and online materials, course catalog, syllabi, and acceptance letter (Greenberg).[6]   Further, the USC Catalogue contains countervailing language regarding USC's ability to change its policies, rules, course offerings, and any other contents at any time; tuition being based on units, not modality; and refunds being at USC's discretion. *In re Univ. of S. Cal. Tuition & Fees Covid-19 Refund Litig.*, 2021 WL 3560783, at *6-7 (C.D. Cal. Aug. 6, 2021) (Gee, J.).

**(iii).**   Singer's conjoint survey showed that materiality of remote education varied: ***35% of undergraduate and 40% of graduate respondents chose remote education over in-person***. (Singer, Appendix 3, Table 11; Singer Depo., 253:8-254:1.) These results apply with more force and are dispositive because Singer targeted the survey to those already preferring in-person education. (Singer, ¶ 31.)

**(iv).** Plaintiff Diaz was off campus because she was in Italy, Spain, and Japan.[7]

**(v).** Gomez's risk tolerance for COVID-19 was uncommon, because he "could kind of care less" about social distancing due to his doubts about the virus's science.[8]

**(vi).** ███████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████.[9]

**(vii).** Source of funds and ownership interest are relevant considerations because restitution requires ownership of funds. (*See infra* Section IV.B.1.)   Parents or scholarship providers paid all or part of certain of the named Plaintiffs' tuition and fees and class members received scholarships or grants. (Hansen, ¶¶ 95-97, 100-102.) ██
████████████████████████████████████████████████
██████████████████████████████████████████ (*Id.*,

---

[6] Kerendian Depo., 25:12-26:21, 40:10-50:9, 140:19-141:21, 146:11-153:23; Watson Depo., 58:20-64:21, 65:7-71:14, 129:13-135:4; Gomez Depo., 73:20-79:4; Diaz Depo., 33:23-34:11, 35:5-21, 66:22-67:19; Greenberg Depo., 30:10-34:21, 48:2-49:10, 117:19-120:13.
[7] Diaz Depo., 121:17-122:11, 131:3-6, 136:8-19.
[8] Gomez Depo., 72:12-73:3.
[9] Stott Depo., 207:1-210:14.

¶¶ 11, 14, 91-92, Table 10.) ███████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████.[10]

(viii).  Plaintiff Choi was not harmed as he felt part of the value loss came from the inability to attend sporting events[11]—but of course tuition does not pay for those.

Given the variances among the Plaintiffs, the Court can imagine the variation of these and other circumstances over the entire class of 45,600 students.

Proving USC's point, *one of the COVID-19 university cases on which Plaintiffs rely denied certification* of the unjust enrichment claim for lack of predominance.  (Dkt. No. 136, pp. 2-3 & n.7, citing *Little v. Grand Canyon Univ.*, 2022 WL 266726, at *8 (D. Ariz. Jan. 28, 2022) ("The individualized analysis that the court must perform before granting relief on such a claim makes it unsuitable for class certification.")).[12] *So have other COVID-19 university cases*.  *See, e.g.*, *Garcia De León*, 2022 WL 2237452, at *18 (denying certification due to varying representations to students).

### 3.  UCL unfair prong claim requires individualized proof.

"An 'unfair' business practice [under the UCL] 'is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *In re Univ. of S. Cal.*, 2021 WL 3560783, at *10 (citation omitted).  The elements are "the consumer injury is substantial, not outweighed

---

[10] Kerendian Depo., 67:18-69:15; Gomez Depo., 87:23-91:18; Greenberg Depo., 55:4-59:21; Watson Depo., 167:6-170:23; Diaz Depo., 94:3-7, 94:21-25; Choi Depo., 127:2-12, 132:8-21.

[11] Choi Depo., 104:3-5.

