Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
F: (206) 623-0594

Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
T: (213) 330-7150
F: (213) 330-7152

[Additional Counsel listed on signature page]

*Interim Co-Lead Counsel and*
*Attorneys for Plaintiff J. Julia Greenberg*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | No. 2:20-cv-04066-DMG-PVC |
| | **PLAINTIFFS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| | Date:     May 19, 2023 |
| | Time:     9:30 a.m. |
| | Courtroom: 8C |
| | Action filed:  May 7, 2020 |
| | Consolidated: July 17, 2020 |
| | Trial Date:  January 9, 2024 |
| | Time:     8:30 a.m. |
| | Courtroom: 8C |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   ANALYSIS ....................................................................................................... 1

    A.    Multiple Rule 23 elements are uncontested. ............................................ 1

    B.    The elements of Plaintiffs' claims are amenable to classwide proof....... 2

        1.    USC's uniform conduct was common to all class members. ........ 2

        2.    Quasi-contract claims are appropriate for certification as they require common proof of USC's conduct..................................... 3

        3.    UCL unfairness claims focus on USC's conduct and its decision to keep 100% of the tuition and fees for services not delivered.................................................................................... 6

    C.    Common issues predominate regarding the damages from USC's uniform decision to shift all in-person courses and programs online...... 7

    D.    Plaintiffs are typical as their claims arise from the same course of events: USC's transition to remote learning and decision to keep 100% of the tuition payments. ................................................... 13

III.   CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arredondo v. Univ. of La Verne*,
341 F.R.D. 47 (C.D. Cal. 2022)..............................................................7, 8, 12

*Arredondo v. Univ. of La Verne*,
2022 WL 3222376 (C.D. Cal. Aug. 2, 2022) ......................................................5

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................5

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014), *abrogated by Microsoft Corp. v. Baker*,
582 U.S. 23, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017) ...................................4

*Botts v. Johns Hopkins Univ.*,
2021 WL 1561520 (D. Md. Apr. 21, 2021) .........................................................6

*Brickman v. Fitbit, Inc.*,
2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .....................................................6

*Chowning v. Kohl's Department Stores, Inc.*,
735 F. App'x. 924 (9th Cir. 2018)........................................................................8

*Collinge v. IntelliQuick Delivery, Inc.*,
2015 WL 1292444 (D. Ariz. Mar. 23, 2015) .......................................................4

*Eddlemon v. Bradley Univ.*,
2023 WL 2904685 (7th Cir. Apr. 12, 2023).........................................................3

*Elias v. Ungar's Food Products, Inc.*,
252 F.R.D. 233 (D.N.J. 2008) ...........................................................................15

*Ferguson v. Smith*,
2020 WL 5731821 (D. Or. Aug. 12, 2020) ........................................................13

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018) ......................................................................10

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)......................................................15

-ii-

*Garcia De Leon v. N.Y. Univ.*,
　2022 WL 2237452 (S.D.N.Y. June 22, 2022).................................................4

*Garland v. W. Mich. Univ.*,
　2021 WL 305744 (Mich. Ct. Cl. Jan. 06, 2021)..........................................14

*Hilsley v. Ocean Spray Cranberries, Inc.*,
　2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)................................................7

*Jones v. Adm'rs of Tulane Educ. Fund*,
　51 F.4th 101 (5th Cir. 2022) ......................................................................14

*In re Lenovo Adware Litigation*,
　2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .............................................10

*Little v. Grand Canyon Univ.*,
　2022 WL 266726 (D. Ariz. Jan. 28, 2022)...................................................4

*In re Myford Touch Consumer Litig.*,
　291 F. Supp. 3d 936 (N.D. Cal. 2018) .......................................................10

*Nguyen v. Stephens Inst.*,
　529 F. Supp. 3d 1047 (N.D. Cal. 2021) .......................................................2

*Ninivaggi v. Univ. of Delaware*,
　2023 WL 2734343 (D. Del. Mar. 31, 2023)..........................................*passim*

*Patel v. Univ. of Vt. & State Agric. Coll.*,
　2021 WL 3109908 (D. Vt. July 22, 2021)...................................................12

*In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*,
　2023 WL 2576766 (C.D. Cal. Mar. 7, 2023) ........................................3, 6, 14

*Pulaski & Middleman, LLC v. Google, Inc.*,
　802 F.3d 979 (9th Cir. 2015) ...................................................................6, 11

*Raiser v. Ventura Coll. of Law*,
　488 F. App'x 219 (9th Cir. 2012)................................................................8

*In re Ratliff*,
　490 F. App'x 896 (9th Cir. 2012).................................................................11

*Requa v. Regents of Univ. of Cal.*,
　213 Cal. App. 4th 213 (2012) ......................................................................2

-iii-

*Saavedra v. Eli Lilly & Co.*,
   2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)....................................................8, 9

*Spann v. J.C. Penney Corp.*,
   307 F.R.D. 508 (C.D. Cal. 2015) .........................................................................6

