Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
Facsimile: (866) 832-5852
e-mail: rak@katriellaw.com

[additional counsel on signature page]

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. **2:20-CV-4066-DMG**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF JOHN L. HANSEN**<br><br>**Date: May 19, 2023**<br>**Time: 9:30 a.m.**<br>**Place: Courtroom 8C**<br>**Judge: Dolly M. Gee**<br><br>**Action filed: May 7, 2020**<br>**Consolidated: July 17, 2020**<br>**Trial Date: January 9, 2024** |

# **TABLE OF CONTENTS**

I.    HANSEN'S REPORT DOES NOT TRACK USC'S THEORY
      OF THE CASE AT THIS CLASS CERTIFICATION PHASE...............1

      A.    Hansen Opines *All* Class Members Suffered The Same
            Fate, Thereby Supporting Class Certification............................1

      B.    USC's Distinction Between The Fact And Quantum
            Of Damage Does Not Aid Its Cause.......................................4

      C.    That Hansen Could Not Devise A Common Method
            To Quantify Classwide Damages Is Unsurprising, But
            Irrelevant, Because He Disclaimed Any Expertise
            In Conjoint Analysis..........................................................5

II.   HANSEN'S "METHODOLOGY" CONSISTED OF MERELY
      PARROTING WHAT USC'S WITNESSES OR DOCUMENTS
      STATED AND, IN ANY EVENT LOOKED AT IRRELEVANT
      METRICS.........................................................................8

      A.    Hansen's Opinions Merely Regurgitate USC's Witness
            Testimony.......................................................................8

      B.    The Factors Hansen Claims To Have Analyzed Are
            Irrelevant..................................................................10

III.  USC ADMITS IT HAS NO EXPERT OPINION ON BREACH
      OF CONTRACT DAMAGES BECAUSE IT ERRONEOUSLY
      ASSUMES PLAINTIFFS CANNOT PURSUE THAT CLAIM
      OR RECOVERY...............................................................11

      A.    USC's Defense Of Hansen Rests On At Least Two
            Flawed Premises...........................................................12

      B.    Impossibility Merely Excuses Performance But It
            Neither Abrogates The Contract Nor The Right To
            Recover Damages Thereunder.......................................12

      C.    The Restitution Interest For Which Plaintiffs Seek
            Recovery As Part Of Their Breach Of Contract
            Claim *Is* A Measure Of Contract Damages......................16

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

III.    HANSEN FAILS *COMCAST* AND *DAUBERT'S* "FIT"
        REQUIREMENT AGAIN BECAUSE HE DISAVOWED
        USC'S THEORY OF  EQUITABLE RESTITUTION.........................19

IV.     USC'S RELIANCE ON HANSEN'S REBUTTAL REPORT
        TO SALVAGE HIS OPENING REPORT IS FRIVOLOUS.................21

CONCLUSION..........................................................................22

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
568 U.S. 455 (2013)……………………………………………………...…2, 4-5

*Cholakyan v. Mercedes-Benz USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012)……………………………………………10

*City of Vernon v. City of Los Angeles*,
45 Cal.2d 710 (1955)…………………………………………...…………13

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)………………………………………………………3

*Crofoot Lumber v. Thompson*,
163 Cal. App.2d 324 (1958)……………………………………………17

*Daubert v. Merrell Dow Pharms, Inc.*,
509 U.S. 579 (1993)……………………………………………………3

*Guido v. L'Oreal, USA, Inc.*,
2014 WL 6603730 (C.D. Cal. Jul. 24, 2014)…………………………………3

*Hunter v. County of Sacramento*,
2013 WL 684649 (E.D. Cal. Feb. 22, 2013)…………………………….…8

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp.3d 1050 (C.D. Cal. 2015)…………………………………6

*Lister v. Sorge*,
260 Cal. App.2d 333 (1968)………………………………..………15

*Messsner v. Northshore Univ. Health Sys.*,
669 F.3d 802 (7th Cir. 2012)…………………………………….…..3

*Ogren v. Inner Harbor Land Co.*,
83 Cal. App. 197 (1927)…………………………………………...14

iii

*Overgaard v. Johnson*,
68 Cal. App.3d 821 (1977)……………………………………………………………5

*Saavedra v. Eli Lilly & Co.*,
2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)………………………………………6

*Stein v. Pacific Bell*,
2007 WL 831750 (N.D. Cal. Mar. 19, 2007)………………………………...…..8

*Travelers Property Cas. Co. of America v. ServerLogic Corp.*,
2015 WL 920419 (D. Or. Mar. 3, 2015)……………………...……………….17

