# EXHIBIT 1 TO KATRIEL REPLY DECLARATION

HIGHLY CONFIDENTIAL

```
 1        UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA
 2              WESTERN DIVISION
         CASE NO.  2:20-cv-04066-DMG-PVC

 3

 4     IN RE:

 5     UNIVERSITY OF SOUTHERN
       CALIFORNIA TUITION AND FEES
 6     COVID-19 REFUND LITIGATION.

 7
           * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
 8                 HIGHLY CONFIDENTIAL
       ZOOM VIDEOTAPED DEPOSITION OF JOHN L.  HANSEN
 9                February 15, 2023
                   10:00 a.m. PST
10         * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

11

12

13     TAKEN BY:

14        ROY A. KATRIEL, ESQ.
          INTERIM CO-LEAD COUNSEL FOR PLAINTIFFS
15        AND THE PROPOSED CLASS

16

       REPORTED BY:

17

          BELLE VIVIENNE, RPR, CRR, NJ-CRR,
18        WA/CO/NM-CCR
          NATIONALLY CERTIFIED REALTIME
19        COURT REPORTER
          VERITEXT LEGAL SOLUTIONS
20        JOB NO. 5764056
          866.299.5127

21

22

23

24

25
```

Page 1

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | in your line of work; is that -- is that | 10:23:04 |
| 2 | correct? | 10:23:06 |
| 3 | A.    That's a fair characterization. | 10:23:08 |
| 4 | Q.    And I take it, sir, it's also | 10:23:10 |
| 5 | true that you have not designed or | 10:23:13 |
| 6 | administered any consumer marketing | 10:23:14 |
| 7 | surveys; is that correct? | 10:23:16 |
| 8 | A.    That's correct.  I haven't been | 10:23:20 |
| 9 | the party that conducts the survey, | 10:23:21 |
| 10 | although over the prior decades, I've been | 10:23:24 |
| 11 | involved in matters that have utilized | 10:23:28 |
| 12 | surveys.  I'm familiar with surveys.  I've | 10:23:31 |
| 13 | analyzed those and I've also reviewed | 10:23:34 |
| 14 | surveys in the context of work that was | 10:23:36 |
| 15 | performed by underlying clients so records | 10:23:38 |
| 16 | that were produced in litigation. | 10:23:41 |
| 17 | Q.    And then -- so I understand that | 10:23:43 |
| 18 | you've been involved in assignments or | 10:23:48 |
| 19 | cases where surveys have been utilized.  I | 10:23:51 |
| 20 | guess my question is a little more | 10:23:54 |
| 21 | specific, is have you ever testified as an | 10:23:55 |
| 22 | expert in connection with a survey that | 10:23:57 |
| 23 | you designed? | 10:23:59 |
| 24 | A.    I have not designed and | 10:24:01 |
| 25 | implemented a survey, although I have | 10:24:03 |

Page 15

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | utilized and relied on surveys provided by | 10:24:07 |
| 2 | others or performed by others. | 10:24:10 |
| 3 | Q. Would you consider yourself or | 10:24:11 |
| 4 | hold yourself out as an expert in | 10:24:14 |
| 5 | choice-based conjoint survey design? | 10:24:18 |
| 6 | A. I typically wouldn't hold myself | 10:24:22 |
| 7 | out as an expert in that field, although | 10:24:23 |
| 8 | I'm familiar with that type of analysis. | 10:24:26 |
| 9 | Q. Okay. Have you ever undertaken | 10:24:30 |
| 10 | a choice-based conjoint survey yourself as | 10:24:33 |
| 11 | an expert in any of the assignments that | 10:24:36 |
| 12 | you have done since you've become an | 10:24:38 |
| 13 | expert in 1997? | 10:24:40 |
| 14 | A. I have not. | 10:24:41 |
| 15 | Q. All right, sir, I appreciate you | 10:24:45 |
| 16 | being with us today. And you understand | 10:24:54 |
| 17 | that you are here in response to not only | 10:24:57 |
| 18 | the agreement of counsel for the parties, | 10:25:01 |
| 19 | but we sent a notice of deposition through | 10:25:03 |
| 20 | your counsel. Let me -- just so that the | 10:25:07 |
| 21 | record is fully documented -- introduce | 10:25:09 |
| 22 | that exhibit, mark it and introduce it. | 10:25:16 |
| 23 | It should be populating in your Exhibit | 10:25:20 |
| 24 | Share momentarily. It's cycling through | 10:25:22 |
| 25 | my screen so let me know when you have | 10:25:24 |

