COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE
BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Action Filed: May 7, 2020<br>Action Consolidated: July 17, 2020<br>Trial Date: January 9, 2024 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' NOTICE OF SUPPLEMENTAL
AUTHORITY ISO OPPOSITION TO CLASS CERT.
CASE NO. 2:20-CV-4066-DMG-PVC

Defendants University of Southern California and The Board of Trustees of the University of Southern California (collectively, "Defendants"), by and through their counsel of record, hereby file this Notice of Supplemental Authority in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 146) ("Opposition").

After the filing of the Opposition, the Tenth Circuit Court of Appeals issued a decision in the *Evans v. Brigham Young University* matter (cited at Opposition, p. 7, n.4), which upheld the district court's denial of class certification and supports the arguments set forth Defendants' Opposition. A true and correct copy of the Tenth Circuit decision, *Evans v. Brigham Young Univ.*, No. 22-4050, 2023 WL 3262012 (10th Cir. May 5, 2023), is attached hereto as **Exhibit A**.

Dated: May 12, 2023

COOLEY LLP

*/s/ Leo P. Norton*
Leo P. Norton (216282)

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA

# Exhibit A

2023 WL 3262012
Only the Westlaw citation is currently available.
United States Court of Appeals, Tenth Circuit.

ROSCOE EVANS, an individual on behalf of himself and all others similarly situated, Plaintiff - Appellant,

v.

BRIGHAM YOUNG UNIVERSITY, a Utah corporation, Defendant - Appellee.

No. 22-4050
|
May 5, 2023

(D.C. No. 1:20-CV-00100-TS-CMR)

(D. Utah)

Before TYMKOVICH, BACHARACH, and PHILLIPS, Circuit Judges.

### ORDER AND JUDGMENT*

Gregory A. Phillips Circuit Judge

**\*1** The COVID-19 pandemic disrupted life for people around the world. College students were no exception. When the pandemic hit in March 2020, universities across the country shut down their campuses, and students finished their classes online. Named Plaintiff Roscoe Evans was one of these affected students. After Brigham Young University (BYU) moved the last month of its Winter 2020 semester online because of the pandemic, Evans brought a class-action lawsuit on behalf of all persons who paid tuition or fees to attend in-person classes at BYU. The district court denied class certification because this class wasn't ascertainable. Evans's proposed class left the district court unable to discern who actually paid a student's tuition and whether the payor did so for the purpose of attending in-person classes. Because the district court did not abuse its discretion when it denied class certification, we affirm the district court's order.

### BACKGROUND

Evans registered for Winter 2020 semester classes at BYU. As part of class registration, Evans paid $2,895 in tuition and fees. The payment came from various sources, including his personal contributions, family contributions, and a federal direct subsidized loan. Tuition at BYU ranged from $2,800 to $5,900 per semester for undergraduate students and $430 to $860 per credit hour for graduate students. The tuition was the same whether a student enrolled in in-person or online classes.

Evans also signed a Financial Responsibility Declaration (FRD), which stated that he "accept[ed] full responsibility to pay all tuition, fees, and other associated costs assessed as a result of [his] registration and/or receipt of services." [1] BYU required all enrolled students to sign the FRD for each school year that they attended classes. Had Evans not signed the FRD, he could not have registered for classes or used campus services.

The Winter 2020 semester started on January 6, 2020. Two months later, on March 6, 2020, the Utah Governor declared a "State of Emergency" to "prepare for the likely arrival of the [COVID-19] virus in Utah." Exec. Order, Declaring a State of Emergency Due to Infectious Disease Covid-19 Novel Corona Virus (Utah Mar. 6, 2020), https://governor.utah.gov/eo-2020-1/. Soon after—in response to the pandemic—BYU moved all in-person classes online. From March 13, 2020, until the semester's end on April 15, 2020,[2] BYU conducted classes by online instruction. BYU also closed many campus facilities, including its health center and fitness centers, and canceled attendance at in-person events such as sporting matches and commencement. Evans alleges that as a result, all students could not use campus facilities and receive the in-person instruction that they expected when they paid tuition for the Winter 2020 semester.

**\*2** The University did not refund any portion of the students' tuition or fees. The University continued online instruction through the rest of 2020. Despite the partially online education, Evans completed his classes for the Winter 2020 semester and obtained his bachelor's degree in computer science from BYU at the end of the Winter 2021 semester.

In response to the unexpected switch to online education, Evans brought a class-action lawsuit against BYU under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).[3] He alleged two grounds for relief: breach of contract and unjust enrichment. Evans stated that BYU had breached its contract with students by failing to "provide an in-person and on-campus live education" during semesters that moved to online classes because of COVID-19. Once students had paid their tuition and fees, they expected "in-person and on-

campus educational services," but they did not receive the full benefit of the promised in-person education.

