COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE
BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF 146]**<br><br>Action Filed: May 7, 2020<br>Action Consolidated: July 17, 2020<br>Trial Date: January 9, 2024 |

|    |    |
|----|----|
| 1  | Defendants University of Southern California and The Board of Trustees of the University of Southern California (collectively, "Defendants"), by and through their counsel of record, hereby file this Notice of Supplemental Authority in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 146) ("Opposition to Class Certification"). |

Defendants University of Southern California and The Board of Trustees of the University of Southern California (collectively, "Defendants"), by and through their counsel of record, hereby file this Notice of Supplemental Authority in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 146) ("Opposition to Class Certification").

Defendants submit the decision *Fla. Intern. Univ. Bd. of Trustees v. Alexandre*, No. 3D22-0072, 2023 WL 3485498 (Fla. Dist. Ct. App., Third Dist. May 17, 2023) as supplemental authority for their Opposition to Class Certification. Plaintiffs relied on the trial court's decision granting class certification in *Alexandre v. Fla. Intern. Univ. Bd. of Trs.*, 2021 WL 9038526 (Fla. Cir. Ct. Dec. 30, 2021) in support of their motion for class certification. (*See* ECF No. 136 at p. 3.) But after the filing of Defendants' Opposition to Class Certification, the Florida court of appeal reversed the trial court's grant of class certification. A true and correct copy of the decision is attached hereto as **Exhibit A**.

Dated: June 7, 2023

COOLEY LLP

*/s/ Leo P. Norton*
Leo P. Norton (216282)

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA and THE BOARD OF
TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

# Exhibit A

2023 WL 3485498
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

District Court of Appeal of Florida, Third District.

FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, Appellant,
v.
Rebecca ALEXANDRE, etc., et al., Appellees.

No. 3D22-0072
|
Opinion Filed May 17, 2023

**Synopsis**
**Background:** Students, individually and on behalf of a putative class, sued state university board of trustees for breach of contract based on monies paid and services not provided during state-mandated COVID-19 campus closures. The Circuit Court, 11th Judicial Circuit, Miami-Dade County, William Thomas, J., certified the class and denied board's motion to dismiss based on sovereign immunity. Board appealed.

**[Holding:]** The District Court of Appeal, Bokor, J., held that students failed to meet their burden to show an express, written contract overcoming general rule of sovereign immunity for governmental entities.

Reversed and remanded. Question certified.

**Procedural Posture(s):** Interlocutory Appeal; Motion to Dismiss; Motion to Certify Class.

West Headnotes (10)

**[1] Contracts**
To overcome sovereign immunity, a breach of contract claim must rely on an express, written contract.

**[2] Appeal and Error**
Appellate court reviews trial court's determination regarding sovereign immunity, a question of law, de novo.

**[3] Pretrial Procedure**
In considering a motion to dismiss, trial court is bound by "four corners rule" to consider only evidence alleged in complaint and its incorporated attachments, construed in light most favorable to non-moving party.

**[4] Pretrial Procedure**
A motion to dismiss is designed to test legal sufficiency of complaint, not to determine factual issues.

**[5] States**
Sovereign immunity shields state entities, such as public universities, from liability except where expressly authorized by law.

**[6] States**
Typically, any waiver of sovereign immunity must be clear and unequivocal.

**[7] States**
Where the state has entered into a contract fairly authorized by powers granted by general law, defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract, but this applies only to the state's breach of an express, written contract, as opposed to an implied contract.

**[8] Education**
Students, suing state university board of trustees for breach of contract based on monies paid

and services not provided during state-mandated COVID-19 campus closures, failed to meet their burden to show an express, written contract overcoming general rule of sovereign immunity for governmental entities; operative complaint incorporated no documents containing express terms requiring university to provide on-campus or in-person service as an exchange for fees, student charging statements contained itemized lists of paid charges but no express terms, statute authorizing fees at issue made no provision for what specific services had to be provided, and no documents obligated university to refund fees when any services were paused, limited, or outright cancelled. 🚩Fla. Stat. Ann. § 1009.24(14); Fla. R. Civ. P. 1.130(a).

[9] Education 🔑

While a student's relationship with his university is contractual in nature, it is an implied contract and not an express, written contract.

[10] Evidence 🔑

Trial court, in students' breach of contract class action against state university board of trustees based on monies paid and services not provided during state-mandated COVID-19 campus closures, could not take judicial notice of additional documents disclosed during discovery for purposes of board's motion to dismiss based on sovereign immunity, absent a stipulation from the parties, where these documents were not incorporated into operative complaint except through a vague reference to putative contracts "likely consisting of other documents."

