COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
LEO P. NORTON (216282)
(lnorton@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
1333 2nd Street
Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

MICHAEL N. SHEETZ *(Pro hac vice)*
(msheetz@cooley.com)
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE
BOARD OF TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-4066-DMG-PVC<br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITIONS (ECF NOS. 146, 174, AND 176) AND MOTION (ECF NO. 149)**<br><br>Action Filed: May 7, 2020<br>Action Consolidated: July 17, 2020<br>Trial Date: January 9, 2024 |

Defendants University of Southern California and The Board of Trustees of the University of Southern California (collectively, "Defendants"), by and through their counsel of record, hereby respectfully file this Notice of Supplemental Authority in Support of: (1) Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 146) ("Opposition to Class Certification") (2) Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Witness Under Fed. R. Evid. 403 & 702 (ECF No. 149) ("Motion to Exclude Singer"); (3) Defendants' Opposition to Plaintiffs' Motion to Strike the Expert Report and Testimony of Ronald T. Wilcox, Ph.D. (ECF No. 174) ("Opposition to Motion to Strike Wilcox"); and (4) Defendants' Opposition to Plaintiffs' Motion to Strike the Expert Report and Testimony of John L. Hansen (ECF No. 176) ("Opposition to Motion to Strike Hansen"). Defendants submit the decision *Dixon v. Univ. of Miami*, No. 23-10299, 2023 WL 4853327 (11th Cir. July 31, 2023) ("*Dixon*"), which is attached as Exhibit 1, as supplemental authority for their Opposition to Class Certification, Motion to Exclude Singer, Opposition to Motion to Strike Wilcox, and Opposition to Motion to Strike Hansen.

In *Dixon*, the Eleventh Circuit affirmed the district court's order granting the University of Miami's motion for summary judgment. As to the breach of express or implied contract claims, the Eleventh Circuit based its opinion on the University of Miami retaining the express right to change or amend its policies and procedures and to close its classroom and facilities set forth in the Student Handbook. As to the unjust enrichment claim, the Eleventh Circuit based its decision on the applicable health orders, net financial loss the University of Miami incurred to transition to remote learning, the plaintiff's successful completion of Spring 2020 courses, credits toward graduation, and education received in an impliedly safer environment, and the fact that plaintiff and other students took courses in the Fall 2020 semester remotely without paying less than in Spring 2020. Here, Defendants presented facts and arguments regarding all or some of these issues—countervailing information or reservation of rights, health orders, losses sustained, benefits to students, and the Fall 2020 semester—

Cooley LLP
Attorneys At Law
San Diego

1

Defendants' Notice of Supp. Authority
Case No. 2:20-cv-4066-DMG-PVC

1 | in their Opposition to Class Certification, Motion to Exclude Singer, Opposition to
2 | Motion to Strike Wilcox, and Opposition to Motion to Strike Hansen.

Dated: August 10, 2023

COOLEY LLP

*/s/ Leo P. Norton*
Leo P. Norton (216282)

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA

# Exhibit 1

2023 WL 4853327
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

Adelaide DIXON, Plaintiff-Appellant,
v.
UNIVERSITY OF MIAMI, Defendant-Appellee.

No. 23-10299 Non-Argument Calendar
|
Filed: 07/31/2023

**Synopsis**
**Background:** Students filed actions alleging that private university breached its contract to provide in-person education and access to its campus facilities when it transitioned to online learning during COVID-19 pandemic. After actions were consolidated, the United States District Court for the Southern District of Florida, No. 0:20-cv-60851-AHS, 1:20-cv-22594-AHS, Raag Singhal, J., 2022 WL 18034457, entered summary judgment in university's favor, and student appealed.

**Holdings:** The Court of Appeals, Wilson, Circuit Judge, held that:

[1] university did not breach any contractual obligations it may have had to its students;

[2] university was not unjustly enriched by retaining student's full tuition payment; and

[3] economist's unsworn report was insufficient to establish genuine issue of material fact as to inadequacy of university's refund of prorated fees.

Affirmed.

West Headnotes (15)

[1]  **Federal Courts** ⚖ Summary judgment
     **Federal Courts** ⚖ Summary judgment
     Court of Appeals reviews district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in light most favorable to nonmoving party.

[2]  **Summary Judgment** ⚖ Conflicting inferences or conclusions
     If reasonable person could draw more than one inference from facts, and that inference creates genuine issue of material fact, then court should refuse to grant summary judgment.

