# EXHIBIT A

## REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER [ECF 117]

# In re University of Southern California Tuition and Fees COVID-19 Refund Litigation

## Case No. 2:20-CV-04066-DMG

## Opening Expert Report of John L. Hansen

## TM Financial Forensics, LLC, an HKA Company

## December 9, 2022

John L. Hansen

HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY

I.   INTRODUCTION..................................................................................................... 3

  A.   TM Financial Forensics, LLC / Qualifications ................................................... 3

  B.   Retention and Assignment .................................................................................. 4

  C.   Information Considered ....................................................................................... 4

II.  BACKGROUND ................................................................................................... 5

  A.   The Plaintiffs ..................................................................................................... 5

    1.   Injune David Choi ........................................................................................ 5

    2.   Christina Diaz .............................................................................................. 6

    3.   Chile Mark Aguiniga Gomez ....................................................................... 6

    4.   Jenna Julia Greenberg .................................................................................. 7

    5.   Justin Kerendian ........................................................................................... 7

    6.   Latisha Watson ............................................................................................. 8

  B.   The University of Southern California ................................................................ 9

  C.   The Board of Trustees of the University of Southern California........................... 9

  D.   The Spring 2020 Semester .................................................................................. 9

  E.   The USC Catalogue ........................................................................................... 10

  F.   Class Allegations ............................................................................................... 11

III. OPINIONS ......................................................................................................... 14

  A.   There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed By the Transition to Remote Education........................................... 14

    1.   USC Charges, and Students Pay, the Same Tuition for Online and In Person Degree Programs 14

    2.   USC Students Either Benefited From, or Received a Refund For, Fees Paid During the Spring 2020 Semester ........................................... 17

    3.   The Assumption That Tuition Prices for Online Programs Should Be Lower than for In-Person Programs is Incorrect ......................................... 20

    4.   Enrolled Students' Academic Career Progression Was Not Delayed During the Spring 2020 Semester ........................................... 21

    5.   There is No Indication That Job Placement and Income Post-Graduation Was Impacted for Putative Class Members........................................... 24

    6.   Students Paid Higher Tuition for the Fall 2020 Semester Knowing Education Would be Remote 26

    7.   Course Evaluations for the Spring 2020 Semester are Inconsistent with Plaintiffs' Allegations 28

8.   USC Subsidizes the Cost of Education ...................................................... 30

B.   USC Did Not Financially Benefit from the Transition to Remote Education .................. 32

C.   Assuming Harm to Students, Damages or Restitution Can Not Be Determined on a Class-Wide Basis ............................................................................................................... 35

1.   Each Student was Impacted Differently by the Transition to Remote Education and the Closure of Certain Campus Facilities ............................................................................... 35

a.   USC Offered Hundreds of Academic Programs and Understanding Each Student's Educational Path Would Require an Individualized Analysis ............................................. 36

b.   USC Provided Numerous Activities For Its Students, and Understanding Each Student's Valuation of These Activities and Participation Would Require an Individualized Analysis ........... 40

c.   USC Provided Services to Its Students, and Understanding Each Student's Valuation of Services and Use of Such Services Would Require an Individualized Analysis ...................... 42

d.   Understanding Students' Reasons for Attending USC Would Require an Individualized Analysis to Assess the Relative Value of In-Person Education to Each Student .............................. 45

e.   Students' Sources of Tuition Payment Varied and Would Require an Individualize Analysis to Determine if Putative Class Members were Harmed ........................................ 47

2.   The Plaintiffs in this Matter Had Different Characteristics and Experiences During the Spring 2020 Semester That Illustrate the Requirement for an Individualized Analysis .................. 48

3.   Financial Aid Would Impact Each Student on an Individualized Basis .................... 50

## I.  INTRODUCTION

### A.    TM Financial Forensics, LLC / Qualifications

1. TM Financial Forensics, LLC, an HKA Company ("TMF-HKA") is a business, economic, financial and damages consulting company that provides services to business entities, individuals and counsel.  TM Financial Forensics, LLC was acquired by HKA on November 4, 2022, and I am a Partner at TMF-HKA.  Previously, I was a Vice President and founding member of TMF in the San Francisco Bay Area offices.  I am also a Certified Public Accountant licensed in the State of California, Certified in Financial Forensics, a Certified Licensing Professional and a Chartered Global Management Accountant.  Before founding TMF on January 5, 2010, I was a Director in the San Francisco office of Navigant Consulting, Inc.  Before joining Navigant Consulting, Inc. in 2004, I was a Vice President in the San Francisco office of Tucker Alan Inc. ("Tucker Alan") and one of the leaders of Tucker Alan's national intellectual property practice. Prior to joining Tucker Alan in August 1994, I was employed by Peterson Consulting, where I provided consulting to clients on a variety of regulatory and commercial matters. I graduated with honors from Santa Clara University in 1989 with a Bachelor of Science in Commerce degree in finance and minor in economics.  I currently serve on the Advisory Board for the Leavey School of Business at Santa Clara University.

2. I am experienced in the financial, economic and accounting matters relating to the scope of our work, analysis and study on this matter.  I have consulted on numerous class action, breach of contract, and unfair competition matters, including matters involving undergraduate and graduate university tuition and fees.  I have prepared and analyzed hundreds of claims for lost profits, defendant's profits, reasonable royalties, diminution in asset and business value, and other financial and economic impacts.  I have presented and lectured on accounting, valuation, licensing, and economic damages to universities and industry groups, including Santa Clara University School of Law, University of California, Hastings College of the Law, Stanford University, The McCarthy Institute, The Licensing Executives Society, and The Rocky Mountain Intellectual Property and Technology Institute, as examples.

3.    My curriculum vitae, including publications during the last ten years, is included as **Attachment 1** to this Report.  A listing of cases in which I have testified as an expert witness at trial, arbitration and/or deposition during the last four years is included as **Attachment 2** to this Report.  My hourly billing rate on this matter is $625.

4.    TMF-HKA's compensation is not dependent on the outcome of this matter.

### B.    Retention and Assignment

5.    TMF-HKA was retained by University of Southern California ("USC"), the USC Board of Trustees, and USC's counsel of record in this action to address issues related to class certification and potential damages or restitution alleged by Plaintiffs.  I understand that Plaintiffs seek to recover damages relating to, or restitution of, tuition and fees because USC transitioned its provision of education from in-person to remote and closed certain campus facilities in response to the COVID-19 pandemic in compliance with state and local health orders for part of the Spring 2020 semester.[1]

### C.    Information Considered

6.    **Attachment 3** to this Report contains a listing of various documents, data and other information considered in forming my opinions in this matter.  Selected pages of the documents and information listed on **Attachment 3** may be used as exhibits to summarize or support my opinions.  Additionally, I may prepare graphical or illustrative exhibits to use at trial based on the documents and information relied upon and my analysis of those documents and information.

7.    The opinions in this Report are based on currently available information.  If representatives of the Plaintiffs, USC and/or experts retained on behalf of the Plaintiffs present additional information, then my opinions and conclusions may be supplemented, amended or revised.

---

[1] First Amended Consolidated Class Action Complaint, *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation*, dated January 14, 2022 ("First Amended Consolidated Complaint"): p. 1.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## II.    BACKGROUND

### A.    The Plaintiffs

8.    I understand that Plaintiffs in this matter are alumni of USC who were enrolled as students at USC during the Spring 2020 semester and bring this putative class action after USC's response to the COVID-19 pandemic for part of that semester.[2]    Plaintiffs are the following six individuals: (1) Injune David Choi; (2) Christina Diaz; (3) Chile Mark Aguiniga Gomez; (4) Jenna Julia Greenberg; (5) Justin Kerendian; and (6) Latisha Watson.[3]    Plaintiffs bring this putative class action lawsuit "individually and on the behalf of all others similarly situated" against USC and the USC Board of Trustees (collectively, "the Defendants").[4]

#### 1.    Injune David Choi

9.    Injune David Choi is a resident of California and began attending USC in Spring 2015.[5] Plaintiff Choi transferred to USC, having previously attended Cypress College, Cerritos College, and Fullerton Community College.[6]    Plaintiff Choi graduated after the Spring 2020 semester with a Bachelor of Science degree in Business Administration from the Marshall School of Business.[7]    Plaintiff Choi had undergraduate tuition charges of $11,568 in the Spring 2020 semester and earned all 6 of the units for the classes in which he registered.[8]    Plaintiff Choi was charged for various mandatory fees for the Spring 2020 semester, including fees related to student health, student programming, and the N. Topping Student Aid Fund (see **Attachment 4.1**). ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9] ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10]

---

[2] First Amended Consolidated Complaint: pp. 1, 4-5.
[3] First Amended Consolidated Complaint: p. 1.
[4] First Amended Consolidated Complaint: p. 1.
[5] First Amended Consolidated Complaint: p. 5; Deposition of Injune David Choi, dated October 23, 2022: p. 49. See also, **Attachment 6**.
[6] Deposition of Injune David Choi, dated October 23, 2022: pp. 25, 49.
[7] Deposition of Injune David Choi, dated October 23, 2022: pp. 49, 84.
[8] Deposition of Injune David Choi, dated October 23, 2022: Exhibit 112: USC Account Itemization: USC000000895-901; See also, **Attachment 4.1** and **Attachment 6**.
[9] **Attachment 4.1**.  Deposition of Injune David Choi, dated October 23, 2022: p. 130.
[10] **Attachment 4.1**.

### 2. Christina Diaz

10.    Christina Diaz is a resident of California and began attending USC in Fall 2016.[11] Plaintiff Diaz has only attended USC.[12]  Plaintiff Diaz graduated after the Spring 2021 semester, completing the five-year Bachelor of Architecture program.[13]  Plaintiff Diaz had undergraduate tuition charges of $28,628 in the Spring 2020 semester where she studied abroad and earned all 17 of the units for the classes in which she registered.[14] Plaintiff Diaz was charged for various mandatory fees for the Spring 2020 semester, including fees related to medical insurance for her study abroad program (see **Attachment 4.2**). ███████████████████████████████

███████████████████████████████████████.[15] ████████████████████

████████████████████████████.[16]

### 3. Chile Mark Aguiniga Gomez

11.    Chile Mark Aguiniga Gomez is a resident of California and began attending USC in Fall 2019.[17]  Plaintiff Gomez transferred to USC, having previously attended Long Beach City College, Colorado Mesa University, and East Los Angeles City College.[18]  Plaintiff Gomez graduated after the Spring 2021 semester with a degree in Law, History, and Culture from the Dornsife College of Letters, Arts and Sciences.[19]  Plaintiff Gomez had undergraduate tuition charges of $28,628 in the Spring 2020 semester and earned all 16 of the units for the classes in which he registered.[20]  Plaintiff Gomez was charged for various mandatory fees for the Spring 2020 semester, including fees related to student health, student programming, and the N. Topping Student Aid Fund (see **Attachment**

---

[11] Deposition of Christina Diaz, dated October 16, 2022: p. 23 and Exhibit 89: Transcript of Christina Diaz: USC000017362-366 (at 363). See also, **Attachment 6**.
[12] Deposition of Christina Diaz, dated October 16, 2022: p. 23.
[13] Deposition of Christina Diaz, dated October 16, 2022: p. 23.
[14] Deposition of Christina Diaz, dated October 16, 2022: p. 48; Exhibit 91: USC Account Itemization: USC000000983. See also, **Attachment 4.2** and **Attachment 6**.
[15] **Attachment 4.2**. See also Deposition of Christina Diaz, dated October 16, 2022: p. 94.
[16] **Attachment 4.2**.
[17] First Amended Consolidated Complaint: p. 6; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 23.
[18] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 22-23.
[19] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 23; <https://dornsife.usc.edu/hist/law-history-culture/>.
[20] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 42: USC Account Itemization: USC000017350-351 (at 350). See also, **Attachment 4.3** and **Attachment 6**.



**4.3).**

. [21]

. [22]

. [23]

### 4. Jenna Julia Greenberg

12.  Jenna Julia Greenberg is a resident of California and began attending USC in Fall 2019.[24] Plaintiff Greenberg transferred to USC, having previously attended Villanova University.[25] Plaintiff Greenberg graduated after the Fall 2021 semester with a degree in Global Studies from the Dornsife College of Letters, Arts and Sciences and minors in Business and Entrepreneurship.[26] Plaintiff Greenberg had undergraduate tuition charges of $28,628 in the Spring 2020 semester and earned all 18 of the units for the classes in which she registered.[27] Plaintiff Greenberg was charged for various mandatory fees for the Spring 2020 semester, including fees related to student health, student programming, and the N. Topping Student Aid Fund (see **Attachment 4.4**).

. [28]

. [29]

### 5. Justin Kerendian

13.  Justin Kerendian is a resident of California and began attending USC in Fall 2018.[30] Plaintiff Kerendian transferred to USC, having previously attended Pierce Community

---

[21] **Attachment 4.3**.
[22] **Attachment 4.3**. See also Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 87-88.
[23] **Attachment 4.3**.
[24] First Amended Consolidated Complaint: p. 6; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 15-16.
[25] Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 16-17.
[26] Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 22; <https://dornsife.usc.edu/global-studies/>.
[27] Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 6: USC Account Itemization: USC000001007-008 (at 007). See also, **Attachment 4.4** and **Attachment 6**.
[28] **Attachment 4.4**.
[29] **Attachment 4.4**.
[30] First Amended Consolidated Complaint: p. 7; Deposition of Justin Kerendian, dated October 12, 2022: pp. 27, 30.

College.[31]  Plaintiff Kerendian graduated after the Fall 2020 semester with a degree in Business Administration from the Marshall School of Business.[32]  Plaintiff Kerendian had undergraduate tuition charges of $28,628 in the Spring 2020 semester and earned all 16 of the units for the classes in which he registered.[33]  Plaintiff Kerendian was charged for various mandatory fees for the Spring 2020 semester, including fees related to student health, student programming, and the N. Topping Student Aid Fund (see **Attachment 4.5**).

████████████████████████████████████████

████████████████[34] ████████████████████████████████

████████████████████████[35]

### 6.    Latisha Watson

14.    Latisha Watson is a resident of California and began attending USC in Fall 2018.[36] Plaintiff Watson attended Southwest College and Cal State Dominguez Hills prior to enrolling at USC for a Master's of Social Work degree.[37]  Plaintiff Watson graduated with a Master's of Social Work from the Suzanne Dworak-Peck School of Social Work after the Spring 2021 semester.[38]  Plaintiff Watson had graduate tuition charges of $26,992 in the Spring 2020 semester and earned all 14 of the units for the classes in which she registered.[39]  Plaintiff Watson was charged for various mandatory fees for the Spring 2020 semester, including fees related to student health, student programming, and the N. Topping Student Aid Fund (see **Attachment 4.6**). ████████████████████

████████████████████████████████████████

████████████████████████████████████████[40]

---

[31] Deposition of Justin Kerendian, dated October 12, 2022: p. 19.

[32] Deposition of Justin Kerendian, dated October 12, 2022: p. 20. I understand Plaintiff Kerendian took courses for half of a semester in Spring 2021 to complete "final courses."

[33] Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 57: USC Account Itemization: USC00001065. See also, **Attachment 4.5** and **Attachment 6**.

[34] **Attachment 4.5**.

[35] **Attachment 4.5**.

[36] Deposition of Latisha Watson, dated October 14, 2022: pp. 20, 108 and Exhibit 76: Transcript of Latisha Watson: USC000017378-380 (at 378).  See also, **Attachment 6**.

[37] Deposition of Latisha Watson, dated October 14, 2022: pp. 21.

[38] Deposition of Latisha Watson, dated October 14, 2022: p. 21.

[39] Deposition of Latisha Watson, dated October 14, 2022: Exhibit 79: USC Account Itemization: USC000001145. See also, **Attachment 4.6** and **Attachment 6**.

[40] **Attachment 4.6**.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY


[41]

## B.  The University of Southern California

15.    The University of Southern California is a private research university originally founded in 1880 and located in Los Angeles, California.[42]  The University of Southern California is home to approximately 4,700 full-time faculty and enrolled approximately 45,600 students during the Spring 2020 semester, which includes approximately 19,000 undergraduate students.[43]

16.    The University of Southern California offers undergraduate and graduate degree programs across 23 schools and divisions, which include, among others, the Dana and David Dornsife College of Letters, Arts and Sciences, the Marshall School of Business, the Viterbi School of Engineering, and the Gould School of Law.[44]  The Dana and David Dornsife College of Letters, Arts and Science is the largest and oldest of the USC schools and offers nearly 100 undergraduate majors and over 90 undergraduate minors.[45]

## C.  The Board of Trustees of the University of Southern California

17.    The Board of Trustees of the University of Southern California ("USC Board of Trustees") is the governing body of the University of Southern California.[46]

## D.  The Spring 2020 Semester

18.    USC's Spring 2020 semester began classes on January 13, 2020.[47]  Classes continued through May 1, 2020, with exams taking place from May 6, 2020 through May 13, 2020.[48]  On March 6, 2020, in response to state and local COVID-19 orders and a quickly spreading pandemic, USC announced that it would conduct a three-day test of the university's technical capabilities from March 11 to March 13 that moved all lectures and

---

[41] **Attachment 4.6**.
[42] <https://about.usc.edu/>.
[43] <https://about.usc.edu/>. **Attachment 5**.
[44] <https://academics.usc.edu/>.
[45] <https://dornsife.usc.edu/prospective-students/>; <https://dornsife.usc.edu/about/>.
[46] First Amended Consolidated Complaint: p. 8.
[47] USC Academic Calendar 2019-2020: USC000128974.
[48] USC Academic Calendar 2019-2020: USC000128974.

seminars to a remote setting for those days.[49]  On March 10, 2020, Charles Zukoski, Provost and Senior Vice President for Academic Affairs, informed the USC community that USC would continue "online classes after Spring Recess, from March 22 through March 29."[50]  On March 11, 2020, USC extended remote education through April 14, 2020.[51]  On March 16, 2020, USC extended remote education through the end of the Spring 2020 semester.[52]  I understand that from March 13, 2020 through the end of the Spring 2020 semester USC provided remote education.[53]

19.    During a portion of the Spring 2020 semester, Plaintiffs and putative class members were not legally permitted to access campus facilities.  The USC community updates about remote education discussed above were driven by the guidance issued by state and local authorities.[54]  On March 19, 2020, Governor Newsom issued a statewide "stay home" order.[55]  The same day Mayor Garcetti issued a "Safer at Home" order for the city of Los Angeles.[56]  Under these orders, I understand that students were not legally permitted to access campus facilities for which the Plaintiffs now claim damages or seek restitution due to their inability to access such facilities.

## E.  The USC Catalogue

20.    The USC Catalogue provides information for students prior to each academic year.  It includes information about USC, the administration, admissions and orientation, tuition and fees, the academic calendar, schools, academic units, programs, courses, and the schedule of classes, amongst other informational areas.[57]  The USC Catalogue states that it is the "document of authority for all students. The program requirements listed in the

---

[49] "3/6: Test of Online Class System," dated March 6, 2020: USC000127140-141.
[50] "3/10: Updated to University Policies and Plans Related to COVID-19," dated March 10, 2020: USC000001572.
[51] "3/11: Notice of Extended Period of Remote Instruction," dated March 11, 2020: USC000001573.
[52] "3/16: COVID-19 New Actions," dated March 16, 2020: USC000127092-093 (at 092).
[53] First Amended Consolidated Complaint: pp. 2-3.
[54] See for example: "3/16: COVID-19 New Actions," dated March 16, 2020: USC000127092-093; "3/20: Covid-19 Latest Updates and…," dated March 20, 2020: USC000127080-082; Email Re: "On-campus computing labs to stay closed for the remainder of the spring semester (March 25)," dated March 23, 2020: USC000130331.
[55] <https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/>.
[56] Public Order Under City of Los Angeles Emergency Authority, Issued March 19, 2020: < https://lamayor.org/sites/g/files/wph1781/files/page/file/20200527%20Mayor%20Public%20Order%20SAFER%20 AT%20HOME%20ORDER%202020.03.19%20%28REV%202020.05.27%29.pdf>.
[57] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 697-698).

*USC Catalogue* supersede any information that may be contained in any bulletin of any school or department."[58]  The catalogue also states that USC "reserves the right to change its policies, rules, regulations, requirements for graduation, course offerings and any other contents of this catalogue at any time."[59]

21.   The USC Catalogue also provides information about tuition and fees.[60]  The USC Catalogue states a student's registration "is complete when the [tuition] bill has been settled."[61]  Additionally, the USC Catalogue states "[t]uition is refundable entirely at the discretion of the university" and "[r]efunds will be computed as of the date on which a student cancels or drops a course through the Registration Department."[62]  Plaintiffs testified that they read and understood the reservation of rights and tuition and fees information included in the USC Catalogue.[63]

### F.  Class Allegations

22.   I understand that the Plaintiffs bring this putative class action lawsuit "individually and on the behalf of all others similarly situated" against USC and the USC Board of Trustees.[64]  Plaintiffs are former USC undergraduate and graduate students seeking to "recover tuition and fees wrongfully withheld by [USC] after it abruptly terminated in-person instruction, closed student housing and dining facilities, and shut down sports and all other campus activities in March 2020 in response to COVID-19."[65]  I understand the putative class is currently defined as:

---

[58] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 697-698).

[59] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 697-698).

[60] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 699).

[61] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 699).

[62] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 706).

[63] See Deposition of Injune David Choi, dated October 23, 2022: pp. 145-155; Deposition of Christina Diaz, dated October 16, 2022: pp. 172-177; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 68-70; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 91-97; Deposition of Justin Kerendian, dated October 12, 2022: pp. 146-153; Deposition of Latisha Watson, dated October 14, 2022: pp. 130-140.

[64] First Amended Consolidated Complaint: p. 1.

