1    COOLEY LLP
     MICHELLE C. DOOLIN (179445)
2    (mdoolin@cooley.com)
     LEO P. NORTON (216282)
3    (lnorton@cooley.com)
     10265 Science Center Dr.
4    San Diego, CA  92121
     Telephone: (858) 550-6000
5    Facsimile:  (858) 550-6420

6    ALEXANDRA R. MAYHUGH (300446)
     (amayhugh@cooley.com)
7    1333 2nd Street
     Suite 400
8    Santa Monica, CA  90401
     Telephone: (310) 883-6400
9    Facsimile:  (310) 883-6500

10   MICHAEL N. SHEETZ *(Pro hac vice)*
     (msheetz@cooley.com)
11   500 Boylston Street
     Boston, MA  02116-3736
12   Telephone: (617) 937-2300
     Facsimile:  (617) 937-2400

13

14   Attorneys for Defendants

15

16                  UNITED STATES DISTRICT COURT

17        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

18

19   *In re University of Southern California*    Case No. 2:20-cv-4066-DMG-PVC
     *Tuition and Fees COVID-19 Refund*
20   *Litigation*                                 **DEFENDANTS' STATEMENT OF
                                                  GENUINE DISPUTES AND ADDITIONAL
21                                                MATERIAL FACTS (L.R. 56-2) IN
                                                  RESPONSE TO PLAINTIFFS' SEPARATE
22                                                STATEMENT OF UNCONTROVERTED
                                                  FACTS AND CONCLUSIONS OF LAW**
23

24                                                Date: March 1, 2024
                                                  Time: 2:00 p.m.
25                                                Courtroom: 8C

26

27                                                Action filed: May 7, 2020
                                                  Consolidated: July 17, 2020
28                                                Trial Date: May 21, 2024

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' STATEMENT OF GENUINE
DISPUTES IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

Defendants University of Southern California and The Board of Trustees of the University of Southern California (collectively, "USC" or "Defendants") hereby file Defendants' Statement of Genuine Disputes and Additional Material Facts pursuant to L.R. 56-2 in response to Plaintiffs' Separate Statement of Uncontroverted Facts and Conclusions of Law (Plaintiffs' "Separate Statement") (Dkt. No. 224-2), which was filed in support of Plaintiffs' Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment (Plaintiffs' "Motion") (Dkt. No. 224).

Plaintiffs' Separate Statement includes numerous self-described "Conclusions of Law," which are improperly included.  *See* L.R. 56-1 (a party filing a motion for summary judgment or partial summary judgment "must file a separate 'Statement of Uncontroverted Facts'" that "set[s] forth the *material facts* as to which the moving party contends there is no genuine dispute") (emphasis added).  To the extent a response is required to any "Conclusions of Law" included in Plaintiffs' Separate Statement, Defendants dispute any and all such legal conclusions.[1]

Defendants have also concurrently filed herewith objections to certain evidentiary material cited in Plaintiffs' Separate Statement.  Defendants' respectfully request the Court rule on Defendants' evidentiary objections in deciding Plaintiffs' Motion.

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| 1. The Class Plaintiffs' operative First Amended Consolidated Class Action Complaint ("FAC") asserts claims against | Undisputed; however, Defendants note that Plaintiffs' operative First Amended Consolidated Class |

---

[1] Defendants' denial of Plaintiffs' asserted legal conclusions extends to each of the summary headings included in the Separate Statement, which themselves do not contain any specific citations to evidence. *See, e.g.*, Dkt. 224-2 at 3:9 (heading: "USC Promised In-Person On-Campus Education For The Spring 2020 Semester").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|
| Defendants the University of Southern California and the Board of Trustees of the University of Southern California (collectively "Defendants" or "USC") for: breach of an implied contract; quasi-contract; and violations of California's Unfair Competition Law ("UCL"). FAC, Dkt. No. 113-1. | Action Complaint ("FAC") is filed at Dkt. No. 126. |
| 2. On September 29, 2023, the Court granted Defendants' motion for judgment on the pleadings under Rule 12(c) as to the breach of implied contract claim, based on USC's impossibility defense. Dkt. No. 213. | Undisputed. |
| 3. On September 29, 2023, the Court granted in part the named plaintiffs' motion for class certification and certified the quasi-contract and UCL claims on behalf of a class defined as: All students who paid or were obligated to pay tuition, fees, or other costs to The University of Southern California for the Spring 2020 academic term. Dkt. No. 213, at 44:25-28. | Undisputed. |
| 4. On May 20, 2022, Defendants filed their Answer to the FAC. Dkt. No. 128. | Undisputed. |
| 5. In its Answer, "USC admits that, on March 11, 2020, in response to the global COVID-19 pandemic, federal guidance, | Undisputed. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| | **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|---|
| | and state and local health orders, it announced that it would transition to remote education until at least April 14, 2020." Dkt. No. 128 [Answer to FAC], at ¶ 6. | |
| 6. | In its Answer, "USC admits that, in response to the global COVID-19 pandemic and state and local health orders, it transitioned to remote education on approximately March 13, 2020, and continued offering remote education through the conclusion of the Spring 2020 semester." Dkt. No. 128 [Answer to FAC], at ¶ 7. | Undisputed that USC transitioned to remote education during the Spring 2020 semester due to the global COVID-19 pandemic; however, the transition took effect on March 22, 2020. *See infra* Defendants' Additional Material Facts and Supporting Evidence ("Defs'SUF"), Nos. 6, 10. |
| 7. | In its Answer, "USC admits on March 20, 2020, in response to federal, state, and local government directives, it announced it would limit public access to campus to those performing essential functions and supporting on-campus residents and online and remote education." Dkt. No. 128 [Answer to FAC], at ¶ 65. | Undisputed; however, Defendants note that Plaintiffs' citation to ¶ 65 is incorrect. The quoted language from USC's Answer appears at ¶ 66. |
| 8. | In its Answer, "USC admits that it announced in April 2020 that USC did not plan to provide pro-rated tuition refunds for the Spring 2020 semester." Dkt. No. 128 [Answer to FAC], at ¶ 65; Ex. 1 to Katriel Decl. [Stott Dep. Tr.], at 283:8-17. | Undisputed as to quotation from USC's Answer; however, Defendants note that Plaintiffs' citation to ¶ 65 is incorrect. The quoted language from USC's Answer appears at ¶ 8. Disputed that the testimony cited from USC deponent Andrew Stott |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | is relevant to or supports the quoted statement from USC's Answer. |
| 9. In the USC Student Handbook ("Handbook"), a standard form publication provided by USC to all students before the start of the Spring 2020 semester, USC repeatedly indicated that students enrolled at USC would have access to campus facilities and more. For example, USC represented to students that "[t]he university has the responsibility to provide students the use of campus facilities."<br><br>Ex. 2 to Katriel Decl. [Handbook], at USC0000001364. | Disputed insofar as Plaintiffs cite to no supporting evidence establishing that the USC Student Handbook "repeatedly indicated that students enrolled at USC would have access to campus facilities and more."<br><br>Disputed insofar as Plaintiffs omit relevant language from the quoted material in the USC Student Handbook, which reads in full that, "The university has the responsibility to provide students the use of campus facilities *according to campus regulations*." Ex. 2 to Katriel Decl., at USC0000001364 (emphasis added).<br><br>Disputed that the USC Student Handbook, including the language quoted, amounted to an explicit promise for students' use of campus facilities and in-person education even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of |

Cooley LLP
Attorneys At Law
San Diego

5

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.) ; Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.).<br><br>USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | modality that it provided students the education, especially in response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 to Norton Decl.).<br><br>Defs' SUF, No. 11. |
| 10. The Handbook also indicated that USC was responsible for providing the Class Plaintiffs with opportunities to interact with faculty outside of the classroom.<br><br>Ex. 2 to Katriel Decl. [Handbook], at USC000001365. | Disputed insofar as Plaintiffs cite to no supporting evidence establishing that "USC was responsible for providing the Class Plaintiffs with opportunities to interact with faculty outside of the classroom."<br><br>Disputed insofar as Plaintiffs omit relevant language from the relevant section in the USC Student Handbook, which reads in full that, "Because the interchange of ideas between student and professor is of the utmost importance, and because such interchanges are often most productive informally, the university shall provide for student access to members of the faculty *in appropriate settings outside the classroom*." Ex. 2 to Katriel Decl., at USC0000001365 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | (emphasis added).

Disputed that the USC Student Handbook, including the language quoted, amounted to an explicit promise that students be able to interact with faculty in-person even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).

**Additional Material Facts:** Students continued to have interactions with faculty, classmates, and student affairs professionals throughout the Spring 2020 semester in appropriate virtual settings after the transition to remote education due to the global pandemic and government stay-at-home orders. *Evidence:* Stott Depo., 229:9-25 (attached as Ex. 8 to Norton Decl.).

Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.).

USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the modality that it provided students the education, especially in response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| | PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|---|
| | | to Norton Decl.). Defs' SUF, No. 11. |
| 11. | The Handbook specified students' right to participate in student organizations, which may "[r]eserve campus facilities for events, programs and meetings." Ex. 2 to Katriel Decl. [Handbook], at USC000001437. | Disputed insofar as Plaintiffs cite to no supporting evidence establishing that USC students have a "right to participate in student organizations." Disputed insofar as Plaintiffs omit relevant language from the relevant section in the USC Student Handbook, which reads that, "[T]he university expects all student organizations to: . . . [a]bide by all university policies, regulations and procedures as defined in this Student Handbook and elsewhere, all state laws, and any applicable governing regulations associated with a national affiliation."  Ex. 2 to Katriel Decl., at USC000001438. Disputed that the USC Student Handbook, including the language quoted, amounted to an explicit promise that students be able to reserve campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. |

| | | PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|---|---|
| | | | No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). **Additional Material Facts:** Students continued to have interactions with faculty, classmates, and student affairs professionals throughout the Spring 2020 semester in appropriate virtual settings after the transition to remote education due to the global pandemic and government stay-at-home orders. *Evidence:* Stott Depo., 229:9-25 (attached as Ex. 8 to Norton Decl.). Defs' SUF, No. 12. |
| | 12. | The Handbook also explained that use of USC "computers and computing facilities is central to the learning experience at USC." Ex. 2 to Katriel Decl. [Handbook], at USC000001425. | Undisputed that the quoted language appears in the USC Student Handbook. Disputed insofar as Plaintiffs omit language and context from the relevant section in the USC Student Handbook, which reads that, "Because the use of computers and computing facilities is central to the learning experience at USC, it is important for all students to understand the policies governing the use of computing resources and appropriate behaviors in an |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | electronic community." Ex. 2 to Katriel Decl., at USC000001425.<br><br>Disputed that the USC Student Handbook, including the language quoted, amounted to an explicit promise that students be granted access and use of in-person computer facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:**<br>After courses moved online due to the global pandemic, USC provided students technological equipment to ensure adequate infrastructure for remote education. *See* Defs' SUF, No. 12. |
| 13. Like the Handbook, the 2019–20 USC Catalogue ("Catalogue"), another USC form publication drafted solely by USC and distributed to all its students, specified that USC would provide Class Plaintiffs with access to in-person/on-campus courses. | Disputed. Plaintiffs cite to no language in the USC Catalogue that "specified that USC would provide Class Plaintiffs with access to in-person/on-campus courses."<br><br>**Additional Material Facts:** |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| Ex. 3 to Katriel Decl. | Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.). |
| | USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the modality that it provided students the education, especially in response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 to Norton Decl.). Defs' SUF, No. 11. |
| 14. The Catalogue, containing a single, interactive USC Schedule of Classes was given to all Class Plaintiffs before enrollment and from it they selected their Spring 2020 Semester in-person classes. Ex. 3 to Katriel Decl. | Disputed insofar as Exhibit 3 cited by Plaintiffs is not the "USC Schedule of Classes" from which students selected courses for the Spring 2020 semester. Disputed that the USC Catalogue or the USC Schedule of Classes amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). **Additional Material Facts:** Defs' SUF, No. 11. |
| 15. The Schedule of Classes has a "Building Directory" that lists over 300 campus buildings that USC represented would be available to USC students during the Spring 2020 Semester. *Id.* | Undisputed that the USC Schedule of Classes contains a building directory of USC campus buildings. Disputed that the "Building Directory" amounted to a |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | representation from USC that the hundreds of campus buildings listed would each "be available to USC students during the Spring 2020 Semester."<br><br>Disputed that the USC Catalogue or the USC Schedule of Classes amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.). |
| | Defs' SUF, No. 11. |
| 16. It also had the "Classes Offered" for the semester. Each entry in the "Classes Offered" section of the Schedule listed the type of class (e.g., lecture or lab), its planned meeting time, date, instructor, and the specific in-person physical location of each of the in-person classes for which the Class Plaintiffs enrolled.<br><br>*See, e.g.,* Ex. 4 to Katriel Decl., at https://webapp. usc.edu/ws/soc_archive/soc/term-20201/classes/bme/index.html | Disputed that Plaintiffs' cited evidence establishes that "[e]ach entry in the 'Classes Offered' section of the Schedule listed the type of class (e.g., lecture or lab), its planned meeting time, date, instructor, and the specific in-person physical location of each of the in-person classes for which the Class Plaintiffs enrolled."<br><br>Disputed that the USC Catalogue or the USC Schedule of Classes, including the "Classes Offered" section of the schedule amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | (L.A. Stay-At-Home Order)). |
| | **Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.). USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the modality that it provided students the education, especially in |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 to Norton Decl.).<br><br>Defs' SUF, No. 11. |
| 17. Even when students like named Plaintiff Christina Diaz enrolled in USC Study Abroad programs, USC's communications made clear the teaching and educational experience would be in-person, as evidenced by emails sent to Diaz about what to expect during her USC-required School of Architecture Study Abroad term, which stated: "We have prepared an intensive and interesting week of site and building visits that will advance the already rich array of architecture that you've experienced this term. Barcelona's urban plan and the architecture that emerged from this unique culture is fascinating. Our goal is to experience as much of it as possible this coming week, so be prepared to walk a lot, draw, read and take notes. I will meet you Monday 2 March at 16:00 in the lobby of the Mercure Condor Hotel, link here: https://goo.glimaps/pdqPn9qHggG298e8. (where some of you are staying tonight). In preparation for our first walk tomorrow, please read Manuel de Sola- Morales' | Disputed that Plaintiffs' cited evidence establishes that "USC's communications made clear the teaching and educational experience would be in-person" for students enrolled in USC Study Abroad programs in Spring 2020.<br><br>Disputed insofar as Plaintiffs claim that the quoted email on March 1, 2020 amounts to an explicit promise from USC that Plaintiff Diaz's study abroad program would continue with in-person instruction despite the subsequent onset of a global pandemic. *See infra* Defs' SUF, No. 7.<br><br>**Additional Material Facts:** Plaintiff Diaz executed a contract regarding her study abroad program providing that USC "assumes no responsibility" for |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| | PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|---|
| | article about Carrer Ferran—one of the key streets that gives shape to the ancient and new city plan--and study the maps. It is attached here"<br><br>Ex. 23 to Katriel Decl., at USC000029314 | "force majeure" and "public health risks" and that USC had the right to cancel or suspend the semester abroad program in circumstances where she was at risk of "physical harm or bodily injury." *Evidence:* Diaz Depo., 114:4-118:2 & Ex. 93 (USC000130442) (attached as Ex. 3 to Norton Decl.).<br><br>Defs' SUF, No. 11. |
| 18. | For example, the Catalogue's "Schedule of Classes" for the Spring 2020 term showed lectures by USC Viterbi School of Engineering Professor Jesse Yen, an "ultrasonic imaging expert" to be held at Ronald Tutor Hall ("RTH") and hands-on laboratory instruction at the Denney Research Center ("DRB").<br><br>Ex. 5 to Katriel Decl. | Disputed insofar as Plaintiffs' cited evidence does not establish the meeting locations for a particular specified course during the Spring 2020 semester with lectures by "an ultrasonic imaging expert."<br><br>Disputed that the USC Catalogue or the USC Schedule of Classes listing anticipated course meeting locations amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | **Additional Material Facts:** After courses moved online due to the global pandemic, USC provided students technological equipment, including at-home lab kits, to ensure adequate infrastructure for remote education. *See* Defs' SUF, No. 12. Defs' SUF, No. 11. |
| 19. The Catalogue also identified course locations to specific buildings and room numbers within the buildings, letting students click on a link to bring up a campus map to show students the building's location on-campus. Ex. 1 to Katriel Decl. [Stott Dep. Tr.], at 158:15-159:20. | Disputed insofar as the deposition testimony excerpt cited does not establish that the USC Course Catalogue identified "specific buildings and room numbers within the buildings" for each course contained in the USC Schedule of Classes. Disputed that the USC Catalogue or the USC Schedule of Classes listing anticipated course meeting locations amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | **Additional Material Facts:** Defs' SUF, No. 11. |
| 20. Enrollment at USC's in-person educational programs also entitled students to a broad spectrum of on-campus activities, including over 1,000 student organizations, fraternities and sororities, marching band, recreational sports, and NCAA Division 1 Athletics.<br><br>Ex. 1 to Katriel Decl.[Stott Dep. Tr.], at 283:8-17. | Disputed that the deposition testimony excerpt cited establishes anything as to what "[e]nrollment at USC's in-person educational programs . . . entitled students," including specifically that it "entitle[s] students" to "over 1,000 student organizations, fraternities and sororities, marching band, recreational sports, and NCAA Division 1 Athletics." |
| 21. On its website, USC promoted itself to students as a "dynamic community" in which students would "[e]njoy access to facilities and technologies that rival those of professional settings," including 23 libraries, and an 8:1 student to faculty ratio. It assured students they could "participate in more than 1,000 student organizations responsible for campus programs such as concerts, lectures, and leadership programs to develop valuable skills and build community on campus."<br><br>FAC, ¶ 47; Answer To FAC [Dkt. No. 128], ¶ 47. | Undisputed that USC's website has at certain times included the language quoted by Plaintiffs.<br><br>Disputed insofar as the pleadings cited by Plaintiffs do not establish how USC "promoted itself to students" or what it "assured students" before and during the enrollment period for the Spring 2020 semester.<br><br>Disputed that language on USC's website amounted to an explicit promise of in-person course instruction, access to campus facilities, and in-person student programming even during a global pandemic and despite state and local government stay-at- |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:** After the transition to remote instruction due to the global pandemic, USC continued to provide student programming to build community among its students, including a TikTok contest, a homework club, karaoke, a baking class, and various student wellness workshops, as examples. Defs' SUF, No. 23.<br><br>Defs' SUF, No. 11. |
| 22. Andrew Stott, USC's Vice Provost for Academic Programs, admitted at his deposition, the "campus certainly features in the promotional materials" sent to prospective students.<br><br>Ex. 1 to Katriel Decl. [Stott Dep. Tr.], at 34:14-15. | Undisputed that Mr. Stott testified that the "campus certainly features in the promotional materials."<br><br>Disputed that language in USC's unspecified promotional materials amounted to an explicit promise of access to campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

22

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |
| | **Additional Material Facts:** Mr. Stott specifically testified as to how USC students received the benefit of their bargain for tuition and fees paid to USC for the Spring 2020 semester. *Evidence:* Stott Depo., 285:15-286:17 ("[T]uition pays for units attempted towards the degree," and students received "pro-rated refunds for those fees for which they could no longer receive the benefit.") (attached as Ex. 8 to Norton Decl.). |
| | Defs' SUF, No. 11. |
| 23. USC's promotional materials described the rich in-person campus experiences that would be available to USC in- person students. USC represented to prospective students they would "immediately [be a] part of a close-knit community with other students, and have a number of resources at your disposal." These went on to state that, "USC is proud to be a residential community where the majority of students live on or near campus. Most of your classes, events and shopping will be just a short walk or bike ride away." | Undisputed that the language quoted by Plaintiffs is included in the cited materials.

