COOLEY LLP
MICHELLE C. DOOLIN (179445)
mdoolin@cooley.com
LEO P. NORTON (216282)
(lnorton@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000/Fax: (858) 550-6420

SUSMAN GODFREY LLP
STEPHEN E. MORRISSEY (187865)
smorrissey@susmangodfrey.com
JOHN MACY (*Pro Hac Vice*)
jmacy@susmangodfrey.com
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880/Fax: (206) 516-3883

AMANDA BONN (270891)
abonn@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100/Fax: (310) 789-3150

VINEET BHATIA (*Pro Hac Vice*)
vbhatia@susmangodfrey.com
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366/Fax: (713) 654-6666

[Additional Counsel on Signature Page]

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA and THE BOARD OF
TRUSTEES OF THE UNIVERSITY OF
SOUTHERN CALIFORNIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation* | Case No. 2:20-cv-04066-DMG-PVC<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 19, 2024<br>Time: 2:00 p.m.<br>Courtroom: 8C<br><br>Action filed: May 7, 2020<br>Consolidated: July 17, 2020<br>Trial Date: Not set |

**INTRODUCTION**

Defendants submit this supplemental brief to address a new, controlling decision published by the California Court of Appeal that both supports USC's position on the pending cross-motions for summary judgment and provides new and additional grounds for granting summary judgment in USC's favor. In *Berlanga v. University of San Francisco*, 2024 WL 853813 (Cal. App. 1st Dist. Feb. 29, 2024), the Court of Appeal affirmed summary judgment in favor of University of San Francisco ("USF") and against student plaintiffs who sought tuition refunds from the school. Applying established California law, the court held that "generalized statements" about the on-campus experience in university materials do not amount to an unqualified contractual promise of exclusive, in-person education and services—especially during a global pandemic that necessitates remote education and services. Under California law, only a "specific promise" made with "unequivocal" language becomes a contractual term between a university and its students.

This new, binding published decision clarifies the evolving legal landscape that existed when this Court reached its prior decisions on dispositive motions and conclusively resolves this case in USC's favor. Under established California law, the University of Southern California ("USC") was not contractually obligated to provide exclusively in-person education because it never made a "specific" or "unequivocal" promise to do so. Thus, USC did not fail to perform its contractual obligations and the student plaintiffs are not entitled to relief under a breach of contract or a quasi-contract theory. Their Unfair Competition Law ("UCL") unfairness claim likewise fails because USC did not act unfairly by transitioning to remote education in Spring 2020. Defendants' Motion for Summary Judgment should be granted, and Plaintiffs' Motion should be denied.

**I. *BERLANGA* AND ITS RELEVANT HOLDINGS**

Like most universities, the University of San Francisco closed its campus and transitioned to remote education when the COVID-19 pandemic hit American shores

in Spring 2020. In the wake of that transition, Samantha Berlanga and other former USF students filed a class action in California state court, alleging that USF failed to deliver "the educational services, facilities, access and/or opportunities for which Plaintiffs and the proposed Class and Subclasses contracted and paid." *Berlanga*, 2024 WL 853813, at *1. At bottom, the USF students argued that they were contractually "entitled to in-person educational services," and did not receive what they bargained for in exchange for their Spring 2020 tuition payments. *Id.*

To support their entitlement to in-person instruction, the students pointed to various university materials referring to on-campus, in-person activities. For example, the USF student admissions letter stated: "you will be surrounded by the best city ever" and "I personally look forward to greeting you on campus." *Id.* at *2. USF course descriptions and syllabi also referenced the physical locations of in-person classes. *Id.* The students also pointed to "USF's 165-year history of in-person instruction." *Id.* Overall, the students believed that USF "represented itself as a 'residential university, offering in-person instruction and on-campus facilities,'" and that such representations gave rise to a contractual obligation to provide exclusively in-person instruction. *Id.*

The California courts to consider the matter disagreed. The trial court granted summary judgment in favor of USF, holding that there was no triable issue of fact over whether USF made a contractual promise of exclusive, in-person education. The Court of Appeal affirmed.

In affirming the trial court, the Court of Appeal applied established California law governing the relationship between a university and its students. California courts have made clear that "the basic legal relationship between a student and a private university is contractual in nature." *Kashmiri v. Regents of Univ. of California*, 156 Cal.App.4th 809, 823–24 (2007) (citing cases). But that contractual relationship is subject to a "rule of flexibility." *Id.* at 826. As the *Berlanga* court points out, "contractual obligations imposed by the language in [university]

catalogues 'center around what is reasonable.'" *Berlanga*, 2024 WL 853813, at *4 (quoting *Kashmiri*). Thus, "not all statements in university catalogs and bulletins amount to contractual obligations." *Id.* (citing *Kashmiri*).

