**EXHIBIT A**

**In the Matter Of:**

*PHAM v*

*THE REGENTS OF THE UNIVERSITY OF CALIFORNIA*

---

*AUDIO TRANSCRIPTION*

*April 10, 2024*

---



1

```
 1   --------------------------------------------------

 2

 3

 4            *** AUDIO TRANSCRIPTION ***

 5                      for

 6              ANDREW PHAM et al.,

 7           Plaintiffs and Appellants,

 8                       v.

 9      THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

10            Defendant and Respondent.

11

12                    * * *

13      April 10, 2024 Court of Appeal Oral Argument

14

15   --------------------------------------------------

16

17

18

19

20

21

22

23   Transcribed

24   By: Cesar Castellanos

25   Job No.: 2024-938191
```

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 4 of 49   Page
ID #:13108
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

2

```
 1        THE COURT:  And our last matter this

 2   morning is Pham against the Regents, B320813.

 3   You are, Mr. Swartzberg.

 4        MR. SWARTZBERG:  Good morning.

 5        THE COURT:  Good morning.

 6        MR. SWARTZBERG:  To your anticipated

 7   question, please go ahead and cut me off or

 8   raise a red flag at 10 minutes, please.

 9        THE COURT:  All right.

10        MR. SWARTZBERG:  Good morning.  May it

11   please the court.  Under contract law, words

12   have meaning.  Conduct has consequences.  The

13   words that the university used to describe its

14   degree programs, classes, and campus life must

15   be given credence.  The conduct that the

16   university engaged in year after year in

17   providing those degree programs, classes, and

18   campus life cannot be ignored.

19        If the trial court's order is not

20   reversed, if the regents' reading of the

21   university's contract with its students is

22   accepted, if the university words and the

23   university's conduct are disregarded, then

24   there is nothing stopping the university from

25   tomorrow making the unilateral decision, even
```

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 5 of 49   Page
PHAM v                                      ID #:13109                              Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                         April 10, 2024

3

```
1   absent a pandemic or a similar crisis, to

2   again return all classes to an online format

3   or to again shut down all of its campuses,

4   completely eliminating access to any on campus

5   facility.

6        THE COURT:  So before you get too far

7   into the details of the dispute we have, I

8   wonder if you can just -- for background

9   purposes only, I know it's not before us at

10  the moment -- but describe the theory of this

11  complaint and the relief that you're seeking.

12       In other words, are you asking for all

13  the tuition back, some portion of the tuition

14  back?  If it's just a portion, do you have

15  some sense of how a court would go about

16  resolving how much of that would be?  Just

17  give us a sense of what the background theory

18  is and what you're requesting before we get

19  into the specifics of the component.

20       MR. SWARTZBERG:  Sure.  And I know the

21  court appreciates that we're at the demur

22  phase and we're not at a damages determination

23  and experts on those damages, but in terms of

24  context and the theory of the case.  Yes, the

25  theory of the case is that there's an implied
```

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 6 of 49   Page
ID #:13110
PHAM v                                                                     Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                              April 10, 2024

4

 1   -- in terms of on the appeal now that there's

 2   an implied contract.

 3       The implied contract includes two terms

 4   for in-person classes and for access to on-

 5   campus activities, that students paid each

 6   semester, a pre-COVID dollar amount to get

 7   those services.

 8       But when COVID came around for the spring

 9   2020 academic term and later terms, those

10   things weren't provided so that there would be

11   an adjustment based on what was promised

12   versus what was actually delivered.

13       It's not in the record, but I'm counsel

14   on other cases on this and we do have expert

15   testimony talking about market rates for

16   universities and how those market rates would

17   change in a scenario where the services are

18   provided in-person, on-campus with access to

19   them and what the market rate would be when,

20   instead of getting those in-person classes and

21   on-campus services, the students would get --

22   I want to trademark infringe here -- Zoom

23   classes, online classes, and limited or

24   virtually no access to the campuses.

25       So in terms of background, that's -- I'm

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 7 of 49   Page
ID #:13111
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

5

1  trying to answer your question.  I hope that

2  works.

3      THE COURT:  I understand the answer is

4  that the theory is that there is some

5  differential between the amount paid and the

6  amount received, and whatever that

7  differential would be would be the amount that

8  you would try to prove and seek to recover.

9  So I interrupted you.  Please.

10     MR. SWARTZBERG:  And I'll just add one

11  more thing.  Certainly in terms of affirmative

12  defense, does that need to be raised?  I think

13  we may get into impossibility here.

14      If the university wants to come forward

15  and present evidence of, we dispute that there

16  was a breach, but if there was a breach,

17  here's why, your amount, you say that you're

18  entitled to this amount.  Here's why you need

19  to consider some additional stuff.  But I

20  think that's well down the road past demur.

21      THE COURT:  Ordinarily, defenses are

22  decided sometimes in summary judgment and

23  sometimes there's a question of fact.  But

24  here, there's no dispute that the failure to

25  provide -- or am I wrong?  Is there a dispute

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 8 of 49   Page
ID #:13112
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
Audio Transcription
April 10, 2024

6

1  that the failure to provide in-person classes

2  and services was due to the pandemic?  And I'm

3  looking specifically at paragraph 44 of the

4  complaint for the first amended complaint.

5      MR. SWARTZBERG:  So I think it's an

6  important question, perhaps a nuanced one, but

7  I don't think it determines the outcome for

8  the question before this case of whether we

9  should be able to proceed, which is the

10  plaintiffs -- and it's included in the

11  allegations -- don't dispute that the pandemic

12  happened.  Plaintiffs don't dispute that

13  campus were shut down.  We also don't dispute

14  that there are government orders.

15      The question is, what impact does a

16  government order brought on by a pandemic due

17  to the party's contract?  It's plaintiff's

18  position that this isn't addressed.  It's not

19  contemplated by the contract, the implied

20  contract.  And therefore, we have a whole

21  series of jurisprudence, including doctrines

22  of impossibility and impracticability.  And

23  what happens when those arise?

24      THE COURT:  Well, impossibility excuses a

25  breach, correct?  It excuses performance by a

 1  party.

 2       MR. SWARTZBERG:  It excuses performance

 3  and gives rise to remedies in restitution

 4  under principles of unjust enrichment --

 5       THE COURT:  But that's not at issue here.

 6  Only the breach of contract based upon implied

 7  terms is alleged in the complaint, I thought.

 8       MR. SWARTZBERG:  Well, the allegation is

 9  it was breached.  And I believe the trial

10  court incorrectly brought up the issue of

11  impossibility as an alternate.  Even if there

12  is a specific promise and it's breached, well,

13  I don't think it could have been performed

14  because of an impossibility.

15       We think that was improper to reach that

16  at the demur stage, and therefore, we also

17  breached the issue of -- or briefed the issue

18  of what would be the consequences of their

19  reading that, yes, the government orders

20  constituted impossibility.  Does that answer

21  your question, Your Honor?

22       THE COURT:  Well, why is it improper to

23  bring up in a demur stage in this instance?

24  Ordinarily defend?  Well, a statute of

25  limitation --

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 10 of 49   Page
PHAM v                                          ID #:13114                        Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                        April 10, 2024

8

1        MR. SWARTZBERG:  Well, in this case, we

2   don't address affirmative defenses at the

3   pleading stage.  It's something to be resolved

4   later after a further factual development.

5   But we're saying that even if we concede that

6   the government orders rendered performance

7   impossible, there would give rise -- it would

8   still be a contract, it would be excused, and

9   the plaintiffs would still be entitled to a

10  measure of damages under theories of

11  restitution, unjust enrichment.

12        And those theories of damages would still

13  be in measures similar to what I earlier set

14  forth for the court.  I want to make sure I'm

15  answering your question, because I don't want

16  to --

17        THE COURT:  I understand your answer.

18        MR. SWARTZBERG:  It's not unimportant.

19        THE COURT:  And I also understand they

20  didn't raise this in their demur.  There was

21  no -- sorry.  They did not raise -- the

22  regents didn't raise this in the demur, and I

23  appreciate you raising it here.

24        MR. SWARTZBERG:  Sure.

25        THE COURT:  Thank you.

9

1        MR. SWARTZBERG:  So, again, there would

2   be nothing stopping the university from

3   tomorrow declaring that classes would go

4   online even in the absence of a pandemic.

5   Indeed, there would be nothing stopping the

6   university from tomorrow declaring that

7   students enrolled in biology classes will

8   instead receive instruction in calculus.

9        Here, in this case, the identification of

10  a class's subject matter in a course catalog

11  and course confirmation schedules is as

12  specific as the identification of a class

13  being in person versus online.

