Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
Facsimile:  (866) 832-5852
Email: rak@katriellaw.com

[Additional Counsel listed on signature page]

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| *In re University of Southern California Tuition and Fees COVID-19 Refund Litigation,* | Case No. 2:20-cv-04066-DMG-PVC<br><br>**CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>**Judge: Honorable Dolly M. Gee**<br>**Courtroom: 8C, 8th Floor**<br>**Hearing Date: October 3, 2025**<br>**Hearing Time: 9:30 a.m.** |

1

# TABLE OF CONTENTS

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL……………………………………………….……………..1

FACTUAL AND PROCEDURAL BACKGROUND………………….…………..2

    I.     The Parties Extensively Litigated This Hotly Contested Case for More Than Five Years………………………………………...…...……2

    II.    The Parties Resolved the Case Only After Repeated, Arms-Length Mediations Presided By Two Separate Retired Federal Judges…..………4

ARGUMENT……………………………………………………...………5

    I.     The Previously Certified Class Should Remain Certified As A Settlement Class……………………………………………………..5

    II.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved……………………………………………………..………6

          A. The recovery for the Class adequately balances the recovery sought against the risks and delay inherent in continued litigation…………..……………………………………………...8

          B. The strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, and the risk of maintaining class action status all counsel in favor of settlement approval…………………………………………………..…10

          C. The extensive and completed fact and expert discovery supports a finding that the Settlement was entered based on an informed assessment of the case………...……………………………….…….14

1    1.    The experience and views of Class Counsel support the
            Settlement's approval……………………………………...……15

2

3        2.    The Settlement treats all Class Members equitably………..……15

4        3.    The absence of collusion supports approval of the
            Settlement…………………………………………… …..……16

5

   III.  The Notice Plan, Which Follows The Same Method Previously
6        Used, Comports with Due Process and Rule 23, Also Should Be

7        Approved…………………………………………………… ……....17

8    CONCLUSION………………………………………………....……………....19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases:**

3

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015)…………………………………………………7

4

5

*Berlanga v. University of San Francisco*,
100 Cal. App.5th 75 (2024)……………………………………………………..10

6

7

*Burt v. Board of Trustees of Univ. of Rhode Island*,
523 F. Supp.3d 214 (D.R.I. 2021)…………………………...…………….10

8

9

*Byrne v. Santa Barbara Hosp. Servs., Inc.*,
2017 WL 5035366 (C.D. Cal. Oct. 30, 2017)………………………………..15

10

11

*Castro v. Zenith Acquisition Corp.*,
2007 WL 81905 (N.D. Cal. Jan. 9, 2007)…….………………………………7

12

13

*Djukich v. AutoNation Inc.*,
2015 WL 13756099 (C.D. Cal. Nov. 12, 2015)………………...………………11

14

15

*Eddlemon v. Bradley Univ.*,
65 F.4th 335 (7th Cir. 2023)………………………………………………….12

16

17

*Evans v. Brigham Youn Univ.*,
2023 WL 3262012 (10th Cir. May 5, 2023)…………………………...………..12

18

19

*Gonzalez v. BMC W., LLC*,
2018 WL 3830774 (C.D. Cal. May 23, 2018)………………………….8, 14, 16

20

21

*Greko v. Diesel U.S.A., Inc.*,
2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)………………………..…………9

22

23

*Hart v. Marriott Int'l, Inc.*,
2019 WL 7940685 (C.D. Cal. June 24, 2019)………………………………..17

24

25

*Hendricks v. StarKist Co.*,
2015 WL 4498083 (N.D. Cal. July 23, 2015)…………………..……………10, 15

26

27

*Hillman v. Lexicon Consulting*, Inc.,
2017 WL 10433869 (C.D. Cal. Apr. 27, 2017)………………….............……10

28

*Hurtado v. Rainbow Disposal Co.*,
2021 WL 79350 (C.D. Cal. Jan. 4, 2021)…………………………....………..5, 15

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
2014 WL 12591624 (C.D. Cal. Jan. 10, 2014)…………………...…………….15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2020 WL 1873554 (N.D. Cal. Mar. 11, 2020)…………………………….…..8

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 6778406 (N.D. Cal. Nov. 16, 2016)…………………...…………….15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
2019 WL 536661 (N.D. Cal. Feb. 11, 2019)………………………….………7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)…………………………………………….……..8

*In re MyFord Touch Consumer Litig.*,
2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)…………………...……….…..17

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)…………………………………….9

*Jabbari v. Wells Fargo & Co.*,
2018 WL 11024841 (N.D. Cal. June 14, 2018)…………………………..…...16

*Johnson v. Shaffer*,
2016 WL 3027744 (E.D. Cal. May 27, 2016)……………..…………………11

*Jordan v. Michael Page Int'l, Inc.*,
2020 WL 4919732 (C.D. Cal. July 2, 2020)………………….………..17-18