[12] The other federal COVID-19 university cases on which Plaintiffs rely for granting certification are inapposite.  (Dkt. No. 136, pp. 2-3 & n.6, n.7) (citing *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. 2022) *and Eddlemon v. Bradley Univ.*, 2022 WL 3227865 (C.D. Ill. July 22, 2022)).)   In *Arredondo*, the court granted certification *only* for the breach of contract claim as the court had previously dismissed the unjust enrichment claim.  341 F.R.D. at 50.  *Eddlemon* is not persuasive because it is not in the Ninth Circuit and so not bound by *Berger* and it extensively relied on *Little* in its analysis, but ignored *Little*'s denial of class certification for the unjust enrichment claim.  *Eddlemon*, 2022 WL 3227865, at *310.  Any reliance on *Ninivaggi, et al. v University of Delaware*, No. 20-cv-1478-SB, Dkt. No. 138 (D. Del. Mar. 31, 2023) is also misplaced because it is likewise outside the Ninth Circuit and so not bound by *Berger*, and the elements and considerations of unjust enrichment under Delaware law differ from California law.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

by any countervailing consumer benefits, and could not have been reasonably avoided." *Id*. (citations omitted).

Because restitution is the remedy for both claims and both claims are equitable, courts often analyze issues with respect to restitution based on quasi-contract claims and UCL unfair prong claims similarly. *See Balzer v. Wal-Mart Stores, Inc.*, 2015 WL 13828418, *4 (C.D. Cal. Feb. 25, 2015) (collecting cases holding that restitution based on quasi-contract claim duplicates restitution under the UCL). Indeed, Plaintiffs treat the claims as equivalent in their class certification motion. (Dkt. No. 136, pp. 19-20.)

As with their restitution based on quasi-contract claim, Plaintiffs cannot establish commonality or predominance because in assessing whether conduct is unfair, the same individual determinations identified above must be made for their UCL unfair prong claim. Such individual determinations preclude class certification. *See, e.g.*, *Pro Water Sols.*, 2022 WL 9992458, at *12-13 (denying certification because variations in extent of impact to class defeated commonality and because "distinct set of expectations" among class members defeated predominance); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 476 (N.D. Cal. 2014) (denying certification because the elements of claim raise "a multiplicity of individual issues"); *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 533 (S.D. Cal. 2011) ("Individual inquiries and proof . . . required to determine whether the alleged 'unfair' conduct actually cause injury . . . and to determine appropriate restitution."). Plaintiffs' class certification motion should be denied as to their UCL unfair prong claim.

## B.   Plaintiffs' Monetary Recovery Model Is Not Tied to Their Case.

The predominance test is satisfied only if Plaintiffs' recovery model can be applied across the entire class and is "consistent with [Plaintiffs'] liability case." *Comcast Corp.*, 569 U.S. at 28-36. This means that Plaintiffs must "show that [class] damages stemmed from [the] defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Forrand v. FedEx Corp.*, 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013) ("a plaintiff must bring forth

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

a measurement method that can be applied classwide *and* that ties the plaintiff's legal theory" under *Comcast*) (emphasis in original).  Plaintiffs' expert's damages model, even if admissible, fails to satisfy the *Comcast* standard.[13]

### 1.   Plaintiffs' expert did not model restitution.

**Restitution Under California Law.**  For their restitution based on quasi-contract and UCL unfairness prong claims, the only monetary relief available is restitution.[14]  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800-01 (2015) (stating "restitutionary disgorgement" is the monetary relief afforded under UCL); *Balzer*, 2015 WL 13828418, at *4-5 (collecting cases holding that quasi-contract restitution duplicates UCL restitution).  Class members must have "an ownership interest" in the money defendant received.  *See Ozeran v. Jacobs*, 798 F. App'x 120, 122 (9th Cir. 2020) (internal quotations and citation omitted).

Restitution is "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received."  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000); *accord In re Tobacco Cases II*, 240 Cal. App. 4th at 801-02.  This must be a "measurable amount," which "must be supported by evidence" of what the defendant "acquired" through the purportedly wrongful conduct.  *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 625 n.1 (9th Cir. 2018) (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015)).