*Thurston v. Bear Naked, Inc.*,
   2013 WL 5664985 (S.D. Cal. July 30, 2013) .......................................................5

*In re Tobacco II Cases*,
   46 Cal. 4th 298, 207 P.3d 20 (2009) ...................................................................6

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .........................................................................................12

*United States v. Packwood*,
   687 F. Supp. 471 (N.D. Cal. 1987), *aff'd*, 848 F.2d 1009 (9th Cir.
   1988) ................................................................................................................11

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*,
   2021 WL 3560783 (C.D. Cal. Aug. 6, 2021) ..................................................1, 13

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ...........................................................................4

*Victorino v. FCA US LLC*,
   2022 WL 3691642 (S.D. Cal. Aug. 25, 2022)......................................................11

*Williams v. Apple, Inc.*,
   338 F.R.D. 629 (N.D. Cal. 2021) .........................................................................9

**Statutes**

**Other Authorities**

22 Am. Jur. 2d Damages § 724 (2013) ......................................................................13

Cal. Civ. Code § 1514...................................................................................................8

Cal. Civ. Code § 1621...................................................................................................2

Cal. Civ. Code § 3360...................................................................................................8

Fed. R. Civ. P. 23 .....................................................................................................1, 4

-iv-

Fed. R. Civ. P. 23(a)(1)'s ........................................................................... 1

Fed. R. Civ. P. 23(a)(4)'s ........................................................................... 1

Fed. R. Civ. P. 23(b)(3) ............................................................................. 1

Fed. R. Evid. 403 ....................................................................................... 7

Fed. R. Evid. 702 ....................................................................................... 7

Restatement (Third) of Restitution § 34, illus. 10 .................................. 11

## I.      INTRODUCTION

Notwithstanding Defendant University of Southern California's arguments otherwise, class certification is appropriate under the law and facts of this case. To start, many of the Rule 23 inquiries are undisputed as USC focuses its analysis only on three: commonality, predominance, and typicality. Yet, the elements of Plaintiffs' claims are amenable to classwide proof, an unsurprising outcome given the common conduct at issue in this case. Plaintiffs' implied contract, quasi-contract, and UCL unfairness claims all involve predominant common questions of law and fact. USC's attacks on Plaintiffs' damages methodology likewise fail because Plaintiffs have demonstrated that damages and restitution are capable of measurement on a classwide basis. Further, damages calculation issues cannot alone defeat class certification. And while USC attempts to raise various nits in its effort to paint Plaintiffs as atypical, such efforts fail in a case arising out of USC's transition of all in-person students to online education and its uniform decision to keep 100% of the students' pre-paid tuition. Plaintiffs respectfully reassert their request that the Court grant their motion for class certification.

## II.      ANALYSIS

### A.      Multiple Rule 23 elements are uncontested.

Focusing exclusively on commonality, predominance, and typicality, USC's opposition is silent on several Rule 23 requirements raised in Plaintiffs' opening brief. These include: (1) Rule 23(a)(1)'s numerosity prerequisite (*see* ECF 144 at 13), (2) Rule 23(a)(4)'s adequacy prerequisite (*see id.* at 15), and (3) Rule 23(b)(3)'s superiority requirement (along with the matters pertinent to such a finding under Rule 23(b)(3)(A)–(D)) (*see id.* at 23). USC waived any arguments in opposition. *See In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*, No. 2:20-cv-04066-DMG-PVCx, 2021 WL 3560783, at *6 (C.D. Cal. Aug. 6, 2021) (noting that the "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation and quotation omitted).

-1-

**B.** **The elements of Plaintiffs' claims are amenable to classwide proof.**

**1.** **USC's uniform conduct was common to all class members.**

USC contends that Plaintiffs cannot show that every class member had the same contract formation experience on which to imply a contract term for in-person education. Opp. at 9. An identical contract formation experience is not required; what is required is common relevant conduct resulting in common contractual elements. USC's argument offered by another university did not sway the court in *Ninvaggi v. University of Delaware* and it should not sway this Court either. There, the court reviewed the university's argument that "plaintiffs must show that each student thought that U. Delaware had impliedly promised in-person classes" which it contended "would require a student-by-student inquiry" preventing class certification. *Ninivaggi v. Univ. of Delaware*, No. 20-CV-1478-SB, 2023 WL 2734343, at *7 (D. Del. Mar. 31, 2023). However, certifying the class the court disagreed, citing the parties' conduct:

> I agree with plaintiffs that the existence of an implied contractual term about in-person learning is subject to class-wide proof. The conduct necessary to show that in-person education was part of the bargain will be the same for all class members. For example, plaintiffs might show that all class members enrolled in U. Delaware's in-person program (rather than one of its separate online programs) and attended classes in person for the first half of spring 2020. Such major actions are enough to show an implied contractual term. The minor individualized questions U. Delaware emphasizes, like whether each student saw the website, would not move the needle. So I can address the existence of a term about in-person learning for the whole class.