*Williams v. Apple Inc.*,
338 F.R.D. 629 (N.D. Cal. 2021)……………………………………………..…6

**Rules and Statutes:**

Fed. R. Evid. 702……………………………………………………………….passim

Fed. R. Evid. 703………………………………………………………………8

Cal. Civ. Code, §1514…………………………………………....………17-18

**Treatises and Secondary Sources:**

Restatement (Second) of Contracts, § 344………………………….………16

Restatement (Third) of Restitution and Unjust Enrichment II, Intro. Note………..17

*Corbin on Contracts*, § 1104 pp. 461-62…………………………………………17

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

# I. HANSEN'S REPORT DOES NOT TRACK USC'S THEORY OF THE CASE AT THIS CLASS CERTIFICATION PHASE.

### A. Hansen Opines *All* Class Members Suffered The Same Fate, Thereby Supporting Class Certification.

Plaintiffs' opening motion to strike the report and testimony of USC's only affirmative expert, John L. Hansen, showed how his opinion—even if credited—directly undermines USC's theory that individual and not classwide treatment is necessary here. After employing whatever methodology and analysis he espoused in his report, Hansen concluded that every class member suffered the exact same fate as a result of the conduct alleged in the First Amended Class Action Complaint. Hansen opined that every single class member suffered zero damages—none were harmed:

> Q.   Okay. So your opinion as we understand your report and as you sit here today is that the students represent -- sought to be represented by *this class sustained no financial harm as a result of the conduct alleged in the first amended complaint; is that right*?
>
> A.   **That's correct,** based on the analyses and considerations that I set forth in my report.
>
> Q.   Okay. Were you able to identify *any* group or individual students that suffered financial harm as a result of the conduct alleged in the first amended complaint?
>
> A.   I did not identify any specific group or subset or individual.
>
> Q.   Well, *do you think that anybody enrolled at USC during the spring 2020 semester suffered financial harm* as a result of the conduct that is alleged in the first amended complaint?
>
> A.   Based on the information I reviewed and my analysis set forth, *I didn't find any individual that had been financially harmed and there have been no identification of any such individual or analysis supporting any alleged financial harm at the -- at that time.*

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 52:7-53:12 (emphasis added, objection omitted).

Ordinarily, when a defendant opposes class certification, it argues that whether, and to what extent, a putative class member was harmed is an individual question requiring separate individual trials, thereby precluding classwide treatment. But Hansen's opinion takes the opposite tack. He argues that, as USC's expert, he was able to discern in one foul swoop that USC's conduct caused the exact same pertinent result for all students. All were unharmed; all suffered the identical amount of damages—zero dollars.

That cannot be squared with USC's position that individualized treatment is required here that would preclude class certification. If Hansen is right, USC has an ironclad defense against all class members that would result in a single defense judgment against the entire class. As Plaintiffs' opening class certification brief showed, the United States Supreme Court has underscored that under such circumstances, the appropriate result is to grant class certification:

> Connecticut Retirement's failure to present sufficient evidence of materiality to defeat a summary-judgment motion or to prevail at trial would not cause individual reliance questions to overwhelm the questions common to the class. Instead, the failure of proof on the element of materiality *would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate.*

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 467 (2013) (emphasis added) (quoted in ECF No. 182 [MPA Re: Mtn to Strike Hansen], at 7:12-17.

***USC's Opposition does not mention, cite, or let alone seek to distinguish Amgen,*** despite it being Supreme Court precedent prominently featured in Plaintiffs' motion that supports their position. Nor does USC have any meaningful response to Plaintiffs' other authorities from this Court that hold to the same effect.

Plaintiffs cited *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730 (C.D. Cal. Jul. 24, 2014), in which this Court also upheld class certification when the defendant argued (as Hansen does here) that no class member suffered harm from the defendant's conduct:

> All of these arguments turn on the same underlying premise: that plaintiffs were not injured by L'Oreal's conduct. As explained above, whether plaintiffs were injured is the ultimate merits issue in this case. '[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.'

*Id.*, at *16 (quoting *Messsner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012)) (cited and quoted in ECF No. 182 [MPA Re: Mtn to Strike Hansen], at 7:24-8:9.

USC's sole response is that *L'Oreal* addressed a motion for decertification (which this Court denied). *See* Opp., at 11:11-13. That is a distinction without a difference. *L'Oreal's* denial of the defendant's decertification motion in which the defendant argued classwide treatment was improper because no class member suffered any harm mirrors precisely the argument USC's expert makes here. Yet, this Court held that such a showing of no injured class member—even if credited— would *support* class certification because it would lead to a uniform decision for the defense on the merits as to the entire class. So, whether one views Hansen's report as failing *Comcast*[1] for not tracking USC's theory on class certification or lacking "fit" under *Daubert* and Rule 702, the result is the same—Hansen's report should be stricken.[2]

---

[1] Under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-38 (2013), expert testimony must track the proffering party's theory of the case.

[2] Under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), expert opinion testimony must "fit," or relate to an issue in the case, for it to be helpful under Federal Rule of Evidence 702.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

1    And, if the Court somehow allows Hansen's report to stand, its natural result

2  is the grant of Plaintiffs' class certification motion.   As *Amgen* and *L'Oreal* show,

3  the "no class member was injured" opinion that Hansen advances leads to classwide,

4  not individualized, treatment.  Either way, USC's position at class certification fails.