Page 16

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | not find evidence that the students were | 11:09:00 |
| 2 | financially harmed by the transition to | 11:09:02 |
| 3 | remote education and I set forth a number | 11:09:06 |
| 4 | of considerations that in my view support | 11:09:10 |
| 5 | that finding. | 11:09:12 |
| 6 | BY MR. KATRIEL: | 11:09:12 |
| 7 | Q.   Okay.  So your opinion as we | 11:09:15 |
| 8 | understand your report and as you sit here | 11:09:18 |
| 9 | today is that the students represent -- | 11:09:20 |
| 10 | sought to be represented by this class | 11:09:26 |
| 11 | sustained no financial harm as a result of | 11:09:28 |
| 12 | the conduct alleged in the first amended | 11:09:30 |
| 13 | complaint; is that right? | 11:09:32 |
| 14 | A.   That's correct, based on the | 11:09:36 |
| 15 | analyses and considerations that I set | 11:09:38 |
| 16 | forth in my report. | 11:09:41 |
| 17 | Q.   Okay.  Were you able to identify | 11:09:43 |
| 18 | any group or individual students that | 11:09:51 |
| 19 | suffered financial harm as a result of the | 11:09:57 |
| 20 | conduct alleged in the first amended | 11:09:59 |
| 21 | complaint? | 11:10:01 |
| 22 | A.   I did not identify any specific | 11:10:05 |
| 23 | group or subset or individual. | 11:10:08 |
| 24 | Q.   Well, do you think that anybody | 11:10:11 |
| 25 | enrolled at USC during the spring 2020 | 11:10:16 |

Page 52

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | semester suffered financial harm as a | 11:10:19 |
| 2 | result of the conduct that is alleged in | 11:10:22 |
| 3 | the first amended complaint? | 11:10:25 |
| 4 | MR. NORTON:  Objection, asked | 11:10:26 |
| 5 | and answered. | 11:10:27 |
| 6 | A.    Based on the information I | 11:10:30 |
| 7 | reviewed and my analysis set forth, I | 11:10:32 |
| 8 | didn't find any individual that had been | 11:10:36 |
| 9 | financially harmed and there have been no | 11:10:39 |
| 10 | identification of any such individual or | 11:10:43 |
| 11 | analysis supporting any alleged financial | 11:10:45 |
| 12 | harm at the -- at that time. | 11:10:47 |
| 13 | BY MR. KATRIEL: | 11:10:47 |
| 14 | Q.    And if I could ask you to flip | 11:11:11 |
| 15 | forward a little bit to paragraph 25 of | 11:11:18 |
| 16 | your opening report.  And do you have that | 11:11:20 |
| 17 | in front of you? | 11:11:29 |
| 18 | A.    I do. | 11:11:30 |
| 19 | Q.    The second sentence in that | 11:11:31 |
| 20 | paragraph states the following: | 11:11:40 |
| 21 | "Plaintiffs' operative complaint," and | 11:11:44 |
| 22 | then you open quotes, "seeks disgorgement, | 11:11:47 |
| 23 | restitution and monetary damages in the | 11:11:52 |
| 24 | amount of prorated, unused amounts of | 11:11:54 |
| 25 | tuition and fees that the Plaintiffs and | 11:11:56 |

Page 53

| | | |
|---|---|---|
| 1 | difference.  I did analyses related to | 11:42:49 |
| 2 | subsidization.  I did analyses related to | 11:42:54 |
| 3 | the manner in which students pay for their | 11:42:59 |
| 4 | education.  So I did a number of different | 11:43:03 |
| 5 | analyses that resulted in my overall | 11:43:06 |
| 6 | opinions. | 11:43:12 |
| 7 | Q.    You said that the students paid | 11:43:12 |
| 8 | for units and for graduation and they -- | 11:43:17 |
| 9 | you showed that -- you documented that | 11:43:20 |
| 10 | they received those units and they | 11:43:23 |
| 11 | received those diplomas; is that right? | 11:43:25 |
| 12 | MR. NORTON:  Objection, | 11:43:28 |
| 13 | mischaracterizes testimony. | 11:43:29 |
| 14 | A.    Yes, based on my analysis and my | 11:43:32 |
| 15 | understanding that I quoted in these | 11:43:38 |
| 16 | various sections, students are charged | 11:43:39 |
| 17 | tuition for units taken.  They took those | 11:43:41 |
| 18 | units.  They received the credit for those | 11:43:46 |
| 19 | units.  They proceeded and continued | 11:43:48 |
| 20 | towards degree completion.  There was no | 11:43:52 |
| 21 | discernible difference in graduation | 11:43:56 |
| 22 | rates, in employment post graduation, | 11:43:59 |
| 23 | income post graduation.  Those were parts | 11:44:03 |
| 24 | of the analysis that support this opinion. | 11:44:06 |
| 25 | BY MR. KATRIEL: | 11:44:09 |