Evans alleged that BYU had been unjustly enriched when it retained all tuition payments. Evans and the class "paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that BYU [had] previously marketed, promoted, or made available prior to Covid-19." But BYU "retained the benefits of the amount of tuition and fees that Plaintiffs have provided – without providing the benefits that Plaintiffs are owed."

After BYU responded to the complaint, Evans moved for class certification. Evans asked the district court to certify the following class:

> All persons who paid tuition and/or the Mandatory Fees to attend in-person class(es) during the Winter 2020 term/semester affected by COVID-19 at BYU and had their class(es) moved to online only learning.

App. vol. 1, at 49. Evans argued that the proposed class met all four requirements of Federal Rule of Civil Procedure 23(a). Specifically, Evans assured the district court that the proposed class met Rule 23(a)(1)'s numerosity requirement because about 33,000 students were enrolled at BYU for the 2019–2020 school year.

BYU opposed class certification, in part because it could not ascertain the identity of "all persons who paid tuition" in the proposed class definition. BYU pointed out that it "receives tuition payments for students from a variety of sources," including family members, individual students, loans, grants, and scholarships. Because BYU lacked records showing who paid the tuition for individual students, it contended that it could not identify the class members. And since the class was unascertainable, BYU contended that the proposed class did not satisfy Rule 23(a)(1)'s numerosity requirement.

The district court held a hearing on the motion for class certification, where it alerted the parties that it was "concerned about ascertainability and whether or not this class is identifiable." In response to this concern, Evans stated that he didn't "see ascertainability as much of a problem" because "[t]he students were the obligors of the payment of tuition and fees." He contended that any other view would "eviscerate basic contract law." The district court asked Evans if he could "identify ... the number of students who actually paid their own tuition and fees during the winter semester of 2020[.]" Evans admitted that he could not "because that was not subject to discovery" but "didn't envision that as being material to the definition of the class."

*3 BYU also addressed this issue, stating that "the proposed class is not talking about family and friends giving students money and then the students pay [tuition to BYU]." "Rather, their proposed class is persons who actually paid the tuition to BYU. That definition necessarily requires the Court to determine who are all such persons." Because BYU lacked records showing who had paid tuition for individual students, it argued that the district court would need "to conduct an individual and administratively unfeasible inquiry to determine who made all tuition payments for all 30 some odd thousand students during that winter of 2020 semester."

In response, Evans stated that BYU credited the students (not third-party payors) once tuition and fees were paid into the student's account. And it was the students who could not attend in-person classes if they did not pay tuition. The agreement to pay tuition in exchange for class registration "is between the university and the student." Evans concluded by stating that the court's "question about ascertainability really goes to damages."

After the hearing, the court issued a written order denying Evans's motion for class certification. *Evans v. Brigham Young Univ.*, No. 20-CV-100-TS, 2022 WL 596862 (D. Utah Feb. 28, 2022). The court noted that a proposed class must satisfy all four threshold requirements of Federal Rule of Civil Procedure 23(a). *Id.* at *2. But Evans's proposed class could not satisfy Rule 23(a)(1)'s numerosity requirement. *Id.* at *3–4. Though Evans "identified 33,000 BYU students enrolled during the Winter 2020 semester," he could not identify "any ascertainable number of individuals who paid tuition to attend in-person classes." *Id.* at *3.

The court noted two main problems with Evans's ascertainability showing. First, BYU's records did not "reflect whether the student or a third party paid the tuition." *Id.* (footnote omitted). And so the proposed class was "not identifiable by 'objective criteria'" because BYU did not

have records of "*all people* who paid tuition and/or fees to attend in-person class(es) during the Winter 2020 semester." *Id.* (footnote omitted). Even though Evans argued that the students were responsible to pay tuition and fees under the FRD, the court noted that the "plain language" of the proposed class definition was " 'all persons who paid tuition and/or fees to attend in person classes,' not all students who signed a[n] [FRD]." *Id.* at *4.

Second, even if the proposed class could be identified using only the FRD, all students (regardless of whether they were enrolled in on-campus or online classes and regardless of whether they paid tuition and fees themselves) signed the FRD. *Id.* Thus, "the Court would have to individually inquire whether [the students who paid their own tuition] made those payments *to attend in-person classes*." *Id.* (emphasis added). The court found that this type of individualized inquiry was not administratively feasible. *Id.* Because Evans's proposed class was unascertainable, "class certification [was] inappropriate." *Id.* The district court came to this conclusion without discussing the remaining Rule 23(a) threshold requirements.