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge. Lower Tribunal No. 21-9869

**Attorneys and Law Firms**

Isicoff Ragatz, and Eric D. Isicoff, Teresa Ragatz and Matthew L. Lines, for appellant.

The Moskowitz Law Firm, PLLC, and Adam M. Moskowitz and Howard M. Bushman and Adam A. Schwartzbaum and Barbara C. Lewis, for appellees.

Before LOGUE, MILLER and BOKOR, JJ.

**Opinion**

BOKOR, J.

*1 [1] Rebecca Alexandre and Sarah Fagundez, individually and on behalf of a putative class (collectively referred to as "Alexandre"), sued the Florida International University Board of Trustees ("FIU") for breach of contract based on monies paid and services not provided during state-mandated COVID-19 campus closures throughout the 2020 school year. Alexandre sought class certification for such claims. FIU sought dismissal, claiming sovereign immunity, and opposed class certification. The trial court denied FIU's motion to dismiss and certified the class. FIU appeals. To overcome sovereign immunity, a breach of contract claim must rely on an express, written contract. Because, as explained below, Alexandre alleges no such express, written contract, we reverse. [1]

**FACTS AND PROCEDURAL HISTORY**

In March 2020, the Florida Department of Education temporarily closed all Florida colleges and universities due to the COVID-19 novel coronavirus pandemic. [2] Accordingly, FIU established mandatory distance learning protocols during the Spring, Summer, and Fall 2020 semesters, rendering most in-person and on-campus services and facilities unavailable or substantially limited during the closures.

Alexandre, individually and on behalf of a putative class of current and former FIU students enrolled in FIU during the relevant semesters, sued for breach of contract and unjust enrichment on the grounds that FIU failed to provide them with any benefit from their continued payment of certain mandatory health, athletics, transportation, and student activity fees during the campus closures. In support of their breach of contract claims, Alexandre proffered charging statements confirming payment of the mandatory fees along with other documents attached to the operative complaint. Alexandre asserted that these documents, in conjunction with the statutes authorizing the fees and other as-yet undiscovered documents that "likely" exist, constituted an express contract

requiring FIU to provide specific services in exchange for payment of the student fees.

FIU moved to dismiss, arguing in pertinent part that the operative complaint failed to allege an express, written contract sufficient to waive FIU's sovereign immunity. The trial court granted dismissal of the unjust enrichment claim but denied dismissal as to the breach of contract claim, finding that, through the combination of invoices, clickwrap, portions of the student handbook, and statutes, Alexandre established the existence of an express, written contract to provide the specified services in exchange for the fees. In addition to the receipts of payment, the trial court relied in part on additional documents provided by FIU as responsive discovery following the denial of its motion for protective order, including the student handbook, student enrollment agreements, and consent agreements incorporating the terms of FIU's policies. FIU now appeals.[3]

## ANALYSIS

 *2  [2]   [3]   [4]  "We review the trial court's determination regarding sovereign immunity, a question of law, de novo." Dist. Bd. of Trs. of Miami-Dade Coll. v. Verdini, 339 So. 3d 413, 417 (Fla. 3d DCA 2022). In considering a motion to dismiss, the trial court is bound by the "four corners rule" to consider only the evidence alleged in the complaint and its incorporated attachments, construed in the light most favorable to the non-moving party. See id.; Rolle v. Cold Stone Creamery, Inc., 212 So. 3d 1073, 1076 (Fla. 3d DCA 2017). "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues ...." The Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006); see also Howard v. Greenwich Ins. Co., 307 So. 3d 844, 848 (Fla. 3d DCA 2020) ("This court has followed the general rule that a court may not look beyond a complaint and its attachments ... when ruling on a motion to dismiss."); Llanso v. WNF Law, P.L., 306 So. 3d 221, 223 (Fla. 3d DCA 2020) (reversing dismissal because "the trial court considered matters that were outside the four corners of Llanso's complaint").

 [5]   [6]   [7]  Sovereign immunity shields state entities, such as public universities, from liability except where expressly authorized by law. See, e.g., Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005). Typically, any waiver of sovereign immunity must be "clear and unequivocal." Rabideau v. State, 409 So. 2d 1045, 1046 (Fla. 1982); see also Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984) ("[S]overeign immunity is the rule, rather than the exception ...."). However, in explaining the broad scope of sovereign immunity, the Florida Supreme Court articulated a common law exception predicated on the fact that state entities often contract, like any other entity, and such contractual activity occurs outside the state entity's governmental role:

> Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties. As a matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless. We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.