[3]  **Federal Courts** ⚖ Substance or procedure; determinativeness
     In diversity cases, federal courts are required to apply forum state's substantive law.

[4]  **Education** ⚖ Contractual nature of relationship with institution
     Under Florida law, student's relationship with his or her private university is contractual in nature.

[5]  **Education** ⚖ Contractual nature of relationship with institution
     Under Florida law, terms of private university's contract with its students may be derived from university publications such as student handbook and catalog.

[6]  **Contracts** ⚖ Grounds of action
     To succeed on breach-of-contract claim under Florida law, plaintiff must establish (1) contract's existence; (2) material breach of that contract; and (3) damages resulting from breach.

[7]  **Contracts** ⚖ Language of Instrument
     Courts endeavoring to interpret contracts under Florida law must give effect to instrument's plain language.

[8]  **Contracts** ⚖ Ambiguity in general

Under Florida law, although interpretation of contract is ordinarily legal exercise for court, when contract's terms are ambiguous, parties' intentions become question of fact for jury.

[9] Education  Educational malpractice

Florida does not recognize claims of educational malpractice.

[10] Education  Distance learning

Under Florida law, private university did not breach any contractual obligations it may have had to its students to provide in-person education and access to its campus facilities when it transitioned to online learning during COVID-19 pandemic; university handbook permitted it to alter or amend its procedures or policies, and its student code of conduct reserved right "at any time to deny, revoke, or modify authorization to use any University facility or premise … because of potential danger."

[11] Implied and Constructive Contracts  Unjust enrichment

Florida recognizes that claims for unjust enrichment may be appropriate when no contract exists, but defendant nonetheless received something of value from plaintiff.

[12] Implied and Constructive Contracts  Unjust enrichment

Under Florida law, plaintiff pursuing unjust enrichment claim must establish that: (1) plaintiff has conferred benefit on defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains benefit conferred; and (3) circumstances are such that it would be inequitable for defendant to retain benefit without first paying value thereof to plaintiff.

[13] Education  Distance learning

Under Florida law, private university was not unjustly enriched by retaining student's full tuition payment for semester during which it transitioned to online learning; university was required to transition to online learning because of executive orders issued during COVID-19 pandemic, and student successfully completed her spring courses, received credits toward her graduation, and obtained university education.

[14] Implied and Constructive Contracts  Unjust enrichment

Under Florida law, unjust enrichment claim cannot exist where payment has been made for benefit conferred.

[15] Summary Judgment  Particular Cases and Contexts

Economist's unsworn report was insufficient to establish genuine issue of material fact as to inadequacy of private university's refund of prorated fees during portion of semester during which campus was closed due to COVID-19 pandemic, and thus did not preclude summary judgment in student's action to recover refund, despite student's contention that refund should have extended back to date on which university announced that it was extending spring break, rather than date on which it transitioned to online format; there was no evidence that all fee-based facilities and services were unavailable to students as of date spring date was extended, and economist did not appear to have personal knowledge of which facilities and services were unavailable to students during days in question. Fed. R. Civ. P. 56(c).

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket Nos. 0:20-cv-60851-AHS, 1:20-cv-22594-AHS

**Attorneys and Law Firms**

Blake G. Abbott and Paul J. Doolittle, Poulin | Willey | Anastopoulo, LLC, Charleston, SC, for Plaintiff-Appellant.

Eric D. Isicoff, Teresa Ragatz and Matthew L. Lines, Isicoff Ragatz, Miami, FL, for Defendant-Appellee.

Before Wilson, Newsom, and Grant, Circuit Judges.

**Opinion**

Wilson, Circuit Judge:

**\*1** This suit is one of many filed in the wake of the COVID-19 pandemic. As the SARS-CoV-2 virus spread across the country in the spring of 2020, universities transitioned to remote, online learning. The University of Miami (Miami), a private institution, was no exception. Adelaide Dixon filed suit against Miami, alleging the school should refund a portion of the payments that she made for the Spring 2020 semester, since she did not receive the expected benefit of in-person learning. Dixon marshals a number of claims, including breach of express contract, breach of implied contract, and unjust enrichment.

Miami filed a motion for summary judgment on each of Dixon's claims, which the district court granted in full. *In re Univ. of Mia. COVID-19 Tuition & Fee Refund Litig.*, No. 20-60851, ––– F.Supp.3d ––––, 2022 WL 18034457 (S.D. Fla. Dec. 30, 2022). For the reasons below, we affirm.