[65] First Amended Consolidated Complaint: p. 1.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

"All students who paid or were obligated to pay tuition, fees, or other costs to the University of Southern California for the Spring 2020 academic term."[66]

23.   Plaintiffs allege that Plaintiffs and putative class members entered into an implied-in-fact agreement to receive "in-person education, on-campus housing, sports, resources, and facilities" from USC, as detailed in its promotional marketing materials.[67]  For example, Plaintiffs allege that the USC Student Handbook is part of an implied contract between students and USC because it states USC "has the responsibility to provide students the use of campus facilities according to campus regulations" and that "the use of computers and computing facilities is central to the learning experience at USC."[68]  Plaintiffs further allege that the USC Student Handbook establishes USC's responsibility to provide students with opportunities to interact with faculty outside of the class setting."[69] Additionally, Plaintiffs allege the USC Student Handbook establishes the students' right to participate in student organizations, which may allow for reservation and use of campus facilities.[70]

24.   Plaintiffs also allege that the 2019-2020 USC Course Catalogue purportedly confirms USC's obligation to provide on-campus education.[71]  Specifically, Plaintiffs allege that the "'Schedule of Classes' establishes that courses [] would be held in specific USC campus buildings and facilities."[72]  Further, Plaintiffs claim USC promotional materials highlight the "rich campus life" at USC, including various aspects such as housing and dining.[73]  Despite Plaintiffs' claims, Plaintiffs testified that neither the USC Catalogue nor USC promotional materials explicitly promised in-person education.[74]  Additionally,

---

[66] First Amended Consolidated Complaint: p. 26.
[67] First Amended Consolidated Complaint: p. 12.
[68] First Amended Consolidated Complaint: p. 12.
[69] First Amended Consolidated Complaint: pp. 12-13.
[70] First Amended Consolidated Complaint: p. 13.
[71] First Amended Consolidated Complaint: p. 13.
[72] First Amended Consolidated Complaint: p. 13.
[73] First Amended Consolidated Complaint: p. 14.
[74] See Deposition of Injune David Choi, dated October 23, 2022: pp. 155-156, 158-159, 165; Deposition of Christina Diaz, dated October 16, 2022: pp. 33-35; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 45, 55, 63, 65; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 66-67, 75; Deposition of Justin Kerendian, dated October 12, 2022: pp. 40-41, 46, 49, 143-145; Deposition of Latisha Watson, dated October 14, 2022: pp. 47-50, 76-83.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

as addressed in Section II.E above, Plaintiffs testified that they read and understood the reservation of rights in the USC Catalogue.

25. Plaintiffs claim that "Plaintiffs and Class members have been denied the benefit of their bargain" for part of the Spring 2020 semester, as established through the alleged implied-in-fact contract that USC students would have access to education on-campus and use of campus facilities.[75] Plaintiffs' operative complaint "seeks disgorgement, restitution and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiffs and other Class members paid."[76] Plaintiffs have outlined the following Claims for Relief in this matter, based on their alleged implied-in-fact contract with USC:

26. **<u>Breach of Contract</u>**:  As discussed above, Plaintiffs allege that "[b]y the act of accepting enrollment and matriculating, together with the payment of required tuition and fees, an implied-in-fact contract between Plaintiffs and Class members, on the one hand, and Defendants, on the other hand, was created."[77]  Further, "Defendants' failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract."[78]  As a result of such alleged conduct, Plaintiffs claim they and putative class members "are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for USC's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendants failed to delivery during the Spring 2020 term."[79]

27. **<u>Restitution Based on Quasi-Contract</u>**: Plaintiffs allege that "Plaintiffs and members of the Class paid tuition and fees and did not receive the full benefit of their bargain from Defendants, thus resulting in their impoverishment."[80]  Further, "Defendants have retained the benefit paid by Plaintiffs and the Class despite their failure to provide the services for which the benefit was paid" with "no justification or cause for Defendants' failure to return the portion of the tuition and fees."[81]  Therefore, "Defendants have been

---

[75] First Amended Consolidated Complaint: p. 15.
[76] First Amended Consolidated Complaint: pp. 4-5.
[77] First Amended Consolidated Complaint: p. 28.
[78] First Amended Consolidated Complaint: p. 29.
[79] First Amended Consolidated Complaint: p. 30.
[80] First Amended Consolidated Complaint: p. 30.
[81] First Amended Consolidated Complaint: pp. 30-31.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 term that Plaintiffs and the Class paid for tuition and fees."[82]

28.    **Unfair Competition Law**: Plaintiffs claim that "Defendants' conduct in representing that they offer in-person instruction and other benefits to Plaintiffs and Class members when, in fact, they did not do so but continued to charge and demand full tuition and fees as if such instruction and benefits were being provided, amounts to unfair business practices within the meaning of California's UCL."[83]    As a result of the alleged unfair business practices, Plaintiffs claim that "Plaintiffs and the Class are entitled to restitution and to the recovery of attorney's fees and costs."[84]

## III.    OPINIONS

### A.    There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed By the Transition to Remote Education

#### 1.    USC Charges, and Students Pay, the Same Tuition for Online and In Person Degree Programs

29.    USC charges tuition based on the number of units a student enrolls in and charges one flat tuition price for undergraduate and graduate students taking between 12 and 18 units and 15 and 18 units per semester, respectively.[85]    The USC Catalogue for 2019-2020 defined tuition and identifies the amount of tuition payable for the number of units taken during each semester.[86]    The USC Catalogue states the "number of units for which tuition is charged is indicated by the number in parentheses after the title of each course listed under Courses of Instruction."[87]    Additionally, Andrew Stott, Vice Provost for Academic Programs at USC, testified that "tuition pays for the units you earn towards your degree. And we continued to make progress with students in their educational programs toward

---

[82] First Amended Consolidated Complaint: p. 31.
[83] First Amended Consolidated Complaint: p. 31.
[84] First Amended Consolidated Complaint: pp. 31-32.
[85] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 700).
[86] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 699-700).
[87] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 699-700).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

their degrees."[88]    **Figure A** below identifies the tuition per semester for undergraduate and graduate students based on the number of units taken by each student.

**Figure A: USC Catalogue 2019-2020 – Tuition per Semester**[89]

| Tuition (semester), (Estimated) | |
|---|---|
| Undergraduate Students | |
| (12–18 units) | $28,628.00 |
| unit basis | 1,928.00 |
| Graduate Students | |
| (15–18 units) | 28,628.00 |
| unit basis | 1,928.00 |

30.    USC has an established process for reviewing and developing its academic programs.[90] According to Mr. Andrew Stott, Vice Provost for Academic Programs, USC's academic program development process is "agnostic to mode."[91]  USC does not "make a distinction when … reviewing a program … for quality and academic rigor about the mode of delivery.  [USC] follow[s] exactly the same process for online and – and programs that are not online."[92]  Prior to the Spring 2020 semester, USC did not offer undergraduate degree programs in the online modality.[93]  However, USC did offer certain graduate programs via the Virtual Academic Center (i.e., online classes via the internet).[94] Regardless of the modality, USC charged the same tuition on a per unit basis.

---

[88] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: p. 232. Plaintiffs also recognized that tuition was charged based on the number of units for which students register.  See for example, Deposition of Christina Diaz, dated October 16, 2022: p. 176; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 101; Deposition of Justin Kerendian, dated October 12, 2022: p. 150.

[89] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 700).  I understand that certain graduate programs have different flat rate and per unit tuition amounts.  For example, the "Engineering Graduate units (500 level and above)" are $2,075 per unit and the Master of Real Estate Development Session 038 has a flat fee tuition of $34,208 or per unit tuition of $2,138.  See Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 700).

[90] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: p. 134.

[91] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: p. 134.

[92] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 134-135.

[93] First Amended Consolidated Complaint: p. 2; <https://online.usc.edu/programs/>;
<https://web.archive.org/web/20191108020154/https://online.usc.edu/programs/>.

[94] See for example, <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=24919&returnto=6360>.

31.    For example, the Master of Social Work graduate program is offered in two modalities:
(1) in-person or (2) in the Virtual Academic Center.[95]  The Master of Social Work is
offered within the Suzanne Dworak-Peck School of Social Work.[96]  The Dworak-Peck
School of Social Work website states under its "Tuition and Fees" section that "[t]uition
charges vary each semester based on the number of units you are enrolled in," consistent
with USC's course catalogue information on tuition and fees.[97]  Further, USC charges the
same amount of tuition for the online and in-person versions of the Master of Social
Work.[98]  Additionally, USC's website for the Master of Social Work does not provide
any distinction between the in-person and Virtual Academic Center modalities for tuition,
and both modalities require a minimum of a 42-unit curriculum.[99]  **Table 1** below
identifies examples of other graduate programs offered by USC both in-person and online
for the same tuition price.

**Table 1: Examples of USC Graduate Programs Offered In-Person and Online**[100]

| Graduate Program | In-Person Tuition | Online Tuition |
|---|---|---|
| Gerontology[101] | $28,628 | $28,628 |
| Law[102] | $33,153 | $33,153 |
| Business Administration[103] | $1,980 (per unit) | $1,980 (per unit) |

32.    In summary, USC's contemporaneous data demonstrates that USC charges, and USC
students have been willing to pay, the same level of tuition per unit for remote education
as in-person education.  There is no evidence to support Plaintiff's proposition that USC

---

[95] <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=24919&returnto=6360>.

[96] <https://dworakpeck.usc.edu/academic-programs>.

[97] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45:
USC Catalogue 2019-2020: USC000130695-723 (at 699-700); <https://dworakpeck.usc.edu/admissions/tuition-and-financial-aid>.

[98] USC Tuition Rates for Spring 2020 Semester: USC000125116.

[99] <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=24919&returnto=6360>.

[100] Graduate and Undergraduate Tuition Rates: USC000125116; Tuition by Major and Degree: USC000125122.

[101] <https://gradadm.usc.edu/our-programs/davis-school-of-gerontology/>.  See course codes 1143 ("Gerontology")
and 1419 ("Gerontology (online)").

[102] <https://gradadm.usc.edu/our-programs/gould-school-of-law/>.  See course codes 394 ("Law") and 1528 ("Law
(online)").

[103] <https://gradadm.usc.edu/our-programs/marshall-school-of-business/>.  See course codes 1308 ("Business
Administration (Full-time)") and 1601 ("Business Administration (online)").  Amounts reflect per-unit tuition rates.

would have been willing to charge less per unit for remote education during the Spring 2020 semester, or that courses delivered remotely are less valuable to USC's students.

**2.    USC Students Either Benefited From, or Received a Refund For, Fees Paid During the Spring 2020 Semester**

33.    Plaintiffs and putative class members are seeking a "prorated refund of the tuition and fees for the lost education experience when classes moved from in-person to online and student access to on-campus resources and facilities was denied or severely limited."[104] The USC Catalogue for the 2019-2020 academic year outlines the following mandatory fees, summarized in **Table 2**, below.

**Table 2: USC Student Mandatory Fees 2019-2020 Academic Year**[105]

| Fee | Undergraduate Amount | Graduate Amount |
|---|---|---|
| Commitment Deposit | $300 | Varies by Department or School |
| New Student Fee | $450 | $55 |
| Student Health Service | $366 (for Spring 2020 semester) | $366 (for Spring 2020 semester) |
| Student Programming | $64 (for Spring 2020 semester) | $43 (for Spring 2020 semester) |
| Norman H. Topping | $8 (for Spring 2020 semester) | $8 (for Spring 2020 semester) |

34.    In addition to the mandatory fees, USC charges "Special Fees" that include, but are not limited to: commuter permits, motorcycle permits, off-campus resident fees, daily parking fees, event permit fees, and student ID card fees, amongst others.[106]  Special Fees also include course-specific fees, such as laboratory fees.[107]  However, none of the Plaintiffs were charged course-specific fees.[108]  Further, if a student elects to live "on-campus," the student is charged an application processing fee, a contract confirmation payment, and other fees based on arrival and departure times for the housing unit, in addition to rent.[109]

---

[104] First Amended Consolidated Complaint: p. 26.
[105] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 701).
[106] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 702-703).
[107] USC Catalogue 2019-2020: Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 702-703).
[108] **Attachment 4.1-4.6**.
[109] Housing Fees: <http://housing.usc.edu/index.php/housing-fees/>.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

35. Various mandatory fees at issue are not tied to in-person services provided by USC. The Commitment Deposit is for admitted students and it is non-refundable, however, it is credited to the student's account after class registration.[110] The New Student Fee is for first-time students and "supports various Welcome Week activities," which occur at the beginning of the semester.[111] The Norman H. Topping Fee "provides scholarships to low-income students" and was elected to be assessed by USC students in 1970.[112] The above-mentioned mandatory fees are not directly related to in-person services, much less any services, that would have been impacted by the transition to remote education for a portion of the Spring 2020 semester.

36. The other two mandatory fees, the Student Health Service Fee and the Student Programming Fee, may potentially relate – at least in part – to in-person or on campus services provided by USC to its students. For example, the Student Health Service Fee "funds public health and preventative care for the student community, and underwrites the medical and mental health direct services."[113] The website also states the Student Health Service Fee "cannot be waived."[114] More specifically, the USC Student Health website describes the Student Health Fee as "the operational funding for all campus health programs, both clinical operations (medical care, mental health services, immunizations, sexual assault survivor support, prevention education, maintaining medical records, and 24/7 phone coverage – 213-740-9355 (WELL) – to connect to these services) and programs related to public health: Covid-19 screening, testing, public health notification and contact tracing; consent and healthy relationships programs; substance use prevention and education; mental health outreaches during crisis, and more."[115] These two mandatory fees are not tied to in-person or on campus services and, as described below, students received the benefits of such fees.

37. Students enrolled in the Spring 2020 semester who paid the mandatory fees related to student services were either able to benefit from such fees or receive a refund of a portion

---

[110] USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 035).
[111] USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 035).
[112] USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 036).
[113] USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 035).
[114] USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 035).
[115] USC Student Health Website: <https://studenthealth.usc.edu/fees-deadlines/>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

of the fees.[116]   Andrew Stott, Vice Provost for Academic Programs, testified "as you know, we did provide pro-rated refunds for fees where students could no longer receive the benefit … For fees where students continued to receive the benefit, such as the health center fees, student programming fee, et cetera, we didn't feel that it was necessary to refund those things because students were getting what they paid for plus because we gave them over and above."[117]

38. Such pro-rated refunds for fees where students no longer received the benefit, such as housing, meals, and parking, are reflected in the Plaintiffs' account ledgers.[118]   For example, Plaintiff Gomez was charged $5,101 for rent and $675 for a meal plan for the Spring 2020 semester, and received refunds of $2,150 and $7.96, respectively.[119] Similarly, Plaintiff Greenberg was charged $2,880 for rent and $337.50 for parking, and received refunds of $1,095.99 and $150, respectively.[120]

39. The benefits related to the Student Health Service Fee and the Student Programming Fee were still available to students enrolled in the Spring 2020 semester after the transition to remote education.   For example, USC's student health center remained open by appointment and also added online service, providing "TeleHealth counseling visits, distance offerings include workshops on strategies to cope with sleeping issues and anxiety; therapy groups; Let's Talk drop-ins, which consist of 30 minute sessions with a counselor,  with no appointment necessary and are available to all students in any part of the world."[121]   Andrew Stott, Vice Provost of Academic Programs at USC, testified that "the student health center ran essentially as a department of public health" and that USC "also ran… virtual programs and did an enormous amount of work to make sure that students were taken care of."[122]   With respect to student programming, USC provided

---

[116] Students electing to not take advantage of the benefits after transition to remote education reflect the individual decisions of students.
[117] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 232.
[118] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 232. See also, **Attachment 4.1-4.6**.
[119] **Attachment 4.3**.  Plaintiffs Gomez testified that he used all of his "meal swipes" during the Spring 2020 semester.  Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 93.
[120] **Attachment 4.4**.
[121] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[122] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 82-83.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

"virtual student life event[s]," including a TikTok contest, a homework club, karaoke, a baking class, and various student wellness workshops, as examples.[123]  USC also encouraged signing up for a "live resume critique and one-on-one coaching" and participation in "Trojan Talk" sessions or "virtual career fair[s]" to speak with and learn from employers.[124]

40.  USC not only continued to provide services remotely, but it also offered additional services to students during the Spring 2020 semester that had not been previously available.  As a result, students enrolled in the Spring 2020 semester either received the benefit from, or received a refund for, the fees paid during the Spring 2020 semester.  Therefore, Plaintiffs and putative class members were not financially harmed by the transition to remote education related to the fees paid to USC.

### 3.    The Assumption That Tuition Prices for Online Programs Should Be Lower than for In-Person Programs is Incorrect

41.  Plaintiffs' allegations assume that the tuition paid for remote education is necessarily lower than the tuition paid for in-person education.  As described above and below, for USC, that is not the case, and the practices of other universities that are not at issue in this putative class action are not as instructive as USC's own practices and approach for setting tuition.

42.  Outside of USC, the level of tuition charged by other universities for online and in-person education varies depending on the school and the program.  There is no basis to conclude that tuition for online or remote education should necessarily be lower than for in-person education.  For example, a 2019 study from Quality Matters and Eduventures Research surveyed 366 colleges and universities in the United States.[125]  Of those 366 colleges and universities, 135 were public 4-year institutions and 123 were private 4-year

---

[123] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606); Campus Activities Website, Archived April 2020: USC000130577-578 (at 577).
[124] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[125] "Chloe 4: Navigating the Mainstream, The Changing Landscape of Online Education, 2020", Ron Legon Ph.D., Richard Garrett, and Eric Frederickson Ed.D., 2020: pp. 7-8.

institutions.[126] The purpose of the study was to better understand various aspects of online educational services including online enrollment, course design, finances, support services, and organizational structure, amongst other items.[127] One area of survey questions sought to understand how tuition compares between equivalent online and on-campus programs at each institution. The survey found that 85% of the responding universities charge generally the same or higher tuition for online than in-person education.[128] Similarly, as addressed in **Section III.A.1** and **Table 1** above, USC charges the same rate for online and in-person programs.

43. This data contradicts any presumption that the tuition for in-person education is necessarily higher than the tuition for online or remote education. Furthermore, due to health and safety concerns during the pandemic, putative class members may have preferred remote education, increasing the demand for online or remote education.

### 4. Enrolled Students' Academic Career Progression Was Not Delayed During the Spring 2020 Semester

44. USC charges tuition based on units, and students who enrolled in and completed units during the Spring 2020 semester earned progress towards degree completion.[129] There is no indication that changing education to a remote modality harmed progress towards degree completion for putative class members. As addressed in **Table 4** below, each of the Plaintiffs in this matter earned the units for which they were registered during the Spring 2020 semester. ███████████████████████████████████ ███████████████████████████████████████████ (see **Attachment 6**).

---

[126] "Chloe 4: Navigating the Mainstream, The Changing Landscape of Online Education, 2020", Ron Legon Ph.D., Richard Garrett, and Eric Frederickson Ed.D., 2020: p. 8.
[127] "Chloe 4: Navigating the Mainstream, The Changing Landscape of Online Education, 2020", Ron Legon Ph.D., Richard Garrett, and Eric Frederickson Ed.D., 2020: pp. 5-6.
[128] "Chloe 4: Navigating the Mainstream, The Changing Landscape of Online Education, 2020", Ron Legon Ph.D., Richard Garrett, and Eric Frederickson Ed.D., 2020: pp. 8, 41. Calculated as: 11% (Higher) + 5% (Generally Higher) + 48% (Same) + 21% (Generally the Same) = 85%. 11% of all respondents reported that tuition was higher for online programs than on-ground programs.
[129] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 700).

45. USC emphasizes the importance of the pace of a student's academic career. Gregory Condell, VP of Finance at USC, testified that a "student's academic career spans a length of time, and it's – it's important to be able to continue the pace of that academic career… I mean a partial degree isn't going to help a student. It isn't going to achieve their desired outcome."[130] Mr. Condell also testified that USC was able to "keep students on pace for their academic career without the pandemic kind of causing a delay."[131] Additionally, as discussed above, Andrew Stott, Vice Provost for Academic Programs at USC, testified that "tuition pays for the units you earn towards your degree. And we continued to make progress with students in their educational programs toward their degrees or they had the option of withdrawing."[132]

46. USC's six-year graduation rates have remained consistent since 2017, indicating that the move to remote education during the Spring 2020 semester did not impact progress towards degree completion for putative class members.[133] **Table 3** below lists available data for USC's six-year graduation rates since 2017.

**Table 3: USC Six-Year Graduation Rates**[134]

| Graduating Year | Graduation Rates |
|---|---|
| 2022 (Fall 2016 freshman class) | 92% |
| 2021 (Fall 2015 freshman class) | 92% |
| 2020 (Fall 2014 freshman class) | 92% |
| 2019 (Fall 2013 freshman class) | 91% |
| 2018 (Fall 2012 freshman class) | 92% |
| 2017 (Fall 2011 freshman class) | 92% |

47. Students also place an emphasis on academic career progression and graduating on time. For example, Plaintiff Latisha Watson testified that she utilized a document that helped her plan out her "three-year program" in "adult mental health and wellness."[135] She claims the document she used had "the course term and the numbers and which courses

---

[130] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 52-53.
[131] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: p. 53.
[132] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: p. 232.
[133] <https://about.usc.edu/facts/>.
[134] <https://about.usc.edu/facts/>.
[135] Deposition of Latisha Watson, dated October 14, 2022: p. 110.

[she] should take in what order" so that she could complete the program.[136]  Further, when asked about either withdrawing or taking a leave of absence during the Spring 2020 semester, Plaintiff Watson testified "I don't think a leave of absence or withdrawal would have been appropriate for me to take because it would have messed up my degree.  It would have messed up my timeline.  I wouldn't have my degree right now if I decided to take a break."[137]  Additionally, Plaintiff Mark Gomez testified that he did not consider withdrawing from classes after USC transitioned to remote education in the Spring 2020 semester.[138]  Plaintiff Gomez further testified that after the transition to remote education he thought he "couldn't take a pause because [he] felt like it would slow [his] momentum down" and that he felt he "was on an upward trend" so "taking a pause was going to mess [him] up."[139]  Plaintiff Kerendian testified that he did not consider withdrawing because he "was at the end of the finish line, basically."[140]

48.  The representatives for the putative class achieved progress towards degree completion during the Spring 2020 semester.  **Table 4** below summarizes the number of units attempted and earned by the Plaintiffs during the Spring 2020 semester and lists their graduation year.