Disputed that language in USC's cited promotional materials amounted to an explicit promise of in-person instruction and access to campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

23

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|---|
| | Ex. 6 to Katriel Decl. at USC000028265, USC000028265. | and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:**<br>After the transition to remote instruction due to the global pandemic, USC continued to provide student programming to build community among its students, including a TikTok contest, a homework club, karaoke, a baking class, and various student wellness workshops, as examples. Defs' SUF, No. 23.<br><br>Defs' SUF, No. 11. |
| 24. | USC's Rule 30(b)(6) witness testified he was unaware of any USC publication that indicated in-person classes, on-campus experiences and sporting events would be provided online instead of in-person.<br><br>Ex. 1 to Katriel Decl. [Stott Dep. Tr.], at 35:7-18. | Disputed that the deposition testimony excerpt cited refers to the witness's relevant knowledge of "any USC publication."<br><br>**Additional Material Facts:**<br>Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.).

USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the modality that it provided students the education, especially in response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 to Norton Decl.).

Defs' SUF, No. 11. |
| 25. USC's websites also promoted the hands-on, immersive instruction and world-class facilities available only through on- | Undisputed that USC's website has at certain times included the language quoted by Plaintiffs. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

25

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| campus enrollment. For example, USC's Roski School of Art and Design promoted its facilities as follows:<br><br>The hub of USC Roski School of Art and Design resides on the main USC campus in two buildings, Watt and Harris Halls, that are dedicated to art and design. Within these buildings, Roski students have access to the Galen Ceramics Studio; three design studios, including the Galen 3D print lab; two large drawing & painting studios; a printmaking lab; as well as the Handtmann Photography Lab and the Galen Intermedia Lab. The large Sculpture Studio, with both indoor and outdoor spaces, includes a shared woodshop. At the center of it all is the Helen Lindhurst Fine Arts Gallery—open to the public Monday through Friday—where undergraduate students can apply annually to present exhibitions of their artwork.<br><br>FAC ¶ 48 (citation omitted); Dkt. No. 128 [Answer To FAC], ¶ 48. | Disputed insofar as the pleadings cited by Plaintiffs do not establish that "USC's websites . . . promoted the hands-on, immersive instruction and world-class facilities available only through on-campus enrollment," nor that the quoted language appeared on USC's website before and during the enrollment period for the Spring 2020 semester.<br><br>Disputed that language on USC's website amounted to an explicit promise of in-person course instruction, access to campus facilities, and in-person student programming even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 |

26

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.). <br><br> Defs' SUF, No. 11. |
| 26. USC's Spring 2020 Course Catalog featured pictures of students filming their student projects "on location at Universal Studios" and described the USC School of Cinematic Arts as "one of the nation's preeminent centers for the creation, study, research and development of film, television and interactive media" offering students "nearly 200,000 square feet of facilities" and "production facilities that rival industry counterparts" and access to "USC's Trojan Vision television station." <br><br> Ex. 7 to Katriel Decl., at USC000113721. | Undisputed that the language quoted by Plaintiffs appeared in USC's Course Catalogue. <br><br> Disputed that the USC Catalogue or the USC Schedule of Classes amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | **Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.).<br><br>Defs' SUF, No. 11. |
| 27. USC's Iovine and Young Academy for the Arts, Technology, and the Business of Innovation's USC webpage touted that students will participate in "[l]ectures, presentations, discussions, tutorials and trips throughout the year" and partake in "hands-on learning for skills and tools, workshops to critique and develop student projects and discussions to encourage | Undisputed that USC's website has at certain times included the language quoted by Plaintiffs.<br><br>Disputed insofar as the pleadings cited by Plaintiffs do not establish that the quoted language appeared on USC's website before and during the enrollment period for the Spring 2020 semester. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

28

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| critical thought and ideas." FAC ¶ 49 (citation omitted); Dkt No. 128 [Answer To FAC], at ¶ 49. | Disputed that language on USC's website amounted to an explicit promise of in-person course instruction, access to campus facilities, and in-person student programming even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). **Additional Material Facts:** Plaintiffs conceded at deposition that USC did not make explicit promises for in-person education and unfettered access to campus facilities during the Spring 2020 semester. *Evidence:* Choi Depo., 71:1-15, 155:12-25 (attached as Ex. 1 to Norton Decl.); Gomez Depo., 48:5-11 (attached as Ex. 4 to Norton Decl.); Diaz Depo., 35:5-21, 172:2-10 (attached as Ex. 3 to Norton Decl.); Watson Depo., 94:3-17, 107:21-108:3 (attached as Ex. 9 to Norton Decl.); Greenberg Depo., 75:4-76:5, 78:13-19, 86:6-18 (attached as Ex. 5 to Norton Decl.); |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

29

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Kerendian Depo., 25:12-26:3, 40:7-41:24, 144:8-145:11 (attached as Ex. 6 to Norton Decl.). <br><br> USC's 30(b)(6) witness testified that USC does not explicitly promise in-person education, but rather that tuition is paid in exchange for a USC education and earning units toward a USC degree; and that USC at all times had the right to change the modality that it provided students the education, especially in response to a global pandemic and government mandated stay-at-home orders. *Evidence:* Stott Depo., 51:5-52:14, 102:9-105:22, 110:7-112:19, 179:3-18, 267:2-268:25, 269:2-19, 273:6-274:13, 285:15-288:12 (attached as Ex. 8 to Norton Decl.). <br><br> Defs' SUF, No. 11. |
| 28. To those in the Full-Time MBA Program, USC promised classes would be "taught in state-of-the-art case rooms featuring network access for every student" and access to USC's "Experiential learning Center" which offered students "opportunities for experimentation, video practice, simulation exercises and group preparation." | Undisputed that the language quoted by Plaintiffs appeared in USC's Course Catalogue. <br><br> Disputed that the USC Catalogue or the USC Schedule of Classes amounted to an explicit promise of in-person course instruction even during a global pandemic and despite state and local |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| Ex. 8 to Katriel Decl., at USC000118132. | government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)).<br><br>**Additional Material Facts:** After courses moved online due to the global pandemic, USC provided students technological equipment to ensure adequate infrastructure for remote education.  Defs' SUF, No. 12.<br><br>Defs' SUF, No. 11. |
| 29. By contrast, USC's "Online MBA Program" was for "students who are currently employed and wish to remain within the labor force while earning a degree."<br><br>Ex. 9 to Katriel Decl., at USC000118152. | Undisputed that USC's "Online MBA program" is noted in the USC Catalogue as being "structured for students who are currently employed and wish to remain within the labor force while earning a degree," but immaterial and irrelevant to Plaintiffs' Motion. |
| 30. In its form admissions communications, USC noted that students' undergraduate experience would occur in Los Angeles: "Beyond the tall trees of our beautiful campus is downtown Los Angeles, the heart of the vibrant city you will call home | Undisputed that the quoted language appeared in USC's form admissions communications, but immaterial and irrelevant to Plaintiffs' motion as the language quoted does not related to in- |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

31

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| | | **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|---|---|
| | | for your undergraduate career." *See, e.g.,* Ex. 10 to Katriel Decl., at PL-GREENBERG_000001 (Greenberg); Ex. 11 to Katriel Decl., at USC000125296; Ex. 12 to Katriel Decl., at USC000129722 (Gomez); Ex. 13 to Katriel Decl., at USC000130086 (Diaz). | person instruction or access to campus facilities. Disputed that USC's form admissions communications amounted to an explicit promise of in-person course instruction and access to campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). **Additional Material Facts:** Defs' SUF, No. 11. |
| | 31. | USC advised prospective students that "a campus visit" to USC was one of the "best ways to find out why USC should be among your top college choices." Ex. 6 to Katriel Decl., at USC000028267. | Undisputed that quoted language appears in the cited USC materials. Disputed that USC's statements to prospective students concerning potential campus visits amounted to an explicit promise of access to campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |
| 32. USC's Rule 30(b)(6) witness admitted that before Spring 2020, USC routinely hosted in-person campus tours for prospective students to persuade them to enroll at USC.<br><br>Ex. 1 to Katriel Decl. [Stott Dep. Tr.], at 71:12–16. | Disputed insofar as the deposition testimony excerpt cited does not establish that USC hosted in-person campus tours "to persuade [prospective students] . . . to enroll at USC."<br><br>Disputed that USC's hosting of campus visits by prospective students amounted to an explicit promise of in-person course instruction and access to campus facilities even during a global pandemic and despite state and local government stay-at-home orders. *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |
| 33. Michael Price (USC's Manager of Academic Initiatives) confided in an email to Beth Shuster (Chief of Staff for USC's Office of the Provost) on April 29, 2020:<br><br> For your consideration. This includes the President's sentiments. The biggest problem is that it's hard to dispute the assertion that the online experience pales in comparison to the on-campus | Undisputed that the language quoted by Plaintiffs appears in the document cited; disputed as to Plaintiffs' characterization that Mr. Price "confided" in his email.<br><br>Disputed that the statement quoted by Mr. Price, who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| experience. These draft responses basically ignore those claims—not sure if there's a better way to address those writers' concerns.<br><br>Ex. 14 to Katriel Decl., at USC000077614. | provided to students due to the global pandemic during the Spring 2020 semester was of lesser economic value to students.[2]  Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation.<br><br>**Additional Material Facts:**<br>An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 (Dkt. No. 223-10).<br><br>Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational |

---

[2] Defendants specifically dispute and object to Plaintiffs' characterization of statements quoted in the Separate Statement (SUF Nos. 33-41) as admissions that are in any way binding on USC.  *See* Separate Statement, at 12 (heading: "USC Admits The Online, Remote, Off-Campus Product It Provided The Class Plaintiffs During the Spring 2020 Semester Was Different And Of Lesser Value Than the In-Person, On-Campus Education It Had Promised."); *cf. Randles Films, LLC v. Quantum Releasing, LLC,* 2011 WL 13217017, at *5 (C.D. Cal. May 4, 2011) (even testimony of Rule 30(b)(6) deponent is "not a binding admission" on designating organization) (internal quotations and citation omitted).