Rather—as *Kashmiri* illustrates and *Berlanga* confirms—only a "specific promise" made through "unequivocal" statements amounts to a contractual term between a university and its students. *Id.* (citing *Kashmiri*). "[A] general statement or declaration" is not enough. *Id.* Thus, California courts will enforce an educational contract when a university fails to live up to its *specific* promises, such as by "fail[ing] to deliver a promised number of hours of instruction," but will not enforce mere "general promises or expectations." *Id.*

Applying that California law to the USF students' claims, the *Berlanga* court found that USF did not make a "specific promise" that students would receive an exclusively in-person education. *Id.* at *5. General statements in the USF admission letter or other university materials were not the "unequivocal" statements that are required to constitute a contractual promise. *Id.* In the absence of a specific promise, the *Berlanga* court held that USF did not have a contractual obligation to provide exclusively in-person instruction, and it committed no breach by transitioning to remote education during the COVID-19 pandemic. *Id.* at *6.

The court expressly considered and rejected contrary federal authority from courts in this district. Namely, it found those decisions "flawed" because they relied on "generalized statements" instead of "specific" promises:

> We recognize some federal authorities have found comparable evidence sufficient to raise a fact issue regarding in-person instruction. (See, e.g., *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* (C.D. Cal. 2023) 659 F.Supp.3d 1086, 1094; *Arredondo v. University of La Verne* (C.D. Cal. 2022) 618 F.Supp.3d 937, 946.) We are not bound by these authorities and, in any event, find their reasoning flawed to the extent they rely on generalized statements regarding campus experiences or facilities. Such generalized statements fail to delineate the specific terms under which the universities were offering

> in-person instruction or campus access as required by California law. . . . While we recognize that all parties expected classes to be conducted in-person, those general expectations do not amount to an enforceable term of the parties' contract.

*Id.* (some citations and footnote omitted). The *Berlanga* court's criticism of these contrary federal authorities underscores the core principle of California law governing these cases: only a "specific" promise made in "unequivocal" language gives rise to a contractual obligation. The "general expectations" of in-person classes are not enough.

After holding that no contractual term was breached, the *Berlanga* court also affirmed summary judgment for USF on the students' quasi-contract claim. That's because "[a] cause of action for quasi-contract 'cannot lie where there exists between the parties a valid express contract covering the same subject matter.'" *Id.* at *8 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014)). The court recognized that "a plaintiff may pursue restitution on a quasi-contract theory when 'performance of an otherwise valid contract has been rendered impossible'" *Id.* (citing *In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, 659 F.Supp.3d at 1095). But it found that not to be the case. There was no promise of in-person instruction that was rendered impossible, so the contract was fully enforceable. Thus, the students were "precluded from pursuing their quasi-contract claim." *Id.*

Finally, the *Berlanga* court's reasoning makes clear that USF and similarly situated universities did not act unfairly by transitioning to remote education during the COVID-19 pandemic. Indeed, as the court points out, it was the USF *students* who proposed an unfair interpretation of the university's obligations: "Interpreting general statements about campus life as binding contracts for in-person instruction or access to campus facilities without exception places universities in an impossible situation—violating state and/or local stay-at-home orders or breaching their

4

contracts with students." *Id.* at *6. To the contrary, by transitioning to remote education, universities followed the law and performed their contractual obligations.

## II. *BERLANGA* IS A CONTROLLING PRECEDENT

This Court is "obligated" to follow the decisions of the California Court of Appeal unless there is "convincing" evidence that the California Supreme Court would decide the issue differently. *Beeman v. Anthem Prescription Management*, 689 F.3d 1002, 1008 (9th Cir. 2012).