14       It is in those same course catalogs and

15  confirmation schedules that just as a student

16  should be able to reasonably expect that he or

17  she will receive a biology class in person,

18  that he or she should reasonably not expect

19  that they would instead receive a class in

20  calculus, say, online.

21       In terms of support for the plaintiffs'

22  implied contract claims and the evidence

23  supporting the two terms that I talked about,

24  in-person classes and access to on-campus

25  class, access to on-campus facilities and

 1   services, there are, broadly speaking, three

 2   categories that support the plaintiffs'

 3   claims.

 4       Because the students selected classes,

 5   which the university itself described with

 6   words as taking place in-person on campus, in

 7   particular in the university's course catalogs

 8   and course confirmation schedules, those

 9   support the plaintiffs' implied contract

10   claim.

11       Two, because the students paid fees for

12   on-campus facilities and services, that the

13   university delineated with specific terms in

14   its billing statements, and because those

15   terms were further described in the

16   university's guidelines, those also support

17   plaintiffs' claims for an implied contract for

18   in-person classes and access to on-campus

19   facilities and services.

20       And three, because the university had,

21   year after year until March 2020, conducted

22   itself in accordance with such words and

23   practices, this court must hold that the --

24   must hold the university to account for the

25   words it used and for the conduct it engaged

 1   in.

 2       This case is not about the university's

 3   response being imprudent.  It's about the

 4   students who prepaid tuition and fees, not

 5   alone bearing the costs, the contractual costs

 6   of COVID-19 especially in the absence of a

 7   force majeure provision in the contract.

 8       The students are not claiming that the

 9   university acted imprudently in response to

10   COVID-19 in spring 2020, but the students are

11   claiming that, especially where they

12   contracted and paid in advance for in-person,

13   on-campus benefits, that the university did

14   not actually go on to provide in spring 2020.

15       The university cannot keep the entirety

16   of those prepaid monies, particularly since

17   the university, as the more sophisticated

18   contracting party, could have, but did not

19   include a force majeure provision that could

20   have protected the university from failures to

21   perform its end of the bargain.  One should

22   not be read into the contract now.

23       Any attempt by the university to now read

24   in such a force majeure provision, or its

25   functional equivalent by having language like

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 14 of 49   Page
PHAM v                                                  ID #:13118                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                          April 10, 2024

12

1   courses during a pandemic, is an impermissible

2   post hoc and run that cannot be countenanced,

3   because it is both unfair.  Why should the

4   prepaying students alone be --

5        THE COURT:  Mr. Swartzberg.

6        MR. SWARTZBERG:  Sure.

7        THE COURT:  You're a little beyond 10

8   minutes.

9        MR. SWARTZBERG:  I'll make one point and

10  then proceed to the rest.  The regents, in the

11  first paragraph of their response brief, say,

12  "The university had enacted policies that

13  preserve its broad discretion to provide

14  education while confronting social challenges

15  and disruptions: floods, earthquakes, power

16  outages, fires, pandemics, protests, and

17  illegal strikes."

18       But I can assure you that nowhere in the

19  record is there any reference to any

20  university policy preserving the university's

21  discretion in the face of floods, earthquakes,

22  power outages, fires, protests, strikes, or is

23  particularly relevant here, pandemics.

24       The university here, like the university

25  in Linder v. Occidental, could have reserved

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 15 of 49   Page
PHAM v                                          ID #:13119                              Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                        April 10, 2024

13

1  such a right but it did not.

2      THE COURT:  All right.  You are, Mr.

3  Cardozo.

4      MR. CARDOZO:  Thank you, Justice Baker.

5  May I please the court?  Ray Cardozo for the

6  regents.  If I could start with your initial

7  question, Justice Baker, about the theory of

8  the case, because I think it ties into why the

9  Berlanga v. University of San Francisco, who

10  is the case out of the first district, pegs

11  this analysis exactly correct.

12      Berlanga makes clear that this theory has

13  to meet all of the elements of a contract

14  case, whether it's express or applied.  They

15  both have to meet all the elements, and

16  they're just different ways of establishing

17  them.  And Berlanga puts its finger on the

18  fundamental problem they've never confronted,

19  either below or here in this court.  And

20  that's the essential meeting of the minds

21  element.

22      There are two things about the specific

23  promise requirement that Berlanga identifies

24  as President Kashmiri that they've never

25  grappled with.

14

```
 1        In order to have a meeting of the minds

 2   and have the university agreeing to what

 3   they're seeking or contending, the specific

 4   promise must be about what the university will

 5   do, not necessarily what it has done or so on.

 6   There must be a specific promise that says,

 7   this is what we will do.

 8        And this goes to your question, Justice

 9   Baker, it must be sufficiently definite so

10   that we have some terms we can enforce.  Now,

11   contrast that with Kashmiri, where you've got

12   both of those elements very clearly.  What we

13   will do is we will not raise your fees in the

14   professional degree program for the duration

15   of your employment.

16        They're specifically committing

17   themselves.  They're agreeing.  There's a

18   meeting of the minds.  We will not raise your

19   fees for the duration of employment.  And it

20   has the definiteness you can enforce, because

21   we're not having experts talking about market

22   price.  We're looking at what was the fee when

23   you enrolled and what you were charged.

24   That's it.  We're talking about --

25        THE COURT:  There's a lot of specifics in
```

15

1    this case, and I suspect we're going to have a

2    conversation about out implied promises and

3    how similar the promise is, if there were any,

4    in Berlanga to the materials in this case.

5        But I wonder if we might start with a

6    comment Mr. Swartzberg made at the outset of

7    his argument, which is if this case can be

8    thrown out at the demur stage, and I

9    understand we're all at a different place now,

10   and I suspect the university's probably got

11   all sorts of pandemic writers in its materials

12   that it sends to students now.

13       But assume that wasn't the case, right?

14   If there's no possibility of an implied-in-

15   fact contract, then even outside of a

16   pandemic, the university could have accepted

17   all of these tuition payments, believing that

18   the students thought they were going to get an

19   in-person, on-campus education, and then it

20   could just change its mind and say, no, we're

21   doing this all remotely, and your position

22   would seem to be, they have no remedy.  Tough.

23       MR. CARDOZO:  Absolutely not.  Because

24   remember, what we're talking about here is a

25   specific promise that's enforceable that you

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 18 of 49   Page
ID #:13122

PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

16

1    could hold them to.  If you don't have that,

2    you still have -- if you look at the Anderson

3    case, which started us down this line of

4    contractual, if there is no specific promise,

5    there's still implicit a promise against

6    arbitrary treatment.  And that's how they

7    analyzed it.

8        There wasn't a specific promise of the

9    level of Kashmiri.  If you're in the

10   generalized, you can't say the university

11   agreed to the specifics of what they're

12   contending.  Then you still have a review or

13   arbitrary conduct.  But they didn't even

14   allege that in this case because you couldn't.

15   You can't say what the university did was

16   arbitrary.

17       THE COURT:  I'm sorry.  I think I'm

18   getting lost.  A review for arbitrary conduct,

19   that might be some type of administrative

20   proceeding.

21       MR. CARDOZO:  No, no.  In Anderson, it

22   was conducted as a breach of contract implied

23   term, arbitrary conduct.  If you don't have

24   the specifics, that's what you're left with.

25       THE COURT:  So so long as the university

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 19 of 49   Page
ID #:13123
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

17

1   is not being arbitrary, they can go online?

2   So it's a differential review.  Put aside the

3   pandemic.  You believe that based on the

4   marketing materials that we have here, as well

5   as the course selection descriptions, that the

6   university could go online.

7        Our review for abuse of discretion is

8   pretty broad.  But you think that that is a

9   meeting of the minds.  The parties will agree

10  they can go online so long as it's not

11  arbitrary.

12       MR. CARDOZO:  Well, we can qualify that

13  further and say, you can't go online unless

14  there's a good reason that makes in person

15  difficult or impossible.  That could be

16  readiness and implied term based upon what has

17  happened.  But the specific promise that we

18  can't go online in the face of a pandemic,

19  that's a bridge too far.

20       THE COURT:  So impossibility is a

21  defense.  The existence of a contract is what

22  we're discussing here.  And I'm not sure I

23  understand your response, which I think is,

24  yes, we could go online, so long as we don't -

25  - so long as it's mandated by impossibility.

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 20 of 49   Page
ID #:13124
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

18

```
 1   But that can't be right, can it?  Because

 2   that's not an implied term.  That's a defense

 3   --

 4        MR. CARDOZO:  In another --

 5        THE COURT:  -- excusing performance.

 6        MR. CARDOZO:  In another case, you can

 7   apply the term that sets the line.  It could

 8   be set at arbitrary conduct.  It could be set

 9   somewhere beyond arbitrary conduct, to say

10   there has to be a reason.  But Berlanga is

11   correct that it can't be --

12        THE COURT:  I want to get to Berlanga,

13   and I know you want to get to Berlanga too.

14   But let me give you a more specific example

15   than the one I started with.  Let's say next

16   year the budget shortfall in California is far

17   greater than anticipated.

18        And at that point, all the students are

19   attending UC campuses and going to class and

20   everybody -- the regents sit down and they

21   say, you know what?  We have a huge shortfall

22   here and we just can't make it up.  We're not

23   getting the education funding that we

24   expected, and we think we can save money by

25   going all online.  We think that will be
```

1   cheaper for us.

2       And so they tell all the students that

3   paid their tuition, thinking that they were

4   getting an on-campus, in-person instruction,

5   we're moving this to remote learning until the

6   budget shortfall is closed.  Is there an

7   actionable, implied-in-fact contract in that

8   scenario?  Assuming all the other facts as

9   alleged in this case are the same?

10      MR. CARDOZO:  Again, because it's a

11  contract, you have to look at what

12  specifically the university committed to, and

13  you're going to get into all these disclaimers

14  whether university has specifically reserved

15  its discretion to cover a bunch of

16  eventualities, including especially about fees

17  and budget crises.

18      THE COURT:  I understand that's one of

19  the arguments that were made in the brief.

20  But when you talk about, we have to rely on

21  what the university has said.  Let me give you

22  some examples and assume these are the same in

23  my hypothetical.  UCLA says learning occurs

24  not only in the classroom, but through

25  engagement in campus life.

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 22 of 49   Page
ID #:13126
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

20

1      Santa Barbara talks about classroom

2  learning and undergraduate research in labs,

3  libraries, studios, and in the field.  UC

4  Irvine talks about independent research in

5  laboratories, field stories, participating in

6  writing workshops.

7      All these universities make statements in

8  these publications and marketing materials

9  that seem to say to people who are

10  contemplating enrolling, you're going to be on

11  campus when you're learning.

12      MR. CARDOZO:  And those are exactly the

13  kinds of statements that the University of San

14  Francisco made.

15      THE COURT:  They're not.  They're far

16  more specific.  The University of San

17  Francisco statements in Berlanga are far more

18  general.  It's like you're going to develop

19  amazing friendships.  That's not a

20  representation of anything happening on

21  campus.  You can make friends online.

22      MR. CARDOZO:  But there Were also

23  specific statements --

24      THE COURT:  Like what?

25      MR. CARDOZO:  -- in Berlanga about things

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 23 of 49   Page
ID #:13127

PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

21

 1    that were going to happen on campus.

 2        THE COURT:  I think the best you're going

 3    to find is the university president saying, "I

 4    look forward to welcoming you on campus."

 5    Doesn't say when.  Sort of aspirational.

 6    That's far different than you're going to be

 7    engaged in classroom learning and going to be

 8    researching in laboratories on our campus.

 9        MR. CARDOZO:  Well, in explaining why the

10    court thought agreed with the Randall case,

11    where documents identifying campus locations,

12    lab components of classes, attendance policies

13    and in-campus credit requirement were not

14    sufficient.

15        THE COURT:  Yeah, that's the special

16    course catalog material.  There's two

17    categories of things that are involved in this

18    case, maybe three.  One is the course catalog

19    type materials.  Like here's where your class

20    is going to be.  It's going to be in Anderson

21    Hall, room 202.

22        And then there are a separate category of

23    what I might refer to as the marketing

24    materials.  And those were the statements,

25    some of which I was reading you a moment ago,

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 24 of 49   Page
PHAM v                                    ID #:13128                          Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                   April 10, 2024

22

 1   about how the UC system has advertised itself

 2   to students who are contemplating enrollment.

 3        And so I understand that there are these

 4   course catalog things that some of the cases

 5   say, well, you know, we don't think that's

 6   enough.  But at least in terms of the

 7   marketing statements, Berlanga looks to me to

 8   be far less specific than some of the

 9   statements that are made by the universities

10   that are your clients.

11        MR. CARDOZO:  If that's the case, and I

12   actually not sure that's the case --

13        THE COURT:  Well, then tell me why it's

14   not the case.  You're not going to say, well,

15   I'm not sure that's the case, but I'm going to

16   move on.  We've both read Berlanga.  You tell

17   me where I'm wrong.

18        MR. CARDOZO:  I'll accept the

19   proposition.  They did point to the custom and

20   practice, the course syllabi representing the

21   physical location, the course descriptions

22   stating the physical locations, the times of

23   in-person, and UCSF represented itself as a

24   residential university offering in-person

25   instruction in on-campus facilities.

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 25 of 49   Page
ID #:13129
PHAM v                                                                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                               April 10, 2024

23

1           I don't see a material difference in

2    specificity, but I would point the court to

3    the three things Berlanga said why these don't

4    qualify, which would fully apply to the

5    statements you're talking about.

6           This lack of a definiteness as to how can

7    you enforce this contract?  What does it mean

8    calling in experts to testify?  That's not

9    something the university agreed to.  That's

10   something you -- problem you don't have in

11   Kashmiri but that you do have here.

12          Berlanga also points out the statements

13   in Kashmiri were specifically tied to the fees

14   they were charged.  There's no link between

15   those statements and the fees as in a promise

16   of you will get these things for payment of

17   fees.  The lack of the tie in the fees and the

18   distinction between some in person as happened

19   at the beginning of the semester before the

20   pandemic and exclusively in person isn't

21   fleshed out in any of those statements.

22          So all three elements of why Berlanga

23   finds these kinds of statements don't qualify

24   fully apply here.  There's simply not a term

25   that you can enforce within the meeting of the

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 26 of 49   Page
ID #:13130
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
Audio Transcription
April 10, 2024

24

```
 1   minds requirements of California law, which

 2   was the heart of the prolonged analysis.

 3   There's nothing tied to fees, any quantum of

 4   in-person experience.

 5       THE COURT:  Well, I'm listening to the

 6   argument you're making, but I'm telling you

 7   candidly that while I'm listening to your

 8   argument, I'm also looking at Berlanga because

 9   you made a very specific representation about

10   what the marketing materials in that case were

11   and having referred to in-person instruction.

12   And I want to see if that's correct, but

13   please continue.

14       MR. CARDOZO:  So, appreciating

15   differences in the statements, the three

16   elements of what Berlanga identifies as

17   essential to meet the specific promise

18   requirement and separate it from a general

19   declaration or expectancy.

20       THE COURT:  Well, hold on a second.

21   Before we, we leave Berlanga, because I think

22   this point is important.  I want to see if we

23   are talking past each other or if we agree on

24   something.  And I'm looking at page 84 of the

25   Berlanga opinion and the court is contrasting
```

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 27 of 49   Page
ID #:13131
PHAM v                                                                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                April 10, 2024

25

1    the statements made by the university in that

2    case with the statements that were made in

3    Kashmiri.

4          And it says, "Appellants rely on the

5    following evidence to assert a contractual

6    term for in-person instruction.  One,

7    statements about joining a dynamic student

8    body, developing amazing friendships, being

9    surrounded by the best city ever, and join in

10   one of our admitted students' days.  And two,

11   documents referencing the physical locations

12   of classes."

13         So I was asking you earlier only about

14   category one.  These are what I'm calling

15   marketing materials.  I'm not talking about

16   the course catalogs and the like.  And as I

17   look at that evidence that the plaintiffs that

18   we're relying on in that case and talking

19   about developing amazing friendships, for

20   example, that looks extremely general and

21   looks like it has nothing to do with in person

22   instruction.

23         And when I said that, you looked at the

24   case and you found something that you

25   considered more specific.  So I've told you

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 28 of 49   Page
ID #:13132
PHAM v                                                                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                April 10, 2024

26

 1   what I looked at.  Now you tell me the page

 2   that you looked at and the statement that

 3   you're relying on.  That way we can make sure

 4   that we're not talking past each other.

 5        MR. CARDOZO:  And I'll point you to two

 6   things.  First, the rest of the page that

 7   follows, which is the legal analysis elements

 8   that I was referring to and then what I was

 9   referring to earlier.  And I'm sorry I only

10   have the slip opinion.  It's pages 3 through

11   4.  About a page and a half before the end of

12   the discussions, the beginning of the

13   discussion session, and the statement of

14   facts.

15        They first recite, "The dynamic best city

16   ever more general statements."  And then it

17   says, "Appellants also argued an implied-in-

18   fact contract was formed based on custom, the

19   165-year history, the course syllabi, course

20   descriptions, the physical location and

21   timings."  And UCSF represented itself as a

22   residential --

23        THE COURT:  No, no, no.  That's a

24   misreading of the case.  Look more closely.

25   There's not a representation by the university

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 29 of 49   Page
ID #:13133
PHAM v                                                                          Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                     April 10, 2024

27

1   in that case that it is a residential

2   university offering an in-person instruction

3   on-campus facilities.  That's a quote of the

4   appellants argument.

5        MR. CARDOZO:  I got it.  I got it.  I

6   follow.  It followed all the reference to

7   other things that I misread it.  You're right,

8   Your Honor.

9        THE COURT:  So now that we're on the same

10  page, do we agree that at least as to the

11  marketing materials, some of the statements

12  that were made by your clients, your client

13  schools in this case are more specific than

14  the statements that were in Berlanga?  Do we

15  agree on that?

16       MR. CARDOZO:  We agree on that.

17       THE COURT:  All right.

18       MR. CARDOZO:  But the three things that

19  Berlanga says count are all not present here.

20  Right after the passage you read, Your Honor,

21  notes, "Kashmiri specifically mentioned fees."

22  So that statement is tied to fees.  "Kashmiri

23  provided specific details regarding the scope

24  of how and when the fee increases would be

25  applied."

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 30 of 49   Page
ID #:13134
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
Audio Transcription
April 10, 2024

28

```
 1        We're entirely missing that here.  We've

 2   got a situation where they must do --

 3        THE COURT:  On the fees, I thought there

 4   was something in the record about the -- there

 5   were descriptions about what the fees were

 6   for, including transportation for on-campus

 7   activities.

 8        MR. CARDOZO:  So this tuition and then

 9   this --

10        THE COURT:  So I'm focusing just on fees.

11        MR. CARDOZO:  On just the campus-based

12   fees, there are general descriptions about

13   what they're going to go fund.  But what the

14   trial court found correctly, none of this

15   promises any specific quantum of specific

16   service.  The money is going to be spent on

17   transportation is basically what it says.  The

18   money is going to be spent on these buildings

19   is what it says.

20        It's not you will get -- you know, like

21   when you join up for a gym, you will get

22   access on this quantum kind of thing.  There

23   wasn't anything like that with regard to any

24   of the fee descriptions.  They're all general

25   descriptions of what the fee would go to fund.
```

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 31 of 49   Page
ID #:13135
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
Audio Transcription
April 10, 2024

29

1        The scope of how and when the fee

2   increases would be applied.  That's the

3   problem in this case.  You've got a pandemic

4   that says you must go online.  And then what

5   has the university agreed to in terms of a

6   specific quantum, how and when, so on.

7        In Kashmiri, they said very explicitly

8   what they were committing to and there was a

9   term that could be enforced.  There's no

10  precedent for what they're trying to do with

11  having experts come in and say how much this

12  is worth.  You don't do that in a contract

13  case.  It has to be in the agreement.

14       If it's not in the agreement, this is

15  where Berlanga has focused on the meeting of

16  the minds is really the most important

17  principle in the case.  The university simply

18  hasn't agreed to any of this.  It's the

19  problem.

20       THE COURT:  Mr. Cardozo, let me tell you,

21  I wanted to make sure you could give a fulsome

22  response to Justice Kim's question, but you're

23  about five minutes over your 15 minutes

24  estimate, so I've asked you a lot of

25  questions.  If you want to take a minute or

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 32 of 49   Page
PHAM v                                              ID #:13136                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                        April 10, 2024

30

1  two to mention anything you may have missed,

2  you can do that.  You're the last case of the

3  morning.  But otherwise you should start to

4  bring this to a conclusion.

5      MR. CARDOZO:  I would conclude by -- my

6  loaded friend pointed out this wasn't

7  addressed or contemplated in the contract.

8  That's what he said.  That's a fatal flaw.  An

9  agreement is something that is addressed or

10  contemplated.  It's something the university

11  has agreed to.

12      The idea that the students alone are

13  bearing this cost.  They're in a taxpayer

14  subsidized program where they're paying less

15  than what it costs for them to enroll.  The

16  university is already -- the tuition bakes

17  that in, and then something happens that's

18  extremely costly.  It's a calamity.  It's a

19  loss that's all the way around.  It's

20  devastating to the university.  Billions of

21  dollars of deficits.

22      If they haven't agreed to what's being

23  proposed, implied contract theory fails as a

24  matter of law.  The administrative process for

25  campus-based fees is what you get when you

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 33 of 49    Page
PHAM v                                    ID #:13137                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                          April 10, 2024

31

1   don't have an implied contract.  The

2   university reserve discretion to address these

3   issues responsibly.  They try to do that, but

4   to hold them to a contract, you have to have

5   that specific promise.  It's with the terms

6   it's definite to enforce, and you just don't

7   have that here.

8        THE COURT:  Thank you for your argument.

9   You have some time for rebuttal.

10       MR. SWARTZBERG:  Thank you.  I want to be

11  attentive to the time remaining, but I do want

12  to try to get to some of the points that were

13  raised.  First, on the assertion that I said

14  that this term or this issue was not addressed

15  in the contract, I can check the transcript.

16  I don't believe I made that representation.

17  Second --

18       THE COURT:  I don't think the case is

19  going to turn one way or the other whether you

20  did or whether you didn't.

21       MR. SWARTZBERG:  Second, with regard to

22  Judge Kim's question about locating specific

23  promises in fee descriptions, I direct the

24  court to paragraphs 58 and 59 of the first

25  amended complaint.  There, there are the line

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 34 of 49   Page
ID #:13138

PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

32

1    items that are set forth within the university

2    catalogs that list the descriptions of

3    approximately seven fees, I want to say.

4        Those line items are then repeated in the

5    billing statements that are included as

6    exhibits, I believe D and F, to the first

7    amended complaint.  And then in paragraph 59,

8    it goes through university guidelines that are

9    available to students that then take each of

10   those line items and provide a description.

11       On that issue, I believe I heard counsel

12   say this is sort of like a gym where you sign

13   up, and it -- I'm trying to paraphrase here --

14   it says you have access to the weight room and

15   the sauna and things like --

16       I don't know about my 24-hour fitness

17   membership or other people's equinox

18   membership, whatever.  Gym is your choice.  I

19   don't think the contracts delineate each

20   machine you're going to get to use.  They

21   contemplate that you have access to the gym,

22   and that's exactly what we have here.  Access

23   to the rec center, access to the student

24   union, access to transportation.  So that's my

25   point on the fee.

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 35 of 49   Page
ID #:13139

PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

33

1       Then I'm going to try to get a couple of

2   points.  Maybe I can keep them to five or six,

3   which is one, I don't know where this standard

4   of arbitrariness comes in.  I don't think it

5   was briefed.  I'm not aware of a separate

6   standard that would hold the university to an

7   arbitrariness standard on whether, if and when

8   it close classes tomorrow.

9       Second, or this group of issues, I think,

10  relates to Berlanga and the procedural posture

11  of this case.  I think a lot of the questions

12  raised by the court, some of the arguments

13  made by counsel about reservations of rights,

14  all relate to cases that would have a more

15  developed factual record.

16      And that's one of the main issues that

17  I'd like to get to in Berlanga, because that

18  case, it was decided on summary judgment,

19  where there was a further deliberation of the

20  factual record in support of the plaintiff's

21  allegations or arguments against them.

22      And then the other point is, counsel

23  talked about, I believe it was in the Berlanga

24  decision, saying that there's not, "Not a term

25  that reflects the meeting of the minds, which

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 36 of 49   Page
ID #:13140
PHAM v                                                                    Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                               April 10, 2024

34

1   is a requirement."  That statement and a lot

2   of the argument made by the university in this

3   briefing is essentially trying to impress upon

4   this case what is functionally the equivalent

5   of an express written contract standard.

6        If we take that kind of a standard, then

7   we eviscerate Civil Code 1621 and the case law

8   allowing for implied contracts.  It can't be

9   that high of a standard.  We only need the

10  specific promise standard as articulated in

11  Kashmiri.  And the allegations here fit

12  squarely within that.

13       In Kashmiri, there were actually two fees

14  at issue: a professional development fee and

15  then I want to say it's an educational fee.

16  And the court said the professional

17  development fee needed to stay the same

18  throughout enrollment because it was clear

19  that that was provided.

20       The educational fee, there wasn't as

21  strong a representation, but there was a

22  listing of the educational fee in the billing

23  statements that went out.  And then after the

24  billing statements went out and the students

25  paid them, the university tried to change the

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 37 of 49    Page ID #:13141
PHAM v
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
Audio Transcription
April 10, 2024

35

1    fee.

2        And the Kashmiri court made a distinction

3    between those types of fees and said the

4    promise wasn't as strong as the latter one but

5    at least for this semester, when a student is

6    looking at a fee and paying it and has already

7    paid it, you can't change it after the fact.

8    And that's what we have here for in-person

9    classes, campus access, at least for spring

10   2020, or especially for spring 2020.

11       The university, in addition to the

12   conduct and the other allegations in the

13   complaint, like the brochures, the marketing

14   brochures, the university listed tuition.

15   They listed these students for that semester,

16   went through the registration process, and

17   picked in-person classes and paid fees.

18       So, especially for the spring 2020, these

19   types of allegations fit squarely within

20   Kashmiri.  Not just the four-year enrollment

21   promise, but the each semester promise.

22       And then, finally, if the court will

23   indulge me, I'd like to have a short overview

24   of why Berlanga does not support the

25   university's demur to the plaintiffs',

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 38 of 49   Page
PHAM v                                        ID #:13142                              Audio Transcription
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA                                April 10, 2024

36

1   appellants' claims.

2       THE COURT:  Let me just say, Counselor,

3   you've now used the full five minutes, even

4   having gone over in your opening argument.

5   And you can go a little further, because your

6   friend on the other side also went a little

7   further, but not much further.

8       MR. SWARTZBERG:  I'll try to use my own

9   clock or cut me off at 60 seconds.  Is that

10  going to work?  First, Berlanga is

11  procedurally in opposite.  It was an appeal

12  from a summary judgment.  Thus, unlike here,

13  the determinations as to facts supporting the

14  students' claims were based on a fully

15  developed record, not in this case.

16      And that record included testimony from

17  the plaintiff saying that they did not

18  interpret the admission letter, the primary

19  basis for their claim, as promising in person

20  instruction during a health and safety

21  emergency.

22      Second, Berlanga is factually in

23  opposite.  I believe Your Honor was talking

24  about this.  The primary thrust of the

25  Berlanga plaintiffs' claim was based on an

37

1   express contract and an admission letter,

2   where I think Your Honor pointed out that the

3   strongest assertion there was, I personally

4   look forward to greeting you on campus.

5       Here, the appellants alleged an implied

6   contract formed at the time of enrollment and

7   alternately based on -- also, the Berlanga

8   plaintiffs only alleged a contract based on

9   the four-year, assuming it's a four-year

10  undergraduate period, a four-year

11  undergraduate period.

12      Here, the UC students, the plaintiffs,

13  appellants, allege both an enrollment contract

14  and, alternately, a contract that takes place

15  every semester as the student registers for

16  classes.  So those additional representations

17  are important on a semester-by-semester or

18  academic term by academic term basis.

19      THE COURT:  All right.  Counsel, your

20  rebuttal time is concluded.  Thank you for

21  your argument.

22      MR. SWARTZBERG:  Thank you.

23      THE COURT:  The cause is submitted and

24  will be in recess until this afternoon.

25

38

1        CERTIFICATE OF TRANSCRIPTIONIST

2

3        I, ERICA PARADYSZ, do hereby certify:

4

5        That said audio transcription is a true

6    record as reported by me, a disinterested

7    person.

8

9        I further certify that I am not

10   interested in the outcome of said action, nor

11   connected with, nor related to any of the

12   parties in said action, nor to their

13   respective counsel.

14

15       IN WITNESS THEREOF, I have hereunto set

16   my hand this 15th day of April, 2024.

17

18

19   _____
          Erica Paradysz
20

21

22

23

24

25

Case 2:20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 41 of 49   Page
ID #:10145
RHAM20-cv-04066-DMG-PVC   Document 283-2   Filed 04/15/24   Page 41 of Page
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Audio Transcription
April 10, 2024

**1**

**10**  2:8 12:7
**15**  29:23
**1621**  34:7
**165-year**  26:19

**2**

**202**  21:21
**2020**  4:9 10:21 11:10,14 35:10,18
**24-hour**  32:16

**3**

**3**  26:10

**4**

**4**  26:11
**44**  6:3

**5**

**58**  31:24
**59**  31:24 32:7

**6**

**60**  36:9

**8**

**84**  24:24

**A**

**absence**  9:4 11:6
**absent**  3:1
**Absolutely**  15:23
**abuse**  17:7
**academic**  4:9 37:18
**accept**  22:18
**accepted**  2:22 15:16

**access**  3:4 4:4,18,24 9:24,25 10:18 28:22 32:14,21,22,23,24 35:9
**accordance**  10:22
**account**  10:24
**acted**  11:9
**actionable**  19:7
**activities**  4:5 28:7
**add**  5:10
**addition**  35:11
**additional**  5:19 37:16
**address**  8:2 31:2
**addressed**  6:18 30:7,9 31:14
**adjustment**  4:11
**administrative**  16:19 30:24
**admission**  36:18 37:1
**admitted**  25:10
**advance**  11:12
**advertised**  22:1
**affirmative**  5:11 8:2
**afternoon**  37:24
**agree**  17:9 24:23 27:10,15,16
**agreed**  16:11 21:10 23:9 29:5,18 30:11,22
**agreeing**  14:2,17
**agreement**  29:13,14 30:9
**ahead**  2:7
**allegation**  7:8
**allegations**  6:11 33:21 34:11 35:12, 19
**allege**  16:14 37:13
**alleged**  7:7 19:9 37:5,8
**allowing**  34:8
**alternate**  7:11
**alternately**  37:7,14
**amazing**  20:19 25:8,19
**amended**  6:4 31:25 32:7
**amount**  4:6 5:5,6,7,17,18
**analysis**  13:11 24:2 26:7
**analyzed**  16:7
**Anderson**  16:2,21 21:20

**answering**  8:15
**anticipated**  2:6 18:17
**appeal**  4:1 36:11
**appellants**  25:4 26:17 27:4 37:5,13
**appellants'**  36:1
**applied**  13:14 27:25 29:2
**apply**  18:7 23:4,24
**appreciates**  3:21
**appreciating**  24:14
**approximately**  32:3
**arbitrariness**  33:4,7
**arbitrary**  16:6,13,16,18,23 17:1,11 18:8,9
**argued**  26:17
**argument**  15:7 24:6,8 27:4 31:8 34:2 36:4 37:21
**arguments**  19:19 33:12,21
**arise**  6:23
**articulated**  34:10
**aspirational**  21:5
**assert**  25:5
**assertion**  31:13 37:3
**assume**  15:13 19:22
**assuming**  19:8 37:9
**assure**  12:18
**attempt**  11:23
**attendance**  21:12
**attending**  18:19
**attentive**  31:11
**aware**  33:5

**B**

**B320813**  2:2
**back**  3:13,14
**background**  3:8,17 4:25
**Baker**  13:4,7 14:9
**bakes**  30:16
**Barbara**  20:1
**bargain**  11:21

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 42 of 49    Page
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA    ID #:15146

Audio Transcription
April 10, 2024

**based** 4:11 7:6 17:3,16 26:18 36:14, 25 37:7,8

**basically** 28:17

**basis** 36:19 37:18

**bearing** 11:5 30:13

**beginning** 23:19 26:12

**believing** 15:17

**benefits** 11:13

**Berlanga** 13:9,12,17,23 15:4 18:10, 12,13 20:17,25 22:7,16 23:3,12,22 24:8,16,21,25 27:14,19 29:15 33:10, 17,23 35:24 36:10,22,25 37:7

**billing** 10:14 32:5 34:22,24

**Billions** 30:20

**biology** 9:7,17

**body** 25:8

**breach** 5:16 6:25 7:6 16:22

**breached** 7:9,12,17

**bridge** 17:19

**briefed** 7:17 33:5

**briefing** 34:3

**bring** 7:23 30:4

**broad** 12:13 17:8

**broadly** 10:1

**brochures** 35:13,14

**brought** 6:16 7:10

**budget** 18:16 19:6,17

**buildings** 28:18

**bunch** 19:15

**C**

**calamity** 30:18

**calculus** 9:8,20

**California** 18:16 24:1

**calling** 23:8 25:14

**campus** 2:14,18 3:4 4:5 6:13 10:6 19:25 20:11,21 21:1,4,8,11 35:9 37:4

**campus-based** 28:11 30:25

**campuses** 3:3 4:24 18:19

**candidly** 24:7

**Cardozo** 13:3,4,5 15:23 16:21 17:12 18:4,6 19:10 20:12,22,25 21:9 22:11, 18 24:14 26:5 27:5,16,18 28:8,11 29:20 30:5

**case** 3:24,25 6:8 8:1 9:9 11:2 13:8, 10,14 15:1,4,7,13 16:3,14 18:6 19:9 21:10,18 22:11,12,14,15 24:10 25:2, 18,24 26:24 27:1,13 29:3,13,17 30:2 31:18 33:11,18 34:4,7 36:15

**cases** 4:14 22:4 33:14

**catalog** 9:10 21:16,18 22:4

**catalogs** 9:14 10:7 25:16 32:2

**categories** 10:2 21:17

**category** 21:22 25:14

**center** 32:23

**challenges** 12:14

**change** 4:17 15:20 34:25 35:7

**charged** 14:23 23:14

**cheaper** 19:1

**check** 31:15

**choice** 32:18

**city** 25:9 26:15

**Civil** 34:7

**claim** 10:10 36:19,25

**claiming** 11:8,11

**claims** 9:22 10:3,17 36:1,14

**class** 9:12,17,19,25 18:19 21:19

**class's** 9:10

**classes** 2:14,17 3:2 4:4,20,23 6:1 9:3,7,24 10:4,18 21:12 25:12 33:8 35:9,17 37:16

**classroom** 19:24 20:1 21:7

**clear** 13:12 34:18

**client** 27:12

**clients** 22:10 27:12

**clock** 36:9

**close** 33:8

**closed** 19:6

**closely** 26:24

**Code** 34:7

**comment** 15:6

**committed** 19:12

**committing** 14:16 29:8

**complaint** 3:11 6:4 7:7 31:25 32:7 35:13

**completely** 3:4

**component** 3:19

**components** 21:12

**concede** 8:5

**conclude** 30:5

**concluded** 37:20

**conclusion** 30:4

**conduct** 2:12,15,23 10:25 16:13,18, 23 18:8,9 35:12

**conducted** 10:21 16:22

**confirmation** 9:11,15 10:8

**confronted** 13:18

**confronting** 12:14

**consequences** 2:12 7:18

**considered** 25:25

**constituted** 7:20

**contemplate** 32:21

**contemplated** 6:19 30:7,10

**contemplating** 20:10 22:2

**contending** 14:3 16:12

**context** 3:24

**continue** 24:13

**contract** 2:11,21 4:2,3 6:17,19,20 7:6 8:8 9:22 10:9,17 11:7,22 13:13 15:15 16:22 17:21 19:7,11 23:7 26:18 29:12 30:7,23 31:1,4,15 34:5 37:1,6, 8,13,14

**contracted** 11:12

**contracting** 11:18

**contracts** 32:19 34:8

**contractual** 11:5 16:4 25:5

**contrast** 14:11

**contrasting** 24:25

**conversation** 15:2

**correct** 6:25 13:11 18:11 24:12

**correctly** 28:14

**cost** 30:13

**costly** 30:18

**costs** 11:5 30:15

**counsel** 4:13 32:11 33:13,22 37:19

**Counselor** 36:2

**count** 27:19

**countenanced** 12:2

**couple** 33:1

**courses** 12:1

**court** 2:1,5,9,11 3:6,15,21 5:3,21
6:24 7:5,10,22 8:14,17,19,25 10:23
12:5,7 13:2,5,19 14:25 16:17,25
17:20 18:5,12 19:18 20:15,24 21:2,
10,15 22:13 23:2 24:5,20,25 26:23
27:9,17 28:3,10,14 29:20 31:8,18,24
33:12 34:16 35:2,22 36:2 37:19,23

**court's** 2:19

**cover** 19:15

**COVID** 4:8

**COVID-19** 11:6,10

**credence** 2:15

**credit** 21:13

**crises** 19:17

**crisis** 3:1

**custom** 22:19 26:18

**cut** 2:7 36:9

                              **D**

**damages** 3:22,23 8:10,12

**days** 25:10

**decided** 5:22 33:18

**decision** 2:25 33:24

**declaration** 24:19

**declaring** 9:3,6

**defend** 7:24

**defense** 5:12 17:21 18:2

**defenses** 5:21 8:2

**deficits** 30:21

**definite** 14:9 31:6

**definiteness** 14:20 23:6

**degree** 2:14,17 14:14

**deliberation** 33:19

**delineate** 32:19

**delineated** 10:13

**delivered** 4:12

**demur** 3:21 5:20 7:16,23 8:20,22
15:8 35:25

**describe** 2:13 3:10

**description** 32:10

**descriptions** 17:5 22:21 26:20 28:5,
12,24,25 31:23 32:2

**details** 3:7 27:23

**determination** 3:22

**determinations** 36:13

**determines** 6:7

**devastating** 30:20

**develop** 20:18

**developed** 33:15 36:15

**developing** 25:8,19

**development** 8:4 34:14,17

**difference** 23:1

**differences** 24:15

**differential** 5:5,7 17:2

**difficult** 17:15

**direct** 31:23

**disclaimers** 19:13

**discretion** 12:13,21 17:7 19:15 31:2

**discussing** 17:22

**discussion** 26:13

**discussions** 26:12

**dispute** 3:7 5:15,24,25 6:11,12,13

**disregarded** 2:23

**disruptions** 12:15

**distinction** 23:18 35:2

**district** 13:10

**doctrines** 6:21

**documents** 21:11 25:11

**dollar** 4:6

**dollars** 30:21

**due** 6:2,16

**duration** 14:14,19

**dynamic** 25:7 26:15

                              **E**

**earlier** 8:13 25:13 26:9

**earthquakes** 12:15,21

**education** 12:14 15:19 18:23

**educational** 34:15,20,22

**element** 13:21

**elements** 13:13,15 14:12 23:22
24:16 26:7

**eliminating** 3:4

**emergency** 36:21

**employment** 14:15,19

**enacted** 12:12

**end** 11:21 26:11

**enforce** 14:10,20 23:7,25 31:6

**enforceable** 15:25

**enforced** 29:9

**engaged** 2:16 10:25 21:7

**engagement** 19:25

**enrichment** 7:4 8:11

**enroll** 30:15

**enrolled** 9:7 14:23

**enrolling** 20:10

**enrollment** 22:2 34:18 35:20 37:6,13

**entirety** 11:15

**entitled** 5:18 8:9

**equinox** 32:17

**equivalent** 11:25 34:4

**essential** 13:20 24:17

**essentially** 34:3

**establishing** 13:16

**estimate** 29:24

**eventualities** 19:16

**evidence** 5:15 9:22 25:5,17

**eviscerate** 34:7

**examples** 19:22

**exclusively** 23:20

**excused** 8:8

**excuses** 6:24,25 7:2

**excusing** 18:5

**exhibits** 32:6

**existence** 17:21

**expect** 9:16,18

**expectancy** 24:19

**expected** 18:24

**experience** 24:4

**expert** 4:14

**experts** 3:23 14:21 23:8 29:11

**explaining** 21:9

**explicitly** 29:7

**express** 13:14 34:5 37:1

**extremely** 25:20 30:18

---

### F

**face** 12:21 17:18

**facilities** 9:25 10:12,19 22:25 27:3

**facility** 3:5

**fact** 5:23 15:15 26:18 35:7

**facts** 19:8 26:14 36:13

**factual** 8:4 33:15,20

**factually** 36:22

**fails** 30:23

**failure** 5:24 6:1

**failures** 11:20

**fatal** 30:8

**fee** 14:22 27:24 28:24,25 29:1 31:23
32:25 34:14,15,17,20,22 35:1,6

**fees** 10:11 11:4 14:13,19 19:16
23:13,15,17 24:3 27:21,22 28:3,5,10,
12 30:25 32:3 34:13 35:3,17

**field** 20:3,5

**finally** 35:22

**find** 21:3

**finds** 23:23

**finger** 13:17

**fires** 12:16,22

**fit** 34:11 35:19

**fitness** 32:16

**flag** 2:8

**flaw** 30:8

**fleshed** 23:21

**floods** 12:15,21

**focused** 29:15

**focusing** 28:10

**follow** 27:6

**force** 11:7,19,24

**format** 3:2

**formed** 26:18 37:6

**forward** 5:14 21:4 37:4

**found** 25:24 28:14

**four-year** 35:20 37:9,10

**Francisco** 13:9 20:14,17

**friend** 30:6 36:6

**friends** 20:21

**friendships** 20:19 25:8,19

**full** 36:3

**fully** 23:4,24 36:14

**fulsome** 29:21

**functional** 11:25

**functionally** 34:4

**fund** 28:13,25

**fundamental** 13:18

**funding** 18:23

---

### G

**general** 20:18 24:18 25:20 26:16
28:12,24

**generalized** 16:10

**give** 3:17 8:7 18:14 19:21 29:21

**good** 2:4,5,10 17:14

**government** 6:14,16 7:19 8:6

**grappled** 13:25

**greater** 18:17

**greeting** 37:4

**group** 33:9

**guidelines** 10:16 32:8

---

**gym** 28:21 32:12,18,21

---

### H

**half** 26:11

**Hall** 21:21

**happen** 21:1

**happened** 6:12 17:17 23:18

**happening** 20:20

**health** 36:20

**heard** 32:11

**heart** 24:2

**high** 34:9

**history** 26:19

**hoc** 12:2

**hold** 10:23,24 16:1 24:20 31:4 33:6

**Honor** 7:21 27:8,20 36:23 37:2

**hope** 5:1

**huge** 18:21

**hypothetical** 19:23

---

### I

**idea** 30:12

**identification** 9:9,12

**identifies** 13:23 24:16

**identifying** 21:11

**illegal** 12:17

**impact** 6:15

**impermissible** 12:1

**implicit** 16:5

**implied** 3:25 4:2,3 6:19 7:6 9:22
10:9,17 15:2 16:22 17:16 18:2 30:23
31:1 34:8 37:5

**implied-in-** 15:14 26:17

**implied-in-fact** 19:7

**important** 6:6 24:22 29:16 37:17

**impossibility** 5:13 6:22,24 7:11,14,
20 17:20,25

**impossible** 8:7 17:15

**impracticability** 6:22

**impress** 34:3

**improper** 7:15,22

**imprudent** 11:3

**imprudently** 11:9

**in-campus** 21:13

**in-person** 4:4,18,20 6:1 9:24 10:6,18
11:12 15:19 19:4 22:23,24 24:4,11
25:6 27:2 35:8,17

**include** 11:19

**included** 6:10 32:5 36:16

**includes** 4:3

**including** 6:21 19:16 28:6

**incorrectly** 7:10

**increases** 27:24 29:2

**independent** 20:4

**indulge** 35:23

**infringe** 4:22

**initial** 13:6

**instance** 7:23

**instruction** 9:8 19:4 22:25 24:11
25:6,22 27:2 36:20

**interpret** 36:18

**interrupted** 5:9

**involved** 21:17

**Irvine** 20:4

**issue** 7:5,10,17 31:14 32:11 34:14

**issues** 31:3 33:9,16

**items** 32:1,4,10

---

**J**

**join** 25:9 28:21

**joining** 25:7

**Judge** 31:22

**judgment** 5:22 33:18 36:12

**jurisprudence** 6:21

**Justice** 13:4,7 14:8 29:22

---

**K**

**Kashmiri** 13:24 14:11 16:9 23:11,13
25:3 27:21,22 29:7 34:11,13 35:2,20

**Kim's** 29:22 31:22

**kind** 28:22 34:6

**kinds** 20:13 23:23

---

**L**

**lab** 21:12

**laboratories** 20:5 21:8

**labs** 20:2

**lack** 23:6,17

**language** 11:25

**law** 2:11 24:1 30:24 34:7

**learning** 19:5,23 20:2,11 21:7

**leave** 24:21

**left** 16:24

**legal** 26:7

**letter** 36:18 37:1

**level** 16:9

**libraries** 20:3

**life** 2:14,18 19:25

**limitation** 7:25

**limited** 4:23

**Linder** 12:25

**link** 23:14

**list** 32:2

**listed** 35:14,15

**listening** 24:5,7

**listing** 34:22

**loaded** 30:6

**locating** 31:22

**location** 22:21 26:20

**locations** 21:11 22:22 25:11

**long** 16:25 17:10,24,25

**looked** 25:23 26:1,2

**loss** 30:19

**lost** 16:18

**lot** 14:25 29:24 33:11 34:1

---

**M**

**machine** 32:20

**made** 15:6 19:19 20:14 22:9 24:9
25:1,2 27:12 31:16 33:13 34:2 35:2

**main** 33:16

**majeure** 11:7,19,24

**make** 8:14 12:9 18:22 20:7,21 26:3
29:21

**makes** 13:12 17:14

**making** 2:25 24:6

**mandated** 17:25

**March** 10:21

**market** 4:15,16,19 14:21

**marketing** 17:4 20:8 21:23 22:7
24:10 25:15 27:11 35:13

**material** 21:16 23:1

**materials** 15:4,11 17:4 20:8 21:19,
24 24:10 25:15 27:11

**matter** 2:1 9:10 30:24

**meaning** 2:12

**measure** 8:10

**measures** 8:13

**meet** 24:17

**meet all** 13:13,15

**meeting** 13:20 14:1,18 17:9 23:25
29:15 33:25

**membership** 32:17,18

**mention** 30:1

**mentioned** 27:21

**mind** 15:20

**minds** 13:20 14:1,18 17:9 24:1 29:16
33:25

**minute** 29:25

**minutes** 2:8 12:8 29:23 36:3

**misread** 27:7

**misreading** 26:24

**missed** 30:1

**missing** 28:1

**moment** 3:10 21:25

**money** 18:24 28:16,18

**monies** 11:16

**morning** 2:2,4,5,10 30:3

**move** 22:16

**moving** 19:5

**N**

**necessarily** 14:5
**needed** 34:17
**notes** 27:21
**nuanced** 6:6

**O**

**Occidental** 12:25
**occurs** 19:23
**offering** 22:24 27:2
**on-** 4:4
**on-campus** 4:18,21 9:24,25 10:12,
   18 11:13 15:19 19:4 22:25 27:3 28:6
**online** 3:2 4:23 9:4,13,20 17:1,6,10,
   13,18,24 18:25 20:21 29:4
**opening** 36:4
**opinion** 24:25 26:10
**opposite** 36:11,23
**order** 2:19 6:16 14:1
**orders** 6:14 7:19 8:6
**Ordinarily** 5:21 7:24
**outages** 12:16,22
**outcome** 6:7
**outset** 15:6
**overview** 35:23

**P**

**pages** 26:10
**paid** 4:5 5:5 10:11 11:12 19:3 34:25
   35:7,17
**pandemic** 3:1 6:2,11,16 9:4 12:1
   15:11,16 17:3,18 23:20 29:3
**pandemics** 12:16,23
**paragraph** 6:3 12:11 32:7
**paragraphs** 31:24
**paraphrase** 32:13
**participating** 20:5

**parties** 17:9
**party** 7:1 11:18
**party's** 6:17
**passage** 27:20
**past** 5:20 24:23 26:4
**paying** 30:14 35:6
**payment** 23:16
**payments** 15:17
**pegs** 13:10
**people** 20:9
**people's** 32:17
**perform** 11:21
**performance** 6:25 7:2 8:6 18:5
**performed** 7:13
**period** 37:10,11
**person** 9:13,17 17:14 23:18,20 25:21
   36:19
**personally** 37:3
**Pham** 2:2
**phase** 3:22
**physical** 22:21,22 25:11 26:20
**picked** 35:17
**place** 10:6 15:9 37:14
**plaintiff** 36:17
**plaintiff's** 6:17 33:20
**plaintiffs** 6:10,12 8:9 25:17 37:8,12
**plaintiffs'** 9:21 10:2,9,17 35:25
   36:25
**pleading** 8:3
**point** 12:9 18:18 22:19 23:2 24:22
   26:5 32:25 33:22
**pointed** 30:6 37:2
**points** 23:12 31:12 33:2
**policies** 12:12 21:12
**policy** 12:20
**portion** 3:13,14
**position** 6:18 15:21
**possibility** 15:14
**post** 12:2
**posture** 33:10

**power** 12:15,22
**practice** 22:20
**practices** 10:23
**pre-covid** 4:6
**precedent** 29:10
**prepaid** 11:4,16
**prepaying** 12:4
**present** 5:15 27:19
**preserve** 12:13
**preserving** 12:20
**president** 13:24 21:3
**pretty** 17:8
**price** 14:22
**primary** 36:18,24
**principle** 29:17
**principles** 7:4
**problem** 13:18 23:10 29:3,19
**procedural** 33:10
**procedurally** 36:11
**proceed** 6:9 12:10
**proceeding** 16:20
**process** 30:24 35:16
**professional** 14:14 34:14,16
**program** 14:14 30:14
**programs** 2:14,17
**prolonged** 24:2
**promise** 7:12 13:23 14:4,6 15:3,25
   16:4,5,8 17:17 23:15 24:17 31:5
   34:10 35:4,21
**promised** 4:11
**promises** 15:2 28:15 31:23
**promising** 36:19
**proposed** 30:23
**proposition** 22:19
**protected** 11:20
**protests** 12:16,22
**prove** 5:8
**provide** 5:25 6:1 11:14 12:13 32:10
**provided** 4:10,18 27:23 34:19

**providing** 2:17

**provision** 11:7,19,24

**publications** 20:8

**purposes** 3:9

**Put** 17:2

**puts** 13:17

---

**Q**

**qualify** 17:12 23:4,23

**quantum** 24:3 28:15,22 29:6

**question** 2:7 5:1,23 6:6,8,15 7:21 8:15 13:7 14:8 29:22 31:22

**questions** 29:25 33:11

**quote** 27:3

---

**R**

**raise** 2:8 8:20,21,22 14:13,18

**raised** 5:12 31:13 33:12

**raising** 8:23

**Randall** 21:10

**rate** 4:19

**rates** 4:15,16

**Ray** 13:5

**reach** 7:15

**read** 11:22,23 22:16 27:20

**readiness** 17:16

**reading** 2:20 7:19 21:25

**reason** 17:14 18:10

**rebuttal** 31:9 37:20

**rec** 32:23

**receive** 9:8,17,19

**received** 5:6

**recess** 37:24

**recite** 26:15

**record** 4:13 12:19 28:4 33:15,20 36:15,16

**recover** 5:8

**red** 2:8

**refer** 21:23

**reference** 12:19 27:6

**referencing** 25:11

**referred** 24:11

**referring** 26:8,9

**reflects** 33:25

**regard** 28:23 31:21

**regents** 2:2 8:22 12:10 13:6 18:20

**regents'** 2:20

**registers** 37:15

**registration** 35:16

**relate** 33:14

**relates** 33:10

**relevant** 12:23

**relief** 3:11

**rely** 19:20 25:4

**relying** 25:18 26:3

**remaining** 31:11

**remedies** 7:3

**remedy** 15:22

**remember** 15:24

**remote** 19:5

**remotely** 15:21

**rendered** 8:6

**repeated** 32:4

**representation** 20:20 24:9 26:25 31:16 34:21

**representations** 37:16

**represented** 22:23 26:21

**representing** 22:20

**requesting** 3:18

**requirement** 13:23 21:13 24:18 34:1

**requirements** 24:1

**research** 20:2,4

**researching** 21:8

**reservations** 33:13

**reserve** 31:2

**reserved** 12:25 19:14

**residential** 22:24 26:22 27:1

**resolved** 8:3

**resolving** 3:16

**response** 11:3,9 12:11 17:23 29:22

**responsibly** 31:3

**rest** 12:10 26:6

**restitution** 7:3 8:11

**return** 3:2

**reversed** 2:20

**review** 16:12,18 17:2,7

**rights** 33:13

**rise** 7:3 8:7

**road** 5:20

**room** 21:21 32:14

**run** 12:2

---

**S**

**safety** 36:20

**San** 13:9 20:13,16

**Santa** 20:1

**sauna** 32:15

**save** 18:24

**scenario** 4:17 19:8

**schedules** 9:11,15 10:8

**schools** 27:13

**scope** 27:23 29:1

**seconds** 36:9

**seek** 5:8

**seeking** 3:11 14:3

**selected** 10:4

**selection** 17:5

**semester** 4:6 23:19 35:5,15,21 37:15

**semester-by-semester** 37:17

**sends** 15:12

**sense** 3:15,17

**separate** 21:22 24:18 33:5

**series** 6:21

**service** 28:16

**services** 4:7,17,21 6:2 10:1,12,19

**session** 26:13

**set** 8:13 18:8 32:1

**sets** 18:7

**short** 35:23

**shortfall** 18:16,21 19:6

**shut** 3:3 6:13

**side** 36:6

**sign** 32:12

**similar** 3:1 8:13 15:3

**simply** 23:24 29:17

**sit** 18:20

**situation** 28:2

**slip** 26:10

**social** 12:14

**sophisticated** 11:17

**sort** 21:5 32:12

**sorts** 15:11

**speaking** 10:1

**special** 21:15

**specific** 7:12 9:12 10:13 13:22 14:3,
6 15:25 16:4,8 17:17 18:14 20:16,23
22:8 24:9,17 25:25 27:13,23 28:15
29:6 31:5,22 34:10

**specifically** 6:3 14:16 19:12,14
23:13 27:21

**specificity** 23:2

**specifics** 3:19 14:25 16:11,24

**spent** 28:16,18

**spring** 4:8 11:10,14 35:9,10,18

**squarely** 34:12 35:19

**stage** 7:16,23 8:3 15:8

**standard** 33:3,6,7 34:5,6,9,10

**start** 13:6 15:5 30:3

**started** 16:3 18:15

**statement** 26:2,13 27:22 34:1

**statements** 10:14 20:7,13,17,23
21:24 22:7,9 23:5,12,15,21,23 24:15
25:1,2,7 26:16 27:11,14 32:5 34:23,
24

**stating** 22:22

**statute** 7:24

**stay** 34:17

**stopping** 2:24 9:2,5

**stories** 20:5

**strikes** 12:17,22

**strong** 34:21 35:4

**strongest** 37:3

**student** 9:15 25:7 32:23 35:5 37:15

**students** 2:21 4:5,21 9:7 10:4,11
11:4,8,10 12:4 15:12,18 18:18 19:2
22:2 30:12 32:9 34:24 35:15 37:12

**students'** 25:10 36:14

**studios** 20:3

**stuff** 5:19

**subject** 9:10

**submitted** 37:23

**subsidized** 30:14

**sufficient** 21:14

**sufficiently** 14:9

**summary** 5:22 33:18 36:12

**support** 9:21 10:2,9,16 33:20 35:24

**supporting** 9:23 36:13

**surrounded** 25:9

**suspect** 15:1,10

**Swartzberg** 2:3,4,6,10 3:20 5:10 6:5
7:2,8 8:1,18,24 9:1 12:5,6,9 15:6
31:10,21 36:8 37:22

**syllabi** 22:20 26:19

**system** 22:1

---

**T**

**takes** 37:14

**taking** 10:6

**talk** 19:20

**talked** 9:23 33:23

**talking** 4:15 14:21,24 15:24 23:5
24:23 25:15,18 26:4 36:23

**talks** 20:1,4

**taxpayer** 30:13

**telling** 24:6

**term** 4:9 16:23 17:16 18:2,7 23:24
25:6 29:9 31:14 33:24 37:18

**terms** 3:23 4:1,3,9,25 5:11 7:7 9:21,
23 10:13,15 14:10 22:6 29:5 31:5

**testify** 23:8

**testimony** 4:15 36:16

**theories** 8:10,12

**theory** 3:10,17,24,25 5:4 13:7,12
30:23

**thing** 5:11 28:22

**things** 4:10 13:22 20:25 21:17 22:4
23:3,16 26:6 27:7,18 32:15

**thinking** 19:3

**thought** 7:7 15:18 21:10 28:3

**thrown** 15:8

**thrust** 36:24

**tie** 23:17

**tied** 23:13 24:3 27:22

**ties** 13:8

**time** 31:9,11 37:6,20

**times** 22:22

**timings** 26:21

**told** 25:25

**tomorrow** 2:25 9:3,6 33:8

**Tough** 15:22

**trademark** 4:22

**transcript** 31:15

**transportation** 28:6,17 32:24

**treatment** 16:6

**trial** 2:19 7:9 28:14

**tuition** 3:13 11:4 15:17 19:3 28:8
30:16 35:14

**turn** 31:19

**type** 16:19 21:19

**types** 35:3,19

---

**U**

**UC** 18:19 20:3 22:1 37:12

**UCLA** 19:23

**UCSF** 22:23 26:21

**undergraduate** 20:2 37:10,11

**understand** 5:3 8:17,19 15:9 17:23

Case 2:20-cv-04066-DMG-PVC    Document 283-2    Filed 04/15/24    Page 49 of 49    Page
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA    ID #:15153

Audio Transcription
April 10, 2024

19:18 22:3

**unfair**  12:3

**unilateral**  2:25

**unimportant**  8:18

**union**  32:24

**universities**  4:16 20:7 22:9

**university**  2:13,16,22,24 5:14 9:2,6
10:5,13,20,24 11:9,13,15,17,20,23
12:12,20,24 13:9 14:2,4 15:16 16:10,
15,25 17:6 19:12,14,21 20:13,16 21:3
22:24 23:9 25:1 26:25 27:2 29:5,17
30:10,16,20 31:2 32:1,8 33:6 34:2,25
35:11,14

**university's**  2:21,23 10:7,16 11:2
12:20 15:10 35:25

**unjust**  7:4 8:11

**unlike**  36:12

---

### V

**versus**  4:12 9:13

**virtually**  4:24

---

### W

**wanted**  29:21

**ways**  13:16

**weight**  32:14

**welcoming**  21:4

**words**  2:11,13,22 3:12 10:6,22,25

**work**  36:10

**works**  5:2

**workshops**  20:6

**worth**  29:12

**writers**  15:11

**writing**  20:6

**written**  34:5

**wrong**  5:25 22:17

---

### Y

**year**  2:16 10:21 18:16

---

### Z

**Zoom**  4:22