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)…………………………………….………..10-11

*Khaled v. Libr. Sys. & Servs., LLC*,
2021 WL 2366952 (C.D. Cal. May 14, 2021)………………………..…….…..8

*Larson v. Harman-Mgmt. Corp.*,
2019 WL 7038399 (E.D. Cal. Dec. 20, 2019)……………………………………………..16

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)……………………………………………………………..14

*Moreno v. Pretium Packaging L.L.C.*,
2021 WL 1717081 (C.D. Cal. Mar. 25, 2021)………………………………….………18

*Moss v. USF Reddaway, Inc.*,
2018 WL 5099291 (C.D. Cal. Feb. 15, 2018)………………………………………….6

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)………………………………..………………15

*Ochinero v. Ladera Lending, Inc.*,
2021 WL 2295519 (C.D. Cal. Feb. 26, 2021)………………………………………..8

*O'Connor v. Uber Techs., Inc.*,
2019 WL 1437101 (N.D. Cal. Mar. 29, 2019)……………………………....…..16

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982)……………………………………………………..7-8

*Omori v. Brandeis Univ.*,
673 F. Supp. 3d 21 (D. Mass. 2023)……………………………………………12

*Pearson v. P.F. Chang's China Bistro, Inc.*,
2018 WL 2316885 (S.D. Cal. May 21, 2018)…………………..……………17

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006)……………………………………………..18

*Rubin-Knudsen v. Arthur Gallagher & Co.*,
2020 WL 8025308 (C.D. Cal. Nov. 24, 2020)…………………...……………7, 14

*Sanders v. LoanCare, LLC*,
2020 WL 8365241 (C.D. Cal. Dec. 4, 2020)………………………………………8

*Silveira v. M&T Bank*,
2021 WL 2403157 (C.D. Cal. May 6, 2021)………………………………………7

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016)……………………………………...……..17

*Tadepalli v. Uber Techs., Inc.*,
2015 WL 9196054 (N.D. Cal. Dec. 17, 2015)………………………………….…..16

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993)……………………………………………….…..7

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………….…7

*Walker v. Life Ins. Co. of the Sw.*,
2021 WL 1220692 (C.D. Cal. Feb. 22, 2021)…………………………….……..11

*Youth Just. Coalitions v. City of Los An*geles,
2020 WL 9312377 (C.D. Cal. Nov. 17, 2020)………………………………...5

*Zagoria v. New York Univ.*,
2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021)……………………..………….10

**Statutes and Rules:**

Fed. R. Civ. P. 23………………………………………...……………passim

28 U.S.C. §1292(b)……………………………………...……..……4, 9, 13

MEM. ISO UNOPPOSED MOTION FOR PRELIM APPROVAL OF CLASS SETTLEMENT
Case No. 2:20-cv-04066-DMG-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Class Counsel is pleased to report that the Parties have agreed to settle this case regarding Plaintiffs' request for refunds of tuition and fees associated with the Spring 2020 semester. Although the Parties believe their respective positions have merit, the risks of trial and appeal remain significant. By reaching a resolution now, only after attending three separate mediations presided over by two different retired federal magistrate judges, the Parties have avoided these risks. Not only that, but the Settlement is indisputably fair and reasonable, and merits preliminary approval.

As required by Federal Rule of Civil Procedure 23(e), Class Counsel now present this Settlement for the Court's preliminary approval so that notice of this proposed Settlement can be disseminated to the absent Class Members to inform them of the terms of the proposed Settlement and the procedures for objecting to the Settlement, or opting out of the Settlement Class. A copy of the Settlement Agreement is attached as Exhibit 1 to the Katriel Declaration.

The Settlement provides an all-cash, non-reversionary $10 million Settlement Fund to be distributed automatically among the Class Members—students enrolled at USC during the Spring 2020 term who paid or were obligated to pay tuition or certain fees to USC—after allowance for any administrative settlement and notice expenses, attorneys' fees, and costs of suit approved by the Court. *See* Settlement Agreement § 1.33. This is the same Class that the Court already certified during adversarial litigation after finding the requirements of Rule 23(a) and 23(b)(3) were met, and that the United States Court of Appeals for the Ninth Circuit left undisturbed when it denied USC's Rule 23(f) Petition to Appeal that class certification order. The proposed notice of the Settlement to be disseminated to Class Members tracks that which the Court already approved when it authorized the notice to be disseminated

-1-

to absent Class Members about the Court's class certification ruling. *See generally* ECF No. 232.

Notably, if the Settlement becomes effective, compensation to Class Members will occur automatically without the need for the filing of any claim forms. Because USC has records of the last known contact information for students who enrolled during the Spring 2020 semester, the Settlement Agreement calls for payments from the Settlement Fund to be made to these Class Members following the Settlement's effective date, without the need for any Class Member to file a claim form, proof of purchase, or any other submission. *See* Settlement Agreement § 2.1(b). In this fashion, the Settlement seeks to ensure that the Settlement Fund efficiently compensates the Class Members for whose benefit the Settlement Agreement has been negotiated.

Because the Settlement is fair and reasonable, encompasses a class that already has been certified and found to meet the requirements of Rule 23, and the proposed notice meets due process by providing the requisite best practicable notice under the circumstances, this unopposed Motion should be granted.

## **FACTUAL AND PROCEDURAL BACKGROUND**

**I.    The Parties Extensively Litigated This Hotly Contested Case for More Than Five Years.**

On May 4, 2020, Plaintiff Christina Diaz filed her Class Action Complaint against the University of Southern California, alleging claims for breach of contract, unjust enrichment, money had and received, and violations of California's Unfair Competition Law ("UCL"). *See* ECF No. 1 at Counts I-IV. She sought redress on behalf of herself and all other similarly situated students who had enrolled at USC when USC was forced by government orders to cease in-person instruction due to the COVID-19 pandemic. *Id*. Over the next few days and weeks, several other similar Class Action Complaints were filed by other USC students. *See generally* Settlement Agreement Recitals A-E (identifying filed class action complaints before this Court).

On July 17, 2020, the Court consolidated the *Diaz*, *Watson*, *Greenberg*, and *Kerendian* matters and, following contested motions, appointed The Katriel Law Firm, P.C, Berger Montague PC, and Hagens Berman Sobol Shapiro LLP as Co-Lead Interim Class Counsel, and later consolidated the *Choi* matter on October 9, 2020. *See* ECF Nos. 54, 58. On August 14, 2020, Plaintiffs filed their Consolidated Class Action Complaint. *See* ECF No. 55. On August 6, 2021, the Court granted in part and denied in part USC's motion to dismiss. *See* ECF No. 99.

Thereafter, the Parties engaged in extensive written, oral, and expert discovery. *See* Settlement Agreement Recital L. On May 4, 2022, Plaintiffs filed the operative First Amended Consolidated Class Action Complaint, to which USC filed an Answer on May 20, 2022. *See* ECF Nos. 126, 128. On March 1, 2023, Plaintiffs filed their motion for class certification (ECF No. 135), which USC opposed on April 5, 2023. ECF No. 148. On April 7, 2023, USC filed its motion to exclude testimony of Plaintiffs' expert witness, Dr. Hal Singer. *See* ECF No. 149. On April 14, 2023, USC filed its motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing for judgment on the pleadings as to the breach of contract claim based on the defense of impossibility of performance. *See* ECF No. 152. On April 21, 2023, Plaintiffs filed their motions to strike the expert report and testimony of John Hansen (ECF No. 162) and Ronald T. Wilcox, Ph.D. (ECF No. 166), which USC opposed.

On September 29, 2023, the Court: (i) granted Plaintiffs' motion for class certification, (ii) granted USC's motion for judgment on the pleadings as to the breach of implied-in-fact contract claim based on the impossibility defense, (iii) denied USC's motion to strike Dr. Singer's expert testimony, and (iv) denied Plaintiffs' motions to strike the expert testimony of USC's experts, John L. Hansen and Ronald T. Wilcox, Ph.D. *See* ECF No. 213. The Court also appointed Class Counsel as counsel for the certified class. *Id.* Specifically, the Court's Order certified the following class to which notice was disseminated:

> All students who paid or were obligated to pay tuition, fees, or other costs to The University of Southern California for the Spring 2020 academic term.

*Id.* at 44:25-27.

On October 13, 2023, USC filed a Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) the Court's order granting class certification, which Plaintiffs opposed and, on December 14, 2023, the Ninth Circuit denied. *See* ECF No. 218. On January 19, 2024, the Parties filed cross-motions for summary judgment or partial summary judgment (ECF Nos. 221, 224), with oppositions filed on February 9, 2024. *See* ECF Nos. 238, 239. On March 31, 2025, the Court denied Class Plaintiffs' motion for summary judgment and granted in part and denied in part USC's motion for summary judgment. *See* ECF No. 293.

On May 7, 2025, USC filed its motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Stay Case Pending Appeal (ECF No. 296), which Plaintiffs opposed on May 16, 2025. As part of the Settlement, on August 12, 2025, the Parties filed a Stipulation to stay all proceedings pending further settlement proceedings, which the Court granted on August 14, 2025. *See* ECF Nos. 306, 307.

## II. The Parties Resolved the Case Only After Repeated, Arms-Length Mediations Presided By Two Separate Retired Federal Judges.

On August 1, 2022, counsel for the Parties attended a day-long mediation session held remotely before Hon. Edward A. Infante of JAMS. *See* Settlement Agreement Recital O.  That mediation did not result in a settlement. The Parties attended a second mediation on September 14, 2022, also presided by Magistrate Judge Infante, which also did not result in a settlement. *See id.*; ECF Nos. 129 and 205.

With no settlement reached, the Parties continued litigating the action over the next few years. Following the Court's grant of class certification, denial of the summary judgment cross-motions, and the Ninth Circuit's denial of USC's Rule 23(f) Petition to appeal the class certification ruling, the Parties prepared for

-4-

trial and conferred on the pretrial tasks that remained outstanding. *See* Drake Decl. ¶ 15. In the meantime, USC had retained new counsel, Susman Godfrey LLP, in addition to its existing counsel, Cooley LLP. *See* ECF Nos. 289, 294.

While trial preparations were under way, Class Counsel and new counsel for USC agreed to attend one last mediation session, this time before Magistrate Judge Suzanne H. Segal (Ret.). The day-long mediation occurred in person on August 6, 2025, at the end of which the Parties reached an agreement in principle to settle the action. Over the ensuing weeks, the Parties worked on reducing their agreement to writing, resulting in the executed Settlement Agreement. This Motion followed.

## ARGUMENT

Plaintiffs' Motion should be granted because: (i) the previously certified Class satisfies Fed. R. Civ. P. 23(a) and (23)(b)(3) and should be certified as a settlement Class; (ii) the Settlement is fair, reasonable, and adequate, and satisfies Fed. R. Civ. P. 23(e)(2); and (iii) the proposed notice plan satisfies Rule 23 and comports with due process.

"The decision to [grant preliminary approval and] give notice of a proposed settlement to the class … should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." *Hurtado v. Rainbow Disposal Co.*, 2021 WL 79350, at *3 (C.D. Cal. Jan. 4, 2021). "At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) 'certify the class for purposes of judgment on the proposal' and (2) 'approve the proposal under Rule 23(e)(2).'" *Youth Just. Coalitions v. City of Los Angeles*, 2020 WL 9312377, at *1 (C.D. Cal. Nov. 17, 2020) (quoting Fed. R. Civ P. 23(e)(B)).

Both requirements are met here. The proposed Settlement is likely to earn final approval because it is fair, reasonable, adequate, and the result of lengthy arms-length

negotiations between experienced counsel after extensive litigation that spanned over five years. The Court also has already certified the Class after finding the requirements for certification under Rule 23(a) and Rule 23(b)(3) were met (*see* ECF No. 213, at 44), and USC's Petition for leave to appeal that class certification ruling under Federal Rule of Civil Procedure 23(f) was denied by the Ninth Circuit. *See* ECF No. 218. Nothing has changed since the Court certified the Class to disturb that ruling.

## I.    The Previously Certified Class Should Remain Certified As A Settlement Class.

On September 29, 2023, the Court granted Plaintiffs' motion for class certification. *See* ECF No. 213. The Court certified a class under Rule 23(b)(3) defined as:

> All students who paid or were obligated to pay tuition, fees, or other costs to The University of Southern California for the Spring 2020 academic term.

*Id.* at 44:25-27.

In certifying the foregoing Class, the Court found that Plaintiffs met the Rule 23(a) and 23(b)(3) criteria for class certification. *See id.*, at 33:17-44:13 (finding Rule 23(a) and 23(b)(3) requirements met). The Settlement Agreement adopts this class definition and seeks to resolve this matter on behalf of members of this certified Class. *See* Settlement Agreement § 1.31. The certified Class should remain in effect as a settlement class for the reasons Plaintiffs already explained. *See Moss v. USF Reddaway, Inc.*, 2018 WL 5099291, at *3 (C.D. Cal. Feb. 15, 2018) (granting preliminary approval after noting "the Settlement Agreement contemplates the same class and subclass definitions as those certified by the Court.").

## II.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved.

Both the traditional and enumerated factors of Rule 23(e) demonstrate that the proposed Settlement is fair and reasonable and should be approved.

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). "A court may preliminarily approve a settlement and direct notice to the class if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Silveira v. M&T Bank*, 2021 WL 2403157, at *4 (C.D. Cal. May 6, 2021) (quotation marks and citation omitted); *see Rubin-Knudsen v. Arthur Gallagher & Co.*, 2020 WL 8025308, at *5 (C.D. Cal. Nov. 24, 2020) (at the preliminary approval stage, "the court need only decide whether the settlement is potentially fair in light of the strong judicial policy in favor of settlement of class actions.") (citation omitted).

Ultimately, whether to grant preliminary approval to a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The Court "considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel … and the reaction of the class members to the proposed settlement." *Khaled v. Libr. Sys. & Servs., LLC*, 2021 WL 2366952, at *2 (C.D. Cal. May 14, 2021) (citation omitted). As some factors "cannot be fully assessed" at the preliminary approval stage, "a full fairness analysis is unnecessary." *Gonzalez v. BMC W., LLC*, 2018 WL 3830774, at *5 (C.D. Cal. May 23, 2018). The 2018 amendment to Rule 23(e) "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns" which are substantially identical to the traditional factors. *Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *4 (C.D. Cal. Feb. 26, 2021). "Thus, courts may apply the framework set forth in Rule 23, 'while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *7 (N.D. Cal. Mar. 11, 2020) (citation omitted).

### A.    The recovery for the Class adequately balances the recovery sought against the risks and delay inherent in continued litigation.

Because a settlement is the product of compromise, "[e]ven a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Sanders v. LoanCare, LLC*, 2020 WL 8365241, at *6 (C.D. Cal. Dec. 4, 2020) (citation omitted); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

Class Plaintiffs' expert economist, Dr. Singer, computed classwide damages of $76.32 million. *See* ECF No. 136-4 at p.44 Tables 9 and 10. The $10 million of consideration under the proposed Settlement therefore amounts to at least[1] 13.1% of the recovery that Class Plaintiffs could hope to obtain at trial upon a successful judgment and appellate review.

The risks of continued litigation both before this Court and on appeal are real and formed parts of the calculus that led to the agreed-upon settlement consideration. For example, absent a settlement, the Court may have granted USC's motion under 28 U.S.C. § 1292(b) to certify for interlocutory appeal (*see* ECF No. 296), which not only would have placed at risk the Class Plaintiffs' defeat of summary judgment but would also lead to significant delay in resolving the action. So too, by its nature, the outcome of any trial was uncertain. The Parties had dueling expert witnesses, with USC's experts opining that no damages resulted from USC's conduct alleged in the operative pleading. Absent a settlement, the Settlement Class would face the real prospect of obtaining no recovery and being responsible for costs of suit. Plus, USC's counsel has been steadfast in their intent to appeal any adverse trial judgment, which would introduce further risk and delay that the Settlement avoids.

When considering these risks and the unavoidable delay that would result absent a settlement, the result here meets or exceeds the recoveries in other settlements that have been approved. *See, e.g., Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (approving settlement in which the average settlement payment amounted to under 3% of the gross settlement value); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement in which class received payments in excess of 6% of potential damages);

---

[1] The Court's order on the Parties' cross-motions for summary judgment disallowed recovery for three fees, the Laboratory Fees, Commuter Permit Fees, and the Norman H. Topping Fee, that formed part of Dr. Singer's classwide damages calculation, thereby reducing classwide damages. *See* ECF No. 293 at 11-12.

*Hillman v. Lexicon Consulting*, Inc., 2017 WL 10433869, at *9 (C.D. Cal. Apr. 27, 2017) (granting preliminary approval of settlement providing for recovery of "3.8% of the estimated damages"); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (finding settlement representing "only a single-digit percentage of the maximum potential exposure" reasonable after considering the defenses and potential weaknesses in the plaintiffs' case).

The reasonableness of the Settlement's consideration is further bolstered by reference to class settlements reached in other university COVID-19 tuition refund cases that have not been dismissed. *See* Kurowski Decl., at Table 1 (collecting class settlements reached in other university COVID-19 tuition or fee refund cases). And the record of such cases that were outright dismissed or where class certification was denied speaks to the real risks the Class Plaintiffs would continue to face if the Settlement had not been reached. *See, e.g., Berlanga v. University of San Francisco*, 100 Cal. App.5th 75, 90 (2024) (affirming trial court's grant of summary adjudication against plaintiffs suing university under breach of implied contract for COVID-19 cessation of in-person instruction); *Zagoria v. New York Univ.*, 2021 WL 1026511, at *1 (S.D.N.Y. Mar. 17, 2021) (granting university's motion to dismiss complaint alleging breach of contract and quasi-contract claims against NYU based on its cessation of in-person instruction during COVID-19 pandemic); *Burt v. Board of Trustees of Univ. of Rhode Island*, 523 F. Supp.3d 214, 228 (D.R.I. 2021) (dismissing tuition refund breach of contract claim and all unjust enrichment and equitable claims against university for its cessation of in-person instruction during COVID-19 pandemic).

### B. The strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, and the risk of maintaining class action status all counsel in favor of settlement approval.

In evaluating the fairness of a proposed settlement, courts "must … assess the plaintiffs' claims in determining the strength of their case relative to the risks of

continued litigation[.]" *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (citation omitted). "[C]ourts look to whether the plaintiffs properly accounted for their likelihood of success." *Djukich v. AutoNation Inc.*, 2015 WL 13756099, at *6 (C.D. Cal. Nov. 12, 2015). "Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Johnson v. Shaffer*, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citation omitted). While Class Plaintiffs believe they have developed sufficient evidence to prevail at trial, they recognize that they faced real risks in obtaining a recovery at trial and upholding it on appeal. Thus "the costs, risks, and delay of trial and appeal favor preliminary approval." *Walker v. Life Ins. Co. of the Sw.*, 2021 WL 1220692, at *8 (C.D. Cal. Feb. 22, 2021).

First, to date and Class Counsel's knowledge, no university COVID-19 tuition refund class case has gone to trial; all have been dismissed or settled. This lack of any record that could provide a meaningful guidepost as to the ultimate fate of this case introduced significant risk and uncertainty. That much is only underscored by the fact that, by the time this case would be tried, six years (or possibly more) would have elapsed since the height of the COVID-19 pandemic shutdowns. In the interim, the public's attitudes about the detriment caused by remote learning and learn-from-home environments arguably have changed. Witnesses' memories about the adverse effects of that environment also have blurred and faded, making any trial more challenging and any jury award more uncertain.

Second, USC has remained steadfast in fighting class certification here and vowed to continue doing so on appeal. Although Class Plaintiffs obtained class certification and, as is the case in the majority of cases before the Ninth Circuit, USC's Rule 23(f) Petition to challenge certification on an interlocutory basis was denied, USC vowed to renew that challenge after final judgment. Although Class Plaintiffs believe in the soundness of their class certification arguments, there is no assurance on the outcome of any appellate challenge to the Court's class certification

ruling. That several university COVID-19 cases have been denied class certification confirms the real nature of that risk. *See, e.g., Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21, 29-30 (D. Mass. 2023) (class certification denied for students' breach of express and implied contract and unjust enrichment claims against university for its cessation of in-person instruction during COVID-19 pandemic); *Evans v. Brigham Youn Univ.*, 2023 WL 3262012, at *1 (10th Cir. May 5, 2023) (affirming denial of class certification in students' case seeking tuition refunds for university's cessation of in-person classes during COVID-19 pandemic); *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 337 (7th Cir. 2023) (vacating district court's grant of class certification). Reversal in whole or in part of the Court's class certification ruling would either eliminate or severely reduce any recovery the Class Plaintiffs might have obtained at trial.

Third, this case presented hotly disputed legal questions. As the case stands now, only a single claim for quasi-contract and accompanying claim under the UCL remain. The Court dismissed the remaining claims as part of USC's motion to dismiss the operative complaint under Rule 12(b)(6) and, later, USC's motion for judgment on the pleadings under Rule 12(c) as to the breach of contract claims. That left a claim for restitution under the remaining quasi-contract claim, and the Parties disagreed sharply over the legal standard governing this claim. USC argued that, under California law, restitution for unjust enrichment under quasi-contract could not be had unless Class Plaintiffs showed USC realized profits from having shifted all classes online and closed off campus access during a part of the Spring 2020 semester. *See* ECF No. 221-1 [USC's motion for summary judgment] at 9:10-15:14 (arguing for this required showing before any recovery under quasi-contract may be obtained). By contrast, Class Plaintiffs argued that realized profits were not a prerequisite, but that restitution could be obtained where Plaintiffs obtained an offering of lesser value than that which they had bargained for before the start of the

-12-

Spring 2020 semester. *See* ECF No. 236 [Class Plaintiffs' summary judgment opposition], at 2:24-8:11. Although the Court denied USC's motion for summary judgment, it similarly denied the Class Plaintiffs' cross-motion, too. The disputed standard for recovery under the remaining quasi-contract claim posed a real risk that USC planned on exploiting both at trial and, if need be, on appeal.

Fourth, the quasi-contractual nature of Class Plaintiffs' case stemmed from an initial contract that was never expressed or reduced to a written contractual document. Instead, the case derived from an initial allegation of a contract that was implied-in-fact between USC and Class Plaintiffs. *See* ECF No. 126 [First Amended Class Action Complaint] ¶ 100 ("By the act of accepting enrollment and matriculating, together with the payment of required tuition and fees, an implied-in-fact contract between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand, was formed."). The implicit nature of the alleged bargain introduced a further uncertainty as to the contour and definiteness of the precise promises made and whether it actually encompassed a bargain or promise for in-person, on-campus instruction. This fact-specific inquiry and dispute has led to disparate outcomes among California courts. *Compare Berlanga*, 100 Cal. App. 5th at 84 (university's implied-in-fact contract with students did not include promise to provide in-person instruction) *with* ECF 99 at 8 (order denying in part motion to dismiss: "Read in the manner most favorable to Plaintiffs, these allegations support Plaintiffs' allegation that 'the reasonable expectation of the parties at the time of contract' was that they would be receiving an in-person, on-campus education."). This disparity formed part of USC's motion for certification for interlocutory appeal under 28 U.S.C. § 1292(b) whose resolution USC agreed to stay only because of the Settlement. While Plaintiffs remain confident that their view of the Parties' contract would have prevailed, the Parties' dispute over the promises or bargains included as

MEM. ISO UNOPPOSED MOTION FOR PRELIM APPROVAL OF CLASS SETTLEMENT
Case No. 2:20-cv-04066-DMG-PVC

part of the alleged implied-in-fact contractual relationship nonetheless introduced a real risk that could have doomed the case if adversarial litigation continued.

Even if all these foregoing legal issues were to be resolved in Class Plaintiffs' favor, as Class Counsel maintain they should, their resolution would introduce inevitable delay. In contrast to the significant cost and delay of further litigation, the Settlement delivers immediate monetary relief to the Class, in which each Class Member will share.

### C. The extensive and completed fact and expert discovery supports a finding that the Settlement was entered based on an informed assessment of the case.

To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). "Settlement is favored when the litigation has proceeded to a point at which both plaintiffs and defendants have a clear view of the strengths and weaknesses of their cases." *Edwards v. First Am. Corp.*, 2016 WL 8999934, at *6 (C.D. Cal. Oct. 4, 2016) (quotation marks, citation, and alterations omitted).

Here, the Settlement was reached only after fact and expert discovery, which entailed review of thousands of documents, depositions of all Class Plaintiffs, as well as USC's employees and each Party's experts, had been completed.  As a result, Class Counsel had more than an adequate basis to evaluate the fairness and reasonableness of the Settlement. *See* Katriel Decl., ¶¶ 10-11; *see Rubin-Knudsen*, 2020 WL 8025308, at *5 (active litigation over two years, including numerous depositions and reviewing tens of thousands of documents, and fully briefing motion for class certification indicated that "Plaintiffs and their counsel have engaged in more than sufficient investigation."); *Gonzalez*, 2018 WL 3830774, at *5 (discovery gave parties "a clear idea of the strengths and weaknesses of their respective cases" thus favoring settlement approval). This factor therefore supports the reasonableness of

the Settlement. *See Byrne v. Santa Barbara Hosp. Servs., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("Here, the parties engaged in discovery and investigation, which allowed them to effectively assess the strengths and weaknesses of the claims.").

### 1.    The experience and views of Class Counsel support the Settlement's approval.

Class Counsel have extensive experience in litigating complex class actions and believe that the Settlement represents a favorable outcome for the Class. *See* Katriel Decl., ¶ 12; Drake Decl., ¶¶ 4-14, 16; Kurowski Decl., ¶¶ 6-16, 18; *see also Hurtado*, 2021 WL 79350, at *5 ("Class Counsel's endorsement also weighs in favor    of approving the settlement."); *Hillman*, 2017 WL 10433869, at *8 (endorsement of experienced counsel supported approval); *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts") (citation omitted).

### 2.    The Settlement treats all Class Members equitably.

The Settlement will allocate the Settlement Fund equitably among Class members. A plan of allocation must be "fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (citation omitted). Courts have recognized "that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (citation omitted); *see, e.g., In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014).

The $10 million Settlement Fund, net of any fees, costs, and settlement administrative expenses approved by the Court ("Available Settlement Fund"), will be distributed equally among the members of the Settlement Class. *See* Settlement Agreement § 2.1(b). This recognizes that all Settlement Class Members suffered the

-15-

Error! Unknown document property name.

same alleged treatment during the part of the Spring 2020 term when in-person instruction ceased. The plan is therefore "tailored to the particular facts and circumstances of this case," and is "fair, reasonable, and adequate and should be approved." *Jabbari v. Wells Fargo & Co.*, 2018 WL 11024841, at *1, 3 (N.D. Cal. June 14, 2018).

### 3. The absence of collusion supports approval of the Settlement.

The Court must ensure that the Settlement "is not the product of collusion among the negotiating parties." *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *7 (N.D. Cal. Mar. 29, 2019) (citation omitted). There is no collusion here, nor could there be. The Settlement was reached after class certification had been secured, and after more than five years of adversarial litigation.

Moreover, settlement negotiations were conducted under the supervision of two highly regarded and independent mediators, both of whom are former federal Chief Magistrate Judges. When a proposed settlement results from lengthy arms-length negotiations between experienced counsel and a mediator, it is entitled to a presumption of fairness. *See Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015); *Larson v. Harman-Mgmt. Corp.*, 2019 WL 7038399, at *4 (E.D. Cal. Dec. 20, 2019) ("[P]articipation in mediation tends to support the conclusion that the settlement process was not collusive.") (quotation marks and citation omitted); *Gonzalez*, 2018 WL 3830774, at *7 ("[T]he use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."). The Court should apply the presumption here because the proposed Settlement resulted only after three mediation sessions presided over by two separate, neutral, and experienced mediators, Retired Magistrate Judges Edward A. Infante and Suzanne H. Segal. *See* Katriel Decl., ¶ 10. The non-collusive nature of these negotiations is evidenced by the fact that the first two mediations did

-16-

not result in settlement; only a third mediation, before a second mediator, ultimately led to a resolution.

The terms of the Settlement also dispel any suggestion of collusion. The Settlement Agreement has no "clear sailing" agreement on Class Counsel's fee demand, which is to be filed in accord with the deadlines the Court imposes under Federal Rule of Civil Procedure 23(h), and Class Counsel never have negotiated any agreement about their expected fee motion. To the contrary, the Settlement Agreement protects Class Members by including a maximum fee request that Class Counsel may make. *See* Settlement Agreement § 8.1. That amount is well below the total lodestar Class Counsel have incurred, thus showing their commitment to safeguard Class Members' interests by seeking a lesser fee than the billable hours spent on the case. *See Pearson v. P.F. Chang's China Bistro, Inc.*, 2018 WL 2316885, at *9 (S.D. Cal. May 21, 2018) (potential request for up to 33% in attorneys' fees was reasonable).

Equally dispelling any notion of collusion, no part of the Settlement Fund will revert to USC. *See In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *7 (N.D. Cal. Mar. 28, 2019) (finding no collusion when "the Settlement Agreement and fee agreement were reached under the auspices of an experienced mediator" and the settlement fund was not subject to reversion to the defendant); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) (similar); *Hart v. Marriott Int'l, Inc.*, 2019 WL 7940685, at *8 (C.D. Cal. June 24, 2019) (finding that the settlement was the result of "serious, informed, non-collusive negotiations" based on the presence of a mediator and absence of a reversion clause).

### III.    The Notice Plan, Which Follows The Same Method Previously Used, Comports with Due Process and Rule 23, Also Should Be Approved.

"Rule 23(c)(2)(B) requires that the Court 'direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Jordan v. Michael Page*

-17-

*Int'l, Inc.*, 2020 WL 4919732, at *7 (C.D. Cal. July 2, 2020). The Parties have agreed, subject to the Court's approval, that Angeion, the Settlement Administrator whom the Court previously appointed to give notice of the Court's class certification order, will be responsible for giving notice and distributing cash payments to Settlement Class members. *See* Settlement Agreement § 1.29; ECF No. 232 at ¶ 2 ("[T]he Court appoints Angeion Group, LLC as the Notice Administrator"). Angeion is in possession of the class list and last known contact information for Class Members from its work in distributing the notice of the Court's class certification order. *See* Weisbrot Decl., ¶ 4. The Settlement provides that USC will provide any updates to this class list and contact information to Angeion if any changes known to USC have occurred since the class certification ruling notice was disseminated by Angeion. *See* Settlement Agreement § 4.1(a). Notice will be mailed electronically and by First Class Mail within 21 and 28 days, respectively, of an order granting preliminary approval. *Id.*; Settlement Agreement § 4.1(b). Angeion will also post the notice and related settlement documents on the settlement website. *Id.* § 4.1(d). Courts have routinely held that "first class mail is ordinarily sufficient to notify class members who have been identified." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-493 (E.D. Cal. 2006).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Moreno v. Pretium Packaging L.L.C.*, 2021 WL 1717081, at *4 (C.D. Cal. Mar. 25, 2021). The notice called for as part of the Settlement Agreement gives Class Members sufficient details of the Settlement, and explains how to object, opt out, or get more information about the Settlement and attorney fee application. *See* Settlement Agreement, Exs. B-C; Weisbrott Decl., ¶¶ 19-20 (notice forms and settlement website). It is the same means of notice dissemination that the Court already approved when it authorized Angeion to disseminate the notice of the

Court's class certification ruling. *See* ECF No. 231 at 2:13-19 [Stipulation re: Class Notice] ("direct notice to class members is the best notice that is practicable under the circumstances, the parties request that the Court also enter an order directing USC to produce class member contact information, specifically, (1) first name, last name; (2) last known email address; (3) last known mailing address; and (4) last known primary phone number; (collectively, "Contact Information") to the notice administrator"); ECF No. 232 at ¶4 (Order approving Stipulation re: Class Notice).

## CONCLUSION

For the foregoing reasons, the Court should grant Class Plaintiffs' Motion and enter the Proposed Preliminary Approval Order. Class Plaintiffs further request that the Court grant them all such other relief as it deems necessary and appropriate.

Dated: September 5, 2025              Respectfully submitted,

By: /s/ *Roy A. Katriel*
      Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
Email: rak@katriellaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Daniel J. Kurowski (*pro hac vice*)
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
dank@hbsslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: christopherp@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email:  steve@hbsslaw.com

**BERGER MONTAGUE PC**
E. Michelle Drake (*pro hac vice*)
Ariana Kiener (*pro hac vice*)
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
Email: emdrake@bergermontague.com
Email: akiener@bergermontague.com

*Co-Lead Class Counsel*

MEM. ISO UNOPPOSED MOTION FOR PRELIM APPROVAL OF CLASS SETTLEMENT
Case No. 2:20-cv-04066-DMG-PVC

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that the foregoing memorandum of points and authorities complies with the page count limit set by the Court's Initial Standing order entered in this case (ECF No. 8 at 4).

By: /s/ *Roy A. Katriel*

Roy A. Katriel (SBN 265463)

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that on September 5, 2025, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

By: /s/ *Roy A. Katriel*

Roy A. Katriel (SBN 265463)