For a product purchased at a higher price than what it allegedly was worth, restitution "is the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair or fraudulent

---

[13]  USC will move to exclude Singer's report because (1) it is unreliable "junk science"—no literature supports using a three-minute-long survey of random, anonymous internet users to model the complicated, lengthy process of selecting a college; (2) it is neither reliable nor relevant because it ignores USC's "willingness to sell" (overlapping the arguments below); and (3) it is riddled with so many fundamental errors that the confusion and prejudice it would cause substantially outweighs any probative relevance it might have.  USC's motion will be filed April 7, 2023 and set for hearing concurrently with the hearing on Plaintiffs' motion for class certification.

[14]  As set forth above in Section IV.A.1., contract damages are not available for class certification purposes because Plaintiffs' breach of implied contract claim is not viable due to USC's impossibility defense.

Cooley LLP
Attorneys At Law
San Diego

15.

**Defendants' Opposition to Plaintiffs'
Motion for Class Certification
Case No. 2:20-cv-4066-DMG-PVC**

business practices." *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *5 (C.D. Cal. Feb. 2, 2016) (internal quotations and citation omitted), *followed by Dunn v. Costco Wholesale Corp.*, 2021 WL 4205620, at *6 (C.D. Cal. July 30, 2021) (denying certification where proposed conjoint failed to consider true market price).

Plaintiffs therefore must establish what the "true market price" is—what the tuition and fees to attend USC would have been—had they and class members (and USC) known approximately half the Spring 2020 semester would be conducted remotely due to COVID-19. *See Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (holding restitution requires showing of "the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices"). The true market price must be at "*both* a consumer's willingness to pay *and* a merchant's willingness to sell, when *neither* are under any compulsion to do so." *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 240-41 (S.D.N.Y. 2019) (reviewing California law) (emphasis in original).

Where an expert's conjoint study attempts to quantify restitution, it is not enough to just measure the consumers' view of a price. Instead, the conjoint "must . . . reflect supply-side considerations and marketplace realities that would affect product pricing." *Zakaria*, 755 F. App'x at 624-25 ("the subjective value consumers place on the 1st and Only Seal does not set the price for Good Start Gentle"). This rule demarks a bright line for proof of a restitution claim: "[N]o case [has held] that a consumer may recover based on consumers' willingness to pay irrespective of what would happen in a functioning market (i.e. what could be called sellers' willingness to sell)." *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) (reviewing conjoint offered to measure restitution and denying class certification under *Comcast*).

**Singer Ignored USC's Willingness to Sell.** Here, Singer failed to model restitution as defined by California law because his model does not ask whether USC was willing to lower tuition for remote instruction. Clearly, USC was not.

Singer saw his "assignment" as modeling "the diminution and value of services

received" based the ***students'*** perspective—that is, "how much of a discount would they demand off their net payments to USC." (Singer Depo., 57:4-13, 67:16-25, 94:18-95:2, 95:24-25, 159:2-9.) In other words, he only modeled customers' "willingness-to-pay" ("WTP"). He did not measure USC's "willingness-to-sell." (Wilcox, ¶ 15.)[15]

Instead, Singer *assumed* USC would have to lower tuition because a change in demand-side WTP forces a lower price in an efficient market. Where the price is set at the intersection of a supply and demand (that is, a "market clearing price"), a shift in WTP will cause a change in market price because the supplier will have to adjust to the changed demand. (Wilcox, ¶¶ 66, 69 & n.108 (stating in efficient market, change in buyer's WPT applies to "last person willing to enter the market" and forces seller to adjust market price due to marginal cost of producing the last product) (citing Singer, ¶ 47 (describing his model is "at the intersection of the supply and demand curves")).)

Singer's model therefore is not a fit for this case because higher education is ***not*** an efficient market and USC's tuition is ***not*** set at the market-clearing price or at the students' WTP price.[16] (Wilcox, ¶¶ 20, 30, 65; Hansen Reb., ¶¶ 12, 36, 57.) Instead, USC sets tuition far ***below*** the intersection of supply and demand—so that USC can be selective as to whom it accepts. (Wilcox, ¶¶ 20, 30, 66-67.) The fact that USC accepts only 15% of applications demonstrates that demand is far higher than supply (that is, more applicants than the number of available spots in the class). (*Id.*, ¶ 66, n.98, n.99 & ¶ 67, n.100.) ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (Wilcox, ¶ 71 & n.118; Hansen, ¶¶ 59-64.) To the extent students

---

[15] Singer readily admits he did not "simulate a but-for price" because "[t]hat's not what I'm trying to get at." (Singer Depo., 161:10-11.) To the contrary, he thought, "I don't know . . . ***if we need them [USC] . . . to accept a lower price***," which he felt was a "purely academic exercise" because all that mattered, he believed, was "the value of services received ***from the perspective of students***." (*Id.*, 251:14-23 (emphases added); *accord id.*, 250:20-21 ("I don't have to simulate a but-for price.").)

[16] Singer admits USC does not function like a supplier in an efficient market. (Singer Depo., 164:10-18 (USC is "very different from, say, a widget maker who incurs a marginal cost for each last widget made"); Hansen Reb., ¶¶ 78-79 (citing Singer, ¶¶ 76, 80, where Singer effectively admits USC "does not function like a traditional market").)

in the marketplace refuse to pay USC's unchanged tuition rate, USC would replace those students with others who were willing to do so.[17]  (Wilcox, ¶ 67); *Saavedra*, 2014 WL 7338930, at *5 (denying class certification for restitution claim where conjoint only considered consumers' WTP, because prescription drug market was not "efficient" so change in "value" to consumer was not a reliable measure for true market value).

Plaintiffs cannot slough off Singer's error as immaterial; the unrebutted evidence is that USC was ***not*** willing to lower tuition for remote instruction.  For Spring 2020, USC charged the same level of tuition for its online degree programs as it did for programs that pre-pandemic had historically been conducted in-person. (Hansen, ¶¶ 29-31.)  For Fall 2020, all students understood the entire semester would be remote, yet USC did not lower tuition at all (in fact, USC increased tuition by 3.5%).  (Hansen, ¶¶ 52-53; Wilcox, ¶ 67; Hansen Reb., ¶ 40.)   Enrollment levels in Fall 2020 were constant or higher than earlier semesters.  (Hansen, ¶¶ 53-54; Wilcox, ¶ 58; Hansen Reb., ¶¶ 39-47.)  These undeniable facts prove USC had no willingness to reduce tuition for remote modality—because, when faced with these very circumstances a few months later, it did not in fact reduce tuition.[18]  *Zakaria*, 755 F. Appx. at 625 (affirming decertification of class when "the expert's opinion did not contain any evidence that such higher price was actually paid"); *see also Michel v. Yale Univ.*, 2023 WL 1350220, at *7 (D. Conn. Jan. 30, 2023) (granting summary judgment in COVID-19 university case because plaintiffs' expert's reports, including conjoint survey, ignored "Yale has assessed the value of its in-person and online offerings prior to the pandemic and opted to charge students an identical fee for either mode of instruction").

---

[17]  Singer admits he has no idea if USC receives applications from more qualified students than available slots. (Singer Depo., 250:5-11.)  Thus, he cannot have any opinion on whether USC has any incentive to change the tuition rate in the event the number of applications decline.

[18]  Singer argues that in Fall 2020 students were "under duress" and a "dependency" by then that made them "immobile and I think beholden to USC." (Singer Depo., 242:20-243:3.)  But his study offers no data to support his abject rejection of the real world. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Cooley LLP
Attorneys At Law
San Diego

18.

Defendants' Opposition to Plaintiffs'
Motion for Class Certification
Case No. 2:20-cv-4066-DMG-PVC

Courts repeatedly deny certification for restitution claims where plaintiffs' conjoints fail to model defendants' willingness to sell. *See, e.g.*, *Zakaria*, 755 F. App'x at 625-26 (affirming decertification where conjoint analysis did not consider supply-side considerations and marketplace realities); *Morales v. Kraft Foods Grp., Inc.*, 2017 WL 2598556, at *24-26 (C.D. Cal. June 9, 2017) (finding conjoint "measured how much consumers value that label" but not "the market value of the Product" without the label); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015) (finding conjoint analysis "focuse[d] solely on the consumer's subjective valuation"); *Saavedra*, 2014 WL 7338930, at *5-7 (proposed conjoint failed to consider willingness to sell). Plaintiffs' motion cannot survive this authority.

**Singer Discussed Supply, Not Price.** Singer paid lip service to irrelevant supply-side factors. (*See* Singer ¶¶ 72-86.) But "merely including a section titled 'Consideration of the Supply Side' in an expert report . . . does not cut it if the analysis reflected in that expert report does not actually include meaningful consideration of supply-side factors." *In re Gen. Motors*, 407 F. Supp. 3d at 239. ████████████████ ████████████████████████████████████████ (Singer Depo., 160:17-21, 163:13-24.) ████████ ████████████████████████ (Hansen Reb., ¶ 80.) But this case is about the tuition rate (price), not the number of students (supply). Singer ***never once mentions*** USC's "willingness to sell" at a lower tuition in his report. ***And he ignores USC charging the same tuition for online degree programs in Spring 2020 and the Fall 2020 tuition increase***, characterizing them as irrelevant in his rebuttal report to Hansen's opening report. (*See* Rebuttal Report of Hal. J. Singer, Ph.D., Jan. 18, 2023 ("Singer Reb.") (attached as Ex. 18 to Norton Decl.), ¶¶ 5-9, 15-17.)

### 2. Plaintiffs' expert did not account for COVID-19.

Plaintiffs' expert admitted his survey "intentional[ly] . . . did not account for the presence of COVID-19 in the spring of 2020." (Singer Depo., 123:4-8.) Survey respondents were told that ***COVID-19 risks were the same for all options***. (Wilcox,

Cooley LLP
Attorneys At Law
San Diego

19.

Defendants' Opposition to Plaintiffs'
Motion for Class Certification
Case No. 2:20-cv-4066-DMG-PVC

¶ 75.)  Singer explained that he was trying to replicate the mindset of students when registering for the Spring 2020 semester.  (Singer Depo., 243:21-244:3.)  His *post hoc* valuation thus fails to measure the value students would have put on studying safely at home compared to risking exposure going to campus.

Because Plaintiffs' recovery model fails to account for COVID-19, it is "uninformative in understanding what students' preferences for remote education would have been" and thus unreliable.  (Wilcox, ¶¶ 22, 73, 77; *accord* Hansen Reb., ¶¶ 28, 38.)[19]  Courts reject conjoints in COVID-19 university cases that ignore the importance of avoiding COVID-19.  *See Duke v. Ohio Univ.*, 204 N.E.3d 752, 762-63 (Ohio Ct. App. 2022) (summarizing prior holding that conjoint could not possibly determine injury to class members without "considering the effect of the pandemic") (internal quotations and citations omitted); *accord Waitt v. Kent State Univ.*, 2022 WL 17986762, at *8 (Ohio Ct. App. Dec. 29, 2022).  The Court should likewise do so here.

### 3.    Plaintiffs' expert fails to model other critical facts.

Singer's conjoint survey does not model the facts of the case and Plaintiffs' restitution theories fail for numerous other reasons.

First, Singer failed to model the ultimate purpose of his testimony: the value of *half* a semester in-person and *half* a semester remote.  Instead, his conjoint measured a full semester on campus versus a full semester online.  His survey thus ignored that USC students benefitted from being in person for the first half of the semester.  (Wilcox, ¶¶ 25, 85-87 ("[T]he fact that the first half of Spring 2020 was available in person meant that students would have had a chance to make in-person connections with course instructors, fellow classmates, and broader faculty and staff."); Hansen Reb., ¶ 25.)  These benefits could affect students' valuation of being remote the latter half.

---

[19] To truly model USC students' valuations at the time of registering for classes, they would have had to know their options were between (1) ***safer-at-home*** remote education versus (2) ***highly risky*** in-person education, during a forthcoming, dangerously infectious pandemic for which, at the time, no vaccine yet existed. Continuing their education more safely at home would be an "important consideration for many USC students."  (Wilcox, ¶ 76.)

Cooley LLP
Attorneys At Law
San Diego

20.

Defendants' Opposition to Plaintiffs'
Motion for Class Certification
Case No. 2:20-cv-4066-DMG-PVC

(Wilcox, ¶ 86.)  Therefore, Singer cannot merely split the difference and assume that respondents' valuation of a fully remote semester (that after-the-fact divides in half) is the same as respondents' valuation of half a remote semester (which he did not test). (Hansen Reb., ¶ 27.)  Singer admits he cannot model the latter because "[t]here's no such thing as a partial semester offering in the real world."  (Singer Depo., 212:14-15; *accord id.*, 70:18-20 (no "real world data").)

Second, in his conjoint survey, Singer failed to accurately describe "online" instruction so that it accurately informed respondents of USC's remote education in Spring 2020.  Respondents did not know that the "online" instruction option included remote access to many available campus services, such as mental health and counseling, social events, and research and teaching resources, and that USC sent supplies such as lab materials to students' homes.  Singer wrongly instructed respondents that such services were only available through the on-campus option. (Wilcox, ¶¶ 27, 89; Hansen Reb., ¶ 21.)  Even Singer's term "online" is misleading because it suggests an online program (via recorded lectures), not a remote modality with synchronous ("streaming") instruction and live two-way interaction.  (Wilcox, ¶ 90; Hansen Reb., ¶ 19.)  What respondents were asked to value does not line up with what USC provided.

Third, respondents are so dissimilar from USC students that the conjoint survey has no probative value.  As the respondents are anonymous, Singer has no idea if they have preference for (or aversion to) USC or California, and no known understanding of USC's programs or competitive advantages.  Singer cannot even know if they would be accepted by USC.  Because 25% of USC's student body are international students, it is unknown if Singer's domestic survey accurately models their WTP.[20]

Fourth, Singer's conjoint ignores the critical roles of USC's financial aid and of students' parents that would dramatically affect students' university attendance decisions.  But "financial aid offers vary widely across schools for any given individual." (Wilcox, ¶ 55.)  Also, Singer concedes that he did not model the input

---

[20] Plaintiffs lack evidence of how international students would value USC's services.

CooLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

parents have in college decisions.  (Singer Depo., 135:6-9.)  This despite the fact that one of the two articles Singer cites where he claims conjoints were used to measure student valuation of aspects of their college education found that 78.7% of respondents reported their educational expenses were paid to some degree by their families.[21]

A conjoint study is reliable only if it models the purchase decision-making process—which necessarily means "it is critical for survey respondents to be representative of the actual purchase decision makers" or else the results will "distort the valuation of attributes." (Wilcox, ¶¶ 50, 54 & n.77.)  Because parents often bear the financial responsibility for tuition, students can be price *insensitive*.  (*Id.*, ¶¶ 19, 50, 52-53.)  Students who are not responsible for paying the tuition will tend to choose their slightly more-preferred option even with a huge price difference.  (*Id.*, ¶¶ 51, 53 & n.70.)  Further, USC offers generous aid that might well exceed the typical respondent's aid received, or expected to receive, from whatever institution he/she/they attended or planned to attend, and renders respondents unable to model the price sensitivity of USC students.  (*Id.*, ¶¶ 19, 29, 50; Hansen Reb., ¶¶ 68-77.)  Plaintiffs' expert report should be rejected as proof of classwide restitution.  *See In re Tobacco Cases II*, 240 Cal. App. 4th at 788 (noting conjoint survey rejected because "not based on 'real world spending behavior involving giving up one's own money'") (citation omitted).

Fifth, Plaintiffs' motion and corresponding expert report fail to identity the specific USC "fees" that are at issue.  Plaintiffs state that for the Spring 2020 semester USC "imposed uniform, mandatory fees, including a Student Health Service Fee ($366) and a Student Programming Fee ($64 and $43 for undergraduate and graduate students, respectively).  During the Spring 2020 term, many USC students paid other fees, like Laboratory Fees ($5–$500)."  (Dkt. No. 136, pp. 3-4.)  Nowhere in their motion do Plaintiffs specify which of these fees they are seeking to recover.  Singer similarly fails to identify the specific USC fees he uses in his report.  Singer defines "Fees" at issue

---

[21] Singer, ¶ 23 (citing Kelley Manley, et al., *Undergraduate Students' Willingness to Pay for Online Courses*, 45(2) JOURNAL OF EDUC. FINANCE (2019), at 238).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

by referencing various paragraphs from the FAC (Singer, ¶ 4), which largely align with Plaintiffs' motion, and then sets the "base price" for "fees" for the undergraduate survey at $470 (Singer, ¶ 43).  But adding the Student Health Service Fee ($366) and the undergraduate Student Programming Fee ($64) equals $430, *not* $470.[22]  If Singer included Laboratory Fees, he does not use the low end, high end or an average of the two, and this is not otherwise apparent from his report.  Focusing on the Student Health Service Fee ($366) and the Student Programming Fee ($64), Plaintiffs' motion and Singer's report ignore the undisputed evidence that such fees are not tied to in-person services and that students received the benefits of such fees.  (Hansen, ¶¶ 36-37, 39-40.)  Given these issues, class certification is not appropriate as to fees.

Finally, Singer's model fails to consider that students often did not pay all or part of their tuition.  To recover restitution, a plaintiff must have "an ownership interest" in the money defendant received.  *Ozeran*, 798 F. App'x at 122.  Courts in other COVID-19 university cases have dismissed claims where the student did not pay (*i.e.*, did not have an ownership interest in the funds used to pay tuition and fees).  *Patel v. Univ. of Vt. & State Agric. Coll.*, 2021 WL 3109908, at *5 (D. Vt. July 22, 2021) (holding plaintiff's claims failed where tuition paid on her behalf).  Part of USC students' financial aid packages include scholarships or grants, including those that cover the full cost of tuition or are USC provided.  (Hansen, ¶¶ 100-102; Hansen Reb., ¶¶ 65-74.)  Parents and others also pay for students' tuition, often without expectation of repayment. (*Id.*) ████████████████████ (*See supra* Section IV.A.2.)  Singer's model ignores these problems, and individual inquiries are needed to resolve them.

Given this litany of problems squaring Singer's flawed conjoint with Plaintiffs' facts, much less classwide facts, the Court should deny certification.

## C.   Plaintiffs' Claims Are Atypical of Putative Class Members' Claims.

A putative class representative must demonstrate their claims are typical of

---

[22] Singer could not explain what specific USC "fees" made up his calculation at his deposition. (Singer Depo., 220:8-221:3.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

23.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC

putative class members' claims.  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Torres*, 2019 WL 7169793, at *5 (internal quotations and citation omitted).

Plaintiffs are not typical of the class.  The most egregious example is Plaintiff Diaz.  She has no claim about being forced off USC's campus in Spring 2020 because she was in the ***semester abroad program in Italy*** and then went to Spain and Japan.[23] She is clearly atypical of on-campus students.  *See Garcia De León*, 2022 WL 2237452, at *11-13 (finding no typicality because plaintiff enrolled at NYU's satellite campus).

Also, Plaintiff Diaz's semester abroad agreement subjects her to unique defenses. She executed a contract that provided that USC "assumes no responsibility" for, among other things, "force majeure" and "public health risks" and that USC had the right to cancel or suspend the semester abroad program in circumstances where she was at risk of "physical harm or bodily injury."  (Diaz Depo., 114:4-118:2 & Ex. 93.)  USC's defense under this contract makes her atypical.  *Zhao v. CIEE Inc.*, 3 F.4th 1, 5-8 (1st Cir. 2021) (holding student's claim barred by contract with study abroad provider).

Plaintiff Gomez is another egregious example.  He feels aggrieved because, suspicious of COVID-19, he believes USC should have continued in-person education ***notwithstanding*** the California and Los Angeles orders.  (Gomez Depo., 124:8-125:7.) He also seeks ***100% restitution*** (*id.*, 130:25-131:4), which is inconsistent with Plaintiffs' expert recovery model and California law as explained above.

Finally, Plaintiffs are atypical because none have the same claim that their lawyers advance—an implied contract term for in-person education.  Instead, they advocate a prohibited educational malpractice claim about quality.  Plaintiffs testified they believe that the quality of education decreased when remote instruction began,

---

[23] Diaz Depo., 48:23-25, 113:14-119:24, 121:17-122:11, 131:3-6, 136:8-19 & Ex. 93.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

24.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:20-CV-4066-DMG-PVC**

grounded in complaints specific to their professors or a less immersive experience.[24]
But the educational malpractice doctrine bars any claims about supposedly inferior
quality. *In re Univ. of S. Cal.*, 2021 WL 3560783, at *3. Each Plaintiff is thus subject
to the educational malpractice defense, which is unique to them.[25]

Also, to the extent Plaintiffs seek to recover "Laboratory Fees," Plaintiffs are
atypical because none of them paid such fees. (Hansen, ¶¶ 9-14 & Attachment 4.1-4.6.)

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' motion should be denied.  To allow
Plaintiffs' counsel to wield the cudgel of a nationwide class action to demand over $75
million based on a three-minute sham survey, while labeling USC's herculean efforts
to educate and support its students in the midst of a deadly public health crisis as
"unjust" because of a forced modality change, would violate Rule 23 and be an injustice.

Dated:  April 5, 2023                      COOLEY LLP

                                           /s/ *Leo P. Norton*
                                           Leo P. Norton (216282)

                                           Attorneys for Defendants
                                           UNIVERSITY OF SOUTHERN
                                           CALIFORNIA and THE BOARD OF
                                           TRUSTEES OF THE UNIVERSITY OF
                                           SOUTHERN CALIFORNIA

---

[24] Watson Depo. 121:3-122:3 (remote not same quality), 128:18-129:8 (Zoom interactions with classmates not same or as immersive as in-person), 199:11-200:11 (quality of internship and education went down), 242:9-243:17 (remote education was lower quality); Kerendian Depo., 34:20-35:8 (professor's teaching methods not as effective remote), 36:17-38:1 (professor not tech savvy); Diaz Depo., 61:21-62:8 (lawsuit is about how quality of education was severely impacted by transition), 109:3-8 (remote learning experience not comparable to and lower quality than in-person); Choi Depo., 95:1-12 ("the quality of the education was diminished as a result of the transition"); Gomez Depo., 134:10-135:18 (remote education lower quality), 152:7-154:4 (grievances over paying more than wealthier students and living situation); Greenberg Depo., 121:8-122:2 ("much lower quality" and quality significantly deteriorated after transition), 123:3-25 (Zoom meetings are lower quality).
[25] Plaintiffs were given the option to appear in-person or remotely for their depositions, and each notably appeared remotely.  Greenberg Depo., 8:13-14, 40:14-41:2; Gomez Depo., 5:4-5, 14:17-15:3; Choi Depo., 6:7-8, 18:24-19:21; Diaz Depo., 7:11-12, 12:16-13:11; Kerendian Depo., 7:6-7, 17:4-25; Watson Depo., 8:5-6, 15:21-16:7.

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned counsel of record for Defendants certifies that the foregoing

3  memorandum of points and authorities complies with the 25-page count limit set by the

4  Court's Initial Standing Order entered in this case.  (Dkt. No. 8, p. 4.)

5

6                                        /s/ *Leo P. Norton*

7

Cooley LLP
Attorneys At Law
San Diego

26.

Defendants' Opposition to Plaintiffs'
Motion for Class Certification
Case No. 2:20-cv-4066-DMG-PVC