*Id*. This approach comports with California law. *See also* Cal. Civ. Code § 1621 (Deering) ("An implied contract is one, the existence and terms of which are manifested by conduct."); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1054 (N.D. Cal. 2021) (noting "custom and usages can also become specific terms by implications"); *Requa v. Regents of Univ. of Cal.*, 213 Cal. App. 4th 213, 229 (2012) ("[T]he uninterrupted provision of University-sponsored group health benefits from Retirees' retirement dates

through 2007, create an implied contract to provide Retirees with University-sponsored group health benefits throughout the period of their retirement.").[1]

It cannot be seriously argued that students engaged in individual negotiation with USC concerning USC's educational offerings. The USC Bulletin, Catalogue, and webpages—the very documents from which the presence of an implied-in-fact contract would be discerned, are all uniform documents whose content did not vary from student to student. Moreover, USC charged all full-time undergraduates and all full-time graduate students the same tuition, further confirming the common nature of any agreement concerning the education USC was to provide. Common questions predominate for Plaintiffs' breach of contract claim.

### 2. Quasi-contract claims are appropriate for certification as they require common proof of USC's conduct.

Next, USC asserts that Plaintiffs' quasi-contract claim requires individual determinations. Opp. at 10. But here, too common questions predominate as there "is no question that [USC] has received a benefit (Plaintiffs' tuition)" and Plaintiffs present common evidence that a trier of fact could use to "reasonably find that the existence of a promise to provide in-person classes and activities that were not in fact provided would render retention of that full benefit unjust." *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, No. 2:20-cv-04928-DMG (KSx), 2023 WL 2576766, at *6 (C.D. Cal. Mar. 7, 2023).

---

[1] Via a notice of supplemental authority (ECF 153), USC cites *Eddlemon v. Bradley Univ.*, No. 22-2560, 2023 WL 2904685, at *1 (7th Cir. Apr. 12, 2023). That opinion, however, undermines USC's arguments regarding the sufficiency of Plaintiffs' proof of common questions predominating. *See id.* at *4 ("Bradley acknowledges that Eddlemon submitted the 2020 Academic Catalog and the Student Activities Budget Review Committee Articles as support for the alleged contract between Bradley and its students but argues that these documents cannot prove the existence of a contract. However, any attempt to cast doubt upon the sufficiency of these documents to prove the alleged contractual promises goes to the merits of Eddlemon's claims, not to whether common questions exist and predominate. . . . So, the district court did not err by rejecting Bradley's arguments regarding the sufficiency of Eddlemon's evidence.").

Still, highlighting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), USC argues that "courts recognize that such a claim is generally not suitable for class treatment." Opp. at 10.[2] But critical to *Vega* was the court's finding there was "no evidence that the circumstances under which T–Mobile accepted a benefit from each of the putative class members . . . were common." *Vega*, 564 F.3d at 1275.[3] Here, however, Plaintiffs provide just that: a common set of circumstances for all class members. USC charged Plaintiffs and class members millions of dollars in tuition and fees at the start of the Spring 2020 term and provided an in-person, on-campus experience from the start of the semester until it switched all in-person courses to online formats. All the while, USC kept the full amount of Plaintiffs' and class members' tuition payments and maintained a uniform, no-refund policy.

Under the facts here, neither *Vega* nor its progeny bars class certification. As illustrated in *Usry v. EquityExperts.org, LLC*, in which the court certified an unjust enrichment class after evaluating Rule 23 predominance post-*Vega*:

> The Court understands the Eleventh Circuit's reasoning and proceeds with certification with caution. Here, however, Plaintiffs argue, with evidence that Defendant Equity Experts's collection efforts were on "autopilot," that Defendant Equity Experts's "business operations are the same

---

[2] USC cites *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-cv-00824, 2015 WL 1292444, at *13–14 (D. Ariz. Mar. 23, 2015), which relied on *Vega. See id.* at *14 n.150. So did *Little v. Grand Canyon Univ.*, No. CV-20-000795-PHX-SMB, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022). *Garcia De Leon v. N.Y. Univ.*, No. 21 CIV 05005 (CM), 2022 WL 2237452, at *17 (S.D.N.Y. June 22, 2022), provides no analysis of unjust enrichment regarding predominance or otherwise.

[3] This defect also rests within USC's citation to the unjust enrichment (not quasi-contract) decision in *Berger v. Home Depot USC, Inc.*, which involved a "surcharge for a damage waiver on tool rentals in its California stores, and although that fee was to be optional," Home Depot allegedly failed to inform customers of their ability to decline the surcharge in violation of various laws, including unjust enrichment law. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1064 (9th Cir. 2014), *abrogated by Microsoft Corp. v. Baker*, 582 U.S. 23, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017). But Home Depot opposed class certification on grounds that "customers are told of the optional nature of the waiver in three ways: 1) by the sales associate, 2) by signs posted in Home Depot stores, and 3) by the language of the final sales contract." *Id.* at 1066. Thus, whether the conduct was unjust depended on the answer to the question of "whether Home Depot told its tool rental customers that the waiver was an optional product." *Id.* at 1070. Unlike in *Berger*, USC's conduct was the same to all members of the putative class.

> to all members of the putative class." *Muzuco*, 297 F.R.D. at
> 521. To the extent Defendant Equity Experts engaged in a
> common practice of charging and accepting amounts not
> permitted, predominance is satisfied.

*Id.* at *12. So too here where USC similarly engaged in a common course of conduct as to all class members. Thus, contrary to USC's position that courts routinely decline to certify quasi-contract claims, Opp. at 11, "quasi-contract claims ***are*** appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (emphasis added); *Thurston v. Bear Naked, Inc.*, No. 3:11-CV-2985-H-BGS, 2013 WL 5664985, at *9 (S.D. Cal. July 30, 2013) (same) *See also Arredondo v. Univ. of La Verne*, No. 2:20-cv-07665-MCS-RAO, 2022 WL 3222376, at *6 (C.D. Cal. Aug. 2, 2022) (explaining in certified class action that plaintiff "may proceed on a quasi-contract claim for restitution"); *Ninivaggi*, 2023 WL 2734343, at *7 ("Plaintiffs claim breach of contract and unjust enrichment. Common questions predominate for both.").[4] Quasi-contract claims remain appropriate for class certification if the Court finds USC's performance was excused by state and local orders. *Arredondo*, 2022 WL 3222376, at *6.

Nor do USC's various 'throw mud on the wall to see what sticks' arguments preclude certification (Opp. at 11 (i)–(viii)), particularly where USC fails to cite any law explaining how any arguments means class certification would be inappropriate here. These arguments fail for a variety of reasons:

- For Opp. 12 (i) & (ii), Plaintiffs are not experts on the sources of contractual obligations and USC's reliance on the USC Catalogue's disclaimer confirms common issues because that document will apply classwide. USC's references to the different ways it described its on-campus educational experiences at best are "minor individualized questions." *Ninivaggi*, 2023 WL 2734343, at *7.

- Materiality of remote education does not matter under California quasi-contract law. Opp. at 12 (iii). *See Brickman v. Fitbit, Inc.*, No. 3:15-cv-02077-JD, 2017

---

[4] USC argues reliance on *Ninivaggi* would be misplaced because it's outside the Ninth Circuit. Opp. at 13 n.12. Yet, USC cites at least ten cases outside the Ninth Circuit in its opposition brief and fails to demonstrate how *Ninivaggi* is inconsistent with Ninth Circuit or California law. It is not and is consistent with the *Arredondo* decision.

WL 5569827, at *6 (N.D. Cal. Nov. 20, 2017) (certifying class under California law: "Fitbit next says that individualized issues of reliance and materiality predominate on all claims. But individual reliance is not required for the California UCL, the Florida DUTPA, or either state's quasi-contract/unjust enrichment claims.").

- Plaintiff Diaz was not "off campus," she was still enrolled in an in-person USC program. Opp. at 12 (iv).

- Personal levels of risk tolerance are irrelevant, not only because none of the elements of breach of contract or quasi-contract demand such an inquiry, but also because USC converted all in-person classes to online ones and refused to provide any refunds, regardless of individual students' willingness to accept risks of COVID-19. *See generally* Opp. II.A.

- USC's spending to help with remote education provides further classwide evidence that the parties bargained for in-person instruction and experiences. Moreover, restitution looks to the impact on the Plaintiff, not the defendant as it "must be of a measurable amount *to restore to the plaintiff* what has been acquired by violations of the statutes." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (emphasis added). *See also Botts v. Johns Hopkins Univ.*, 2021 WL 1561520, at *12 (D. Md. Apr. 21, 2021) ("Nor is it appropriate to consider the costs incurred by JHU to shift to online teaching.").

Common questions predominate for Plaintiffs' quasi-contract claim.

### 3. UCL unfairness claims focus on USC's conduct and its decision to keep 100% of the tuition and fees for services not delivered.

As to Plaintiffs' UCL claims, USC reasserts the arguments offered for the quasi-contract claims, contending "the same individual determinations identified above must be made for their UCL unfair prong claim." Opp. at 14. This is wrong. UCL claims focus on Defendants' conduct. USC's effort to import new statutory elements fails. The UCL prohibits "unfair competition," "defined as 'any unlawful, unfair, or fraudulent business act or practice.'" *In re Pepperdine*, 2023 WL 2576766, at *6 (quoting Cal. Bus. & Prof. Code § 17200). An "unfair" business practice "is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* Because "the focus of the statute is on the defendant's conduct," *In re Tobacco II Cases*, 46 Cal. 4th 298, 324, 207 P.3d 20, 38 (2009), and "relief under the UCL is available without individualized proof of deception, reliance, and injury," *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 521 (C.D. Cal. 2015), the UCL is a cause of action which is "amenable to class actions." *Hilsley*

-6-

*v. Ocean Spray Cranberries, Inc.*, No. 17-cv-2335-GPC(MDD), 2018 WL 6300479, at
*11 (S.D. Cal. Nov. 29, 2018). Defendants' conduct, i.e., USC's decision to keep 100%
of Plaintiffs' tuition and fees paid for the Spring 2020 semester was uniform as to all
class members. Under the UCL, the fairness of that uniform conduct must be weighed
against the financial harm Plaintiffs suffered in receiving something other than what
they paid for—in-person instruction and services/amenities attendant to a physical
campus. This weighing (and USC's defenses to the same) can be performed class-wide
using common evidence. Accordingly, USC's efforts to require individualized proof
must be rejected.

**C.    Common issues predominate regarding the damages from USC's uniform
decision to shift all in-person courses and programs online.**

Defendants also attack predominance by contending that Plaintiffs' model
contradicts their liability case and fails *Comcast*. But these arguments largely duplicate
those raised in Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Witness
Under Fed. R. Evid. 403 & 702. For the reasons provided in Plaintiffs' opposition
thereto, *see generally* Pls.' Opp. Mot. Strike [ECF 175], these arguments fail. Plaintiffs
have shown that the required valuation of online education can be done classwide. *See
Ninivaggi*, 2023 WL 2734343, at *9 ("U. Delaware says that the value of the services it
provided also requires individualized proof. It does not. The fair market value of an
online education does not vary by student."). Indeed, "[r]egardless of the correct market
value of online classes at [USC], the value is capable of classwide calculation."
*Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 53 (C.D. Cal. 2022). The value of USC's
pre-COVID in-person and post-COVID online services is uniform, as *Ninivaggi* found:

> The fair market value of an online education does not vary by student.
> U. Delaware protests that some students got better grades in spring
> 2020 than any other semester. But that does not change the value of the
> education they received. Just as the fair market value of an in-person
> education does not differ depending on whether an individual student
> got straight As or straight Cs, so too with the value of an online
> education. Nor does it vary by how many clubs the student joins, how
> often the student uses the career services office, or how many times the
> student ends up in the university health center. **These services are**

-7-

**available to all students for the same fixed price. And though students may make more or less (or better or worse) use of them, that does not change their fair market value.**

*Ninnivagi*, 2023 WL 2734343, at *9 (emphasis added).

Even more basic, USC's disputes regarding the *extent* of damages does not mean class certification should be denied. While "'plaintiffs must show that damages are capable of measurement on a classwide basis,' [] damages calculation issues cannot alone defeat class certification." *Arredondo*, 341 F.R.D. at 53 (quoting *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017)). This conclusion is appropriate where, "under California law, inability to show actual damages does not preclude recovery for breach of contract." *Raiser v. Ventura Coll. of Law*, 488 F. App'x 219, 222 (9th Cir. 2012). *See also* Cal. Civ. Code § 3360 (Deering) ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.").

USC also claims Dr. Singer did not model restitution. Opp. at 15. But Dr. Singer did just that, as the benefit-of-the-bargain damages and restitution are the same measure in the context of this case. Both measures look to what Plaintiffs and the class paid versus the value of what they received. *Compare Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *4 (C.D. Cal. Dec. 18, 2014) ("[T]he typical benefit-of-the bargain claim relies on a difference in fair market value (i.e. the amount that a willing buyer and willing seller would both accept) between the product as represented and the product actually received.") *with Chowning v. Kohl's Department Stores, Inc.*, 735 F. App'x. 924, 925 (9th Cir. 2018) ("Under California law, where a plaintiff obtains value from the product, the proper measure of restitution is 'the difference between what the plaintiff paid and the value of what the plaintiff received.'") (citation omitted). California Civil Code § 1514 ("If performance of an obligation is prevented by any cause excusing performance, other than the act of the [plaintiff], the [defendant] is entitled to a ratable proportion of the consideration to which he would have been entitled upon full performance, according to the benefit which the [defendant]

receives from the actual performance."). This is what Dr. Singer measured.[5] *See also* Pls.' Opp. Mot. Strike at § II (describing Dr. Singer's work).

Third, USC attacks Dr. Singer for purportedly ignoring USC's "willingness to sell." Opp. at 16. But this argument misstates the applicable law as considering supply-side factors to figure out "true market price" is not shorthand for looking at whether USC was subjectively willing to lower its price. For breach of contract damages, Plaintiffs need not consider willingness to sell at all; focus is on the value to the injured party himself. *See, e.g.*, *Williams v. Apple, Inc.*, 338 F.R.D. 629, 654 (N.D. Cal. 2021) ("To measure contract damages, Plaintiffs need not hypothesize Apple's willingness to supply iCloud in a 'but-for world' where the iCloud Agreement lacks the disputed language. . . . Rather, where "defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between [1] the value that the performance would have had if there had been no breach and [2] the value of such performance as was actually rendered. In principle, this requires a determination of the values of those performances to the injured party himself and not their values to some hypothetical reasonable person or on some market."). *See* Pls.' Opp. Mot. Strike at § IV.A.4 (discussing supply side considerations).

Fourth, regarding the argument where Dr. Singer discussed supply, not price, Opp. at 19, this too does not prevent certification. Dr. Singer's conjoint appropriately

---

[5] *See, e.g.*, Singer Report ECF 145 at ¶ 6 ("The purpose of this report is to quantify the difference in fair market value between the product that was sold to Class Members (i.e., the On-Campus Experience) and the product actually received by Class Members (i.e., the Online Experience) . . ."); *id.* at ¶ 7 ("I use a CBC analysis to objectively measure the difference in fair market value between the On-Campus Experience and the Online Experience, i.e., the difference between what Plaintiffs paid and the value of what Plaintiffs received."); *id.* at 9 ("I designed and employed a CBC survey that determined the difference in value (in unitless 'utils') between an On-Campus Experience and an Online Experience at USC."); *id.* at 10 ("I calculate aggregate damages to the Class (the difference between what Class Members paid and the value of what they received) under two methods. . . ."); *id.* at ¶ 28 ("I demonstrate how this reduction in value can be translated into fair market value, which can be used to calculate both in the aggregate and on an individual basis, the difference between what Class Members paid and the value of what they actually received.").

accounted for supply-side factors to determine the true market price. *See, e.g.*, *In re Lenovo Adware Litigation*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (finding that proposed conjoint adequately "ensure[d] that the results would 'reflect the market'"—and not just demand-side willingness-to-pay—by (1) incorporating the market "'pric[es] of the [products] at issue [and of] comparable [products]'" into the survey; and (2) holding quantity constant "because all sales of the [products] at issue have occurred in the past.") (internal citations omitted); *In re Myford Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969–71 (N.D. Cal. 2018) (approving proposed conjoint analysis, finding that it adequately accounted for supply-side factors "by assuming that the supply—the quantity—was fixed"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 604–06 (N.D. Cal. 2018) (denying motion to exclude conjoint which used fixed historical supply and past market prices as the basis for prices in the survey, and provided a "no buy" option, concluding that "plaintiffs calculated the price premium consumers paid . . . and not just a theoretical willingness to pay."). *See* Pls.' Opp. Mot. Strike at § IV.A.4.a.

Fifth, USC's attacks on whether COVID-19 should be accounted for in any valuation effort also lack a legal basis. Opp. at 19. Importantly, Plaintiffs and the class registered and paid their net tuition and fees for the On-Campus Experience for Spring 2020 *up front*, before knowing COVID's effects. No rational student would pay the same amount for an On-Campus Experience with a COVID health risk—as of Spring 2020—as they would without such risk. Thus, the baseline for a restitution calculation must be the net tuition and fees students paid for the expected On-Campus Experience at the time of contracting and without the risk posed by COVID, less the value of the Online Experience at the time of contracting and without the risk posed by COVID. In other words, the relevant inquiry is the value of the Online Experience in the absence of COVID, seeing as Plaintiffs and class members paid their tuition and fees for an On-Campus Experience in such conditions. Whether it is true, as USC suggests (without

-10-

any factual basis), that the Online Experience in the presence of COVID has a greater value than the Online Experience in the absence of COVID is simply immaterial. *See, e.g.*, *Pulaski & Middleman*, 802 F.3d at 989 ("[R]estitution under the UCL [] measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase."); *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB), 2022 WL 3691642, at *3 (S.D. Cal. Aug. 25, 2022) ("[U]nder the benefit of the bargain theory, the court should not consider any post-sale conduct as it is immaterial. In this case, the benefit-of-the-bargain damages should be measured at the time of sale."); *United States v. Packwood*, 687 F. Supp. 471, 474–75 (N.D. Cal. 1987), *aff'd*, 848 F.2d 1009 (9th Cir. 1988) (noting that traditional contract principles look at "the reasonable expectations of the parties at the time of contracting to discover whether a given breach has deprived them of the benefit of their bargain"); Restatement (Third) of Restitution § 34, illus. 10 ("Plaintiffs hire Banquet Hall for a wedding reception, paying the full contract price of $10,000 in advance. The reception is disrupted by a power failure 45 minutes after it begins, when the failure of air conditioning makes conditions intolerable . . . Plaintiffs are entitled to restitution by the rule of this section. Recovery is in the amount of $10,000 less the value of the goods and services provided to Plaintiffs and their guests before performance was interrupted."). USC's attempts to invoke pricing in a constrained market cannot stand. *See In re Ratliff*, 490 F. App'x 896, 898 (9th Cir. 2012) (quoting Black's Law Dictionary 1691 (9th ed. 2009) as defining "'fair market value' as '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and *in an arm's-length transaction*'") (emphasis added). *See also* Pls.' Opp. Mot. Strike at § IV.B.1 (describing how Dr. Singer's survey appropriately treated COVID).

Finally, while USC contends that Dr. Singer failed to model other purportedly critical facts, Opp. at 20, it offers no caselaw showing how such facts mean that common issues will not predominate. Instead, it relies on its expert's attacks on the weight—at

-11-

best—of Dr. Singer's damages opinions, which fail. *See generally* Pls.' Opp. Mot. Strike; *id.* at § IV.A (describing how Dr. Singer meets *Daubert* and that Defendants' attacks are meritless and go to the weight of Dr. Singer's study). The only case it cites in the entire section is *Patel v. Univ. of Vt. & State Agric. Coll.*, No. 5:20-cv-61, 2021 WL 3109908, at *5 (D. Vt. July 22, 2021), in connection with its argument that Dr. Singer's model did not consider that students do not pay all or part of their tuition. Opp. at 23. But *Patel* was a motion to dismiss decision. And courts certifying classes clarify that various aid or sources of payment serve as no bar to class certification. *Ninivaggi*, 2023 WL 2734343, at *9 ("Though U. Delaware may have gotten different amounts from different students (by giving some scholarships), these amounts are ascertainable from the school's financial records. . . . So it presents individual questions, but ones that are readily resolved."); *Arredondo*, 341 F.R.D. at 53 (finding predominance, rejecting argument that "the differences in the amounts paid by each student for tuition due to the presence of scholarships, grants, and emergency aid create individualized questions that overwhelm the common questions.").

Because Plaintiffs have "demonstrated that the damages are capable of measurement on a classwide basis when considering what damages are attributable to Defendant's allegedly harmful conduct," class certification is appropriate. *Arredondo*, 341 F.R.D. at 53. Ultimately, the persuasiveness of any difference in value "is, in general, a matter for the jury." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016) (noting that "[r]easonable minds may differ as to whether the average time [an expert] calculated is probative as to the time actually worked by each employee[,]" and directing that "[r]esolving that question, however, is the near-exclusive province of the jury."). And any monetary reductions, credits, or offsets that USC believes a damages formula should include is Defendants' burden alone. *See, e.g.*, 22 Am. Jur. 2d Damages § 724 (2013) ("Although generally the plaintiff in an action for damages has the burden of establishing the damage which resulted from . . . the defendant's breach of contract,

it is the defendant who has the burden of establishing matters asserted in mitigation or reduction of the amount of the plaintiff's damages.").

**D.  Plaintiffs are typical as their claims arise from the same course of events: USC's transition to remote learning and decision to keep 100% of the tuition payments.**

Plaintiffs are typical and USC's typicality arguments run counter to the standard.

First, as to all Plaintiffs, USC contends they are atypical because USC's lawyers asked them questions about the quality of education that Plaintiffs received for the second half of Spring 2020. Opp. at 24–25. As the Court correctly noted, "Plaintiffs' claims focus on Defendants' decision not to issue refunds for promised in-person classes and experience, rather than generalized complaints about the quality of education." *In re USC*, 2021 WL 3560783, at *3. Plaintiffs are not legal experts so Defendant's attempt to invoke educational malpractice arguments at class certification must be rejected. *See also Ferguson v. Smith*, No. 3:18-CV-00372-SB, 2020 WL 5731821, at *10 (D. Or. Aug. 12, 2020), *report and recommendation adopted*, No. 3:18-CV-372-SB, 2020 WL 6112186 (D. Or. Oct. 16, 2020) ("Plaintiffs are not inadequate representatives simply because they are ignorant about the law and must rely on their attorney's legal expertise.").

Second, USC also attacks Plaintiff Diaz as atypical because she studied abroad and executed a "Travel Release" form document USC created. Opp. at 24. But Plaintiff Diaz meets typicality because she, like every other USC student enrolled in one of USC's in-person programs. That her in-person USC experience was bargained to take place in Italy instead of Los Angeles makes no difference, as she did not sign-up for online classes in Italy of all places. That is particularly so because USC's website for its School of Architecture documented USC's requirement that all its architecture students attend a study abroad semester as a condition of graduation. *See* Kurowski Reply Decl., Ex. 1 at Diaz Tr. 73:4–23. USC's documentation for that required program, like that for all its Los Angeles-based programs promised in-person onsite learning. *See id.,* Ex. 2 at

USC000029314 (email from study abroad program faculty: "We have prepared an intensive and interesting week of site and building visits that will advance the already rich array of architecture that you've experienced this term. . . . be prepared to walk a lot, draw, read and take notes.").

Nor do USC's contract arguments render Plaintiff Diaz atypical, as USC plays fast and loose with the document. The "force majeure" and "public health risks" references rest within a paragraph associated with the logistics of travelling to or from the study abroad program, circumstances that are inapplicable to the claims here. *See* Norton Decl. Ex. 8 at Diaz Tr. 114:4–118:2 & Ex. 93 [ECF 146-9]. And while USC may cancel or suspend a study abroad program for "physical harm or bodily injury," *id.*, the document provides no discussion of refunds for the bargained for in-person learning. This matters because the release document explicitly notes it was limited "to the subject matter hereof," rendering it an unintegrated agreement which cannot preclude the claims raised here. *See In re Pepperdine*, 2023 WL 2576766, at *5 ("The language in the FRA that limits its application to 'the matters described' indicates that the agreement between the parties might encompass matters beyond the scope of the FRA.") (citing *Fiore v. Univ. of Tampa*, 568 F. Supp. 3d 350, 371 (S.D.N.Y. 2021)). *See also Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101 (5th Cir. 2022); *Garland v. W. Mich. Univ.*, 2021 WL 305744, at *3 (Mich. Ct. Cl. Jan. 06, 2021). Nor did USC draft this document exclusively for Plaintiff Diaz, so she would be typical of other USC students purportedly subject to similar language (thus at worst requiring a study-abroad subclass rather than complete exclusion).

Third, USC attacks Plaintiff Gomez because of his views about continuing in-person education but offers nothing to explain how such views impact the contract, quasi-contract, and UCL claims asserted in this case. Opp. at 24. They do not. USC also misrepresents his non-legal, non-expert testimony about him unequivocally seeking "***100% restitution***." Opp. at 24 (emphasis in original). *See* Norton Decl. Ex. 9 at Gomez

-14-

Tr. 130:25–131:4 [ECF 146-10] ("Q. Do you have a dollar number in mind? A. I mean, *if possible*, for Spring 2020, I would like to get all of whatever I can cover. *If it's 100%*, I would like the whole 28 or 30,000.") (emphases added).

Finally, USC argues Plaintiffs are atypical as to any "Laboratory Fees" because none paid such fees. Opp. at 25. However, Plaintiffs need not have paid for every iteration of USC's fees to bring claims on behalf of others who did given the common conduct raised in this case. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWx, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs typical where they alleged the same uniform issues across a defendant's product line such that all alleged injuries arose from the same common wrong); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008) ("[T]he fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality.").

Plaintiffs meet the typicality prerequisite.

### III.    CONCLUSION

Accordingly, for the reasons provided above and in their opening papers, Plaintiffs respectfully request that the Court grant their motion for class certification, and further grant them all such other relief the Court deems necessary and appropriate.

REPLY IN SUPPORT OF CLASS CERT. MOTION                    Case No. 2:20-cv-04066-DMG-PVC

Dated: May 3, 2023                          Respectfully submitted,

*/s/ Daniel J. Kurowski*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Email: dank@hbsslaw.com
Email: whitneys@hbsslaw.com

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Email: steve@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
Email: christopherp@hbsslaw.com

**BERGER MONTAGUE PC**
Ellen T. Noteware (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: enoteware@bm.net

E. Michelle Drake (*pro hac vice*)
Ariana Kiener (*pro hac vice*)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (215) 875-3000S
Email: emdrake@bm.net
Email: akiener@bm.net

-16-

**THE KATRIEL LAW FIRM, P.C.**
Roy A. Katriel, Esq. (SBN 265463)
2262 Carmel Valley Road, Suite 201
Del Mar, CA 92014
Tel: (619) 363-3333
Email: rak@katriellaw.com

*Interim Co-Lead Counsel for Plaintiffs*

-and-

**THE KALFAYAN LAW FIRM, APC**
Ralph B. Kalfayan (SBN 133464)
Veneeta Jaswal (SBN 320108)
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Tel: (619) 232-0331
Email: ralph@rbk-law.com
Email: veneeta@rbk-law.com

**LYNCH CARPENTER LLP**
(Eddie) Jae K. Kim (SBN 236805)
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel: (619) 762-1910
Email: ekim@lcllp.com

Gary F. Lynch (*pro hac vice*)
Edward W. Ciolko (*pro hac vice*)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Email: gynch@lcllp.com
Email: eciolko@lcllp.com

**LAW OFFICES OF JENNIFER DUFFY**
Jennifer Duffy
28649 S. Western Avenue, Suite 6571
Los Angeles, CA 90734
Tel: (310) 714-9779
Email: jennifer@usclassactions.com

-17-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARRIS LAW FIRM**
R. Rex Parris (SBN 96567)
Alexander R. Wheeler (SBN 239541)
Kitty K. Szeto (SBN 258136)
John M. Bickford (SBN 280929)
Ryan A. Crist (SBN 316653)
43364 10th Street West
Lancaster, CA 93534
Tel: (661) 949-2595
Email: rrparris@parrislawyers.com
Email: kszeto@parrislawyers.com
Email: awheeler@parrislawyers.com
Email: jbickford@parrislawyers.com
Email: rcrist@parrislawyers.com

**SHEGERIAN & ASSOCIATES, INC.**
Carney R. Shegerian (SBN 150461)
Anthony Nguyen (SBN 259154)
Cheryl A. Kenner (SBN 305758)
145 South Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number: (310) 860-0770
Facsimile Number: (310) 860-0771
CShegerian@Shegerianlaw.com
ANguyen@Shegerianlaw.com
CKenner@Shegerianlaw.com

*Attorneys for Plaintiffs and the proposed class*

REPLY IN SUPPORT OF CLASS CERT. MOTION                    Case No. 2:20-cv-04066-DMG-PVC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on May 3 2023, a true and correct copy of the foregoing was filed electronically via CM/ECF, with notice delivered to all counsel of record.

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this memorandum of points and authorities complies with the 25-page count limit set by the Court's Initial Standing Order entered in this case. *See* ECF 8.

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski

-19-