5  **B.    USC's Distinction Between The Fact And Quantum Of Damage**
        **Does Not Aid Its Cause.**
6

7    Because Hansen's opinion that no student suffered injury as a result of USC's

8  conduct leads to classwide treatment, USC attempts to distance itself from it at class

9  certification, arguing that it is a "merits opinion" as to the "fact of harm."  Opp., at

10  10:8.  Thus, USC charges that "Plaintiffs conflate fact of harm with the measure or

11  amount of damages or restitution."  *Id.*, at 1:13-14.  But USC's attempt to avoid the

12  natural consequences of Hansen's expert opinion is senseless.

13    USC rests its reliance on Hansen on the notion that, after he opined that no

14  class member suffered any harm from USC's conduct (*i.e.,* the fact of harm is

15  lacking for every single class member), Hansen also opined he could not devise a

16  common method by which to quantify classwide damages.  *Id.*, at 10:6-7.  This latter

17  opinion (what USC itemizes as Hansen's "third" opinion) is what USC claims

18  supports its class certification opposition. *Id.*, at 10:12-18.

19    But USC's recitation relies on fatally disconnected logic.  By definition, if

20  Hansen's first opinion—that the fact of harm is lacking for every student (because

21  none was harmed as a result of USC's conduct)—is accepted as true, then

22  quantification of classwide harm necessarily follows.  If no class member suffered

23  harm, then classwide damages or restitution are zero dollars.  This is exactly what

24  *Amgen* held.  *See Amgen*, 568 U.S. at 467 (class certification proper because "the

25  failure of proof on the element of materiality *would end the case for one and for*

26  *all; no claim would remain in which individual reliance issues could potentially*

27  _____
    4

28  REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

*predominate.*") (emphasis added).  So too here, if Hansen is correct that the fact of harm is lacking for *all* class members, then it naturally follows that an identical result applies classwide for the entire USC student population—no individual claims that would require quantification of individual damages would remain.

### C.    That Hansen Could Not Devise A Common Method To Quantify Classwide Damages Is Unsurprising, But Irrelevant, Because He Disclaimed Any Expertise In Conjoint Analysis.

USC hangs its hat on Hansen's opinion that he could not come up with a common method of computing classwide damages.  *See* Opp., at 10:12-18; *see also* ECF No. 156-1 [Hansen Rpt.], at ¶¶ 73-102.  As Plaintiffs showed, in a breach of contract case (Count I), the Restatement (Second) of Contracts dictates that the measure of recovery is equal to the difference in value to the plaintiff between what was promised and what was actually received.  That is codified at Section 347 of that Restatement:

> Subject to the limitations stated in §§ 350- 53, the injured party has a right to damages *based on his expectation interest* as measured by
>
> (a) the ***loss in the value to him*** of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) Contracts, § 347 (emphasis added); *see Overgaard v. Johnson*, 68 Cal. App.3d 821, 823 (1977) ("'Benefit of the bargain' is the difference between ***the actual value of what plaintiff has received and that which he expected to receive***.") (emphasis added).

Here, that would entail computing the difference in value to the student class members between the USC in-person on-campus instruction allegedly promised to

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

them and the remote off-campus educational experience actually delivered by USC during the Spring 2020 semester. As this and other California courts have recognized, a prevailing and generally accepted methodology for making that value calculation is the statistical and economic tool of conjoint analysis. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp.3d 1050, 1073 (C.D. Cal. 2015) ("Conjoint analysis is a statistical technique capable of using survey data to determine how consumers value a product's individual attributes.") (quoting *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *4 (C.D. Cal. Dec. 18, 2014)); *Williams v. Apple Inc.*, 338 F.R.D. 629, 649-55 (N.D. Cal. 2021) (finding conjoint analysis was the appropriate methodology for calculating classwide damages in breach of contract action).

Hansen claims to have been unable to arrive at a common method to quantify classwide damages. USC banks on that opinion to oppose class certification.   But Hansen's failure was to be expected.   He conceded that he lacked expertise in conjoint analysis—the very tool one would expect to be used to arrive at a common method for quantifying the measure of recovery dictated by Section 347 of the Restatement and California law:

> Q.   And then -- so I understand that you've been involved in assignments or cases where surveys have been utilized.  I guess my question is a little more  specific, is have you ever testified as an expert in connection with a survey that you designed?
>
> A.   I have not designed and implemented a survey, although I have utilized and relied on surveys provided by others or performed by others.
>
> Q.   *Would you consider yourself or hold yourself out as an expert in choice-based conjoint survey design?*
>
> A.   ***I typically wouldn't hold myself out as an expert in that field***, although I'm familiar with that type of analysis.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

Q.   *Okay. Have you ever undertaken a choice-based conjoint survey yourself as an expert in any of the assignments that you have done since you've become an expert in 1997?*

A.   ***I have not.***

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 15:17-16:14 (emphasis added).

That Hansen, who admitted to never having done a conjoint survey in his career and disclaimed expertise in that field, could not come up with a common method to quantify classwide harm is hardly surprising. But given his disclaimer of any expertise in the field, his opinion is irrelevant. For reasons known just to USC, the only affirmative expert USC chose to retain to opine on the issue of classwide damages is a witness who candidly admitted having no expertise in the very analytical tool (conjoint analysis) one would expect be used for such a task. Also, given Hansen's admitted lack of expertise in conjoint analysis, there is no basis for him to critique the conjoint analysis Plaintiffs' expert undertook to arrive at his $76.31 million classwide damages figure.

Hansen's admitted lack of expertise in conjoint analysis renders him unqualified under Rule 702 to opine whether a common method of computing classwide harm exists. Given that, his report's opinion as to whether there is such a common method is unreliable and lacks the requisite fit under *Daubert*. Hansen's "expert" opinion cannot analyze the very method that one would consider in determining whether a common means to compute classwide damages may be employed. Either way, his report should be stricken.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

## II. HANSEN'S "METHODOLOGY" CONSISTED OF MERELY PARROTING WHAT USC'S WITNESSES OR DOCUMENTS STATED AND, IN ANY EVENT LOOKED AT IRRELEVANT METRICS.

### A. Hansen's Opinions Merely Regurgitate USC's Witness Testimony.

An expert's opinion must be based on a reliable methodology and rely on facts or data reasonably employed by experts in the field. *See* Fed. R. Evid. 702, 703. Hansen relied on neither. He claims to have "analyzed" eight factors pertinent to whether there was classwide harm. *See* Opp. at 3:26 ("Hansen analyzed eight different considerations."). But his report and deposition testimony confirm there was no such "analysis." All Hansen did was parrot what USC told him or what its documents stated. An expert cannot do that. *See Stein v. Pacific Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007) (striking expert where for his "analysis" he "reviewed various documents and then restated as his 'opinions' the findings or allegations in those materials"); *Hunter v. County of Sacramento*, 2013 WL 684649, at *2 (E.D. Cal. Feb. 22, 2013) ("Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-testifying experts.")

Take, for example, a central tenet of Hansen's argument and USC's position—that the tuition USC charges cannot be used to measure the value of what students were promised. Here, Hansen opines that, "USC does not base its tuition level on students' willingness to pay, and tuition is not the amount determined by market supply and demand." *See* ECF No. 156-1 [Hansen Rpt.], at ¶ 63. His sole reference for that conclusion is cited in his report as a "Discussion with Gregory Condell," USC's Vice President of Finance. *Id.*, at ¶ 63, n. 176. At deposition, Hansen admitted that he spoke to Condell by phone while typing his expert report and merely parroted in his report this observation that Condell told him. That was it—

8

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

no analysis or investigation for Hansen's "opinion" that USC's "tuition is not the amount determined by market supply and demand." *Id.*:

> Q.   Okay.  And then if we flip the page to page 32, and we look at the first full paragraph, which is paragraph 63, you write at paragraph 63 the following, you say: 'Additionally, USC does not base its tuition level on students' willingness to  pay, and tuition is not the amount determined by market supply and demand.'  Do you see that?
>
> A.   I do.
>
> Q.   And you also reference that through footnote 176 to have been based on a discussion with Gregory Condell, right?
>
> A.   Yes.
>
> Q.   Was this a phone conversation, an in-person conversation with Mr. Condell?  Do you know how that came about?
>
> A.   ***It was a phone conversation.***
>
> Q.   Did you record it?
>
> A.   No.
>
> Q.   Did you take notes?
>
> A.   I did not.
>
> Q.   Okay.  So this is based on your recollection of what Mr. Condell represented to you during the telephone call; is that fair?
>
> A.   ***I was working on the report at the time --***
>
> Q.   Uh-huh.
>
> A.   -- and for the inputs ***that he provided me, I put that into the report  and cited directly to my discussion with Mr. Condell***.

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 186:12-187:20.

This flaw permeates Hansen's entire report.  One can search the report for any economic, formulaic, or statistical analysis—any method whatsoever—and find nothing.  Instead, for each of the eight metrics he claims to have "analyzed" as part

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

of his expert report, Hansen's report merely quotes USC's documents. That is not a methodology from which reliable expert opinion can be admitted into evidence. *See Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 547 (C.D. Cal. 2012) ("the fact that Waters quotes extensively from the reports indicates not that he is using them to confirm the validity of his opinions, but rather that he seeks to serve as a mouthpiece for others.").

### B.    The Factors Hansen Claims To Have Analyzed Are Irrelevant.

Because Hansen was unqualified to perform a conjoint analysis, he resorted instead to looking at eight other factors he claims support his conclusion that no student was harmed. These included factors like whether students earned the semester credits they enrolled in, receive grades (GPA), and graduated on schedule. *See* Opp., at 3:26-5:7 (listing factors Hansen reportedly considered). He did nothing, however, to directly analyze whether the value for the in-person on-campus educational experience that formed part of students' alleged bargain with USC was higher than the altogether different remote online modality of instruction they received. At deposition he explained that his lack of harm opinion followed from his observations:

> A.    Yes, based on my analysis and my understanding that I *quoted* in these various sections, *students are charged tuition for units taken. They took those units. They received the credit for those units.* They proceeded and continued towards degree completion. There was no discernible difference in graduation rates, in employment post graduation, income post graduation. *Those were parts of the analysis that support this opinion.*

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 69:14-24 (emphasis added).

Aside from all the other flaws in Hansen's work, the basic point is that he looked at the wrong thing. In his view, if students registered for credits and received

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

them, that fulfilled USC's promise and the students sustained no harm. *Id*. But that is not the promise at issue in this case. USC already tried that argument when it moved to dismiss the Consolidated Class Action Complaint; the Court denied that motion, rejecting the argument. *See* ECF No. 60 [USC's Reply In Support Of Motion To Dismiss Consolidated Class Action Complaint], at 20:20-23 (presenting argument rejected by the Court that: "The unescapable fact is that Plaintiffs received the benefit of their bargain: academic units towards a USC degree, with two of them earning USC degrees at the end of the Spring 2020 semester.").

The actual promise whose value Hansen should have tested but did not was the value of an in-person on-campus USC educational experience relative to the value of remote online instruction. The factors he looked at were not those, thereby rendering his opinion irrelevant and unhelpful. (Presumably under Hansen's money-for-semester credit "analysis," even if USC had ceased all instruction in March 2020 and still given students credit and grades, that would have fulfilled its bargain and left students unharmed. That is simply not so).

### III.   USC ADMITS IT HAS NO EXPERT OPINION ON BREACH OF CONTRACT DAMAGES BECAUSE IT ERRONEOUSLY ASSUMES PLAINTIFFS CANNOT PURSUE THAT CLAIM OR RECOVERY.

USC tries to justify Hansen's failure to consider the standard for recoverable breach of contract damages by assuming that claim is no longer viable. As USC puts it: "The impossibility of performing the alleged implied contract negates any claims for breach of contract damages. Plaintiffs only have claims for restitution, not damages." Opp., at 12:22-25. USC is wrong again, as Plaintiffs show below (and showed in their Opposition to USC's motion for partial judgment on the pleadings. *See* ECF No. 179). More fundamentally, USC's justification that it did not analyze the availability of a classwide damages methodology because breach of

contract damages are no longer available to Plaintiffs necessarily means that if USC's motion to dismiss the breach of contract claim is denied, USC lacks any expert support for its class certification opposition to that count.

### A.    USC's Defense Of Hansen Rests On At Least Two Flawed Premises.

USC's entire argument against Plaintiffs' claim for contract damages rests on at least two flawed premis.  *First*, USC assumes that impossibility of performance disposes of Plaintiffs' breach of contract claim, leaving them only with their alternate claim in equity for quasi-contract.  *Second*, USC claims that because Plaintiffs' only measure of recovery is through restitution, that relief is incompatible with contract damages. The first premise is wrong because impossibility does not abrogate the contract or right to recover thereunder—it only provides a defense against specific performance of any obligation since rendered impossible.  The second premise is also wrong because it fails to recognize that when recovery is sought for a properly pled breach of contract action, restitution *is* a measure of contract damages. *See* Restatement (Second) of Contracts, § 344(c) (quoted and discussed *infra*).

### B.    Impossibility Merely Excuses Performance But It Neither Abrogates The Contract Nor The Right To Recover Damages Thereunder.

California law codifies "impossibility" as a defense that excuses a party's obligation to continue performing its contractual promise.  *See* Cal. Civ. Code, §1511.  USC, however, misreads that defense as one that disposes altogether of the contract and the parties' contractual rights.  It does not.  While impossibility excuses continued performance, it does *not* dispose of either the contract or a party's right to recover under the contract for any tendered consideration.  The California Supreme Court has explained as much:

> Despite the language that the contracts are 'terminated' and 'invalid,' the effect of the judgment herein is *not* to determine that when performance by one party became impracticable the contracts were altogether abrogated regardless of what performances had already been rendered by either party. ***Such a determination would be incorrect.*** More accurately, the judgment determines that certain described 'facilities and rights' created under the contracts (such as the gauging stations and relief sewer provided for by the 1938 contract) can and should be salvaged, and although the case was not tried in such a way that all obligations between the parties could be precisely adjusted by the judgment herein, such judgment expressly contemplates an adjustment of those obligations; it decrees that Vernon is liable to Los Angeles for any monetary obligations accrued under the contracts prior to the entry of judgment in the abatement action, *provided, however, that if all the benefits received by her from the City of Los Angeles under all said agreements prior to the entry of said judgment in said State Abatement Action have had a fair value less than the total payments made by her and those now owing to the City of Los Angeles, she, Vernon, shall be credited with such excess of payments over such value of benefits received*.

*City of Vernon v. City of Los Angeles*, 45 Cal.2d 710, 721 (1955) (emphasis added, citations omitted).

Under *City of Vernon*, therefore, the COVID-19 city and state stay-at-home orders may have excused USC from continuing to offer in-person on-campus instruction. But that binding California Supreme Court precedent likewise holds that, upon USC's inability to continue performing, the opposing party (*i.e.,* the student class members) are to "be credited with such excess of payments over such value of benefits received." *Id*.

That is precisely the measure of classwide damages that Plaintiffs' expert, Dr. Hal J. Singer, calculated with a choice-based-conjoint ("CBC") analysis. His CBC studies showed the difference in value between what students were promised

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

before the start of the Spring 2020 semester (in-person on-campus instruction) and what they actually received during that term (wholly remote online instruction as of March 2020).   Hansen, who was not qualified to do such work, did no analysis of those claimed damages.

*City of Vernon* plowed no new ground.  Nearly three decades before *City of Vernon*, the California Court of Appeal had interpreted California's Civil Code Section 1511 (codifying impossibility of performance) and denied a defendant's argument that, upon proof of impossibility, the plaintiff was limited to seeking solely equitable relief with no further right for recovery under the contract:

> The ground here assigned for reversal is that 'recourse is either against the district, or against the fund upon equitable grounds. Performance by defendant being excused by operation of law, no rescission will lie, and plaintiff cannot recover the payments *under the contract*; in fact, *no action under the contract will lie*, the same having been abrogated by operation of law.'
>
> **The appellant cites no authority which supports this theory, and we are aware of none.  The provision of section 1511 of the Civil Code referred to by it to the effect that want of performance of an obligation is excused by operation of law falls far short of being an authority for the proposition that an abrogation of the contract results by operation of law.** Without doubt appellant would be excused from specific performance of the contract, because it is beyond his power to specifically perform or to comply with its terms, but the respondent has sought no such impossible redress.

*Ogren v. Inner Harbor Land Co.*, 83 Cal. App. 197, 199 (1927) (emphasis added); *see also id.*, at 200 (citing cases holding that one who gave consideration may recover under the contract after bargained-for performance becomes impossible).

Under *City of Vernon* and *Ogren* impossibility does not terminate or abrogate a contract nor the rights to recover thereunder.  The defense merely prevents the

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

opposing party from seeking continued specific performance of the contractual obligation that has been rendered impossible to perform.   The student class members, however, do not seek specific performance—the Spring 2020 semester during which USC failed to perform has long since lapsed.   Instead, the students— all of whom prepaid their tuition and fees to USC before the start of the Spring 2020 semester—merely seek to recover the excess consideration they provided for a benefit they did not receive (*i.e.,* in-person on campus performance for the entire Spring 2020 semester).  It is this precise right to recover under the contract that *City of Vernon* and *Ogren* hold the students are entitled to obtain.

The student class members seek compensation for the excess consideration they prepaid USC for services USC could no longer perform.   That remedy is unaffected by an impossibility defense.   The California Court of Appeal explained as much when it affirmed a trial court's judgment for the plaintiff on this very issue:

> Impossibility of performance will, of course, ordinarily preclude specific performance. However, the trial court did not order defendant to convey S.A. stock. It ordered the payment of money.

*Lister v. Sorge*, 260 Cal. App.2d 333, 342 (1968).

These California authorities, which this Court sitting in diversity is bound to follow, demonstrate that USC's assumption to the effect that "the impossibility of performing the alleged implied contract negates any claims for breach of contract damages," (Opp., at 12:22-23), is just wrong.  *Lister* upheld an award of money in the plaintiff's breach of contract claim despite finding impossibility of performance.  *See Lister*, 260 Cal. App.2d t 342.  Because USC relies on a flawed premise to defend the validity of Hansen's work, his expert report and opinion testimony cannot stand.

**C.    The Restitution Interest For Which Plaintiffs Seek Recovery As Part Of Their Breach Of Contract Claim *Is* A Measure Of Contract Damages.**

USC's second flawed premise forming part of its defense of Hansen's work is its claim that, "Plaintiffs only have claims for ***restitution, not damages*.*"  Opp., at 12:24-25 (emphasis added).  USC is wrong again—this time on several fronts.

USC mistakenly concludes that "restitution" must amount to an equitable recovery for unjust enrichment under quasi-contract as opposed to a legal measure of contract damages in a claim at law.  This is not so.  Section 344 of the Restatement (Second) of Contracts expressly provides that restitution is one measure of *damages for breach of contract*:

> § 344. Purposes of Remedies Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee:
>
> (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,
>
> (b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or
>
> (c) ***his "restitution interest***,*" which is his interest in having restored to him any benefit that he has conferred on the other party*.

Restatement (Second) of Contracts, § 344 (emphasis added).

Another federal court has explained the distinct meanings of "restitution" that turn on whether the relief sought is for a breach of contract claim at law or a Court-fashioned remedy in equity for quasi-contract:

> *The flaw in Travelers' argument arises from Travelers conflating two different meanings of 'restitution.'*  The Restatement (Third) of Restitution explains that:

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

'It is an accepted part of American contract law that *there are remedies for breach called "restitution," but the multiple connotations of the word "restitution" are such that 'restitution for breach of contract' can refer to a number of different things entirely.* The difficulty has been compounded by the conflicting uses of the word 'restitution' in the two Restatements of Contracts. The original Restatement of Contracts used the word 'restitution' to describe both the remedy that lawyers had always called "rescission" *and the entirely different remedy that consists of damages measured by the value of the plaintiff's performance.*'

*Travelers Property Cas. Co. of America v. ServerLogic Corp.*, 2015 WL 920419, at *6 (D. Or. Mar. 3, 2015) (quoting Restatement (Third) of Restitution and Unjust Enrichment II, Intro. Note (2011)).  Or, as the California Court of Appeal has explained in quoting a leading authority on contract law:

[W]e are dealing with *restitution as a remedy for breach of contract; a judgment for such restitution is as truly a remedy for a 'breach' as is a judgment for damages.*

*Crofoot Lumber v. Thompson*, 163 Cal. App.2d 324, 331 (1958) (emphasis added) (quoting *Corbin on Contracts*, § 1104 pp. 461-62).

Underscoring that restitution is a measure of recoverable contract damages when asserted as the relief sought for a breach of contract claim at law, the California Civil Code has codified that recovery as the measure of damages available to a party (like the student Plaintiffs) that has provided consideration for a promise that the opponent can no longer fully perform due to some later-arising impossibility.  California Civil Code Section 1514, entitled "Performance prevented by cause excusing performance" provides that:

If performance of an obligation is prevented by any cause excusing performance, other than the act of the creditor, *the debtor is entitled to a ratable proportion of the consideration to which he would have been entitled upon full performance*, according to the benefit which the creditor receives from the actual performance.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

Cal. Civ. Code, §1514 (emphasis added).

Here, USC, as the party owing performance of the contract, is the "debtor" within the statute, and the students owed performance are the "creditors." Section 1514 clarifies that if, due to some excusing cause, USC could not perform its promise of in-person, on campus-education but only offered some part of it, USC could retain only "a ratable proportion of the consideration which [USC] would have been entitled upon full performance." *Id*.

The consideration USC would have been entitled to in exchange for full performance was the full tuition and fees it charged the student class members, which they prepaid before the start of the Spring 2020 semester. Because USC did not fully perform due to the COVID-19 pandemic shutdown, however, Section 1514 provides that USC is only entitled to keep a "ratable proportion" of those tuition and fees. Critically, Section 1514 dictates that the measure of that prorated proportion is governed not by what USC would have charged in some hypothetical market but, instead, is governed solely "according to the benefit which the creditor [*i.e.,* the students] receive[] from the actual performance." *Id*. The measure of the refund is therefore governed by the value (*i.e.,* benefit) placed on the service by the creditor (student). This is what Dr. Singer's CBC studies capture, and Hansen has no response to that.

Because USC and Hansen erroneously assumed restitution is a concept distinct from, and incompatible with, contract damages, their defense of Hansen's report is unavailing. Because USC relied on this wrong legal standard, Hansen's opinion is *per se* inadmissible.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

### III.   HANSEN FAILS *COMCAST* AND *DAUBERT'S* "FIT" REQUIREMENT AGAIN BECAUSE HE DISAVOWED USC'S THEORY OF EQUITABLE RESTITUTION.

The problems with Hansen's report run deeper.  Even when it comes to the alternate remedy of equitable restitution for Count II, Hansen's expert opinion fails to track or fit USC's theory of what is required for recovery.  His opinion therefore again fails *Comcast* and *Daubert's* "fit" requirement.

Even as to that alternate claim, USC contends that weighing the equities as to whether USC was unjustly enriched so it should be subject to a restitution order for Plaintiffs' quasi-contract claim (Count II) must be judged individually.  It claims that whether USC benefitted from the switch to remote online education is a required showing that cannot be made classwide.  But Hansen adamantly disavowed any such analysis for his restitution opinion because he opined that entitlement to restitution does *not* depend on any showing that USC benefitted:

> Q.   Okay.  So is it your view as you sit here today that *if it was shown that USC did not financially benefit from the transition to remote education, then students would not be entitled to obtain restitution?*
>
> A.   ***No, I'm not putting forth that***.  *Again, I view those as two different measures*.
>
> Q.   So I take it --
>
> A.   In the way that I'm using that in section B, I should say.
>
> Q.   Okay.  I take it based on those responses that *it is your view that whether students may be entitled to restitution **does not depend** upon a showing that USC financially benefitted from the transition to remote education as you used that term in Exhibit B, correct?*
>
> A.   ***I believe that's correct***.  I'm not making a legal determination or making any kind of legal finding, but for purposes of how I analyzed and described my opinion in section B, that was an

analysis of a separate claim as I viewed   it than the student restitution.

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 119:17-120:19 (emphasis added, objections omitted).

Further rendering his opinion at odds with USC's theory underlying its opposition to class certification is that once Hansen got around to analyzing USC's financials, his work showed that USC did benefit during the Spring 2020 semester in which it took in the tuition and fee payments from students but failed to deliver the in-person on-campus instruction that had been promised for those payments.  He did that through a common showing, whereas USC argues individualized trials are required.  Hansen's deposition testimony about USC's financials stated:

Q.    But then if we go down the line to line 29, which purports to record the total increase in net assets held by USC during the fiscal year, *we see that for  the fiscal year ending at the end of June 2020, USC recorded an increase in its net assets of $246,140,000*, *whereas the prior fiscal year it had recorded a decrease of $141,950,000, correct?*

A.    *Yes,* including both operating and nonoperating categories.

Q.    And so then if we go to the  bottom line of this page of the financial  statement, the Ending Net Assets held by  USC as recorded for the fiscal year ending on June 30, 2020 are $9,434,302,000.   Do you see that?

A.    I do.

Q.    And that is *as contrasted to the lesser amount of $9,188,162,000 that USC recorded for the prior fiscal year ending on June 30, 2019*, right?

A.    *It is a larger number, yes.*

Q.    So as I peruse this document,  the -- what I see and correct me if I -- if my understanding is incorrect, in the fiscal year ending on June 30, 2020, which *encompasses the entirety of the semester that's at*

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

*issue in this case, **USC's total expenses** as recorded in this financial statement document **decreased over the prior year**, correct*?

A.   **Yes,** on a consolidated basis across all lines of business and activities.

Q.   **And USC's operating revenues, as recorded in this audited financial statement, increased by over $100 million in the fiscal year ending June 30, 2020, which, again, include the semester at issue in this case, over the operating revenues that USC recorded the prior fiscal year,** correct?

A.   **Yes,** again, based on including all operating segments and all activities.

Ex. 1 to Katriel Reply Decl. [Hansen Dep. Tr.], at 172:5-173:24 (emphasis added).

Because Hansen's opinion testimony as to the restitution recovery for Plaintiff's alternate quasi-contract claim (Count II) still fails to align with USC's theory of harm and recovery, it does not meet *Comcast* or *Daubert* and should be stricken.

## IV.   USC'S RELIANCE ON HANSEN'S REBUTTAL REPORT TO SALVAGE HIS OPENING REPORT IS FRIVOLOUS.

In a desperate plea to salvage Hansen's expert report at all costs, USC frivolously argues that, regardless of the merit of Plaintiffs' motion to strike Hansen's report, the expert report still comes in because Hansen's rebuttal report incorporated his opening report by reference, and Plaintiffs did not separately move to strike the rebuttal. That is absurd. If the Court concludes that Hansen's opening report should be struck, that necessarily renders it inadmissible. Hansen can no more bring in or rely on it by incorporating it into a separate rebuttal report than he could by attempting to introduce the opening report on a standalone basis after the Court struck it. Unsurprisingly, USC cites no authority for its outlandish position.

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to strike Hansen's expert report and testimony should be granted.

Dated:  May 5, 2023                    Respectfully submitted,

**THE KATRIEL LAW FIRM, P.C.**

*/s/Roy A. Katriel*_____
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road,
Suite 201
Del Mar, CA  92014
Tel: (619) 363-3333
Facsimile: (866) 832-5852
Email: rak@katriellaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Drive,
Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Email: dank@hbsslaw.com
Email: whitneys@hbsslaw.com

Steve W. Berman (p*ro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Email: steve@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
Email: christopherp@hbsslaw.com

**BERGER MONTAGUE PC**
Ellen T. Noteware (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: enoteware@bm.net

E. Michelle Drake (*pro hac vice*)
Ariana Kiener (*pro hac vice*)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (215) 875-3000
Email: emdrake@bm.net
Email: akiener@bm.net

*Interim Co-Lead Counsel for Plaintiffs*
-and-

**THE KALFAYAN LAW FIRM, APC**
Ralph B. Kalfayan (SBN 133464)
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Tel: (619) 232-0331
Email: ralph@rbk-law.com

**LYNCH CARPENTER LLP**
(Eddie) Jae K. Kim (236805)
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel: (619) 762-1910
Email: ekim@lcllp.com

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

Gary F. Lynch (*pro hac vice*)
Edward W. Ciolko (*pro hac vice*)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Email: gynch@lcllp.com
Email: eciolko@lcllp.com

**LAW OFFICES OF JENNIFER DUFFY**
Jennifer Duffy
28649 S. Western Avenue, Suite 6571
Los Angeles, CA  90734
Tel: (310) 714-9779
Email: jennifer@usclassactions.com

**PARRIS LAW FIRM**
R. Rex Parris (SBN 96567)
Alexander R. Wheeler (SBN 239541)
Kitty K. Szeto (SBN 258136)
John M. Bickford (SBN 280929)
Ryan A. Crist (SBN 316653)
43364 10th Street West
Lancaster, CA 93534
Tel: (661) 949-2595
Email: rrparris@parrislawyers.com
Email: kszeto@parrislawyers.com
Email: awheeler@parrislawyers.com
Email: jbickford@parrislawyers.com
Email: rcrist@parrislawyers.com

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY

**SHEGERIAN & ASSOCIATES, INC.**
Carney R. Shegerian (SBN 150461)
Anthony Nguyen (SBN 259154)
Cheryl A. Kenner (SBN 305758)
145 South Spring Street, Suite 400
Los Angeles, California 90012
Tel: (310) 860-0770
Email: CShegerian@Shegerianlaw.com
Email: ANguyen@Shegerianlaw.com
Email: CKenner@Shegerianlaw.com
*Counsel for Plaintiffs and Proposed Class*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this reply memorandum complies with the 25-page count limit set by the Court's Initial Standing Order entered in this case. *See* ECF 8.

/s/ *Roy A. Katriel*

REPLY ISO PLAINTIFFS' MOTION TO STRIKE HANSEN REPORT AND TESTIMONY