Page 69

| | | |
|---|---|---|
| 1 | accountant and given the expertise that | 13:44:41 |
| 2 | you have, that a financial benefit to USC | 13:44:44 |
| 3 | from the transition to remote education | 13:44:47 |
| 4 | would have been a necessary prerequisite | 13:44:51 |
| 5 | before concluding that students are | 13:44:54 |
| 6 | entitled to restitution? | 13:44:56 |
| 7 | MR. NORTON:  Objection, vague | 13:45:01 |
| 8 | and ambiguous, lacks foundation. | 13:45:02 |
| 9 | A.   I -- I view those two issues in | 13:45:06 |
| 10 | a way that I've described point B here as | 13:45:09 |
| 11 | different issues.  At the time I prepared | 13:45:13 |
| 12 | my opening expert report, we had not | 13:45:16 |
| 13 | received or there hadn't been specific | 13:45:20 |
| 14 | claim made for damages.  So I was | 13:45:23 |
| 15 | responding to what one may claim. | 13:45:26 |
| 16 | BY MR. KATRIEL: | 13:45:26 |
| 17 | Q.   Okay.  So is it your view as you | 13:45:30 |
| 18 | sit here today that if it was shown that | 13:45:33 |
| 19 | USC did not financially benefit from the | 13:45:41 |
| 20 | transition to remote education, then | 13:45:42 |
| 21 | students would not be entitled to obtain | 13:45:45 |
| 22 | restitution? | 13:45:48 |
| 23 | MR. NORTON:  Same objections. | 13:45:51 |
| 24 | A.   No, I'm not putting forth that. | 13:45:53 |
| 25 | Again, I view those as two different | 13:45:57 |

Page 119

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL

```
 1    measures.                                    13:45:59

 2    BY MR. KATRIEL:                              13:45:59

 3         Q.    So I take it --                   13:46:00

 4         A.    In the way that I'm using that    13:46:01

 5    in section B, I should say.                  13:46:03

 6         Q.    Okay.  I take it based on those   13:46:05

 7    responses that it is your view that          13:46:11

 8    whether students may be entitled to          13:46:16

 9    restitution does not depend upon a showing   13:46:19

10    that USC financially benefitted from the    13:46:23

11    transition to remote education as you used  13:46:25

12    that term in Exhibit B, correct?             13:46:27

13         A.    I believe that's correct.  I'm    13:46:33

14    not making a legal determination or making  13:46:36

15    any kind of legal finding, but for           13:46:41

16    purposes of how I analyzed and described     13:46:45

17    my opinion in section B, that was an         13:46:47

18    analysis of a separate claim as I viewed     13:46:53

19    it than the student restitution.             13:46:56

20         Q.    Okay.  So given the               13:46:59

21    understanding that you have, as you sit      13:47:02

22    here today, including that which you have    13:47:04

23    gathered after reviewing the plaintiffs'     13:47:08

24    expert's report, is it your view that        13:47:10

25    the -- part of your report captured at       13:47:16
```

Page 120

HIGHLY CONFIDENTIAL

```
 1        Q.    Okay.  It's not materially       14:53:13

 2   different, but it's a slight uptick from     14:53:16

 3   the prior fiscal year, right?               14:53:18

 4        A.    Very slight.                      14:53:23

 5        Q.    But then if we go down the line   14:53:23

 6   to line 29, which purports to record the    14:53:28

 7   total increase in net assets held by USC    14:53:34

 8   during the fiscal year, we see that for     14:53:38

 9   the fiscal year ending at the end of June   14:53:40

10   2020, USC recorded an increase in its net   14:53:44

11   assets of $246,140,000, whereas the prior   14:53:49

12   fiscal year it had recorded a decrease of   14:53:56

13   $141,950,000, correct?                      14:53:59

14        A.    Yes, including both operating     14:54:06

15   and nonoperating categories.                14:54:08

16        Q.    And so then if we go to the       14:54:12

17   bottom line of this page of the financial   14:54:21

18   statement, the Ending Net Assets held by    14:54:25

19   USC as recorded for the fiscal year ending  14:54:30

20   on June 30, 2020 are $9,434,302,000.        14:54:33

21            Do you see that?                    14:54:42

22        A.    I do.                             14:54:42

23        Q.    And that is as contrasted to the  14:54:42

24   lesser amount of $9,188,162,000 that USC    14:54:46

25   recorded for the prior fiscal year ending   14:54:54
```

Page 172

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | on June 30, 2019, right? | 14:54:57 |
| 2 | A.    It is a larger number, yes. | 14:55:01 |
| 3 | Q.    So as I peruse this document, | 14:55:28 |
| 4 | the -- what I see and correct me if I -- | 14:55:33 |
| 5 | if my understanding is incorrect, in the | 14:55:38 |
| 6 | fiscal year ending on June 30, 2020, which | 14:55:41 |
| 7 | encompasses the entirety of the semester | 14:55:43 |
| 8 | that's at issue in this case, USC's total | 14:55:46 |
| 9 | expenses as recorded in this financial | 14:55:50 |
| 10 | statement document decreased over the | 14:55:53 |
| 11 | prior year, correct? | 14:55:56 |
| 12 | A.    Yes, on a consolidated basis | 14:56:03 |
| 13 | across all lines of business and | 14:56:05 |
| 14 | activities. | 14:56:08 |
| 15 | Q.    And USC's operating revenues, as | 14:56:10 |
| 16 | recorded in this audited financial | 14:56:17 |
| 17 | statement, increased by over $100 million | 14:56:22 |
| 18 | in the fiscal year ending June 30, 2020, | 14:56:26 |
| 19 | which, again, include the semester at | 14:56:30 |
| 20 | issue in this case, over the operating | 14:56:32 |
| 21 | revenues that USC recorded the prior | 14:56:36 |
| 22 | fiscal year, correct? | 14:56:40 |
| 23 | A.    Yes, again, based on including | 14:56:41 |
| 24 | all operating segments and all activities. | 14:56:44 |
| 25 | MR. KATRIEL:  Let me see if we | 14:57:07 |

Page 173

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Mr. Condell confirmed that USC focuses on | 15:33:13 |
| 2 | the cost related to delivering education | 15:33:18 |
| 3 | when setting its tuition." | 15:33:20 |
| 4 | Do you see that? | 15:33:22 |
| 5 | A.    I do. | 15:33:22 |
| 6 | Q.    And you reference that with | 15:33:22 |
| 7 | footnote 168, which you reference as being | 15:33:25 |
| 8 | based on a discussion you had with Gregory | 15:33:31 |
| 9 | Condell. | 15:33:31 |
| 10 | Do you see that? | 15:33:34 |
| 11 | A.    I do. | 15:33:35 |
| 12 | Q.    Okay.  And then if we flip the | 15:33:35 |
| 13 | page to page 32, and we look at the first | 15:33:38 |
| 14 | full paragraph, which is paragraph 63, you | 15:33:44 |
| 15 | write at paragraph 63 the following, you | 15:33:49 |
| 16 | say:  "Additionally, USC does not base its | 15:33:52 |
| 17 | tuition level on students' willingness to | 15:33:57 |
| 18 | pay, and tuition is not the amount | 15:33:58 |
| 19 | determined by market supply and demand." | 15:34:02 |
| 20 | Do you see that? | 15:34:05 |
| 21 | A.    I do. | 15:34:06 |
| 22 | Q.    And you also reference that | 15:34:07 |
| 23 | through footnote 176 to have been based on | 15:34:09 |
| 24 | a discussion with Gregory Condell, right? | 15:34:12 |
| 25 | A.    Yes. | 15:34:15 |

Page 186

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.    Was this a phone conversation, | 15:34:16 |
| 2 | an in-person conversation with | 15:34:23 |
| 3 | Mr. Condell?  Do you know how that came | 15:34:25 |
| 4 | about? | 15:34:27 |
| 5 | A.    It was a phone conversation. | 15:34:27 |
| 6 | Q.    Did you record it? | 15:34:30 |
| 7 | A.    No. | 15:34:32 |
| 8 | Q.    Did you take notes? | 15:34:34 |
| 9 | A.    I did not. | 15:34:37 |
| 10 | Q.    Okay.  So this is based on your | 15:34:38 |
| 11 | recollection of what Mr. Condell | 15:34:41 |
| 12 | represented to you during the telephone | 15:34:42 |
| 13 | call; is that fair? | 15:34:43 |
| 14 | A.    I was working on the report at | 15:34:47 |
| 15 | the time -- | 15:34:49 |
| 16 | Q.    Uh-huh. | 15:34:49 |
| 17 | A.    -- and for the inputs that he | 15:34:49 |
| 18 | provided me, I put that into the report | 15:34:51 |
| 19 | and cited directly to my discussion with | 15:34:55 |
| 20 | Mr. Condell. | 15:34:58 |
| 21 | Q.    I want to make sure I understand | 15:34:58 |
| 22 | what you are stating at paragraph 63 when | 15:35:03 |
| 23 | you say that, "USC does not base its | 15:35:08 |
| 24 | tuition level on students' willingness to | 15:35:12 |
| 25 | pay, and tuition is not the amount | 15:35:14 |

Page 187