Evans now appeals the district court's order denying class certification. We have interlocutory appellate jurisdiction to review "an order granting or denying class-action certification." Fed. R. Civ. P. 23(f). A separate panel granted Evans's Rule 23(f) Petition for Permission to Appeal, so we now review the district court's order. 28 U.S.C. § 1292(e); *Microsoft Corp. v. Baker*, 582 U.S. 23, 30 (2017).

### STANDARD OF REVIEW

The district court enjoys "considerable discretion" when conducting the Rule 23 class-certification analysis, and "we defer to the district court's certification ruling if it applies the proper Rule 23 standard and its decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quoting *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (quotations omitted)). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of practicalities and prudential considerations." *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (citations and quotations omitted). The district court abuses its discretion when it decides a case "on either a clearly erroneous finding of fact or conclusion of law or by manifesting a clear error of judgment." *Stricklin*, 594 F.3d at 1194 (citing *Vallario*, 554 F.3d at 1264).

**\*4** We apply de novo review only when evaluating "[w]hether the district court applied the correct legal standard in its decision to grant or deny class certification." *Shook v. El Paso County* (*Shook I*), 386 F.3d 963, 967 (10th Cir. 2004) (citation omitted). [4] In his reply brief, Evans asks us to review the district court's interpretation of his proposed class definition de novo.

His sole citation for de novo review is one Seventh Circuit case, *In re Motorola Securities Litigation*, 644 F.3d 511 (7th Cir. 2011). In *Motorola*, the Seventh Circuit reviewed de novo the district court's interpretation of a class-action settlement agreement. *Id.* at 516–17. A settlement agreement is a contract, *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013), and we also review contracts (including a district court's interpretation of a settlement agreement) de novo, *Scrivner v. Sonat Expl. Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001). But because Evans's case does not involve a class-action settlement agreement, *Motorola* is not on point.

The district court did not interpret Evans's proposed class definition as part of a settlement agreement (as the Seventh Circuit did in *Motorola*). See *Motorola*, 644 F.3d at 516. If the district court had interpreted Evans's proposed class definition in a settlement agreement, we could have reviewed that determination de novo. See *Scrivner*, 242 F.3d at 1291 (citation omitted). We apply a different standard of review when analyzing the district court's interpretation of a class-action settlement agreement. *Id.* But the district court interpreted the proposed class definition as part of its decision to deny class certification before Evans proceeded with further litigation. The district court has broad discretion to make this decision, and its interpretation of the proposed class definition is part of that discretion. See *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1086–87 (10th Cir. 2021) (quoting

*Vallario*, 554 F.3d at 1264). Thus, *Motorola* does not persuade us to apply de novo review on appeal.

Evans also claims that we can rely on *Motorola*'s de novo standard of review "because the nature of the action is a breach of contract claim." But at the class-certification stage, we seldom evaluate the merits of the underlying claims. *CGC Holding Co., v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citations omitted) ("For the purposes of class certification, our primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims."). Thus, the merits of Evans's claims—like whether there was a contract breach—are not relevant at this interlocutory stage. We are concerned only with the district court's order denying class certification.

*5 Finally, Evans argues that the "district court did not have discretion to parse the class definition in a way that is inconsistent with ... [contract] law." And he claims that the district court's decision to interpret the language of the proposed class definition to find that "persons who paid" was unascertainable justifies de novo review. But Evans has not provided us with any legal authority to support this claim, nor can we find any. In fact, we have authority stating the opposite. "The district court has broad discretion to determine whether the class description is sufficiently definite." *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (cleaned up); *see also J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999) ("The decision to grant or deny certification of a class belongs within the discretion of the trial court." (citation and quotations omitted)). Interpretation of the proposed class definition at the class-certification stage falls under the district court's discretionary umbrella.

The district court correctly applied Rule 23(a)(1) to analyze Evans's proposed class. Because the district court applied the correct Rule 23 standard, we review the district court's order denying Evans's motion for class certification for abuse of discretion. *Stricklin*, 594 F.3d at 1194.

Federal Rule of Civil Procedure 23(a) requires that a plaintiff seeking to certify a class-action lawsuit satisfy these four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Put simply, "the class must demonstrate the requisite *numerosity*, *commonality*, *typicality, and adequacy* to proceed with a class action." *CGC Holding Co.*, 773 F.3d at 1086. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted).

The named plaintiff bears the burden of showing that the proposed class complies with Rule 23's requirements. *Wallace*, 725 F.3d at 1218 (quoting *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006)). The plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350.

The district court found that Evans's proposed class failed to meet Rule 23(a)(1)'s numerosity requirement. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., v. EEOC*, 446 U.S. 318, 330 (1980). In our circuit, we treat ascertainability as a sub-requirement of numerosity. To show numerosity, "there must be presented some evidence of established, *ascertainable* numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978) (emphasis added).

**DISCUSSION**

Numerosity is essential because the "district court cannot determine whether a proposed class satisfies the Rule 23 requirements without a way to identify absent class members." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (19th ed. 2019); *see also Rex*, 585 F.2d at 436. If the district court cannot ascertain who falls into the class, then it cannot evaluate whether the class is so numerous that joinder is impracticable. McLaughlin, *supra*, § 4:2 (citing Fed. R. Civ. P. 23(a)(1)). A court may "properly look below the surface of a class definition to determine whether the actual process of ascertaining class membership will necessitate delving into individualized or subjective determinations." *Id.* (citations omitted).

**\*6** Evans argues that the district court's numerosity analysis was flawed for two reasons: (1) the court "critically misread" the word "paid" in the class definition to require individualized inquiry, and (2) the court should have found that the proposed class was ascertainable under Third and Seventh Circuit standards. We consider each in turn.

**I. The district court did not abuse its discretion when it found that individualized inquiries were necessary to determine who actually paid tuition.**

In the district court, BYU said that it does not have records of who actually paid tuition. Thus, the proposed class definition included both students who paid the tuition themselves and unascertainable third-party payors such as family members who paid tuition on the students' behalf. From this, the court determined that it would need to "individually inquire into all 33,000 BYU students enrolled during the Winter 2020 semester to determine who paid tuition—the student or a third party." *Evans*, 2022 WL 596862, at \*4.

Evans contests this reading, pointing out that "only enrolled students of [BYU] can possibly be members of Evans' proposed class." He gives three reasons for this. First, the proposed class definition reads, "all persons who paid ... *to attend in-person class(es)*." Second, only students—not third-party payors—sign the FRD. And finally, there is no evidence that students can assign their rights to receive an education or their obligations to pay tuition and fees to another person. In Evans's view, the district court erroneously "presumed the word 'paid' limited the scope of the class to only those students who received no funds from third parties to put towards their tuition." He contends that there was "no sound legal or logical basis for the District Court's construction of the class definition."

Even though Evans insists that "the class definition can only be interpreted as describing *students*," the district court didn't abuse its discretion because the word "students" did not appear in that definition. *See* 5 James W. Moore et al., *Moore's Federal Practice*, 23:21 (3d ed. 1997) ("There can be no class action if the proposed class is ... 'imprecise.' "). The district court could rely on the plain language of the proposed class definition, which does not include the word "students." And though Evans claims that the district court "misconstrued the proposed class definition" by reading it to include "only students who paid for educational services out of their own pockets," this reading was not outside the bounds of rational choices. *Stricklin*, 594 F.3d at 1194 (citing *Vallario*, 554 F.3d at 1264).

Most importantly, Evans misses the broader point. He drafted the proposed class language, and that language did not confine itself to students. The plaintiff is the master of his own class definition. *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021) (emphasizing that the plaintiff controls her own class definition). Evans could have narrowed his class definition to clear up ambiguity over "persons who paid." As BYU correctly notes, Evans "cannot escape the parameters of his own chosen class definition." The district court need not identify a legal principle for reading the plain language of "persons who paid tuition" to include third-party payors.

And Evans's ascertainability problem does not center on the word "paid" alone. The district court could not identify "all persons who paid ... to attend in-person classes" without first identifying all third-party payment sources for tuition and then inquiring into the subjective state of mind for each student—Why did they pay tuition? *Evans*, 2022 WL 596862, at \*3–4. As BYU explained, this question would require the district court to individually ask each potential class member whether they paid the tuition for the purpose of attending in-person classes, pandemic or not. There are no records to answer this question. And though Evans contends that "[t]he subjective beliefs of students ... are irrelevant to the merits of their claims," he cannot show that the district court's reading of the class definition was an abuse of discretion. Because the district court is "in the best position to determine the facts of the case [and] to appreciate the consequences of alternative methods of resolving the issues of the case," we cannot say that the district court abused its discretion when it found

Case 2:20-cv-04066-DMG-PVC Document 193 Filed 05/12/23 Page 9 of 14 Page ID #:8776
ROSCOE EVANS, an individual on behalf of himself and..., Not Reported in Fed....
2023 WL 3262012

that Evans's proposed class definition was unascertainable." *Hart*, 186 F.3d at 1289 (citation omitted).

**\*7** Evans also argues that BYU has not "ever identified a legal reason why the original source of a student's tuition and fee payments has any relevance to the validity of a student's breach of contract claim against [BYU]." And he directs us to the Restatement (Second) of Contracts' illustration of contract delegation. Because the students delegated their tuition-payment obligation to third-party payors, Evans contends that "the legal meaning of 'pay' includes delegated payments." Reply Br. 5–6 (citing Restatement (Second) of Contracts § 318 & cmt. a (Am. L. Inst. 1981)).

But the district court did identify a legal reason why the original source of a student's tuition payment mattered: the original source of payment governs whether the class is ascertainable. *Evans*, 2022 WL 596862, at \*3–4. BYU did not have the records identifying the original source of a student's tuition. And the district court need not identify a contractual principle to support its discretionary decision to deny class certification. "When applying an abuse of discretion standard of review, we necessarily recognize that there may be no single right answer to the question at hand, but a range of possible outcomes sustainable on the law and facts," and we will "defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *Shook v. Bd. of Cnty. Comm'rs* (*Shook II*), 543 F.3d 597, 603 (10th Cir. 2008).

Finally, Evans asks us to evaluate *Little v. Grand Canyon University*, No. CV-20-795-PHX-SMB, 2022 WL 266726 (D. Ariz. Jan. 28, 2022) (unreported), and *Arredondo v. University of La Verne*, No. 20-CV-7665-MCS-RAO, 2022 WL 3222376 (C.D. Cal. Aug. 2, 2022) (unreported), and to use those cases as the basis for reversing the district court. In both cases, the district courts found that proposed classes of college students whose Spring 2020 semesters were disrupted by COVID-19 were ascertainable despite the potential complication of third-party payors.[5] *Little*, 2022 WL 266726, at \*5; *Arredondo*, 2022 WL 3222376, at \*6.

But the fact that other district courts may have come to a different conclusion does not persuade us that the district court abused its discretion in denying Evans class certification.[6] *See Shook II*, 543 F.3d at 603–04. Because class certification "is such a fact-specific inquiry, we grant wide latitude to the district court in making this [numerosity] determination." *Trevizo*, 455 F.3d at 1162 (citation omitted). And the district court "carefully reviewed the record and made an appropriate judgment call," so out-of-circuit district-court cases do not persuade us that there was an abuse of discretion. *Id.*; *see also United States v. Baker*, 769 F.3d 1196, 1200 n.5 (10th Cir. 2014) ("To the extent that any of these [unreported district-court] cases may be in tension with our opinion, we simply note that they are not binding precedent for our court.").

**\*8** Because the district court's Rule 23 analysis was free from legal errors, and because it was rational for the district court to read "persons who paid tuition" to include third-party payors, there is no abuse of discretion.

**II. The district court did not abuse its discretion by finding that the proposed class was unascertainable by out-of-circuit standards.**

Evans argues that "even if the District Court acted within its discretion when it analyzed the proposed class using [out-of-circuit] standards, it nevertheless abused its discretion when it held that the proposed class could not meet them" because "[t]he proposed class clearly satisfies either standard." The district court discussed both the Third Circuit and Seventh Circuit standards for ascertainability in its order denying class certification. *Evans*, 2022 WL 596862, at \*3. And though the court correctly recognized that our circuit "has not explicitly adopted either approach," it found that Evans's proposed class could not meet "either standard." *Id.*

The Third Circuit uses a stringent two-element test for ascertainability, requiring that (1) the class be objectively defined, and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013) (citation omitted). The Seventh Circuit declined to adopt this exact test but similarly requires that a plaintiff show ascertainability by "defining classes clearly and with objective criteria." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 672 (7th Cir. 2015). We have not adopted either standard, but we allow district courts to consider these tests as part of their discretion to grant or deny class certification. *Davoll*, 194 F.3d at 1146 (affirming a district court's denial of class certification

where the district court used the "administratively feasible" standard to determine whether class certification was proper).

Evans doesn't appear to contest the district court's use of Third and Seventh Circuit ascertainability standards. But to the extent that he does contest the use of those standards, our decision in *Davoll* permits district courts to use out-of-circuit standards when evaluating ascertainability. *Id.*

Evans claims that his proposed class is ascertainable under both the Third and Seventh Circuit standards because BYU has records of all students who (1) signed an FRD, (2) enrolled for the Winter 2020 semester for in-person classes, and (3) satisfied their tuition obligations for Winter 2020. So the district court's conclusion that it "would have to individually inquire into all 33,000 BYU students ... to determine who paid tuition" was incorrect. Evans argues that the court needs to look only at BYU's records to determine whether the full amount of tuition was paid (no matter who paid it).

BYU does have records of all students who enrolled in only in-person classes for the Winter 2020 semester and its overall tuition-and-fees revenue for that semester. But the language of the proposed class definition required the court to discern "[a]ll persons who paid tuition." The district court found that BYU's records did not differentiate between a student or third party paying the tuition. *Evans*, 2022 WL 596862, at *3. The record supports this finding. App. vol. 1, at 79. The district court's ruling that it was unascertainable who was part of this class (absent individualized inquiry into the source of each student's tuition payment) was not an abuse of discretion. Evans's attempt to rewrite his class definition on appeal—by explaining to us what it actually meant—is unpersuasive.

**\*9** The language of the proposed class definition also required the court to ascertain whether individual students paid tuition to attend in-person classes, pandemic or not. It is equally likely that students paid tuition to attend classes unless a public-health emergency broke out. *See Evans*, 2022 WL 596862, at *4 ("[T]he Court would have to individually inquire whether they made those [tuition and fee] payments to attend in-person classes."). And this individualized inquiry into the subjective mindset of each student makes ascertainability difficult. The district court did not abuse its discretion by denying class certification on that basis.

Evans argues that the FRD solves any cognizable ascertainability problem. And the court acknowledged that the FRD might have solved this problem *if* the FRD was part of the proposed class definition. "[T]he plain language of the class definition in Plaintiff's Motion includes 'all persons who paid tuition and/or fees to attend in-person classes,' not all students who signed a[n FRD]." *Id*. Even then, the FRD does not require "that students pay tuition themselves." *Id.* If Evans wanted his proposed class definition to reflect students who enrolled for in-person classes or signed an FRD, he should have drafted his class definition differently.

The court also acknowledged that, though a third-party payor might not affect the FRD or the student's tuition obligation, the proposed class definition referenced "all persons who paid tuition and/or Mandatory Fees to attend in-person class(es)." *Id.* And because Evans could not point out any "records or alternatives that could objectively identify an ascertainable number of individuals that would be included in the proposed class," i.e., any person who paid for a student's tuition, Evans's class wasn't ascertainable by objective criteria. *Id.* The district court is in the best position to evaluate the facts and available records. *Hart*, 186 F.3d at 1289 (citation omitted). The court made its decision based on the plain language of Evans's proposed class definition. "Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" Moore et al., *supra*, § 23.21 (footnotes omitted).

Even if we disagreed with the district court's reading of the proposed class definition or its finding that the proposed class was unascertainable, it would not justify reversal for abuse of discretion. *Shook II*, 543 F.3d at 603–04 ("While we very well may have made a different decision had the issue been presented to us as an initial matter, and while other district courts perhaps could have chosen ... to certify similar classes, we cannot say the district court's assessment was beyond the pale."). The district court did not abuse its discretion by ruling that the class was not administratively feasible to identify.

## CONCLUSION

The district court acted within its discretionary bounds when it denied Evans's motion for class certification. We will not disturb its ruling. We affirm the district court's order denying class certification. We also grant Evans's unopposed motion to seal volume 2 of the appendix.

Entered for the Court

**TYMKOVICH**, Circuit Judge, dissenting.

Evans's proposed class is "All persons who paid tuition and/or the Mandatory Fees to attend in-person class(es) during the Winter 2020 term/semester affected by COVID-19 at BYU and had their class(es) moved to online only learning." App., Vol I, 49.

In its order denying class certification, the district court determined that this proposed class was not identifiable by "objective criteria," and therefore failed 🚩Rule 23(a)(1)'s implicit ascertainability standard, namely whether the plaintiff can "produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978). In its reasoning, the district court adopted BYU's interpretation that no one could tell whether the proposed class included only students, or also their parents, lenders, or benefactors who might have paid the bills on their behalf. In contrast, Evans maintained that even if a third party paid the tuition, the *student* should be deemed the one who paid since it was the student who is legally responsible for paying tuition.

 ***10** The district court remained unconvinced, finding the plain language of Evans's class definition rendered any putative class unascertainable because Evans failed to identify any records or alternatives that could objectively identify such class members. App., Vol. I, 168. The court also found that Evans's proposed class was not "administratively feasible" because the court would have to individually inquire of all 33,000 BYU students enrolled during the Winter 2020 semester to determine who paid their tuition—the student or a third party—and whether they did so to attend in-person classes. *Id.*

This interpretation is in my view not a plausible reading of the proposed class. Instead, it obfuscates a readily identifiable proposed class: students who paid tuition or fees to attend in-person classes and who subsequently had their classes moved to online only during the Winter 2020 semester. Read in context, the proposed class refers *only* to enrolled students.

This is so for three reasons. *First*, the definition refers to "persons who paid tuition ... *to attend* in-person class(es)[.]" App., Vol I, 49. (emphasis added). Even if a student's lender or parent arguably "pays" tuition on his behalf, that payor does not do so "to attend" classes at BYU. [1] No one would expect a parent, lender, or scholarship benefactor to be able to show up on campus and sit in for his student's Econ 101 class.

*Second*, prior to the beginning of each semester, BYU requires students, and only students, to agree to the Financial Responsibility Declaration. That Declaration states, in relevant part, "I understand that when I register for any class or receive any service ... I [the student] accept full responsibility to pay all tuition, fees, and other associated costs assessed as a result of my registration and/or receipt of services." App., Vol. II, 9. The Declaration also states that a student's failure to agree to the form "will result" in the student's "inability to register for class or receive other campus services." *Id.* Thus, the only persons who contractually owed the university tuition and fee payments were the students, and BYU only owed "campus services" to the students, not any third-party payors. Likewise, no one would expect BYU to sue a parent, lender, or scholarship benefactor when the student failed to live up to his contractual obligation.

*Third*, there is no indication—from any source in the record or any argument made by BYU—that students can assign their rights to receive educational services from the university, or their obligations to pay tuition and fees, to anyone else. BYU decides whether to offer admission to students, and once admitted and enrolled, students cannot give their seats to others. The Financial Responsibility Declaration also belies any suggestion that anyone other than the student is obligated to pay the student's bill. A person's use of borrowed or gifted money to fulfill a contractual promise to pay money does not mean the person failed to "pay," nor would such methods of payment impair that person's right to enforce promises made by the counterparty.

 ***11** The Restatement (Second) of Contracts helpfully explains this concept as follows: "An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise." Restatement (Second) of Contracts § 318 (1981); *see also id.* cmt. a., Ill. 1 ("[Evans] owes [BYU] $100, and asks [his parents] to pay [BYU]. Payment or tender to [BYU] by [his parents] has the effect of payment or tender by [Evans]."). This principle underlies countless contractual exchanges every day: every time someone uses a credit card or delivers the proceeds of a loan to a seller, the purchaser

delegates his performance of payment. These delegations generally do not impair the purchaser's right to enforce the contract of purchase or raise any questions about who the parties to the contract are.

Similarly, if one party's performance is a condition of another party's duty (such as Evans's promise to pay tuition and fees in order to receive services from BYU), the first party may delegate performance "unless the delegation is contrary to public policy or the terms of the agreement." *Id.* § 319; *see also id.* cmt. a., Ill. 1 ("A contracts with B, a city, to clean the streets of B weekly for five years in return for monthly payments. A delegates performance to C, and C substantially performs until B cancels the contract. *C's performance satisfies the condition of B's duty to pay*, whether C is A's agent or an assignee from A.") (emphasis added).

Certainly, students' delegation to lenders, grantors, or other benefactors was not contrary to public policy or a violation of the terms of the students' standardized agreement with BYU. So, the default rule reflected in the Restatement applies here: Any payments made by someone else for the purposes of satisfying the students' debts were—vis-à-vis BYU—legally and contractually indistinguishable from payments students made to the university out of their own savings. In other words, the fact that students' tuition and fee payments may have been made by third parties acting on the students' behalf does not affect the students' entitlement to receive BYU's promised performance.

Other courts have reached the same conclusion in analogous cases. In *Little v. Grand Canyon University*, the plaintiff moved to certify a class defined as: "[a]ll students enrolled in on-campus classes at Grand Canyon University for the Spring 2020 semester and who were charged and paid fees for services, facilities, resources, activities, and/or events that were not provided, in whole or in part, during the Spring 2020 semester." No. CV-20-00795, 2022 WL 266726, at *2 (D. Ariz. Jan. 28, 2022). The university argued that the plaintiff lacked standing because his parents had paid for his room and board, fees, and textbooks. *Id.* at *3.

The district court flatly rejected this argument:

> While Plaintiff's parents paid his fees and costs, he is ultimately the individual who had a contract with GCU. In other words, if he had failed to pay, he—not his parents—would be on the hook. It does not matter how he procured the money to pay his obligations to GCU, it was ultimately his obligation. As Plaintiff points out, if this were not the case, students could rarely sue a university because students often do not have the means to pay their own tuition, fees, and room and board. This would lead to absurd results. It is irrelevant if Plaintiff got the money from his parents, a student loan, or a scholarship. Thus, the Court rejects GCU's argument that Plaintiff lacks standing on this basis.

*Id.* The court also found the proposed class "definite and ascertainable" because the university could "readily ascertain the identity of class members from its records, which should show which students stayed on campus after the campus closure and the amount of fees that each student paid." *Id.* at *5.

**\*12** Similarly, in *Arredondo v. University of La Verne*, the court certified the following class in a university tuition refund case: "[a]ll University of La Verne undergraduate students who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." 618 F. Supp. 3d 937, 948 (C.D. Cal. 2022). The university then moved for class decertification on the grounds that it was "difficult, if not impossible to identify the true payer for class members' tuition costs." *Id.* at 949.

The court rejected the university's argument because third-party grantors or payors paying for class members' education lacked standing to pursue a contract claim regarding education expenses, and those third parties are not the intended beneficiaries of the contract. *Id.* Put differently, the third parties who pay for students' educations do not displace the students' position as the parties in contract with the university.

With the correct definition in mind, Evans's proposed class is *readily* ascertainable under either of the district court's proposed standards. BYU's records certainly permit identification of class members because the school (1) recorded the name of every student who executed the Financial Responsibility Declaration (*i.e.*, paid their tuition)

and enrolled for the Winter 2020 semester; (2) maintains transcripts identifying the classes each student registered for, including whether those classes were originally intended to be held in person or online at the start of the Winter 2020 semester; and (3) maintains meticulous financial records that show the exact amount of money the university received from (or on behalf of) each student for purposes of paying the university's Winter 2020 semester tuition charges.

These records permit a class to be readily identified using Evans's objective criteria: (1) payment of tuition or fees for the Winter 2020 semester; (2) enrollment in an in-person class at the start of the semester; and (3) enrollment in an in-person class that transitioned to online only instruction because of BYU's ad hoc turn to remote instruction beginning in March 2020.[2]

Accordingly, I dissent.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3262012

---

**Footnotes**

1 Evans signed the FRD for the 2019–2020 school year on February 13, 2019. The Fall 2019 school year began on September 5, 2019.

2 The parties do not identify the date at which in-person classes ended and final examinations began.

3 We are not the first circuit to consider a class action brought by students against their universities for moving classes online during the pandemic. *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022); *King v. Baylor Univ.*, 46 F.4th 344 (5th Cir. 2022); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873 (7th Cir. 2022). But we are the first circuit to consider this claim at the class-certification stage.

4 For example, we have reviewed class certification orders de novo when a district court's Rule 23 analysis prematurely focused on the merits of the case, when the district court placed the burden of establishing Rule 23's requirements on the wrong party, and where the district court impermissibly combined the Rule 23(a) and Rule 23(b) analysis. *Shook I*, 386 F.3d at 967–68, 972; *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013); see *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

5 Not all district courts have come to this same conclusion. See *Garcia De León v. N.Y. Univ.*, No. 21-civ-5005 (CM), 2022 WL 2237452, at *4, 8, 10 (S.D.N.Y. June 22, 2022) (unreported) (finding that the proposed class of "all persons who paid fees for or on behalf of students enrolled at New York University" did not meet Rule 23(a)'s typicality and commonality requirements because it was unclear "*who* paid which fees").

6 Neither *Little* nor *Arredondo* involved "all persons who paid" class-certification language. *Little*, 2022 WL 266726, at *2 (seeking class certification for "[a]ll students enrolled in on-campus classes ... for the Spring 2020 semester and who were charged fees for services ... that were not provided"); *Arredondo*, 2022 WL 3222376, at *6 (seeking class decertification for "[a]ll University of La Verne undergraduate students who paid tuition and/or ... Mandatory Fees ... during the Spring 2020 term/semester" (alteration in original)).

1 In a case such as this—*i.e.*, a breach-of-contract case related to a product or service—a class definition must be formed around some variation of the basic construct "all persons who paid for (or paid to receive) [product or service in question] from the defendant." The use of phrases such as "paid for" or "paid to" does not inject a

subjective element into determining the initial question of class membership, and it does not invite an inquiry at the *ascertainment* stage into which product attributes each class member personally cared most about. Those terms simply indicate that the class is formed around the group of people who purchased the same product or service that the claim implicates, nothing more.

2   BYU argues that despite the ascertainability of such a class, a subjective inquiry would still be required to determine whether tuition payments were made for the purpose of attending in-person classes. Contrary to BYU's position that the court must inquire or conduct mini-hearings into why proposed class members paid tuition (*i.e.*, their subjective intent about paying tuition), the court need only pay homage to the contract at the center of this dispute. This is a breach-of-contract case and under Utah law the existence of an implied-in-fact contract "turns on the objective manifestations of the parties' intent." *Wayment v. Schneider Auto. Grp. LLC*, 438 P.3d 1005, 1009 (Utah Ct. App. 2019).

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.