Pan-Am, 471 So. 2d at 5. This exception, however, applies only to the state's breach of an "express, written contract," as opposed to an implied contract. Id. at 6; see also Verdini, 339 So. 3d at 418 ("It is firmly established that a sovereign may be sued in contract only where there is an express, written contract."); County of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1051 (Fla. 1997) (approving of Fourth District decision interpreting Pan-Am to apply only to breaches of express contracts and express or implied conditions of those express contracts); City of Miami Firefighters' & Police Officers' Ret. Tr. & Plan v. Castro, 279 So. 3d 803, 806 (Fla. 3d DCA 2019) ("In the contracts sphere, the limited waiver of sovereign immunity is founded in common law and occurs only when the municipality breaches an express, written contract.").

This court recently addressed the application of sovereign immunity to a student's claim for breach of a contract based on a failure to provide on-campus and in-person services and facilities during the pandemic closures. See Verdini, 339 So. 3d at 415. The plaintiff in Verdini alleged that the purported express contract could be derived from student invoices and financial obligation agreements listing the relevant fees, as well as the incorporated enabling statutes and other unspecified and undiscovered documents. Id. at 416. In reversing the trial court's denial of the college's motion to dismiss, this court explained that Verdini failed to provide an express, written contract to provide services, as none of the documents relied on by Verdini contained express terms to provide a specific service in exchange for payment. Id. at 418. The court emphasized that "any documents Verdini relies on to establish an express contract *must* be incorporated or attached to the complaint," specifically rejecting the notion that the case could proceed to discovery "when a complaint merely alleges the possible existence of an unidentified contract that may or may not be another's possession." Id. at 420–21 (citing Fla. R. Civ. P. 1.130(a), which requires "contracts ... on which action may be brought or defense made" to be "incorporated in or attached to the pleading").

 *3  [8]   [9] Here, Alexandre argues that Verdini does not control because of different enabling statutes for state universities versus state colleges, as well as different attachments to the respective complaints. But the same fatal flaw presents itself here as in Verdini. "While a student's relationship with his university is contractual in nature, it is an implied contract and not an express, written contract." Williams v. Fla. State Univ., No. 4:11-cv-350-MW/CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014) (applying Florida law); see also Rhodes v. Embry-Riddle Aeronautical Univ., Inc., 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021) ("The terms of a student's contract with the university may be derived from university publications such as the student handbook and catalog. Such publications are terms of an implied-in-fact contract rather than an express contract." (quotations and citations omitted)). As with Verdini, the operative complaint here incorporates no documents containing express terms requiring FIU to provide on-campus or in-person services as an exchange for the fees. The student charging statements contain itemized lists of paid charges, but no express terms. And while we agree that any statement of fees incorporates section 1009.24(14), Florida Statutes (authorizing the fees at issue),[4] the statute makes no provision for what specific services must be provided, providing only that the fees "shall be based on reasonable costs of services." Therefore, section 1009.24(14), alone or in conjunction with the documents relied upon, can't be the basis for the express contractual term necessary to defeat sovereign immunity.

 [10] In conjunction with the statute and statements of charges, the trial court also based its denial of sovereign immunity on the additional documents disclosed during discovery, which included mandatory financial obligation agreements signed by each student that incorporate FIU's academic policies and regulations. These documents require students to pay applicable tuition and fees as a condition of enrollment, but they lack any express term requiring FIU to provide the specific on-campus and in-person services claimed by Alexandre in exchange for the fees.[5]

Our analysis, constrained by the record before us, this court's binding precedent in Verdini, and the requirement of an express, written contract to waive sovereign immunity, aligns with the First District's conclusion in University of Florida Board of Trustees v. Rojas, 351 So. 3d 1167 (Fla. 1st DCA 2022).[6] Rojas reversed a denial of sovereign immunity in a similar situation where the student's claim of an express contract was supported only by tuition statements and financial liability agreements containing no "language obligating the University to provide any specific service at any specific time." 351 So. 3d at 1171. In reviewing the documents relied on by Alexandre, we are persuaded by the logic of the First District (echoed recently by the Fourth District in Heine v. Florida Atlantic University Board of Trustees, No. 4D22-15, ––– So.3d ––––, 2023 WL 3083155 (Fla. 4th DCA Apr. 26, 2023)). Specifically, the "hodge-podge of documents" relied upon by Alexandre didn't "obligate the University to a refund of fees when any such services are paused, limited or outright cancelled," and such documents fail to establish "an express written contract expressly addressing the University's obligation to provide such on-campus services." Rojas, 351 So. 3d at 1171.

 *4 We are mindful of the myriad ways in which the COVID-19 virus negatively impacted our society, and the difficult choices individuals, businesses, and governments were forced to make. But our task here consists only of determining if the documents presented by Alexandre evinced an express, written contract obligating FIU to provide specific services or access to campus in a specific time, manner,

or place. Reviewing the record, constrained by statute and binding precedent, we conclude that Alexandre failed to meet her burden to show an express, written contract overcoming the general rule of sovereign immunity for governmental entities.

**CONCLUSION**

Because the operative complaint fails to incorporate any document or writing containing an express promise for FIU either to provide the claimed services or waive the fees during state-mandated emergency closures, we vacate class certification and reverse and remand for entry of an order of dismissal. We also certify the following question of great public importance to the Florida Supreme Court, modified from the question presented by the First District in Rojas and the Fourth District in Heine:

WHETHER SOVEREIGN IMMUNITY BARS A BREACH OF CONTRACT CLAIM AGAINST A STATE UNIVERSITY BASED ON THE UNIVERSITY'S FAILURE TO PROVIDE ITS STUDENTS WITH ACCESS TO ON CAMPUS SERVICES AND FACILITIES, NOTWITHSTANDING THE ABSENCE OF AN EXPRESS, WRITTEN CONTRACT TO PROVIDE SUCH SERVICES AND FACILITIES IN A SPECIFIC TIME, MANNER, OR PLACE?

Reversed and remanded.

**All Citations**

--- So.3d ----, 2023 WL 3485498

**Footnotes**

1  FIU alternatively argues that the complaint was defective under section 768.38, Florida Statutes, which imposes additional pleading requirements for certain civil suits against governmental and educational institutions arising from COVID-19 related claims. FIU also asserts that the plaintiffs failed to properly exhaust their administrative remedies before bringing the suit. Because the sovereign immunity issue resolves this appeal, we decline to address other arguments presented.

2  See Fla. Dep't of Educ., Florida Department of Education Announces Guidance for 2019-20 School Year (Mar. 17, 2020), https://www.fldoe.org/newsroom/latest-news/florida-department-of-education-announces-additional-guidance-for-the-2019-20-school-year.stml.

3  FIU also appeals the trial court's grant of class certification, rendered in the same order that denied FIU's motion to dismiss the breach of contract clam based on sovereign immunity and other grounds. Because this opinion removes the predicate for the class certification, we also vacate the class certification order.

4  See, e.g., Von Hoffman v. City of Quincy, 71 U.S. 4 Wall. 535, 550, 18 L.Ed. 403 (1866) ("It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.").

5  Moreover, these documents were not incorporated into the operative complaint except through a vague reference to the putative contracts "likely consist[ing] of other documents." Thus, for purposes of the motion to dismiss, the court could not take judicial notice of these documents absent a stipulation from the parties.

See Verdini, 339 So. 3d at 421 ("Verdini is not entitled to discovery simply for alleging the possible existence of unspecified documents."); Schneiderman v. Baer, 334 So. 3d 326, 330 (Fla. 4th DCA 2022) ("Unless the parties have stipulated to judicial notice, a court cannot rely on judicial notice to sidestep the four corners rule."); cf. Lam v. Univision Commc'ns, Inc., 329 So. 3d 190, 198 n.9 (Fla. 3d DCA 2021) (explaining that information outside the four corners of the complaint could be considered by the trial court in ruling on a motion to dismiss where the "parties stipulated the trial court could consider it in deciding the motion to dismiss"). However, assuming for sake of argument that the trial court could rely on such documents, the analysis doesn't change as they fail to create an express contract.

6   The Second District upheld a denial of sovereign immunity at the motion to dismiss phase in University of South Florida Board of Trustees v. Moore, 347 So. 3d 545 (Fla. 2d DCA 2022). However, Moore proffered documents that the Second District considered a potential express contract, including student registration agreements expressly stating that the student was "entering a legal, binding contract with USF" and incorporating university publications and registration policies that could include express promises to provide specific services in exchange for the payment of tuition. Id. at 549–50.

We take issue with the apparent sovereign immunity burden shifting imposed in Moore, id. at 550 (noting that the university hadn't definitively demonstrated that it made "no promises to Moore regarding any specific services in return for her payment of student fees"), as the burden to show a prima facie waiver of sovereign immunity by existence of an express written contract falls on the plaintiff asserting the claim. But we decline to certify conflict because Moore arguably relies on specific—and different—documents to determine if an express, written contract exists.

---

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.