### I. Background

**A. The Disputed Conduct**
In the spring of 2020, Dixon lived in an on-campus dormitory at Miami. On March 1, 2020, in response to COVID-19's rapid spread, Florida's Governor issued Executive Order 20-51, which directed the State Health Officer and Surgeon General to declare a public health emergency. About a week later, on March 9, the Governor issued Executive Order 20-52, formally declaring a state of emergency in Florida.

At that time, Dixon and other Miami students were on spring break, which was scheduled to end on March 15. However, taking into account the pandemic's expansion and the Governor's executive orders, Miami informed its students on March 12 that it was extending spring break through March 22. Miami further informed its students that it would transition to "distance learning" when classes resumed on March 23. At first, distance learning was scheduled through at least April 4.

Then, on March 19, Miami-Dade County's Mayor issued Emergency Order 7-20, which ordered Miami to close its campus, remaining open "only as needed to facilitate online or distance learning." Later, this Order was amended to permit residence halls to remain open "to the extent needed to accommodate students who cannot return to their homes." *See* Amendment No. 1 to Miami Dade County Emergency Order 07-20 (Mar. 19, 2020). On March 30, the Florida Governor issued Executive Order 20-89, which essentially adopted the Miami-Dade County Order, thus requiring the closure of Miami's campus for all purposes other than the facilitation of online learning and providing housing for students who could not travel home.

On March 25, between the issuance of the Miami-Dade County and State of Florida Orders, Miami began closing on-campus housing, which resulted in Dixon moving home. Miami transitioned to online learning for the remainder of the Spring 2020 semester. Dixon remained enrolled at Miami throughout the spring semester; earned the credits for which she paid; and, when given the choice, opted to take her classes online the following fall semester.

On April 29, 2020, Miami announced that it would provide students with a prorated refund for the fees and services that could not be provided during the remote learning period. Those refunds included fees paid to Miami for housing, dining, parking, student and wellness center usage, counseling, athletic fees, and various student activities.

**\*2** Dixon alleges that she had either an express or implied contract with Miami that required the university to provide an in-person education, and Miami breached that contract when it transitioned to remote learning. Alternatively, Dixon alleges that Miami was unjustly enriched by taking her payments and transitioning to an online format. As to the fees that Miami refunded, Dixon contends they were insufficient.

**B. Procedural History**
Dixon's case was consolidated with other class action suits against Miami in the Southern District of Florida. Four co-plaintiffs filed a Consolidated Class Action Complaint, and Miami subsequently filed a motion to dismiss. The district court determined that two of the plaintiffs—who were parents of Miami students—lacked standing, but otherwise let the

case proceed. Following discovery, Miami filed a motion for summary judgment on the remaining claims, which the district court granted in its entirety. Dixon timely appealed.[1]

## II. Standard of Review

[1] [2] "We review the district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in the light most favorable to the nonmoving party." *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1344 (11th Cir. 2023) (internal quotation marks omitted). If a reasonable person "could draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021).

[3] In diversity cases such as these, "we are required to apply the substantive law of the forum state." *Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015) (per curiam). So here, we apply the laws of Florida.

## III. Breach of Contract

### A. Contract Law

[4] [5] In Florida, a student's relationship with his or her private university is contractual in nature. *Jallali v. Nova Se. Univ., Inc.*, 992 So.2d 338, 342 (Fla. Dist. Ct. App. 2008) (citing *John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 102 So. 637, 640 (1924)). The terms of this contract "may be derived from university publications such as the student handbook and catalog." *Fla. Int'l Univ. Bd. of Trs. v. Alexandre*, No. 3D22-0072, ––– So.3d ––––, ––––, 2023 WL 3485498, at *3 (Fla. Dist. Ct. App. May 17, 2023) (quoting *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021)).

[6] To succeed on a breach-of-contract claim, a student-plaintiff—like any other plaintiff—must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)).

[7] [8] Courts endeavoring to interpret contracts under Florida law must give effect to the instrument's plain language. *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015). Ordinarily, this is a legal exercise for the court. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). However, when the terms of a contract are ambiguous, the parties' intentions become a question of fact for the jury. See *id.*

### B. Dixon's Claims

[9] Dixon argues that Miami should pay damages for its breach of an express or implied contract to provide in-person education and access to its campus facilities. The district court disagreed on two alternative bases. First, the district court concluded that Dixon had failed to prove the existence of a contract—express or implied. Second, the district court held that even if a contract did exist, Miami retained "the express right to alter or amend its procedures or policies *and* to close its classrooms and facilities." *In re Univ. of Mia.*, 2022 WL 18034457, at *5. Because we agree with the district court on the second basis, we need not address the first.[2]

*3 To support the proposition that it reserved the right to transition classes to remote learning, Miami points to two provisions in the *Student Handbook*. First, Miami highlights a sentence in the *Handbook*'s "Foreword," which states:

> From time to time it may be advisable for the University to alter or amend its procedures or policies. Reasonable notice may be furnished to the University community of any substantive changes, but is not required.

Second, Miami cites a provision from the "General Administrative Policies and Guidelines" in the "Student Code of Conduct" (also located in the *Student Handbook*). That section reads:

A.9 Restriction/Revocation of Facilities Use

> The University of Miami reserves the right at any time to deny, revoke, or modify authorization to use any University facility or premises.
>
> Decisions to authorize use of University facilities are made by the appropriate facility coordinator. Decisions to deny, revoke, or modify the authorization to use University facilities, because of potential danger, are made by the President of the University upon recommendation by the Vice President and/or the appropriate administrator involved with use of such University facilities. When possible, such decisions will be made only after review of a written recommendation by the appropriate facility coordinator. Decisions made in accordance with the policy are final and may not be appealed.

[10] We agree that these provisions standing together unambiguously give Miami the authority to temporarily close its campuses in response to the COVID-19 pandemic. Thus, even if a contract did include rights to an in-person education and access to on-campus facilities, those rights were qualified by provisions that permitted Miami to modify its procedures and access to its facilities. Thus, Miami did not breach any agreement by temporarily transitioning to remote learning.

Looking at the "Foreword" section of the *Handbook*, it is true that the identified sentence is embedded between paragraphs that discuss university regulations and disciplinary procedures, which, at first glance, might suggest it has nothing to do with the contractual right to in-person learning. *See City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (requiring courts "to read provisions of a contract harmoniously in order to give effect to all portions thereof"). But Dixon relies on these *Handbook* regulations and procedures to prove a contractual promise of in-person education. So, if Miami has the ability to change the underlying policies and procedures that create the implied contractual term, it follows that the implied term itself is subject to change.

The provision regarding the "Restriction/Revocation of Facilities Use" in the *Handbook*'s "Student Code of Conduct" provides Miami with more direct authority to temporarily switch to remote learning. Dixon alleges that Miami broke its implied contractual obligations to provide "on-campus classes" and to provide access to its campus facilities. Yet, both of these implied obligations necessarily require access to Miami's facilities, usage of which Miami explicitly reserved the right to deny "because of potential danger." We have no reason to second-guess Miami's decision to close its facilities in response to 1) the spread of a deadly global pandemic that resulted in a state of emergency in Florida, *see* Executive Order 20-52; 2) an emergency order from Miami-Dade County that ordered the closure of the campus, *see* Emergency Order 7-20; and 3) an executive order from the Governor of Florida ordering the closure of the campus, *see* Executive Order 20-89. *See also Jallali*, 992 So. 2d at 343 (noting that a "court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes"); *John B. Stetson Univ.*, 102 So. at 640 (holding that "college authorities stand in loco parentis" as to the "welfare of the pupils" and that courts may not interfere with university regulations so long as they "do not violate divine or human law").

**\*4** Accordingly, even if Miami's contract included a provision for in-person classes and access to campus facilities, we agree with the district court that Miami cannot be held liable for switching to remote learning at the time and under the conditions that it did.<sup>3</sup>

### IV. Unjust Enrichment

**A. The Law**

[11] Florida recognizes that claims for unjust enrichment may be appropriate when no contract exists, but the defendant nonetheless received something of value from the plaintiff. *See Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. Dist. Ct. App. 2016); *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).

[12] A plaintiff pursuing an unjust enrichment claim must establish three elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 429 (Fla. Dist. Ct. App. 2022) (quoting *Duty Free World, Inc. v. Mia. Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018)).

Reflecting on the theory of unjust enrichment, Florida courts have noted that the phrase " 'equitable in nature' ... has been used in the sense of 'fairness,' to describe that quality

which makes an enrichment unjust." *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 390 (Fla. Dist. Ct. App. 1997) (en banc).

**B. Dixon's Claims**

As an alternative to her breach-of-contract claims, Dixon argues that Miami was unjustly enriched by retaining her full tuition payment for the Spring 2020 semester. Looking to the elements of an unjust enrichment claim, *Doral Collision*, 341 So. 3d at 429, the parties do not dispute the first two: 1) Dixon paid Miami the standard, full tuition payment for the Spring 2020 semester, and 2) Miami voluntarily accepted and retained that tuition payment. The parties do, however, dispute the third element: whether it would be inequitable under the circumstances for Miami to retain the full tuition payment.

The district court rejected Dixon's unjust enrichment claim on two grounds. First, the court concluded that, as a matter of law, Dixon failed to show that the "payment of full tuition for the Spring 2020 semester violate[d] good conscience and fundamental principles of justice or equity." *In re Univ. of Mia.*, 2022 WL 18034457, at *7. Second, the district court concluded that to the extent Dixon claimed her remote education was less valuable than the education for which she paid, her claim was barred by the doctrine of educational malpractice. *Id.* Following the pattern from above, because we agree with the district court on the first basis, we need not reach the second.[4]

 *5  [13]  To start, we note that the decision to transition to remote learning was largely out of Miami's hands. Had Miami continued to provide in-person education throughout the Spring 2020 semester, it would have violated not one, but two separate executive orders—one from Miami-Dade County and another from the Florida Governor.[5] To complete the switch to online courses, Miami expended $7.1 million and ultimately experienced a net financial loss of roughly $50 million from the change in operations. As a result of Miami's efforts and additional expenditures, though, Dixon successfully completed her spring courses, received credits toward her graduation, and obtained a university education from a location that the State of Florida impliedly considered to be safer than a populated campus in Coral Gables.

 [14]  Further, under Florida law, "an unjust enrichment claim cannot exist where payment has been made for the benefit conferred." *Murphy v. Pankauski*, 357 So. 3d 149, 152 (Fla. Dist. Ct. App. 2023) (internal quotation marks omitted). As the district court pointed out, Miami provided students a choice in the Fall 2020 semester—they could take their courses online or attend in-person. In an arms-length transaction, Dixon opted for the former, and she has not alleged that she paid (or should have paid) any less for that Fall 2020 online experience than she did for her Spring 2020 semester. Thus, the value of the benefit that Dixon provided to Miami—her tuition payment—does not appear to be out of step with the value that she places on the benefit she received in return—a (temporarily remote) Miami education.

For these reasons, we affirm the district court's conclusion that, as a matter of law, Dixon failed to show that her "payment of full tuition for the Spring 2020 semester violate[d] good conscience and fundamental principles of justice or equity." *In re Univ. of Mia.*, 2022 WL 18034457, at *7.

**V. Adequacy of Prorated Reimbursements**

**A. Additional Facts**

On April 29, 2020, Miami emailed its student body (including Dixon) to inform them that it would be refunding their accounts "with a prorated amount for any Spring 2020 fees and services that cannot be provided in an online or virtual format." Miami explained that these services included "housing, dining, parking, student center, wellness center, health and counseling, student activities, and athletics fees." The fees were ultimately prorated to "March [23,] when classes transition[ed] to an online format." In total, this amounted to a refund for the 42 days remaining in the 115-day semester, equating to roughly 36.5% of the fee totals.

**B. Dixon's Claims**

Dixon contends that this refund was inadequate. More specifically, she argues that the prorated refund should have extended back to March 12, 2020, when Miami announced to its students that spring break would be extended by one week. Doing so, Dixon maintains, would amount to a refund of roughly 48% of total fees for the Spring 2020 semester. Dixon supports her claim with the deposition of, and the unsworn report from, economist Charles Cowan, Ph.D.

The district court rejected Dixon's claim because "the undisputed facts establish that [Miami] made a *pro rata* refund of the fees" and "neither [Dixon] nor [her] expert

provide factual support" for the greater percentage that they claim Dixon is owed. *In re Univ. of Mia.*, 2022 WL 18034457, at \*6. We agree.

It is entirely valid for Dixon to take the position that Miami should have based its prorated refunds on a different day than it did. The problem, however, is that Dixon fails to present "more than a scintilla" of evidence to support her contention that Miami should have refunded 48% of the fees for the Spring 2020 semester. *Matamoros v. Broward's Sheriff's Off.*, 2 F.4th 1329, 1336 n.5 (11th Cir. 2021).[6]

**\*6** **[15]** Dixon points us to Miami's March 12, 2020, email that informed students that spring break would be extended by one week. However, an announcement extending spring break by itself does not support the contention that all fee-based facilities and services were suddenly unavailable to students such that Miami's refund was inadequate. And while Dixon offers Dr. Cowan's input as evidence, Dixon cannot rely on Dr. Cowan's report to show there is a genuine issue of material fact about this point. Unsworn reports may not be taken into account by a district court when it rules on a motion for summary judgment. *See* *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (citing Fed. R. Civ. P. 56(c)).[7] Without more, Dixon's allegations are merely conclusory, and "[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013)

(quoting *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)); *see also* *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1263 (11th Cir. 2023) (per curiam) (noting that to survive summary judgment, "speculation does not suffice").

Consequently, on this point, we again affirm the district court.

### VI. Conclusion

The pandemic forced students of all ages to learn from behind their computer screens for a period of time, and we certainly harbor a great deal of sympathy for those students whose educations and relationships were affected by the transition. Yet, for the reasons outlined above, we agree with the district court and hold that Dixon is not entitled to damages stemming from any alleged breach of contract, unjust enrichment, or inadequate refunds on the part of Miami. We hope that some comfort can be found, however, in our certainty that despite enduring the hardships created by the pandemic, any student who has earned a degree from a school like the University of Miami retains the unspoiled potential for a fulfilling and prosperous future.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2023 WL 4853327

---

### Footnotes

1. The other plaintiff who remained after the motion-to-dismiss stage did not appeal the district court's unfavorable summary judgment decision.

2. Miami also defends against Dixon's breach-of-contract claims by correctly noting that Florida does not recognize claims of educational malpractice. *See* *Armstrong v. Data Processing Inst., Inc.*, 509 So.2d 1298, 1299 (Fla. Dist. Ct. App. 1987). As the name suggests, these claims are typically packaged in state tort law and allege that a student's educational experience fell beneath an objectively reasonable standard of care. *See, e.g.*, *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So.2d 906, 908, 914–16 (Fla. 1995) (claiming a state agency acted negligently in deciding where to place a juvenile offender and choosing what services to offer him); *Tubell v. Dade Cnty. Pub. Schs.*, 419 So. 2d 388, 389 (Fla. Dist. Ct. App. 1982) (per curiam) (alleging a school negligently tested and classified a student, resulting in the student's improper placement in a special educational program). Although it poses an interesting question, we need not address

whether this doctrine applies to Dixon's claims—Miami's reservation of rights is sufficient for us to affirm the district court's judgment.

3   To the extent that giving effect to these broad reservations of rights raises concerns about an illusory contract, we note that Miami still provided Dixon with instruction in her selected courses and credits that counted toward her degree. Whatever terms were contained within Dixon's contract with Miami, we are certain that the obligation to provide instruction and class credit upon Dixon's payment of tuition and satisfactory completion of her courses were included. Thus, Dixon's contract with Miami was not entirely illusory under Florida law.

   See *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

4   Miami also contends that its relationship with Dixon was governed by an express contract—a Financial Responsibility Statement (FRS). Under this contract, Miami argues, Dixon agreed to pay tuition in exchange for educational services. As Miami rightly notes, Florida courts have held that "[a]s a general principle, a plaintiff cannot pursue an implied contract theory, such as unjust enrichment or quantum meruit, if an express contract exists." *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49 (Fla. Dist. Ct. App. 2021). While, on its face, it is far from clear that this FRS is the sole, integrated instrument governing the relationship between the parties, we need not address this argument today. Our holding regarding the fairness of the full tuition payment is sufficient to carry the day for Miami.

5   The legal alternative to remote learning, then, may have been to cancel students' classes entirely.

6   Dixon does not argue that Miami erred in conducting its mathematical calculation to reach the 36.5% refund. Instead, Dixon argues that the calculation should have covered more days.

7   We also note that it does not appear Dr. Cowan had personal knowledge of which facilities and services actually were unavailable to students during the days that would constitute the difference between a 48% and 36.5% refund.

---

**End of Document**                                         © 2023 Thomson Reuters. No claim to original U.S. Government Works.