---

[136] Deposition of Latisha Watson, dated October 14, 2022: p. 110.
[137] Deposition of Latisha Watson, dated October 14, 2022: p. 236.
[138] Deposition of Chile Mark Aguiniga Gomes, dated October 11, 2022: p. 155.
[139] Deposition of Chile Mark Aguiniga Gomes, dated October 11, 2022: pp. 154-155.
[140] Deposition of Justin Kerendian, dated October 12, 2022: p. 130.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Table 4: Plaintiffs Units Attempted and Earned in the Spring 2020 Semester**[141]

| Plaintiff | Program | Units Attempted | Units Earned | Graduation Semester |
|---|---|---|---|---|
| Injune David Choi | Business Administration | 6 | 6 | Spring 2020 |
| Christina Diaz | Architecture | 17 | 17 | Spring 2021 |
| Chile Mark Aguiniga Gomez | Law, History, and Culture | 16 | 16 | Spring 2021 |
| Jenna Julia Greenberg | Global Studies | 18 | 18 | Fall 2021 |
| Justin Kerendian | Business Administration | 16 | 16 | Fall 2020 |
| Latisha Watson | Master of Social Work | 14 | 14 | Spring 2021 |

### 5.    There is No Indication That Job Placement and Income Post-Graduation Was Impacted for Putative Class Members

49.    More than two-thirds of USC students who completed the Spring 2020 semester, earned credits towards their degree, and graduated after the Spring 2020 semester were able to obtain employment within six months after graduation.  Data recorded and maintained by USC on its Career Center website indicates that job placement and starting salaries post-graduation were not impacted by the transition to remote education during the Spring 2020 semester.  Specifically, there is no evidence that putative class members experienced reductions to starting salaries or were disadvantaged during the job-seeking process as a result of remote education during the Spring 2020 semester.

50.    The USC Career Center collects information about undergraduate students' post-graduation career outcomes (e.g., full-time employment, continued education, amongst other categories).[142]  **Table 5** below summarizes the percentage of USC undergraduate students who were employed within six-months after graduation, as well as the mean and median starting salaries for those employed graduates.  As illustrated in **Table 5** below, the statistics for USC undergraduate students graduating in 2020 are consistent with those

---

[141] **Attachment 7**.
[142] <https://careers.usc.edu/outcomes/>.

of previous graduating classes at USC. Additionally, each of the six Plaintiffs were able to obtain employment after graduating from USC.[143]

**Table 5: USC Undergraduate Students Employment Rate and Salary Statistics by Graduating Class**[144]

| Graduating Class | Percent Employed | Mean Starting Salary | Median Starting Salary |
|---|---|---|---|
| Class of 2020 | 67.8% | $71,576 | $70,000 |
| Class of 2019 | 71.0% | $67,493 | $65,000 |
| Class of 2018 | 70.4% | $64,465 | $62,500 |

51.    Plaintiffs in this matter also recognize the value of a degree from USC. In her deposition, Plaintiff Diaz testified that she advertises her USC degree on her LinkedIn profile and resume, and further testified that she "[didn't] believe" she could have attained her current job without her degree from USC.[145] Similarly, Plaintiff Choi testified in his deposition that he advertises his USC degree on his LinkedIn profile and believes a USC degree makes him more attractive to potential employers.[146] Plaintiff Gomez testified that he applied to USC because a degree from USC offered opportunities other colleges would not, and that his USC degree was "definitely" the reason he obtained his post-graduate position.[147] Plaintiff Greenberg testified that she transferred to USC because, among other reasons, it would "open opportunities internationally for [her] future career," and testified that she advertises her USC degree on her LinkedIn profile and resume without qualification as to remote education.[148] Plaintiff Watson also advertises her USC degree online and on her resume, without any qualification of remote instruction.[149]

---

[143] **Attachment 7**.

[144] <https://careers.usc.edu/outcomes/>. Information for each class can be identified by filtering the data on the USC Career Center website by graduating class. The decrease in "Percent Employed" from 71.0% for the Class of 2019 to 67.8% for the Class of 2020 could be caused by a number of macroeconomic issues separate from the transition to remote education, such as lower hiring activity due to the COVID-19 pandemic.

[145] Deposition of Christina Diaz, dated October 16, 2022: pp. 29-31.

[146] Deposition of Injune David Choi, dated October 23, 2022: p. 40.

[147] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 35-37.

[148] Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 17-18, 142-144.

[149] Deposition of Latisha Watson, dated October 14, 2022: pp. 24-26, 40.

### 6.    Students Paid Higher Tuition for the Fall 2020 Semester Knowing Education Would be Remote

52.    I understand that after the conclusion of the Spring 2020 semester, a banner was put on the USC website for the course catalogue that stated, "The Fall 2020 semester will begin with fully remote instructions, with limited exceptions for clinical education."[150]  In other words, for the Fall 2020 semester and beyond, USC students were aware that education may be delivered remotely.

53.    USC raised undergraduate and graduate tuition for the Fall 2020 semester by approximately 3.5%.[151]  Despite the increase in tuition and knowledge that education would be remote, a large portion of students, including all the Plaintiffs who had not yet graduated, elected to remain enrolled in USC in the Fall 2020 semester with a higher rate of tuition and remote education.  USC retention rates indicate a relatively low attrition rate for the Fall 2020 semester – comparable to other years – for first-time freshman enrolled in Fall 2019.  **Table 6** below summarizes USC's first year retention rates for the last five years.

**Table 6: USC Retention Rates[152]**

| Current Semester | % Enrolled in Following Fall Semester |
|---|---|
| Fall 2021 | 97% |
| Fall 2020 | 96% |
| Fall 2019 | 91% |
| Fall 2018 | 96% |
| Fall 2017 | 97% |

54.    USC's retention rates indicate that the vast majority of non-graduating students attending USC during the Spring 2020 semester decided to remain enrolled at USC for the Fall 2020 semester, despite education being remote and tuition increasing.  As illustrated in **Table**

---

[150] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 150-152.
[151] Spring 2020 undergraduate tuition was $28,628, see Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: Exhibit 45: USC Catalogue 2019-2020: USC000130695-723 (at 699-700). Fall 2020 undergraduate tuition was $29,630, see <https://web-app.usc.edu/ws/soc_archive/soc/term-20203/tuition-and-fees/index.html>.
[152] <https://about.usc.edu/facts/>.

**6** above, the student retention rate from Fall 2019 to Fall 2020 decreased to a retention rate of 91%, slightly below the historical mark of 96% to 97%. While there was a small drop in the retention rate, this indicates that the vast majority of students were willing to enroll at USC and pay tuition at the slightly higher tuition rate than the prior academic year, despite remote education. Furthermore, any students who didn't believe remote education was worth the price of tuition could elect to pause their education. This data indicates that the decision to remain enrolled with remote education at full tuition is an individualized decision, with nearly all students electing to continue while a relatively small percentage of students elected to withdraw or take a leave of absence. For the students not wanting to delay their progress towards degree completion, their continued enrollment indicates that degree progression was a determining factor for their enrollment rather than the modality of education.

55.     Plaintiffs' testimony and documents also indicate that students were willing to pay increased tuition at USC despite knowing that the education would be remote. For example, Plaintiff Watson testified that she was willing to enroll in Fall 2020, despite being fully remote because "by then, they had already let us know that it would be fully remote."[153] Plaintiff Diaz also admitted at deposition that she paid tuition for Fall 2020 knowing it would be taught via remote education.[154] Plaintiff Gomez testified that he continued his education in the Fall 2020 semester because he "couldn't take a pause because [he] felt like it would slow [his] momentum down" and he "didn't want to take school off… it was just better to just to finish it."[155] Plaintiff Kerendian testified that he enrolled in the Fall 2020 semester because he "wanted to complete [his] time at USC since [he] was at the end of the finish line."[156] Five of the six Plaintiffs in this matter continued their education at USC after the Spring 2020 semester despite knowing that the Fall 2020 semester would be fully remote and at a higher tuition rate than Spring 2020.[157] The sixth Plaintiff, Plaintiff Choi, graduated after the Spring 2020 semester.[158]

---

[153] Deposition of Latisha Watson, dated October 14, 2022: p. 237.
[154] Deposition of Christina Gloria Shu Diaz, dated October 16, 2022: p. 178
[155] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 154-155.
[156] Deposition of Justin Kerendian, dated October 12, 2022: p. 130
[157] **Attachment 7**.
[158] **Attachment 7**.

### 7.    Course Evaluations for the Spring 2020 Semester are Inconsistent with Plaintiffs' Allegations

56.    Plaintiffs allege that "USC's online classes are not equivalent to the promised in-person, on-campus experience."[159]    Specifically, Plaintiffs allege there was "significant harm associated with the shift from in-person instruction to the online substitute, including delayed or non-existent instructor and peer interaction, hastily modified curriculum, lost lab experiences, improvised classes and reformulated grading."[160]    Course evaluations for the Spring 2020 semester do not support Plaintiff's assertions and reflect the students' perspective that the education they received in Spring 2020 was generally equivalent, if not better, than previous in-person education.

57.    USC produced course survey data for the Spring 2020 semester.    **Table 7** below summarizes Spring 2020 survey results for all courses at USC and compares those results against the survey results from the Spring 2019 semester.    As further illustrated in **Table 7** below, course survey results for Spring 2020 were similar to, or higher than, the course ratings from the previous, in-person, Spring 2019 semester.

---

[159] First Amended Consolidated Complaint: p. 20.
[160] First Amended Consolidated Complaint: p. 20.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Table 7: USC Spring 2019 and Spring 2020 Course Survey Results (All Courses)[161]**

| Survey Question | Rating (4 - Strongly Agree, 3 - Agree, 2 - Disagree, 1 - Strongly Disagree) | | | Higher Rating in Spring 2020? |
| --- | --- | --- | --- | --- |
| | Spring 2019 | Spring 2020 | Difference | |
| The course objectives were well explained | 3.53 | 3.65 | 0.12 | Yes |
| The course assignments were related to the course objectives | 3.59 | 3.69 | 0.10 | Yes |
| I understood what was expected of me in this course | 3.50 | 3.62 | 0.12 | Yes |
| The instructor carefully explained difficult concepts, methods and subject matter | 3.49 | 3.60 | 0.11 | Yes |
| The instructor encouraged questioning and discussion of course topics from the students | 3.58 | 3.69 | 0.11 | Yes |
| The instructor encouraged me to do my best work | 3.56 | 3.67 | 0.11 | Yes |
| The course materials included diverse perspectives OR applications to diverse populations | 3.53 | 3.64 | 0.11 | Yes |
| The instructor used a variety of teaching approaches to meet the needs of all students | 3.43 | 3.56 | 0.13 | Yes |
| The instructor was receptive to the expression of diverse student viewpoints | 3.56 | 3.67 | 0.11 | Yes |
| The instructor demonstrated sensitivity to students' needs and diverse life experiences | 3.55 | 3.66 | 0.11 | Yes |
| The assessments assigned reflected what was covered in the course | 3.53 | 3.64 | 0.11 | Yes |
| The grades I have received thus far reflect the quality of my performance in the course | 3.47 | 3.60 | 0.13 | Yes |
| The criteria for good performance on the assignments or assessments were clearly communicated | 3.44 | 3.57 | 0.13 | Yes |
| The instructor's evaluation of my performance was constructive | 3.49 | 3.61 | 0.12 | Yes |
| I learned perspectives, principles or practices from this course that I expect to apply to new situations | 3.53 | 3.65 | 0.12 | Yes |
| This course challenged me to think critically and communicate clearly about the subject | 3.55 | 3.65 | 0.10 | Yes |
| This course provided me with information that may be directly applicable to my career or academic goals | 3.52 | 3.63 | 0.11 | Yes |

[161] Spring 2019 and 2020 Course Survey Data: USC000126907.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

58.    Each of the 22 schools reporting survey results had overall ratings that were higher in Spring 2020 than in Spring 2019.[162]   The Marshall School of Business conducted a separate survey, with slightly different questions than those reflected in **Table 7** above.[163] The results from the Marshall survey indicate average scores for Spring 2020 that were higher, lower, or similar to those for Spring 2019, depending upon the question.[164] Overall, these ratings indicate that from the putative class members' perspective, the students overall did not perceive that the transition to remote education had a negative impact on the education received in the Spring 2020 semester, as the results were generally equivalent, if not better, than prior in-person education.

### 8.    USC Subsidizes the Cost of Education

59.    Plaintiffs allege that since March 13, 2020, USC "has offered less valuable 'remote' classes through video conference or recorded presentations instead of the bargained-for in-person instruction."[165]   As described above, students enrolled in USC during the Spring 2020 semester were not financially harmed, as they earned units towards degree completion for the classes in which they were enrolled.   However, even assuming the value of remote education is less than in-person education (which has not been established), there is still no indication that USC students were financially harmed as USC does not charge students for the full cost of their education.

60.    Plaintiffs' proposed damages or restitution model seeking to measure the alleged diminished value of USC's remote education ignores how USC sets its tuition.   One of Gregory Condell's responsibilities as the VP of Finance for USC is to determine tuition levels.[166]   Mr. Condell testified ████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

---

[162] Spring 2019 and 2020 Course Survey Data: USC000126907.  The overall differential between Spring 2020 and Spring 2019 was calculated by adding the "difference" column for each survey question.
[163] Course Evaluation Summary Results for the Marshall School of Business (Spring 2019 and Spring 2020): USC000126908.
[164] Course Evaluation Summary Results for the Marshall School of Business (Spring 2019 and Spring 2020): USC000126908.
[165] First Amended Consolidated Complaint: pp. 2-3.
[166] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: p. 59.



61.

62. Mr. Condell also testified that ████████████████████████████[172] USC reported financial information to the Integrated Postsecondary Education Data System ("IPEDS") for the fiscal year beginning July 2019 and concluding June 2020.[173] I understand the purpose of this IPEDS finance report is "to collect basic financial information from items associated with the institution's General Purpose Financial Statements."[174] For the year ending June 2020, USC reported tuition and fees of approximately $1.6 billion and expenses for instruction of approximately $2.5 billion.[175] USC's tuition and fees do not cover the cost of education, and therefore, USC students

---

[167] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 59-60.
[168] Discussion with Gregory Condell.
[169] "Undergraduate Tuition and Mandatory Fees Increase for 2019-2020," dated November 28, 2018: USC000027946-28107 (at 957-965).
[170] "Undergraduate Tuition and Mandatory Fees Increase for 2019-2020," dated November 28, 2018: USC000027946-28107 (at 958).
[171] "Undergraduate Tuition and Mandatory Fees Increase for 2019-2020," dated November 28, 2018: USC000027946-28107 (at 958-965).
[172] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 43,59.
[173] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 103). USC reported "Net student tuition and fees" of $1,620,730 for the year ended June 30, 2020, in its Consolidated Financial Statements. See "USC Consolidated Financial Statements For the Years Ended June 30, 2020 and 2019," dated November 23, 2020: USC000017078-113 (at 081).
[174] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 102).
[175] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 115).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

are paying less than the value of the education they received as measured by the cost to deliver the instruction.

63.  ████████████████████████████████████████████████████████

████████████████████████████████ [176]  USC is a highly selective university.  From 2016 to 2020, USC accepted approximately 15% of the approximately 300,000 undergraduate students that applied for admission.[177]  The large number of applicants indicates that a degree from USC is in high demand.  In the 2019-2020 academic year, for every 1 undergraduate student enrolled at USC, approximately 21 applied for admission.[178]  Given the overwhelming demand for admission to USC, economically, if tuition were based on an applicant's or student's willingness to pay, it would exceed the amount currently charged by USC.

64.  As described above, the cost to provide education is a primary consideration when establishing the price of tuition.  Students are not charged the full cost of education.  Even if the value of online or remote education is less than in-person education, it is speculative to conclude that the tuition paid exceeded the value of the education received, as the tuition paid failed to cover the cost of the remote education that the students received.

### B.  USC Did Not Financially Benefit from the Transition to Remote Education

65.  To recover restitution, I understand that Plaintiffs or Plaintiffs' expert(s) will have to demonstrate that USC was unjustly enriched from its actions in the Spring 2020 semester.  However, USC did not financially benefit from the transition to remote education.  In fact, USC experienced reduced revenues and incurred additional expenses related to the transition to remote education in the Spring 2020 semester.

66.  In a presentation to USC's Board of Trustees dated May 13, 2020, USC projected the financial impact of COVID-19.[179]  ████████████████████████████████████

---

[176] Discussion with Gregory Condell.
[177] **Attachment 10**.
[178] **Attachment 10**.  Calculated as 66,198 ÷ 3,167 = 20.9.
[179] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: Exhibit 52: President's Report, Board of Trustees – Executive Committee Meeting, May 13, 2020: USC000085231-246 (at 231, 238).



[180] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: Exhibit 52: President's Report, Board of Trustees – Executive Committee Meeting, May 13, 2020: USC000085231-246 (at 238).

[181] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 36-37.

[182] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: p. 37.

[183] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 36-37.

[184] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: p. 37.

[185] "FY20 and FY21 Financial Performance," dated November 10, 2020: USC000126909-940.

[186] "FY20 and FY21 Financial Performance," dated November 10, 2020: USC000126909-940 (at 939).

[187] "FY20 and FY21 Financial Performance," dated November 10, 2020: USC000126909-940 (at 939).

[188] "FY20 and FY21 Financial Performance," dated November 10, 2020: USC000126909-940 (at 939).

[189] A USC internal tracking document indicated a financial impact of approximately $110 million for fiscal year 2020 related to COVID-19. See **Attachment 9**.

68.     USC offered prorated refunds for services it could not transition to a remote modality.

For example, Mr. Condell testified that ████████████████████████████

███████████████████████████████████████████████████

███████████████████████[190] █████████████████████████

███████████████████████████████████[191] ████████████

███████████████████████████████████████████████████

█████████████████████████████████████

69.     Mr. Condell also testified that █████████████.[192] ████████████

████████████████████████████████████     In addition to its fixed costs,

USC incurred additional expenses related to the COVID-19 pandemic, and USC tracked

its COVID-19 related expenses by department and school.[193]  USC's fiscal year runs from

July 1 to June 30.[194] ███████████████████████████████

███████████████████████.[195] ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████[196] ████████

███████████████████████████████████████████████████

█████████████████████████████████████

70.     Other components of USC's loss from academic operations include reduced income from

auxiliary operations.  ██████████████████████████████████

██████[197] ████████████████████████████████████████████

██████[198] ██████████████████████████████████████████

███████████████████████████████████████████████[199]



---

[190] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: p. 42.
[191] **Attachment 9**.
[192] Deposition of Gregory Condell (VP of Finance, USC), dated October 28, 2022: pp. 50-51.
[193] USC COVID-19 Expenses by School-Department: USC000133171.
[194] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 103).
[195] USC COVID-19 Expenses by School-Department: USC000133171, tab "FY20."
[196] Discussion with Gregory Condell.
[197] USC Auxiliary Income: USC000130042, tab "Summary."
[198] **Attachment 8**.
[199] **Attachment 8**.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

71.  As discussed above, USC's tuition and fees for the year beginning July 2019 and ending June 2020, spanning the Spring 2020 semester, did not cover the cost of education.[200] USC's reported shortfall to IPEDS for the cost of education is approximately $837 million.[201]

72.  Plaintiffs claim that "Defendants have retained the benefit paid by Plaintiffs and the Class despite their failure to provide the services for which the benefit was paid" with "no justification or cause for Defendants' failure to return the portion of tuition and fees."[202] This statement is inaccurate.  As described above, USC lost revenue while continuing to incur its primarily fixed costs, as well as incurred additional costs related to the COVID-19 pandemic.  There was no benefit retained by USC, as the transition to remote education resulted in losses to the university.

### C. Assuming Harm to Students, Damages or Restitution Can Not Be Determined on a Class-Wide Basis

#### 1. Each Student was Impacted Differently by the Transition to Remote Education and the Closure of Certain Campus Facilities

73.  During the Spring 2020 semester, USC enrolled tens of thousands of undergraduate and graduate students who could elect to pursue hundreds of different educational programs and participate in thousands of activities and organizations offered by the university. Even if one assumes that students were allegedly harmed by the transition to remote education, which they were not, understanding the alleged impact to each student would require a highly individualized analysis.  Any attempt to determine damages or restitution on a class-wide basis would not be reliable, as each student was impacted differently by the transition to remote education and the closure of certain campus facilities.  In the sections below, I detail the educational options and extracurricular activities offered by USC both before and after the transition to remote education to illustrate the multitude of individual aspects of each student's experience at USC.

---

[200] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 115).
[201] IPEDS Data Collection System: Finance 2020-2021: USC000125102-115 (at 115). Calculated as $1,620,730,000 - $2,457,306,631 = $836,576,631.
[202] First Amended Consolidated Complaint: pp. 30-31.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY          **Page 35 of 53**

a. **USC Offered Hundreds of Academic Programs and Understanding Each Student's Educational Path Would Require an Individualized Analysis**

74.    As discussed above, USC enrolled approximately 45,600 undergraduate and graduate students during the 2019-2020 academic year.[203]  USC offers undergraduate and graduate degree programs from 23 schools and divisions, including over 100 undergraduate majors and minors.[204]  **Table 8** below identifies the undergraduate schools and the number of majors and minors offered within each school.

---

[203] **Attachment 5**.
[204] <https://academics.usc.edu/>; <https://catalogue.usc.edu/content.php?catoid=16&navoid=6360>.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Table 8: USC Undergraduate Schools and Number of Majors and Minors**[205]

| School | No. of Majors | No. of Minors |
|---|---|---|
| Dornsife College of Letters, Arts and Sciences[206] | 64 | 96 |
| USC School of Architecture[207] | 2 | 2 |
| Roski School of Art and Design[208] | 3 | 10 |
| Iovine and Young Academy for Arts, Technology and Business of Innovation[209] | 1 | 8 |
| Marshall School of Business[210] | 5 | 19 |
| USC School of Cinematic Arts[211] | 9 | 19 |
| Annenberg School for Communication and Journalism[212] | 3 | 12 |
| Kaufman School of Dance[213] | 1 | 4 |
| USC School of Dramatic Arts[214] | 7 | 6 |
| Viterbi School of Engineering[215] | 28 | 23 |
| Davis School of Gerontology[216] | 2 | 2 |
| Keck School of Medicine[217] | 2 | 11 |
| Thornton School of Music[218] | 7 | 8 |
| Chan Division of Occupational Science and Occupational Therapy[219] | 1 | 1 |
| Gould School of Law[220] | 1 | 4 |
| USC School of Pharmacy[221] | 2 | 2 |
| Price School of Public Policy[222] | 3 | 8 |
| **Total** | **141** | **235** |

---

[205] <https://admission.usc.edu/schools/>.

[206] <https://admission.usc.edu/schools/dornsife-college-of-letters-arts-and-sciences/>.

[207] <https://admission.usc.edu/schools/usc-school-of-architecture/>.

[208] <https://admission.usc.edu/schools/roski-school-of-art-and-design/>.

[209] <https://admission.usc.edu/schools/iovine-and-young-academy-for-arts-technology-and-the-business-of-innovation/>.

[210] <https://admission.usc.edu/schools/marshall-school-of-business/>.

[211] <https://admission.usc.edu/schools/usc-school-of-cinematic-arts/>.

[212] <https://admission.usc.edu/schools/annenberg-school-for-communication-and-journalism/>.

[213] <https://admission.usc.edu/schools/kaufman-school-of-dance/>.

[214] <https://admission.usc.edu/schools/usc-school-of-dramatic-arts/>.

[215] <https://admission.usc.edu/schools/viterbi-school-of-engineering/>.

[216] <https://admission.usc.edu/schools/davis-school-of-gerontology/>.

[217] <https://admission.usc.edu/schools/keck-school-of-medicine/>.

[218] <https://admission.usc.edu/schools/thornton-school-of-music/>.

[219] <https://admission.usc.edu/schools/chan-division-of-occupational-science-and-occupational-therapy/>.

[220] <https://admission.usc.edu/schools/gould-school-of-law/>.  The Gould School of Law also offers 2 Progressive Degree Programs.

[221] <https://admission.usc.edu/schools/usc-school-of-pharmacy/>.

[222] <https://admission.usc.edu/schools/price-school-of-public-policy/>.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

75.    **Table 9** below identifies the graduate schools and the number of programs within each

school, as well as if the school offers at least some online degree programs.

**Table 9: USC Graduate Schools and Number of Programs**[223]

| School | No. of Programs | Offers Online Degree Program(s) |
|---|---|---|
| USC School of Architecture[224] | 11 | No |
| Leventhal School of Accounting[225] | 4 | Yes |
| Roski School of Art and Design[226] | 3 | No |
| Marshall School of Business[227] | 26 | Yes |
| Independent Health Professions[228] | 7 | Yes |
| USC School of Cinematic Arts[229] | 9 | No |
| Annenberg School of Communication and Journalism[230] | 17 | Yes |
| Herman Ostrow School of Dentistry[231] | 20 | Yes |
| USC School of Dramatic Arts[232] | 2 | No |
| Rossier School of Education[233] | 14 | Yes |
| Viterbi School of Engineering[234] | 92 | Yes |
| Davis School of Gerontology[235] | 13 | Yes |
| Gould School of Law[236] | 18 | Yes |
| Dornsife College of Letters, Arts and Sciences[237] | 54 | Yes |
| Keck School of Medicine[238] | 37 | Yes |
| Thornton School of Music[239] | 62 | No |
| USC School of Pharmacy[240] | 24 | Yes |
| Price School of Public Policy[241] | 28 | Yes |

---

[223] <https://gradadm.usc.edu/our-programs/>.
[224] <https://gradadm.usc.edu/our-programs/usc-school-of-architecture/>.
[225] <https://gradadm.usc.edu/our-programs/leventhal-school-of-accounting/>.
[226] <https://gradadm.usc.edu/our-programs/roski-school-of-art-and-design/>.
[227] <https://gradadm.usc.edu/our-programs/marshall-school-of-business/>.
[228] <https://gradadm.usc.edu/our-programs/independent-health-professions/>. The Independent Health Professions Physical Therapy program is offered in the hybrid modality.
[229] <https://gradadm.usc.edu/our-programs/usc-school-of-cinematic-arts/>.
[230] <https://gradadm.usc.edu/our-programs/annenberg-school-for-communication-and-journalism/>.
[231] <https://gradadm.usc.edu/our-programs/herman-ostrow-school-of-dentistry/>.
[232] <https://gradadm.usc.edu/our-programs/usc-school-of-dramatic-arts/>.
[233] <https://gradadm.usc.edu/our-programs/rossier-school-of-education/>.
[234] <https://gradadm.usc.edu/our-programs/viterbi-school-of-engineering/>.
[235] <https://gradadm.usc.edu/our-programs/davis-school-of-gerontology/>.
[236] <https://gradadm.usc.edu/our-programs/gould-school-of-law/>.
[237] <https://gradadm.usc.edu/our-programs/dornsife-college-of-letters-arts-and-sciences/>.
[238] <https://gradadm.usc.edu/our-programs/keck-school-of-medicine/>.
[239] <https://gradadm.usc.edu/our-programs/thornton-school-of-music/>.
[240] <https://gradadm.usc.edu/our-programs/usc-school-of-pharmacy/>. The USC School of Pharmacy offers some of its graduate programs in a Hybrid format.
[241] <https://gradadm.usc.edu/our-programs/price-school-of-public-policy/>.

| School | No. of Programs | Offers Online Degree Program(s) |
|---|---|---|
| Suzanne Dworak-Peck School of Social Work[242] | 4 | Yes |
| USC Neuroscience Graduate Program[243] | 1 | No |
| Bovard College[244] | 5 | Yes |
| Iovine and Young Academy[245] | 2 | Yes |
| **Total** | **453** | |

76.     University programs have different unit requirements that students must satisfy prior to graduation.  Students also have different courses and fields of study, and some of those fields of study include laboratory or hands-on components.  The impact of moving to remote education would vary based on the specific courses and nature of the courses enrolled in by the students.  For example, a student studying in business in the Marshall School of Business may experience a different impact than a student studying biology in the Dornsife College of Letters, Arts, and Sciences.  Further, even students within the same degree programs may experience different impacts depending upon the type of courses they were enrolled in, the status of their academic progression towards degree completion (i.e., first year, second year, etc.), and the number of units and courses enrolled in during a given semester.

77.     For example, Plaintiff Watson testified that when planning her courses, she utilized a document that has "the course terms and the numbers and which courses [she] should take in what order because some of them – you know, some classes have prerequisites."[246] Plaintiff Watson's experience during the Spring 2020 semester would differ from a student in the same social work program who was in their first semester, as it was her fourth semester and she had likely satisfied various prerequisites.[247]  Also, as an example, Plaintiff Kerendian, who graduated after the Fall 2020 semester, testified that during the Spring 2020 semester, he was able to take "easier," "elective" classes "and not too many

---

[242] <https://gradadm.usc.edu/our-programs/usc-school-of-social-work/>.

[243] <https://gradadm.usc.edu/our-programs/usc-neuroscience-graduate-program/>.

[244] <https://gradadm.usc.edu/our-programs/bovard-college/>.

[245] <https://gradadm.usc.edu/our-programs/iovine-and-young-academy/>.

[246] Deposition of Latisha Watson, dated October 14, 2022: p. 110.

[247] **Attachment 6**.

of the bigger Marshall classes."[248]  As another example, Plaintiff Choi was in his final semester in the Marshall School of Business, taking only the 6 units he needed to graduate.[249]  His experience would differ from a first or second year Marshall student who was enrolled in general education courses prior to electing their major and/or minor. Further, Plaintiff Diaz was studying abroad during the Spring 2020 semester.[250]  Her experience would vary drastically from an architecture student not studying abroad, or even from an architecture student studying abroad in a different program.

78.    The value each student ascribes to an individual course would differ based on a variety of reasons, including the student's expectations for the class, the point in their degree progression, their professor, and their experience in the classroom, amongst other reasons. It would not be possible to determine the value each student places on the various aspects of their educational experience, such as in-person education, and in turn, determine any alleged harm caused by the transition to remote education on a class-wide basis.

### b.  USC Provided Numerous Activities For Its Students, and Understanding Each Student's Valuation of These Activities and Participation Would Require an Individualized Analysis

79.    In addition to the numerous educational paths provided by USC, USC offers various "Campus Activities."[251]  USC offers "more than 1,000 student organizations" many of which are responsible for events at USC, including "concerts, lectures, special events, spirit rallies, cultural and social events, and conferences."[252]  USC also offers a number of "Campus Resources" related to academics, accessibility and immigration, career development, safety, equity and inclusion, student engagement, and health and wellness.[253]

80.    Student clubs and organizations at USC had different responses to the move to remote education – some quickly transitioned to provide remote programming, while others did

---

[248] Deposition of Justin Kerendian, dated October 12, 2022: pp. 123, 129-30
[249] **Attachment 6**.
[250] Deposition of Christina Diaz, dated October 16, 2022: p. 48.
[251] <https://campusactivities.usc.edu/programs/recognized-student-organizations/>.
[252] <https://campusactivities.usc.edu/programs/recognized-student-organizations/>.
[253] <https://studentaffairs.usc.edu/campus-resources/>.

not.  On April 7, 2020, the Daily Trojan, USC's student newspaper, included an article titled "Student groups move programming online."[254]  This article featured examples of how student groups reacted to the transition to remote education.  The article states that the vice president of engagements for the Rebel, Innovators, Startups, and Entrepreneurs consulting club quickly contacted the club's clients to inform them that "operations would still continue throughout the semester using online platforms like Zoom and Facetime."[255]  Another student group, Artemis, moved its meetings online and the co-president stated "[w]e're trying as much as possible to keep meeting as frequently as we would if we were still back at USC" and it "organized a weekly Zoom meeting where [its members] use [their] USC Zoom accounts to just meet online like [they] would normally."[256]  Additionally, the LGBT Resource Center planned to provide "virtual programming," including a digital lounge and remote book club.[257]  However, others, like the Asian Pacific American Student Assembly, cancelled certain programming, such as a film screening and a heritage festival.[258]  Recruiting schedules for various organizations, such as the Spirit of Troy, Song Girls, and the Trojan Dance Crew were also impacted.[259]  However, the Trojan Dance Crew announced virtual auditions and the Song Girls maintained a "virtual practice schedule."[260]  Student participation in these types of activities varies widely, based on both the availability of online programming provided by the clubs and the willingness of students to participate remotely, indicating the transition to remote education and the closing of certain campus facilities would impact each student's experience differently.

---

[254] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[255] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[256] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[257] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[258] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[259] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

[260] "Student groups move programming online," Grant Go, *The Daily Trojan*, dated April 7, 2020: <https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

81.     Differences between students' experiences with these activities is exemplified by the Plaintiffs' experiences.  For example, Plaintiff Kerendian testified that he was a member of clubs and organizations, stating "I do remember there was real estate investment club. There was a business investing club.  There was like a Jewish club."[261]  Additionally, he testified that he attended guest lectures recommended by professors.[262]  Plaintiff Gomez, however, did not participate in any clubs or organizations during the 2019-2020 academic year.[263]  Nor did Plaintiffs Watson and Choi.[264]  Plaintiff Diaz left USC's campus entirely, studying abroad in the Spring 2020 semester.[265]  Plaintiff Greenberg joined a number of clubs in the Fall 2019 semester, including indoor women's club volleyball, the global studies club, the anthropology club, spoon university, scholar clubs, the Italian club, and some alumni-based networking clubs.[266]  Each of these Plaintiffs had varying involvement with organizations and clubs offered at USC and were impacted differently by the transition to remote education.

82.     As addressed above, many of the student clubs offered programming after the transition to remote education, and the benefit of participating in such remote programming was available, even if Plaintiffs and putative class members declined to participate.

### c.  USC Provided Services to Its Students, and Understanding Each Student's Valuation of Services and Use of Such Services Would Require an Individualized Analysis

83.     Each of USC's approximately 45,600 enrolled students during the Spring 2020 semester could choose to use (or not to use) other USC facilities and services such as libraries, fitness centers, the career service center, and the student health center.[267]  Not only is putative class member use of campus facilities and amenities individualized, but their

---

[261] Deposition of Justin Kerendian, dated October 12, 2022: p. 90.
[262] Deposition of Justin Kerendian, dated October 12, 2022: p. 90.
[263] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 110, 112.
[264] Deposition of Latisha Watson, dated October 14, 2022: p. 187; Deposition of Injune David Choi, dated October 23, 2022: p. 172 and Exhibit 117: Plaintiff Choi's Objections & Answers to Defendant's Interrogatories, Set I, dated December 30, 2021: p. 6.  While Plaintiff Choi was previously a member of the Trojan Investment Society, he was not a member during the 2019-2020 academic year.
[265] Deposition of Christina Diaz, dated October 16, 2022: p. 48-49.
[266] Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 27.
[267] <https://libraries.usc.edu/>; <https://recsports.usc.edu/rec-facilities/main-facilities/>; <https://studenthealth.usc.edu/>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

willingness to utilize these facilities and amenities during the COVID-19 pandemic would be based on their individual health and safety concerns.

84.    While certain physical facilities may have been closed to the USC student body during the Spring 2020 semester, USC provided opportunities to access various services remotely.  For example, on April 24, 2020, the USC Student Affairs office emailed the USC student body reminding them that USC's "programs – from cultural communities to campus activities – are still active and encourage your participation."[268]  The email specifically drew attention to a handful of programs, including mental health and counseling services, stating "USC Student Health has transitioned to TeleHealth counseling visits; distance offerings include workshops on strategies to cope with sleeping issues and anxiety; therapy groups; Let's Talk drop-ins, which consist of 30 minute sessions with a counselor,  with no appointment necessary and are available to all students in any part of the world."[269]  Andrew Stott, Vice Provost of Academic Programs at USC, testified that "the student health center ran essentially as a department of public health" and that USC "also ran… virtual programs and did an enormous amount of work to make sure that students were taken care of."[270]  Some students, however, never utilized any of these services before or after the pandemic. ███████████████████████████████
████████████████████████████████[271]

85.    In addition to the USC Student Health offerings, the April 2020 email highlighted other virtual offerings, both social and professional.  The email encouraged participation in "virtual student life event[s]."[272]  According to the Campus Activities website, archived from April 2020, these events included a TikTok contest, a homework club, karaoke, a baking class, and various student wellness workshops.[273]  Student participation in these events is based on individual preference and student expectations.  For example, Plaintiff

---

[268] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[269] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[270] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 82-83.
[271] Deposition of Latisha Watson, dated October 14, 2022: pp. 156-157.
[272] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[273] Campus Activities Website, Archived April 2020: USC000130577-578 (at 577).

Greenberg testified that she "did not see value in these events as there were no networking opportunities or benefit."[274]  Plaintiff Choi testified he was aware that USC offered virtual events, but could not recall definitively whether he participated in any.[275]  Each individual student's preferences and expectations, including the value they ascribe to participating in such programs, must be understood to assess any alleged financial harm, indicating that damages or restitution cannot be calculated on a class-wide basis.

86. The April 2020 email also encouraged signing up for a "live resume critique and one-on-one coaching" and participation in "Trojan Talk" sessions or "virtual career fair[s]" to speak with and learn from employers.[276]  Understanding utilization of the career service center would require an individualized analysis.  Differences in the extent of students' use of these services is exemplified by the Plaintiffs testimony.  For example, three of the six Plaintiffs utilized USC's career services while attending USC.  Plaintiff Greenberg testified that she "had career services review [her] resume at some point.  [She] went into the office" but doesn't remember if it was "one meeting or two."[277]  Plaintiff Diaz testified that she only used the career center prior to the transition to remote learning.[278]  Plaintiff Choi testified that he used career services offered by the Marshall School of Business.[279]  Plaintiff Watson testified that she doesn't "think [she] utilized [the career center] while [she] was attending USC."[280]  Additionally, Plaintiff Kerendian testified that while at USC, he did not use career services because he "already had a job."[281]  Despite the availability of the career services center before and after the transition to remote education, use of such services would be based on each student's preference and individual situation.  To assess the impact of the transition to remote education, understanding which students utilized such services, either in-person or remotely, would require an individualized analysis.

---

[274] Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 166-167.
[275] Deposition of Injune David Choi, dated October 23, 2022: p. 122.
[276] Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020: USC000021606-607 (at 606).
[277] Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 169.
[278] Deposition of Christina Diaz, dated October 16, 2022: pp. 160-161.
[279] Deposition of Injune David Choi, dated October 23, 2022: p. 176.
[280] Deposition of Latisha Watson, dated October 14, 2022: p. 189.
[281] Deposition of Justin Kerendian, dated October 12, 2022: p. 110.

87.    Additionally, USC's libraries website, archived from April 2020, lists FAQs related to support for remote education.[282]  The website states "[a]ll electronic library resources for research and teaching remain available and are accessible from off campus."[283]  The FAQ responses also provided links for tutorials, noted that the libraries provide digital access to various "primary sources," and stated that in some cases the library would mail a book that was not available as an e-book.[284]

88.    USC also assisted students experiencing issues with their at home technology set up. Andrew Stott testified "[i]f a student was to write to us and to say that… I don't have wifi in my house, or I don't have a laptop, or I can't access the online classes, we would refer them to student basic needs.  And an enormous amount of resources were put into what we call digital equity to make people have – ensure they had the access to continue progress to their degree even if they didn't have the infrastructure in their home at the time."[285]   Plaintiff Watson testified that she benefitted from this assistance when she received $500 from "an emergency fund that USC had put together for students … in need," which she used to pay for internet at her home because she did not have internet access there before the pandemic.[286] Mr. Stott also testified that additional resources were sent to students, including lab equipment, high-end microphones for music program students, and at-home lab kits for physics department students, as examples.[287]

### d.    Understanding Students' Reasons for Attending USC Would Require an Individualized Analysis to Assess the Relative Value of In-Person Education to Each Student

89.    One of the first decisions that putative class members make is their decision to apply to and attend USC.  A student's reasons for attending USC provides insight into the value they place, if any, on the various experiences the university provides.  The value each student places on the USC experience may or may not have been impacted by the transition to remote education.  An individualized analysis is required to understand each

---

[282] USC Libraries Website, Archived April 2020: USC000130830-833.
[283] USC Libraries Website, Archived April 2020: USC000130830-833 (at 831).
[284] USC Libraries Website, Archived April 2020: USC000130830-833 (at 831-832).
[285] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 208-209.
[286] Deposition of Latisha Watson, dated October 14, 2022: p. 176.
[287] Deposition of Andrew Stott (Vice Provost for Academic Programs, USC), dated October 13, 2022: pp. 209-210.

putative class member's reason for applying to and deciding to attend USC, and therefore the value they place on various aspects of the USC experience, including in-person education, cannot be determined on a class-wide basis.

90.    Putative class members have a wide range of reasons for deciding to attend USC. Plaintiffs' reasons for attending USC illustrate the varying reasons why a student may value a USC education.  For example, Plaintiff Diaz chose to attend USC because it is "known to have one of the best architecture programs in the country" and because generally USC "is known to provide a very good education."[288]  Plaintiff Watson was likewise attracted to "how great the [social work] program was" at USC.[289]  She was encouraged to apply to USC by friends who had attended the same social work program.[290]  Plaintiff Gomez testified that he wanted to go to USC because of the school's "prestigious" reputation, its proximity to his home, and the opportunity to participate on its renowned football team.[291]  Plaintiff Kerendian chose USC because of its "very well-known business school," "faculty[,] and resources."[292]  On the other hand, Plaintiff Choi wanted to attend USC to be part of the "Trojan family," meaning the "network of USC alumni students, professors."[293]  Further, the "alumni network" was a key benefit that Plaintiff Choi expected from USC, and the alumni network has lived up to his expectations so far.[294]  Plaintiff Greenberg "wanted a better academic experience and … more flexibility in majors and minors and … a school that would open up opportunities internationally for [her] future career and … more of a college experience than [she] was getting [at Villanova]" while also noting USC's "network and . . . contacts."[295]

---

[288] Deposition of Christina Diaz, dated October 16, 2022: pp. 32, 36.
[289] Deposition of Latisha Watson, dated October 14, 2022: pp. 44-45.
[290] Deposition of Latisha Watson, dated October 14, 2022: pp. 43-45.
[291] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 32-33
[292] Deposition of Justin Kerendian, dated October 12, 2022:  pp. 28-29.
[293] Deposition of Injune David Choi, dated October 23, 2022: p. 139.
[294] Deposition of Injune David Choi, dated October 23, 2022: pp. 139-140.
[295] Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 17-18.

e. **Students' Sources of Tuition Payment Varied and Would Require an
Individualize Analysis to Determine if Putative Class Members were
Harmed**

91.    As addressed in **Section III.C.3** below, USC calculates the Cost of Attendance and
Expected Family Contribution for each student seeking financial aid at USC.[296]  The
difference between the Cost of Attendance and Expected Family Contribution equals the
amount that would need to be funded by scholarships and/or loans to pay for tuition at
USC.  The sources used to pay tuition for the Spring 2020 semester would impact if a
putative class member suffered any potential harm.   Understanding putative class
members' sources of funds for tuition payments would require an individualized analysis.

92.    The Plaintiffs each had different sources for paying their tuition. ███████████

███████████████████████[297]████████████

███████████████████████[298]███

███████████████████████[299]·

███████████████████████[300]

███████████████████████[301]

███████████████████████████████████

███████[302]

93.    Each of the Plaintiffs paid (or family members paid on their behalf) their Spring 2020
tuition using different sources.  Understanding the impact of any alleged harm to putative
class members for the transition to remote education would require an individualized
analysis for each student to determine who paid the tuition and any repayment
expectations.   Further, these Plaintiffs are not representative of students receiving
substantial grant or scholarship aid.  As discussed below, 65% of undergraduates received

---

[296] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[297] Deposition of Injune David Choi, dated October 23, 2022: pp. 126-132.
[298] **Attachment 4.6** and **Attachment 7**.
[299] **Attachment 4.3** and **Attachment 7**. Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 87-
90.
[300] Deposition of Justin Kerendian, dated October 12, 2022: pp. 68-69.
[301] Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 56-58.
[302] Deposition of Christina Diaz, dated October 16, 2022: p. 104; **Attachment 4.2**.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY               **Page 47 of 53**

aid, such as grants and scholarships, with some receiving the full cost of education, while other students received no aid, similar to Plaintiffs Kerendian and Greenberg.[303]

### 2. The Plaintiffs in this Matter Had Different Characteristics and Experiences During the Spring 2020 Semester That Illustrate the Requirement for an Individualized Analysis

94. The Plaintiffs demonstrate the significant differences between students that could impact if, and how much, putative class members were damaged by the transition to remote education and the closure of certain campus facilities.

95. As discussed above, USC offers hundreds of educational programs and paths for its students. Additionally, USC offers thousands of activities for students to participate in, in addition to the numerous services provided to aid and enrich each student's experience. **Table 10** below illustrates variations between the Plaintiffs' experiences. These differences indicate that students cannot simply be categorized into broad groups based on a few characteristics of their educational experience at USC. Rather, their USC experience, and the value they ascribe to the various aspects of that experience, are highly individualized.

---

[303] **Attachment 7**.

**Table 10: Illustrative Differences in the Representative Plaintiffs' Differences Experiences at USC and During the Spring 2020 Semester**[304]

| Category | Plaintiff Choi | Plaintiff Diaz | Plaintiff Gomez | Plaintiff Greenberg | Plaintiff Kerendian | Plaintiff Watson |
|---|---|---|---|---|---|---|
| Graduate or Undergraduate | Under-graduate | Under-graduate | Under-graduate | Under-graduate | Under-graduate | Graduate |
| Units Earned (Spring 2020) | 6 [305] | 17 | 16 | 18 | 16 | 14 [306] |
| Studied Abroad in Spring 2020 | No | Yes | No | No | No | No |
| Continued USC Education After Spring 2020 | No | Yes | Yes | Yes | Yes | Yes |
| Graduation Semester | Spring 2020 | Spring 2021 | Spring 2021 | Fall 2021 | Fall 2020 | Spring 2021 |
| Utilized Career Services | Yes | Yes | No | Yes | No | No |
| Attended Office Hours Prior to and After the Transition to Remote Education | No / No | N/A | Yes / No | Yes / No | Yes / No | Yes / No |
| Total Semesters Enrolled at USC | 10 | 10 | 4 | 5 | 5 | 6 |
| Obtained Employment After Graduation | Yes | Yes | Yes | Yes | Yes | Yes |

---

[304] **Attachment 7**. **Table 10** provides an illustrative, and not exhaustive, list of differences between each of the Plaintiffs in this matter.

[305] Plaintiff Choi was enrolled in fewer than the minimum undergraduate units necessary to pay the flat rate tuition, as shown in Figure A above. Therefore, he paid tuition on a per unit basis. His total tuition payment was $11,568, calculated as $1,928 x 6 units = $11,568. See **Attachment 4.1** and **Attachment 7**.

[306] Plaintiff Watson was enrolled in fewer than the minimum graduate units necessary to pay the flat rate tuition, as shown in Figure A above. Therefore, she paid tuition on a per unit basis. Her total tuition payment was $26,992, calculated as $1,928 x 14 units = $26,992. See **Attachment 4.6** and **Attachment 7**.

[307] **Attachments 4.1-4.6**.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

| Category | Plaintiff Choi | Plaintiff Diaz | Plaintiff Gomez | Plaintiff Greenberg | Plaintiff Kerendian | Plaintiff Watson |
|---|---|---|---|---|---|---|
| ████████ | | | | | | |
| Received Fee Refunds (e.g., housing, dining, parking) | Yes | No | Yes | Yes | No | Yes |
| Participated in Clubs / Organizations | No [308] | No | No | Yes | Yes | No |
| Participated in Virtual Events | No | No | No | Yes | No | Yes |

96.    The table above provides illustrative examples of differences between the Plaintiffs in this matter.  However, there are numerous examples of individualized analyses required to understand any alleged harm to USC students caused by the transition to remote education and closure of campus facilities.  Given the differences between the Plaintiffs, it is unreasonable to assume that a damages or restitution model could appropriately quantify the harm to these six Plaintiffs, much less all students on a class-wide basis.

### 3.    Financial Aid Would Impact Each Student on an Individualized Basis

97.    Plaintiffs are seeking a refund for tuition and fees paid during the Spring 2020 semester.[309] As explained below, for students seeking aid, USC calculates the cost of attending the university and each family's expected contribution towards the student's tuition.  After any potential reduction in tuition and fees in the form of damages or restitution, if a family's expected contribution is still lower than the cost of attending USC, any such refund would likely not impact the level of the student's family contribution toward tuition and fees payments.  In other words, a reduction in tuition and fees in the form of a refund would only impact the topline cost of attending USC for the Spring 2020 semester, and not the level of the family's expected contribution.  A refund may not impact the student's family contribution and would only impact the payments to USC in the form of financial aid funds received, some of which funds are in the form of grants, scholarships or other non-loan aid (i.e., aid that does not need to be paid back) from USC, government

---

[308] Deposition of Injune David Choi, dated October 23, 2022: p. 172 and Exhibit 117: Plaintiff Choi's Objections & Answers to Defendant's Interrogatories, Set I, dated December 30, 2021: p. 6. While Plaintiff Choi was previously a member of the Trojan Investment Society, he was not a member during the 2019-2020 academic year.
[309] First Amended Consolidated Complaint: p. 1.

entities or other private sector third parties. An individualized analysis would be required to understand each student's family's expected contribution and whether or not that amount would be impacted by any damages or restitution.

98. USC is "need blind" in its admission process: a student's ability to pay or interest in financial aid has no bearing on any admission decisions.[310] USC's financial aid program applies to nearly two-thirds of USC undergraduates who receive some form of financial aid, including merit scholarships, third party scholarships, government or employers' assistance programs, need-based grants, USC grants, Federal Work-Study, and loans.[311]

99. USC aims to meet a student's full USC-determined financial need with available funds from federal, state and university sources.[312] Eligibility for federal and university need-based aid is based on two factors: the Cost of Attendance ("COA") and a student's Expected Family Contribution ("EFC"), calculated by USC.[313] The Cost of Attendance includes: 1) USC tuition and fees; 2) on-campus or off-campus housing; 3) a meal plan; and 4) allowances for the estimated cost of books and supplies, transportation and personal expenses (clothing, toiletries, entertainment, and others).[314] A student's Expected Family Contribution is determined individually for every student by analyzing several financial factors for every family including: 1) family taxable and untaxed income; 2) family assets (money in bank accounts, stock funds, real estate, and others); 3) any special financial circumstances (such as a job loss or higher-than-average medical expenses); 4) the total number of children; 5) the total number of children currently enrolled as full-time undergraduates in college; and 6) years until retirement age of each parent.[315] All USC students seeking financial aid must apply for financial aid every year, in which the Expected Family Contribution may be adjusted to reflect any changes in a family's financial strength.[316] **Figure B** below summarizes USC's procedure in determining financial aid eligibility for each student.

---

[310] <https://financialaid.usc.edu/>.
[311] <https://admission.usc.edu/learn/cost-financial-aid/>.
[312] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[313] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[314] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[315] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[316] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Figure B: Summary of USC Financial Aid Process**[317]



100. For the 2019-2020 academic year, approximately 65% of all undergraduates received aid through grants and/or scholarships.[318] The average grant or scholarship amount was $39,909 per student for the 2019-2020 academic year (approximately $19,950 per semester).[319] ███████████████████████████████████████████████████ ███████████████████████████████████████████████████[320] Additionally, approximately 26% of all undergraduates during the same period received federal student loans, with an average loan amount of $6,323 per student.[321]

101. As stated above, eligibility for financial aid and any Expected Family Contribution amount is determined individually for every student and takes into account unique financial circumstances applicable to each family. As such, individual analyses would

---

[317] <https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html>.
[318] USC Student Financial Aid 2020-21 Summary (Section 1: Part B): <https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Student_Financial_Aid_2020-21_FINAL_021021.pdf>. These grant and/or scholarship amounts are provided by the federal government, state/local government, the university, amongst other sources known to the university. This amount does not include federal student loans.
[319] USC Student Financial Aid 2020-21 Summary (Section 1: Part B): <https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Student_Financial_Aid_2020-21_FINAL_021021.pdf>.
[320] **Attachments 4.1-4.6** and **Attachment 7**.
[321] USC Student Financial Aid 2020-21 Summary (Section 1: Part B): <https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Student_Financial_Aid_2020-21_FINAL_021021.pdf>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

need to be performed for each student to determine if any potential refund amounts would have affected the Expected Family Contribution amounts and/or overall eligibility for aid.

102. To the extent the Expected Family Contribution would not change with a tuition or fee refund, the putative class member would not necessarily have been damaged. In other words, the putative class member would have been expected to pay the same amount with or without a refund of tuition and/or fees. Given the large percentage of USC students receiving grant or scholarship financial aid, a substantial portion of the putative class members may not have been damaged or eligible for restitution (even assuming a refund of tuition and/or fees is appropriate).



# John L. Hansen, CPA, CFF, CLP, CGMA

**TM Financial Forensics, LLC**
An HKA Company
3595 Mt. Diablo Blvd, Suite 250
Lafayette, CA 94549

Direct: 415.692.6373
Mobile: 415.465.2325
JHansen@TMFin.com

**Professional History**

- **HKA** (2022 – present) - Partner
- **TM Financial Forensics, LLC** (2010 – 2022) – Vice President
- **Navigant Consulting** (2004 – 2010) – Director
- **TUCKER ALAN INC.** (1994 – 2004) – Vice President
- **Peterson Consulting** (1989 - 1994) – Executive Consultant

**Education**

- Santa Clara University, Bachelor of Science in Commerce, Degree in Finance and a minor in Economics 1989 – Cum Laude
- Beta Gamma Sigma
- Financial Executives Institute's Top Finance Student Scholarship

**Professional Associations and Certifications**

- Advisory Board, Leavey School of Business, Santa Clara University (2016 – present)
- Certified Public Accountant, State of California, License No. 94883
- Certified in Financial Forensics
- Certified Licensing Professional
- Chartered Global Management Accountant

Mr. Hansen is a Partner with over 30 years of experience providing business, financial and damages consulting to individuals, business entities and counsel. Mr. Hansen is a Certified Public Accountant licensed in the State of California, Certified in Financial Forensics, a Certified Licensing Professional and a Chartered Global Management Accountant. Mr. Hansen focuses on commercial damages, intellectual property, class action, forensic accounting, and valuation matters. Mr. Hansen has analyzed and addressed claims for lost profits, price erosion, reasonable royalties, unjust enrichment, increased costs and diminution of asset and business value in a variety of circumstances and industries. He has also assisted clients with the valuation and licensing of intellectual property. Mr. Hansen has testified as an expert on damages and economic issues in deposition, trial and arbitration in State Courts, Federal Courts and in the International Trade Commission.

## PROFESSIONAL EXPERIENCE

### Intellectual Property

Analyzed the financial and economic impacts due to alleged intellectual property infringement and misappropriation including patents, trademarks, copyrights, trade secrets, trade dress and rights of publicity. Evaluated the appropriate measure of damages including lost profits, price erosion, reasonable royalties, and disgorgement of defendants' gains.

Evaluated and prepared claims for lost profits related to lost sales, price erosion and convoyed sales, as well as unjust enrichment. Evaluated and analyzed market size and potential, market share, head-start periods, competition, product features and functionality, available alternatives, customer demand, historical and projected sales, ability to achieve projected sales, company and product profitability, nature of costs, cost allocations and product pricing issues. Analyzed manufacturing capacity, sales and distribution channels and capacity, customer relationships and capital expenditures required to bring products to market.

Determined and evaluated reasonable royalties and the hypothetical negotiation of license agreements. Analyzed cost saving and enhanced earnings related to licensing technology, licensing history, comparable license agreements, design-around considerations, apportionment of profits, appropriate royalty base and avoided product development costs. Analyzed industry standards, patent pools and establishing royalty rates for standard essential patents. Investigated licensing and royalty disputes, including the level of reported sales and underpayment of royalties, guaranteed minimums, deductions from revenue and efforts to commercialize patent portfolios.

**John L. Hansen, CPA, CFF, CLP, CGMA**

Patent analyses have related to a variety of industries and products, including:

- 3D Graphic Accelerators
- Agricultural Equipment
- Athletic Shoe Cushioning
- Automotive Diagnostic Equipment
- Business Intelligence Software
- Bus Ramps
- Casino Gaming
- Chemical Vapor Deposition
- Composite Materials
- Computer Audio Chips and Cards
- CPU Utilization Management
- Dental Equipment
- Digital Film
- Digital Rights Management Technology
- Disk Drives and Storage Products
- DRAM
- E-Commerce
- Educational Toys
- Electronics
- FEP Cable Insulation
- Flash Memory
- Game Consoles
- Garage Door Openers
- GPS Chip Sets
- Hard Drive Partitioning
- In-Line Skates
- Light-Emitting Diodes
- Liquid Crystal Displays
- Medical Devices
- MLC Flash Memory
- MOSFETs
- Notebook Computer Security
- Optical Networking
- Perfect Silicon
- PET Oxygen Barrier Bottles
- Pharmaceutical Products
- Photonic Integrated Circuits
- Plug-N-Play Functionality
- Polyisoprene Condoms
- Power Management ICs
- Printers
- Radiotherapy Equipment
- Sales Configuration Software
- Semiconductors
- Set Top Boxes
- Smartphones
- Software
- Sub-Surface Laser Marking
- Tablets
- Telecommunications Equipment
- Tire Sealants
- Trampoline Enclosures
- Ultrasound Equipment
- VCRs
- Video Games
- Video Teleconferencing
- Voice Recognition Software
- Wafer Marking Systems
- Water Purification
- Web Conferencing
- Wi-Fi Functionality
- Wi-Fi Hotspots

Copyright and trade secret analyses have related to a variety of industries and products, including:

- Architectural Designs
- Antennas
- Athletic Shoe Cushioning
- ATVs
- Deodorant
- Dolls
- Educational Programs
- Electronics
- Graphical Flight Simulators
- Insurance Brokerages
- Lab Chip Technology
- Music Royalties
- Oncology Test Equipment
- Operating Systems
- Personal Digital Assistants
- Portable Media Players
- Software Installations
- SRAM
- Treatment Planning Software
- Videos
- Web Conferencing
- Web Portals

**John L. Hansen, CPA, CFF, CLP, CGMA**

Analyzed lost profits, disgorgement of defendants' gains, royalties and corrective advertising related to alleged trademark infringement, false designation of origin, trademark dilution, false advertising and unfair competition claims.  Determined revenue related to the alleged use of trademarks.  Analyzed deductible expenses, cost allocations and the apportionment of profit attributable to factors other than the challenged conduct.  Analyzed trademark license agreements and franchise agreements, as well as determined royalties for trademarks.

Trademark and false advertising analyses have related to a variety of industries and products, including:

- Athletic Shoes
- Banking/Remittance Services
- Bottled Juice and Water
- Cellular Communications
- Cookie Sticks
- Cookware
- Custom Printing
- Department Stores
- Diesel Engines
- E-Commerce
- Electronics/Power Supplies
- Employee Staffing
- Frozen Foods
- Furniture Retailers
- Hair Care
- Health and Beauty Products
- Kombucha
- Leadership Training
- Legal Services
- Licensed Merchandise
- Nutrition Bars
- Off-Road Vehicles
- Online Shopping Apps
- Professional Sports Franchises
- Semiconductors
- Software
- Solar Panels
- Sports Memorabilia
- Virtual Reality
- Watercraft

Analyzed the value of intellectual property related to its transfer, licensing, and disposition.  Consulted with clients regarding factors influencing licensing opportunities and potential royalty rates, licensing strategy and licensing positions.  Assisted with settlement and licensing negotiations.

Assisted clients with Section 337 investigations in the United States International Trade Commission.  Analyzed domestic industry issues, including the investment in plant and equipment, employment of labor and capital, and efforts to commercialize and exploit the articles covered by the subject patents.  Evaluated the commercial success of articles covered by the subject patents and analyzed the impact of an exclusion order extending to downstream products.  Addressed remedy issues, such as bonding and inventory levels.

Analyzed the commercial success of products covered by patents in matters pending before the Patent Trial and Appeal Board.

**John L. Hansen, CPA, CFF, CLP, CGMA**

**Commercial Damages, Valuation and Forensic Accounting**

Analyzed the operations, financial condition and profitability of businesses under a variety of circumstances, including breach of contract, bankruptcy and insolvency, business interruption, lender liability, defective product, merger and acquisition, business and asset valuation and fraud investigations.

Prepared and analyzed numerous damage studies including analyses of lost profits, lost value and increased costs. Analyzed actual and projected revenues, market share, competition, industry and market conditions, cost of goods sold, the nature of costs and cost allocations, as examples. Analyses have related to a variety of industries and products, including:

- Aloe Vera
- Apparel
- ATVs
- Biotechnology
- Commercial and Retail Developments
- Computer Assembly
- Computer Resellers
- Concessions and Souvenirs
- Dental Anesthetic
- Deodorant
- Flash Memory
- Footwear
- GPS Chipset Development
- Hospitality
- Internet of Things Software
- IT Outsourcing

- Luxury Branded Products
- MoCA Technology
- OLED Panels
- Online Advertising
- Power Generation
- Printers
- Printing Equipment
- Real Estate
- Restaurants
- Retail Merchandising
- Satellite Television
- Semiconductor Manufacturing
- Software Installations
- Sports Agents
- Telecommunication Equipment
- Video Teleconferencing

Prepared and analyzed numerous valuations of businesses and business interests, solvency, financial condition, the viability of continuing operations, company capital structure, trend and ratio analysis, cost of capital and discount rates. Analyzed comparable companies and transactions, discounted cash flows and valuation multiples. Valuation analyses have related to a variety of industries and businesses, including:

- Ambulance Services
- Aquaculture
- Chemical Manufacturing
- Database Software
- Diamond Coated Capsules
- Diesel Engine Technology
- Flash Memory
- Food Processing
- Furniture Retailer
- Health and Beauty Products
- High Capacity Disk Drives
- Independent Power Producers
- Mineral Water and Juice Bottling

- Pharmaceutical Products
- Professional Sports Promotion
- Public Utilities
- Refrigerated Bars
- Semiconductor Manufacturing
- Sporting Goods Retail Outlets
- Surgical and Diagnostic Centers
- Television Programming
- Tire and Retread Operations
- Transpacific Shipping
- Tug Boat Operations
- VOIP Equipment
- Web Conferencing

Investigated the comingling of personal and business funds and assets, the personal use of business funds and the business purpose of expenditures. Analyzed alleged fraudulent conveyances and preferences and investigated and documented indicia of fraud. Analyzed the flow of funds and assets between entities and performed detailed tracing of transactions and documentation of their accounting treatment.

**John L. Hansen, CPA, CFF, CLP, CGMA**

**Class Action, Unfair Competition and Antitrust**

Created and analyzed databases to identify potential class members, dissimilarities among potential class members and evaluation of class representatives. Analyzed if damages may be calculated on a class-wide basis and evaluated potential class damages. Analyzed product pricing, cost of goods sold and cost allocations, valuation, and the financial impact of alleged wrongful conduct on consumers. Consulted on projects involving a variety of industries and circumstances, including:

- Automobile Replacement Parts
- CD and DVD Distribution
- Dental Supplies
- Sporting Event Promotion
- LCD Panels
- Extended Warranty Coverage
- Student Tuition and Fees

- Privacy/Online Advertising
- Professional Athletes
- Professional Sports Leagues
- State Employee Compensation
- Theater Gift Certificates
- Kombucha

**Insurance and Environmental**

Accumulated, analyzed and allocated costs related to environmental investigation and remediation efforts. Analyzed the nature and classification of expenditures, documented expenses and associated proof of payment, and evaluated continuing operational costs. Analyzed damages related to loss of use and business interruption related to environmental contamination. Consulted on environmental projects involving various industries, including:

- Cement Manufacturing
- Electronics
- Gun Ranges
- Lead Shields

- Lock and Keyset Manufacturing
- Port Facilities
- Refineries
- Semiconductor Manufacturing

**Construction and Utility**

Analyzed the impact of delays, disruption and acceleration and the associated costs on construction projects. Investigation, identification and documentation of factors contributing to project schedule impacts and associated costs. Analyzed project accounting and cost documents including contractor bids, budgets, production and productivity, general and administrative and jobsite overhead cost pools and allocations, equipment utilization and rates, materials, labor and changed work. Assessed the financial condition and capitalization of construction contractors. Analyzed working capital, cash flow, operations of related companies, customers and industry conditions. Consulted on construction and utility projects, including:

- Airports
- Apartment Buildings
- Coal-Fired Cogeneration Plant
- Electric Transmission Facilities
- High-Rise Condominiums
- Highways and Roads
- Hotels

- Manufacturing Facilities
- Pipelines
- Port Facilities and Container Cranes
- Pumped Storage Hydroelectric Plant
- Telecommunication Facilities
- Waste Water Treatment Plant
- Wind Farms

Analyzed utility ratemaking and cost of providing service. Analyzed regulatory policies and the resulting contracts with qualifying facilities in California. Reviewed the development of California's standard offer power purchase contracts. Evaluated ratepayer impact of long term fixed price contracts and the impact of transmission constraints on a utility's ability to accept qualifying facility power. Analyzed project viability for alternative energy projects related to the specifics of each project.

**John L. Hansen, CPA, CFF, CLP, CGMA**

**Labor and Employment**

Analysis and assessment of class certification and/or damages related to:

- Company Uniform Policy
- Employee Misclassification
- Expense Reimbursement
- Minimum Wage Violations
- Off-the-Clock Work
- Sales Commission Chargebacks
- Standby Pay
- Unpaid Meal and Rest Breaks

Assisted with analysis of class certification issues and identifying potential class members. Developed models to determine risk exposure and potential damages based on numerous factors, such as employee location, job title and activities performed. Evaluated employee activity based on available company data including computer, phone, card swipe, punch card, payroll and employee schedule data. Analyzed economic offsets to potential damages, including incentive compensation plan payments.

Analyzed and prepared numerous claims related to breach of contract, labor termination, discrimination, personal injury and wrongful death. These engagements have included economic studies of compensation, fringe benefits, retirement and pension plans, stock options, personal consumption, appropriate period of loss, wage escalation and discount rates. Analyzed replacement compensation, including independent consulting ventures and the value of small businesses.

Analyses have related to a variety of industries, including:

- Accounting
- Apparel Retail Sales
- Call Centers
- Commercial Fishing
- Computer Hardware
- Construction
- Consumer Goods
- Healthcare
- Investment Management
- Manufactured Homes
- Oil Refining
- Package Delivery
- Paper Products
- Parking Facilities
- Pharmaceuticals
- Produce Packing
- Real Estate Development
- Semiconductors
- Software
- Telecommunications
- Timeshare Sales
- Television Programming
- Transportation
- Video Game Development
- Wine and Spirits
- Wireless Communications

Performed numerous analyses of labor and related costs and employee cost allocations on commercial damage, construction, business interruption, valuation and increased cost claims, including analysis of labor burdens, benefit costs, salary and compensation plans.

**John L. Hansen, CPA, CFF, CLP, CGMA**

**TESTIMONY**

Testimony in deposition or trial in United States District Court:

- Central District of California
- Eastern District of California
- Northern District of California
- Southern District of California
- District of Delaware
- Northern District of Illinois
- District of Massachusetts
- Eastern District of Michigan
- Western District of Missouri
- District of Nevada
- District of New Jersey
- Southern District of New York
- Middle District of North Carolina
- Western District of Pennsylvania
- Eastern District of Texas
- Western District of Texas
- Western District of Washington

Testimony in United States International Trade Commission

Testimony in deposition or trial in Superior Court of the State of California:

- County of Alameda
- County of Marin
- County of Orange
- County of San Francisco
- County of San Mateo
- County of Santa Clara

Testimony in deposition or trial in State Court:

- Circuit Court of Cook County, Illinois
- Court of Chancery of the State of Delaware
- Superior Court of the State of Arizona in and for the County of Maricopa
- District Court of Collin County, Texas

Declarations and deposition testimony in matters before the Patent Trial and Appeal Board

Testimony in Arbitrations, participation in Mediations and assisted with settlement negotiations

**SELECTED SPEAKING ENGAGEMENTS**

- Continuing Legal Education: Damages (1996)
- Continuing Legal Education: Understanding And Using Financial Information (1997)
- Stanford University: Financial And Ratio Analysis (1997)
- Stanford University: Financial Statement Analysis Case Study (1998)
- Maritime Industry Personal Injury Damages (1998)
- Intellectual Property Section of the Sacramento County Bar: Intellectual Property Damages Update (1999)

**John L. Hansen, CPA, CFF, CLP, CGMA**

- Intellectual Property Section of the Bar Association of San Francisco: Intellectual Property Damages (1999)
- Continuing Legal Education: Accounting And Financial Issues For Lawyers (2001)
- University of California, Hastings College of the Law: Patent Damages (2002)
- Licensing Executives Society Annual Meeting – Chicago: An Update On Patent Damages (2002)
- Stanford University: Financial Statement And Ratio Analysis (2002)
- Santa Clara University School of Law: Patent Damages (2005)
- Licensing Executives Society – Dallas: Recent Developments In Patent Damages (2005)
- Continuing Legal Education, Morgan, Lewis & Bockius LLP: Recent Developments In Patent Damages (2005)
- Santa Clara University School of Law: Intellectual Property Litigation – Damages (2006)
- Continuing Legal Education, McDermott Will & Emery: Presenting Patent Damages / Trial Case Study (2006)
- Santa Clara University School of Law: Patent Infringement Damages (2007)
- Santa Clara University School of Law: Intellectual Property Litigation – Patent Damages Case Study (2007)
- 5th Annual Rocky Mountain Intellectual Property & Technology Institute – Denver: Emerging Patent Valuation and Damages Issues (2007)
- Santa Clara University School of Law: Patent Infringement Damages (2008)
- Continuing Legal Education, McDermott Will & Emery: Section 337 Investigations in the ITC – Role of the Financial/Economic Expert (2008)
- Santa Clara University School of Law: Patent Infringement Damages (2009)
- 7th Annual Rocky Mountain Intellectual Property & Technology Institute – Denver: Damages (2009)
- Stanford University: Fundamentals and Analysis of Construction Accounting and Finance (2010)
- San Mateo County Bar Association: Accounting Principles and Tips for Business Lawyers and Litigators (2010)
- Stanford University: Valuing Intellectual Property and Intangible Assets (2011)
- The Federal Bar Association – San Diego: Patent Damages Law: Life After Lucent, ResQNet and UNILOC (2012)
- Continuing Legal Education, Morgan, Lewis & Bockius LLP: Selecting, Retaining and Working with Experts (2013)
- CalCPA Forensic Services Section: Innovatio IP Ventures Patent Litigation and the Potential Relevance to Non-FRAND Damages Calculations (2014)
- The McCarthy Institute and Hanson Bridgett: New Paradigms in Patent Monetization and Damages (2015)
- Golden Gate University School of Law: Patent Damages (2015)
- Stanford Law School: IP litigation, Patent Damages (2015)
- SFIPLA: Recent Developments in Patent Damages (2015)
- The Bar Association of San Francisco: IP BYTES: Hot Topics in Trademark, Disgorgement of Defendants' Profits (2015)
- Golden Gate University School of Law: Patent Damages (April 2016)
- Golden Gate University School of Law: Patent Damages (September 2016)

**John L. Hansen, CPA, CFF, CLP, CGMA**

- Stanford University: CEE 244 Accounting, Finance & Valuation for Engineers and Constructors / Revenue Recognition, Equipment Costs and Fixed Asset Accounting (November 2018)
- University of California, Hastings College of the Law: Patent Damages (November 2018)
- Stanford University, Saudi Industrial Development Fund Business Management Program: Valuation of Companies and Assets (August 2019)
- University of California, Hastings College of the Law: Patent Law (Law 505), Patent Damages (November 2019)
- University of California, Hastings College of the Law: Patent Damages (November 2020)
- Golden Gate University School of Law: Patent Damages (April 2021)
- Santa Clara University, Business Law: Intellectual Property Damages (November 2021)
- University of California, Hastings College of the Law: Patent Damages (November 2021)

**PUBLICATIONS**

Hansen, John L., "Appendix A, Damages," <u>Maritime Personal Injury Defense</u>, March 1999, pp. 127-137 (by James R. Walsh and Robert A. Bleicher)

**John L. Hansen, CPA, CFF, CLP, CGMA**
**Testimony – Last 4 Years**                                      **Attachment 2**

| | |
|---|---|
| Ahern Rentals, Inc. v. *EquipmentShare.com Inc, et al.*  United States District Court for the Western District of Missouri (Federal MDL); District Court of Collin County, Texas (Texas MDL) | Deposition: November 2022 |
| ImmerVision, Inc. v. *LG Electronics U.S.A., Inc. and LG Electronics, Inc.*  United States District Court for the District of Delaware | Deposition: June 2022 |
| Ahern Rentals, Inc. *v. EquipmentShare.com Inc. and Deral Bonner, et al.*  Superior Court of the State of Arizona in and for the County of Maricopa | Deposition: June 2022 |
| Tortilla Factory, LLC v. *GT's Living Foods, LLC*  United States District Court for the Central District of California | Trial: June 2022<br>Deposition: September 2019<br>Deposition: May 2019 |
| Palantir Technologies Inc. v. *Marc L. Abramowitz*  United States District Court for the Northern District of California | Deposition: May 2022 |
| Pegasystems Inc., Plaintiff/Counterclaim Defendant v. *Appian Corporation, Defendant/Counterclaim Plaintiff* and Business Process Management, Inc., Defendant  United States District Court for the District of Massachusetts | Deposition: April 2022 |
| Uptown Newport Jamboree, LLC, Plaintiff and Cross-Defendant v. *Newport Fab, LLC d/b/a Jazz Semiconductor, Defendant and Cross-Complainant*  Superior Court of the State of California, for the County of Orange | Deposition: February 2022 |
| *Chemours Company FC, LLC* v. Daikin Industries, Ltd. and Daikin America, Inc.  United States District Court for the District of Delaware | Deposition: January 2022 |
| Branch Banking and Trust Company v. *Hitachi Vantara Corporation*  United States District Court for the Middle District of North Carolina | Deposition: January 2022 |
| Asetek Danmark A/S, Plaintiff and Counter-Defendant v. *CoolIT Systems, Inc., Defendant and Counter-Claimant*  United States District Court for the Northern District of California | Deposition: January 2022 |

**John L. Hansen, CPA, CFF, CLP, CGMA**
**Testimony – Last 4 Years**                                   **Attachment 2**

| | |
|---|---|
| Thomas A. Shields, et al. v. *Fédération Internationale de Natation (FINA)*  United States District Court for the Northern District of California | Deposition: September 2021 |
| Total Recall Technologies *v. Palmer Luckey and Facebook Technologies, LLC (f/n/a Oculus VR, LLC)*  United States District Court for the Central District of California | Deposition: August 2021<br>Deposition: November 2020 |
| Delaney Sharpe, et al., on Behalf of Themselves and all Others Similarly Situated v. *GTs Living Foods, LLC*  United States District Court for the Central District of California | Deposition: July 2021 |
| AdTrader, Inc., et al. v. *Google LLC*  United States District Court for the Northern District of California | Deposition: July 2021 |
| Ahern Rentals, Inc. *v. EquipmentShare.com Inc. and Christina Gutierrez, et al.*  Superior Court of the State of Arizona in and for the County of Maricopa | Deposition: February 2021 |
| *Freedom Debt Relief, LLC* v. Accredited Debt Relief, LLC and Accredited Debt Relief, LLC v. *Freedom Debt Relief, LLC* Superior Court of the State of California, County of San Mateo | Deposition: August 2020 |
| Realtime Adaptive Streaming LLC v. *Google LLC and YouTube, LLC*  United States District Court for the Central District of California | Deposition: October 2019 |
| Harold H. Robinson v. *Jennifer M. Johnson, SilverBelt Investments, LLC and SilverBelt Holdings, LLC*  Superior Court of the State of California, County of San Francisco | Deposition: September 2019 |
| GearSource Holdings, LLC v. *Google LLC*  United States District Court for the Northern District of California | Deposition: June 2019 |
| *Ezaki Glico Kabushiki Kaisha and Ezaki Glico USA Corporation* v. Lotte International America Corp. and Lotte Confectionary Co. Ltd. United States District Court for the District of New Jersey | Deposition: May 2019 |
| SIMO Holdings Inc. v. *Hong Kong uCloudlink Network Technology Limited and uCloudlink (America), Ltd.*  United States District Court for the Southern District of New York | Trial: May 2019<br>Deposition: February 2019 |

**John L. Hansen, CPA, CFF, CLP, CGMA**
**Testimony – Last 4 Years**                                    **Attachment 2**

| | |
|---|---|
| Daikin Industries Ltd. and Daikin America, Inc. v. *The Chemours Company FC, LLC*  United States Patent and Trademark Office, before the Patent Trial and Appeal Board, Cases: IPR2018-00992 and IPR2018-00993 | Deposition: April 2019 |
| DealDash Oyj and DealDash Inc. v. *ContextLogic Inc. d/b/a Wish*  United States District Court for the Northern District of California | Deposition: April 2019 |
| Blue Spike LLC, Blue Spike International Ltd., and Wistaria Trading Ltd. v. *VIZIO, Inc.*  United States District Court for the Southern District of California | Deposition: April 2019 |
| Mondis Technology Ltd. v. *LG Electronics, Inc. and LG Electronics U.S.A., Inc.*  United States District Court for the District of New Jersey | Trial: April 2019<br>Hearing: March 2019<br>Deposition: April 2018 |
| *The Renco Group, Inc.* v. MacAndrews AMG Holdings LLC, MacAndrews & Forbes Holdings Inc., Ronald Perelman, and AM General Holdings LLC  Court of Chancery of the State of Delaware | Deposition: December 2018 |

\* *Italics* denote client.
\*\* Mr. Hansen is a licensed CPA in California only.  Neither Mr. Hansen nor TM Financial Forensics, LLC, an HKA Company, provide audit or attest services, in this or any other state.

**Documents Considered**                                        Attachment 3

| Beginning Bates | | Ending Bates |
| --- | --- | --- |
| PLF-000001 | - | PLF-002587 |
| PL-GREENBERG_000001 | - | PL-GREENBERG_000281 |
| USC000000855 | - | USC000001036 |
| USC000001065 | - | USC000001065 |
| USC000001098 | - | USC000001117 |
| USC000001145 | - | USC000001145 |
| USC000001572 | - | USC000001574 |
| USC000001576 | - | USC000001577 |
| USC000016887 | - | USC000017165 |
| USC000017167 | - | USC000017212 |
| USC000017307 | - | USC000017332 |
| USC000017338 | - | USC000017346 |
| USC000017350 | - | USC000017351 |
| USC000017355 | - | USC000017366 |
| USC000017372 | - | USC000017374 |
| USC000017378 | - | USC000017380 |
| USC000017384 | - | USC000017386 |
| USC000017447 | - | USC000017673 |
| USC000017724 | - | USC000017747 |
| USC000017798 | - | USC000017857 |
| USC000021606 | - | USC000021607 |
| USC000022912 | - | USC000022914 |
| USC000024969 | - | USC000024971 |
| USC000025682 | - | USC000025875 |
| USC000027946 | - | USC000028107 |
| USC000028784 | - | USC000028785 |
| USC000028817 | - | USC000028819 |
| USC000028969 | - | USC000028971 |
| USC000028975 | - | USC000028981 |
| USC000029005 | - | USC000029005 |
| USC000029296 | - | USC000029298 |
| USC000029314 | - | USC000029315 |
| USC000031061 | - | USC000031062 |
| USC000036109 | - | USC000036109 |
| USC000038318 | - | USC000038321 |
| USC000045893 | - | USC000045893 |
| USC000066927 | - | USC000066928 |
| USC000089945 | - | USC000089949 |
| USC000103991 | - | USC000103994 |
| USC000104069 | - | USC000104069 |
| USC000114139 | - | USC000114139 |
| USC000125102 | - | USC000125122 |
| USC000125296 | - | USC000125300 |
| USC000125343 | - | USC000125343 |
| USC000125406 | - | USC000125491 |
| USC000125599 | - | USC000125608 |
| USC000125618 | - | USC000125620 |
| USC000125713 | - | USC000125724 |
| USC000125874 | - | USC000125889 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Documents Considered                                                    Attachment 3

| Beginning Bates | | Ending Bates |
| --- | --- | --- |
| USC000125891 | - | USC000125902 |
| USC000125955 | - | USC000126095 |
| USC000126100 | - | USC000126951 |
| USC000126961 | - | USC000127030 |
| USC000127036 | - | USC000127036 |
| USC000127076 | - | USC000127077 |
| USC000127080 | - | USC000127082 |
| USC000127092 | - | USC000127093 |
| USC000127126 | - | USC000127127 |
| USC000127137 | - | USC000127137 |
| USC000127140 | - | USC000127141 |
| USC000127397 | - | USC000127439 |
| USC000127441 | - | USC000128281 |
| USC000128974 | - | USC000128974 |
| USC000129196 | - | USC000129316 |
| USC000129397 | - | USC000129421 |
| USC000129722 | - | USC000129723 |
| USC000129726 | - | USC000129801 |
| USC000130035 | - | USC000130038 |
| USC000130041 | - | USC000130048 |
| USC000130086 | - | USC000130090 |
| USC000130275 | - | USC000130278 |
| USC000130300 | - | USC000130300 |
| USC000130331 | - | USC000130331 |
| USC000130356 | - | USC000130356 |
| USC000130441 | - | USC000130452 |
| USC000130577 | - | USC000130581 |
| USC000130604 | - | USC000130604 |
| USC000130695 | - | USC000130723 |
| USC000130732 | - | USC000130749 |
| USC000130794 | - | USC000130833 |
| USC000133165 | - | USC000133182 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Documents Considered                                                                  Attachment 3

| Legal Filings | Date |
|---|---|
| ● Consolidated Class Action Complaint for 1) Breach of Contract; 2) Restitution Based on Quasi Contract; 3) Unjust Enrichment; 4) Conversion; 5) Money Had and Received; and 36) Unfair Business Practices in Violation of California Business & Professions Code 17200 | 8/14/2020 |
| ● Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 9/11/2020 |
| ● Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 9/11/2020 |
| ● Declaration of Alexandra R. Mayhugh in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and Exhibits | 9/11/2020 |
| ● Requests for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 9/11/2020 |
| ● Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint | 10/9/2020 |
| ● Reply in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 10/16/2020 |
| ● Supplemental Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 10/16/2020 |
| ● Supplemental Declaration of Alexandra R. Mayhugh in Support of Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint | 10/16/2020 |
| ● Order Re Defendants' Motion to Dismiss | 8/6/2021 |
| ● Defendants' Answer to Consolidated Class Action Complaint | 9/8/2021 |
| ● Plaintiff's First Set of Requests for Production to Defendants | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff Christina Diaz | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff Injune David Choi | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff J. Julia Greenberg | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff Justin Kerendian | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff Latisha Watson | 10/15/2021 |
| ● Defendants' First Set of Interrogatories to Plaintiff Chile Mark Aguiniga Gomez | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff Chile Mark Aguiniga Gomez | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff Christina Diaz | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff Injune David Choi | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff J. Julia Greenberg | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff Justin Kerendian | 10/15/2021 |
| ● Defendants' First Set of Requests for Production to Plaintiff Latisha Watson | 10/15/2021 |
| ● Plaintiffs' Fed. R. Civ. P. 26(a)(1) Initial Disclosures | 11/1/2021 |
| ● Defendants' Initial Disclosures Under Rule 26(A)(1) | 11/1/2021 |
| ● Plaintiff J. Julia Greenberg's Objections & Answers to Defendant's Interrogatories, Set 1 | 12/22/2021 |
| ● Plaintiff J. Julia Greenberg's Objections & Answers to Defendant's Requests for Production, Set 1 | 12/22/2021 |
| ● Plaintiff Chile Mark Aguiniga Gomez's Responses to Defendant University of California's [sic] Requests for Production of Documents (Set One) | 12/22/2021 |
| ● Plaintiff Chile Mark Aguiniga Gomez's Responses to Defendant University of California's [sic] Interrogatories (Set One) | 12/22/2021 |
| ● Plaintiff Christina Diaz's Objections & Answers to Defendant's Interrogatories, Set 1 | 12/22/2021 |
| ● Plaintiff Christina Diaz's Objections & Responses to Defendant's Requests for Production, Set 1 | 12/22/2021 |
| ● Plaintiff Justin Kerendian's Objections & Responses to Defendant's Requests for Production, Set 1 | 12/22/2021 |
| ● Plaintiff Justin Kerendian's Objections & Answers to Defendant's Interrogatories, Set 1 | 12/22/2021 |
| ● Plaintiff Latisha Watson's Objections & Answers to Defendant's Interrogatories, Set 1 | 12/22/2021 |
| ● Plaintiff Latisha Watson's Objections & Responses to Defendant's Requests for Production, Set 1 | 12/22/2021 |
| ● Plaintiff Choi's Objections & Answers to Defendant's Interrogatories, Set 1 | 12/30/2021 |
| ● Plaintiff Choi's Objections & Responses to Defendant's Requests for Production, Set 1 | 12/30/2021 |
| ● Defendant's Responses to Plaintiffs' First Set of Requests for Production | 12/31/2021 |
| ● First Amended Consolidated Class Action Complaint for 1) Breach of Contract; 2) Restitution Based on Quasi Contract; and 3) Unfair Business Practices in Violation of California Business & Professions Code 17200 | 1/14/2022 |
| ● Defendants' Answer to First Amended Consolidated Class Action Complaint | 5/20/2022 |
| ● Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Designee of the University of Southern California | 5/25/2022 |
| ● Notice of Deposition of Plaintiff Chile Mark Aguiniga Gomez | 7/8/2022 |
| ● Notice of Deposition of Plaintiff Christina Diaz | 7/8/2022 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

| Documents Considered | Attachment 3 |
|---|---|
| • Notice of Deposition of Plaintiff Injune David Choi | 7/8/2022 |
| • Notice of Deposition of Plaintiff J. Julia Greenberg | 7/8/2022 |
| • Notice of Deposition of Plaintiff Justin Kerendian | 7/8/2022 |
| • Notice of Deposition of Plaintiff Latisha Watson | 7/8/2022 |
| • Plaintiffs' First Set of Interrogatories to Defendants | 7/20/2022 |
| • Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Designee of the University of Southern California | 7/20/2022 |
| • Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories | 9/23/2022 |
| • Amended Notice of Deposition of Plaintiff Chile Mark Aguiniga Gomez | 10/3/2022 |
| • Amended Notice of Deposition of Plaintiff Christina Diaz | 10/3/2022 |
| • Amended Notice of Deposition of Plaintiff J. Julia Greenberg | 10/3/2022 |
| • Amended Notice of Deposition of Plaintiff Justin Kerendian | 10/3/2022 |
| • Amended Notice of Deposition of Plaintiff Latisha Watson | 10/3/2022 |
| • Amended Notice of Deposition of Plaintiff Injune David Choi | 10/7/2022 |
| • Second Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Designee of the University of Southern California | 10/7/2022 |
| • Responses and Objections to Second Amended Notice of Federal Rule of Civil Procedure 30(b)(6) Deposition of Designee of the University of Southern California | 10/10/2022 |
| • Defendants' Amended Responses and Objections to Plaintiffs' First Set of Interrogatories | 10/12/2022 |

| Depositions | Date |
|---|---|
| • Deposition of Jenna Julia Greenberg and Exhibits | 10/10/2022 |
| • Deposition of Chile Mark Aguiniga Gomez and Exhibits | 10/11/2022 |
| • Deposition of Justin Kerendian and Exhibits | 10/12/2022 |
| • 30(b)(6) Deposition of Andrew Stott (Vice Provost for Academic Programs at USC) and Exhibits | 10/13/2022 |
| • Deposition of Latisha Monique Watson and Exhibits | 10/14/2022 |
| • Deposition of Christina Gloria Shu Diaz and Exhibits | 10/16/2022 |
| • Deposition of Injune David Choi and Exhibits | 10/23/2022 |
| • Deposition of Gregory Condell (VP of Finance at the University of Southern California) and Exhibits | 10/28/2022 |

**Other**

- Chloe 4: Navigating the Mainstream, The Changing Landscape of Online Education, 2020", Ron Legon Ph.D., Richard Garrett, and Eric Frederickson Ed.D., 2020

**Websites**

- http://housing.usc.edu/index.php/housing-fees/
- https://about.usc.edu/
- https://about.usc.edu/facts/
- https://academics.usc.edu/
- https://admission.usc.edu/learn/cost-financial-aid/
- https://admission.usc.edu/schools/
- https://admission.usc.edu/schools/annenberg-school-for-communication-and-journalism/
- https://admission.usc.edu/schools/chan-division-of-occupational-science-and-occupational-therapy/
- https://admission.usc.edu/schools/davis-school-of-gerontology/
- https://admission.usc.edu/schools/dornsife-college-of-letters-arts-and-sciences/
- https://admission.usc.edu/schools/gould-school-of-law/
- https://admission.usc.edu/schools/iovine-and-young-academy-for-arts-technology-and-the-business-of-innovation/
- https://admission.usc.edu/schools/kaufman-school-of-dance/
- https://admission.usc.edu/schools/keck-school-of-medicine/
- https://admission.usc.edu/schools/marshall-school-of-business/
- https://admission.usc.edu/schools/price-school-of-public-policy/
- https://admission.usc.edu/schools/roski-school-of-art-and-design/
- https://admission.usc.edu/schools/thornton-school-of-music/
- https://admission.usc.edu/schools/usc-school-of-architecture/
- https://admission.usc.edu/schools/usc-school-of-cinematic-arts/
- https://admission.usc.edu/schools/usc-school-of-dramatic-arts/
- https://admission.usc.edu/schools/usc-school-of-pharmacy/
- https://admission.usc.edu/schools/viterbi-school-of-engineering/

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Documents Considered**                                                        Attachment 3

- https://arch.usc.edu/undergraduate-programs
- https://boardoftrustees.usc.edu/trustees/executive-committee/
- https://campusactivities.usc.edu/programs/recognized-student-organizations/
- https://careers.usc.edu/outcomes/
- https://catalogue.usc.edu/content.php?catoid=16&navoid=6360
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=20779
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=20795
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21028
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21295
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21440
- https://catalogue.usc.edu/preview_program.php?catoid=16&poid=24919&returnto=6360
- https://dailytrojan.com/2020/04/07/student-groups-move-programming-online/
- https://dornsife.usc.edu/about/
- https://dornsife.usc.edu/global-studies/
- https://dornsife.usc.edu/hist/law-history-culture/
- https://dornsife.usc.edu/prospective-students/
- https://dworakpeck.usc.edu/academic-programs
- https://dworakpeck.usc.edu/academics/usc-master-of-social-work
- https://dworakpeck.usc.edu/admissions/tuition-and-financial-aid
- https://financialaid.usc.edu/
- https://financialaid.usc.edu/undergraduates/prospective/how-aid-works.html
- https://gradadm.usc.edu/our-programs/
- https://gradadm.usc.edu/our-programs/annenberg-school-for-communication-and-journalism/
- https://gradadm.usc.edu/our-programs/bovard-college/
- https://gradadm.usc.edu/our-programs/davis-school-of-gerontology/
- https://gradadm.usc.edu/our-programs/dornsife-college-of-letters-arts-and-sciences/
- https://gradadm.usc.edu/our-programs/gould-school-of-law/
- https://gradadm.usc.edu/our-programs/herman-ostrow-school-of-dentistry/
- https://gradadm.usc.edu/our-programs/independent-health-professions/
- https://gradadm.usc.edu/our-programs/iovine-and-young-academy/
- https://gradadm.usc.edu/our-programs/keck-school-of-medicine/
- https://gradadm.usc.edu/our-programs/leventhal-school-of-accounting/
- https://gradadm.usc.edu/our-programs/marshall-school-of-business/
- https://gradadm.usc.edu/our-programs/price-school-of-public-policy/
- https://gradadm.usc.edu/our-programs/roski-school-of-art-and-design/
- https://gradadm.usc.edu/our-programs/rossier-school-of-education/
- https://gradadm.usc.edu/our-programs/thornton-school-of-music/
- https://gradadm.usc.edu/our-programs/usc-neuroscience-graduate-program/
- https://gradadm.usc.edu/our-programs/usc-school-of-architecture/
- https://gradadm.usc.edu/our-programs/usc-school-of-cinematic-arts/
- https://gradadm.usc.edu/our-programs/usc-school-of-dramatic-arts/
- https://gradadm.usc.edu/our-programs/usc-school-of-pharmacy/
- https://gradadm.usc.edu/our-programs/usc-school-of-social-work/
- https://gradadm.usc.edu/our-programs/viterbi-school-of-engineering/
- https://libraries.usc.edu/
- https://recsports.usc.edu/rec-facilities/main-facilities/
- https://studenthealth.usc.edu/
- https://oir.usc.edu/wp-content/uploads/2017/09/IPEDS-Admissions-Survey-2016-17.pdf
- https://oir.usc.edu/wp-content/uploads/2019/04/IPEDS-Admissions-2017-18.pdf
- https://oir.usc.edu/wp-content/uploads/2019/04/IPEDS-Admissions-2018-19.pdf
- https://oir.usc.edu/wp-content/uploads/2020/06/IPEDS_Admissions_2019-20.pdf
- https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Admissions_2020-21_FINAL_021221.pdf
- https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Student_Financial_Aid_2020-21_FINAL_021021.pdf
- https://online.usc.edu/programs/
- https://studentaffairs.usc.edu/campus-resources/
- https://studenthealth.usc.edu/fees-deadlines/

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Documents Considered**                                                      **Attachment 3**

- https://web-app.usc.edu/ws/soc_archive/soc/term-20203/tuition-and-fees/index.html
- https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/
- https://lamayor.org/sites/g/files/wph1781/files/page/file/20200527%20Mayor%20Public%20Order%20SAFER%20AT%20HOME%20ORDER%202020.03.19%20%28REV%202020.05.27%29.pdf
- https://web.archive.org/web/20191108020154/https://online.usc.edu/programs/

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Injune David Choi**

**Summary of Spring 2020 USC Account Itemization[1]**

Attachment 4.1

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 11/25/2019 | Undergraduate Tuition Sp2020 | $ 3,856.00 | $ - | $ 3,856.00 |
| 11/25/2019 | N. Topping Student Aid Fund Sp2020 | 8.00 | - | 3,864.00 |
| 11/25/2019 | Tuition Refund Insurance Sp2020 | 15.84 | - | 3,879.84 |
| 12/13/2019 | UPC Student Parking Permit, Sp2020 | 454.09 | - | 4,333.93 |
| 12/13/2019 | L.A. Parking Tax UPC, Sp2020 | 45.41 | - | 4,379.34 |
| 1/2/2020 | Undergraduate Tuition Sp2020 | 7,712.00 | - | 12,091.34 |
| 1/2/2020 | Student Health Fee Sp2020 | 366.00 | - | 12,457.34 |
| 1/2/2020 | Student Programming Fee - Sp2020 | 64.00 | - | 12,521.34 |
| 1/2/2020 | Tuition Refund Insurance Sp2020 | 33.38 | - | 12,554.72 |
| 1/4/2020 | L.A. Parking Tax UPC, Sp2020 | - | (45.41) | 12,509.31 |
| 1/4/2020 | UPC Student Parking Permit, Sp2020 | - | (454.09) | 12,055.22 |



| | | | | |
|---|---|---|---|---|
| 3/7/2020 | Finance Charge (12% APR) | 247.16 | - | (6,461.84) |

| | Spring 2020 Subtotal | $ 35,960.88 | $ (35,960.88) | |

**Notes**:

[1] Deposition of Injune David Choi, dated October 23, 2022: Exhibit 112: USC Account Itemization: USC000000895-901 (at 899-901).

[2] 

[3]

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Christina Diaz**                                                                      **Attachment 4.2**

**Summary of Spring 2020 USC Account Itemization[1]**

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 12/6/2019 | Overseas Medical Insurance Sp2020 | $    1,365.00 | $            - | $      1,365.00 |
| 12/6/2019 | Undergraduate Tuition Sp2020 | 21,208.00 | - | 22,573.00 |
| 12/6/2019 | Tuition Refund Insurance Sp2020 | 86.95 | - | 22,659.95 |
| 12/7/2019 | Finance Charge (12% APR) | 15.00 | - | 22,674.95 |
| 12/15/2019 | Undergraduate Tuition Sp2020 | 7,420.00 | - | 30,094.95 |
| 12/15/2019 | Tuition Refund Insurance Sp2020 | 30.42 | - | 30,125.37 |
| ■ | ■ | ■ | ■ | ■ |
| **Spring 2020 Subtotal** | | **$      33,214.82** | **$      (34,714.82)** | |

**Note**:

[1]    Deposition of Christina Diaz, dated October 16, 2022: Exhibit 91: USC Account Itemization: USC000000983.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Chile Mark Aguiniga Gomez**                                                    **Attachment 4.3**

**Summary of Spring 2020 USC Account Itemization[1]**

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 11/25/2019 | Undergraduate Tuition Sp2020 | $    28,628.00 | $              - | $    28,628.00 |
| 11/25/2019 | N. Topping Student Aid Fund Sp2020 | 8.00 | - | 28,636.00 |
| 11/25/2019 | Student Health Fee Sp2020 | 366.00 | - | 29,002.00 |
| 11/25/2019 | Student Programming Fee - Sp2020 | 64.00 | - | 29,066.00 |
| 11/25/2019 | Tuition Refund Insurance Sp2020 | 119.17 | - | 29,185.17 |
| 1/13/2020 | Apartment Meal Plan Sp2020 | 675.00 | - | 675.00 |
| 1/18/2020 | Card. Gardens Rents Sp2020 | 5,101.36 | - | 5,776.36 |
| 1/18/2020 | HSG Confirmation Fee Sp2020 | 400.00 | - | 6,176.36 |
| 1/18/2020 | Housing Application Fee Sp2020 | 55.00 | - | 6,231.36 |
| 1/25/2022 | HSG Confirmation Fee Sp2020 | - | (400.00) | 5,831.36 |
| 4/14/2020 | Card. Gardens Rents Sp2020 | - | (2,150.16) | (2,150.16) |
| 4/15/2020 | Apartment Meal Plan Sp2020 | - | (7.96) | (2,158.12) |
| **Spring 2020 Subtotal** | | **$    45,618.48** | **$    (45,618.48)** | |

**Note**:

[1]    Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 42: USC Account Itemization: USC000017350-351 (at 350).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Jenna Julia Greenberg**                                                                    **Attachment 4.4**

**Summary of Spring 2020 USC Account Itemization**[1]

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 11/25/2019 | Undergraduate Tuition Sp2020 | $ 28,628.00 | $ - | $ 28,628.00 |
| 11/25/2019 | N. Topping Student Aid Sp2020 | 8.00 | - | 28,636.00 |
| 11/25/2019 | Student Health Fee Sp2020 | 366.00 | - | 29,002.00 |
| 11/25/2019 | Student Programming Fee - Sp2020 | 64.00 | - | 29,066.00 |
| 11/25/2019 | Tuition Refund Insurance Sp2020 | 119.17 | - | 29,185.17 |
| 12/3/2019 | Beta Theta Pi Rent Charges Sp2020 | 2,880.00 | - | 32,065.17 |
| 12/4/2019 | HSG Confirmation Fee Sp2020 | - | (400.00) | 31,665.17 |
| 12/11/2019 | UPC Student Parking Permit, Sp2020 | 337.50 | - | 32,002.67 |
| 1/9/2020 | Undergraduate Tuition Sp2020 | 3,856.00 | - | 35,858.67 |
| 1/9/2020 | Tuition Refund Insurance Sp2020 | 15.81 | - | 35,874.48 |
| 1/10/2020 | Undergraduate Tuition Sp2020 | - | (3,856.00) | 32,018.48 |
| 1/10/2020 | Tuition Refund Insurance Sp2020 | - | (15.81) | 32,002.67 |
| 4/14/2020 | Beta Theta Pi Rent Charges Sp2020 | - | (1,095.99) | (575.92) |
| 4/16/2020 | UPC Student Parking Permit, Sp2020 | - | (150.00) | (725.92) |
| | **Spring 2020 Subtotal** | **$ 36,294.48** | **$ (37,020.40)** | |

**Note**:

[1]  Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 6: USC Account Itemization: USC000001007-008 (at 007).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Justin Kerendian**                                                                                     Attachment 4.5
**Summary of Spring 2020 USC Account Itemization[1]**

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 11/25/2019 | Undergraduate Tuition Sp2020 | $ 28,628.00 | $        - | $ 28,628.00 |
| 11/25/2019 | N. Topping Student Aid Fund Sp2020 | 8.00 | - | 28,636.00 |
| 11/25/2019 | Student Health Fee Sp2020 | 366.00 | - | 29,002.00 |
| 11/25/2019 | Student Programming Fee - Sp2020 | 64.00 | - | 29,066.00 |
| 11/25/2019 | Tuition Refund Insurance Sp2020 | 119.17 | - | 29,185.17 |
| ██████ | ████████████ | ████ | ████ | ████ |
| | | | | - |
| | **Spring 2020 Subtotal** | **$ 31,485.17** | **$ (31,485.17)** | |

**Note**:

[1]    Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 57: USC Account Itemization: USC00001065.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Latisha Watson**                                                                                      Attachment 4.6

**Summary of Spring 2020 USC Account Itemization[1]**

| Transaction Date | Description | Charge Amount | Payment/Refund Amount | Cumulative Balance |
|---|---|---|---|---|
| 11/25/2019 | Student Health Insurance Sp2020 | $    1,365.00 | $         - | $    1,365.00 |
| 11/25/2019 | Graduate Tuition Sp2020 | 26,992.00 | - | 28,357.00 |
| 11/25/2019 | N. Topping Student Aid Fund Sp2020 | 8.00 | - | 28,365.00 |
| 11/25/2019 | Student Health Fee Sp2020 | 366.00 | - | 28,731.00 |
| 11/25/2019 | GRAD Student Programming Fee Sp2020 | 43.00 | - | 28,774.00 |
| 11/25/2019 | Tuition Refund Insurance Sp2020 | 112.38 | - | 28,886.38 |
| ███ | ████████ | ███ | ███ | ███ |
| 12/23/2019 | Apartment Meal Plan Sp2020 | 675.00 | - | 22,561.38 |
| ███ | ████████ | ███ | ███ | ███ |
| 5/19/2020 | Apartment Meal Plan Sp2020 | - | (480.56) | (480.56) |
| 5/19/2020 | ACH Refund to Bank Account | 480.56 | - | - |
| | **Spring 2020 Subtotal** | **$    33,376.56** | **$    (33,376.56)** | **-** |

**Note**:

[1]    Deposition of Latisha Watson, dated October 14, 2022: Exhibit 79: USC Account Itemization: USC000001145.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of University of Southern California Undergraduate**      Attachment 5
**and Graduate Student Headcount for Academic Year 2019-2020[1]**

| Degree | Number of Students |
|---|---|
| **Undergraduate Degrees:**[2] | |
| BA | 7,544 |
| BARCH | 376 |
| BFA | 686 |
| BM | 278 |
| BS | 10,188 |
| **Undergraduate Subtotal** | **19,072** |
| **Graduate Degrees:** | |
| DDS | 642 |
| DMA | 136 |
| DNA | 60 |
| DPPD | 35 |
| DPT | 375 |
| DRSC | 27 |
| DSW | 358 |
| EDD | 1,151 |
| ENGR | 1 |
| GCRT | 619 |
| JD | 580 |
| JDMBA | 7 |
| JDMPA | 1 |
| LLM | 488 |
| MA | 993 |
| MAAS | 6 |
| MACC | 100 |
| MACM | 28 |
| MARCH | 195 |
| MASM | 41 |
| MAT | 414 |
| MBA | 1,313 |
| MBAMA | 1 |
| MBAMR | 7 |
| MBS | 18 |
| MBT | 103 |
| MBV | 92 |
| MCG | 449 |
| MCL | 1 |
| MCM | 29 |
| MD | 699 |
| MDMBA | 2 |
| MDMPH | 21 |
| MDR | 30 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of University of Southern California Undergraduate**
**and Graduate Student Headcount for Academic Year 2019-2020[1]**

Attachment 5

| Degree | Number of Students |
|---|---|
| ME | 508 |
| MFA | 639 |
| MFTH | 88 |
| MHA | 315 |
| MHC | 22 |
| MHMP | 4 |
| MHMUP | 1 |
| MIPM | 63 |
| ML | 52 |
| MLARC | 45 |
| MLTCA | 4 |
| MM | 170 |
| MMGT | 79 |
| MMM | 18 |
| MMST | 37 |
| MNLM | 19 |
| MPA | 316 |
| MPAMW | 2 |
| MPAP | 171 |
| MPD | 32 |
| MPH | 287 |
| MPL | 36 |
| MPM | 6 |
| MPMPA | 1 |
| MPMPH | 1 |
| MPMR | 2 |
| MPP | 118 |
| MPPMP | 2 |
| MPPMU | 1 |
| MRED | 33 |
| MS | 8,243 |
| MSLW | 175 |
| MSW | 1,825 |
| MSWMP | 7 |
| MSWMS | 6 |
| MUP | 142 |
| MUPMA | 1 |
| MUPPA | 2 |
| MUPPH | 1 |
| MUPSW | 1 |
| MVA | 10 |
| MWPH | 6 |
| NONE | 652 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summary of University of Southern California Undergraduate
and Graduate Student Headcount for Academic Year 2019-2020[1]                    **Attachment 5**

| Degree | Number of Students |
|---|---|
| OTD | 71 |
| PDMPH | 4 |
| PDMS | 1 |
| PHARD | 719 |
| PHD | 2,503 |
| PHMS | 45 |
| PHRMS | 1 |
| UCRT | 28 |
| **Graduate Subtotal** | **26,537** |
| **Total Headcount - Undergraduate and Graduate** | **45,609** |

**Notes**:

[1] Tuition by Major and Degree: USC000125122 (at tab "Tuition by Post").

[2] The following degrees are awarded for undergraduate studies: "BA" (Bachelor of Arts), "BARCH" (Bachelor of Architecture), "BFA" (Bachelor of Fine Arts), "BM" (Bachelor of Music) and "BS" (Bachelor of Science). *See for example:* USC Catalogue for the Bachelor of Arts in History: <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21028>; USC Catalogue for the Bachelor of Architecture: <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=20795>; USC Catalogue for the Bachelor of Fine Arts: <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=20779>; USC Catalogue for the Bachelor of Music in Music Production: <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21440>; USC Catalogue for the Bachelor of Science in Computer Science: <https://catalogue.usc.edu/preview_program.php?catoid=16&poid=21295>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summary of Plaintiffs'
Grade Point Averages (GPA) at USC by Term

Attachment 6

| | | Plaintiff Choi[1] | Plaintiff Diaz[2] | Plaintiff Gomez[3] | Plaintiff Greenberg[4] | Plaintiff Kerendian[5] | Plaintiff Watson[6] |
|---|---|---|---|---|---|---|---|
| **Spring 2015** | **Term GPA** | ■ | N/A | N/A | N/A | N/A | N/A |
| | Term GPA Units | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Earned | 12 | N/A | N/A | N/A | N/A | N/A |
| **Fall 2015** | **Term GPA** | ■ | N/A | N/A | N/A | N/A | N/A |
| | Term GPA Units | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Earned | 12 | N/A | N/A | N/A | N/A | N/A |
| **Spring 2016** | **Term GPA** | ■ | N/A | N/A | N/A | N/A | N/A |
| | Term GPA Units | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | N/A | N/A | N/A | N/A | N/A |
| | Term Units Earned | 12 | N/A | N/A | N/A | N/A | N/A |
| **Fall 2016** | **Term GPA** | ■ | ■ | N/A | N/A | N/A | N/A |
| | Term GPA Units | 12 | 16 | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | 16 | N/A | N/A | N/A | N/A |
| | Term Units Earned | 12 | 16 | N/A | N/A | N/A | N/A |
| **Spring 2017** | **Term GPA** | ■ | ■ | N/A | N/A | N/A | N/A |
| | Term GPA Units | 0 | 15 | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | 15 | N/A | N/A | N/A | N/A |
| | Term Units Earned | 9 | 15 | N/A | N/A | N/A | N/A |
| **Fall 2017** | **Term GPA** | ■ | ■ | N/A | N/A | N/A | N/A |
| | Term GPA Units | 12 | 16 | N/A | N/A | N/A | N/A |
| | Term Units Attempted | 12 | 16 | N/A | N/A | N/A | N/A |
| | Term Units Earned | 8 | 16 | N/A | N/A | N/A | N/A |
| **Spring 2018** | **Term GPA** | N/A | ■ | N/A | N/A | N/A | N/A |
| | Term GPA Units | N/A | 16 | N/A | N/A | N/A | N/A |
| | Term Units Attempted | N/A | 16 | N/A | N/A | N/A | N/A |
| | Term Units Earned | N/A | 16 | N/A | N/A | N/A | N/A |
| **Fall 2018** | **Term GPA** | ■ | ■ | N/A | N/A | ■ | ■ |
| | Term GPA Units | 4 | 15 | N/A | N/A | 16 | 6 |
| | Term Units Attempted | 4 | 15 | N/A | N/A | 16 | 6 |
| | Term Units Earned | 0 | 15 | N/A | N/A | 16 | 6 |
| **Spring 2019** | **Term GPA** | ■ | ■ | N/A | N/A | ■ | ■ |
| | Term GPA Units | 0 | 18 | N/A | N/A | 12 | 6 |
| | Term Units Attempted | 0 | 18 | N/A | N/A | 16 | 6 |
| | Term Units Earned | 0 | 18 | N/A | N/A | 16 | 6 |
| **Fall 2019** | **Term GPA** | ■ | ■ | ■ | ■ | ■ | ■ |
| | Term GPA Units | 16 | 18 | 16 | 19 | 16 | 3 |
| | Term Units Attempted | 16 | 18 | 16 | 19 | 16 | 6 |
| | Term Units Earned | 12 | 18 | 16 | 19 | 16 | 6 |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of Plaintiffs'**
**Grade Point Averages (GPA) at USC by Term**

Attachment 6

| | | Plaintiff Choi[1] | Plaintiff Diaz[2] | Plaintiff Gomez[3] | Plaintiff Greenberg[4] | Plaintiff Kerendian[5] | Plaintiff Watson[6] |
|---|---|---|---|---|---|---|---|
| **Spring 2020** | **Term GPA** | ■ | ■ | ■ | ■ | ■ | ■ |
| | *Term GPA Units* | *2* | *17* | *4* | *14* | *12* | *9* |
| | *Term Units Attempted* | *6* | *17* | *16* | *18* | *16* | *14* |
| | *Term Units Earned* | *6* | *17* | *16* | *18* | *16* | *14* |
| **Fall 2020** | **Term GPA** | **N/A** | ■ | ■ | ■ | ■ | ■ |
| | *Term GPA Units* | *N/A* | *10* | *8* | *10* | *10* | *9* |
| | *Term Units Attempted* | *N/A* | *10* | *16* | *10* | *10* | *14* |
| | *Term Units Earned* | *N/A* | *10* | *16* | *10* | *10* | *14* |
| **Spring 2021** | **Term GPA** | **N/A** | ■ | ■ | ■ | **N/A** | ■ |
| | *Term GPA Units* | *N/A* | *11* | *4* | *4* | *N/A* | *9* |
| | *Term Units Attempted* | *N/A* | *14* | *16* | *4* | *N/A* | *14* |
| | *Term Units Earned* | *N/A* | *14* | *16* | *4* | *N/A* | *14* |
| **Fall 2021** | **Term GPA** | **N/A** | **N/A** | **N/A** | ■ | **N/A** | **N/A** |
| | *Term GPA Units* | *N/A* | *N/A* | *N/A* | *12* | *N/A* | *N/A* |
| | *Term Units Attempted* | *N/A* | *N/A* | *N/A* | *20* | *N/A* | *N/A* |
| | *Term Units Earned* | *N/A* | *N/A* | *N/A* | *20* | *N/A* | *N/A* |
| **USC Cumulative Total** | **GPA** | ■ | ■ | ■ | ■ | ■ | ■ |
| | *GPA Units* | *82* | *150* | *32* | *59* | *66* | *42* |
| | *Units Attempted* | *98* | *153* | *64* | *71* | *74* | *60* |
| | *Units Earned* | *83* | *153* | *64* | *71* | *74* | *60* |
| | **Highest Term GPA** | | | | | | |
| | Semester(s) | Spring 2016 | Fall 2019 | Spring 2020 | Fall 2020, Spring 2021 | Spring 2020 | Spring 2020 |
| | **Lowest Term GPA** | | | | | | |
| | Semester(s) | Spring 2017, Fall 2018, Spring 2019 | Spring 2017 | Fall 2019 | Fall 2019 | Fall 2019 | Spring 2019 |

Notes:

[1] Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109 (USC000017355-358)

[2] Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89 (USC000017362-366). Plaintiff Diaz's USC Cumulative GPA and GPA Units reflect cumulative totals for "Undergraduate" units and do not reflect any units and grade points attributable to "Other" units as shown on her transcript.

[3] Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35 (USC000017359-361).

[4] Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4 (USC000017372-374).

[5] Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50 (USC000017384-386).

[6] Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76 (USC000017378-380).

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of Plaintiffs' Selected Characteristics**

| | Difference Category | Plaintiff Choi | Plaintiff Diaz | Plaintiff Gomez | Plaintiff Greenberg | Plaintiff Kerendian | Plaintiff Watson |
|---|---|---|---|---|---|---|---|
| 1. | School | Marshall School of Business | School of Architecture | Dornsife College of Letters, Arts and Sciences | Dornsife College of Letters, Arts and Sciences | Marshall School of Business | Suzanne Dworak-Peck School of Social Work |
| 2. | Program (Major / Minor) | Business Administration | Architecture | Law, History and Culture | Global Studies / Business and Entrepreneurship | Business Administration | Master of Social Work |
| 3. | Units Attempted - Spring 2020 | 6 | 17 | 16 | 18 | 16 | 14 |
| 4. | Units Earned - Spring 2020 | 6 | 17 | 16 | 18 | 16 | 14 |
| 5. | Utilized Pass / No Pass - Spring 2020 | Yes | No | Yes | Yes | Yes | No |
| 6. | Continued Enrollment after Spring 2020 | No (Graduated) | Yes | Yes | Yes | Yes | Yes |
| 7. | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| 8. | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| 9. | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| 10. | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| 11. | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| 12. | Graduation Semester / Year | Spring 2020 | Spring 2021 | Spring 2021 | Fall 2021 | Fall 2020 | Spring 2021 |
| 13. | Number of Semesters Taken at USC | 10 | 10 | 4 | 5 | 5 | 6 |
| 14. | No. of Times Signed into Library | 2-3 times per week | 0 (Studied Abroad Spring 2020) | 11 Swipes To Enter (January - March 2020) | 1 Swipe to Enter (February 2020) | N/A | 6 Swipes to Enter (Jan. - Feb. 2020) |
| 15. | No. of Times Signed into Gym | N/A | 0 (Studied Abroad Spring 2020) | 0 | 15 Swipes to Enter (3 in Feb. 2020) | N/A | N/A |
| 16. | Utilized USC Career Services | Yes | Yes | No | Yes | No | No |
| 17. | Utilized On-Campus Housing in Spring 2020 | No | No (Studied Abroad Spring 2020) | Yes | Yes (Sorority Housing) | No | No |
| 18. | Dining Plan | N/A | No (Studied Abroad Spring 2020) | Yes | Yes (Meal Plan with Sorority House) | No | Yes |
| 19. | Refunded Fees for Various Services | Yes | No | Yes | Yes | No | Yes |
| 20. | Internship? | Yes | Yes | No | No | No | Yes |
| 21. | Post-Graduation Job | Yes | Yes | Yes | Yes | Yes | Yes |
| 22. | Attended Professors' Office Hours - Spring 2020 (Prior to Transition to Remote Education / After Transition to Remote Education) | No / No | N/A | Yes / No | Yes / No | Yes / No | Yes / No |
| 23. | Participation in Clubs | No | No | No | Yes | Yes | No |
| 24. | Participation in Virtual Events After the Transition to Remote Education | No | No | No | Yes | No | Yes |

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summary of Plaintiffs' Selected Characteristics                                                                                                    Attachment 7

**Notes**:

[1]    Deposition of Injune David Choi, dated October 23, 2022: p. 84; <https://arch.usc.edu/undergraduate-programs>; <https://dornsife.usc.edu/hist/law-history-culture/>; <https://dornsife.usc.edu/global-studies/>; Deposition of Justin Kerendian, dated October 12, 2022: p. 22 and Exhibits 55-56; <https://dworakpeck.usc.edu/academics/usc-master-of-social-work>.

[2]    Deposition of Injune David Choi, dated October 23, 2022: p. 84; Deposition of Christina Diaz, dated October 16, 2022: p. 23; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 23; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 21-23; Deposition of Justin Kerendian, dated October 12, 2022: p. 20; Deposition of Latisha Watson, dated October 14, 2022: p. 21.

[3]    Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109; Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76.

[4]    Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109; Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76.

[5]    Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109; Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76. Plaintiffs Choi, Greenberg and Kerendian each utilized pass/no pass for one four-unit course. Plaintiff Gomez utilized pass/no pass for three four-unit courses.

[6]    Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109; Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76.

[7]    **Attachments 4.1 - 4.6.**

[8]    **Attachments 4.1 - 4.6.** $33,518 of Plaintiff Gomez's financial aid amount was through Parent PLUS Direct Loans.

[9]    **Attachments 4.1 - 4.6.**

[10]   **Attachments 4.1 - 4.6.**

[11]   Deposition of Injune David Choi, dated October 23, 2022: pp. 126-132; Deposition of Christina Diaz, dated October 16, 2022: pp. 78-91, 178; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 87-89; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 56-58; Deposition of Justin Kerendian, dated October 12, 2022: pp. 68-69; Deposition of Latisha Watson, dated October 14, 2022: p. 102.

[12]   Deposition of Injune David Choi, dated October 23, 2022: p. 30; Deposition of Christina Diaz, dated October 16, 2022: p. 185 and Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 22-23 and Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 22 and Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: p. 20; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76. I understand Plaintiff Kerendian additionally took half a semester after his graduation to complete final courses.

[13]   Deposition of Injune David Choi, dated October 23, 2022: Exhibit 109; Deposition of Christina Diaz, dated October 16, 2022: Exhibit 89; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: Exhibit 35; Deposition of Jenna Julia Greenberg, dated October 10, 2022: Exhibit 4; Deposition of Justin Kerendian, dated October 12, 2022: Exhibit 50; Deposition of Latisha Watson, dated October 14, 2022: Exhibit 76.

[14]   Deposition of Injune David Choi, dated October 23, 2022: pp. 101-102; Deposition of Christina Diaz, dated October 16, 2022: p. 22; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 105; USC000130732-734; Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 173; USC000130741-743; Deposition of Justin Kerendian, dated October 12, 2022: p. 173; Deposition of Latisha Watson, dated October 14, 2022: pp. 181-183; USC000130747-749.  Plaintiff Choi testified he "used to frequent" USC libraries approximately "two to three times a week." Plaintiff Kerendian testified that physical swipes were not needed to enter library facilities at USC during the Spring 2020 semester.

[15]   Deposition of Injune David Choi, dated October 23, 2022: p. 170; Deposition of Christina Diaz, dated October 16, 2022: p. 22; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 113; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 170-172; USC000130795; Deposition of Justin Kerendian, dated October 12, 2022: pp. 108-109. I understand Plaintiff Choi testified that he did not use the gym every time he was on campus and that his gym access data was not produced. I understand Plaintiff Kerendian occasionally used USC gym facilities and that his gym access data was not produced.   I understand Plaintiff Watson was not asked about gym usage in her deposition.

[16]   Deposition of Injune David Choi, dated October 23, 2022: p. 176; Deposition of Christina Diaz, dated October 16, 2022: pp. 160-161; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 114; Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 169; Deposition of Justin Kerendian, dated October 12, 2022: p. 110; Deposition of Latisha Watson, dated October 14, 2022: p. 189.

[17]   Deposition of Injune David Choi, dated October 23, 2022: p. 26; Deposition of Christina Diaz, dated October 16, 2022: p. 22; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 94-98; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 15-16, 43; Deposition of Justin Kerendian, dated October 12, 2022: pp. 60-61; Deposition of Latisha Watson, dated October 14, 2022: pp. 179-180.

[18]   Deposition of Christina Diaz, dated October 16, 2022: p. 22; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 93; Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 116; Deposition of Justin Kerendian, dated October 12, 2022: p. 173; Deposition of Latisha Watson, dated October 14, 2022: p. 66; **Attachment 4.6.** I understand Plaintiff Choi was not asked about dining plan usage in his deposition.

[19]   **Attachments 4.1 - 4.6.**  *See also:*  Deposition of Latisha Watson, dated October 14, 2022: p. 66.

[20]   Deposition of Injune David Choi, dated October 23, 2022: p. 43; Deposition of Christina Diaz, dated October 16, 2022: pp. 25-31; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 104; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 23-24; Deposition of Justin Kerendian, dated October 12, 2022: pp. 107, 168; Deposition of Latisha Watson, dated October 14, 2022: pp. 31-32.  I understand Plaintiffs Gomez, Greenberg and Kerendian were asked in their depositions specifically about involvement with any USC affiliated internships.  It is unclear whether Plaintiffs Gomez, Greenberg and Kerendian had any involvement with non-USC affiliated internships.

[21]   Deposition of Injune David Choi, dated October 23, 2022: pp. 31-35; Deposition of Christina Diaz, dated October 16, 2022: pp. 24-31; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 11; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 21-23; Deposition of Justin Kerendian, dated October 12, 2022: p. 21; Deposition of Latisha Watson, dated October 14, 2022: pp. 23-24.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Summary of Plaintiffs' Selected Characteristics                                                                                       Attachment 7

[22]  Deposition of Injune David Choi, dated October 23, 2022: pp. 162-163; Deposition of Christina Diaz, dated October 16, 2022: p. 145; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 109-112; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 73-74, 77, 132-136; Deposition of Justin Kerendian, dated October 12, 2022: pp. 100-101, 104-107; Deposition of Latisha Watson, dated October 14, 2022: pp. 127, 186-187. Plaintiff Gomez further testified that he did not attend any professor office hours in the Fall 2019 semester.  I understand Plaintiff Greenberg attended meetings with professors outside of class prior to the transition to remote education, but did not testify to her participation in office hours after the transition to remote education. Plaintiff Greenberg considered those meetings prior to the transition to be office hours.  I understand Plaintiff Kerendian could not recall details of his professors' office hours after the transition to remote education and did not testify to his participation in office hours after the transition to remote education.

[23]  Deposition of Injune David Choi, dated October 23, 2022: pp. 171-172; Deposition of Christina Diaz, dated October 16, 2022: p. 48; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: pp. 110, 112; Deposition of Jenna Julia Greenberg, dated October 10, 2022: p. 27; Deposition of Justin Kerendian, dated October 12, 2022: p. 90; Deposition of Latisha Watson, dated October 14, 2022: p. 187. While Plaintiff Choi was previously a member of the Trojan Investment Society, he was not a member during the 2019-2020 academic year. Plaintiff Diaz studied abroad during the Spring 2020 semester. Plaintiff Watson testified that she had previous involvement with the Black Student Union for a year when she initial started at USC.

[24]  Deposition of Injune David Choi, dated October 23, 2022: p. 122; Deposition of Christina Diaz, dated October 16, 2022: pp. 163-164; Deposition of Chile Mark Aguiniga Gomez, dated October 11, 2022: p. 158; Deposition of Jenna Julia Greenberg, dated October 10, 2022: pp. 166-167; Deposition of Justin Kerendian, dated October 12, 2022: pp. 98-99; Deposition of Latisha Watson, dated October 14, 2022: pp. 189-190. I understand Plaintiff Greenberg attended occasional sorority meetings virtually but did not attend any other virtual events as she "did not see value in these events as there were not networking opportunities or benefit." I understand Plaintiff Watson continued to utilize alumni network services after the transition to remote education.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of University of Southern California Auxiliary Income**
**Fiscal Years 2019-2020[1]**



<u>**Notes**</u>:

[1]    USC 2019-2021 Auxiliary Income: USC000130042 (at tab "Summary").

[2]    As stated on the source document (USC000130042),

**Summary of University of Southern California COVID Impact**
**Fiscal Year 2020[1]**





**Notes**:
[1] FY20 COVID-19 Financial Impact: USC000133167 (at tab "Updated with notes," "Revised FY 20" column).

[2]

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**Summary of University of Southern California Undergraduate Acceptance and Enrollment Rates**    **Attachment 10**

| | | Fall 2016[1] | Fall 2017[2] | Fall 2018[3] | Fall 2019[4] | Fall 2020[5] | Total |
|---|---|---|---|---|---|---|---|
| *A* | Number of Applicants | 54,280 | 56,676 | 64,352 | 66,198 | 59,712 | 301,218 |
| *B* | Number of Admissions | 9,022 | 9,042 | 8,339 | 7,558 | 9,618 | 43,579 |
| *C = B / A* | *Acceptance Rate* | *16.6%* | *16.0%* | *13.0%* | *11.4%* | *16.1%* | *14.5%* |
| *D* | Number of Full Time Enrollments | 3,066 | 3,358 | 3,401 | 3,167 | 3,437 | 16,429 |
| *E = D / B* | *Enrollment Rate* | *34.0%* | *37.1%* | *40.8%* | *41.9%* | *35.7%* | *37.7%* |

**Notes**:

[1]    University of Southern California 2016-2017 IPEDS Admission Overview: <https://oir.usc.edu/wp-content/uploads/2017/09/IPEDS-Admissions-Survey-2016-17.pdf>.

[2]    University of Southern California 2017-2018 IPEDS Admission Overview: <https://oir.usc.edu/wp-content/uploads/2019/04/IPEDS-Admissions-2017-18.pdf>.

[3]    University of Southern California 2018-2019 IPEDS Admission Overview: <https://oir.usc.edu/wp-content/uploads/2019/04/IPEDS-Admissions-2018-19.pdf>.

[4]    University of Southern California 2019-2020 IPEDS Admission Overview: <https://oir.usc.edu/wp-content/uploads/2020/06/IPEDS_Admissions_2019-20.pdf>.

[5]    University of Southern California 2020-2021 IPEDS Admission Overview: <https://oir.usc.edu/wp-content/uploads/2021/02/IPEDS_Admissions_2020-21_FINAL_021221.pdf>.

HIGHLY CONFIDENTIAL -
ATTORNEYS' EYES ONLY

1

## **PROOF OF SERVICE**

2     I am a citizen of the United States and a resident of the State of California. I am

3 employed in Los Angeles County, State of California, in the office of a member of the

4 bar of this Court, at whose direction the service was made. I am over the age of 18

5 years, and not a party to the within action. My business address is Cooley LLP, 355

6 South Grand Avenue, Suite 900, Los Angeles, CA 90071-1560, sbyrd@cooley.com.

7 On December 9, 2022, I served the following documents on the parties listed below in

8 the manner indicated:

9     • DEFENDANTS' INITIAL EXPERT DISCLOSURE

10

☒     (BY ELECTRONIC MAIL) I am personally and readily familiar with
11     the business practice of Cooley LLP for the preparation and processing
      of documents in portable document format (PDF) for e-mailing, and I
12     caused said documents to be prepared in PDF and then served by
      electronic mail to the parties listed below.

13

14 on the following parties in this action:

| 15 | THE KATRIEL LAW FIRM, P.C.<br>Roy A. Katriel (SBN 265463)<br>16 2262 Carmel Valley Rd., Suite 201<br>Del Mar, California 92014<br>17 Telephone: (619) 363-3333<br>Email: rak@katriellaw.com | BERGER MONTAGUE PC<br>Glen L. Abramson<br>Ellen T. Noteware<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>Email: gabramson@bm.net<br>Email: enoteware@bm.net |
|---|---|---|

| 20 | BERGER MONTAGUE PC<br>E. Michelle Drake<br>21 Ariana B. Kiener<br>43 SE Main Street, Suite 205<br>22 Minneapolis, MN 55414<br>Tel: (215) 875-3000<br>23 Email: emdrake@bm.net<br>24 Email: akiener@bm.net | HAGENS BERMAN SOBOL<br>SHAPIRO LLP<br>Christopher R. Pitoun (SBN 290235)<br>301 North Lake Avenue, Suite 920<br>Pasadena, CA 91101<br>Tel: (213) 330-7150<br>Fax: (213) 330-7152<br>Email: christopherp@hbsslaw.com |
|---|---|---|

| 25 | HAGENS BERMAN SOBOL<br>SHAPIRO LLP<br>26 Steve W. Berman (Pro Hac Vice)<br>1301 Second Avenue, Suite 2000<br>27 Seattle, WA 98101<br>Tel: (206) 623-7292<br>28 Email: steve@hbsslaw.com | HAGENS BERMAN SOBOL<br>SHAPIRO LLP<br>Daniel J. Kurowski (Pro Hac Vice)<br>Whitney K. Siehl (Pro Hac Vice)<br>455 N. Cityfront Plaza Drive<br>Suite 2410<br>Chicago, IL 60611 |
|---|---|---|

| | |
|---|---|
| | Tel: (708) 628-4949<br>Email: dank@hbsslaw.com<br>Email: whitneys@hbsslaw.com<br><br>*Interim Co-Lead Counsel for Plaintiffs* |
| THE KALFAYAN LAW FIRM, APC<br>Ralph B. Kalfayan (SBN 133464)<br>Veneeta Jaswal (SBN 320108)<br>2262 Carmel Valley Road, Suite 200<br>Del Mar, CA 92014<br>Tel: (619) 232-0331<br>Email: ralph@rbk-law.com<br>Email: veneeta@rbk-law.com | LYNCH CARPENTER LLP<br>(Eddie) Jae K. Kim (SBN 236805)<br>117 East Colorado Blvd., Suite 600<br>Pasadena, CA 91105<br>Tel: (619) 762-1910<br>Email: ekim@lcllp.com |
| LYNCH CARPENTER LLP<br>Gary F. Lynch (Pro hac vice)<br>Edward W. Ciolko<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222<br>Tel: (412) 322-9243<br>Email: glynch@lcllp.com<br>Email: eciolko@lcllp.com | LAW OFFICES OF JENNIFER DUFFY<br>Jennifer Duffy<br>28649 S. Western A venue, Suite 6571<br>Los Angeles, CA 90734<br>Tel: (310) 714-9779<br>Email: jennifer@usclassactions.com |
| PARRIS LAW FIRM<br>R. Rex Parris (SBN 96567)<br>Alexander R. Wheeler (SBN 239541)<br>Kitty K. Szeto (SBN 258136)<br>John M. Bickford (SBN 280929)<br>Ryan A. Crist (SBN 316653)<br>43364 10th Street West<br>Lancaster, CA 93534<br>Tel: (661) 949-2595<br>Email: rrparris@parrislawyers.com<br>Email: kszeto@parrislawyers.com<br>Email: awheeler@parrislawyers.com<br>Email: jbickford@parrislawyers.com<br>Email: rcrist@parrislawyers.com<br>*Attorneys for Plaintiffs and the Proposed Class* | SHEGERIAN & ASSOCIATES, INC.<br>Carney R. Shegerian (SBN 150461)<br>Anthony Nguyen (SBN 259154)<br>Cheryl A. Kenner (SBN 305758)<br>11520 San Vicente Blvd<br>Los Angeles, CA 90049<br>Tel: (310) 860-0770<br>Email: CShegerian@Shegerianlaw.com<br>Email: ANguyen@Shegerianlaw.com<br>Email: CKenner@Shegerianlaw.com |

Executed on December 9, 2022, at Los Angeles, California.



_____

Susan Byrd