CooleyLLP
Attorneys At Law
San Diego

34

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11.[3] |
| | Defs' SUF, Nos. 13, 14, 25, 27, 29. |
| 34. In an email dated March 12, 2020, Andrew Guzman, USC's Law Dean, stated: "I share your view that it is not how we would teach if we were unconstrained." Ex. 15 to Katriel Decl. | Undisputed that the language quoted by Plaintiffs appears in the document cited. Disputed insofar as Plaintiffs omit relevant context for Mr. Guzman's statement, which reads: "The actions we have taken, and those of the University, have been motivated by out attempt to balance the imperative of protecting public health with the need to continue pursuing our educational mission.  The move to remote teaching is one of the steps we are taking.  I share your view that it is not how we would teach if we were unconstrained.  Indeed, we know this to because we only moved to remote |

---

[3] Defendants object to the Singer Report and Singer Rebuttal Report as unsworn hearsay that should not be considered by the Court for purposes of summary judgment.  *See* Defendants' Objections to Evidence in Support of Plaintiffs' Motion (filed concurrently herewith), Objection Nos. 1, 6.  Defendants include citations to the Singer Report and Singer Rebuttal Report herein as "Additional Material Facts" only to the extent that the Court overrules Defendants' objections and considers those materials in adjudicating Plaintiffs' Motion.

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | teaching because of the Coronavirus.  But the correct question is not what we would do under better circumstances.  The correct question is what show we do now.  The University has made the decision with which I agree, that the risk of continued in-person teaching is too great and so the move to remote teaching is justified.  As you know from the news, many other Universities have come to the same conclusion."

Disputed that the statement quoted by Mr. Guzman, who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC provided to students due to the global pandemic during the Spring 2020 semester was of lesser economic value to students.  Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation.

Immaterial and irrelevant to Plaintiffs' Motion insofar as the |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | quoted statement by Mr. Guzman was made on March 12, 2020—before the State of California and City of Los Angeles mandated stay-at-home orders on March 19, to which USC complied by announcing on March 20, 2020 that "campus facilities would remain largely closed to students." *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |
| | **Additional Material Facts:** An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 (Dkt. No. 223-10). |
| | Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence:* Expert Report of Hal J., Singer (on file at |

|  | **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|---|
|  |  | Dkt. No. 145), at Appendix 3, Table 11.<br><br>Defs' SUF, Nos. 13, 14, 25, 27, 29. |
| 35. | In an email dated March 13, 2020, a USC professor wrote: "Doing online USC classes because of COVID-19 might be 'convenient' BUT NEVER a replacement for REAL CORPOREAL presence in tactile form and space. Student work progress will not be comparable." (capitalization in original)<br><br>Ex. 16 to Katriel Decl., USC000032653. | Undisputed that the language quoted by Plaintiffs appears in the document cited.<br><br>Disputed that the quoted statement by Ms. Chow, an Adjunct Associate Professor who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC provided to students due to the global pandemic during the Spring 2020 semester was of lesser economic value to students.  Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation.<br><br>Immaterial and irrelevant to Plaintiffs' Motion insofar as the quoted statement by Ms. Chow was made on March 13, 2020— before the State of California and City of Los Angeles mandated stay-at-home orders on March 19, |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | to which USC complied by announcing on March 20, 2020 that "campus facilities would remain largely closed to students." *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |
| | **Additional Material Facts:** An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 (Dkt. No. 223-10). |
| | Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11. |
| | Defs' SUF, Nos. 13, 14, 25, 27, 29. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

39

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|
| 36. In a March 21, 2020 email from Dean Robert Cuietta to Students, Faculty, and Staff of USC Kaufman, Dean Cuietta wrote: "We know nothing can compare to in-person instruction." Ex. 17 to Katriel Decl. | Undisputed that the language quoted by Plaintiffs appears in the document cited. Disputed that the quoted statement by Mr. Cuietta, who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC provided to students due to the global pandemic during the Spring 2020 semester was of lesser economic value to students.  Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation. **Additional Material Facts:** An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 (Dkt. No. 223-10). Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and |

| **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|
| | 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11.<br><br>Defs' SUF, Nos. 13, 14, 25, 27, 29. |
| 37. In another internal USC email during the Spring 2020 semester, a USC faculty member wrote: "There really isn't a good substitute for in-person classes . . . But I get that we are all trying to put a positive spin on the situation. We have to smile because otherwise we'll cry, right?"<br><br>Ex. 18 to Katriel Decl., at USC000036072. | Undisputed that the language quoted by Plaintiffs appears in the document cited.<br><br>Disputed that the quoted statement by Mr. Ellars, who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC provided to students due to the global pandemic during the Spring 2020 semester was of lesser economic value to students. Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation.<br><br>Specifically, Mr. Ellars' statement was made during the spring break |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | recess, before USC faculty had used updated online tools to teach their curriculum for the remainder of the Spring 2020 semester; additionally, Mr. Ellars' comparison to "MOOCs"—a "massively open online course"—in the quoted email is not applicable because USC provided the same course instruction, including the same student cohorts in classes, after the transition to remote instruction. *Evidence:* Stott Depo., 261:1-263:14 (attached as Ex. 8 to Norton Decl.).

Immaterial and irrelevant to Plaintiffs' Motion insofar as the quoted statement by Mr. Ellars was made on March 18, 2020—before the State of California and City of Los Angeles mandated stay-at-home orders on March 19, to which USC complied by announcing on March 20, 2020 that "campus facilities would remain largely closed to students." *See infra* Defs' SUF, Nos. 3-10; Dkt. No. 213 at 4 (Court citing and taking judicial notice of Dkt. No. 146-2 (California Stay-At-Home Order), Dkt. No. 146-3 (L.A. Stay-At-Home Order)). |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

42

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | **Additional Material Facts:** An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 ( Dkt. No. 223-10).<br><br>Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11.<br><br>Defs' SUF, Nos. 13, 14, 25, 27, 29. |
| 38. In an Op-Ed piece published in the Los Angeles Times, USC Associate Professor of Teaching publicly wrote: "Nearly all in-person USC classes will also be online. But remote learning doesn't cut it."<br><br>Ex. 19 to Katriel Decl. | Undisputed that the language quoted by Plaintiffs appears in the document cited.<br><br>Disputed that the quoted statement by Mr. Murray, an Associate Professor who is not an officer, director, or managing agent of USC, amounts to an "admission" by USC or evidence that the remote education USC provided to students due to the |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

43

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | global pandemic during the Spring 2020 semester was of lesser economic value to students. Moreover, while the quoted statement potentially notes differences between in-person and remote modalities, it does not speak in terms of monetary value or otherwise amount to an economic valuation.<br><br>Immaterial and irrelevant to Plaintiffs' Motion insofar as the op-ed by Mr. Murry, published on June 3, 2020, specifically concerned USC's decision-making as to *whether Fall 2020* semester classes would be held on campus. *See* Ex. 19 to Katriel Decl. ("When USC announced Tuesday that fall semester classes will be held on campus, the relist in me became nervous about the potential health consequences in the time of the coronavirus.").<br><br>**Additional Material Facts:** An academic study in 2020 found that 85% of responding universities charge generally the same or higher for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 ( Dkt. No. 223-10). |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

44

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Plaintiffs' expert Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11.

Defs' SUF, Nos. 13, 14, 25, 27, 29. |
| 39. USC's Rebuttal Expert, Dr. Ronald T. Wilcox, testified at deposition that he was not ruling out (and hence, not disputing) the possibility that a class of students suffered harm as a result of the events complained of in the FAC. He testified to the following:

    Q: But I also understand from your responses to a few questions ago that you've also allowed for the possibility that groups of students were harmed, suffered financial economic harm if the conduct alleged in the operative complaint is proven to be true; correct?

    THE WITNESS: *I cannot preclude the possibility that some student or some group of* | Disputed insofar as Plaintiffs attempt to mischaracterize Dr. Wilcox's testimony and expert opinions concerning Plaintiffs' showing of harm.

Dr. Wilcox testified repeatedly and explained in detail in his expert report that, for a variety of methodological flaws contained in Dr. Singer's report, his expert opinion was that "the analysis presented by Sr. Singer did not show anyone was harmed." Wilcox Depo. 37:10-20; 36:7-10 ("What I can tell you is what Dr. Singer put forward didn't establish that anybody was harmed in this case."); 39:9-12 ("[M]y testimony with respect to Dr. Singer is that his analysis is so incomplete and so flawed that his |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| *students might have suffered some sort of harm.*<br><br>Ex. 20 to Katriel Decl. [Wilcox Dep. Tr.], at 42:15-25 (emphasis added). | results are completely unreliable.") (attached as Ex. 10 to Norton Decl.). |
| 40. USC's only proffered affirmative expert, Mr. John L. Hansen, admitted he lacked expertise in conjoint analysis, had never conducted a conjoint survey, did not do one in this action, and did not directly measure whether there was any difference in value the Class Plaintiffs attributed to the in-person, on-campus USC education they were promised and the remote, online, off-campus product they received during the Spring 2020 semester.<br><br>Ex. 21 to Katriel Decl. [Hansen Dep. Tr.], at 15:17-16:14; Hansen Expert Rpt. [on file under seal as Dkt. No. 156-1], at ¶¶ 44-51. | Disputed insofar as Plaintiffs attempt to mischaracterize Mr. Hansen's testimony and expert opinions concerning Plaintiffs' showing of harm. The cited deposition testimony excerpt does not relate whatsoever to whether Mr. Hansen attempted to "measure whether where was any difference in value the Class Plaintiffs attributed to the in-person, on-campus USC education they were promised and the remote, online, off-campus product they received during the Spring 2020 semester."<br><br>Mr. Hansen's Opening Expert Report details the reasons why "There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed by the Transition to Remote Education." Hansen Report, ¶¶ 29-64 (identifying and explaining at length the eight separate sub-reasons why there is no evidence of harm) (Dkt. No. 223-10).<br><br>**Additional Material Facts:** |

| **PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE** | **DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS** |
|---|---|
| | USC's 30(b)(6) Witnesses testified that students received continuity of education, were able to complete their coursework and earn units toward their degree, USC subsidizes the cost of education, and USC expended an additional approximately $40 million to transition to remote education and services. *Evidence:* Condell Depo., 43:15-23, 58:7-59:11, 66:9-23 (attached as Ex. 2 to Norton Decl.); Stott Depo., 51:5-52:14, 110:7-112:19, 229:9-25, 269:2-19, 285:15-288:12 (attached as Ex. 8 to Norton Decl.); Defs' SUF Nos. 12, 14, 16. |
| 41. Hansen instead looked at such factors as whether students received the credits they enrolled for, obtained grades comparable to prior semesters, and graduate on schedule; none of these are identified as items the Class Plaintiffs complain about in their FAC.<br><br>Ex. 22 to Katriel Decl. [Singer Expert Rebuttal Rpt.], at ¶¶ 13-14. | Disputed insofar as Plaintiffs attempt to mischaracterize Mr. Hansen's methodology and expert opinions, which conclude, *inter alia*, that "There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed by the Transition to Remote Education." Hansen Report, ¶¶ 29-64 (identifying and explaining at length the eight separate sub-reasons why there is no evidence of harm) (Dkt. No. 223-10).<br><br>Plaintiffs omit the following |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
|  | additional "factors" that Mr. Hansen relied on in forming his opinion as to lack of financial harm: "USC Charges, and Students Pay, the Same Tuition for Online and In-Person Degree Programs" (*id.* ¶¶ 29-32); "USC Students Either Benefited From, or Received a Refund For, Fees Paid During the Spring 2020 Semester" (*id.* ¶¶ 33-40); "There Is No Indication that Job Placement and Income Post-Graduation Was Impacted for Putative Class Members" (*id.* ¶¶ 49-51); "Students Paid Higher Tuition for the Fall 2020 Semester Knowing Education Would Be Remote" (*id.* ¶¶ 52-55); "Course Evaluations for the Spring 2020 Semester Are Inconsistent with Plaintiffs' Allegations" (*id.* ¶¶ 56-58); and "USC Subsidizes the Cost of Education" (*id.* ¶¶ 59-64). **Additional Material Facts:** USC's 30(b)(6) Witnesses testified that students received continuity of education, were able to complete their coursework and earn units toward their degree, USC subsidizes the cost of education, and USC expended an additional approximately $40 |

Cooley LLP
Attorneys At Law
San Diego

48

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | million to transition to remote education and services. *Evidence:* Condell Depo., 43:15-23, 58:7-59:11, 66:9-23 (attached as Ex. 2 to Norton Decl.); Stott Depo., 51:5-52:14, 110:7-112:19, 229:9-25, 269:2-19, 285:15-288:12 (attached as Ex. 8 to Norton Decl.); Defs' SUF Nos. 12, 14, 16. |
| 42.   The Class Plaintiffs supported their claim to redress with the Expert Report of Hal J. Singer, Ph.D., their expert economist.<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145). | Undisputed but immaterial and irrelevant to Plaintiffs' Motion. |
| 43.   Dr. Singer's expert report detailed his use of two Choice-Based-Conjoint ("CBC") studies to determine whether classwide damages or restitution could be calculated in this case and, if so, to calculate its amount.<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145), at ¶ 7. | Disputed that Dr. Singer's expert report modeled the availability and amount of classwide restitution under California law. Expert Report of Hal J., Singer, Ph.D. (on file under at Dkt. No. 145), at ¶ 7 (stating that "aggregate *damages* to the Class can be demonstrated under the theory of harm in this matter using Choice-Based Conjoint ('CBC') analysis"); ¶ 10 (Dr. Singer stating, "I calculate aggregate *damages* to the Class….") (emphases added).<br><br>**Additional Material Facts:** Dr. Singer testified that he did not understand the difference between |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | "damages" and "restitution" under California law, and his opinions in this matter did not account for any difference. *Evidence*: Singer Depo., 62:19-21, 64:19-21, 65:10-13, 65:22-66:3, 65:15-21 (attached as Ex. 7 to Norton Decl.).<br><br>Dr. Singer testified that he did not "simulate a but-for price" in this matter. *Evidence*: Singer Depo., 161:8-16 (attached as Ex. 7 to Norton Decl.) ("[J]ust to be absolutely clear, . . . it is not my ultimate objective to simulate a but-for price.  That's not what I'm trying to get at. . . .  I'm trying to get to a damages estimate. . . ."). |
| 44. Dr. Singer explained, "I demonstrate that CBC analysis can be used to calculate economic injury and assess aggregate damages—that is, the excess of what Class Members paid USC over the value of what Class Members received—using data and methods common to all Class Members."<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145), at ¶ 18. | Undisputed as to what Dr. Singer "explained" in his expert report, but immaterial and irrelevant to Plaintiffs' Motion.<br><br>Disputed that Dr. Singer's CBC analysis can be used to reliably calculate economic injury and assess aggregate damages or restitution using data and methods common to all class members, as detailed at length in the expert rebuttal reports of Mr. Hansen and Dr. Wilcox.  Hansen Rebuttal Report, ¶¶ 15-82 (attached as Ex. A to Hansen Decl.); Wilcox |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

50

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Rebuttal Report, ¶¶ 17-99 (attached as Ex. A to WilcoxDecl.). |
| **45.** To do so, Dr. Singer drafted, tested, administered, and analyzed the results of a set of choice-based-conjoint surveys.<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145), at ¶¶ 29-52. | Undisputed that Dr. Singer administered a set of CBC surveys in this matter.<br><br>Disputed that Dr. Singer's CBC analysis can be used to reliably calculate economic injury and assess aggregate damages or restitution using data and methods common to all class members, as detailed at length in the expert rebuttal reports of Mr. Hansen and Dr. Wilcox. Hansen Rebuttal Report, ¶¶ 15-82 (attached as Ex. A to Hansen Decl.); Wilcox Rebuttal Report, ¶¶ 17-99 (attached as Ex. A to Wilcox Decl.). |
| **46.** Dr. Singer attested that "[c]onjoint analysis has been widely adopted by the private sector."<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145), at ¶ 20. | Undisputed as to what Dr. Singer "attested" in his expert report about conjoint analysis generally, but immaterial and irrelevant to Plaintiffs' Motion.<br><br>**Additional Material Facts:** Dr. Singer's CBC analysis as applied in this matter is incapable of measuring students' preferences for USC's remote education because Dr. Singer failed to |

Cooley LLP
Attorneys At Law
San Diego

51

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | present the relevant competing schools or account for the most important factors students consider when making school decisions. *Evidence:* Wilcox Rebuttal Report, ¶¶ 32-49 (attached as Ex. A to WilcoxDecl.). |
| 47. Dr. Singer's CBC surveys and analysis revealed classwide damages or restitution directly attributable to USC's conduct forming part of the Class Action Complaint totaled approximately $76.31 million, comprised of $49.24 million in damages sustained by undergraduate putative class members and $27.08 sustained by the graduate student members of the putative class.<br><br>Expert Report of Hal J., Singer, Ph.D. (on file under seal as Dkt. No. 145), at ¶ 71, and at Tables 9 and 10. | Disputed that Dr. Singer's surveys or analysis "revealed" *any amount* of "damages or restitution directly attributable to USC's conduct forming part of the Class Action Complaint," due to fundamental flaws in Dr. Singer's methodology and failure to consider material facts relevant to whether Plaintiffs are entitled to restitution from USC. Hansen Rebuttal Report, ¶¶ 15-82 (attached as Ex. A to Hansen Decl.); Wilcox Rebuttal Report, ¶¶ 17-99 (attached as Ex. A to Wilcox Decl.).<br><br>**Additional Material Facts:** Dr. Singer testified that he did not understand the difference between "damages" and "restitution" under California law, and his opinions in this matter did not account for any difference. *Evidence*: Singer Depo., 62:19-21, 64:19-21, 65:10-13, 65:22-66:3, 65:15-21 (attached as Ex. 7 |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | to Norton Decl.). |
| | Dr. Singer testified that he did not "simulate a but-for price" in this matter. *Evidence*: Singer Depo., 161:8-16 (attached as Ex. 7 to Norton Decl.) ("[J]ust to be absolutely clear, . . . it is not my ultimate objective to simulate a but-for price. That's not what I'm trying to get at. . . . I'm trying to get to a damages estimate. . . ."). |
| | Dr. Singer testified that his CBC analysis in this matter did not account for USC's Fall 2020 enrollment statistics. *Evidence:* Singer Depo., 243:21-244:3 (attached as Ex. 7 to Norton Decl.). |
| | Dr. Singer characterized USC charging the same tuition for online degree programs in Spring 2020 and the Fall 2020 tuition increase and steady enrollment statistics as "irrelevant" and not "a relevant benchmark." *Evidence:* Ex. 22 to Katriel Decl. (Singer Rebuttal Report), ¶¶ 9, 15.

However, Dr. Singer has offered expert testimony in a similar ongoing matter concerning university tuition refunds that the |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

53

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | differences in tuition amount for online and in-person education *is* an appropriate "benchmark" to calculate claimed student damages. *Evidence:* Declaration of Hal J. Singer, Ph.D., March 1, 2023, at ¶¶ 3-6 (attached as Ex. 11 to Norton Decl.); *see Miazza v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2023 La. Dist. LEXIS 13, *58-*59 (La. Dist. Ct. May 12, 2023) (filed at Dkt. No. 197). |
| | An academic study in 2020 found that 85% of responding universities charge generally the same or higher tuition for online instruction as they do for in-person instruction. *Evidence:* Hansen Report, ¶ 42 ( Dkt. No. 223-10). |
| | Dr. Singer found in his conjoint survey analysis that 35% of undergraduate and 40% of graduate respondents surveyed preferred the remote over in-person educational experience. *Evidence*: Expert Report of Hal J., Singer (on file at Dkt. No. 145), at Appendix 3, Table 11. |
| | Defs' SUF, Nos. 16, 25, 27, 29. |
| 48.  USC's only expert who purported to have | Disputed insofar as Plaintiffs |

Cooley LLP
Attorneys At Law
San Diego

54

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
Case No. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| expertise in conjoint analysis, rebuttal expert Dr. Ronald T. Wilcox, conducted no survey or conjoint study of his own, and admitted he had no opinion on the quantification of damages or restitution owed the Class Plaintiffs:<br><br>Q And I take it, sir, from your prior testimony today that as part of undertaking that assignment, you did not<br><br>conduct your own survey to -- you did not conduct your own survey; correct?<br><br>A I did not conduct a survey in this case.<br><br>Q And I take it, based on that, that it would be fair to say that whatever criticisms you levied in your report as to Dr. Singer's work here, you did not come up with a different number than the numbers that he put forth as his results. Would that be fair?<br><br>A I did not put forward an affirmative damages estimate.<br><br>Q Well, you did not put forth an affirmative damages estimate, but you also didn't | attempt to claim that *Defendants* bear a burden of putting forward an expert opinion "on the quantification of damages or restitution owed the Class Plaintiffs." *In re Univ. of S. Cal. Tuition & Fees Covid-19 Refund Litig.*, 2023 WL 6453814, at *15 (C.D. Cal. Sept. 29, 2023) (Gee, J.) ("USC has no burden to prove what Plaintiffs' damages should be.").<br><br>Disputed insofar as Plaintiffs attempt to mischaracterize Dr. Wilcox's testimony and expert opinions concerning Plaintiffs' showing of harm. Dr. Wilcox testified repeatedly and explained in detail in his expert report that, for a variety of methodological flaws contained in Dr. Singer's report, his expert opinion was that "the analysis presented by Sr. Singer did not show anyone was harmed." Wilcox Depo. 37:10-20; 36:7-10 ("What I can tell you is what Dr. Singer put forward didn't establish that anybody was harmed in this case.") (attached as Ex. 10 to Norton Decl.).<br><br>**Additional Material Facts:**<br>Defendants' expert Dr. Hansen details the reasons why "There is |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

55

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| put forth a rebuttal damages estimate; correct?<br><br>THE WITNESS: I did not put forth a damages estimate.<br>Ex. 20 to Katriel Decl. [Wilcox Dep. Tr.], at 41:2- 15 (objection omitted). | No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed by the Transition to Remote Education." Hansen Report, ¶¶ 29-64 (identifying and explaining at length the eight separate sub-reasons why there is no evidence of harm) ( Dkt. No. 223-10).<br><br>USC's 30(b)(6) Witnesses testified that students received continuity of education, were able to complete their coursework and earn units toward their degree, USC subsidizes the cost of education, and USC expended an additional approximately $40 million to transition to remote education and services.  Condell Depo., 43:15-23, 58:7-59:11, 66:9-23 (attached as Ex. 2 to Norton Decl.); Stott Depo., 51:5-52:14, 110:7-112:19, 229:9-25, 269:2-19, 285:15-288:12 (attached as Ex. 8 to Norton Decl.); Defs' SUF Nos. 12, 14, 16. |
| 49. | Wilcox was steadfast at deposition that he was providing no opinion on the quantification of recovery or any opinion that would arrive at a different monetary figure than put forth in Dr. Singer's expert report: | Disputed insofar as Plaintiffs attempt to claim that *Defendants* bear a burden of putting forward an expert opinion on "the quantification of recovery" or a competing "monetary figure" as |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

56

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| Q So if Dr. Singer comes up with a numerical assessed computation of damages for the class, as a whole, *I just want to make sure that when I hear your testimony in court, if we get that far, you're not going to be offering a different number saying the damage -- the damage that was suffered was X instead of Y; correct?*<br><br>THE WITNESS: *I've put forward no damages estimate here and, as I sit here, I have no intention of doing so unless asked to do so by counsel at some future date.*<br><br>Ex. 20 to Katriel Decl. [Wilcox Dep. Tr.], at 38:10-23 (emphasis added, objection omitted). | to damages or restitution in this matter. *In re Univ. of S. Cal. Tuition & Fees Covid-19 Refund Litig.*, 2023 WL 6453814, at *15.<br><br>Disputed insofar as Plaintiffs attempt to mischaracterize Dr. Wilcox's testimony and expert opinions concerning Plaintiffs' showing of harm.<br><br>Dr. Wilcox testified repeatedly and explained in detail in his expert report that, for a variety of methodological flaws contained in Dr. Singer's report, his expert opinion was that "the analysis presented by Sr. Singer did not show anyone was harmed." Wilcox Depo. 37:10-20; 36:7-10 ("What I can tell you is what Dr. Singer put forward didn't establish that anybody was harmed in this case.") (attached as Ex. 10 to Norton Decl.).<br><br>**Additional Material Facts:**<br>Defendants' expert Dr. Hansen details the reasons why "There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed by the Transition to Remote Education." Hansen Report, ¶¶ 29-64 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

57

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | (identifying and explaining at length the eight separate sub-reasons why there is no evidence of harm) ( Dkt. No. 223-10).

USC's 30(b)(6) Witnesses testified that students received continuity of education, were able to complete their coursework and earn units toward their degree, USC subsidizes the cost of education, and USC expended an additional approximately $40 million to transition to remote education and services.  Condell Depo., 43:15-23, 58:7-59:11, 66:9-23 (attached as Ex. 2 to Norton Decl.); Stott Depo., 51:5-52:14, 110:7-112:19, 229:9-25, 269:2-19, 285:15-288:12 (attached as Ex. 8 to Norton Decl.); Defs' SUF Nos. 12, 14, 16. |
| 50. Instead of disputing the recovery figure Dr. Singer calculated, Dr. Wilcox's rebuttal opinion was that conjoint analysis was not a properly reliable means to measure classwide recovery in this case and, therefore, Dr. Singer's opinion should be excluded as lacking reliability:

> Q Well, I'll have some follow-ups to that, but I just want to make sure that I have your | Disputed insofar as Plaintiffs attempt to claim that *Defendants* bear a burden of putting forward an expert opinion "the recovery figure" in this matter.   *In re Univ. of S. Cal. Tuition & Fees Covid-19 Refund Litig.*, 2023 WL 6453814, at *15.

Disputed insofar as Plaintiffs attempt to mischaracterize Dr. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

58

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
| --- | --- |
| testimony – that I'm understanding your testimony to be that you have not seen an expert report utilize conjoint survey analysis to properly calculate class-wide damages; right?<br><br>A All the reports that I have seen have purported to calculate price premium damages, and *conjoint analysis alone simply isn't capable of doing that.*<br><br>Q So, again, in response to my question, you have yet to see a litigation expert report that utilized classwide damages that you felt properly calculated classwide damages. Is that fair?<br><br>THE WITNESS: *In the context of conjoint analysis, I have never seen one that was capable of producing class-wide damages in the context of price premium damages, which is what I typically see.*<br><br>Ex. 20 to Katriel Decl. [Wilcox Dep. Tr.], at 25:21-26:17 (emphasis added, objection omitted). | Wilcox's testimony as amounting to an ultimate legal conclusion that "Dr. Singer's opinion should be excluded."<br><br>Disputed that Dr. Wilcox did not "dispu[e] the recovery figure Dr. Singer calculated." Dr. Wilcox testified repeatedly and explained in detail in his expert report that, for a variety of methodological flaws contained in Dr. Singer's report, his expert opinion was that "the analysis presented by Sr. Singer did not show anyone was harmed." Wilcox Depo. 37:10-20; 36:7-10 ("What I can tell you is what Dr. Singer put forward didn't establish that anybody was harmed in this case.") (attached as Ex. 10 to Norton Decl.).<br><br>**Additional Material Facts:**<br>Defendants' expert Dr. Hansen details the reasons why "There is No Evidence That Students Enrolled at USC During the Spring 2020 Semester Were Financially Harmed by the Transition to Remote Education." Hansen Report, ¶¶ 29-64 (identifying and explaining at length the eight separate sub-reasons why there is no evidence of harm) ( Dkt. No. 223-10). |

| PLAINTIFFS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' DISPUTED FACTS AND SUPPORTING EVIDENCE; DEFENDANTS' ADDITIONAL MATERIAL FACTS |
|---|---|
| | Dr. Singer's CBC analysis cannot be used to reliably calculate economic injury and assess aggregate damages or restitution using data and methods common to all class members, as detailed at length in the expert rebuttal reports of Mr. Hansen and Dr. Wilcox.  Hansen Rebuttal Report, ¶¶ 15-82 (attached as Ex. A to Hansen Decl.); Wilcox Rebuttal Report, ¶¶ 17-99 (attached as Ex. A to WilcoxDecl.). |
| | USC's 30(b)(6) Witnesses testified that students received continuity of education, were able to complete their coursework and earn units toward their degree, USC subsidizes the cost of education, and USC expended an additional approximately $40 million to transition to remote education and services.  Condell Depo., 43:15-23, 58:7-59:11, 66:9-23 (attached as Ex. 2 to Norton Decl.); Stott Depo., 51:5-52:14, 110:7-112:19, 229:9-25, 269:2-19, 285:15-288:12 (attached as Ex. 8 to Norton Decl.). |
| | Defs' SUF, Nos. 12, 14, 16, 25, 27, 29. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

60

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

Defendants hereby submit the following additional material facts, previously filed as a separate Statement of Uncontroverted Facts pursuant to L.R. 56-1 in support of Defendants' pending Motion for Summary Judgment or Partial Summary Judgement (Dkt. No. 221-2). The following additional material facts, also incorporated by reference as noted above, further preclude summary judgment or partial summary judgment in favor of Plaintiffs:

| | DEFENDANTS' ADDITIONAL MATERIAL FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 1. | Plaintiffs and the Class were USC students in March 2020, when USC switched all its scheduled in-person classes to an online modality due to the COVID-19 pandemic.<br><br>*Evidence*: Dkt. No. 126 (First Amended Consolidated Class Action Complaint) ("FAC"), ¶¶ 14-31; Deposition of Transcript of Andrew Stott ("Stott Depo."), 110:4-5 (Dkt. No. 221-5). |
| 2. | Plaintiffs Choi, Kerendian, Gomez, Diaz, and Greenberg were undergraduates in Spring 2020, and Plaintiff Watson was a graduate student in social work.<br><br>*Evidence*: Deposition Transcript of Injune David Choi ("Choi Depo."), 30:18-20 (Dkt. No. 223-1); Deposition Transcript of Christina Diaz ("Diaz Depo."), 23:8-24:2 (Dkt. No. 223-2); Deposition Transcript of Chile Mark Aguiniga Gomez ("Gomez Depo."), 22:17-23:10 (Dkt. No. 223-3); Deposition Transcript of Jenna Julia Greenberg ("Greenberg Depo."), 22:1-10 (Dkt. No. 223-4); Deposition Transcript of Justin Kerendian ("Kerendian Depo."), 20:4-18 (Dkt. No. 223-5); Deposition Transcript of Latisha Watson ("Watson Depo."), 21:7-19 (Dkt. No. 223-6). |
| 3. | On March 4, 2020, in light of widespread confirmed cases of COVID-19 across the globe, Governor of California Gavin Newsom declared a State of Emergency.<br><br>*Evidence*: Dkt. No. 221-12 (Executive Order N-33-20) (noting declaration of State of Emergency on Mar. 4, 2020); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3). |
| 4. | The same day, the Mayor of Los Angeles issued a Declaration of Local Emergency in light of the "imminent threat to the public health from the introduction of COVID-19 in the City of Los Angeles."<br><br>*Evidence*: Dkt. No. 221-13 (Decl. of Local Emergency); USC's Request for |

| | |
|---|---|
| | Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3). |
| 5. | On March 6, 2020, USC announced certain precautionary measures, including a three-day test of the university's technical capabilities from March 11 through March 13 that moved all lectures and seminars to a remote setting while the campus remained otherwise open.<br><br>*Evidence*: Dkt. No. 221-14 (Mar. 6 Test); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3); FAC, ¶ 61. |
| 6. | On March 10, following the discovery of the first case of community transmission in Los Angeles, USC announced that it would continue remote classes after the March 14-21 Spring Recess for the week of March 22-29.<br><br>*Evidence*: Dkt. 221-15 (Mar. 10 Update); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3); FAC, ¶ 62. |
| 7. | The next day, on March 11, the World Health Organization "had upgraded COVID-19 to a 'pandemic'—meaning, a worldwide epidemic of a new disease."<br><br>*Evidence*: FAC, ¶ 60; Dkt. No. 128 ("Answer"), ¶ 60 ("Admitted"). |
| 8. | On March 19, 2020, which was before the end of USC's Spring Recess, Governor Newsom issued Executive Order N-33-20 mandating that "all individuals living in the State of California . . . stay home or at their place of residence" with limited exceptions.<br><br>*Evidence*: Dkt. No. 221-12 (California Stay-At-Home Order [Executive Order N-33-20]); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3). |
| 9. | The same day Mayor Garcetti issued a "Safer at Home" order that prohibited indoor gatherings of 10 or more people, exempting educational institutions only "for purposes of facilitating distance learning."<br><br>*Evidence*: Dkt. No. 221-16 (L.A. Stay-at-Home Order); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3). |
| 10. | In response to these state and local orders, on March 20, 2020, USC's President Folt and Provost Zukoski sent a statement to students that the "campus facilities would remain largely closed to students," explaining, |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

62

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

among other things, that "[t]he order issued by Los Angeles County and the City of Los Angeles requires people to remain at home and stay away from others as much as possible," and as a result, public access to campus was limited to those "performing essential functions for the University and supporting on-campus residents and online and remote learning."

*Evidence*: FAC, ¶ 66; Answer, ¶ 66; Dkt. No. 221-17 (Mar. 20 Update); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3).

| 11. | Also, at the beginning of the 2019-2020 academic year, USC disclosed to students in the USC Catalogue that it "reserves the right to change its policies, rules, regulations, requirements for graduation, *course offerings* and any other contents of this catalogue at any time." |

*Evidence:* Dkt. No. 221-18 (USC Catalogue [excerpted]) (emphasis added); Choi Depo., 145:9-149:25 (Dkt. No. 223-1); Diaz Depo., 172:11-175:9 (Dkt. No. 223-2); Gomez Depo., 68:2-70:23 (Dkt. No. 223-3); Greenberg Depo., 91:13-93:12 (Dkt. No. 223-4); Kerendian Depo., 146:6-149:6 (Dkt. No. 223-5); Watson Depo., 129:13-135:10 (Dkt. No. 223-6).

| 12. | After courses moved online, USC continued to provide remote classes, and provided additional resources to students to effectuate remote learning, including, for example, sending students basic technological equipment to ensure adequate infrastructure for remote education, physics students were sent at-home lab kits, and music students received microphones to record practice and send the recordings to professors. |

*Evidence:* Opening Expert Report of John L. Hansen ("Hansen Report"), ¶ 88 (Dkt. No. 223-10); Stott Depo., 207:1-210:14 (Dkt. No. 221-5).

| 13. | The transition to remote education did not impact progress towards degree completion for Plaintiffs or putative class members— Plaintiff Choi graduated in May 2020, while the other Plaintiffs earned the units for which they were registered and subsequently graduated on time. |

*Evidence:* Hansen Report, ¶¶ 9-14, 44-48 (Dkt. No. 223-10); Choi Depo., 30:18-20 (Dkt. No. 223-1); Diaz Depo., 23:8-24:2 (Dkt. No. 223-2); Gomez Depo., 22:17-23:10 (Dkt. No. 223-3); Greenberg Depo., 22:1-10 (Dkt. No. 223-4); Kerendian Depo., 20:4-18 (Dkt. No. 223-5); Watson Depo., 21:7-19 (Dkt. No. 223-6).

| 14. | Course surveys completed by actual USC students for Spring 2020 were similar to, or higher than, the course ratings from the previous, in-person, Spring 2019 semester. |

*Evidence*: Stott Depo, 263:7-17; 355:2-16 (Dkt. No. 221-5); Hansen Report

Cooley LLP
Attorneys At Law
San Diego

63

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
Case No. 2:20-cv-4066-DMG-PVC

| | |
|---|---|
| | (Dkt. No. 223-10), ¶¶ 56-58 citing USC000126907 (Dkt. 221-30). |
| 15. | On April 28, 2020, USC announced that it would provide pro-rated housing and meal plan fee refunds to students, but it would not change Spring 2020 semester tuition because USC was "continuing to provide a high-quality education, ensur[ing] academic progress towards degree [completion], and offer[ing] a robust learning environment." <br><br> *Evidence*: Dkt. 221-19 (Apr. 28 Update); FAC, ¶ 72. |
| 16. | To complete the switch to remote education and services, USC expended approximately $40 million, and USC ultimately experienced a loss of approximately $100 million from the change in operations during the Spring 2020 semester, which is in addition to the fact that USC does not recover (pre, during, or post-pandemic) its full costs of education through tuition and fees and instead subsidizes the costs of instruction and services—for the fiscal year ending in June 2020, USC reported tuition and fees of approximately $1.6 billion compared to expenses for instruction of approximately $2.5 billion. <br><br> *Evidence:* Deposition of Gregory Condell ("Condell Depo."), 32:8-38:7, 42:6-23 and Ex. 52 at USC000085238 (Dkt. No. 223-7); Hansen Report (Dkt. No. 223-10), ¶¶ 59-67 & Attachment 9 (citing USC000126939, USC000133167, Dkt. Nos. 223-8 & 223-9) |
| 17. | USC provided pro-rated refunds for services discontinued during the pandemic, such as housing, meals, and parking, and such pro-rated refunds are reflected in the Plaintiffs' account ledgers, including, for example, Plaintiff Gomez was charged $5,101 for rent and $675 for a meal plan for the Spring 2020 semester, and received refunds of $2,150 and $7.96, respectively, Plaintiff Greenberg was charged $2,880 for rent and $337.50 for parking, and received refunds of $1,095.99 and $150, respectively, and Plaintiff Watson was charged $675 for a meal plan, and received a refund of $480.56. <br><br> *Evidence*: Gomez Depo., 83:16-85:2, 92:19-98:17 & Ex. 42 (Dkt. No. 223-3); Greenberg Depo., 49:11-50:11, 53:14-54:16 & Ex. 6 (Dkt. No. 223-4); Watson Depo., 152:1-13, 150:14-16, 151:8-10 & Ex. 79 (Dkt. No. 223-6); Dkt. No. 221-19 (Apr. 28 Update); FAC, ¶ 71 Hansen Report, ¶ 38 & Attachment 4.1-4.6 (Dkt. No. 223-10). |
| 18. | Plaintiffs Choi, Gomez, Greenburg, Kerendian, and Watson were charged the N. Topping Student Aid Fund, while Plaintiff Diaz was not. <br><br> *Evidence*: Choi Depo., 109:17-110:19, 114:9-116:10 & Ex. 112 (Dkt. No. 223-1); Diaz Depo., 78:23-80:9 & Ex. 91 (Dkt. No. 223-2); Gomez Depo., 83:16-85:2; 85:3-8 & Ex. 42 (Dkt. No. 223-3); Greenberg Depo., 49:11-50:21 Ex. 6 (Dkt. No. 223-4); Kerendian Depo., 63:16-64:15 & Ex. 57 (Dkt. No. 223-5); Watson Depo., 152:1-13, 163:24-164:16, 165:22-166:21 & Ex. 79 (Dkt. No. |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

|  |  |  |
|---|---|---|
|  |  | 223-6); Hansen Report, ¶¶ 9-14 & Attachment 4.1-4.6 (Dkt. No. 223-10). |
|  | 19. | The Norman H. Topping Fee "provides scholarships to low income students" and was elected to be assessed by USC students in 1970.<br><br>*Evidence*: Hansen Report, ¶ 35 (Dkt. No. 223-10) citing USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 036) (Dkt. No. 221-23). Gomez Depo., 99:5-99:24 & Ex. 45 (Dkt. No. 223-3); Watson Depo., 165:5-166:21 & Ex. 45 (Dkt. No. 223-6). |
|  | 20. | Plaintiffs Choi, Gomez, Greenburg, Kerendian, and Watson were charged Student Health Fee ($366.00), while Plaintiff Diaz was not.<br><br>*Evidence*: Choi Depo., 109:17-110:19, 118:12-120:12 & Ex. 112 (Dkt. No. 223-1); Diaz Depo., 78:23-80:9 & Ex. 91 (Dkt. No. 223-2); Gomez Depo., 83:16-85:2, 85:12-18 & Ex. 42 (Dkt. No. 223-3); Greenberg Depo., 49:11-50:11, 50:22-52:1 & Ex. 6 (Dkt. No. 223-4); Kerendian Depo., 63:16-64:15, 65:21-66:17 & Ex. 57 (Dkt. No. 223-5); Watson Depo., 152:1-13, 155:14-156:11 & Ex. 79 (Dkt. No. 223-6); Hansen, ¶¶ 9-14 & Attachment 4.1-4.6 (Dkt. No. 223-10). |
|  | 21. | The Student Health Service Fee "funds public health and preventative care for the student community, and underwrites the medical and mental health direct services," and the services related to the Student Health Service Fee were available to students enrolled in the Spring 2020 semester after the transition to remote education, including, for example, USC's student health center remained open by appointment and also added online service, providing "TeleHealth counseling visits, distance offerings includ[ing] workshops on strategies to cope with sleeping issues and anxiety; therapy groups; Let's Talk drop-ins, which consist of 30 minute sessions with a counselor, with no appointment necessary and are available to all students in any part of the world."<br><br>*Evidence*: Hansen Report , ¶ 36 (Dkt. No. 223-10), citing USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 036) (Dkt. No. 221-23); Gomez Depo., 99:5-99:24 & Ex. 45 (Dkt. No. 223-3); Watson Depo., 165:5-166:21 & Ex. 45 (Dkt. No. 223-6); Hansen Report, ¶ 39 (Dkt. No. 223-10), citing Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020, USC000021606-607 (at 606) (Dkt. No. 221-24); Diaz Depo., 161:21-164:2 & Ex. 24 (Dkt. No. 223-2); Greenberg Depo., 182:19-184:9 & Ex. 24 (Dkt. No. 223-4); Stott Depo, 80:12-83:16 (Dkt. No. 221-5). |
|  | 22. | Plaintiffs Choi, Gomez, Greenburg, and Kerendian, were charged the Undergraduate Student Programming Fee ($64.00), while Plaintiff Watson was charged the Graduate Student Programming Fee ($43.00), and Plaintiff |

65

|  | Diaz was not charged the Undergraduate Student Programming Fee. |
|---|---|
|  | *Evidence*: Choi Depo., 109:17-110:19, 120:13-122:9 & Ex. 112 (Dkt. No. 223-1); Diaz Depo., 78:23-80:9 & Ex. 91 (Dkt. No. 223-2); Gomez Depo., 83:16-85:2, 86:23-87:4 & Ex. 42 (Dkt. No. 223-3); Greenberg Depo., 49:11-50:11, 52:2-52:12 & Ex. 6 (Dkt. No. 223-4); Kerendian Depo., 63:16-64:15, 66:18-67:4 & Ex. 57 (Dkt. No. 223-5); Watson Depo., 152:1-13, 162:18-163:11 & Ex. 79 (Dkt. No. 223-6); Hansen Report, ¶¶ 9-14 & Attachment 4.1-4.6.) (Dkt. No. 223-10). |
| 23. | USC does not specify a modality for delivery of or otherwise describe the programming, but services paid for by the Student Programming Fee were still available to students enrolled in the Spring 2020 semester after the transition to remote education as USC continued to provide student programming, including a TikTok contest, a homework club, karaoke, a baking class, and various student wellness workshops, as examples. |
|  | *Evidence*: Hansen Report, ¶ 36 (Dkt. No. 223-10) citing USC Student Financial Services, Archived from September 2020: USC000130035-036 (at 036) (Dkt. No. 221-23); Gomez Depo., 99:5-99:24 & Ex. 45 (Dkt. No. 223-3); Watson Depo., 165:5-166:21 & Ex. 45 (Dkt. No. 223-6); Hansen Report, ¶ 39 (Dkt. No. 223-10), citing Email from Office of the Vice President of Student Affairs to University Communications, Re: A message from Winston Crisp, Vice President for Student Affairs, dated April 24, 2020, USC000021606-607 (at 606) (Dkt. No. 221-21) and citing Campus Activities Website, Archived April 2020: USC000130577-578 (at 577) (Dkt. No. 221-25); Greenberg Depo Tr., 165:22-167:3 & Ex. 29 (Dkt. No. 223-4). |
| 24. | None of the Plaintiffs were charged Laboratory Fees or for Commuter Permits. |
|  | *Evidence*: Choi Depo., 109:17-110:19 & Ex. 112 (Dkt. No. 223-1); Diaz Depo., 78:23-80:9 & Ex. 91 (Dkt. No. 223-2); Gomez Depo., 83:16-85:2 & Ex. 42 (Dkt. No. 223-3); Greenberg Depo., 49:11-50:11 & Ex. 6 (Dkt. No. 223-4); Kerendian Depo., 63:16-64:15 & Ex. 57 (Dkt. No. 223-5); Watson Depo., 152:1-13 & Ex. 79 (Dkt. No. 223-6); Hansen, ¶¶ 9-14 & Attachment 4.1-4.6.) (Dkt. No. 223-10). |
| 25. | With advance notice to students, USC conducted all of its classes remotely in Fall 2020, and raised its undergraduate and graduate tuition by approximately 3.5%, yet enrollment rates remained steady, and each of the Plaintiffs who had not yet graduated elected to reenroll. |
|  | *Evidence*: FAC, ¶¶ 8 (3.5% increase), 43 ($28,628 for Spring 2020), 73-74 (notice to students); Condell Depo., 61:11-20 & Ex. 56 ($29,630 for Fall 2020) (Dkt. 223-7); Hansen Report, ¶¶ 52-54 (Dkt. No. 223-10). |

Cooley LLP
Attorneys At Law
San Diego

66

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

| | |
|---|---|
| 26. | USC's endowment funds consist of donor-restricted and board-designated endowment funds, and income from donor restricted endowments is restricted for specific purposes and therefore, is not available for general expenditure. Although, board-designated endowments funds are not subject to such restrictions, USC uses a portion of such funds that are appropriated for general expenditures as part of its annual budget approval and appropriation process, and regardless, such funds contain investments with lock-up provisions that reduce the total investments that could be made available. Moreover, USC uses a portion of board-designated endowment funds that are appropriated for general expenditures as part of its annual budget approval and appropriation process, and for the Fiscal Year ending June 30, 2020, appropriated over $262 million under its annual budget approval and appropriation process.<br><br>*Evidence*: Dkt. No. 221-26 (USC Consolidated Financial Statements for the Years Ended June 30, 2019, 2018 – USC000017043-17077); USC's Request for Judicial Notice filed in support of USC's Motion for Summary Judgment or Partial Summary Judgment (Dkt. No. 221-3); Deposition of John L. Hansen, 146:21-148:21, 166:6-167:10 and Exs. 9-10 (Dkt. No. 221-27); Hansen Report (Dkt. No. 223-10), Attachment 3 (listing USC000017043-17077 and USC000017078-17113 (at USC000017081, USC000017084, USC000017091 (Dkt. Nos. 221-26 & 221-28)). |
| 27. | Prior to the pandemic and Spring 2020, USC offered remote graduate degree programs, and USC charged the same tuition amount for online and in-person degree programs.<br><br>*Evidence*: FAC, ¶ 5; Stott Depo, 134-135, 232, 387:2-12 & Ex. 45 (Dkt. No. 221-5); Hansen Report, ¶¶ 29-32 (Dkt. No. 223-10); Watson Depo. 71:1-72:8, 75:15-19 (Dkt. No. 223-6). |
| 28. | Plaintiff Watson was enrolled in USC's Master of Social Work degree program.<br><br>*Evidence*: FAC, ¶ 29; Watson Depo., 21:7-19, 152:1-13 & Ex. 79 (Dkt. No. 223-6); Hansen Report, ¶¶ 29-32 (Dkt. No. 223-10). |
| 29. | The Master of Social Work degree program is offered in both the in-person and online modalities, and USC charges the same amount of tuition for the online and in-person versions of the Master of Social Work.<br><br>*Evidence*: Stott Depo, 134-135, 232, 387:2-12 & Ex. 45 (Dkt. No. 221-5); Watson Depo. 71:1-72:8, 75:15-19 (Dkt. No. 223-6); FAC, ¶ 5; Hansen Report, ¶ 31 (Dkt. No. 223-10) citing USC Tuition Rates for Spring 2020 Semester: USC000125116 (Dkt. No. 221-29). |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

67

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC

1    Dated: February 9, 2024              COOLEY LLP

2                                          /s/ *Leo P. Norton*

3                                          Leo P. Norton (216282)

4                                          Attorneys for Defendants
                                           UNIVERSITY OF SOUTHERN
5                                          CALIFORNIA and THE BOARD OF
                                           TRUSTEES OF THE UNIVERSITY OF
6                                          SOUTHERN CALIFORNIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

68

DEFENDANTS' STATEMENT OF GENUINE DISPUTES
IN RESPONSE TO PLAINTIFFS' SUF
CASE NO. 2:20-CV-4066-DMG-PVC