## III. ARGUMENT

As with University of San Francisco, there is no basis for inferring that USC promised "*exclusively* in-person instruction under the circumstances of a global health and safety emergency." *Berlanga,* at *5. None of the materials cited by Plaintiffs demonstrates a "specific promise" made in "unequivocal" terms. Instead, all are either mere "generalized statements" or are not "unequivocal" given the circumstances necessitated by the pandemic:

- Plaintiffs point to statements in the USC catalogue referring to the times and locations of classes. Pltfs.' MSJ, at 8–9. The *Berlanga* court found identical statements by USF to be insufficient evidence of a specific promise. Plaintiffs also overlook that USC disclosed in the USC Catalogue that it reserved the right to change its course offerings. *See Berlanga*, 2024 WL 853813, at *2 & n.1 (noting reservation of rights in USF's catalog).
- Plaintiffs point to USC admissions communications stating that the undergraduate experience would occur in "the vibrant city" of "downtown Los Angeles." *Id.* at 12. The *Berlanga* court found nearly identical statements in USF's admission letter to be insufficient evidence of a specific promise.
- Plaintiffs point to the USC handbook, which states that "the university has the responsibility to provide students the use of campus facilities *according to campus regulations*." *See* ECF No. 224-5 (Ex. 2 to Katriel Decl.), at USC000001364 (emphasis added). It also states that USC student

5

organizations may "[r]eserve campus facilities for events, programs and meetings," but specifies that such organizations must "[a]bide by all university policies" and "all state laws." *Id.* at USC000001437–38. These are not "unequivocal" promises of exclusive in-person education, especially in the event of a global pandemic that requires compliance with emergency state law.

- Plaintiffs point to a variety of statements on USC's website claiming that USC is a "dynamic community" in which students would "enjoy access to facilities," including libraries, computer labs, and production studios. Pltfs.' MSJ, at 10–11. The website also stated that students could participate in a variety of campus programs and "build community on campus." *Id.* at 10. These are mere "generalized statements," just like the statement in USF's admissions letter that students would be "surrounded by the best city ever." *Berlanga*, 2024 WL 853813, at *2.

Because USC did not make a specific promise to provide exclusive in-person instruction instead of converting to remote instruction to deliver its educational services during the pandemic, it was not contractually obligated to provide exclusively in-person instruction in Spring 2020. The lack of a contractual obligation to provide an exclusive in-person education precludes Plaintiffs' quasi-contract claim. "[A] cause of action for quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id.* at *8 (cleaned up). Of course, "[t]he basic legal relationship between a student and a private university is contractual in nature." *Id.* at *4 (quoting *Kashmiri*). Thus, a valid and enforceable contract covers the relationship between USC and its students, "albeit without the terms" that Plaintiffs sought. *Id.* at *8.

True, a plaintiff may bring a quasi-contract claim when a contract covering the subject matter becomes "unenforceable or ineffective for some reason." *Id.* But Plaintiffs do not identify a contractual obligation that is unenforceable or ineffective.

As the foregoing demonstrates, USC never had an obligation to provide exclusively in-person instruction.

Finally, although the *Berlanga* opinion did not expressly address the USF students' UCL claim, its reasoning emphasizes that universities did not act unfairly by transitioning to remote education during the COVID-19 pandemic. As *Berlanga* recognizes, the transition to remote education was *necessary* to avoid "violating state and/or local stay-at-home orders." *Berlanga*, 2024 WL 853813, at *6. The *Berlanga* court underscores that universities did not act unfairly by transitioning to remote education to comply with the law. Indeed, it would be unfair to expect them to do otherwise, as it would place universities into an "impossible situation." *Id.*

Moreover, Plaintiffs admit that their UCL claim is largely dependent on their claim that USC failed to perform a contractual obligation. *See* Pltfs.' Opp. to Defs' MSJ, at 15 (defending Plaintiffs UCL claim by referring to the "reasons discussed" in favor of Plaintiffs' quasi-contract claim). Because Plaintiffs' UCL claim essentially relies on their argument that USC students did not get "what they paid for," *id*, it collapses alongside their faulty claim for quasi-contract.

## CONCLUSION

The California Court of Appeal's decision in *Berlanga* is binding authority that controls this case. Defendants' Motion for Summary Judgment should be granted, and Plaintiffs' Motion for Summary Judgment should be denied.

Dated: March 13, 2024                    Respectfully submitted,

By: */s/ Stephen E. Morrissey*
Stephen E. Morrissey (187865)

SUSMAN GODFREY LLP
STEPHEN E. MORRISSEY
AMANDA BONN
VINEET BHATIA
JOHN MACY

7

COOLEY LLP
MICHELLE C. DOOLIN
LEO P. NORTON

ALEXANDRA R. MAYHUGH (300446)
amayhugh@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel: (310) 883-6400
Fax: (310 883-6500

MICHAEL N. SHEETZ (*Pro Hac Vice*)
msheetz@cooley.com
500 Boylston Street
Boston, MA 02116-3736
Tel: (617) 937-2300
Fax: (617) 937-2400

Attorneys for Defendants
UNIVERSITY OF SOUTHERN CALIFORNIA and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA